THE HONORABLE BARBARA J. ROTHSTEIN

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
7                                AT SEATTLE

8   MARTIN LUTHER KING, JR.
    COUNTY; PIERCE COUNTY;                    No. 2:25-cv-00814-BJR
9   SNOHOMISH COUNTY; CITY AND
    COUNTY OF SAN FRANCISCO;
10  COUNTY OF SANTA CLARA; CITY               PLAINTIFFS' MOTION FOR
    OF BOSTON; CITY OF COLUMBUS;              TEMPORARY RESTRAINING
11  and CITY OF NEW YORK,                     ORDER

12
                              Plaintiffs,
13                                            NOTE ON MOTION CALENDAR:
    vs.                                       MAY 5, 2025
14
    SCOTT TURNER in his official capacity
15  as Secretary of the U.S. Department of
    Housing and Urban Development; the
16  U.S. DEPARTMENT OF HOUSING
    AND URBAN DEVELOPMENT; SEAN
17  DUFFY in his official capacity as
    Secretary of the U.S. Department of
18  Transportation; the U.S. DEPARTMENT
    OF TRANSPORTATION; MATTHEW
19  WELBES in his official capacity as acting
    Director of the Federal Transit
20  Administration; and the FEDERAL
    TRANSIT ADMINISTRATION,
21
22
                              Defendants.
23

24

25

26

27

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER
No. 2:25-cv-00814-BJR

1

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................2

   A.   Federal Funding for Homelessness Assistance .................................................. 2

   B.   HUD Attaches New Unlawful Conditions to CoC Funding ................................. 3

   C.   FTA Attaches New Unlawful Conditions to Mass Transit Funding..................... 8

III.  ARGUMENT ........................................................................................................ 11

   A.   Legal Standard ................................................................................................ 11

   B.   Plaintiffs Have Standing to Challenge the CoC and FTA Grant Conditions...................... 11

   C.   Plaintiffs Are Likely to Succeed on the Merits................................................. 12

      1.   The Grant Conditions Violate the Separation of Powers ........................... 12

         a)   Congress has not authorized the CoC Grant Conditions (All Moving Plaintiffs)........................................................................13

         b)   Congress has not authorized the FTA Grant Conditions (King County Only)........................................................................16

         c)   The CoC and FTA Grant Conditions are not germane to the programs at issue ........................................................................17

      2.   The Grant Conditions Are Unconstitutionally Vague ................................ 17

      3.   Imposing New Conditions Violates the APA.......................................... 20

   D.   Plaintiffs Will Suffer Immediate and Irreparable Harm If the Conditions Are Not Blocked ................................................................................................ 24

   E.   The Balance of Equities Weigh in Plaintiffs' Favor, and a Temporary Restraining Order Is in the Public Interest ........................................................................ 26

IV.   CONCLUSION.................................................................................................... 27

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - i
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## I.    INTRODUCTION

The U.S. Department of Housing and Urban Development (HUD) and the Federal Transit Administration (FTA) seek to impose new conditions impacting hundreds of millions in federal grant funding to moving Plaintiffs' local governments.[1] HUD and FTA do so without Congressional authorization and in violation of the Constitution and the Administrative Procedure Act (APA). This is an effort to further President Donald J. Trump's political agenda—expressed through a series of Executive Orders—to eliminate all forms of diversity, equity, and inclusion (DEI) policies, require local governments to help with the administration's aggressive and lawless immigration enforcement, impose new verification requirements to check immigration status for all public programs, target and punish transgender people, and cut off information about lawful abortions. In addition to being new and unauthorized, many of these conditions are contrary to conditions existing at the time of grant application.

The funding at issue includes homelessness assistance grants awarded by HUD to pay for congressionally approved housing and supportive services for Plaintiffs' most vulnerable residents, including individuals and families experiencing chronic homelessness. Other funding goes toward grants awarded by the U.S. Department of Transportation (DOT) and FTA to maintain plaintiff King County's Metro transit system—a congressionally approved purpose—that serves millions of riders. Defendants' new grant conditions violate the Constitution's separation of powers doctrine, the Fifth Amendment's vagueness doctrine, and the APA.

---

[1] This TRO motion is brought by plaintiffs Martin Luther King, Jr. County (King County), Pierce County, Snohomish County, City and County of San Francisco (San Francisco), County of Santa Clara (Santa Clara), City of Boston (Boston), and City of New York (New York) (collectively, "Plaintiffs") as to the HUD conditions and King County as to the FTA conditions. Plaintiff City of Columbus does not join in this motion.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Defendants have forced Plaintiffs to make the Hobson's choice between agreeing to abandon their values, laws, and policies or else put hundreds of millions of grant dollars in jeopardy in an extremely limited time frame. Plaintiffs must decide as early as **Thursday, May 8, 2025** whether to agree to the unlawful conditions or forfeit federal funding, which would cut off critical programs and services for their residents, force reductions in their workforces, and significantly impact their budgets. Because Plaintiffs are likely to succeed on the merits of their claims and will be immediately and irreparably harmed if these conditions are allowed to stand, and the equities weigh strongly in their favor, this Court should enter a temporary restraining order barring Defendants from imposing or enforcing the grant conditions identified here until the Court can rule on a motion for preliminary injunction.[2]

## II. STATEMENT OF FACTS

### A. Federal Funding for Homelessness Assistance

Title IV of the McKinney-Vento Homeless Assistance Act ("Assistance Act") authorizes funding for the Continuum of Care (CoC) program to rehouse homeless individuals and families, provide supportive services, and promote "community-wide commitment to the goal of ending homelessness." 42 U.S.C. § 11381. HUD issues a Notice of Funding Opportunity (NOFO)[3] and then awards CoC grants to local coalitions, known as "Continuums," in a competitive process. *Id.* § 11382(a). The grants are subject to conditions established in the Assistance Act, HUD regulations, and the NOFO. *Id.* § 11386(b); 24 C.F.R. § 578.23(c). No later than 45 days from the

---

[2] On May 4, 2025, Plaintiffs provided notice to Defendants of Plaintiffs' intent to move for a temporary restraining order. Lisagor Decl., ¶ 2.

[3] The terms NOFO, "Notice of Funding Availability," and "Funding Opportunity Announcement" all refer to a formal announcement of the availability of federal funding.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 2
No. 2:25-cv-00814-BJR

satisfaction of certain conditions, the recipient and HUD must execute the grant agreement. 24 C.F.R. § 578.23(a).

Last year, HUD issued a NOFO identifying certain grant conditions. *See* U.S. Dep't of Housing & Urban Dev., Notice of Funding Opportunity for FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program (Jul. 24, 2024), https://www.hud.gov/sites/dfiles/CPD/documents/FY2024_FY2025_CoC_and_YHDP_NOFO_FR-6800-N-25.pdf ("FYs 2024/2025 NOFO"). None of the conditions challenged here were included in the NOFO. *See id.* Rather, the NOFO required applicants to explain how their programs would "advance racial equity" and address "the needs of LGBTQ+ individuals." *Id.* at 85, 97. After evaluating their applications, HUD conditionally awarded Plaintiffs almost $300 million in CoC grants for Fiscal Year 2024. Marshall Decl., ¶¶ 10–19; Dillon Decl., ¶¶ 7–16, Johns Decl., ¶¶ 10–14; Warren Decl., ¶¶ 10–18; Barbee Decl., ¶¶ 7–18; McSpadden Decl., ¶¶ 7, 10–11, 16; Kaminski Decl., ¶¶ 14, 19–20, 24–25; Brell-Vujovic Decl., ¶ 9. Relying on these awards, Plaintiffs have already committed, and in some cases expended, millions of dollars for homelessness assistance services. *See id*.

