1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
7                             AT SEATTLE

8    MARTIN LUTHER KING, JR.
     COUNTY, et al.,                          No. 2:25-cv-00814-BJR
9
                              Plaintiffs,     DECLARATION OF COUNTY OF
10                                            SANTA CLARA ACTING
          v.                                  DIRECTOR FOR SUPPORTIVE
11                                            HOUSING KATHRYN J. KAMINSKI
     SCOTT TURNER, in his official capacity   IN SUPPORT OF MOTION FOR
12   as Secretary of the U.S. Department of   TEMPORARY RESTRAINING
     Housing and Urban Development, et al.,   ORDER
13
                              Defendants.
14

15
          I, KATHRYN J. KAMINSKI, declare as follows:
16
          1.      I make this declaration in support of Plaintiffs' motion for a Temporary
17
     Restraining Order.  I am a resident of the State of California.  I have personal knowledge of all
18
     facts stated in this declaration, and if called to do so, I could and would testify to them
19
     competently under oath.
20
          2.      I am the Acting Director for the County of Santa Clara Office of Supportive
21
     Housing (OSH or the "Department"), a position I have held from July 2024 to present.  Prior to
22
     this position, I served as a Deputy Director for OSH for four years, overseeing OSH's contracts
23
     and grants team, fiscal team, Continuum of Care (CoC) team, and the supportive housing system,
24
     which encompasses services including emergency shelter, short-term financial assistance to
25
     quickly prevent or lift households out of homelessness, interim and transitional housing, and
26

27

DECL. OF KATHRYN J. KAMINSKI IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAING ORDER - 1

permanent supportive housing. Prior to serving as Deputy Director, I served as the CoC Quality Improvement Manager for approximately three years, overseeing the county-wide CoC efforts including policy development and implementation, system performance measurement, and federal grant compliance. Prior to becoming employed with the County of Santa Clara, I worked for the City of San José Housing Department from January 2015 to September 2017 as a Development Officer, where I managed HUD grants such as the Community Development Block Grant, Emergency Solutions Grant, and Housing Opportunities for People with AIDS programs, including compliance with federal regulations, budgeting, reporting, contract development, subrecipient management and monitoring, and program evaluation. Prior to employment with the City of San José, I was employed as a Senior Associate at TDA, Inc., a national consulting firm, from September 2011 to December 2014, where I provided training and technical assistance to grantees receiving federal funding from HUD.

3.      In my role as Acting Director of OSH, I oversee the department budget, the administration of all grants and contracts, delivery of services, and management of the County's affordable housing loan portfolio.

4.      OSH's mission is to increase the supply of housing and supportive housing that is affordable and available to extremely low-income and/or special needs households. OSH supports the County of Santa Clara's mission of promoting a healthy, safe, and prosperous community by ending and preventing homelessness. The Department's mission and work is informed by the County's commitment to advancing equity in government, which means moving the county towards one where everyone can participate, prosper, and reach their full potential, regardless of race, gender, nation of origin, sexual orientation, ability, or any other historically marginalized identity.

5.      Since the late 1980s, government agencies and community-based organizations in Santa Clara County have partnered to address the needs of homeless individuals and families.  In 1992, these organizations formed the Santa Clara County Collaborative on Affordable Housing and Homeless Issues (the "Collaborative"), an unincorporated association.  In addition to improving coordination and services, the Collaborative was formed to meet the 1995 HUD requirement that all communities submit a collective application for HUD CoC funds.

6.      From 1992 to 2013, the Steering Committee of the Collaborative served as the governing board for administration of CoC program funds and as the primary entity for planning and coordinating homeless services.

7.      In 2013, regional local governments, non-profit housing leaders, and other stakeholders came together to reorganize the structure of the Santa Clara County CoC (the "Santa Clara County Continuum") to improve regional coordination of federal, state, and local resources towards reducing homelessness in the county.  Through this process, the County of Santa Clara was designated as the Collaborative Applicant on behalf of the Santa Clara County Continuum.  OSH currently serves as the Collaborative Applicant for the County.  The role of the Collaborative Applicant is to submit the annual application to HUD for CoC Program funds on behalf of all grantees in the Continuum's geographic area, and to administer the CoC to ensure that the operation of the Continuum and use of grant funds meet HUD's requirements. The Continuum's collaborative application includes project applications from the County of Santa Clara, as well as on behalf of non-profit organizations that receive their CoC grant funds directly from HUD.

8.      OSH depends heavily on the CoC grant program to fund critical housing subsidies and services to support individuals and families experiencing chronic homelessness.  The

DECL. OF KATHRYN J. KAMINSKI IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAING ORDER - 3

County's partnerships with HUD, the State of California, local jurisdictions, and non-profits, and the coordination of these efforts through the Santa Clara County Continuum, have resulted in huge strides in meeting community needs to reduce homelessness, even through unprecedented challenges.  For example, from 2015 to 2019, the County's supportive housing system helped nearly 9,000 households move from homelessness to permanent housing and doubled both the number of supportive housing units and temporary shelter capacity.

9.      Additionally, according to the County's 2024 annual report on the Supportive Housing System, our system helped connect nearly 17,500 individuals to permanent housing between 2020 and 2024, including serving 5,514 individuals through rapid rehousing (74% of whom remained housed following this intervention) and 3,789 individuals through permanent supportive housing (95% of whom remained housed following this intervention).  Rapid rehousing consists of time-limited rental assistance paired with case management fitting the needs of the particular household.  Permanent supportive housing consists of long-term rental subsidies (often a HUD housing voucher, such as Section 8 vouchers) paired with case management fitting the needs of the particular household.

10.      To be eligible for CoC-funded housing services, program participants first complete a standardized housing assessment to assess the participant's level of acuity and connect participants experiencing homelessness to available services based on their unique needs.  After assessment, households are then prioritized based on vulnerability, serving the highest need individuals and families first.  This process is known as "Coordinated Entry."  After completing the assessment and prior to being enrolled in a housing program, a trained housing provider will gather documentation of each participant's eligibility, including identification and immigration documents, and refer participants to CoC-funded programs when the participant is

DECL. OF KATHRYN J. KAMINSKI IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAING ORDER - 4

determined to meet program eligibility, including applicable immigration requirements. OSH does not use the SAVE system administered by USCIS to verify immigration status, has not been given access to SAVE, and has not been required to use SAVE or a similar shared, online database to verify immigration status.

