1          The Honorable Barbara J. Rothstein

2

3

4

5

6

7              UNITED STATES DISTRICT COURT FOR THE
               WESTERN DISTRICT OF WASHINGTON
8                          AT SEATTLE

9
   MARTIN LUTHER KING, JR. COUNTY, *et*      Case No. 2:25-cv-00814-BJR
10  *al.*,
                                             **DEFENDANTS' OPPOSITION TO**
11                          Plaintiffs,      **PLAINTIFFS' MOTION FOR A**
                                             **PRELIMINARY INJUNCTION**
12           v.

13  SCOTT TURNER, *et al.,*

14                          Defendants.

15

16

17

18

19

20

21

22

23

24

# TABLE OF CONTENTS

FACTS ............................................................................................................................ 2

I.   Homelessness Grants .......................................................................................... 2

II.  Transportation Grants ........................................................................................ 4

III.  This Lawsuit......................................................................................................... 6

STANDARD OF REVIEW ............................................................................................ 6

ARGUMENT .................................................................................................................. 7

I.   This Court lacks jurisdiction over Plaintiffs' claims .......................................... 7

    A.    The Tucker Act governs contractual claims against the federal government .......... 8

    B.    Plaintiffs seek to enforce contract rights ................................................. 11

    C.    Plaintiffs seek contract remedies.......................................................... 13

II.  Even if the Court had jurisdiction, Plaintiffs have not shown they are likely to succeed on the merits ........................................................................................... 16

    A.    Plaintiffs' Fifth Amendment vagueness claim is unlikely to succeed on the merits ............................................................................................ 17

        i.    Plaintiffs' facial challenge under the Due Process Clause to contract terms is categorically improper ............................................................... 17

        ii.    Plaintiffs have no constitutionally protected property interest here .............. 19

        iii.   Plaintiffs' vagueness claim fails on the merits ............................................. 20

    B.    Plaintiffs' separation-of-powers claim is unlikely to succeed on the merits.......... 23

    C.    Plaintiffs are unlikely to succeed on their APA claims........................................... 26

III.  Plaintiffs do not face imminent, irreparable harm warranting emergency relief. ............. 27

IV.  The public interest and balance of equities do not favor an injunction ............................ 29

DEFENDANTS' OPPOSITION TO PLAINTIFFS'  
MOTION FOR A PRELIMINARY INJUNCTION  
[Case No. 2:25-cv-00814-BJR] - i

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

V.    Any injunctive relief should be narrowly tailored and permit lawful agency action........ 30

VI.   Any injunction should be stayed pending any appeal and secured by a bond.................. 30

CONCLUSION ………………………………………………………………………30

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - ii

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Seven cities and counties ask this Court to enjoin the U.S. Department of Housing and Urban Development (HUD), the U.S. Department of Transportation (DOT), and the Federal Transit Administration (FTA) from withholding or conditioning grant funds on certain grounds. All Plaintiffs[1] sue HUD, while only King County brings claims against DOT and FTA.

As Defendants argued in response to Plaintiffs' motion for a temporary restraining order (TRO), Plaintiffs' claims face a threshold barrier: this Court lacks subject-matter jurisdiction over them. At base, Plaintiffs' lawsuit asks the Court to require the government to pay them money under grant agreements—and the Tucker Act vests exclusive jurisdiction over such disputes with the Court of Federal Claims. If Plaintiffs' claims proceed at all, they must be heard there.

Because this Court lacks jurisdiction, it need not consider the parties' other arguments. If it does, however, Plaintiffs' bid for an injunction fails for additional reasons. First, Plaintiffs cannot show they are likely to succeed on the merits of their claims. Their improper facial vagueness challenge is not based on any constitutionally protected property right, and regardless, the provisions at issue are not vague. Their separation-of-powers claim is merely a statutory challenge by another name, and Defendants have statutory authority to impose the challenged conditions. And Plaintiffs' Administrative Procedure Act (APA) claims fail because conditioning of grants is committed to agency discretion by law.

Second, Plaintiffs cannot show imminent, irreparable harm warranting emergency relief. They do not identify any deadlines by which they must comply with the challenged conditions or lose funding. And the only harm they face is monetary, which is quintessential reparable harm.

---

[1] For ease of reference, Defendants refer to the relevant units of Plaintiffs' local governments that receive these grant funds collectively as "Plaintiffs," except as necessary to differentiate King County Metro Transit (King County Metro), which receives DOT funding, from the division of King County that receives HUD funding. This definition excludes the City of Columbus, which does not seek an injunction. *See* Dkt. 5 at 1 n.1.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Third, the public interest and balance of equities do not favor an injunction because much of the disbursement of public funds to Plaintiffs is likely irreversible, and the government has an interest in ensuring federal funds are used in compliance with federal conditions.

Lastly, if the Court nonetheless grants Plaintiffs' motion, any injunctive relief should be narrowly tailored to the specific conditions and grants at issue, allow for lawful agency activity, and be secured by an appropriate bond—and regardless, should be stayed pending a determination by the Solicitor General whether to appeal and, if appeal is authorized, pending any appeal.

## FACTS

### I.    Homelessness Grants

Under its Continuum of Care (CoC) program, HUD awards grants to fund homelessness services. 42 U.S.C. §§ 11381–89. HUD first issues a notice of funding opportunity (NOFO), soliciting applications for grants. *Id.* § 11382(b). Five months after the application deadline, HUD announces recipients through a "conditional award" that sets out requirements the grantee must meet. *Id.* §§ 11382(c)(2), (d)(1)(A). Once the grantee has met the requirements, the parties must sign a grant agreement and HUD must obligate the funds within 45 days. *Id.* § 11382(d)(2); 24 C.F.R. § 578.23(a).

In January 2024, HUD issued a two-year NOFO for CoC grants for Fiscal Years (FY) 2024 and 2025. Compl. ¶ 42. Plaintiffs timely submitted applications, and, on January 17, 2025, HUD announced FY2024 conditional awards to them totaling more than $280 million. *Id.* ¶¶ 45, 46, 53. Between March 11 and April 2025,[2] HUD sent grant agreements to Plaintiffs that contain six conditions Plaintiffs now challenge (collectively, the CoC Grant Conditions):

---

[2] *See* Barbee Decl. ¶¶ 20–22 (agreement sent to Pierce County on March 11, 2025); Brell-Vujovic Decl. ¶¶ 9–11 (agreement sent to Snohomish County sometime in April 2025).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1. The "EO Condition" provides the recipient's use of grant funds and operation of funded projects are governed by, *inter alia*, current executive orders. Marshall Decl., Ex. B at 1.

2. Under the "Discrimination Conditions," a recipient agrees it "does not operate any programs that violate any applicable Federal anti-discrimination laws," including Title VI, and that its compliance with "applicable Federal anti-discrimination laws is material" to the government's payment decisions for purposes of the False Claims Act. *Id.* at 3.

3. The "Immigration Cooperation Condition" provides that a grant recipient may not use grant funding "in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation." *Id.*

4. The "Immigration Verification Condition" provides that, "[s]ubject to the exceptions provided by PRWORA, the recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States." *Id.*

5. The "Gender Ideology Condition" states that a recipient "shall not use grant funds to promote 'gender ideology,' as defined in E.O. 14168." *Id.*

6. The "Abortion Condition" similarly provides that a recipient "shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182." *Id.*

On May 2, 2025, New York City returned signed copies of its FY2024 grant agreements, along with a statement that it will not consent to the CoC Grant Conditions. Warren Decl. ¶ 17. And on or about May 9, 2025, San Francisco and King County also returned their signed FY2024 grant agreements, excising the CoC Grant Conditions. Declaration of Claudette Fernandez ¶ 7. The remaining Plaintiffs have not yet executed their FY2024 grant agreements. *Id.* ¶ 8. Because Plaintiffs have not executed the FY2024 grant agreements accepting their conditions, the money may not be drawn down for use. *Id.* ¶ 9.

