UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR. COUNTY;
PIERCE COUNTY; SNOHOMISH COUNTY;
CITY AND COUNTY OF SAN FRANCISCO;
COUNTY OF SANTA CLARA; CITY OF
BOSTON; CITY OF COLUMBUS; and CITY OF
NEW YORK,

        Plaintiffs,

v.

SCOTT TURNER in his official capacity as
Secretary of the U.S. Department of Housing and
Urban Development; the U.S. DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT;
SEAN DUFFY in his official capacity as Secretary
of the U.S. Department of Transportation; the U.S.
DEPARTMENT OF TRANSPORTATION;
MATTHEW WELBES in his official capacity as
acting Director of the Federal Transit
Administration; and the FEDERAL TRANSIT
ADMINISTRATION,

        Defendants.

No. 2:25-cv-00814-BJR

**DECLARATION OF CLAUDETTE FERNANDEZ IN SUPPORT OF UNITED STATES'
RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

    1.    I, Claudette Fernandez, am employed by the U.S. Department of Housing and Urban Development ("HUD") as the General Deputy Assistant Secretary ("GDAS") for Community Planning and Development. I have served in this capacity for almost three years. The Office of Community Planning and Development ("CPD") seeks to develop viable communities by promoting integrated approaches that provide decent housing, a suitable living environment, and expand economic opportunities for low and moderate-income persons. The primary means towards this end is the development of partnerships among all levels of government and the private

sector, including for-profit and nonprofit organizations. Within the CPD is the Office of Special Needs Assistance Programs.

2. My responsibilities and duties include managing the Office of Special Needs Assistance Programs, which administers grant funding for the Continuum of Care ("CoC") Program, as appropriated by Congress. The CoC Program is designed to promote communitywide commitment to the goal of ending homelessness by awarding funds to nonprofit providers, Indian Tribes, Tribally Designated Housing Entities, States, and local governments to quickly rehouse homeless individuals and families while minimizing the trauma and dislocation caused to individuals, families, and communities by homelessness, to promote access to and effect utilization of mainstream programs by homeless individuals and families, and to optimize self-sufficiency among those experiencing homelessness.

3. As the GDAS, I am fully familiar with HUD's process for annually awarding CoC grants, as appropriated by Congress.

4. For Fiscal Year ("FY") 2024, HUD forwarded grant agreements executed by HUD to each Plaintiff and selected applicants within Plaintiffs' CoCs on or after March 11, 2025, containing the following revised conditions:

- a. This Agreement, the Recipient's use of funds provided under this Agreement (the "Grant" or "Grant Funds"), and the Recipient's operation of projects assisted with Grant Funds are governed by . . . 5. all current Executive Orders;

- b. (1) shall not use grant funds to promote "gender ideology," as defined in E.O. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

- c. (2) agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

- d. (3) certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964;

e. (4) shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment;

f. The recipient must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws. And

g. No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation. Subject to the exceptions provided by PRWORA, the recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

5. I also note the grant agreements added the following:

a. This Agreement, the Recipient's use of funds provided under this Agreement (the "Grant" or "Grant Funds"), and the Recipient's operation of projects assisted with Grant Funds are governed by . . . 4. the Notice of Funding Opportunity for FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program (NOFO), *except for references in the NOFO to Executive Orders that have since been repealed;* (emphasis added)

b. HUD will not enforce provisions of the Grant Agreement to the extent that they require the project to use a housing first program model.

c. As stated in Section III.A.2 of the NOFO, Faith-based organizations may be recipients or subrecipients for funds under this agreement on the same basis as any other organization. Recipients may not, in the selection of subrecipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

d. HUD may terminate all or a portion of the Grant in accordance with the Act, the Rule, and 2 CFR 200.340.

6. On May 2, 2025, New York City's Department of Housing Preservation and Development executed and returned its grant agreements, unilaterally adding the statement: "This

agreement purports to impose new provisions that were not required under the application. Recipient is not consenting to them as conditions of the agreement."

7.     On or about May 9, 2025, the City and County of San Francisco and King County's Department of Community and Human Services forwarded to HUD unilaterally redlined agreements that they signed. The unilateral red lines excised the conditions listed at Paragraph 4 above.

8.     As of today's date, the remaining Plaintiffs[1] have not executed and returned their FY 2024 grant agreements.

9.     To the extent that Plaintiffs have either not yet executed and returned their FY 2024 grant agreements to HUD, as required, or unilaterally changed the grant agreement without HUD authorization, they cannot draw down their FY 2024 CoC grant funds.

10.    CoC grant funds are typically awarded for a 12-month budget period. If a project is approaching the end of its budget period and still has unspent grant funds, the recipient may submit an extension request to HUD. For FY 2023, and FY 2024 funds, HUD may grant extensions requests.

11.    Under the Consolidated Appropriations Act for Fiscal Year 2024 (Public Law 118-42, approved March 9, 2024), HUD has until September 30, 2026, to obligate the FY 2024 CoC funds. The point of obligation is dependent on whether the grant is for a new project or the renewal of previously approved project. For new grants, HUD's point of obligation is the execution of a

---

[1]  The units of the Plaintiffs' governments that receive the grants at issue are King County Department of Community and Human Services - Community Services Division; City of New York - Department of Social Services ; City of New York - Department of Housing Preservation and Development; City of Boston; County of Santa Clara – Office of Supportive Housing; Pierce County, Community Services Division; Snohomish County, Housing and Community Services; and City and County of San Francisco, Department of Homelessness and Supportive Housing; County of Santa Clara, Office of Supportive Housing; City of Boston, Mayor's Office of Housing; City of Columbus - Community Shelter Board.

CoC grant agreement by the CPD Field Office Director. Normally, the Field Office signs the grant agreement, then forwards the agreement to the awardee for their signature. For a renewal project, HUD's point of obligation is the signing of an obligation memo by the Deputy Assistant Secretary for the Office of Special Needs or the CPD General Deputy Assistant Secretary.

12. Under section 422(d)(2) of subtitle C of title IV of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11382(d)(2)), HUD must obligate funds no later than 45 days after a conditionally selected applicant meets the conditions of their award. For new projects, funds are obligated once HUD signs the CoC Grant Agreement and then become available to a grantee once they sign and return the Grant Agreement. For renewal projects, the funds become obligated once the obligation memo is signed by the Deputy Assistant Secretary for the Office of Special Needs or the CPD General Deputy Assistant Secretary. As with new projects, funds become available to a grantee for renewal projects once they sign and return the Grant Agreement.

13. All grant funds are disbursed via the Line of Credit Control System (LOCCS). This total process for grant fund obligation is outlined in the CPD Funds Control Matrix.

14. Given the potential for HUD to extend the budget period for the projects within the Plaintiffs' CoCs, to the extent that their grant agreement has not closed, such projects may continue to operate under FY 2022 and FY 2023 grants.

15. All Plaintiffs previously received CoC grant funding for FY 2023. A review of the CoC grant funds in LOCCs shows that, as of May 14, 2025, the Plaintiffs' CoC programs in total have millions of dollars of funding remaining from the FY 2023 grants. Each project's available funds from the FY 2023 grants that remain available to draw down are shown in Exhibit A.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 14th day of May 2025, in Washington, DC.

Claudette Fernandez
Digitally signed by Claudette Fernandez
Date: 2025.05.14 17:06:31 -04'00'

_____

Claudette Fernandez
General Deputy Assistant Secretary