# Exhibit B



**U.S. Department
of Transportation**

**OFFICE OF THE
GENERAL COUNSEL**

1200 New Jersey Ave., S.E.
Washington, D.C. 20590

Office of the Secretary
of Transportation

March 11, 2025

## MEMORANDUM TO SECRETARIAL OFFICERS AND HEADS OF OPERATING ADMINISTRATIONS

**From:**      Gregory D. Cote
              Acting General Counsel

**Subject:**   Procedural Requirements for DOT Enforcement Actions

---

This memorandum clarifies the procedural requirements governing enforcement actions initiated by the Department of Transportation (DOT), including administrative enforcement proceedings and judicial enforcement actions brought in Federal court. The purpose of this memorandum is to ensure that DOT enforcement actions satisfy principles of due process and remain lawful, reasonable, and consistent with Administration policy.

This memorandum rescinds and replaces the memorandum, entitled "Department of Transportation Enforcement Policies and Principles," issued on September 6, 2022.

### I.      APPLICABILITY

The requirements set forth herein apply to all enforcement actions taken by each DOT operating administration (OA) and each component of the Office of the Secretary of Transportation (OST) with enforcement authority.

### II.      ENFORCEMENT ATTORNEY RESPONSIBILITIES

All attorneys of OST and the OAs involved in enforcement activities are responsible for carrying out and adhering to the policies set forth herein. All supervising attorneys with responsibility over enforcement adjudications, administrative enforcement proceedings, and other enforcement actions are accountable for the successful implementation of these policies and for reviewing and monitoring compliance with this memorandum by the employees under their supervision. These responsibilities include taking all steps necessary to ensure that the Department provides a fair and impartial process at each stage of enforcement actions. The Office of Litigation and Enforcement (C-30) within the Office of the General Counsel (OGC) is delegated authority to interpret this memorandum and provide guidance on compliance with the policies contained herein. C-30 shall exercise this authority in coordination with the Chief Counsels of the OAs and subject to the direction and supervision of the General Counsel.

## III.    DEFINITIONS

1.  "*Administrative enforcement proceeding*" is to be interpreted broadly, consistent with applicable law and regulations, and includes, but is not limited to, administrative civil penalty proceedings; proceedings involving potential cease-and-desist or corrective action orders; preemption proceedings; safety rating appeals; pilot and mechanic revocation proceedings; grant suspensions, terminations, or other actions to remedy violations of grant conditions; and similar enforcement-related proceedings.

2. "*Administrative law judges*" (ALJs) are adjudicatory hearing officers appointed by a department head to serve as triers of fact in formal and informal administrative proceedings and to issue recommended decisions in adjudications.  At DOT, ALJs are to be appointed by the Secretary of Transportation and assigned to the Office of Hearings.[1]

3. "*Administrative Procedure Act*" (APA) is the Federal statute, codified in scattered sections of chapters 5 and 7 of title 5, United States Code, that governs procedures for agency rulemaking and adjudication and provides for judicial review of final agency actions.[2]

4. "*Adversarial personnel*" are those persons who represent a party (including the agency) or a position or interest at issue in an enforcement action taken or proposed to be taken by or for an agency.  They include the agency's employees who investigate, prosecute, or advocate on behalf of the agency in connection with the enforcement action.

5. "*Decisional personnel*" are employees of the agency responsible for issuing decisions arising out of the agency's enforcement actions, which include formal or informal enforcement adjudications. These employees include ALJs, hearing officers, Administrative Judges (AJs), and agency employees who advise and assist such decision makers.

6. "*Due process*" means procedural rights and protections afforded by the Government to affected parties to provide for a fair process in the enforcement of legal obligations, including in connection with agency actions determining a violation of law, assessing a civil penalty, requiring a party to take corrective action or to cease and desist from conduct, or otherwise depriving a party of a property or liberty interest.  Due process always includes two essential elements for a party subject to an agency enforcement action:  adequate notice of the proposed agency enforcement action and a meaningful opportunity to be heard by the agency decision maker.[3]

7. "*Enabling act*" means the Federal statute that defines the scope of an agency's authority and authorizes it to undertake an enforcement action.

---

[1] *See Lucia v. SEC*, 585 U.S. 237 (2018) (holding that ALJs of the Securities and Exchange Commission are "Officers of the United States" under the Appointments Clause).

