THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARTIN LUTHER KING, JR. COUNTY, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development, et al., <br><br> Defendants. | No. 2:25-cv-00814-BJR <br><br> ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION <br><br> [PROPOSED] |

This matter came before the Court on the moving Plaintiffs'[1] Motion for Preliminary Injunction ("Motion"). Having considered the briefs and declarations submitted in support of and opposition to the Motion, the briefs and declarations submitted in support of and opposition to the moving Plaintiffs' Motion for Temporary Restraining Order, and the other pleadings and papers filed in this action, the Court makes the following Findings of Fact and Conclusions of Law.

**I.   FINDINGS OF FACT**

1.   Plaintiffs rely on federal funding from the Continuum of Care (CoC) program

---

[1] The moving Plaintiffs are Martin Luther King, Jr. County (King County), Pierce County, Snohomish County, City and County of San Francisco (San Francisco), County of Santa Clara (Santa Clara), City of Boston (Boston), and City of New York (New York) (collectively, "Plaintiffs") as to the HUD Grant Conditions and King County as to the FTA Grant Conditions. Plaintiff City of Columbus did not join in the Motion.

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

established by Congress to provide critical services to individuals and families experiencing homelessness, including rapid rehousing, permanent supportive housing, and other services.

2. In January 2024, Defendant U.S. Department of Housing and Urban Development (HUD) posted a biennial Notice of Funding Opportunity (NOFO), inviting applications from local coalitions, known as "Continuums," for CoC funding. None of the conditions challenged here were included in the NOFO. After reviewing applications, HUD conditionally awarded Plaintiffs and their Continuums a total of nearly $300 million in CoC grants in Fiscal Year 2024. Relying on these awards, Plaintiffs have already committed, and in some cases expended, millions of dollars for homelessness assistance services.

3. In March 2025, HUD began presenting Plaintiffs with CoC grant agreements ("CoC Agreements") containing grant conditions ("CoC Grant Conditions") that were not included in the NOFO or authorized by any statute or regulation, specifically:

   a. The CoC Agreements state that "[t]his Agreement, the Recipient's use of funds provided under this Agreement . . . , and the Recipient's operation of projects assisted with Grant Funds" are "governed by" not only certain specified statutes, rules, and grant-related documents, but also by "all current Executive Orders . . . ."

   b. The CoC Agreements require the recipient to certify "it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964." The CoC Agreements also require the recipient to agree that "its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions" for purposes of the False Claims Act (FCA),

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

       31 U.S.C. §§ 3729 et seq. President Donald J. Trump, HUD, and other agencies have confirmed their agenda is to prohibit policies or programs promoting inclusion for people of all races, ethnicities, national origins, sexes, gender identities, or sexual orientations through the guise of enforcing federal nondiscrimination law.

c. The CoC Agreements provide that "[n]o state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation."

d. The Grant Agreements further require the recipient to comply with "applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, other Executive Orders or immigration laws."

e. The CoC Agreements also provide:

> Subject to the exceptions provided by [the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (PRWORA)], the recipient must use [the Systematic Alien Verification for Entitlements (SAVE) system], or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

f. The CoC Agreements require the recipient to agree it "shall not use grant funds to promote 'gender ideology,' as defined in [Executive Order] 14168."

g. The CoC Agreements prohibit the recipient from using grant funds "to fund or

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 3
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

promote elective abortions, as required by [Executive Order] 14182, Enforcing the Hyde Amendment."

4. On May 7, 2025, this Court entered a temporary restraining order (TRO) enjoining the Defendants from, among other things, imposing or enforcing the CoC Grant Conditions against Plaintiffs or Plaintiffs' continuums, rescinding or canceling the CoC Agreements or withholding funds based on such conditions, or requiring Plaintiffs to make any "certification" or representation related to the those conditions. The TRO served, in part, to prevent immediate and irreparable harms that Plaintiffs faced from having to choose between accepting conditions that are likely unlawful or losing hundreds of millions of dollars in federal grant funding, including funding that they have already budgeted and are committed to spending and that is necessary to serve Plaintiffs' most vulnerable residents. This TRO was set to remain in effect 14 days from entry.

