1    THE HONORABLE BARBARA J. ROTHSTEIN

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
7                                  AT SEATTLE

8    MARTIN LUTHER KING, JR.
     COUNTY, et al.,                        No. 2:25-cv-00814-BJR
9
                             Plaintiffs,    TEMPORARY RESTRAINING
10                                          ORDER
     vs.
11                                          [PROPOSED]
     SCOTT TURNER in his official capacity
12   as Secretary of the U.S. Department of
     Housing and Urban Development, et al.,
13
                             Defendants.
14

15          This matter came before the Court on the moving Plaintiffs' combined Second Motion for

16   Temporary Restraining Order and Preliminary Injunction ("Motion").[1] Having considered the

17   briefs and declarations submitted in support of and in opposition to the Motion, the briefs and

18   declarations submitted in support of and in opposition to the original Plaintiffs' Motion for

19   Temporary Restraining Order and Motion for Preliminary Injunction, and the other pleadings and

20   papers filed in this action, the Court makes the following Findings of Fact and Conclusions of Law

21

22   with respect to the portion of the Motion seeking a TRO.

23

24   _____

25   [1] The moving Plaintiffs as to the portion of the Motion seeking a temporary restraining order (TRO)
     are City of Columbus ("Columbus"), Intercity Transit, Martin Luther King, Jr. County ("King
26   County"), City of Minneapolis ("Minneapolis"), City of New York ("NYC"), Port of Seattle, and
     City of Tucson ("Tucson") (collectively, "DOT Plaintiffs"), as to the DOT Grant Conditions, and
27   City of Cambridge ("Cambridge") and City of Pasadena ("Pasadena") (collectively, "HUD
     Plaintiffs") as to the CoC Grant Conditions, as further defined below.

ORDER GRANTING PLAINTIFFS' MOTION FOR                    PACIFICA LAW GROUP  LLP
TEMPORARY RESTRAINING ORDER - 1                              401 UNION STREET
                                                                 SUITE 1600
No. 2:25-cv-00814-BJR                                    SEATTLE, WASHINGTON 98101-2668
                                                          TELEPHONE: (206) 245-1700
                                                          FACSIMILE: (206) 245-1750

# I.     FINDINGS OF FACT

## A.     Continuum of Care Grant Conditions

1.     HUD Plaintiffs rely on federal funding from the Continuum of Care (CoC) program established by Congress to provide critical services to individuals and families experiencing homelessness, including rapid rehousing, permanent supportive housing, and other services.

2.     In July 2024, Defendant U.S. Department of Housing and Urban Development (HUD) posted a biennial Notice of Funding Opportunity (NOFO), inviting applications from local coalitions, known as "Continuums," for CoC funding. None of the conditions challenged here were included in the NOFO. After reviewing applications, HUD conditionally awarded HUD Plaintiffs and their Continuums a total of nearly $13 million in CoC grants in Fiscal Year (FY) 2024. Relying on these awards, Cambridge has already committed substantial sums from its own funds to two nonprofit subrecipients to avoid disruptions in housing or other homelessness assistance services. Similarly, Pasadena has begun the contracting process with at least one subrecipient that has already begun incurring expenses and expects reimbursement from Pasadena.

3.     In March 2025, Pasadena and other Plaintiffs begin receiving CoC grant agreements ("CoC Agreements") from HUD containing grant conditions ("CoC Grant Conditions") that were not included in the NOFO or authorized by any statute or regulation. On May 14, 2025, Cambridge was informed by HUD staff that HUD anticipated sending the first FY 2024 CoC Agreements to Cambridge the week of May 19, 2025. Cambridge expects these agreements will include the same CoC Grant Conditions that HUD has attached to all CoC Agreements presented to other Plaintiffs, including the nearby City of Boston.

    a.     The CoC Agreements state that "[t]his Agreement, the Recipient's use of funds provided under this Agreement . . . , and the Recipient's operation of projects