**B.    HUD Attaches New Unlawful Conditions to CoC Funding**

In March 2025, HUD began presenting Plaintiffs with CoC grant agreements containing grant conditions ("CoC Grant Conditions") that were not included in the NOFO or authorized by any statute or regulation. *See, e.g.*, Marshall Decl., Ex. B ("CoC Agreements"). These new conditions stem from President Trump's Executive Orders directing agencies, without notice or any authority, to require grant recipients to implement his political agenda as a condition to receiving federal funds. The CoC Agreements contain the following unlawful conditions:

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 3
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**CoC EO Condition:** The CoC Agreements state that "[t]his Agreement, the Recipient's use of funds provided under this Agreement . . . , and the Recipient's operation of projects assisted with Grant Funds" are "governed by" not only certain specified statutes, rules, and grant-related documents, but also "all current Executive Orders . . . ." *Id*. at 1.

**CoC Discrimination Condition:** The CoC Agreements require the recipient to certify "it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964." *Id.* While Plaintiffs have routinely certified compliance with federal nondiscrimination laws as a condition of federal funding in the past, President Trump, HUD, and other agencies have confirmed their agenda is to prohibit policies or programs promoting inclusion for people of different races, ethnicities, national origins, sexes, gender identities, and sexual orientations through the guise of enforcing federal nondiscrimination law. *See* Dkt. # 1 ¶¶ 85–87. Through the CoC Discrimination Condition, recipients seemingly either have to pledge to recognize the President's incorrect and legally unsupported interpretation across all of their operations or forgo funding.

The CoC Discrimination Condition also requires the recipient to agree "its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions" for purposes of the False Claims Act (FCA), 31 U.S.C. §§ 3729 et seq. Marshall Decl., Ex. B at 3. The FCA imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). For FCA liability to attach, the alleged misrepresentation must be "material to the Government's payment decision"—a liability element the U.S. Supreme Court has called "demanding." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192, 194 (2016). Each violation of the FCA is punishable by a civil penalty of up to $27,894, plus

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 4
No. 2:25-cv-00814-BJR

mandatory treble damages sustained by the government. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.5(a). Given the demands of proving materiality and the FCA's severe penalties, this represents another effort to coerce compliance with the President's political agenda by purporting to force recipients to concede an essential element that the federal government has the burden of establishing in a court of law.

**CoC Immigration Enforcement Condition:** The CoC Agreements provide that "[n]o state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation." Marshall Decl., Ex. B at 3. This is a near-verbatim recitation of section 2(a)(ii) of Executive Order 14218, "Ending Taxpayer Subsidization of Open Borders." *See* Exec. Order No. 14218, § 2(a)(ii), 90 Fed. Reg. 10581 (Feb. 19, 2025) ("Immigration Order").[4] The latest CoC Agreements have been updated to recite this section of the Immigration Order. McSpadden Decl., ¶ 13, Ex. B at 34.

**CoC Immigration Verification Condition:** The CoC Agreements impose requirements purportedly related to immigration verification requirements:

> Subject to the exceptions provided by [the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (PRWORA)], the recipient must use [the Systematic Alien Verification for Entitlements (SAVE) system], or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien

---

[4] A district court has preliminary enjoined the federal government from "directly or indirectly taking any action to withhold, freeze, or condition federal funds from" sixteen cities and counties—including plaintiffs King County, Santa Clara, and San Francisco—on the basis of Section 2(a)(ii) of the Immigration Order. *City & Cnty. of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL 1186310, at *3 (N.D. Cal. Apr. 24, 2025). That case raises facial challenges to the President's Immigration Order, while in this case, Plaintiffs challenge HUD's actions attaching new unlawful conditions to the CoC grants at issue and King County challenges FTA's actions attaching new unlawful conditions to the FTA grants at issue.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 5
No. 2:25-cv-00814-BJR

who entered the United States illegally or is otherwise unlawfully present in the United States.

Marshall Decl., Ex. B at 3; *see also id.* ("The recipient must administer its grant in accordance with . . . any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services [*sic*] may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws."). This condition tracks the Immigration Order's provision directing agency heads to "enhance eligibility verification systems, to the maximum extent possible, to ensure that taxpayer-funded benefits exclude any ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States." Exec. Order 14218, § 2(a)(iii).

**CoC Gender Ideology Condition:** The CoC Agreements require the recipient to agree it "shall not use grant funds to promote 'gender ideology,' as defined in [Executive Order] 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." Marshall Decl., Ex. B at 3. Executive Order 14168, in turn, directs federal agencies to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology" and "ensure grant funds do not promote gender ideology." Exec. Order No. 14168, §§ 3(e), 3(g), 90 Fed. Reg. 8615 (Jan. 20, 2025) ("Gender Ideology Order"). To the extent the Gender Ideology Order defines "gender ideology," it states: "'[g]ender ideology' replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true." *Id.* § 2(f).

**CoC Abortion Condition:** The CoC Agreements prohibit the recipient from using grant funds "to fund or promote elective abortions, as required by [Executive Order] 14182, Enforcing

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the Hyde Amendment." Marshall Decl., Ex. B at 3. Executive Order 14182 in turn declares it "the policy of the United States . . . to end the forced use of Federal taxpayer dollars to fund or promote elective abortion." Exec. Order No. 14182, § 1, 90 Fed. Reg. 8751 (Jan. 24, 2025) ("Abortion Order"); *see also* Memorandum from Acting Director of OMB Matthew J. Vaeth to Heads of Executive Departments and Agencies (Jan. 24, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/03/M-25-12-Memorandum-on-Hyde-Amendment-EO.pdf ("OMB Memo"). The condition does not define what it means to "promote elective abortion."

The intent behind these new conditions is readily apparent. On April 4, 2025, Defendant Turner sent a letter ("Turner Letter") to all HUD grant recipients confirming that the CoC Immigration Verification and Enforcement Conditions were being imposed to "compl[y] with" the Immigration Order. *See* Marshall Decl., Ex. C. Defendant Turner then stated that "HUD is carrying out Present Trump's executive orders, mission, and agenda," by "[a]lign[ing] all programs, trainings, and *grant agreements* with the President's Executive Orders, removing diversity, equity, inclusion (DEI)." Press Release, HUD, *HUD Delivers Mission-Minded Results in Trump Administration's First 100 Days* (Mar. 11, 2025), https://www.hud.gov/news/hud-no-25-059 (emphasis added). Likewise, on the media platform "X," Defendant Turner expressed how his agency intends to enforce the new conditions: "CoC funds . . . will not promote DEI, enforce 'gender ideology,' support abortion, subsidize illegal immigration, and discriminate against faith-based groups." Scott Turner (@SecretaryTurner), X (Mar. 13, 2025, 11:47 AM), https://x.com/SecretaryTurner/status/1900257331184570703.