11.     A large portion of CoC funding for which the County of Santa Clara is the recipient supports rental assistance and/or case management for residents of permanent supportive housing programs, which provide services such as case management and clinical, educational, vocational, and housing services to help chronically homeless households obtain and keep their housing. The rental assistance and case management services supported through HUD CoC project grants are provided to residents of permanent supportive housing developments throughout the county. Case management matches clients to the services and resources they need to remain stably housed.

12.     As of the last point-in-time count in 2023, nearly 10,000 individuals in Santa Clara County were experiencing homelessness, but the true number is most likely higher. The individuals and families served by these CoC grants are some of the most vulnerable residents of the county, many of whom struggle with psychiatric conditions, chronic health problems, mental health and substance use disorders, family trauma, and other challenges, and require additional and ongoing support and services in order to help ensure that they maintain housing stability. The households served by CoC grants are as diverse as the Santa Clara County population and include veterans, seniors, survivors of domestic violence, families with children, former foster youth, and people with disabilities.

13.     As the collaborative applicant on behalf of the Santa Clara County Continuum, OSH submitted its application to HUD for the two-year Fiscal Year (FY) 2024 and FY 2025

DECL. OF KATHRYN J. KAMINSKI IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAING ORDER - 5

Notice of Funding Opportunity (NOFO) on October 30, 2024.

14.     Awards for the FY 2024 and FY 2025 NOFO include over $47 million in annual grant funding for the Santa Clara County Continuum.  The County of Santa Clara is the direct recipient for $33 million of that amount.

15.     The County of Santa Clara uses these grant funds to deliver services through staff at the Office of Supportive Housing and subcontracts with non-profit service providers selected through competitive procurements.

16.     The funds awarded to the County of Santa Clara are spread across 20 separate projects.  Thus far, the County has received two FY 2024 HUD CoC grant agreements, on March 26, 2025.  The County has met all post-award conditions for funding for both of these grant agreements set forth in 42 U.S.C. § 11382(d)(1)(A).

17.     Attached hereto as Exhibit 1 is a true and correct copy of an FY 2024 grant agreement received from HUD on March 26, 2025, for a grant term beginning on May 1, 2025. This grant would provide $1,669,293 for housing case management for individuals in permanent supportive housing.  This grant would provide support for 120 households.  This grant agreement has been renewed by HUD for the last 14 consecutive years.

18.     Attached hereto as Exhibit 2 is a true and correct copy of a second FY 2024 grant agreement received from HUD on March 26, 2025, for a grant term beginning on May 1, 2025. This grant would provide $2,919,238 for rapid rehousing (including rental assistance and supportive services for families with minor children and young adults).  This grant would provide support for 25 families and 44 transition-age youth (18-24 years old).  This grant agreement has been renewed by HUD for the last 9 consecutive years.

19.     Both of the grant agreements the County has received thus far for this year from

HUD contain new terms that neither I, nor anyone on my team familiar with CoC grants, has ever seen before. These terms are the subject of the County's lawsuit.

20. Awarded funds are not available for federal reimbursement until execution of the grant agreements. HUD regulations say that the CoC grant agreements are to be executed by HUD and the recipient no later than 45 days after all conditions are satisfied. In my years of experience working with HUD CoC grants, I'm not aware of an instance that this deadline has been strictly enforced. This year, however, OSH is concerned that HUD could attempt to use this regulation as a pretense to cancel our grants and recapture funds if the grant agreements are not signed within 45 days of when they were received—i.e., by May 10.

21. Attached hereto as Exhibit 3 is a true and correct copy of HUD's summary report reflecting all 20 of the Santa Clara County Continuum grants awarded through HUD's FY 2024 and FY 2025 NOFO for which the County of Santa Clara is the recipient. This list is available on HUD's website: https://www.hud.gov/stat/cpd/fy2024-coc-competition, under the Summary Reports by State/Territory for California.

22. Other than a small number of grants for which we are waiting for HUD to give notice about additional matching funds conditions it expects from us, the County has met the requirements for all remaining grant funds to be obligated under 42 U.S.C. § 11382(d)(1)(A). Our renewal grants have terms that are set to begin on May 1, 2025, June 1, 2025, July 1, 2025, October 1, 2025, November 1, 2025, and January 1, 2026.

23. Many of the grant awards for which the County of Santa Clara is the recipient are renewals that have been ongoing for several years, through different federal administrations. In my own experience, I have reviewed HUD CoC grant agreements for many years, and throughout this time, the grant terms have been fairly simple and other than outlining the

DECL. OF KATHRYN J. KAMINSKI IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAING ORDER - 7

approved budget and performance period, have generally only referred to the terms contained in the CoC statutory provisions, HUD CoC regulation, and NOFA. This includes but is not limited to grant compliance terms related to program participant eligibility and related eligibility documentation requirements, eligible activities, and eligible costs.

24.     Because so many of our HUD CoC grants are renewals, the County has ongoing obligations through established contractual relationships with service providers. Additionally, because the dates of HUD's awarded grant terms do not line up with the County's fiscal calendar, each year the County enters into a number of service agreements that begin on July 1, the beginning of the County's fiscal year, with the expectation that the HUD CoC grants for projects included in HUD's award determination will be forthcoming, in accordance with the terms set forth in the NOFO (as has been the case in prior years, to my knowledge).

25.     In reliance on HUD's CoC grant award announcement in January of this year, the County has already had to budget for all of its awarded funds for subcontracts with service providers to deliver the CoC programs. As of May 1, 2025, the County had entered into subcontracts with service providers obligating more than $1.1 million in FY 2024 HUD CoC grants. By June 30, 2025, the end of the County's fiscal year, the County expects to have executed subcontracts with service providers worth more than $27.6 million in FY 2024 HUD CoC grant funds.

26.     In total, the FY 2024 HUD CoC grants for which the County of Santa Clara is the recipient would provide case management and supportive services to more than 1,500 households, including chronically homeless individuals and households and individuals with disabilities. The County's CoC grants include Permanent Supportive Housing programs, some of which include grant funds for rental assistance for households in the programs. CoC grants

DECL. OF KATHRYN J. KAMINSKI IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAING ORDER - 8

also fund supportive services such as housing case management for Permanent Supportive

Housing programs.  A portion of the County's CoC grants for supportive case management are

leveraged by housing vouchers administered by the Santa Clara County Public Housing

Authority; the vouchers serve as the Santa Clara County Continuum's in-kind match to satisfy

the conditions of the CoC grant award.  The County's CoC grants also support rapid rehousing

rental assistance combined with supportive services, which help individuals and families in Santa

Clara County exit homelessness and return quickly to permanent housing.  Rapid rehousing is a

key component of the Santa Clara County Continuum's response to homelessness because it

connects people to housing as quickly as possible by providing rental assistance and other

supportive services like housing search and case management for up to two years.