Most of Plaintiffs' preexisting CoC programs are currently operating under FY2023 CoC grants. Fernandez Decl. ¶ 15 & Ex. A. As of May 14, 2025:

- Eighty percent of Santa Clara County's and San Francisco's CoC programs have funding, totaling $15,393,977 and $30,383,324, respectively. *See* Ex. A at 1–2 (total balance minus, for San Francisco, those balances unavailable to draw).

- Ninety percent of Boston's CoC programs have funding, totaling $17,528,890. *Id.* at 3.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Ninety-three percent of New York City's CoC programs have funding, totaling $76,140,646. *See id.* at 4–6 (total balance minus those balances unavailable to draw).

- Eighty-five percent of King County's CoC programs have funding, totaling $28,221,954. *See id.* at 7 (total balance minus those balances unavailable to draw).

- All but two of Pierce County's CoC programs have funding, totaling $2,295,978. *Id.* at 8.

## II.    Transportation Grants

DOT and FTA administer various grant programs for public transit. Some are discretionary, while others are "formula" grants, in which Congress designates specific sums to be made available for transit projects in different regions based on statutory formulas. Declaration of Susan Fletcher ¶ 3.

To accept an FTA grant award, a recipient executes a grant document electronically through FTA's grant awards system. Fletcher Decl. ¶ 12. This grant document incorporates by reference, (i) the then-current version of the FTA Master Agreement, and (ii) the FTA Certifications and Assurances document. *Id.*

**FTA Master Agreement:** For more than 15 years, FTA has updated its Master Agreement approximately once a year to reflect changes in applicable law or agency policy. Fletcher Decl. ¶ 5. When FTA updates its Master Agreement, it places a copy of the latest version on its public website and immediately begins incorporating the new version into new federal grants or grant amendments. *Id.* While FTA usually updates the Master Agreement annually, it updated it twice in 2022, and not at all in 2023. *Id.* ¶ 6. This year, FTA again updated the Master Agreement twice, in March and April 2025, and followed its usual practice both times. *Id.*

**FTA Certifications and Assurances document:** FTA requires all its grantees to sign a separate annual "Certifications and Assurances" document. *See* 49 U.S.C. § 5323(n). This document compiles both universal provisions that all FTA grantees must agree to, and

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

certifications and assurances that only apply to some grantees depending on the nature of the recipient, grant programs, or projects. Fletcher Decl. ¶ 10.

King County Metro currently has more than $446 million in FTA grants. Compl. ¶ 61. Its grants are approximately 56% formula funds, 18% discretionary, and 25% are funds flexed to FTA from the Federal Highway Administration that take on the characteristics of formula funds once transferred to FTA. Fletcher Decl. ¶ 13. All grants fund capital costs, not King County Metro's operations. *Id.* ¶ 14. King County Metro signed last year's Certifications and Assurances document, which remains valid until FTA issues Certifications and Assurances for FY2025. *Id.* ¶ 15. And its prior grants, including the FY2023 grants it previously executed, were made subject to the then-current versions of the FTA Master Agreement. *Id.* ¶ 14.

King County Metro challenges three conditions in the latest version of the FTA Master Agreement (collectively, the FTA Grant Conditions):

1. The longstanding "EO Condition" provides that grantees will comply with applicable "federal requirements," and defines "federal requirement" to include any "applicable federal law, regulation, or executive order." *See* Morrison Decl. Ex. B-2 at 7, 15.

2. The "Discrimination Conditions," added on March 26, 2025, require grant recipients to comply with and not violate "any applicable Federal antidiscrimination laws," certify they do not operate diversity, equity, and inclusion (DEI) initiatives that violate federal antidiscrimination laws, and certify their compliance is material to the government's payment decisions for purposes of the False Claims Act. *Id.* Ex. B-1 at 59.

3. The "Immigration Cooperation Condition," added on April 25, 2025, requires grant recipients to cooperate with federal officials in the enforcement of federal law, including cooperating with and not impeding components of the Department of Homeland Security in the enforcement of federal immigration law. *Id.* Ex. B-2 at 58.

FTA's EO Condition predates this administration and has remained unchanged for several years. *See* Morrison Decl., Exs. B-1 and B-2 at 7, 15; Fletcher Decl. ¶ 8. And both FTA's Master Agreement and its Certifications and Assurances have long required all grantees to certify their compliance with federal antidiscrimination laws. Fletcher Decl. ¶¶ 7, 11. Both documents have

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

also long required grantees to agree that their grant applications, certifications, and assurances are subject to civil penalties under the Program Fraud Civil Remedies Act and potential criminal liability for false statements. *Id.*

On May 8, 2025, King County Metro electronically executed five new grant agreements or amendments to existing grant agreements totaling $79,950,228 of federal funds. Fletcher Decl. ¶ 16. These agreements incorporated by reference the current version of the Master Agreement and Certifications and Assurances document. *See id.* ¶¶ 4, 12. Currently, there are no new grants or amendments to existing grants pending with FTA that are waiting for King County Metro's execution. *Id.* ¶ 17.

### III.    This Lawsuit

Plaintiffs filed this lawsuit on May 2, 2025, and moved for a TRO on May 5, 2025. Dkt. 5. After briefing, and a hearing on May 7, 2025, the Court issued a TRO restraining Defendants from imposing or enforcing the CoC and FTA Grant Conditions, or rescinding Plaintiffs' grants based on those conditions, for 14 days. Dkt. 52 at 4.

### <u>STANDARD OF REVIEW</u>

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A stay "is not a matter of right, even if irreparable injury might otherwise result" but rather an exercise of judicial discretion that depends on the particular circumstances of the case. *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). To justify an injunction, a petitioner must establish that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Preliminary relief is meant to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). When preliminary relief would change the status quo and "order a responsible party to take action," it is "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). In such cases, the moving party "must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis original).

## ARGUMENT

This Court should deny Plaintiffs' preliminary injunction motion for the threshold reason that the Court has no jurisdiction over Plaintiffs' claims here: under the Tucker Act, the Court of Federal Claims provides the exclusive forum for Plaintiffs' claims.

Moreover, even if the Court had jurisdiction, it should deny Plaintiffs' motion because they have not satisfied the *Winter* factors. Plaintiffs cannot show they are likely to succeed on the merits of any of the three types of claims argued in their motion—their Due Process vagueness claim, their separation-of-powers claim, or their APA claims.[3] Nor can they show imminent likelihood of irreparable harm. And the public interest and balance of equities do not support granting the likely largely irreversible remedy Plaintiffs seek here. But if the Court does choose to grant any injunction in this case, it should be narrowly tailored, secured by a bond, and stayed pending a decision whether to appeal.

### I.    This Court lacks jurisdiction over Plaintiffs' claims

This Court lacks jurisdiction over Plaintiffs' claims because they arise from Plaintiffs' contracts with the government and should therefore be heard in the Court of Federal Claims.

---

[3] Plaintiffs also pled a Tenth Amendment claim but do not argue they are likely to succeed on it. *See* Dkt. 5. Defendants do not raise counterarguments to arguments that have not been made.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    A suit against the federal government "must start from the . . . assumption that no relief is

2   available." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1998). For

3   the government to be subject to suit, Congress must clearly and unequivocally waive sovereign

4   immunity, and its waiver must be strictly construed. *Id.*; *N. Star Alaska v. United States (N. Star*

5   *Alaska II)*, 9 F.3d 1430, 1432 (9th Cir. 1993) (en banc).