[2] *See* 5 U.S.C. §§ 553 (rulemaking), 554 (adjudication), 556 (formal hearings), and 701-706 (judicial review).

[3] *Mathews v. Eldridge*, 424 U.S. 319, 331 (1976).

8. "*Enforcement action*" means an action taken by the Department upon its own initiative or at the request of an affected party in furtherance of its statutory authority and responsibility to execute and ensure compliance with applicable laws. Such actions include administrative enforcement proceedings, enforcement adjudications, and judicial enforcement proceedings.

9. "*Enforcement adjudication*" is the administrative process undertaken by the agency to resolve the legal rights and obligations of specific parties with regard to a particular enforcement issue pending before an agency.[4] The outcome of an enforcement adjudication is a formal or informal decision issued by an appropriate decision maker. Enforcement adjudications require the opportunity for participation by directly affected parties and the right to present a response to a decision maker, including relevant evidence and reasoned arguments.[5]

10. "*Formal enforcement adjudication*" means an adjudication required by statute to be conducted "on the record."[6] The words "on the record" generally refer to a decision issued by an agency after a proceeding conducted before an ALJ (or the agency head sitting as judge or other presiding employee who is not an ALJ) using trial-type procedures. It is usually the agency's enabling act, not the APA, that determines whether a formal hearing is required.[7]

11. "*Informal enforcement adjudication*" means an adjudication that is not required to be conducted "on the record" with trial-like procedures. The APA provides agencies with a substantial degree of flexibility in establishing practices and procedures for the conduct of informal adjudications.[8]

12. "*Investigators, inspectors, and special agents*" refer to those agency employees or agents responsible for the investigation and review of an affected party's compliance with the regulations and other legal requirements administered by the agency.

13. "*Judicial enforcement proceeding*" means a proceeding conducted in an Article III court, in which the Department is seeking to enforce an applicable statute, regulation, or order.

14. "*Procedural regulations*" are agency regulations setting forth the procedures to be followed during adjudications consistent with the agency's enabling act, the APA, and other applicable laws.[9]

---

[4] 5 U.S.C. § 551(7).

[5] Lon L. Fuller, *The Forms and Limits of Adjudication*, 92 Harv. L. Rev. 353, 354 (1978); ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT 14 (1973), *available at* https://library.law.fsu.edu/Digital-Collections/ABA-AdminProcedureArchive/AttorneyGeneralsManual.pdf ("[A]djudication is concerned with the determination of past and present rights and liabilities. Normally, there is involved a decision as to whether past conduct was unlawful, so that the proceeding is characterized by an accusatory flavor and may result in disciplinary action.").

[6] *United States v. Allegheny-Ludlum Steel Corp.*, 406 U.S. 742 (1972); *see* 5 U.S.C. §§ 554, 556, and 557.

[7] *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50 (1950); *see* 5 U.S.C. § 554 (Adjudications).

[8] 5 U.S.C. §§ 555, 558.

[9] CHARLES ALAN WRIGHT & CHARLES H. KOCH, FEDERAL PRACTICE AND PROCEDURE: JUDICIAL REVIEW § 8138.

## IV.    ENFORCEMENT POLICY AND REQUIRED PROCEDURES

1. *Enforcement Policy Generally.*  It is the policy of the Department to provide affected parties appropriate due process in all enforcement actions.  In the course of such actions and proceedings, the Department's conduct must be fair and free of bias and should conclude with a well-documented decision as to violations alleged and any violations found to have been committed, the penalties or corrective actions to be imposed for such violations, and the steps needed to ensure future compliance.  It is in the public interest and fundamental to good government that the Department carry out its enforcement responsibilities in a fair and just manner.[10]  No person should be subject to an administrative enforcement action or adjudication absent prior public notice of both the enforcing agency's jurisdiction over particular conduct and the legal standards applicable to that conduct.  The Department should, where feasible, foster greater private-sector cooperation in enforcement, promote information sharing with the private sector, and establish predictable outcomes for private conduct.