5. Plaintiffs continue to face immediate and irreparable harms during the pendency of this litigation absent a preliminary injunction. Plaintiffs have an immediate need to receive CoC funds to sustain ongoing programs and services. And, once the TRO expires, they are again faced with the choice of losing these funds or accepting conditions that are likely unlawful. Plaintiffs have begun budgeting, planning, and contracting with service providers who are already incurring costs and expect reimbursement; households reliant on private rentals are at risk of eviction if there is even a short-term interruption of rent payments covered by CoC funds; and the interruption of funds could threaten the operation of supportive housing. Ultimately, any delay or loss of funding would result in disruption of services and cause irreparable damage to individuals' lives. For example:

    a. Without CoC funding, 700 households in King County who live in private rentals would be at risk of eviction in the short-term because their rent would

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 4
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

           not be paid, with 2,144 households impacted in total.

    b. In San Francisco, close to 2,000 program participants would lose their housing subsidies and services and would be at risk of imminent evictions, causing individuals and families to slip back into homelessness. Interruption of funding from the CoC program supporting more than 1,400 households is estimated to cost San Francisco $17 million in direct rehousing costs.

    c. If unable to access CoC funding conditionally awarded in January 2025, Santa Clara would lose one third of its budget for permanent supportive housing and rapid rehousing and would be forced to choose between redirecting County General Funds away from other services and programs towards programs for the homeless or dramatically cutting the programs, which would lead to higher rates of homelessness.

6. Based on the TRO, Plaintiffs signed their CoC grant agreements and, in submitting them, provided notice to Defendants that this Court ruled they were enjoined from "imposing or enforcing the CoC Grant Conditions as defined in Plaintiffs' Motion, with respect to any CoC funds awarded to Plaintiffs or members of Plaintiffs' Continuums; (2) rescinding or cancelling the CoC Grant Agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning CoC funds, based on such Grant Conditions; or (3) requiring Plaintiffs to make any 'certification' or other representation related to compliance with the CoC Grant Conditions." Plaintiffs included copies of the Court's Temporary Restraining Order with their submissions. Plaintiffs intend to draw down on their CoC grant funds during the pendency of this litigation.

7. Notwithstanding that the TRO enjoined Defendants from "delaying" or

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 5
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

"withholding" CoC funds based on the CoC Grant Conditions, HUD has stated that it will not permit Plaintiffs to "draw down their FY 2024 CoC grant funds" if they "changed the grant agreement without HUD authorization," including by excising the CoC Grant Conditions subject to the TRO. Dkt. # 56 at 4.

8. In addition to the CoC funds, Plaintiff King County has over $446 million of appropriated FTA funds pursuant to programs codified in title 49, chapter 53 of the U.S. Code. These funds were awarded without any of the conditions challenged here.

9. On April 25, 2025, FTA issued a revised Master Agreement, which applies to federal grants awarded to King County. The new Master Agreement contains the following new conditions ("FTA Grant Conditions"):

    a. The Master Agreement requires the recipient to "agree[] to comply with all applicable federal requirements and follow applicable federal guidance." The Master Agreement defines "Federal Requirement" to include "[a]n applicable federal law, regulation, or executive order."

    b. The Master Agreement provides:

        (1) Pursuant to section (3)(b)(iv)(A) [of the DEI Order], the Recipient agrees that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of [the FCA].

        (2) Pursuant to section (3)(b)(iv)(B) [of the DEI Order], by entering into this Agreement, the Recipient certifies that it does not operate any programs promoting [DEI] initiatives that violate any applicable Federal anti-discrimination laws.

    While FTA grants have long required compliance with nondiscrimination laws, DOT has confirmed its intent to enforce a sweeping interpretation of these conditions inconsistent with statutory text and current court interpretations of

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the Federal antidiscrimination laws.

    c.  The Master Agreement also provides:

> The Recipient . . . will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

10. This Court's TRO also enjoined Defendants from, among other things, imposing or enforcing the FTA Grant Conditions against King County, rescinding or canceling the FTA funds awarded to King County or withholding funds based on such conditions, or requiring King County to make any "certification" or representation related to the those conditions. Again, this aspect of the TRO served, in part, to prevent immediate and irreparable harms that King County faced from having to choose between accepting likely unlawful conditions or losing hundreds of millions in FTA funding.

11. After the TRO issued, King County electronically executed FTA grant agreements and amendments and then emailed FTA clarifying that, in doing so, King County was relying on the TRO's prohibition on imposing or enforcing the FTA Grant Conditions and that King County understood those conditions would not be applied against it. FTA responded indicating that "when the TRO (or any subsequent injunctive order) expires, FTA may treat the Restrained Conditions like any other part of an agreement, regardless of whether the agreement was signed while the TRO was in effect." Suppl. Morrison Decl., Ex. C. FTA has represented that King County's execution of these agreements and amendments "accepted the terms of the Master Agreement, subject to the limitations set forth" in the TRO. Dkt. # 57 ¶ 16.