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

assisted with Grant Funds" are "governed by" not only certain specified statutes, rules, and grant-related documents, but also by "all current Executive Orders . . . ."

b.  The CoC Agreements require the recipient to certify "it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964." The CoC Agreements also require the recipient to agree that "its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions" for purposes of the False Claims Act (FCA), 31 U.S.C. §§ 3729 et seq. President Donald J. Trump, HUD, and other agencies have confirmed their agenda is to prohibit policies or programs promoting inclusion for people of all races, ethnicities, national origins, sexes, gender identities, or sexual orientations through the guise of enforcing federal nondiscrimination law.

c.  The CoC Agreements provide that "[n]o state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation."

d.  The CoC Agreements further require the recipient to comply with "applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, other Executive Orders or immigration

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 3
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

laws."

    e.    The CoC Agreements also provide:

> Subject to the exceptions provided by [the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (PRWORA)], the recipient must use [the Systematic Alien Verification for Entitlements (SAVE) system], or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

    f.    The CoC Agreements require the recipient to agree it "shall not use grant funds to promote 'gender ideology,' as defined in [Executive Order] 14168."

    g.    The CoC Agreements prohibit the recipient from using grant funds "to fund or promote elective abortions, as required by [Executive Order] 14182, Enforcing the Hyde Amendment."

    4.    On May 7, 2025, this Court entered a TRO enjoining Defendants HUD and Scott Turner from, among other things, imposing or enforcing the CoC Grant Conditions, rescinding or canceling the CoC Agreements or withholding funds based on such conditions, or requiring any "certification" or representation related to the those conditions with respect to the Plaintiffs who joined the initial TRO motion.[2] On May 21, 2025, this Court extended the TRO. The TRO served, in part, to prevent imminent and irreparable harms that those Plaintiffs faced from having to choose between accepting conditions that are likely unlawful or losing hundreds of millions of dollars in federal grant funding, including funding they had already budgeted and were committed to spending and that was necessary to serve vulnerable residents.

    5.    On May 21, 2025, Plaintiffs filed an Amended Complaint, adding, among other

---

[2] Plaintiffs King County, Pierce County, Snohomish County, San Francisco, Santa Clara, Boston, and NYC joined the first Motion for TRO as to the CoC Grant Conditions. *See* Dkt. # 5.

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 4
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

things, additional Plaintiffs, including HUD Plaintiffs. HUD Plaintiffs assert the same claims and allege similar harms with respect to the CoC Grant Conditions.

6.    For similar reasons to those stated in this Court's May 7 TRO (Dkt. # 52), HUD Plaintiffs face immediate and irreparable harms that require emergency relief.

    a.    In particular, Cambridge has an immediate need to draw down FY 2024 CoC funds because two of its nonprofit subrecipients who operate critical housing services will run out of funds on May 31, 2025, when certain FY 2023 CoC grants expire. While Cambridge has temporarily allotted $93,200 of its own funds for June 2025 expenses, continued funding by Cambridge is not feasible. Accordingly, Cambridge requires immediate certainty as to whether its continued use of CoC funds, which account for over 40% of its homelessness assistance budget, will be subject to grant conditions that are likely unlawful.

    b.    Pasadena faced an apparent May 12, 2025 deadline and returned the CoC Agreement with an amendment indicating that it does not consent to the CoC Grant Conditions, but it has not been able to draw down funds. To avoid any interruption in housing or other homelessness services, Pasadena has begun the contracting process with at least one service provider; and that provider has begun incurring costs and expects Pasadena to reimburse it.

7.    In sum, HUD Plaintiffs have begun budgeting, planning, and contracting with service providers, some of whom are already incurring costs and expect reimbursement; households reliant on private rentals are at risk of eviction if there is even a short-term interruption of rent payments covered by CoC funds; and the interruption of funds could threaten the operation of supportive housing in HUD Plaintiffs' jurisdictions. Ultimately, any delay or loss of funding

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 5
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

would result in disruption of services and cause irreparable damage to individuals' lives. Without CoC funding, over 200 individuals in Cambridge, and over 400 in Pasadena, would potentially lose their housing and access to critical supportive services. The loss of supportive housing capacity would further strain HUD Plaintiffs' emergency shelter systems, result in longer durations of homelessness, and reduce exits to stable housing.