Plaintiffs now face deadlines to sign the CoC Agreements. Once a grant is conditionally awarded, HUD regulations require recipients to sign CoC grant agreements "[n]o later than 45 days from the date when all conditions are satisfied." 24 C.F.R. § 578.23(a). Plaintiffs are

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 7
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

concerned that HUD will attempt to use this regulation as a pretense to cancel their grant funds if the CoC Agreements are not signed within 45 days of when Plaintiffs received them. For example, San Francisco faces an apparent May 8, 2025 deadline to sign its CoC Agreement; King County and Santa Clara face an apparent May 10, 2025 deadline. McSpadden Decl., ¶ 15; Marshall Decl., ¶ 12; Kaminski Decl., ¶ 20. New York faced an apparent May 5, 2025 deadline and returned the Agreement with changes excising the new conditions. Warren Decl., ¶¶ 17–18. Other plaintiffs have similar considerations. *See, e.g.*, Dillon Decl., ¶¶ 10–11; Brell-Vujovic Decl., ¶ 9.

Plaintiffs face an immediate need to receive the CoC funds because they have begun contracting with service providers who are already incurring costs and expect reimbursement; households reliant on private rentals are at risk of eviction if there is even a short-term interruption of rent payments covered by CoC funds; and the interruption of funds could threaten the operation of supportive housing. Marshall Decl., ¶¶ 17–21, Dillon Decl., ¶¶ 17–24, Johns Decl., ¶ 16; Warren Decl., ¶¶ 19–21; Barbee Decl., ¶¶ 19, 26–29; McSpadden Decl., ¶¶ 16–19; Kaminski Decl., ¶¶ 24–30; Brell-Vujovic Decl., ¶ 12. Ultimately, any delay or loss of funding would result in disruption of services and cause irreparable damage to individuals' lives. *See id.*

## C.    FTA Attaches New Unlawful Conditions to Mass Transit Funding

Also in jeopardy are various mass transit grants already awarded by FTA. These grants stem primarily from four statutory programs. *See* 49 U.S.C. § 5307(a)(1) (establishing urbanized area formula grants); *id.* § 5309(b) (fixed guideway capital investment grants); *id.* § 5337(b), (f) (state of good repair and replacement of rail rolling stock grants); *id.* § 5339(a)(2), (b), (c) (bus purchase and maintenance grants).

On March 26, 2025, FTA promulgated an updated Master Agreement that governs all grants under the four programs discussed above. Morrison Decl., Ex. B-1. This new Master

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 8
No. 2:25-cv-00814-BJR

Agreement imposed new conditions on FTA grants (collectively, "FTA Grant Conditions") that mirror the conditions imposed on HUD grants.

**FTA EO Condition:** The March 26 Master Agreement requires that the recipient "agree[] to comply with all applicable federal requirements and follow applicable federal guidance," *id.* at 15, which includes "an applicable federal law, regulation, or *executive order*," *id.* at 7 (emphasis added).

**FTA Discrimination Conditions:** The March 26 Master Agreement imposed a new DEI condition:

> (1) Pursuant to section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity [("DEI Order")], the Recipient agrees that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of [the FCA].
>
> (2) Pursuant to section (3)(b)(iv)(B) [of the DEI Order], by entering into this Agreement, the Recipient certifies that it does not operate any programs promoting [DEI] initiatives that violate any applicable Federal anti-discrimination laws.

*Id.* at 59.

While FTA grants have long required compliance with nondiscrimination laws, DOT has confirmed its intent to enforce a sweeping interpretation of these conditions. On April 24, 2025, Secretary of Transportation Sean Duffy sent a letter ("Duffy Letter") to all recipients of DOT grants, which includes FTA grants, elaborating on the Trump administration's policy requiring federal recipients to eliminate DEI initiatives everywhere. Morrison Decl., Ex. D. The Duffy Letter asserts that "[w]hether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called 'diversity, equity, and inclusion,' or 'DEI,' goals, presumptively violates Federal

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 9
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

law." *Id.* at 2.

The Duffy Letter also addresses immigration: "In addition, your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." *Id.* The Letter continues: "Declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability." *Id.* at 3.

The Duffy Letter concludes: "Adherence to your legal obligations is a prerequisite for receipt of DOT financial assistance. Noncompliance with applicable Federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law, will jeopardize your continued receipt of Federal financial assistance from DOT and could lead to a loss of Federal funding from DOT." *Id.*

The next day, April 25, 2025, FTA issued another updated Master Agreement containing the same FTA DEI and EO Conditions. Morrison Decl., Ex. A ("Master Agreement").

**FTA Immigration Enforcement Condition:** This latest Master Agreement added a condition requiring the recipient to cooperate with federal immigration enforcement:

> The Recipient . . . will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

*Id.* at 58.

Plaintiff King County has over $446 million of appropriated FTA funds pursuant to the above-described FTA grant programs, accounting for a significant portion of its entire public

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 10
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

transit budget for Fiscal Year 2025. *See* Morrison Decl., ¶¶ 10, 12, 18. These funds were awarded without any of the conditions challenged here. *Id.* ¶¶ 19–20.

King County faces immediate need to draw down from awarded funds to continue developing, constructing, maintaining, repairing, and replacing its wide range of transit vehicles and facilities. Morrison Decl., ¶¶ 12, 27. Moreover, King County needs to understand whether it can both draw down and plan on submitting proposals in the immediate future to plan for Metro Transit needs in Fiscal Year 2026 and beyond. *Id*. ¶¶ 16–18. Without FTA grant funds, King County Metro's service network would likely have to be cut back in ways that would significantly reduce mobility options for a large portion of King County's population, while slowing the movement of freight and goods across the region. *Id*. King County is not aware of any other existing or proposed funding source that could replace FTA grant funds. *Id*.

## III.    ARGUMENT

### A.    Legal Standard

A temporary restraining order is warranted where the moving party establishes (1) it is likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (temporary restraining order and preliminary injunction analysis is "substantially identical"). All of these factors strongly favor Plaintiffs.

### B.    Plaintiffs Have Standing to Challenge the CoC and FTA Grant Conditions

Plaintiffs face imminent, direct injuries as a result of the CoC and FTA Grant Conditions. To establish standing, a plaintiff must show it has suffered or will suffer an injury that is "concrete,

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

particularized, and actual or imminent; fairly traceable to the challenged action; and redressable

by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

"A loss of funds promised under federal law satisfies Article III's standing requirement."