      27.     Thousands of Santa Clara County residents who are experiencing or at risk of

homelessness rely on these programs and others funded by the CoC program.  The most recent

reporting period for Santa Clara County's CoC grant awards show that these grants collectively

served over 1,500 households in Permanent Supportive Housing programs and 185 households in

Rapid Rehousing programs.  In total the County's CoC grants served over 2,400 people

including over 1,947 adults and 507 minor children.  People housed in these programs include

808 seniors, 1,327 people with a mental health disorder, 887 people with a chronic health

condition, 425 people with developmental disabilities, and 838 people with physical disabilities.

The loss of CoC funding would likely result in participants of these programs losing their

housing and being unable to access services they have relied on to achieve and maintain stability

and independence.  Loss of housing interventions such as rapid rehousing would also increase

the burden on the County's emergency shelter/temporary housing programs, and other safety net

programs, because, without access to rental assistance, the households are more likely to become

homeless or enter into chronic homelessness.

28.     I understand that, if the County does not agree to the new terms in the HUD CoC grant agreements, it faces losing nearly $33 million in funding for rental assistance, supportive services, and case management to help thousands of Santa Clara County residents obtain and maintain housing, and connect to employment opportunities, access benefits, and receive a host of other valuable and life-saving services.

29.     The loss of this funding, which represents approximately 37.4% of the County of Santa Clara's entire permanent supportive housing and rapid rehousing program budget, would result in significant harm to the clients who rely on those programs and Santa Clara County's community as a whole.  Losing the HUD CoC funding would not only immediately slash more than a third of our budget for permanent supportive housing and rapid rehousing programs, but would ripple through our entire system and undermine decades of efforts to end homelessness in our community.

30.     While the County leverages a combination of federal, state, and local funds towards its homelessness response, a large portion of rapid rehousing and permanent supportive housing programs are supported with HUD CoC funding.  Without the HUD CoC grant funds, the County would be forced to choose between redirecting County General Funds away from other services and programs—not just housing-related, but in other critical County service areas such as public health, public safety, and social services—towards permanent supportive housing rental assistance, case management, and rapid rehousing to try to make up for the loss and maintain this baseline level of service, or to consider dramatically cutting the programs, which would certainly lead to higher rates of homelessness and strains on other parts of the County's supportive housing system and other public safety net programs that the County is required to

operate.

31.    The County, like entities across California and the nation, is facing budget deficits that seriously strain the County General Fund resources the County has available to fund programs if longstanding federal grant funds are cut off.  To meet the County's obligation to deliver a balanced budget, County departments, agencies, and executive leadership made very difficult choices—including cutting programs, services, and staff positions—in the most recent fiscal year's Adopted Budget to close a $250 million budget deficit while maintaining critical services for the community.  If the County were deprived of its CoC funding, it would struggle to sustain its CoC-funded services that serve homeless families with children; unhoused transition-age youth (age 18-24); chronically homeless adults; and survivors of domestic violence, sexual assault, human trafficking and/or stalking.  With planning for the County's annual budget for the upcoming fiscal year, which begins on July 1, 2025 and runs through June 30, 2026, already well underway, a loss of the County's CoC funding would be a major and immediate disruption.

32.    In addition to the harms to the community, the loss of CoC funds would also create operational harms.  Under the CoC program, the Santa Clara County Continuum is required to have a Homeless Management Information System (HMIS), a software system for coordinating case management services and client information across homelessness assistance and service providers within the region.  The County of Santa Clara manages the HMIS for the Continuum, including through $2.95 million in contracts with a vendor for developing and maintaining the software program that serves as the Santa Clara County Continuum's HMIS and providing technical support and system administrations services for over 1,700 HMIS users.  HMIS administration and licenses support data collection and analysis for many purposes, including prioritizing the most vulnerable homeless households and matching them to supportive

DECL. OF KATHRYN J. KAMINSKI IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAING ORDER - 11

housing programs across the supportive housing system; reporting client outcomes for all homelessness services and programs as required for federal (including HUD) and state grants, as well as local funding partners; reporting system-wide performance measures as required by HUD and state grants; performing the annual homeless population count and housing inventory as required by HUD; and conducting analyses to improve system performance overall to meet the needs of the population, evaluate the efficacy of programs, and better understand our client population. State grants have now incorporated HMIS into their funding requirements as well. Through the FY 2024 and 2025 NOFO, HUD renewed the County's $1.5 million grant for HMIS administration, which accounts for slightly more than 50% of the County's direct HMIS costs. Not only HUD, but also the State of California, require the maintenance of HMIS to meet grant requirements (including reporting requirements under those grants). Therefore, without this grant (which has a term beginning June 1, 2025), the County would be forced to redirect funding away from other programs and services towards HMIS in order to remain in compliance. Another grant renewed by HUD through the FY 2024 and 2025 NOFO would provide $1.5 million towards CoC planning and administration costs that are incurred by the County in doing work that is necessary for HUD grant compliance, such as developing the Community Plan to End Homelessness and providing technical assistance and training on CoC requirements to service providers. Thus, losing the CoC grants for HMIS and for CoC planning/administration would devastate the infrastructure that holds up the County's supportive housing system and create negative impacts that go well beyond just CoC-funded programs.

33.     The loss of CoC funds will also have a direct and deleterious impact on the County. CoC Grants currently fund approximately 20 full-time equivalent positions within OSH (approximately 14% of the Department). OSH's employees are incredibly dedicated public

servants, who are called upon to tackle one of society's most heartbreaking and intractable problems. Our staffing and resources already strain to meet the demand of serving the County's nearly 10,000 homeless residents. The loss of funding for these positions could mean that the Department is forced to make personnel and/or resource cuts, which would harm our ability to administer contracts and grants, provide direct services to homeless clients, and manage programs.

34.    For a number of years, the County of Santa Clara has also annually received other HUD grants, including Supplemental CoC grants to address unsheltered homelessness, Community Development Block Grants, the HOME Investments Partnerships Program, and the Emergency Solutions Grant Program. Accordingly, OSH has also budgeted in its fiscal year 2025 departmental budget approximately $6 million, combined, in reliance on these additional HUD grants. I understand that the new grant funding conditions HUD has inserted into the CoC grants could also be inserted into all HUD grants. Therefore, if it does not accept these conditions, the County may also have to grapple with the loss of federal funding for the broader set of projects and services supported by HUD funds beyond the CoC program.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED at Los Gatos, California this 4th day of May, 2025.