6         The potentially applicable waivers here are found in the APA: 5 U.S.C. § 702 for Plaintiffs'

7   constitutional claims, and 5 U.S.C. § 704 for their APA claims. *See The Presbyterian Church*

8   *(U.S.A.) v. United States*, 870 F.2d 518, 526 (9th Cir. 1989) (noting section 702 is the waiver of

9   sovereign immunity for constitutional claims). But both sections waive sovereign immunity only

10  if the plaintiff's claims "do not seek relief expressly or impliedly forbidden by another statute."

11  *Tucson Airport*, 136 F.3d at 645. This Court's TRO did not address this limitation, instead

12  considering only whether Plaintiffs' claims sought money damages and whether an adequate

13  remedy was available elsewhere. Dkt. 52 at 2. But here, the Tucker Act "'impliedly forbids'

14  declaratory and injunctive relief" on all Plaintiffs' claims "and precludes a § 702 waiver of

15  sovereign immunity." *Tucson Airport*, 136 F.3d at 646 (quoting *N. Side Lumber Co. v. Block*, 753

16  F.2d 1482, 1485 (9th Cir. 1985)). And because section 702 does not waive sovereign immunity,

17  Plaintiffs' claims may not proceed under section 704 either. *See id.* at 646 (explaining APA claims

18  must meet the requirements of sections 702 and 704).

19         **A.  The Tucker Act governs contractual claims against the federal government**

20        The Tucker Act grants exclusive jurisdiction to the Court of Federal Claims over "any

21  claim against the United States founded" on "any express or implied contract with the United

22  States" for amounts over ten thousand dollars. 28 U.S.C. § 1491(a). That court may hear "claim[s]

23  against the United States founded either upon the Constitution, or any Act of Congress or any

24  regulation of an executive department, or upon any express or implied contract with the United

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* § 1491(a)(1).

2  Thus, where a party seeks funding that it believes the government is obligated to pay under a

3  contract, their suit must proceed only in the Court of Federal Claims.

4      This prohibition on district court jurisdiction extends to claims founded on grants, like

5  those at issue here, that are implemented through "contracts to set the terms of and receive

6  commitments from recipients." *Boaz Housing Auth. v. United States*, 994 F.3d 1359, 1368 (Fed.

7  Cir. 2021). Indeed, last month, the Supreme Court stayed a district court order to make payments

8  based on grant agreements because the government was "likely to succeed in showing that the

9  District Court lacked jurisdiction" to bar termination of various education-related grants. *Dep't of*

10 *Ed. v. California*, 145 S. Ct. 966, 968 (2025). The Court held the injunction was effectively an

11 order "to enforce a contractual obligation to pay money," and thus was not covered by section

12 702's limited waiver of sovereign immunity; instead, the Tucker Act grants the Court of Federal

13 Claims exclusive jurisdiction over such suits. *Id.* This Court should follow the Supreme Court's

14 stay ruling. *See Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("[T]his court considers

15 itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings,

16 particularly when the dicta is recent and not enfeebled by later statements."); *ACLU of Ky. v.*

17 *McCreary Cnty.*, 607 F.3d 439, 447 (6th Cir. 2010) (lower courts "obligated to follow Supreme

18 Court dicta" absent "substantial reason for disregarding it").

19     Similarly, the Court of Appeals for the District of Columbia Circuit recently stayed

20 enforcement of two district court injunctions restoring or extending plaintiffs' federal grants, on

21 the ground that the lower courts "likely lacked jurisdiction" to issue the injunctions. *Widakuswara*

22 *v. Lake*, No. 25-5144, 2025 WL 1288817, at *3 (D.C. Cir. May 3, 2025), *petition for rehearing en*

23 *banc docketed* (May 5, 2025); *RFE/RL, Inc. v. Lake*, No. 25-5158, Dkt. 2114775, at 4 (D.C. Cir.

24

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

May 7, 2025) (filed at Dkt. 47-1 here).[4] In both cases, a federal agency had awarded grants to the relevant plaintiffs, but after the President issued an executive order reducing the agency's operations to the minimum level required by statute, it terminated the plaintiffs' grants in one case and allowed plaintiffs' grants to lapse in the other. *Widakuswara*, 2025 WL 1288817, at *1; *RFE/RL*, Dkt. 2114775, at 1. The plaintiffs sued, and a district court granted preliminary injunctions ordering restoration of the terminated grants, extension of the lapsed grants, and "disbursement to [plaintiffs] of the funds Congress appropriated." *Widakuswara*, 2025 WL 1288817, at *4; *RFE/RL*, Dkt. 2114775, at 2. But on appeal, the Court of Appeals stayed enforcement of the injunctions, holding that the government was likely to succeed in showing that "the inherently contractual nature of the relief afforded" made the Court of Federal Claims the exclusive forum for the suit. *Widakuswara*, 2025 WL 1288817, at *4; *see RFE/RL*, Dkt. 2114775, at 4.

That Plaintiffs frame some of their claims here as constitutional does not change the analysis. The Tucker Act "prevents constitutional claims that are dependent on rights under a government contract from being brought in the district court." *Tucson Airport Auth.*, 136 F.3d at 648 (interpreting *N. Star Alaska v. United States (N. Star Alaska III)*, 14 F.3d 36, 37 (9th Cir. 1994)). What matters is substance, not labels: thus, to determine whether a particular action is "at its essence a contract action" subject to the Tucker Act, a court must examine "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) (quotation omitted); *see United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1025 (9th Cir. 2023) (*Megapulse* test applies

---

[4] After the plaintiffs petitioned for *en banc* review, the court administratively stayed the stays in *RFE/RL* and *Widakuswara*, specifically noting that the administrative stay conveyed no judgment about the merits of the cases. *Middle E. Broad. Networks, Inc. v. United States*, No. 25-5150, 2025 WL 1378735, at *1 (D.C. Cir. May 7, 2025) (en banc) (per curiam).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

in the Ninth Circuit). And here, Plaintiffs' claims fail both prongs of that test: (1) Plaintiffs seek to enforce rights under their contracts with the government; and (2) as relief, Plaintiffs seek specific performance of those contracts.

### B. Plaintiffs seek to enforce contract rights

First, the Court must examine what rights Plaintiffs seek to enforce. "If rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does, even if the plaintiff formally seeks injunctive relief." *United Aeronautical*, 80 F.4th at 1026 (emphasis original). To determine whether the source of the rights in question is contractual, a court must consider whether "the plaintiff's asserted rights and the government's purported authority arise from statute"; whether "the plaintiff's rights exist prior to and apart from rights created under the contract"; and whether "the plaintiff seeks to enforce any duty imposed upon the government by the . . . relevant contracts to which the government is a party." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) (cleaned up).

Here, the source of Plaintiffs' rights is their grant agreements. No statute requires HUD or DOT to award grants to Plaintiffs specifically regardless of whether they meet the agencies' terms and conditions. The CoC statute authorizes HUD to award grants on a competitive basis using certain non-exclusive selection criteria, and to disburse funds to recipients who meet all HUD's program requirements. 42 U.S.C. §§ 11382(a), (d)(2). Likewise, FTA is authorized by statute to "prescribe terms for a project that receives Federal financial assistance," for all its grants, even its formula grants. *See* 49 U.S.C. § 5334(a)(1). That is, the statutes neither provide any rights to funds without meeting the agencies' terms and conditions for the grant nor specify exclusive requirements for the terms and conditions of those grants.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    If Congress had intended to mandate Plaintiffs' grant funding directly and without agency

2    intermediation, it would have done so through line-item appropriations. For example, for FY2024,

3    Congress required that $844,000,000 be appropriated for the Executive Office of Immigration

4    Review, of which "not less than $28,000,000 . . . shall be available for services and activities

5    provided by the Legal Orientation Program." Consolidated Appropriations Act, 2024, Pub. L.