2. *Investigative Functions.*  DOT's investigative powers must be used in a manner consistent with due process, basic fairness, and respect for individual liberty and private property. Congress has granted the Secretary (and by delegation from the Secretary to the OAs) and the FAA Administrator broad investigative powers,[11] and it is an essential part of DOT's safety and consumer protection mission to investigate compliance with the statutes and regulations administered by the Department, including through periodic inspections.[12]  The OAs and components of OST with enforcement authority are appropriately given broad discretion in determining whether and how to conduct investigations, periodic inspections, and other compliance reviews, and these investigative functions are often performed by agency investigators or inspectors in the field.  The employees and contractors of DOT responsible for inspections and other investigative functions must not use these authorities as a game of "gotcha" with regulated entities and should follow existing statutes and regulations.  Rather, to the maximum extent consistent with protecting the integrity of the investigation, the representatives of DOT should promptly disclose to the affected parties the reasons for the investigative review and any compliance issues identified or findings made in the course of the review.  The responsible enforcement attorneys within the relevant OA or component of OST shall provide effective legal guidance to investigators and inspectors to ensure adherence to the policies set forth herein.

3. *Clear Legal Foundation.*  All DOT enforcement actions against affected parties seeking redress for asserted violations of a statute or regulation must be founded on a grant of statutory authority in the relevant enabling act.  The authority to prosecute the asserted violation and the authority to impose monetary penalties, if sought, must be clear in the text of the statute.  Unless the terms of a relevant statute, or of a regulation with government-wide applicability such as 2

---

[10] *See Sackett v. EPA*, 566 U.S. 120 (2012).

[11] The Department's investigative powers include, but are not limited to, the power to conduct inspections and other investigations or compliance reviews, to make reports and findings, to issue subpoenas, to conduct fact-finding hearings, to require production of records, and to take depositions and other sworn statements from witnesses. *See, e.g.*, 49 U.S.C. § 60117(a).

[12] *Oklahoma Press Pub. Co. v. Walling*, 317 U.S. 186, 509 (1946).

CFR part 180, clearly and expressly authorize the OA or component of OST to enforce the relevant legal requirement directly through an administrative enforcement proceeding, the proper forum for the enforcement action is Federal court, and the enforcement action must be initiated in court by attorneys of the Department of Justice acting in coordination with DOT counsel.

4. *Proper Exercise of Prosecutorial and Enforcement Discretion.* The Department's attorneys and policy makers have broad discretion in deciding whether to initiate an enforcement action.[13] Nevertheless, in exercising discretion to initiate an enforcement action and in the pursuit of that action, agency counsel must not adopt or rely upon overly broad or unduly expansive interpretations of the governing statutes or regulations, and should ensure that the law is interpreted and applied according to its text. All decisions by DOT to prosecute or not to prosecute an enforcement action should be based upon a reasonable interpretation of the law about which the public has received fair notice and should be made with due regard for fairness, the facts and evidence adduced through an appropriate investigation or compliance review, the availability of scarce resources, the administrative needs of the responsible OA or OST component, Administration policy, and the importance of the issues involved to the fulfillment of the Department's statutory responsibilities.

5. *Duty to Review for Legal Sufficiency.* In accordance with established agency procedures, enforcement actions should be reviewed by the responsible agency component for legal sufficiency under applicable statutes and regulations, judicial decisions, and other appropriate authorities.[14] If, in the opinion of the responsible agency component or its counsel, the evidence is sufficient to support the assertion of violation(s), then the agency may proceed with the enforcement action. If the evidence is not sufficient to support the proposed enforcement action, the agency may modify or amend the charges and bring an enforcement action in line with the evidence or return the case to the enforcement staff for additional investigation. The reviewing attorney or agency component may also recommend the closure of the case for lack of sufficient evidence.[15] The Department will not initiate enforcement actions as a "fishing expedition" to find potential violations of law in the absence of sufficient evidence in hand to support the assertion of a violation.

---

[13] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980).

[14] Though it may not always be feasible or necessary for agency personnel to consult with counsel before initiating an enforcement action, particularly since the OAs utilize a variety of enforcement personnel to staff their enforcement programs, including personnel located in the field, agency personnel should ensure that the basis for an enforcement action is legally sufficient before initiating it.