12. King County intends to draw down funds from awarded grants during the pendency of litigation in order to continue developing, constructing, maintaining, repairing, and replacing

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 7
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

its wide range of transit vehicles and facilities across its system. Moreover, King County needs clarity on whether it can both draw down and plan on submitting proposals in the immediate future to plan for Metro Transit needs in Fiscal Year 2026 and beyond. King County has a number of outstanding applications for FTA grants or amendments that are in various stages of review. Absent a preliminary injunction, FTA's representations suggest that it will consider King County to have accepted the FTA Grant Conditions and retroactively apply such conditions to the executed agreements upon the expiration of the TRO.

13. FTA has taken the position that despite King County's accepting its pending grants subject to the limitations set forth in the TRO, King County is bound by the FTA Grant Conditions, Dkt. #57 ¶ 16-17.

14. The FTA also plans to issue new Assurances and Conditions in the near future, which likely will contain similar conditions as the FTA Grant Conditions.

15. It also appears that FTA has unilaterally and retroactively attached the new Master Agreement with the FTA Grant Conditions to grant agreements executed before that Master Agreement issued.

16. The loss of FTA funding would cause King County to substantially curtail its existing and near-future planned transit operations and entirely abandon some elements of its structure. King County would have to fundamentally rework its longstanding financial plans and procedures, capital project delivery process, and service delivery models in ways that could have significant impacts on the County's mission, its employees, and its riders. Its service network would likely have to be cut back in ways that could significantly reduce mobility options for a large portion of King County's population while potentially increasing traffic congestion and slowing the movement of freight and goods across the region.

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 8
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## II.   CONCLUSIONS OF LAW

1. The Court has jurisdiction over Defendants and the subject matter of this action. Plaintiffs' claims are not subject to the Tucker Act because the sources of their asserted rights are the U.S. Constitution, including the Separation of Powers doctrine and the Fifth Amendment Due Process Clause, and the Administrative Procedure Act (APA). Moreover, the type of relief Plaintiffs seek is declaratory and injunctive, precisely the kind of relief that is generally not available in the Court of Federal Claims. *See Doe v. Tenet*, 329 F.3d 1135, 1141 (9th Cir. 2003).

2. The Court deems no security bond is required under Rule 65(c).

3. Plaintiffs have standing to bring this suit. "A loss of funds promised under federal law satisfies Article III's standing requirement." *City & Cnty. of S.F. v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019). Here, Plaintiffs have been conditionally awarded federal grant funds that they could lose unless they accept unlawful conditions that would dictate how they govern on matters of public concern. This imminent loss of funds or infringement of rights is traceable to the conditions at issue and redressable by an order barring their enforcement. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

4. To obtain a preliminary injunction, Plaintiffs must establish (1) they are likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in Plaintiffs' favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65(b)(1).

5. There is a strong likelihood that Plaintiffs will succeed on the merits of their claims that the CoC Grant Conditions violate (1) the Constitution's separation of powers doctrine, *San Francisco*, 897 F.3d at 1234; (2) the Fifth Amendment's vagueness doctrine, *Grayned v. City of*

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 9
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Rockford*, 408 U.S. 104, 108 (1972); and (3) the APA, 5 U.S.C. § 706(2).

6. There is a strong likelihood that Plaintiff King County will succeed on the merits of its claims that the FTA Grant Conditions violate (1) the Constitution's separation of powers doctrine, *San Francisco*, 897 F.3d at 1234; (2) the Fifth Amendment's vagueness doctrine, *Grayned*, 408 U.S. at 108; and (3) the APA, 5 U.S.C. § 706(2).

7. Plaintiffs have also shown that they are likely to suffer irreparable harm during the pendency of litigation in the absence of a preliminary injunction.

8. The balance of equities tips toward Plaintiffs and the public interest strongly weighs in favor of entering a preliminary injunction.

9. The Defendants have violated the terms of the TRO.

### III.    ORDER

It is now, therefore, ORDERED as follows:

1. Plaintiffs' Motion for Preliminary Injunction is GRANTED;

2. HUD and its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined HUD Parties"), are enjoined from (1) imposing or enforcing the CoC Grant Conditions, as defined in Plaintiffs' Motion, or any materially similar terms or conditions with respect to any CoC funds awarded to Plaintiffs or members of Plaintiffs' Continuums; (2) rescinding, withholding, or cancelling the CoC Grant Agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning CoC funds, based on such terms or conditions; or (3) requiring Plaintiffs to make any "certification" or other representation related to compliance with such terms or conditions;

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 10
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

3.	The Enjoined HUD Parties shall immediately treat any actions taken to implement or enforce the CoC Grant Conditions, including any delays or withholding of funds based on such conditions, as null, void, and rescinded, and may not retroactively apply such conditions to grant agreements executed during the effective period of the TRO or this preliminary injunction. The Enjoined HUD Parties shall immediately take every step necessary to effectuate this order, including clearing any administrative, operational, or technical hurdles to implementation;