### B.    The DOT Grant Conditions

8.    The DOT Plaintiffs have billions of dollars in appropriated funds through grant programs administered by the U.S. Department of Transportation (DOT) and/or its operating administrations the Federal Highway Administration (FHWA), Federal Aviation Administration (FAA), Federal Railroad Administration (FRA), and Federal Transit Administration (FTA) (collectively, the "DOT OAs," and together with Defendants DOT, Sean Duffy, Tariq Bokhari, Gloria M. Shepherd, Chris Rocheleau, and Drew Feeley, the "DOT Defendants").

9.    On April 24, 2025, DOT Secretary Sean Duffy issued a letter to "all recipients" of DOT grant funding announcing, among other things, a DOT "policy" to impose certain conditions on all DOT funding, including grants administered by DOT and the DOT OAs. In particular, Secretary Duffy's letter states that grant recipients' "legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." It also states that DOT interprets federal anti-discrimination law to presumptively prohibit "any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called 'diversity, equity, and inclusion' . . . goals." Finally, the letter states that "DOT recipients are prohibited from engaging in

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

discriminatory actions in their own policies, programs, and activities."

10.    Pursuant to the policy set forth in Secretary Duffy's letter, the DOT Defendants began attaching new conditions related to immigration enforcement, executive orders, and diversity, equity, and inclusion (DEI) to DOT-funded grants.

11.    For instance, NYC, Tucson, and other Plaintiffs were previously awarded FTA funds pursuant to programs codified in title 49, chapter 53 of the U.S. Code. These funds were awarded without any of the conditions challenged here.

12.    On April 25, 2025, FTA issued a revised Master Agreement, which applies to FTA grants awarded to the DOT Plaintiffs. The new Master Agreement contains the following new conditions ("FTA Grant Conditions"):

    a.    The FTA Master Agreement requires the recipient to "agree[] to comply with all applicable federal requirements and follow applicable federal guidance." The Master Agreement defines "Federal Requirement" to include "[a]n applicable federal law, regulation, or executive order."

    b.    The FTA Master Agreement provides:

        (1)    Pursuant to section (3)(b)(iv)(A) [of Executive Order 14173], the Recipient agrees that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of [the FCA].

        (2)    Pursuant to section (3)(b)(iv)(B) [of Executive Order 14173], by entering into this Agreement, the Recipient certifies that it does not operate any programs promoting [DEI] initiatives that violate any applicable Federal anti-discrimination laws.

While FTA grants have long required compliance with nondiscrimination laws, DOT has confirmed its intent to enforce a sweeping interpretation of these conditions inconsistent with statutory text and current court interpretations of

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 7
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the Federal antidiscrimination laws.

c.   The FTA Master Agreement also provides:

> The Recipient . . . will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

13.    This Court's initial TRO enjoined Defendants DOT, FTA, Sean Duffy, and Mathew Welbes from, among other things, imposing or enforcing the FTA Grant Conditions, rescinding or canceling FTA funds or withholding funds based on such conditions, or requiring any "certification" or representation related to the those conditions as to Plaintiff King County—the sole Plaintiff to initially seek preliminary relief from the FTA Grant Conditions. This aspect of the TRO served, in part, to prevent immediate and irreparable harms that King County faced from having to choose between accepting likely unlawful conditions or losing hundreds of millions in FTA funding.