*City & Cnty. of San Francisco v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018)

(cleaned up); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019) ("[L]os[ing] out

on federal funds . . . is a sufficiently concrete and imminent injury to satisfy Article III . . . .");

*Arizona v. Yellen*, 34 F.4th 841, 853 (9th Cir. 2022) ("States have standing when an allegedly

unconstitutional funding offer is made to them, and they do not need to first violate a condition of

an allegedly unconstitutional contract . . . ."). Here, Plaintiffs have been awarded millions in CoC

funds that they stand to lose unless they accept unlawful new conditions. Marshall Decl., ¶¶ 10–

16; McSpadden Decl., ¶¶ 10–19; Dillon Decl., ¶¶ 7–13; Johns Decl., ¶¶ 10–15; Warren Decl.,

¶¶ 10–18; Barbee Decl., ¶¶ 8–25; Kaminski Decl., ¶¶ 13–21; Brell-Vujovic Decl., ¶¶ 9–12.

Likewise, King County stands to lose nearly half a billion dollars in appropriated FTA grants

unless it accepts new unlawful conditions. Morrison Decl., ¶¶ 10, 19–27. This imminent loss of

funds or infringement of rights is traceable to the unlawful conditions and redressable by an order

barring their enforcement.

### C.    Plaintiffs Are Likely to Succeed on the Merits

#### 1.    The Grant Conditions Violate the Separation of Powers

"[U]nless and until Congress confers power on" them, agencies have "literally . . . no power

to act . . . ." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). No statute gives

HUD or FTA the power to impose conditions on CoC and FTA grants remotely approaching those

at issue here. Rather than implement Congress's will, HUD and FTA are attempting to condition

duly appropriated funds on compliance with the President's policy agenda as expressed in his

Executive Orders. But the President lacks "his own constitutional powers" to add new conditions to federal funds. *San Francisco*, 897 F.3d at 1234 (cleaned up). Defendants' actions therefore usurp Congress's "power of the purse" and violate bedrock separation of powers principles. *Id.* at 1231.

The Constitution "exclusively grants the power of the purse to Congress, not the President." *Id.* Accordingly, there is no inherent executive authority to place conditions on the receipt of federal funds—any such authority must be given to the executive by the legislature. *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) (agency grant conditions imposed without statutory authority were "ultra vires"). When Congress attaches conditions to federal funds, it must do so "unambiguously." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (cleaned up). Absent an express delegation of congressional authority, the President's power to impose conditions on grants "is at its lowest ebb." *San Francisco*, 897 F.3d at 1233 (cleaned up).

No statute authorizes Defendants to impose conditions on CoC and FTA grants that seemingly prohibit all types of DEI, require cooperation with immigration enforcement, require recipients to use specific automated systems for verifying participants' immigration status, prohibit gender inclusivity, or prohibit discussion of lawful abortion. Instead, Congress has only attached conditions to CoC and FTA grants that closely relate to the purposes of the programs they fund, and has imposed specific procedures for implementing an eligibility verification system requirement, which have not occurred.

### a.) Congress has not authorized the CoC Grant Conditions (All Plaintiffs)

HUD's administration of the CoC program is authorized and governed by statutory directives. These statutes do not authorize the CoC Grant Conditions.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 13
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**The Assistance Act.** The Assistance Act sets out conditions that CoC recipients must accept—none of which relate to prohibiting DEI, enforcing federal immigration law, verifying immigration status, denying the existence of gender-diverse people, or prohibiting "promotion" of abortion. *See* 42 U.S.C. § 11386(b) (requiring recipients to, *inter alia*, "monitor and report to the Secretary the progress of the project," "take the educational needs of children into account when families are placed in emergency or transitional shelter," and "place families with children as close as possible to their school of origin"). And while the Act requires recipients to comply with "other terms and conditions" that "the Secretary may establish to carry out" the program "in an effective and efficient manner," no plausible interpretation of this clause authorizes wide-ranging conditions sent down by Executive fiat on policy issues unrelated to homelessness assistance. *Id.* § 11386(b)(8). All of the statutory CoC conditions concern transparency, accountability, and meeting the needs of children; none concern the new conditions HUD seeks to impose. 42 U.S.C. § 11386(b)(1)–(7). Thus, no plausible reading of the Assistance Act "unambiguously" authorizes the conditions here. *Arlington Cent.*, 548 U.S. at 296.

HUD's regulations implementing the Assistance Act are in accord with this straightforward interpretation. They set forth specific grant conditions that track the statutory language and/or closely relate to program administration. 24 C.F.R. § 578.23(c). And they allow for additional "terms and conditions" only if "establish[ed] by [the NOFO]." *Id.* § 578.23(c)(12). But none of the conditions challenged here are contained within HUD's regulations. Nor were any included in the NOFO. To the contrary, the NOFO required applicants to explain how they would "advance racial equity" and address "the needs of LGBTQ+ individuals." FYs 2024/2025 NOFO at 85, 97.

**The Appropriations Act.** The Consolidated Appropriations Act, Pub. L. 118-42, 138 Stat. 25 (Mar. 9, 2024) ("Appropriations Act"), which appropriated funds for Fiscal Year 2024 CoC

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 14
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

grants, does not authorize HUD to condition the receipt of funds on compliance with the President's policy directives. Instead, it sets specific priorities concerning CoC funding that have nothing to do with the new CoC Conditions. *See* Dkt. # 1 ¶ 36. And while the Appropriations Act references the Hyde Amendment, which bars using federal funds to pay for or require a person to facilitate an abortion, Pub. L. 118-42, §§ 202–03, 138 Stat. 153, it does not prohibit federally funded programs from "*promot[ing]* elective abortions," which could be read to include providing program participants with information about lawful abortions. By unilaterally attaching a new requirement to federal funds, HUD seeks to "coopt Congress's power to legislate" and rewrite the law. *San Francisco*, 897 F.3d at 1234.

      **PRWORA.** Finally, the CoC Immigration Verification Condition references PRWORA. Marshall Decl., Ex. B at 3. But absent implementing regulations, PRWORA does not authorize HUD to require grant recipients to verify program participants' immigration status for programs that are not "Federal public benefits" as defined in PRWORA. *See* 8 U.S.C. § 1611(c). Even where PRWORA requires eligibility verification, the statute does not authorize HUD to require grant recipients use an automated verification system such as SAVE as a condition to receiving funds. PRWORA provides that noncitizens without qualifying immigration status are ineligible for certain "Federal public benefit[s]." 8 U.S.C. § 1611(a). But it does not require grant recipients that administer federally funded programs to verify eligibility *unless* the U.S. Attorney General promulgates regulations implementing a verification requirement. *See id.* § 1642(a). Indeed, PRWORA ties any verification requirements to the promulgation of regulations. *Id.* § 1642(b) ("Not later than 24 months after the date the regulations described in subsection (a) are adopted, a State that administers a program that provides a Federal public benefit shall have in effect a verification system that complies with the regulations.").

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The Attorney General has issued interim guidance and a proposed verification rule, but never implemented a final rule. *See* Interim Guidance on Verification of Citizenship, Qualified Alien Status and Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 62 Fed. Reg. 61344 (Nov. 17, 1997); Verification of Eligibility for Public Benefits, 63 Fed. Reg. 41662 (Aug. 4, 1998) (proposed rule). This failure to promulgate a final regulation left in place the interim guidance, which requires only the examination of identity and immigration documentation. 62 Fed. Reg. at 61348–49.