Kathryn J. Kaminski

DECL. OF KATHRYN J. KAMINSKI IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAING ORDER - 13

1

## CERTIFICATE OF SERVICE

2

3       I hereby certify that on May 5, 2025, I served a true and correct copy of the foregoing

4    document on the following parties by the method(s) indicated below:

5

| | |
|---|---|
| Scott Turner<br>Secretary of Housing and Urban Development<br>U.S. Department of Housing and Urban Development<br>Office of the General Counsel<br>Robert C. Weaver Federal Building<br>451 7th Street SW<br>Washington, DC 20410 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| U.S. Department of Housing and Urban Development<br>Office of the General Counsel<br>Robert C. Weaver Federal Building<br>451 7th Street SW<br>Washington, DC 20410 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Sean Duffy<br>Secretary of Transportation<br>U.S. Department of Transportation<br>Office of the General Counsel<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| U.S. Department of Transportation<br>Office of the General Counsel<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Matthew Welbes<br>Acting Administrator, Federal Transit Administration<br>Federal Transit Administration<br>Office of the General Counsel<br>U.S. Department of Transportation, East Building<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☒ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

CERTIFICATE OF SERVICE - 1

| | |
|---|---|
| Federal Transit Administration<br>Office of the General Counsel<br>U.S. Department of Transportation, East Building<br>1200 New Jersey Avenue, SE<br>Washington, DC 20590 | ☐ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Alex Haas, Co-Director<br>Diane Kelleher, Co-Director<br>John Griffiths, Co-Director<br>Eric J. Hamilton, Deputy Assistant Attorney<br>Federal Programs Branch<br>Civil Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC  20530<br><br>alex.haas@usdoj.gov<br>diane.kelleher@usdoj.gov<br>john.griffiths@usdoj.gov<br>eric.hamilton@usdoj.gov | ☐ CM/ECF E-service<br>☒ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
| Teal L. Miller, Acting United States Attorney<br>Rebecca S. Cohen, Civil Division Chief<br>United States Attorney's Office for the Western District of Washington<br>United States Attorney's Office<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br><br>teal.miller@usdoj.gov<br>rebecca.cohen@usdoj.gov | ☐ CM/ECF E-service<br>☒ Email<br>☐ U.S. Mail<br>☒ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 5th day of May 2025.

/s/ Gabriela DeGregorio
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE - 2

EXHIBIT 1

**Grant Number/FAIN: CA0001L9T002414**
**Recipient Name: County of Santa Clara by and through Office of Supportive Housing**
**Tax ID No.: 94-6000533**
**Unique Entity Identifier (UEI) Number: EWHRPZMQEHX3**


## CONTINUUM OF CARE PROGRAM (Assistance Listing# 14.267) GRANT AGREEMENT


This Grant Agreement ("this Agreement") is made by and between the United States Department of Housing and Urban Development ("HUD") and <u>County of Santa Clara by and through Office of Supportive Housing</u> (the "Recipient").

This Agreement, the Recipient's use of funds provided under this Agreement (the "Grant" or "Grant Funds"), and the Recipient's operation of projects assisted with Grant Funds are governed by

1. The Consolidated Appropriations Act, 2024 (Public Law 118-42, approved March 9, 2024);

2. title IV of the McKinney-Vento Homeless Assistance Act 42 U.S.C. 11301 et seq. (the "Act");

3. the Continuum of Care Program rule at 24 CFR part 578 (the "Rule"), as amended from time to time;

4. the Notice of Funding Opportunity for FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program (NOFO), except for references in the NOFO to Executive Orders that have since been repealed;

5. all current Executive Orders; and

6. the Recipient's application submissions on the basis of which these Grant Funds were approved by HUD, including the certifications, assurances, technical submission documents, and any information or documentation required to meet any grant award condition (collectively, the "Application").

The Application is incorporated herein as part of this Agreement, except that only the project (those projects) listed below are funded by this Agreement. In the event of any conflict between any application provision and any provision contained in this Agreement, this Agreement shall control. Capitalized terms that are not defined in this agreement shall have the meanings given in the Rule.

1

☐   The Recipient is a Unified Funding Agency (UFA).
☐   The Recipient is the sole recipient designated by the applicable Continuum of Care.
☒   The Recipient is not the only recipient designated by the applicable Continuum of Care.

HUD's total funding obligation authorized by this grant agreement is $1669293, allocated between the project(s) listed below (each identified by a separate grant number) and, within those projects, between budget line items, as shown below. The Grant Funds an individual project will receive are as shown in the Application on the final HUD-approved Summary Budget for the project. Recipient shall use the Grant Funds provided for the projects listed below, during the budget period(s) period stated below.

| Grant No. (FAIN) | Grant Term | Performance Period | Budget Period | Total Amount |
|---|---|---|---|---|
| CA0001L9T002414 | 12 | May 1, 2025 – April 30, 2026 | May 1, 2025 – April 30, 2026 | $1,669,293 |
| allocated between budget line items as follows: | | | | |
| a.  Continuum of Care Planning Activities | | | | $0 |
| b.  Acquisition | | | | $0 |
| c.  Rehabilitation | | | | $0 |
| d.  New construction | | | | $0 |
| e.  Leasing | | | | $0 |
| f.  Rental assistance | | | | $0 |
| g.  Supportive services | | | | $1,526,629 |
| h.  Operating costs | | | | $0 |
| i.  Homeless Management Information System | | | | $0 |
| j.  Administrative costs | | | | $142,654 |
| k.  Relocation costs | | | | $0 |
| l.  VAWA Costs | | | | $10 |
| m.  Rural Costs | | | | $0 |
| n.  HPC homelessness prevention activities: | | | | |
| Housing relocation and stabilization services | | | | $0 |
| Short-term and medium-term rental assistance | | | | $0 |

**Pre-award Costs for Continuum of Care Planning**

The Recipient may, at its own risk, incur pre-award costs for continuum of care planning awards, after the date of the HUD selection notice and prior to the effective date of this Agreement, if such costs: a) are consistent with 2 CFR 200.458; and b) would be allowable as a

2

post-award cost; and c) do not exceed 10 percent of the total funds obligated to this award. The incurrence of pre-award costs in anticipation of an award imposes no obligation on HUD either to make the award, or to increase the amount of the approved budget, if the award is made for less than the amount anticipated and is inadequate to cover the pre-award costs incurred.

**These provisions apply to all Recipients:**

The Recipient:

    (1) shall not use grant funds to promote "gender ideology," as defined in E.O. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

    (2) agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

    (3) certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964;

    (4) shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment; and

    (5) Notwithstanding anything in the NOFO or Application, this Grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or NOFO requirements implementing Executive Orders that have been revoked.