6    No. 118-42, Div. C, tit. II, 138 Stat. 25, 133; *see also, e.g.*, *RFE/RL, Inc. v. Lake*, No. 1:25-CV-

7    799-RCL, 2025 WL 1232863, at *4 (D.D.C. Apr. 29, 2025) (noting the International Broadcasting

8    Act instructed the agency to provide grants to RFE/RL, and the Consolidated Appropriations Act

9    appropriated funds for RFE/RL by name), *stayed on appeal*, No. 25-5158, Dkt. 2114775 (D.C.

10   Cir. May 7, 2025) (per curiam), *administratively stayed*, *Middle E. Broad. Networks, Inc. v. United*

11   *States*, 2025 WL 1378735 (D.C. Cir. May 7, 2025) (en banc) (per curiam).

12   Here, by contrast, HUD's enabling statutes contain no such mandate to fund Plaintiffs

13   specifically. And while FTA is required to make available its formula funds to transit agencies

14   according to statutory formulas for apportioning funds, again, the statute explicitly allows FTA to

15   "prescribe terms" for those grants. 49 U.S.C. § 5334(a)(1). Thus, if the grant agreements to which

16   Plaintiffs are party had never existed, Plaintiffs would have no claim to funds from the agencies.

17   That means the source of Plaintiffs' rights are contractual, and this Court lacks subject-matter

18   jurisdiction. *See Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)

19   (court lacks subject-matter jurisdiction because asserted right to payment "in no sense . . . exist[ed]

20   independently of [its] contract"). Whether labeled as APA claims or constitutional claims, the

21   Tucker Act governs, "despite plaintiff's allegations of statutory and constitutional violations."

22   *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

23   Lastly, even if this Court concludes the Tucker Act does not foreclose jurisdiction over all

24   Plaintiffs' claims, it still must dismiss or transfer the claims that indisputably sound in contract,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

because "pendent jurisdiction has no application to a claim against the United States." *Lenoir v. Porters Creek Watershed Dist.*, 586 F.2d 1081, 1087 (6th Cir. 1978); *see McKay v. United States,* 703 F.2d 464, 470–71 (10th Cir. 1983) (rejecting jurisdiction where plaintiff sought to bring a Tucker Act claim, under which jurisdiction lies exclusively with the Claims Court, as a pendent claim to a claim properly before the court). Here, Plaintiffs argue their claims do not sound in contract because, except for New York City (and, now, King County and San Francisco), they do not have existing contracts for FY2024, as they have not signed the CoC Agreements. Dkt. 44 at 5. This is wrong because their claims would still rest on the text of the contractual agreements. *See RFE/RL*, Dkt. 2114775, at 4 (holding the district court likely lacked jurisdiction to enforce payment under contracts that were under negotiation).[5] But in any event, there can be no question that the Tucker Act applies to those Plaintiffs who have signed FY2024 grant agreements and are now seeking to limit their enforcement. Thus, at a minimum, this Court lacks jurisdiction over King County's, San Francisco's, and New York City's claims, which must be either dismissed or transferred to the Court of Federal Claims.

### C.  Plaintiffs seek contract remedies

Second, to determine whether a claim sounds in contract, the Court must examine what relief Plaintiffs want. Where, as here, a plaintiff seeks to enforce a contractual agreement with the federal government and obtain the payment of money, the inquiry is straightforward: a district court "cannot order the Government to pay money due on a contract." *U.S. Conference of Catholic*

---

[5] In *RFE/RL*, as noted above, Congress's FY2024 appropriations act required the agency to fund the plaintiff specifically; because the plaintiff was therefore seeking to enforce statutory rights rather than contract rights, the D.C. Circuit noted the district court likely had jurisdiction to consider whether the statute required the agency to enter into a grant agreement at all. *Id.* at 3. But, even so, the court held the district court likely had no jurisdiction to dictate the terms and conditions of that agreement or to require the agency to pay out funds under it—precisely the relief Plaintiffs seek here. *Id.* at 4.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  *Bishops v. Dep't of State*, No. 25-cv-00465, 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025). A

2  request for an order that the government "must perform" on its contract is one that "must be

3  resolved by the Claims Court." *Id.* (quoting *Ingersoll-Rand Co.*, 780 F.2d at 80); *see California*,

4  145 S. Ct. at 968. It makes no difference that Plaintiffs frame the relief they seek as an injunction

5  barring Defendants from terminating their grants under certain circumstances and requiring them

6  to pay out on them—for the plaintiffs in *California* did the same. *California*, 145 S. Ct. at 968.

7  And, just as the Supreme Court observed in that case, a district court cannot grant any such relief—

8  rather, Plaintiffs must look to the Court of Federal Claims.

9      In its TRO, this Court ruled jurisdiction does not lie in the Court of Federal Claims in part

10 because declaratory and injunctive relief "is generally not available" in that court. Dkt. 52 at 2.

11 But that it is irrelevant to the jurisdictional analysis. As the Ninth Circuit has explained, "[t]he fact

12 that the Court of Federal Claims has no power to grant specific enforcement of a contract does not

13 mean that a suit for specific enforcement can be brought in district court." *Doe v. Tenet*, 329 F.3d

14 1135, 1141–42 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 (2005). Rather, "the Tucker

15 Act is a limited waiver of sovereign immunity for contract actions; equitable contract remedies

16 denied to the Court of Federal Claims are not within the waiver and may not be enforced against

17 the United States at all." *Id.*; *see also M–S–R Pub. Power Agency v. Bonneville Power Admin.*, 297

18 F.3d 833, 840 n.7 (9th Cir. 2002) (dismissing claims that "sound[ed] in contract" and stating,

19 "[w]here, as here, petitioner seeks equitable relief rather than damages, he may go wanting").

20      Here, the non-monetary injunctive relief Plaintiffs seek—an order requiring that specific

21 terms of their contracts be excised—is inseparable from the fundamentally contractual relief they

22 seek—uninterrupted grant funding under those contracts. If Plaintiffs were not grantees of the

23 agencies, they would have no way to negotiate the terms under which the government administers

24 its funds or to receive them at all. Accordingly, the equitable relief they request is wholly auxiliary

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   to their contractual claims, and Plaintiffs cannot evade the Tucker Act's exclusive jurisdiction

2   merely by requesting equitable relief. *N. Star Alaska III*, 14 F.3d at 37.

3       Plaintiffs' argument that *Bowen v. Massachusetts*, 487 U.S. 879 (1988), saves their claims

4   because they seek only equitable relief (Dkt. 44 at 4) is foreclosed by Supreme Court and Ninth

5   Circuit precedent. After *Bowen*, the Supreme Court reaffirmed that the APA does not distinguish

6   between money damages and monetary relief: "Almost invariably . . . suits seeking (whether by

7   judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff

8   are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no

9   more than compensation for loss resulting from the defendant's breach of legal duty." *Great–West*

10  *Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted). Indeed, in

11  *California*, the district court had held that it had jurisdiction based on an expansive reading of

12  *Bowen*, *see* No. 25-10548, 2025 WL 760825, at *1 (D. Mass. Mar. 10, 2025) (adopting reasoning

13  of *Mass. v. NIH*, No. 25-cv-10340, 2025 WL 702163, at *7-8 (D. Mass. Mar. 5, 2025))—but the

14  Supreme Court rejected that holding in it stay order last month, ruling the district court likely did

15  *not* have jurisdiction, 145 S. Ct. at 968. Moreover, in *North Star Alaska III*, the Ninth Circuit

16  declined to interpret *Bowen* to give a "more expansive view of district court jurisdiction." 14 F.3d

17  at 38. The court highlighted that *Bowen* did not involve a contract and did not analyze the language

18  in section 702 foreclosing jurisdiction where another statute impliedly forbids it, and thus

19  explicitly "decline[d] to overrule this Court's very specific holding that the APA does *not* waive

20  sovereign immunity for contracts claims seeking equitable relief." *Id.* (emphasis original, citation

21  omitted). This Court is bound by these clear precedents.