[15] Attorneys at many of the OAs issue Notices of Probable Violations, Notices of Claims, or Demand Letters to initiate enforcement proceedings. At other OAs, these documents are issued by non-attorney program officials. The duty to review applies equally to all agency attorneys whether deciding to issue a document to initiate enforcement proceedings or to continue to prosecute based upon a document previously issued by a non-attorney program official. In the latter situation, it is important that attorneys provide legal input, training, and review of the work product of the program office. At all times, DOT attorneys are encouraged to exercise their best professional judgment in deciding to initiate, continue, or recommend closing a case, consistent with applicable legal and ethical standards.

6. *Fair Notice*. Notice to the regulated party is a due process requirement. All documents initiating an enforcement action shall ensure notice reasonably calculated to inform the regulated party of the nature of the action being taken to allow an opportunity to challenge the action. The notice should include legal authorities, statutes or regulations allegedly violated, basic issues, key facts alleged, a clear statement of the grounds for the agency's action, and a reference to or recitation of the procedural rights available to the party to challenge the agency action, including appropriate procedure for seeking administrative and judicial review.

7. *Separation of Functions*. For those OAs or OST components whose regulations provide for a separation of decisional personnel from adversarial personnel in an administrative enforcement proceeding, any agency personnel who have taken an active part in investigating, prosecuting, or advocating in the enforcement action should not serve as a decision maker and should not advise or assist the decision maker in that same or a related case. In such proceedings, the agency's adversarial personnel should not furnish *ex parte* advice or factual materials to decisional personnel. When and as necessary, agency employees involved in enforcement actions should consult legal counsel and applicable regulations and ethical standards for further guidance on these requirements.

8. *Avoiding Bias*. Consistent with all applicable laws and ethical standards relating to recusals and disqualifications, no Federal employee or contractor may participate in a DOT enforcement action in any capacity, including as ALJ, adjudication counsel, adversarial personnel, or decisional personnel, if that person has (1) a financial or other personal interest that would be affected by the outcome of the enforcement action; (2) personal animus against a party to the action or against a group to which a party belongs; (3) prejudgment of the adjudicative facts at issue in the proceeding; or (4) any other prohibited conflict of interest.

9. *Representation of Regulated Parties*. Subject to ethical standards governing post-Federal employment and applicable State bar requirements, regulated entities are free to choose their representatives—attorney or non-attorney—who will represent them before an OST component or OA. Each OST component or OA should assist *pro se* litigants and those who are unfamiliar with our procedures to the extent practical and allowable under ethical and State bar requirements.

10. *Formal Enforcement Adjudications*. When a case is referred by the decision maker to the Office of Hearings or another designated hearing officer for formal adjudication (an "on the record" hearing), the assigned ALJ or hearing officer should use trial-type procedures consistent with applicable legal provisions. In formal adjudication, the APA requires findings and reasons on all material issues of fact, law, or discretion (policy).[16] In all formal adjudications, the responsible OA or component of OST shall adhere faithfully and consistently to the procedures established in the relevant procedural regulations. Agency counsel engaged in formal adjudications on behalf of DOT are accountable for compliance with the requirements of this memorandum.

---

[16] 5 U.S.C. § 557(c).

11. *Informal Enforcement Adjudications.* Even though informal adjudications do not require trial-type procedures, the responsible OA or component of OST should ordinarily afford the applicant or the regulated entity that is the subject of the adjudication (as the case may be), as well as other directly affected parties (if any), adequate notice and an opportunity to be heard on the matter under review, either through an oral presentation or through a written submission. Except in cases of a safety emergency or when the clear text of the relevant enabling act or government-wide regulation, such as 2 CFR part 180, expressly authorizes exigent enforcement action without a prior hearing, the responsible OA or component of OST shall give the regulated entity appropriate advance notice of the proposed enforcement action and shall advise the entity of the opportunity for an informal hearing in a manner and sufficiently in advance that the entity's representatives have a fair opportunity to prepare for and to participate in the hearing, whether in person or by writing. The notice should be in plain language and, when appropriate, contain basic information about the applicable adjudicatory process.[17] In all informal adjudications, the responsible OA or component of OST shall adhere faithfully and consistently to the procedures established in any applicable procedural regulations.