4.	DOT and FTA, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined DOT Parties"), are enjoined from (1) imposing or enforcing the FTA Grant Conditions, as defined in Plaintiffs' Motion, or any materially similar terms or conditions to any FTA funds awarded to Plaintiff King County; (2) rescinding, withholding, or cancelling the FTA grant awards, or pausing, freezing, impeding, blocking, canceling, terminating, delaying, withholding, or conditioning FTA funds, based on such terms or conditions; or (3) requiring King County to make any "certification" or other representation related to compliance with such terms or conditions;

5.	The Enjoined DOT Parties shall immediately treat any actions taken to implement or enforce the FTA Grant Conditions, including any delays or withholding of funds based on such conditions, as null, void, and rescinded, and may not retroactively apply such conditions to grant agreements executed during the effective period of the TRO or this preliminary injunction. The Enjoined DOT Parties shall immediately take every step necessary to effectuate this order, including clearing any administrative, operational, or technical hurdles to implementation;

6.	Defendants' counsel shall provide written notice of this Order to all Defendants and agencies and their employees by the end of the day on Friday, May 23, 2025;

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 11
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

7. By the end of the day on Friday, May 23, 2025, the Defendants SHALL FILE on the Court's electronic docket and serve upon Plaintiffs a Status Report documenting the actions that they have taken to comply with this Order, including a copy of the notice and an explanation as to whom the notice was sent;

8. This order remains in effect pending further orders from this Court.

Dated this ___ day of _____, 2025.

_____
HONORABLE BARBARA J. ROTHSTEIN

Presented by:

LEESA MANION
King County Prosecuting Attorney

By: */s/ David J. Hackett*
    David J. Hackett, WSBA #21234
    Alison Holcomb, WSBA #23303
    Erin Overbey, WSBA #21907
    Cristy Craig, WSBA #27451
    Donna Bond, WSBA #36177

*Attorneys for Plaintiff Martin Luther King, Jr. County*

PACIFICA LAW GROUP LLP

By: */s/ Paul J. Lawrence*
    Paul J. Lawrence, WSBA #13557
    Jamie L. Lisagor, WSBA #39946
    Sarah S. Washburn, WSBA # 44418
    Meha Goyal, WSBA #56058
    Luther Reed-Caulkins, WSBA #62513

*Attorneys for Plaintiffs Martin Luther King, Jr. County, Pierce County, Snohomish County, City and County of San Francisco, County of Santa Clara, City of Boston, and City of New York*

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 12
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

JASON J. CUMMINGS
Snohomish County Prosecuting Attorney

By: */s/ Bridget E. Casey*
    Bridget E. Casey, WSBA #30459
    Rebecca J. Guadamud, WSBA #39718
    Rebecca E. Wendling, WSBA #35887

*Attorneys for Plaintiff Snohomish County*

DAVID CHIU
San Francisco City Attorney

By: */s/ David Chiu*
    David Chiu (CA Bar No. 189542)
    Yvonne R. Meré (CA Bar No. 175394)
    Mollie M. Lee (CA Bar No. 251404)
    Sara J. Eisenberg (CA Bar No. 269303)
    Ronald H. Lee (CA Bar No. 238720)
    Alexander J. Holtzman (CA Bar No. 311813)

*Attorneys for Plaintiff City and County of San Francisco*

OFFICE OF THE COUNTY COUNSEL,
COUNTY OF SANTA CLARA

By: */s/ Tony LoPresti*
    Tony LoPresti (CA Bar No. 289269)
    Kavita Narayan (CA Bar No. 264191)
    Meredith A. Johnson (CA Bar No. 291018)
    Stefanie L. Wilson (CA Bar No. 314899)
    Cara H. Sandberg (CA Bar No. 291058)

*Attorneys for Plaintiff County of Santa Clara*

ADAM CEDERBAUM
Corporation Counsel, City of Boston

By: */s/ Samantha H. Fuchs*
    Samantha H. Fuchs (MA BBO No. 708216)
    Samuel B. Dinning (MA BBO No. 704304)

*Attorneys for Plaintiff City of Boston*

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 13
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York

By: */s/ Doris Bernhardt*
Doris Bernhardt (NY Bar No. 4449385)
Joshua P. Rubin (NY Bar No. 2734051)*
Aatif Iqbal (NY Bar No. 5068515)

*Attorneys for Plaintiff City of New York*

*\* Pro Hac Vice application pending*

ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION - 14
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750