14.    In recent weeks, DOT and the remaining DOT OAs have attached substantially similar conditions to numerous other DOT grants. These include programs administered by FHWA, such as the Safe Streets and Roads for All (SS4A) program, the Federal Highway-Aid Program, the Bridge Investment Program, the Culvert Aquatic Organism Passage Program, and the Advanced Transportation Technology and Innovation (ATTAIN) program; programs administered by FAA, such as the Airport Infrastructure Grants (AIG) program; programs administered by the FRA, such as the Railroad Crossing Elimination (RCE) Grant Program; and programs administered directly by DOT, such as the Strengthening Mobility and Revolutionizing Transportation (SMART) discretionary grant program. Moreover, DOT and the DOT OAs have made clear that these conditions will now appear in all DOT grants going forward.

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 8
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

15.    DOT and the remaining DOT OAs have provided grant agreements governing grant programs that contain substantially the same three conditions as in the FTA Master Agreement (collectively and together with the FTA Grant Conditions, the "DOT Grant Conditions"):

a.    First, the DOT Defendants have imposed a discrimination condition ("DOT Discrimination Condition") that requires grant recipients, "[p]ursuant to Section (3)(b)(iv), Executive Order 14173" to agree that "its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of [the False Claims Act]," and that "it does not operate any programs promoting [DEI] initiatives that violate any applicable Federal anti-discrimination laws."

b.    Second, the DOT Defendants have imposed an immigration enforcement condition ("DOT Immigration Enforcement Condition") that requires recipients to "cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

c.    Third, the DOT Defendants have imposed a condition ("DOT EO Condition") that requires recipients to "comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this [grant]" and lists, among other things, Executive Orders 14168 ("Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Government") and 14173 ("Ending Illegal Discrimination and Restoring Merit-Based Opportunity"), as well as two criminal immigration statutes (8 U.S.C. § 1324 and 8 U.S.C. § 1327) as "provisions" that are "applicable" to grant agreements.

16.    The DOT Plaintiffs now face deadlines with respect to various DOT grants subject to the DOT Grant Conditions. For example, Columbus faces an apparent deadline of May 27 to sign a FHWA SS4A grant agreement; King County faces an apparent May 31, 2025 deadline to submit invoices for reimbursement of already-incurred expenses under a FAA AIP grant; Tucson faces a May 31, 2025 deadline to submit funding authorization requests for FHWA formula grants; and the Port of Seattle faces apparent deadlines as early as June 3 to sign grant agreements for FAA Airport Terminal Program Grants. Intercity Transit was given only two days to sign a DOT SMART grant agreement—a deadline that passed on May 15, forcing Intercity Transit into the position of needing to immediately sign to obtain clarity on whether these funds will remain available or whether its projected projects and funding require adjustment.

17.    Any delay or loss of DOT funding would force the DOT Plaintiffs to substantially curtail existing and planned transportation safety and other improvement operations, including enhancing pedestrian safety, conducting airport resiliency and modernization improvements, maintaining and replacing a range of transit vehicles, and implementing advanced transportation technology. In some cases, the DOT Plaintiffs need to draw down grant awards immediately or else divert resources from other projects or services and face significant project delays. The loss of DOT funding would require the DOT Plaintiffs to fundamentally rework their longstanding financial plans and procedures, capital project delivery processes, and service delivery models in ways that could have significant impacts on their missions, employees, and constituents. Given the

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 10
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

significance of the impacts, the uncertainty surrounding continued DOT funding is already causing the DOT Plaintiffs harm.

## II.    CONCLUSIONS OF LAW

1.    The Court has jurisdiction over Defendants and the subject matter of this action. Plaintiffs' claims are not subject to the Tucker Act because the sources of their asserted rights are the U.S. Constitution and statutes, including the Separation of Powers doctrine, the Spending Clause, the Tenth Amendment, and the Administrative Procedure Act (APA). Moreover, the type of relief Plaintiffs seek is declaratory and injunctive, precisely the kind of relief that is generally not available in the Court of Federal Claims. *See Doe v. Tenet*, 329 F.3d 1135, 1141 (9th Cir. 2003).