Moreover, Congress placed the responsibility of devising a verification system on the Attorney General—not local governments and others that administer federally funded programs. Most plaintiffs do not even have access to SAVE. Marshall Decl., ¶ 14; Barbee Decl., ¶ 22; McSpadden Decl., ¶ 9; Brell-Vujovic Decl., ¶ 10. By shifting the onus onto recipients to gain access to and then verify eligibility using SAVE (or an equivalent system) without the benefit of implementing regulations and the two-year ramp-up period that PRWORA requires, HUD is undermining Congress' statutory scheme and attempting to rewrite PRWORA.

### b.) Congress has not authorized the FTA Grant Conditions (King County Only)

None of the statutes authorizing the FTA mass transit grants at issue require the recipient to certify it does not "promote DEI," concede that its compliance is material for purposes of the FCA, or "cooperate" with federal immigration enforcement. Indeed, "[h]ere, the Administration has not even attempted to show that Congress authorized it to withdraw federal grant moneys from jurisdictions that" refuse to execute such certifications—when interpreted, as explained in the Duffy Letter, to effectively prohibit all forms of DEI—"[n]or could it." *San Francisco*, 897 F.3d at 1234. Nor do any of the annual appropriations acts for the last four years attach such conditions

to transit grants or authorize FTA to leverage transit funding to further the President's agenda. *See* Dkt. # 1 ¶ 60.

### c.)  The CoC and FTA Grant Conditions are not germane to the programs at issue

These new CoC and FTA Grant Conditions are especially problematic because they exceed even Congress' power to condition federal funds. The Spending Clause only permits Congress to impose conditions germane "to the federal interest in [the] particular" program. *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (cleaned up). Accordingly, any CoC and FTA conditions must have some "nexus" with the purpose of the homelessness assistance and mass transit funds at issue. *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 532 (N.D. Cal. 2017). But there is no nexus at all between the challenged conditions (as Defendants intend to enforce them) and the federal interest in the CoC and FTA funds here. *See id.* at 532-33 (no nexus between immigration enforcement and "most categories of federal funding," such as Medicare, transportation, child welfare services, etc.).

In sum, Congress did not authorize any of the CoC or FTA Grant Conditions. Because the Executive may not unilaterally "withhold properly appropriated funds in order to effectuate its own policy goals," Plaintiffs are likely to succeed on the merits. *San Francisco*, 897 F.3d at 1233–35.

### 2.  The Grant Conditions Are Unconstitutionally Vague

Plaintiffs are also likely to succeed in showing that the CoC and FTA Grant Conditions violate the Fifth Amendment's vagueness doctrine by imposing opaque prohibitions designed to induce recipients to self-censor to avoid liability and confer unbridled enforcement discretion on Defendants. A requirement imposed by the government is unconstitutionally vague if it fails to either (1) provide a "person of ordinary intelligence a reasonable opportunity to know what is

prohibited" or (2) "provide explicit standards for those who apply" the requirement, thereby encouraging "arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). The CoC and FTA Grant Conditions fail on both grounds.

Initially, the CoC EO Condition is vague in stating that the CoC Agreements are "governed" by all Executive Orders. The FTA EO Condition is similarly vague in requiring the recipient to "comply" with Executive Orders. Nothing in any of the Executive Orders places any direct requirements on grant recipients. Nor could they, since Executive Orders can only impose requirements on executive agencies, officers, and employees—not private parties or state and local governments. *See* U.S. Dep't of Justice, Executive Orders, https://bja.ojp.gov/program/it/privacy-civil-liberties/authorities/executive-orders (executive orders are "official documents . . . through which the President of the United States manages the operations of the Federal Government"). Accordingly, it is nonsensical to require Plaintiffs to comply with Executive Orders and unclear whether the EO Conditions purport to do so, rendering the agreements vague.

Moreover, the specific implementation of the Executive Orders by HUD and FTA contains vague wording susceptible to arbitrary enforcement that forces grant recipients to guess at what is prohibited. For instance, the FTA Discrimination Condition (and the DEI Order incorporated therein) provide no guidance on what "programs promoting [DEI] initiatives" supposedly violate "Federal anti-discrimination law," nor do they define the term "illegal DEI and DEIA policies" or explain what policies, programs, and activities are purportedly covered. And while the CoC Discrimination Condition purports to simply require certification of compliance with federal nondiscrimination law, the DEI Order and subsequent agency letters broadly interpreting the law to prohibit all DEI—contrary to courts that have addressed the issue—render the condition vague. *See* Letter from Pam Bondi, Attorney General, to all DOJ Employees (Feb. 5, 2025),

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 18
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

https://www.justice.gov/ag/media/1388501/dl?inline (stating DOJ will "penalize" and "eliminate" "illegal DEI and DEIA" activities); Morrison Decl., Ex. D at 2 (asserting programs "designed to achieve so called [DEI] goals[] presumptively violate[] Federal Law"); Press Release, HUD, *supra*; Scott Turner (@SecretaryTurner), X, *supra*.

Further, the CoC Immigration Enforcement Condition (which incorporates by reference the Immigration Order) fails to define the terms "facilitates," "subsidization," or "promotion" with respect to "illegal immigration," leaving federal grant recipients without fair notice of what activities agencies will deem to violate the prohibition. Similarly, the FTA Immigration Enforcement Condition fails to define the terms "cooperate," "cooperating," "impeding," and "enforcement" with respect to "Federal immigration law."

The definition of "gender ideology" adopted in the CoC Gender Ideology Condition is not only demeaning and violative of the Constitution's equal protections guarantees, but also idiosyncratic and unscientific. Similarly, the phrase "elective abortion" in the CoC Abortion Condition has no scientific or legal meaning. And the scope of both conditions is made even less clear by the term "promote," which leaves Defendants free rein to determine what policies and activities related to these topics conflict with President Trump's policy agenda.

Each of these conditions requires people of ordinary intelligence to guess at what is prohibited. *See Grayned*, 408 U.S. at 108. By the same token, their lack of clarity gives HUD and FTA unfettered discretion to determine what conduct they will deem to be "promot[ing] DEI," "gender ideology," or "elective abortions" or "facilitat[ing]," "subsidiz[ing]," or "promot[ing]" unlawful immigration. These vague requirements—against a backdrop of threatened FCA enforcement—force recipients to self-censor by "steer[ing] far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Id.* at 109 (cleaned up). Indeed, as one

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 19
No. 2:25-cv-00814-BJR

court held regarding a condition identical to the FTA Discrimination Condition, the condition's meaning "is left entirely to the imagination," forcing grant recipients into the "perhaps impossible position" of having to alter their behavior "or risk making a certification that will be deemed false . . . ." *Chicago Women in Trades v. Trump*, No. 25-cv-02005, 2025 WL 933871, at *8 (N.D. Ill. Mar. 27, 2025). Each of these conditions suffers this same vagueness defect. Plaintiffs are likely to succeed on the merits of this claim.