The recipient must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.

No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.

Subject to the exceptions provided by PRWORA, the recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

HUD will not enforce provisions of the Grant Agreement to the extent that they require the

3

project to use a housing first program model.

As stated in Section III.A.2 of the NOFO, Faith-based organizations may be recipients or subrecipients for funds under this agreement on the same basis as any other organization. Recipients may not, in the selection of subrecipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

If any new projects funded under this Agreement are for project-based rental assistance for a term of fifteen (15) years, the funding provided under this Agreement is for the performance period stated herein only. Additional funding is subject to the availability of annual appropriations.

The budget period and performance period of renewal projects funded by this Agreement will begin immediately at the end of the budget period and performance period of the grant being renewed. Eligible costs incurred between the end of Recipient's budget period and performance period under the grant being renewed and the date this Agreement is executed by both parties may be reimbursed with Grants Funds from this Agreement. No Grant Funds for renewal projects may be drawn down by Recipient before the end date of the project's budget period and performance period under the grant that has been renewed.

For any transition project funded under this Agreement the budget period and performance period of the transition project(s) will begin immediately at the end of the Recipient's final operating year under the grant being transitioned. Eligible costs, as defined by the Act and the Rule incurred between the end of Recipient's final operating year under the grant being transitioned and the execution of this Agreement may be paid with funds from the first operating year of this Agreement.

HUD designations of Continuums of Care as High-performing Communities (HPCS) are published on HUD.gov in the appropriate Fiscal Years' CoC Program Competition Funding Availability page. Notwithstanding anything to the contrary in the Application or this Agreement, Recipient may only use grant funds for HPC Homelessness Prevention Activities if the Continuum that designated the Recipient to apply for the grant was designated an HPC for the applicable fiscal year.

The Recipient must use the Grant Funds only for costs (including indirect costs) that meet the applicable requirements in 2 CFR part 200 (including appendices), as may be amended from time to time. The Recipient's indirect cost rate information is as provided in Addendum #1 to this Agreement. The Recipient must immediately notify HUD upon any change in the Recipient's indirect cost rate, so that HUD can amend the Agreement to reflect the change if necessary.

HUD notifications to the Recipient shall be to the address of the Recipient as stated in the Recipient's applicant profile in *e-snaps*. Recipient notifications to HUD shall be to the HUD Field Office executing the Agreement. No right, benefit, or advantage of the Recipient hereunder may be assigned without prior written approval of HUD.

The Recipient must comply with the applicable requirements in 2 CFR part 200, as may be amended from time to time.

*Build America, Buy America Act*. The Grantee must comply with the requirements of the Build America, Buy America (BABA) Act, 41 USC 8301 note, and all applicable rules and notices, as may be amended, if applicable to the Grantee's infrastructure project. Pursuant to HUD's Notice, "Public Interest Phased Implementation Waiver for FY 2022 and 2023 of Build America, Buy America Provisions as Applied to Recipients of HUD Federal Financial Assistance" (88 FR 17001), any funds obligated by HUD on or after the applicable listed effective dates, are subject to BABA requirements, unless excepted by a waiver.

*Waste, Fraud, Abuse, and Whistleblower Protections*. Any person who becomes aware of the existence or apparent existence of fraud, waste or abuse of any HUD award must report such incidents to both the HUD official responsible for the award and to HUD's Office of Inspector General (OIG). HUD OIG is available to receive allegations of fraud, waste, and abuse related to HUD programs via its hotline number (1-800-347-3735) and its online hotline form. You must comply with 41 U.S.C. § 4712, which includes informing your employees in writing of their rights and remedies, in the predominant native language of the workforce. Under 41 U.S.C. § 4712, employees of a government contractor, subcontractor, grantee, and subgrantee—as well as a personal services contractor—who make a protected disclosure about a Federal grant or contract cannot be discharged, demoted, or otherwise discriminated against as long as they reasonably believe the information they disclose is evidence of:
1. Gross mismanagement of a Federal contract or grant;
2. Waste of Federal funds;
3. Abuse of authority relating to a Federal contract or grant;
4. Substantial and specific danger to public health and safety; or
5. Violations of law, rule, or regulation related to a Federal contract or grant.

HUD may terminate all or a portion of the Grant in accordance with the Act, the Rule, and 2 CFR 200.340.    The Agreement constitutes the entire agreement between the parties and may be amended only in writing executed by HUD and the Recipient.

By signing below, Recipients that are states and units of local government certify that they are following a current HUD approved CHAS (Consolidated Plan).

This agreement is hereby executed on behalf of the parties as follows:

**UNITED STATES OF AMERICA,**
**Secretary of Housing and Urban Development**


BY:  _____
         (Signature)

       _____Rebecca Blanco, CPD Director_____
       (Typed Name and Title)

       _____March 26, 2025_____
       (Date/Federal Award Date)


**RECIPIENT**

County of Santa Clara by and through Office of Supportive Housing____
(Name of Organization)


BY:  _____
         (Signature of Authorized Official)

       _____
       (Typed Name and Title of Authorized Official)

       _____
         (Date)

6

Addendum #1 to CA0001L9T002414

OMB Number. 2501-0044
Expiration Date: 2/28/2027

## Indirect Cost Information for Award Applicant/Recipient

1. Federal Program/Assistance Listing Program Title:
CONTINUUM OF CARE PROGRAM/Assistance Listing# 14.267

2. Legal Name of Applicant/Recipient:

3. Indirect Cost Rate Information for the Applicant/Recipient:
*Please check the box that applies to the Applicant/Recipient and complete the table only as provided by the instructions accompanying this form.*

☐    The Applicant/Recipient will not charge indirect costs using an indirect cost rate.

☐    The Applicant/Recipient will calculate and charge indirect costs under the award by applying a *de minimis* rate as provided by 2 CFR 200.414(f), as may be amended from time to time.

☐    The Applicant/Recipient will calculate and charge indirect costs under the award using the indirect cost rate(s) in the table below, and each rate in this table is included in an indirect cost rate proposal developed in accordance with the applicable appendix to 2 CFR part 200 and, *if required*, has been approved by the cognizant agency for indirect costs.

| Agency/department/major function | Indirect cost rate | Type of Direct Cost Base | Type of Rate |
|---|---|---|---|
|  | % |  |  |
|  | % |  |  |
|  | % |  |  |

4. Submission Type (check only one):
☐ Initial submission   ☐ Update

5. Effective date(s):

6. Certification of Authorized Representative for the Applicant/Recipient:
**Under penalty of perjury, I certify on behalf of the Applicant/Recipient that
(1) all information provided on this form is true, complete, and accurate, and
(2) the Applicant/Recipient will provide HUD with an update to this form immediately upon learning of any change in the information provided on this form, and
(3) I am authorized to speak for the Applicant/Recipient regarding all information provided on this form.