22      The district court decisions Plaintiffs cite are similarly distinguishable and rest on faulty

23  analysis. *See* Dkt. 44 at 6. In *Maine v. U.S. Department of Agriculture*, an out-of-circuit district

24  court relied entirely on *Bowen* in holding it had jurisdiction. No. 1:25-cv-00131-JAW, 2025 WL

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1088946, at *19 (D. Me. Apr. 11, 2025). This reliance on *Bowen* cannot be squared with the Ninth

Circuit and Supreme Court precedent discussed above. Similarly, in *San Francisco Unified School*

*District v. Americorps*, to the extent the Americorps grants hinged on grant agreements as the

grants do here, the court also unduly relied on *Bowen*. No. 25-cv-02425, 2025 WL 1180729, at *2

(N.D. Cal. Apr. 23, 2025). It further erroneously based its ruling in part on the fact the Court of

Federal Claims could not grant the relief Plaintiffs desired. *Id.* at *7. But, as discussed above,

whether that court can grant a particular form of relief is irrelevant to its jurisdiction. *See supra*

Argument, Section I.C.

Finally, *Climate United Fund v. Citibank, N.A.*, turned on facts inapplicable here: the grants

at issue had been terminated, so in holding it had jurisdiction, the court noted it was not asked to

consider "the terms of any contract." No. 25-cv-698, 2025 WL 842360, at *6 (D.D.C. Mar. 18,

2025). That order is now on appeal, where the D.C. Circuit administratively stayed its enforcement

insofar as it enabled or required Citibank to release or disburse funds. No. 25-5122, Dkt. 2111459

(D.C. Cir. Apr. 16, 2025). Moreover, the D.C. district court's decision predated the D.C. Circuit's

recent stay order in *Widakuswara*, 2025 WL 1288817, in which the court of appeals held the

opposite: that a district court likely did not have jurisdiction to order terminated grants restored.

Because section 702 does not waive sovereign immunity for Plaintiffs' claims in this Court,

this Court should deny Plaintiffs' motion for a preliminary injunction and transfer this case to the

Court of Federal Claims.

## II. Even if the Court had jurisdiction, Plaintiffs have not shown they are likely to succeed on the merits

As a preliminary matter, Plaintiffs wrongly argue they should not have to satisfy the

heightened standard for a mandatory injunction because they seek an order prohibiting Defendants

from "attaching" the contested conditions to their grants. Dkt. 44 at 10. But the conditions are

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

already "attached": Plaintiffs ask the Court to require Defendants to remove conditions that are currently in place and thus must meet the higher standard for a mandatory injunction. In any event, Plaintiffs cannot meet either standard, for the reasons below.

### A. Plaintiffs' Fifth Amendment vagueness claim is unlikely to succeed on the merits

Plaintiffs cannot meet their burden of showing they are likely to succeed on the merits of their Fifth Amendment vagueness claim (Compl. ¶¶ 141–51) for three reasons. First, Plaintiffs' facial challenge to the contested conditions is premature. Second, Plaintiffs cannot show any constitutionally protected property right threatened by the conditions. And third, the contested conditions simply are not vague.

### i. *Plaintiffs' facial challenge under the Due Process Clause to contract terms is categorically improper*

To begin with, the void-for-vagueness doctrine under the Fifth Amendment's Due Process Clause is inapplicable here. The doctrine "guarantees that ordinary people have 'fair notice' of the conduct a *statute* proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 155–56 (2018) (plurality) (emphasis added). When courts have applied this doctrine beyond the statutory context, they have applied it to mandatory regulations of the general public's primary conduct. *See, e.g.*, *FCC v. Fox Tv. Stations, Inc.*, 567 U.S. 239, 253 (2012) (applying the doctrine to "[a] conviction or punishment" obtained under a "statute or regulation"); *Karem v. Trump*, 960 F.3d 656, 664 (D.C. Cir. 2020) (noting the Fifth Amendment's "requirement of clarity" applies when the government imposes "civil penalties"). No such concerns exist here in contracts between specific parties.

Moreover, the appropriate posture for Due Process vagueness challenges is as-applied. That is because "[o]bjections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright,* 486 U.S. 356, 361 (1988); *see also Kashem v. Barr*,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

941 F.3d 358, 376–78 (9th Cir. 2019) ("[T]o the extent *Johnson* and *Dimaya* bypassed as-applied challenges and proceeded directly to facial vagueness, that approach appears to have turned on the exceptional circumstances of the provisions at issue." (citation omitted)). Here, Defendants have not sought to enforce any of the challenged contract provisions against Plaintiffs.

And, contrary to Plaintiffs' alarmist vision of the agencies suddenly and arbitrarily cutting off funding (*see* Dkt. 5 at 24), by regulation, if HUD determines a recipient has violated its CoC grant conditions, it must give the grantee notice of that determination and an opportunity to either contest it or correct the violation. 24 C.F.R. § 578.107. Similarly, FTA's Master Agreement requires the agency to give the grantee written notice of any perceived violation of the agreement, as do DOT's procedural requirements for FTA. FTA Master Agreement (Morrison Decl. Ex. A) at 50, Section 11; Fletcher Decl. ¶ 19 & Ex. A. Indeed, DOT issued a memorandum just two months ago clarifying and reiterating DOT's policy to provide fair notice and due process in any enforcement action. Fletcher Decl. ¶ 20 & Ex. B. Plaintiffs therefore have no grounds to argue they would lack notice of Defendants' applied enforcement of the provisions so as to justify a facial challenge.

To the extent Plaintiffs worry a Defendant may try to enforce one of these provisions in an allegedly legally unjustifiable way, such speculation cannot justify facial invalidation. *See Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) ("The mere possibility that some agency might make a legally suspect decision to award a contract or to deny funding for a project does not justify an injunction against enforcement of a policy that . . . is above suspicion in the ordinary course of administration." (citation omitted)). Plaintiffs cannot ask the Court to assume in advance that Defendants will adopt unlawful interpretations of existing laws and ordinary contractual language. In fact, in this posture, the Court is required to assume the

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

opposite. *See Kohli v. Gonzales*, 473 F.3d 1061, 1068 (9th Cir. 2007) ("[A]dministrative agencies are entitled to a presumption that they act properly and according to law." (citation omitted)).

### ii. Plaintiffs have no constitutionally protected property interest here

In any event, Plaintiffs' Fifth Amendment Due Process claim fails because they cannot identify any right protected by it. To have a property interest protected by the Due Process Clause, "a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (citation omitted). The Supreme Court has thus identified a narrow set of government benefits, so-called "new property," that are protected under the Due Process Clause. *See Perry v. Sindermann*, 408 U.S. 593 (1972) (tenured teaching position); *Goldberg v. Kelly*, 397 U.S. 254 (1970) (welfare benefits); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972) (collected cases). The Due Process protections afforded to this set of entitlement-like benefits, however, have not been extended to ordinary government contracts. *See generally Eloyan v. United States*, No. 2:19-cv-9565, 2020 WL 7382316, at *5–6 (C.D. Cal. Oct. 21, 2020) (collecting cases).