12. *The Hearing Record.* In formal hearings, the agency shall comply with the APA, and include in the record, the testimony, exhibits, papers, and requests that were filed, in addition to the ALJ's or hearing officer's decision or the decision on appeal.[18] For informal hearings, the record shall include the information that the agency considered "at the time it reached the decision" and its contemporaneous findings.[19] The administrative record does not include privileged documents, such as attorney-client communications, or deliberative or draft documents. Agencies are encouraged to make the record available to all interested parties to the fullest extent allowed by law, consistent with appropriate protections for the handling of confidential information.

13. *Contacts with the Public.* After the initiation of an enforcement proceeding, communications between persons outside the agency and agency decisional personnel should occur on the record. Consistent with applicable regulations and procedures, if oral, written, or electronic *ex parte* communications occur, they should be placed on the record as soon as practicable. Notice should be given to the parties that such communications are being placed into the record. When performing departmental functions, all DOT employees should properly identify themselves as employees of the Department, including the OA or component of OST in which they work; they should properly show official identification if the contact is made in person; and they should clearly state the nature of their business and the reasons for the contact. All contacts by DOT personnel with the public shall be professional, fair, honest, direct, and consistent with all applicable ethical standards.

14. *Duty to Disclose Exculpatory Evidence.* It is the Department's policy that each responsible OA or component of OST will voluntarily follow in its civil enforcement actions the principle

---

[17] 5 U.S.C. § 554(b)-(c).

[18] 5 U.S.C. § 556(e).

[19] *Camp v. Pitts*, 411 U.S. 138 (1973).

articulated in *Brady v. Maryland*,[20] in which the Supreme Court held that the Due Process Clause of the Fifth Amendment requires disclosure of exculpatory evidence "material to guilt or punishment" known to the government but unknown to the defendant in criminal cases. Adopting the "*Brady* rule" and making affirmative disclosures of exculpatory evidence in all enforcement actions will contribute to the Department's goal of open and fair investigations and administrative enforcement proceedings. This policy requires the agency's adversarial personnel to disclose materially exculpatory evidence in the agency's possession to the representatives of the regulated entity whose conduct is the subject of the enforcement action. These affirmative disclosures should include any material evidence known to the Department's adversarial personnel that may be favorable to the regulated entity in the enforcement action—including evidence that tends to negate or diminish the party's responsibility for a violation or that could be relied upon to reduce the potential fine or other penalties. The regulated entity need not request such favorable information; it should be disclosed as a matter of course.[21] Agency counsel should recommend appropriate remedies to DOT decision makers where a *Brady* rule violation has occurred, using the factors identified by courts when applying the *Brady* rule in the criminal context.[22]

15. *Use of Guidance Documents in Administrative Enforcement Cases.* Guidance documents cannot create binding requirements that do not already exist by statute or regulation. Accordingly, the Department may not use its enforcement authority to convert agency guidance documents into binding rules. Likewise, enforcement attorneys may not use noncompliance with guidance documents as a basis for proving violations of applicable law. Guidance documents can do no more, with respect to prohibition of conduct, than articulate the agency or Department's understanding of how a statute or regulation applies to particular circumstances. The Department may cite a guidance document to convey this understanding in an administrative enforcement action or adjudication only if it has notified the public of such document in advance through publication in the Federal Register or on the Department's website.

16. *Alternative Dispute Resolution (ADR).* The OAs and the components of OST with enforcement authority are encouraged to use ADR to resolve enforcement cases where appropriate. The Department's ADR policy describes a variety of problem-solving processes that can be used in lieu of litigation or other adversarial proceedings to resolve disputes over compliance.[23]

17. *Duty to Adjudicate Proceedings Promptly.* Agency attorneys should promptly initiate proceedings or prosecute matters referred to them. In addition, cases should not be allowed to linger unduly after the adjudicatory process has begun. Attorneys should seek to settle matters where possible or refer the case to a decision maker for proper disposition when settlement negotiations have reached an impasse. Absent the showing of unusual or extenuating circumstances, or if necessitated for good cause, each OST component or OA with enforcement

---

[20] *Brady v. Maryland*, 373 U.S. 83 (1963).

[21] *Kyles v. Whitley*, 514 U.S. 419, 434 (1955); *United States v. Bagley*, 473 U.S. 667 (1985).

[22] *See Giglio v. United States*, 405 U.S. 150 (1972); *Kyles v. Whitley*, 514 U.S. at 434.