2.    The Court deems no security bond is required under Rule 65(c).

3.    Plaintiffs have standing to bring this suit. "A loss of funds promised under federal law satisfies Article III's standing requirement." *City & Cnty. of S.F. v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019). Here, Plaintiffs have been awarded or conditionally awarded federal grant funds that they could lose unless they accept unlawful conditions that would dictate how they govern on matters of public concern. This imminent loss of funds or infringement of rights is traceable to the conditions at issue and redressable by an order barring their enforcement. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

4.    To obtain a TRO, the moving Plaintiffs must establish (1) they are likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65(b)(1).

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 11
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

5.      There is a strong likelihood that the HUD Plaintiffs will succeed on the merits of their claims that the CoC Grant Conditions violate (1) the Constitution's separation of powers doctrine, *San Francisco*, 897 F.3d at 1234; (2) the Spending Clause, *S. Dakota v. Dole*, 483 U.S. 203, 207–08 (1987); (3) the Tenth Amendment, *Nat'l Fed'n of Indep. Bus. v. Sebelius* ("*NFIB*"), 567 U.S. 519, 577–78 (2012); and (4) the APA, 5 U.S.C. § 706(2).

6.      There is a strong likelihood that the DOT Plaintiffs will succeed on the merits of their claims that the DOT Grant Conditions violate (1) the Constitution's separation of powers doctrine, *San Francisco*, 897 F.3d at 1234; (2) the Spending Clause, *Dole*, 483 U.S. at 207–08; (3) the Tenth Amendment, *NFIB*, 567 U.S. at 577–78; and (4) the APA, 5 U.S.C. § 706(2).

7.      The HUD Plaintiffs and the DOT Plaintiffs have also shown that they are likely to suffer irreparable harm during the pendency of litigation in the absence of a TRO.

8.      The balance of equities tips toward the HUD Plaintiffs and the DOT Plaintiffs and the public interest strongly weighs in favor of entering a TRO.

### III.      ORDER

It is now, therefore, ORDERED as follows:

1.      Plaintiffs' Second Motion for Temporary Restraining Order is GRANTED;

2.      HUD and its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined HUD Parties"), are enjoined from (1) imposing or enforcing the CoC Grant Conditions, as defined in the Motion, or any materially similar terms or conditions with respect to any CoC funds awarded to HUD Plaintiffs or members of their Continuums; (2) as to HUD Plaintiffs, rescinding, withholding, or cancelling any CoC Grant Agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning CoC funds, based on such terms or conditions;

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 12
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

or (3) requiring HUD Plaintiffs to make any "certification" or other representation related to compliance with such terms or conditions;

3.    The Enjoined HUD Parties shall immediately treat any actions taken to implement or enforce the CoC Grant Conditions or any materially similar terms or conditions as to HUD Plaintiffs, including any delays or withholding of funds based on such conditions, as null, void, and rescinded, and may not retroactively apply such conditions to grant agreements executed during the effective period of this TRO. The Enjoined HUD Parties shall immediately take every step necessary to effectuate this order, including clearing any administrative, operational, or technical hurdles to implementation;

4.    DOT, the DOT OAs, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined DOT Parties"), are enjoined from (1) imposing or enforcing the DOT Grant Conditions, as defined in the Motion, or any materially similar terms or conditions to any DOT funds awarded, directly or indirectly, to the DOT Plaintiffs or their subrecipients; (2) as to the DOT Plaintiffs or their subrecipients, rescinding, withholding, or cancelling DOT grant awards, or pausing, freezing, impeding, blocking, canceling, terminating, delaying, withholding, or conditioning DOT funds, based on such terms or conditions; or (3) requiring the DOT Plaintiffs or their subrecipients to make any "certification" or other representation related to compliance with such terms or conditions;

5.    The Enjoined DOT Parties shall immediately treat any actions taken to implement or enforce the DOT Grant Conditions or any materially similar terms or conditions as to DOT funds awarded, directly or indirectly, to the DOT Plaintiffs or their subrecipients, including any delays or withholding of funds based on such conditions, as null, void, and rescinded, and may not