### 3.  Imposing New Conditions Violates the APA

The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary" and "capricious," "not in accordance with law," "contrary to constitutional right," "in excess of statutory jurisdiction," or "without observance of procedure required by law." 5 U.S.C. § 706(2). Plaintiffs are likely to prevail in showing that imposing the unlawful CoC and FTA Grant Conditions violates each of these requirements.[5]

First, as discussed above, the CoC and FTA Grant Conditions are "in excess of statutory jurisdiction," "not in accordance with law," and "contrary to constitutional right," because they do not derive from a congressional delegation of authority and they violate the constitutional protections addressed above. 5 U.S.C. § 706(2). The CoC Immigration Verification Condition is not in accordance with law because the Attorney General has not promulgated regulations

---

[5] Imposing new conditions on recipients is a "final agency action" subject to review under the APA. *See id.* § 704. Final agency actions "mark the consummation of the agency's decisionmaking process" and are those "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). As several courts have held in similar cases, the decision to impose new conditions on federal grants satisfies both tests because it "articulate[s] that certain funds" will "require adherence to the" new conditions and "opens up the [recipient] to potential legal consequences," including withholding of funds if the recipient declines to accept the conditions. *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031–32 (N.D. Cal. 2018); *see also Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 328–29 (S.D.N.Y. 2018) (same).

PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER - 20
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

requiring a verification system, and HUD cannot unilaterally impose a verification system that PRWORA requires to be accomplished by notice-and-comment rulemaking.

Second, the CoC and FTA Grant Conditions are arbitrary and capricious because they fail the basic requirement that agency action be "reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (cleaned up). To pass muster, an agency must offer "a satisfactory explanation for its action" and can neither "rel[y] on factors which Congress has not intended it to consider" nor simply ignore "an important aspect of the problem . . . ." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.* ("*State Farm*"), 463 U.S. 29, 43 (1983). While agencies are free to change their existing policies, they must "display awareness that" they are doing so, provide "good reasons for the new policy," and demonstrate that they have taken account of "reliance interests" engendered by the prior policy. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Here, HUD has offered no explanation for any of the CoC Grant Conditions except the Immigration Enforcement and Immigration Verification Conditions. As to those two, HUD's explanation, articulated in the post-hoc Turner Letter, is simply that the President ordered them. *See* Turner Letter at 1 (describing HUD Secretary's "responsibility to effectively implement the" Immigration Order and informing recipients that "HUD senior leadership" review would "ensure that HUD programs are compliant with" that order). "[A]n executive order," however, "is not 'law,'" *California v. EPA*, 72 F.4th 308, 318 (D.C. Cir. 2023), and "an agency must defend its actions based on the reasons it gave when it acted, not with post hoc rationalizations." *Lotus Vaping Techs., LLC v. U.S. Food & Drug Admin.*, 73 F.4th 657, 668 (9th Cir. 2023) (cleaned up). And complying with an executive order neither exempts the agency from the "reasoning, deliberation,

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 21
No. 2:25-cv-00814-BJR

and process" required by the APA, nor permits it to "flip-flop" "on the whims of each new administration." *California v. Bernhardt*, 472 F. Supp. 3d 573, 600–01 (N.D. Cal. 2020).

Nowhere does the Turner Letter address why requiring recipients to establish automated verification systems is warranted or authorized absent regulations implementing a verification system requirement and two-year notice. Nor does it demonstrate consideration of the programmatic impacts likely to result if recipients are required to use SAVE or an equivalent verification system. HUD may not ignore these key "aspect[s] of the problem," *State Farm*, 463 U.S. at 43, simply because the President ordered it. *See California*, 472 F. Supp. 3d at 600–01 (agency's action based on executive order did not excuse it from explaining change in policy). And while the Letter seems to acknowledge—albeit, implicitly—a policy change, in explaining that "going forward" HUD will "take steps to ensure" federal funds do not "support 'sanctuary' policies," it does not explain the departure, consider reliance interests, or even define what is a "sanctuary" policy. Turner Letter at 1. Indeed, courts have enjoined executive orders using that term as vague from this Trump term and the last. *See, e.g., City & Cnty. of San Francisco*, 2025 WL 1186310, at *2; *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 534–36 (N.D. Cal. Apr. 25, 2017). Similarly, HUD fails to explain the Gender Ideology Condition's conflict with HUD's own regulations mandating "[e]qual access" to CoC programs in accordance with participants' "gender identity." 24 C.F.R. § 5.106(b)–(c).

The FTA Grant Conditions are no better supported. The Duffy Letter asserts that policies "designed to achieve so-called [DEI] goals[] presumptively violate[] Federal law," and that DOT "must ensure that discrimination based on [protected status] does not exist in the programs or activities it funds . . . ." Morrison Decl., Ex. D at 2. But this explanation is inconsistent with the actual grant condition, which requires recipients to certify that they do not operate *any* DEI

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 22
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

program FTA or DOT deems prohibited—whether federally funded or not. *Id.*, Ex. A at 58. And it does not acknowledge, much less explain, its departure from several court decisions holding that affinity group and other DEI programs premised on racial, gender, or other classifications and open to all comply with equal protection and federal nondiscrimination law. *See, e.g., Diemert v. City of Seattle*, No. 2:22-cv-1640, 2025 WL 446753, at *17–18 (W.D. Wash. Feb. 10, 2025) (affinity groups "open to any City employee" did not violate equal protection); *cf. Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 540–41 (7th Cir. 2005) (recognition of affinity groups based on common social identity, but not religion, did not violate Title VII).

Third, in reversing longstanding policies without explanation, HUD and FTA failed to observe procedure required by law. *See* 5 U.S.C. § 706(2)(D). Both HUD and FTA have adopted regulations requiring those agencies to proceed by notice-and-comment rulemaking for certain matters. *See* 24 C.F.R. § 10.1 ("It is the policy of [HUD] to provide for public participation in rulemaking with respect to all HUD programs and functions, including matters that relate to . . . grants . . . ."); 49 C.F.R. § 601.22(a) (FTA regulations). FTA is also subject to statutory notice-and-comment requirements for certain conditions pertaining to the FTA grants. *See* 49 U.S.C. § 5334(k)(1) (FTA Administrator must "follow applicable rulemaking procedures under [5 U.S.C. § 553, the APA's notice-and-comment requirement] before [FTA] issues a statement that imposes a binding obligation on recipients of Federal assistance under this chapter"); *id*. § 5334(k)(2) (defining "binding obligation" as "a substantive policy statement, rule, or guidance document issued by [FTA] that grants rights, imposes obligations, produces significant effects on private interests, or effects a significant change in existing policy").

Here, the CoC and FTA Grant Conditions purport to impose binding obligations that substantively change existing law and policies, including existing federal nondiscrimination laws

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 23
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(Title VI), immigration verification requirements (PRWORA), gender identity regulations (24 C.F.R. § 5.106 (mandating equal access to CoC programs in accordance with gender identity)), and abortion (Hyde Amendment). *See, e.g.*, *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 449 (9th Cir. 1994) ("Substantive rules . . . create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress."); *Erringer v. Thompson*, 371 F.3d 625, 630 (9th Cir. 2004) (a rule is substantive, i.e., "legislative," inter alia, if there is no "adequate legislative basis for enforcement action" without the rule, or if the rule "effectively amends a prior legislative rule"). In imposing these new conditions, HUD and FTA failed to comply with the notice-and-comment requirements set forth in their own regulations and in 49 U.S.C. § 5334(k)(1).