Signature: _____

Date: _____

Name: _____

Title: _____

7

**\*\*Warning:** Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil and administrative penalties (18 U.S.C §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. § 3729, 3802; 24 CFR § 28.10(b)(iii)).

**Public Reporting Burden Statement:** This collection of information is estimated to average 0.25 hours per response, including the time for reviewing instructions, searching existing data sources, gathering, and maintaining the data needed, and completing and reviewing the collection of the requested information. Comments regarding the accuracy of this burden estimate and any suggestions for reducing this burden can be sent to: U.S. Department of Housing and Urban Development, Office of the Chief Data Officer, R, 451 7th St SW, Room 8210, Washington, DC 20410-5000. Do not send completed forms to this address. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a valid OMB control number. This agency is authorized to collect this information under Section 102 of the Department of Housing and Urban Development Reform Act of 1989. The information you provide will enable HUD to carry out its responsibilities under this Act and ensure greater accountability and integrity in the provision of certain types of assistance administered by HUD. This information is required to obtain the benefit sought in the grant program. Failure to provide any required information may delay the processing of your application and may result in sanctions and penalties including of the administrative and civil money penalties specified under 24 CFR §4.38. This information will not be held confidential and may be made available to the public in accordance with the Freedom of Information Act (5 U.S.C. §552). The information contained on the form is not retrieved by a personal identifier, therefore it does not meet the threshold for a Privacy Act Statement.

8

OMB Number. 2501-0044
Expiration Date: 2/28/2027

**Instructions for Completing the Indirect Cost Information for the Award Applicant/Recipient**

| Number | Item | Instructions |
|---|---|---|
| 1 | Federal Program/ Assistance Listing Program Title | Enter the title of the program as listed in the applicable funding announcement or notice of funding availability. |
| 2 | Legal Name of Applicant/ Recipient | Enter the legal name of the entity that will serve as the recipient of the award from HUD. |
| 3 | Indirect Cost Rate Information for the Applicant/ Recipient | Mark the one (and only one) checkbox that best reflects how the indirect costs of the Applicant/Recipient will be calculated and charged under the award. Do not include indirect cost rate information for subrecipients.

The table following the third checkbox must be completed only if that checkbox is checked. When listing a rate in the table, enter the percentage amount (for example, "15%"), the type of direct cost base to be used (for example, "MTDC"), and the type of rate ("predetermined," "final," "fixed," or "provisional").

If using the Simplified Allocation Method for indirect costs, enter the applicable indirect cost rate and type of direct cost base in the first row of the table.

If using the Multiple Allocation Base Method, enter each major function of the organization for which a rate was developed and will be used under the award, the indirect cost rate applicable to that major function, and the type of direct cost base to which the rate will be applied.

If the Applicant/Recipient is a government and more than one agency or department will carry out activities under the award, enter each agency or department that will carry out activities under the award, the indirect cost rate(s) for that agency or department, and the type of direct cost base to which each rate will be applied. |
| 4 | Submission Type | Check the appropriate box to identify whether this is the first submission of this form for the award or an update to a previous submission of this form for the award. |
| 5 | Effective date(s) | Enter the date(s) for which the information on this form applies. |
| 6 | Certification of Authorized Representative for the Applicant/ Recipient | An employee or officer of the Applicant/Recipient with the capacity and authority to make this certification for the Applicant/Recipient must make the certification by signing as provided. They must also provide the date of their signature, full name, and position title. |

9

# EXHIBIT 2

**Grant Number/FAIN: CA1385L9T002409**
**Recipient Name: County of Santa Clara by and through Office of Supportive Housing**
**Tax ID No.: 94-6000533**
**Unique Entity Identifier (UEI) Number: EWHRPZMQEHX3**


## CONTINUUM OF CARE PROGRAM (Assistance Listing# 14.267) GRANT AGREEMENT


This Grant Agreement ("this Agreement") is made by and between the United States Department of Housing and Urban Development ("HUD") and County of Santa Clara by and through Office of Supportive Housing (the "Recipient").

This Agreement, the Recipient's use of funds provided under this Agreement (the "Grant" or "Grant Funds"), and the Recipient's operation of projects assisted with Grant Funds are governed by

1. The Consolidated Appropriations Act, 2024 (Public Law 118-42, approved March 9, 2024);

2. title IV of the McKinney-Vento Homeless Assistance Act 42 U.S.C. 11301 et seq. (the "Act");

3. the Continuum of Care Program rule at 24 CFR part 578 (the "Rule"), as amended from time to time;

4. the Notice of Funding Opportunity for FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program (NOFO), except for references in the NOFO to Executive Orders that have since been repealed;

5. all current Executive Orders; and

6. the Recipient's application submissions on the basis of which these Grant Funds were approved by HUD, including the certifications, assurances, technical submission documents, and any information or documentation required to meet any grant award condition (collectively, the "Application").

The Application is incorporated herein as part of this Agreement, except that only the project (those projects) listed below are funded by this Agreement. In the event of any conflict between any application provision and any provision contained in this Agreement, this Agreement shall control. Capitalized terms that are not defined in this agreement shall have the meanings given in the Rule.

1

☐    The Recipient is a Unified Funding Agency (UFA).
☐    The Recipient is the sole recipient designated by the applicable Continuum of Care.
☒    The Recipient is not the only recipient designated by the applicable Continuum of Care.