This reasoning is particularly applicable here, where half the Plaintiffs seek to enforce a supposed property interest in funds they have not yet signed contracts for. If there is no constitutionally protected property interest in goods and services a party has contracted for, there certainly can be none in funds subject to an unexecuted contract. That Plaintiffs largely are hoping to renew previously funded CoC grants does not change the analysis: while the CoC statute *allows* recipients to apply to renew their grants, it does not *entitle* them to renewal. *See* 42 U.S.C. § 11386c; *see also Roth*, 408 U.S. at 578 (employee whose appointment was not renewed "surely had an abstract concern in being rehired, but he did not have a property interest sufficient" to support a Fifth Amendment claim).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        Moreover, even where Plaintiffs seek to enforce already-executed agreements (while, in

2  the case of three Plaintiffs' HUD grants, carving out the challenged provisions), they cannot show

3  a protected property interest. A benefit "is not a protected entitlement if government officials may

4  grant or deny it in their discretion." *Castle Rock*, 545 U.S. at 756. And here, by regulation, the

5  agencies may terminate their grants at any time, if they determine the grant "no longer effectuates

6  the program goals *or agency priorities*." 2 C.F.R. § 200.340(a)(4) (emphasis added); *see* HUD

7  FY2024 and FY2025 NOFO, at 118 (noting the agency may terminate an award for any of the

8  reasons described in 2 C.F.R. § 200.340)[6]; FTA Master Agreement (Morrison Decl. Ex. A) at 50–

9  51 (same). These unilaterally terminable awards are the antithesis of a constitutionally protected

10  entitlement.

11        Finally, all this reasoning is particularly applicable to government grants, because grant

12  funds remain monies of the United States until the purpose of the grant is accomplished. *Bennett*

13  *v. Ky. Dep't of Educ.*, 470 U.S. 656, 669 (1985); *e.g.*, *In re Joliet-Will Cmty. Action Agency*, 847

14  F.2d 430, 432 (7th Cir. 1988) (holding grant money, despite being transferred to the grant recipient,

15  remained assets of the federal government). Thus, far from Plaintiffs holding a constitutionally

16  protected property interest in the granted funds, those funds never become Plaintiffs' property at

17  all.

### iii.  Plaintiffs' vagueness claim fails on the merits

19        Lastly, Plaintiffs' vagueness arguments are meritless in any event. As a preliminary matter,

20  the Supreme Court has set a high bar for supposed "vagueness" in government funding conditions.

21  *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588–89 (1998). In *Finley*, plaintiffs

22  brought vagueness challenges under the First and Fifth Amendments to a funding provision that

---

[6] https://www.hud.gov/sites/dfiles/CPD/documents/FY2024_FY2025_CoC_and_YHDP_NOFO_FR-6800-N-25.pdf.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    required the National Endowment for the Arts to "take[] into consideration general standards of

2    decency and respect for the diverse beliefs and values of the American public." *Id.* at 572 (quoting

3    20 U.S.C. § 954(d)(1)). The Supreme Court acknowledged that these terms were "undeniably

4    opaque, and if they appeared in a criminal statute or regulatory scheme, they could raise substantial

5    vagueness concerns." 524 U.S. at 588. But, the Court reasoned, "when the Government is acting

6    as patron rather than as sovereign, the consequences of imprecision are not constitutionally

7    severe." *Id.* at 589. Here, Plaintiffs advance four reasons that they argue the contested conditions

8    are unconstitutionally vague—but none have merit under the *Finley* standard.

9            First, Plaintiffs assert the EO Conditions are vague because they invoke executive orders

10   that, by definition, cannot apply to Plaintiffs. Dkt. 5 at 18. But this is nonsensical. Executive orders

11   apply to the Defendant agencies, which are, of course, also parties to these contracts and whose

12   funds are being used for the relevant projects. There is no ambiguity here.

13           Second, Plaintiffs argue the Discrimination Conditions fail to give proper notice of

14   prohibited conduct and provide for arbitrary enforcement. Dkt. 5 at 18–19. These arguments also

15   fail, because a requirement that a grantee abide by existing law cannot be vague. The Due Process

16   Clause requires that laws "give the person of ordinary intelligence a reasonable opportunity to

17   know what is prohibited, so that he may act accordingly" and "provide explicit standards for those

18   who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). While this doctrine

19   demands scrutiny of laws that identify a *new* conduct for punishment, it has little bite with respect

20   to the Discrimination Conditions. Neither penalizes any new range of conduct; by their own terms,

21   they concern only programs and conduct that "violate federal antidiscrimination laws," Marshall

22   Decl., Ex. B at 3 (CoC condition); Morrison Decl., Ex. B-1 at 59 (FTA condition), and Plaintiffs

23   do not challenge those laws as unconstitutionally vague. *See Nat'l Ass'n of Diversity Officers in*

24   *Higher Educ. v. Trump*, No. 25-1189, Dkt. 29, at 7 (4th Cir. Mar. 14, 2025) (Harris, J., concurring)

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  ("The Executive Orders do not purport to establish the illegality of all efforts to advance diversity,

2  equity or inclusion, and they should not be so understood."). Plaintiffs thus have no legitimate

3  concern that they will not be given a "reasonable opportunity to know what is prohibited."

4  *Grayned*, 408 U.S. at 108.

5       Moreover, the certifications required by the Discrimination Conditions are not novel. It has

6  been true for decades that "[e]very application for Federal financial assistance must, as a *condition*

7  to its approval . . . contain assurances that the program will comply with Title VI *and* . . . the

8  executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv. Comm'n*, 463 U.S.

9  582, 629–30 & n.22 (1983) (Marshall, J., dissenting) (citing regulations from thirteen federal

10 agencies, including HUD and DOT). And of course, the obligations of Title VI apply regardless

11 of any certification. *Id.*

12      The requirements Plaintiffs object to here are no different: they "do[] not place upon a

13 recipient any unanticipated burdens because any recipient must anticipate having to comply with

14 the law." *Guardians*, 463 U.S. at 630 (Marshall, J., dissenting). And while FTA's Discrimination

15 Condition addresses unlawful DEI programs specifically, that limitation merely renders it

16 narrower than scores of certifications signed by recipients of federal assistance that they are

17 complying with Title VI in every respect. Moreover, to the extent Plaintiffs object to certifying

18 that their compliance is material to the government for purposes of the False Claims Act, a grant

19 recipient "relying on a good faith interpretation of [the law] is not subject to liability" under the

20 False Claims Act. *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999). Further,

21 FTA grantees have been required to certify for at least the last fifteen years that their grant

22 applications, certifications, and assurances are subject to the Program Fraud Civil Remedies Act,

23 31 U.S.C. § 3801. Fletcher Decl. ¶¶ 7, 11. Plaintiffs do not and cannot argue that these

24 longstanding requirements are unconstitutional.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Third, Plaintiffs take issue with everyday words in the challenged provisions such as

2  "facilitates," "promote," "cooperate," and "elective." Dkt. 5 at 19. But even criminal statutes need

3  not define every ordinary word they use. Where challenged language does not define a word, it is

4  simply read with "its ordinary meaning." *United States v. Kuzma*, 967 F.3d 959, 969 (9th Cir.

5  2020) (holding the word "designed" in a criminal statute was not unconstitutionally vague).