[23] *See* Statement of Policy on Alternative Dispute Resolution, 67 Fed. Reg. 40,367 (June 12, 2002).

authority shall apply limiting principles to the duration of investigations. On-site investigations should generally be limited to 10 business days or less and enforcement staff shall make a decision on pursuing an administrative action within 30 days of the completion of the inspection or investigation and commence an enforcement action as soon as possible thereafter—unless otherwise required by statute.

18. *Termination of Investigation.* When the facts disclosed by an investigation indicate that further action is not warranted, the OST component or OA with enforcement authority will close the investigation without prejudice to further investigation and will notify the person being investigated of the decision. This notification requirement should only be applied where a subject of an investigation has previously been made aware of the investigation, or other pre-enforcement activity. Nothing herein precludes civil enforcement action at a later time related to the findings of the investigation.

19. *Initiation of Additional Investigations.* OST components and OAs should not initiate additional investigations of a party after commencing an enforcement action absent a showing of good cause (*e.g.*, new complaints, accidents, or incidents), except when the additional investigation is prompted by facts uncovered in the initial investigation.

20. *Agency Decisions.* Agency counsel may be used in the conduct of informal hearings and to prepare initial recommended decisions for the agency decision maker. The agency must notify the directly affected parties of its decision, and the decision must reasonably inform the parties in a timely manner of the additional procedural rights available to them.

21. *Settlements.* Settlement conferences may be handled by appropriate agency counsel without the involvement of the agency's decision maker. Once a matter is settled by compromise, that agreement should be reviewed and accepted by an appropriate supervisor. The responsible OA or component of OST should issue an order adopting the terms of the settlement agreement as the final agency decision, where and as authorized by statute or regulation. No DOT settlement agreement, consent order, or consent decree should be used to adopt or impose new regulatory obligations for entities that are not parties to the settlement. Unless required by law, settlement agreements are not confidential and are subject to public disclosure.

22. *OGC Approval Required for Certain Settlement Terms.* Whenever a proposed settlement agreement, consent order, or consent decree would impose behavioral commitments or obligations on a regulated entity that go beyond the requirements of relevant statutes and regulations, including the appointment of an independent monitor or the imposition of novel, unprecedented, or extraordinary obligations, the responsible OA or OST component should obtain the approval of OGC before finalizing the settlement agreement, consent order, or consent decree.

23. *Basis for Civil Penalties and Disclosures Thereof.* No civil penalties will be sought in any DOT enforcement action except when and as supported by clear statutory authority and sufficient findings of fact. Where applicable statutes vest the agency with discretion with regard to the amount or type of penalty sought or imposed, the penalty should reflect due regard for fairness, the scale of the violation, the violator's knowledge and intent, and any mitigating

factors (such as whether the violator is a small business). The assessment of proposed or final penalties in a DOT enforcement action shall be communicated in writing to the subject of the action, along with a full explanation of the basis for the calculation of asserted penalties. In addition, the agency shall voluntarily share penalty calculation worksheets, manuals, charts, or other appropriate materials that sheds light on the way penalties are calculated to ensure fairness in the process and to encourage a negotiated resolution where possible.

24. *Publication of Decisions.* The agency's decisions in informal adjudications are not required to be published under the APA.[24] However, where the agency intends to rely on its opinions in future cases, those opinions must generally be made available on agency Web sites or in agency reading rooms (and publication on Westlaw, Lexis, or similar legal services is also highly recommended).[25] The APA has been read to require that opinions in formal adjudications must be made "available for public inspection and copying."[26] Agencies are strongly encouraged to publish all formal decisions on Westlaw, Lexis, or similar legal services.

25. *Coordination with the Office of Inspector General on Criminal Matters.* All Department employees must comply with DOT Order 8000.8A, which covers referrals of potential criminal matters to the Office of Inspector General (OIG) and delineates the respective roles of the OIG and DOT OAs and components of OST in criminal investigations.

26. *Standard Operating Procedures.* All legal offices that participate in or render advice in connection with enforcement actions should, to the extent practicable, operate under standard operating procedures. Such offices include, but are not limited to, those that oversee investigatory matters and serve as adversarial personnel in the agency's enforcement matters. These standard operating procedures, which can be contained in manuals, can be used to outline step-by-step requirements for attorney actions in the investigative stage and the prosecution stage; the role of an attorney as counselor, adjudicator, or litigator; the rulemaking process; and the process for issuance of guidance documents, letters of interpretation, preemption decisions, legislative guidance, and a variety of other legal functions performed in the legal office.