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 13
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

retroactively apply such conditions to grant agreements executed during the effective period of this TRO. The Enjoined DOT Parties shall immediately take every step necessary to effectuate this order, including clearing any administrative, operational, or technical hurdles to implementation;

6.      Defendants' counsel shall provide written notice of this Order to all Defendants and agencies and their employees by the end of the day on Thursday, June 29, 2025;

7.      By the end of the day on Thursday, June 29, 2025, the Defendants SHALL FILE on the Court's electronic docket and serve upon Plaintiffs a Status Report documenting the actions that they have taken to comply with this Order, including a copy of the notice and an explanation as to whom the notice was sent;

8.      This order remains in effect pending further orders from this Court.

Dated this ___ day of _____, 2025.


_____
HONORABLE BARBARA J. ROTHSTEIN

Presented by:

PACIFICA LAW GROUP LLP

*/s/ Paul J. Lawrence*
Paul J. Lawrence, WSBA #13557
Jamie Lisagor, WSBA #39946
Sarah S. Washburn, WSBA #44418
Meha Goyal, WSBA #56058
Luther Reed-Caulkins, WSBA #62513

*Attorneys for All Plaintiffs*


LEESA MANION
King County Prosecuting Attorney

*/s/ David J. Hackett*
David J. Hackett, WSBA #21234

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 14
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Alison Holcomb, WSBA #23303
Erin Overbey, WSBA #21907
Cristy Craig, WSBA #27451
Donna Bond, WSBA #36177

*Attorneys for Plaintiff Martin Luther
King, Jr. County*

CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY

*/s/ Richard N. Coglianese*
Richard N. Coglianese (OH Bar No. 0066830)

*Attorney for Plaintiff City of Columbus*

PUBLIC RIGHTS PROJECT

*/s/ Sharanya Mohan*
Sharanya (Sai) Mohan (CA Bar No. 350675)
Naomi Tsu (OR Bar No. 242511)
Toby Merrill (MA Bar No. 601071)*

*Counsel for Plaintiffs City of Columbus, City
of Cambridge, City of Minneapolis, City of
Pasadena, and City of Tucson*

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York

*/s/ Doris Bernhardt*
Doris Bernhardt (NY Bar No. 4449385)
Joshua P. Rubin (NY Bar No. 2734051)
Aatif Iqbal (NY Bar No. 5068515)

*Attorneys for Plaintiff City of New York*

CITY OF CAMBRIDGE, LAW DEPARTMENT
MEGAN B. BAYER, CITY SOLICITOR

*/s/ Megan B. Bayer*
Megan B. Bayer (MA BBO No. 669494)*
Elliott J. Veloso (MA BBO No. 677292)*

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 15
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Diane Pires (MA BBO No. 681713)*

2    *Attorneys for Plaintiff City of Cambridge*

3

4    KRISTYN ANDERSON
     City Attorney

5
     */s/ Kristyn Anderson*
6    Kristyn Anderson (MN Lic. 0267752)*
     Sara J. Lathrop (MN Lic. 0310232)*
7    Munazza Humayun (MN Lic. 0390788)*

8
     *Attorneys for Plaintiff City of Minneapolis*
9

10   LAW, LYMAN, DANIEL, KAMERRER
     & BOGDANOVICH, P.S.
11
     */s/ Jeffrey S. Myers*
12   Jeffrey S. Myers, WSBA #16390
     Erin L. Hillier, WSBA #42883
13   Jakub Kocztorz, WSBA #61393

14
     *Attorneys for Plaintiff Intercity Transit*
15

16   PORT OF SEATTLE
     Anderson & Kreiger LLP
17
     */s/ Melissa C. Allison*
18   Melissa C. Allison (MA Bar No. 657470)*
     David S. Mackey (MA Bar No. 542277)*
19   Christina S. Marshall (MA Bar No. 688348)*
20
21   *Attorneys for Plaintiff Port of Seattle*

22         * *Pro Hac Vice application forthcoming*

23

24

25

26

27

ORDER GRANTING PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER - 16
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750