Plaintiffs are likely to succeed in establishing that attaching the CoC and FTA Grant Conditions exceeded the agencies' statutory jurisdiction, violated the Constitution, was arbitrary and capricious, and failed to observe required procedure in violation of the APA.

### D.    Plaintiffs Will Suffer Immediate and Irreparable Harm If the Conditions Are Not Blocked

Based on federally imposed deadlines, Plaintiffs must decide as early as May 8 to either accept conditions that violate their constitutional rights and those of their constituents or risk losing hundreds of millions in federal funding for vital public services. McSpadden Decl., ¶ 15; Marshall Decl., ¶ 12. New York signed a CoC Agreement but excised all of the new unlawful conditions, placing it in immediate fear of losing its grant. The deprivation of rights is itself an irreparable harm, as a plaintiff may suffer constitutional injury from being forced into a "Hobson's choice" between accepting unconstitutional conditions and incurring financial penalties. *See*, *e.g.*, *Hecox v. Little*, 104 F.4th 1061, 1088 (9th Cir. 2024); *Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 24
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Cir. 2017); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–59 (9th Cir. 2009). And loss of the funds at issue would result in immediate, irreparable, and reverberating harms to Plaintiffs—including upending their budgets, potentially forcing reductions in their workforce, and either cutting off critical homelessness services, as well as King County's transit services, or forcing Plaintiffs to divert resources from other public services. *See* Marshall Decl., ¶¶ 17–21; Dillon Decl., ¶¶ 12–24; Johns Decl., ¶ 16; Warren Decl., ¶¶ 18–21; Barbee Decl., ¶¶ 25–29; Kaminski Decl., ¶¶ 25–34; McSpadden Decl., ¶¶ 16–19; Brell-Vujovic Decl., ¶ 12; Morrison Decl., ¶¶ 10–18. *see also City & Cnty. of San Francisco*, 2025 WL 1186310, at *3 (finding "irreparable injury in the form of budgetary uncertainty, deprivation of constitutional rights, and undermining trust between the Cities and Counties and the communities they serve"; collecting cases).

For example, without CoC funding, 700 households in King County who live in private rentals would be at risk of eviction in the short-term because their rent would not be paid, with 2,144 households impacted in total. Marshall Decl., ¶¶ 19–20. In San Francisco, close to 2,000 program participants would "lose their housing subsidies and services and [would] be at risk of imminent evictions," causing individuals and families to slip back into homelessness. McSpadden Decl., ¶ 17. "Interruption of funding" from the CoC program supporting "more than 1,400 households is estimated to cost [San Francisco] $17 million in direct rehousing costs." *Id.* Santa Clara would lose one third of its budget for permanent supportive housing and would be forced to choose between redirecting County General Funds away from other services and programs towards programs for the homeless or considering dramatically cutting the programs, which would lead to higher rates of homelessness. Kaminski Decl., ¶¶ 29–31.

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 25
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The loss of FTA funding would force King County to substantially curtail its existing and near-future planned transit operations and entirely abandon some elements of its structure. Morrison Decl., ¶ 16. King County would have to fundamentally rework its longstanding financial plans and procedures, capital project delivery process, and service delivery models in ways that could have significant impacts on the County's mission, its employees, and its riders. *Id.* ¶ 18. "To put it plainly, without FTA grant funds, [King County's] service network would likely have to be cut back in ways that could significantly reduce mobility options for a large portion of King County's population while potentially increasing traffic congestion and slowing the movement of freight and goods across our region." *Id.*

These extensive harms would not only "impact [Plaintiffs'] ability to carry on day-to-day operations and fulfill [their] legal obligations," they could be permanent if HUD or FTA "transfer, re-allocat[e], or re-obligat[e]" grants to other recipients. *Climate United Fund v. Citibank, N.A.*, No. 25-cv-698, 2025 WL 842360, at *9–10 (D.D.C. Mar. 18, 2025); *see also Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 1:25-cv-00333-ABA, 2025 WL 573764, at *28 (D. Md. Feb. 21, 2025) (loss of federal grants was irreparable harm where "monetary recovery" was "likely to be precluded" in "light of Defendants' sovereign immunity").

### E.    The Balance of Equities Weigh in Plaintiffs' Favor, and a Temporary Restraining Order Is in the Public Interest

The equities and public interest, which merge when the government is a party, tip sharply in Plaintiffs' favor. *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024). The threat of harm to Plaintiffs far outweighs the federal government's interests in immediately imposing the conditions, and preserving Plaintiffs' constitutional rights is in the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 26
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

a party's constitutional rights.") (cleaned up). The balance of equities decidedly supports a temporary restraining order here, and the Court should preserve the status quo until Plaintiffs' forthcoming motion for a preliminary injunction can be decided.

Whatever interest the Executive may have in introducing new grant conditions at this stage of the grant cycle, and in enforcing them during the pendency of this litigation, pales in comparison to Plaintiffs' irreparable harm from enforcement of the new conditions. A temporary restraining order would not harm the federal interest, but merely maintain the status quo as to Defendants' administration of the CoC and FTA programs. "[B]y establishing a likelihood that [the government's] policy violates the U.S. Constitution," Plaintiffs have also "established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

## IV.    CONCLUSION

Federal agencies cannot dictate policy through grant conditions that are not authorized by Congress, and indeed are beyond Congress' power to authorize; are vague; were not adopted pursuant to required process; and that ultimately force local governments to adopt federal policy in contravention of the political will of their constituents. The harm to Plaintiffs is imminent with signatures on grant agreements due as early as May 8, 2025. Plaintiffs respectfully ask the Court to enter a temporary restraining order no later than that date preserving the status quo that existed when Plaintiffs and their Continuums applied for, and Defendants conditionally granted, the CoC and FTA grants at issue, and barring Defendants from imposing, enforcing, or otherwise denying grants to Plaintiffs and their Continuums based on new unlawful conditions. Such a temporary restraining order is necessary to avoid harm to Plaintiffs and their most vulnerable unhoused residents, as well as King County's millions of transit riders.

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

I certify that this memorandum contains 8,375 words, in compliance with the Local Civil Rules.

DATED this 5th day of May, 2025.