HUD's total funding obligation authorized by this grant agreement is $2919238, allocated between the project(s) listed below (each identified by a separate grant number) and, within those projects, between budget line items, as shown below. The Grant Funds an individual project will receive are as shown in the Application on the final HUD-approved Summary Budget for the project. Recipient shall use the Grant Funds provided for the projects listed below, during the budget period(s) period stated below.

| Grant No. (FAIN) | Grant Term | Performance Period | Budget Period | Total Amount |
|---|---|---|---|---|
| CA1385L9T002409 | 12 | May 1, 2025 – April 30, 2026 | May 1, 2025 – April 30, 2026 | $2,919,238 |
| allocated between budget line items as follows: | | | | |
| a.   Continuum of Care Planning Activities | | | | $0 |
| b.   Acquisition | | | | $0 |
| c.   Rehabilitation | | | | $0 |
| d.   New construction | | | | $0 |
| e.   Leasing | | | | $0 |
| f.   Rental assistance | | | | $2,704,620 |
| g.   Supportive services | | | | $70,888 |
| h.   Operating costs | | | | $0 |
| i.   Homeless Management Information System | | | | $0 |
| j.   Administrative costs | | | | $143,720 |
| k.   Relocation costs | | | | $0 |
| l.   VAWA Costs | | | | $10 |
| m.  Rural Costs | | | | $0 |
| n.   HPC homelessness prevention activities: | | | | |
| Housing relocation and stabilization services | | | | $0 |
| Short-term and medium-term rental assistance | | | | $0 |

**Pre-award Costs for Continuum of Care Planning**

The Recipient may, at its own risk, incur pre-award costs for continuum of care planning awards, after the date of the HUD selection notice and prior to the effective date of this Agreement, if such costs: a) are consistent with 2 CFR 200.458; and b) would be allowable as a

post-award cost; and c) do not exceed 10 percent of the total funds obligated to this award. The incurrence of pre-award costs in anticipation of an award imposes no obligation on HUD either to make the award, or to increase the amount of the approved budget, if the award is made for less than the amount anticipated and is inadequate to cover the pre-award costs incurred.

**These provisions apply to all Recipients:**

The Recipient:

(1) shall not use grant funds to promote "gender ideology," as defined in E.O. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

(2) agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

(3) certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964;

(4) shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment; and

(5) Notwithstanding anything in the NOFO or Application, this Grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or NOFO requirements implementing Executive Orders that have been revoked.

The recipient must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.

No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.

Subject to the exceptions provided by PRWORA, the recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

HUD will not enforce provisions of the Grant Agreement to the extent that they require the

3

project to use a housing first program model.

As stated in Section III.A.2 of the NOFO, Faith-based organizations may be recipients or subrecipients for funds under this agreement on the same basis as any other organization. Recipients may not, in the selection of subrecipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

If any new projects funded under this Agreement are for project-based rental assistance for a term of fifteen (15) years, the funding provided under this Agreement is for the performance period stated herein only. Additional funding is subject to the availability of annual appropriations.

The budget period and performance period of renewal projects funded by this Agreement will begin immediately at the end of the budget period and performance period of the grant being renewed. Eligible costs incurred between the end of Recipient's budget period and performance period under the grant being renewed and the date this Agreement is executed by both parties may be reimbursed with Grants Funds from this Agreement. No Grant Funds for renewal projects may be drawn down by Recipient before the end date of the project's budget period and performance period under the grant that has been renewed.

For any transition project funded under this Agreement the budget period and performance period of the transition project(s) will begin immediately at the end of the Recipient's final operating year under the grant being transitioned. Eligible costs, as defined by the Act and the Rule incurred between the end of Recipient's final operating year under the grant being transitioned and the execution of this Agreement may be paid with funds from the first operating year of this Agreement.

HUD designations of Continuums of Care as High-performing Communities (HPCS) are published on HUD.gov in the appropriate Fiscal Years' CoC Program Competition Funding Availability page. Notwithstanding anything to the contrary in the Application or this Agreement, Recipient may only use grant funds for HPC Homelessness Prevention Activities if the Continuum that designated the Recipient to apply for the grant was designated an HPC for the applicable fiscal year.

The Recipient must use the Grant Funds only for costs (including indirect costs) that meet the applicable requirements in 2 CFR part 200 (including appendices), as may be amended from time to time. The Recipient's indirect cost rate information is as provided in Addendum #1 to this Agreement. The Recipient must immediately notify HUD upon any change in the Recipient's indirect cost rate, so that HUD can amend the Agreement to reflect the change if necessary.

HUD notifications to the Recipient shall be to the address of the Recipient as stated in the Recipient's applicant profile in *e-snaps*. Recipient notifications to HUD shall be to the HUD Field Office executing the Agreement. No right, benefit, or advantage of the Recipient hereunder may be assigned without prior written approval of HUD.

4

The Recipient must comply with the applicable requirements in 2 CFR part 200, as may be amended from time to time.

*Build America, Buy America Act*. The Grantee must comply with the requirements of the Build America, Buy America (BABA) Act, 41 USC 8301 note, and all applicable rules and notices, as may be amended, if applicable to the Grantee's infrastructure project. Pursuant to HUD's Notice, "Public Interest Phased Implementation Waiver for FY 2022 and 2023 of Build America, Buy America Provisions as Applied to Recipients of HUD Federal Financial Assistance" (88 FR 17001), any funds obligated by HUD on or after the applicable listed effective dates, are subject to BABA requirements, unless excepted by a waiver.

*Waste, Fraud, Abuse, and Whistleblower Protections*. Any person who becomes aware of the existence or apparent existence of fraud, waste or abuse of any HUD award must report such incidents to both the HUD official responsible for the award and to HUD's Office of Inspector General (OIG). HUD OIG is available to receive allegations of fraud, waste, and abuse related to HUD programs via its hotline number (1-800-347-3735) and its online hotline form. You must comply with 41 U.S.C. § 4712, which includes informing your employees in writing of their rights and remedies, in the predominant native language of the workforce. Under 41 U.S.C. § 4712, employees of a government contractor, subcontractor, grantee, and subgrantee—as well as a personal services contractor—who make a protected disclosure about a Federal grant or contract cannot be discharged, demoted, or otherwise discriminated against as long as they reasonably believe the information they disclose is evidence of:
1. Gross mismanagement of a Federal contract or grant;
2. Waste of Federal funds;
3. Abuse of authority relating to a Federal contract or grant;
4. Substantial and specific danger to public health and safety; or
5. Violations of law, rule, or regulation related to a Federal contract or grant.

HUD may terminate all or a portion of the Grant in accordance with the Act, the Rule, and 2 CFR 200.340.      The Agreement constitutes the entire agreement between the parties and may be amended only in writing executed by HUD and the Recipient.

By signing below, Recipients that are states and units of local government certify that they are following a current HUD approved CHAS (Consolidated Plan).