6  Moreover, the Ninth Circuit has rejected facial vagueness challenges to such ordinary terms as

7  Plaintiffs criticize here, even under the higher standard applied to criminal laws. For example, it

8  recently held that a statute that made noncitizens ineligible for relief from removal if they

9  knowingly "encouraged" another noncitizen to unlawfully enter the United States was not facially

10  overbroad, because its meaning was clear in the context of criminal law. *Marquez-Reyes v.

11  Garland*, 36 F.4th 1195, 1201–02 (9th Cir. 2022). And, again, the standard is far lower for

12  government grant conditions. *See Finley*, 524 U.S. at 589 (holding that funds awarded for

13  "subjective criteria such as 'excellence'" are selective subsidies not void for vagueness). If the

14  words "designed" or "encouraged" in criminal statutes are not unconstitutionally vague, the words

15  "facilitate," "promote," or "abet" in a government grant agreement surely cannot be.

16    Fourth, Plaintiffs object to the phrase "gender ideology" in the HUD grant agreements.

17  Dkt. 5 at 19. But they do not even argue that the term is vague; nor could they, since the provision

18  specifically cites the definition of the term given in Executive Order 14168. Clearly, Plaintiffs do

19  not agree with the term's definition or the policy preferences it aims to advance. *See id*. (describing

20  the definition as "demeaning" and "unscientific"). But that does not make it vague.

21    **B.  Plaintiffs' separation-of-powers claim is unlikely to succeed on the merits**

22    Plaintiffs' separation-of-powers arguments fail because the challenged conditions are:

23  (1) imposed pursuant to Defendants' statutory authority; (2) germane to the grants at issue; and

24  (3) dependent on and subject to existing law.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 23

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

First, contrary to Plaintiffs' arguments, the Defendant agencies by law may terminate their grants merely based on a change in policy priorities. 2 C.F.R. § 200.340(a)(4); *see* HUD FY2024 and FY2025 NOFO, at 118 (noting the agency may terminate an award for any of the reasons described in 2 C.F.R. § 200.340)[7]; FTA Master Agreement (Morrison Decl. Ex. A) at 50–51 (same). And the enabling statutes and regulations give the agencies broad leeway to dictate the conditions under which they make grants. Under 49 U.S.C. § 5334(a)(1), for example, DOT "may . . . prescribe terms for a project that receives Federal financial assistance." It also may "include in an agreement or instrument . . . a covenant or term" it "considers necessary." *Id.* § 5334(a)(9). Moreover, contrary to Plaintiffs' assertion that HUD must set out all grant conditions in a NOFO before adding them to a grant agreement, by regulation, HUD may in fact use the grant agreement to set forth "other circumstances under which funds may be deobligated and other sanctions may be imposed." 24 C.F.R. § 578.107(d)(6).

Second, Plaintiffs' argument that the contested conditions are not germane to the funded projects is simply incorrect. As to the Discrimination Conditions, Plaintiffs do not contest that their longstanding certifications of compliance with antidiscrimination laws were germane to their prior HUD and DOT grants; they therefore cannot straight-facedly argue that these conditions, which reference the same federal antidiscrimination laws, are somehow not germane. As to the remaining disputed conditions, examining the differences between the DOT and HUD conditions demonstrates they are drafted to apply to the programs at issue. Thus, the FTA Master Agreement does not include provisions concerning gender ideology or elective abortion, because it is difficult to imagine how grants used for public transit projects would ever implicate such uses. *See* Morrison Decl. Ex. A. By contrast, HUD's grant agreements include such provisions because, by regulation,

---

[7] https://www.hud.gov/sites/dfiles/CPD/documents/FY2024_FY2025_CoC_and_YHDP_NOFO_FR-6800-N-25.pdf.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    CoC funds can be used, not just for housing, but for a range of "supportive services," including

2    "counseling," "health education," "referral to community resources," "treatment of mental health

3    conditions," and "outpatient health services" including "provision of medication"—all of which

4    could implicate gender ideology, elective abortion, or both. 24 C.F.R. § 578.53. Similarly, the

5    Immigration Cooperation Conditions differ between the two agencies' agreements, because one

6    applies to housing and the other to transit. *See* Marshall Decl, Ex. B at 3 (HUD condition);

7    Morrison Decl. Ex. B-2 at 58 (FTA condition).

8         Third, in arguing the challenged conditions exceed Defendants' statutory authority,

9    Plaintiffs once more rely on characterizations of the challenged conditions that are inconsistent

10   with their plain terms. The Discrimination Conditions, the Immigration Verification Condition,

11   and all the referenced executive orders are on their face limited by existing applicable laws. And

12   definitionally, conditioning grant funds to the extent consistent with applicable law cannot be

13   interpreted as exceeding the law. *See, e.g.*, *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012)

14   ("[A]s an agency under the direction of the executive branch, it must implement the President's

15   policy directives to the extent permitted by law."); *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C.

16   Cir. 1981).

17        The Ninth Circuit's decision in *City & County of San Francisco v. Trump*, 897 F.3d 1225,

18   1239 (9th Cir. 2018), is not to the contrary. There, the court considered more stringent language

19   in an executive order that "unambiguously command[ed] action" to ensure that certain

20   jurisdictions would be ineligible for funding. *Id.* at 1240. The case does not, however, stand for

21   the broad proposition that limitation clauses should be ignored. To the contrary, the Ninth Circuit

22   emphasized that "[s]avings clauses are read in their context." *Id.* at 1239. Examining the context

23   in that case, the court held that because there were no circumstances in which the executive order's

24   directive could be constitutional, the "savings clause does not and cannot override its meaning."

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 25

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   *Id.* at 1240. In other words, because the provision commanded wholly illegal action, a savings

2   clause purporting to limit the provision to existing law was meaningless. Here, by contrast, the

3   challenged provisions are not unconstitutional on their face, and thus, the savings clauses

4   materially limit Defendants' actions under them.

5                    **C.  Plaintiffs are unlikely to succeed on their APA claims**

6            Plaintiffs are not likely to prevail on any of their APA claims because they seek to challenge

7   decisions quintessentially "committed to agency discretion by law," for which the APA does not

8   provide an avenue for review. 5 U.S.C. § 701(a)(2). An agency's determination of how best to

9   condition appropriated funds to fulfill its legal mandates is classic discretionary agency action. *See*

10  *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).

11           In *Lincoln*, the Supreme Court held that the Indian Health Service's decision to discontinue

12  a program it had previously funded and to instead reallocate those funds to other programs was

13  not reviewable under the APA. 508 U.S. at 185–88, 193. The Court explained that the "allocation

14  of funds from a lump-sum appropriation" is an "administrative decision traditionally regarded as

15  committed to agency discretion," because its purpose is to allow the agency "to adapt to changing

16  circumstances and meet its statutory responsibilities in what it sees as the most effective or

17  desirable way." *Id.* at 192. The decision "requires a complicated balancing of a number of factors

18  which are peculiarly within [the agency's] expertise," including "whether its resources are best

19  spent on one program or another," and "whether a particular program best fits the agency's overall

20  policies." *Id.* at 193 (citation omitted). Of course, "Congress may always circumscribe agency

21  discretion to allocate resources by putting restrictions in the operative statutes." *Id.* But as long as

22  the agency abides by the relevant statutes (and whatever self-imposed obligations may arise from

23  regulations or grant instruments), the APA "gives the courts no leave to intrude" via arbitrary-and-

24  capricious review. *Id.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 26

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      Here, though Plaintiffs cite several statutes that set forth the grant-making process, they do

2  not identify any statutory restriction that prohibits any particular condition at issue. Dkt. 44 at 9.