27. *Referral of Matters for Judicial Enforcement.* In considering whether to refer a matter for judicial enforcement by the Department of Justice, DOT attorneys should consult the applicable procedures set forth by the General Counsel, including in the document entitled "Partnering for Excellence: Coordination of Legal Work Within the U.S. Department of Transportation," and any update or supplement to such document issued hereafter by the General Counsel. The specific procedures for initiating an affirmative litigation request are currently found in the coordination document at Section II.B.1., "Affirmative Litigation Requests to the Department of Justice." In most instances, requests to commence affirmative litigation must be reviewed by OGC, with such reviews coordinated through the Office of Litigation and Enforcement (C-30).

28. *Cooperative Information Sharing.* The Department, as appropriate and to the extent practicable and permitted by law, shall: (a) encourage voluntary self-reporting of regulatory

---

[24] 5 U.S.C. § 552(a)(2)(A).

[25] WRIGHT & KOCH § 8242.

[26] *Id.*

violations by regulated parties in exchange for reduction or waivers of civil penalties; (b) encourage voluntary information sharing by regulated parties; and (c) provide pre-enforcement rulings to regulated parties (formal and informal interpretations).

29. *Small Business Regulatory Enforcement Fairness Act (SBREFA) Compliance.* The Department shall comply with the terms of SBREFA when conducting administrative inspections and adjudications, including section 223 of SBREFA (reduction or waivers of civil penalties, where appropriate). The Department will also cooperate with the Small Business Administration (SBA) when a small business files a comment or complaint related to DOT's inspection authority and when requested to answer SBREFA compliance requests.

30. *Publicly Available Decisional Quality and Efficiency Metrics.* Each OST component or OA should annually identify, collect, and make publicly available decisional quality and efficiency metrics regarding adjudication under administrative, judicial, and split enforcement models (of adjudication), to include, *e.g.*, the number of matters that have been pending with the agency over relevant time periods, the number of matters disposed by the agency annually, and data on the types of matters before and disposed of by the agency. This data shall be made available and prominently published on the OST component or OA's website within 180 days of the close of the fiscal year.

31. *No Third-Party Rights or Benefits.* This memorandum is intended to improve the internal management of the Department. As such, it is for the use of DOT personnel only and is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its agencies, officers, or any person.

A variety of reference materials are listed at the end of this memorandum, and DOT attorneys should consult these materials where appropriate. Any questions concerning the implementation of this memorandum should be directed to C-30's Assistant General Counsel for Litigation and Enforcement.

## REFERENCES

a) Administrative Conference of the United States (ACUS), *Recommendation 2016-4: Evidentiary Hearings Not Required by the Administrative Procedure Act.*[27]

b) Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559; §§ 571-584 and §§ 701-706.

c) ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT (1973), *available at* https://library.law.fsu.edu/Digital-Collections/ABA-AdminProcedureArchive/AttorneyGeneralsManual.pdf.

d) DOT Orders 8000.8A (Office of Inspector General Investigative Responsibilities).

e) Partnering for Excellence: Coordination of Legal Work Within the U.S. Department of Transportation (June 2015).

f) Statement of Policy on Alternative Dispute Resolution, 67 Fed. Reg. 40,367 (June 12, 2002).

g) Guidance on Communications with Parties outside of the Federal Executive Branch (*Ex Parte* Communications), issued on April 19, 2022, *available at* https://www.transportation.gov/regulations/guidance-ex-parte-communications.

---

[27] ACUS is an independent Federal agency charged with convening expert representatives from the public and private sectors to recommend improvements to administrative decision-making procedures. On December 13, 2016, ACUS adopted recommendations for non-ALJ proceedings (referred to as Type B proceedings). A variety of these recommendations may be useful and OAs are encouraged to review ACUS's recommendations and make changes to their due process procedures. Many of ACUS's recommendations have been incorporated within this memorandum, but, for the sake of clarity and brevity, this document does not include specific citations to the Recommendations (https://www.acus.gov/recommendation/evidentiary-hearings-not-required-administrative-procedure-act).