LEESA MANION
King County Prosecuting Attorney

*/s/ David J. Hackett*
David J. Hackett, WSBA #21234
*General Counsel to Executive*
Alison Holcomb, WSBA #23303
*Deputy General Counsel to Executive*
Erin Overbey, WSBA #21907
*Senior Deputy Prosecuting Attorney*
Cristy Craig, WSBA #27451
*Senior Deputy Prosecuting Attorney*
Donna Bond, WSBA #36177
*Senior Deputy Prosecuting Attorney*

Chinook Building
401 5th Avenue, Suite 800
Seattle, WA 98104
(206) 477-9483
david.hackett@kingcounty.gov
aholcomb@kingcounty.gov
eroverbey@kingcounty.gov
cristy.craig@kingcounty.gov
donna.bond@kingcounty.gov

*Attorneys for Plaintiffs Martin Luther King, Jr. County*

PACIFICA LAW GROUP LLP

*/s/ Paul J. Lawrence*
Paul J. Lawrence, WSBA #13557
Jamie L. Lisagor, WSBA #39946
Sarah S. Washburn, WSBA # 44418
Meha Goyal, WSBA #56058
Luther Reed-Caulkins, WSBA #62513

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 28
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101
T: 206-245-1700
F: 206-245-1750
Paul.Lawrence@PacificaLawGroup.com
Jamie.Lisagor@PacificaLawGroup.com
Sarah.Washburn@PacificaLawGroup.com
Meha.Goyal@PacificaLawGroup.com
Luther.Reed-Caulkins@PacificaLawGroup.com

*Attorneys for Plaintiffs Martin Luther King County,
Jr., Pierce County, County and City of San
Francisco, County of Santa Clara, City of Boston,
and City of New York*

JASON J. CUMMINGS
Snohomish County Prosecuting Attorney

*/s/ Bridget E. Casey*
Bridget E. Casey, WSBA #30459
Rebecca J. Guadamud, WSBA #35588
Rebecca E. Wendling, WSBA #35887

Snohomish County Prosecuting Attorney's Office
3000 Rockefeller Avenue, M/S 504
Everett, WA 98201-4046
(425) 388-6392
Bridget.Casey@co.snohomish.wa.us
Rebecca.Guadamud@co.snohomish.wa.us
Rebecca.Wendling@co.snohomish.wa.us

*Attorneys for Plaintiff Snohomish County*

DAVID CHIU
San Francisco City Attorney

*/s/ David Chiu*
David Chiu (CA Bar No. 189542)*
*San Francisco City Attorney*
Yvonne R. Meré (CA Bar No. 175394)*
*Chief Deputy City Attorney*
Mollie M. Lee (CA Bar No. 251404)*

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 29
No. 2:25-cv-00814-BJR

*Chief of Strategic Advocacy*
Sara J. Eisenberg (CA Bar No. 269303)*
*Chief of Complex and Affirmative Litigation*
Ronald H. Lee (CA Bar No. 238720)*
Alexander J. Holtzman (CA Bar No. 311813)*
*Deputy City Attorneys*
1390 Market Street, 7th Floor
San Francisco, CA 94102
(415) 554-4700
Cityattorney@sfcityatty.org
Yvonne.Mere@sfcityatty.org
Mollie.Lee@sfcityatty.org
Sara.Eisenberg@sfcityatty.org
Ronald.Lee@sfcityatty.org
Alexander.Holtzman@sfcityatty.org

*Attorneys for Plaintiff*
*City and County of San Francisco*


OFFICE OF THE COUNTY COUNSEL,
COUNTY OF SANTA CLARA

*/s/ Tony LoPresti*
Tony LoPresti (CA Bar No. 289269)*
*County Counsel*
Kavita Narayan (CA Bar No. 264191)*
*Chief Assistant County Counsel*
Meredith A. Johnson (CA Bar No. 291018)*
*Lead Deputy County Counsel*
Stefanie L. Wilson (CA Bar No. 314899)*
Cara H. Sandberg (CA Bar No. 291058)*
*Deputy County Counsels*
70 West Hedding Street
East Wing, 9th Floor
San José, CA 95110
(408) 299-9021
tony.lopresti@cco.sccgov.org
kavita.narayan@cco.sccgov.org

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 30
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET, SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

meredith.johnson@cco.sccgov.org
stefanie.wilson@cco.sccgov.org
cara.sandberg@cco.sccgov.org

*Attorneys for Plaintiff County of Santa Clara*


ADAM CEDERBAUM
Corporation Counsel, City of Boston

*/s/ Samantha H. Fuchs*
Samantha H. Fuchs (MA BBO No. 708216)*
*Senior Assistant Corporation Counsel*
Samuel B. Dinning (MA BBO No. 704304)*
*Senior Assistant Corporation Counsel*
One City Hall Square, Room 615
Boston, MA 02201
(617) 635-4034
samantha.fuchs@boston.gov
samuel.dinning@boston.gov

*Attorneys for Plaintiff City of Boston*


MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York

*/s/ Doris Bernhardt*
Doris Bernhardt (NY Bar No. 4449385)*
Joshua P. Rubin (NY Bar No. 2734051)*
Aatif Iqbal (NY Bar No. 5068515)*
*Assistant Corporation Counsels*
100 Church Street
New York, NY 10007
(212) 356-1000
dbernhar@law.nyc.gov
jrubin@law.nyc.gov
aiqbal@law.nyc.gov

*Attorneys for Plaintiff City of New York*


*\* Pro Hac Vice application forthcoming*

PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER - 31
No. 2:25-cv-00814-BJR

1

## CERTIFICATE OF SERVICE

2

3      I hereby certify that on May 5, 2025, I served a true and correct copy of the foregoing

4   document on the following parties by the method(s) indicated below:

5

| Scott Turner<br>Secretary of Housing and Urban Development<br>U.S. Department of Housing and Urban Development<br>Office of the General Counsel<br>Robert C. Weaver Federal Building<br>451 7th Street SW<br>Washington, DC 20410 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
|---|---|
| U.S. Department of Housing and Urban Development<br>Office of the General Counsel<br>Robert C. Weaver Federal Building<br>451 7th Street SW<br>Washington, DC 20410 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Sean Duffy<br>Secretary of Transportation<br>U.S. Department of Transportation<br>Office of the General Counsel<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| U.S. Department of Transportation<br>Office of the General Counsel<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Matthew Welbes<br>Acting Administrator, Federal Transit Administration<br>Federal Transit Administration<br>Office of the General Counsel<br>U.S. Department of Transportation, East Building<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☒ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

CERTIFICATE OF SERVICE - 1

PACIFICA LAW GROUP LLP<br>401 UNION STREET<br>SUITE 1600<br>SEATTLE, WASHINGTON 98101<br>TELEPHONE: (206) 245-1700<br>FACSIMILE: (206) 245-1750

| | |
|---|---|
| Federal Transit Administration<br>Office of the General Counsel<br>U.S. Department of Transportation, East Building<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Alex Haas, Co-Director<br>Diane Kelleher, Co-Director<br>John Griffiths, Co-Director<br>Eric J. Hamilton, Deputy Assistant Attorney<br>Federal Programs Branch<br>Civil Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC  20530<br><br>alex.haas@usdoj.gov<br>diane.kelleher@usdoj.gov<br>john.griffiths@usdoj.gov<br>eric.hamilton@usdoj.gov | ☐ CM/ECF E-service<br>☒ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Teal L. Miller, Acting United States Attorney<br>Rebecca S. Cohen, Civil Division Chief<br>United States Attorney's Office for the Western District of Washington<br>United States Attorney's Office<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br><br>teal.miller@usdoj.gov<br>rebecca.cohen@usdoj.gov | ☐ CM/ECF E-service<br>☒ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 5th day of May 2025.

*/s/ Gabriela DeGregorio*
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE - 2