5

This agreement is hereby executed on behalf of the parties as follows:

**UNITED STATES OF AMERICA,**
**Secretary of Housing and Urban Development**


BY: _____
   (Signature)

   _____ Rebecca Blanco, CPD Director _____
   (Typed Name and Title)

   _____ March 24, 2025 _____
   (Date/Federal Award Date)


**RECIPIENT**

County of Santa Clara by and through Office of Supportive Housing__
(Name of Organization)


BY: _____
   (Signature of Authorized Official)

   _____
   (Typed Name and Title of Authorized Official)

   _____
   (Date)

6

Addendum #1 to CA1385L9T002409

OMB Number. 2501-0044
Expiration Date: 2/28/2027

## Indirect Cost Information for Award Applicant/Recipient

1.  Federal Program/Assistance Listing Program Title:
CONTINUUM OF CARE PROGRAM/Assistance Listing# 14.267

2.  Legal Name of Applicant/Recipient:

3.  Indirect Cost Rate Information for the Applicant/Recipient:
*Please check the box that applies to the Applicant/Recipient and complete the table only as provided by the instructions accompanying this form.*

☐     The Applicant/Recipient will not charge indirect costs using an indirect cost rate.

☐     The Applicant/Recipient will calculate and charge indirect costs under the award by applying a *de minimis* rate as provided by 2 CFR 200.414(f), as may be amended from time to time.

☐     The Applicant/Recipient will calculate and charge indirect costs under the award using the indirect cost rate(s) in the table below, and each rate in this table is included in an indirect cost rate proposal developed in accordance with the applicable appendix to 2 CFR part 200 and, *if required*, has been approved by the cognizant agency for indirect costs.

| Agency/department/major function | Indirect cost rate | Type of Direct Cost Base | Type of Rate |
|---|---|---|---|
| | % | | |
| | % | | |
| | % | | |

4.  Submission Type (check only one):
☐ Initial submission   ☐ Update

5.  Effective date(s):

6.  Certification of Authorized Representative for the Applicant/Recipient:
**Under penalty of perjury, I certify on behalf of the Applicant/Recipient that
(1) all information provided on this form is true, complete, and accurate, and
(2) the Applicant/Recipient will provide HUD with an update to this form immediately upon learning of any change in the information provided on this form, and
(3) I am authorized to speak for the Applicant/Recipient regarding all information provided on this form.

Signature: _____

Date: _____

Name: _____

Title: _____

7

**Warning:** Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil and administrative penalties (18 U.S.C §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. § 3729, 3802; 24 CFR § 28.10(b)(iii)).

**Public Reporting Burden Statement:** This collection of information is estimated to average 0.25 hours per response, including the time for reviewing instructions, searching existing data sources, gathering, and maintaining the data needed, and completing and reviewing the collection of the requested information. Comments regarding the accuracy of this burden estimate and any suggestions for reducing this burden can be sent to: U.S. Department of Housing and Urban Development, Office of the Chief Data Officer, R, 451 7th St SW, Room 8210, Washington, DC 20410-5000. Do not send completed forms to this address. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a valid OMB control number. This agency is authorized to collect this information under Section 102 of the Department of Housing and Urban Development Reform Act of 1989. The information you provide will enable HUD to carry out its responsibilities under this Act and ensure greater accountability and integrity in the provision of certain types of assistance administered by HUD. This information is required to obtain the benefit sought in the grant program. Failure to provide any required information may delay the processing of your application and may result in sanctions and penalties including of the administrative and civil money penalties specified under 24 CFR §4.38. This information will not be held confidential and may be made available to the public in accordance with the Freedom of Information Act (5 U.S.C. §552). The information contained on the form is not retrieved by a personal identifier, therefore it does not meet the threshold for a Privacy Act Statement.

8

OMB Number. 2501-0044
Expiration Date: 2/28/2027

**Instructions for Completing the Indirect Cost Information for the Award Applicant/Recipient**

| Number | Item | Instructions |
|---|---|---|
| 1 | Federal Program/ Assistance Listing Program Title | Enter the title of the program as listed in the applicable funding announcement or notice of funding availability. |
| 2 | Legal Name of Applicant/ Recipient | Enter the legal name of the entity that will serve as the recipient of the award from HUD. |
| 3 | Indirect Cost Rate Information for the Applicant/ Recipient | Mark the one (and only one) checkbox that best reflects how the indirect costs of the Applicant/Recipient will be calculated and charged under the award. Do not include indirect cost rate information for subrecipients.<br><br>The table following the third checkbox must be completed only if that checkbox is checked. When listing a rate in the table, enter the percentage amount (for example, "15%"), the type of direct cost base to be used (for example, "MTDC"), and the type of rate ("predetermined," "final," "fixed," or "provisional").<br><br>If using the Simplified Allocation Method for indirect costs, enter the applicable indirect cost rate and type of direct cost base in the first row of the table.<br><br>If using the Multiple Allocation Base Method, enter each major function of the organization for which a rate was developed and will be used under the award, the indirect cost rate applicable to that major function, and the type of direct cost base to which the rate will be applied.<br><br>If the Applicant/Recipient is a government and more than one agency or department will carry out activities under the award, enter each agency or department that will carry out activities under the award, the indirect cost rate(s) for that agency or department, and the type of direct cost base to which each rate will be applied. |
| 4 | Submission Type | Check the appropriate box to identify whether this is the first submission of this form for the award or an update to a previous submission of this form for the award. |
| 5 | Effective date(s) | Enter the date(s) for which the information on this form applies. |
| 6 | Certification of Authorized Representative for the Applicant/ Recipient | An employee or officer of the Applicant/Recipient with the capacity and authority to make this certification for the Applicant/Recipient must make the certification by signing as provided. They must also provide the date of their signature, full name, and position title. |

9

# EXHIBIT 3

| State | CoC Number | CoC Name | Organization Name | Project or Award Name | FY 2024 Amount |
|---|---|---|---|---|---|
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | CA-500 CoC Planning Project FY2024 | $1,500,000 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | RELIGHT Project | $1,680,036 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | Immanuel-Sobrato Community | $944,697 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | Housing Case Management for Medical Respite | $1,669,293 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | Second Street Studios | $615,561 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | CoC GRANT 5022 | $5,450,415 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | Calabazas Apartments | $741,016 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | Leigh Ave | $610,091 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | Renascent Place | $713,605 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | SCC Coordinated Assessment System | $138,644 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | SCC RRH for Families & Youth | $2,919,238 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | Samaritan Inns | $721,603 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | CASA 200 | $1,392,162 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | SCC HMIS Consolidation | $1,600,696 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | CCP Placement Project | $7,741,946 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | CoC GRANT 5320 | $543,830 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | 2024 DV Bonus TH-RRH | $599,781 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | Ira D. Hall | $301,095 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | Alvarado Park | $124,633 |
| California | CA-500 | San Jose/Santa Clara City & County CoC | County of Santa Clara by and through Office of Supportive Housing | CoC GRANT 5022 Expansion | $2,904,831 |