3  For example, they do not assert any statute prohibits the longstanding provision in the FTA Master

4  Agreement that grant recipients comply with applicable executive orders. Nor do they argue any

5  statute prohibits the agreements' requirement that grant recipients comply with all federal

6  antidiscrimination laws. And in fact, DOT is expressly permitted by statute to "prescribe terms"

7  for the projects it funds with grants. 49 U.S.C. § 5334(a)(1). Thus, the agencies' decisions

8  regarding the terms under which local entities may receive federal grants remains within the

9  agencies' discretion under *Lincoln*, and APA review is foreclosed.

10  **III.      Plaintiffs do not face imminent, irreparable harm warranting emergency relief**

11      Plaintiffs have not carried their burden of showing that imminent, irreparable harm "is

12  likely, not just possible," as required to justify an injunction. *Ctr. for Food Safety v. Vilsack*, 636

13  F.3d 1166, 1172 (9th Cir. 2011). An irreparable harm is one that cannot be redressed by a legal or

14  equitable remedy following trial. *Public Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987).

15  And speculative injury is not sufficient: "a plaintiff must *demonstrate* immediate threatened injury

16  as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844

17  F.2d 668, 674 (9th Cir. 1988) (emphasis original).

18      Here, the potential harms Plaintiffs describe all stem from lack of access to grant funds, in

19  the form of harms to their operations and efforts to fulfill their missions. *See* Dkt. 44 at 12. But

20  such monetary injuries generally are not considered irreparable. *L.A. Memorial Coliseum Comm'n*

21  *v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980). And here, they are not: the Court of Federal Claims,

22  with the ability to grant monetary relief, exists as the appropriate venue.

23      Moreover, Plaintiffs' alleged harm is purely speculative, for a multitude of reasons. First,

24  they have failed to explain when or how their alleged threat of loss of funding would start, even

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    after Defendants noted this deficiency in their response to Plaintiffs' TRO motion. Dkt. 44 at 13.

2    As Defendants explained at the TRO hearing, Plaintiffs do not face a 45-day deadline to certify

3    their HUD grant agreements or risk losing funding. The regulation Plaintiffs point to says no such

4    thing: rather, it says that the parties must execute a grant agreement within 45 days of HUD's grant

5    conditions being satisfied. 24 C.F.R. § 578.23(a). And the statutory scheme does not contemplate

6    instant satisfaction of the grant conditions. HUD could have set a deadline for compliance, for

7    example in the NOFO, but it did not. As to DOT, King County Metro simply claims Defendants

8    have "misse[d] the point" by stressing the requirement that they show imminent, irreparable harm.

9    Dkt. 44 at 13. But Plaintiffs' inability to identify when any objective harm would befall them is

10   fatal to their motion. *See Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) (An injunction

11   "will not be granted against something merely feared as liable to occur at some indefinite time in

12   the future.").

13        Second, Plaintiffs in fact have plenty of CoC funding still available to them. HUD

14   calculates that all but one of the Plaintiffs have millions of dollars of funds left to spend from their

15   FY2023 grants, which are still operational. *See* Fernandez Decl. Ex. A. Given these figures,

16   Plaintiffs face no "imminent" harm at all.

17        For its part, King County Metro has undermined its irreparable harm argument as to DOT

18   because it executed five new grants or grant amendments totaling almost $80 million the day after

19   the Court issued the TRO. Fletcher Decl. ¶ 16. Although the TRO lasts only 14 days, King County

20   Metro opted to execute those grant agreements knowing the provisions it disagrees with may go

21   into effect on May 22, 2025. There are no further FTA grants currently awaiting King County

22   Metro's execution. *Id.* ¶ 17. Thus, King County Metro faces no imminent, irreparable harm

23   warranting a preliminary injunction.

24

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Third, while Plaintiffs assert that they face a "Hobson's choice" in either agreeing to

2   "illegal" conditions or foregoing federal funding, they have not even tried to explain how most of

3   these conditions are "illegal" on their face. Plaintiffs do not explain how they face imminent harm

4   by agreeing to comply with and not violate federal antidiscrimination laws (as they have regularly

5   agreed to do in the past), or by agreeing to cooperate with immigration officers. Nor do they

6   explain how the required certifications for purposes of the False Claims Act differ meaningfully

7   from the longstanding language in Section 4(e) of the FTA Master Agreement invoking the

8   Program Fraud Civil Remedies Act of 1996 and acknowledging potential criminal liability for

9   false statements. Fletcher Decl. ¶¶ 7, 11.

10   **IV.    The public interest and balance of equities do not favor an injunction**

11    A preliminary injunction also is not appropriate here because the balance of the equities

12   and the public interest tip in Defendants' favor. *See Nken v. Holder*, 556 U.S. 418, 435 (2009)

13   (holding "[t]hese factors merge when the Government is the opposing party"). While Plaintiffs

14   could be compensated for any lost money after a ruling on the merits, the same may not be true of

15   the federal government if an injunction is imposed. Plaintiffs' motion hinges on the importance of

16   their federal grant money, suggesting many of them may not be able to reimburse the government

17   if it later prevails. *See Middle E. Broad. Networks, Inc. v. United States*, No. 25-5150, 2025 WL

18   1378735, at *5 (D.C. Cir. May 7, 2025) (en banc) (Rao, J., dissenting) (per curiam) ("[O]nce the

19   government disburses the grant money, there is no possibility of later recovery because, as the

20   plaintiffs attest, they operate almost entirely on federal funds and therefore will be unable to

21   reimburse the government."). Additionally, even if Plaintiffs were able to return the money, the

22   federal government maintains an interest in ensuring that its funds are spent pursuant to the

23   conditions it attaches to those federal dollars.

24

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 29

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## V.    Any injunctive relief should be narrowly tailored and permit lawful agency action

It is a bedrock principle of equity that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Thus, if the Court grants Plaintiffs' motion, any injunction should be narrowly tailored to apply only with respect to any grants or contracts involving Plaintiffs specifically, and to leave intact the Executive's discretion to engage in further consideration of the topic at hand and implement new policies consistent with law. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

## VI.    Any injunction should be stayed pending any appeal and secured by a bond

If the Court issues an injunction, Defendants respectfully request that it be stayed pending a determination by the Solicitor General whether to appeal and, if appeal is authorized, pending any appeal.

Moreover, under Federal Rule of Civil Procedure 65(c), courts "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." If the Court grants an injunction here, it should require Plaintiffs to post a bond for the value of the specific grants subject to the injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion for a Preliminary Injunction and transfer this case to the Court of Federal Claims.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 30

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Dated May 14, 2025.

2                                          Respectfully submitted,

3                                          TEAL LUTHY MILLER
                                           Acting United States Attorney
4
                                           *s/ Brian C. Kipnis*
5                                          BRIAN C. KIPNIS

6                                          *s/ Annalisa L. Cravens*
                                           ANNALISA L. CRAVENS
7
                                           *s/ Sarah L. Bishop*
8                                          SARAH L. BISHOP
                                           Assistant United States Attorneys
9                                          United States Attorney's Office
                                           Western District of Washington
10                                         700 Stewart Street, Suite 5220
                                           Seattle, Washington 98101
11                                         Phone: 206-553-7970
                                           Fax:    206-553-4067
12                                         Email: brian.kipnis@usdoj.gov
                                                  annalisa.cravens@usdoj.gov
13                                                sarah.bishop@usdoj.gov

14                                         *Counsel for Defendants*

15

16

17

18

19

20

21

22

23

24

DEFENDANTS' OPPOSITION TO PLAINTIFFS'                    UNITED STATES ATTORNEY
MOTION FOR A PRELIMINARY INJUNCTION                   700 STEWART STREET, SUITE 5220
[Case No. 2:25-cv-00814-BJR] - 31                      SEATTLE, WASHINGTON 98101
                                                            (206) 553-7970