THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

                    Plaintiffs,

         v.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

                    Defendants.

No. 2:25-cv-00814-BJR

DECLARATION OF TRICIA DAVIS

I, TRICIA DAVIS, declare:

1.      I am over the age of 18 years, am competent to testify as to the matters in this declaration, and make it based on personal knowledge and my review of relevant records.

**Personal Background**

2.      I am the Director of Road Services Division, Department of Local Services ("RSD") for Martin Luther King, Jr. County ("King County"). I have been the RSD Director since November of 2020.  Prior to serving in this role, I spent over 10 years in the King County Office of Performance, Strategy and Budget as the budget supervisor responsible for the Road Services Division's budget development and financial monitoring.  I have a Bachelor's of Science in Engineering degree from Duke University (1994) and a Masters of Public Administration degree from the University of Washington Evans School of Public Policy and Governance (2007).

3.      As RSD Director, I am charged with overseeing and understanding the assets and operations of the County's road network  and the services it provides.  I oversee a wide range of

DECLARATION OF TRICIA DAVIS - 1

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

activities, including project analysis, financial forecasting, program evaluation, and policy development related to RSD and its assets.  I also track RSD budget, and the funding streams upon which it relies.

**Background on King County's Roads**

4.      King County, Washington, encompasses 2,130 square miles spanning from the Puget Sound to the east side of the Cascade Mountain range. RSD manages roadway network assets throughout unincorporated King County, which comprises a non-contiguous 80% of King County's area, covering an approximately 1,713 square mile area, containing 21 unincorporated towns and urban areas, and occupied by approximately 246,000 people.  RSD builds and maintains ground transportation infrastructure and responds to emergencies within a service area that contains saltwater coastlines, river floodplains, plateaus, slopes, mountains, lakes, and salmon streams.   Assets include 1,466 miles of roads, 275 miles of sidewalks, and 188 bridges.  RSD employs over 400 people and operates six regional maintenance facilities.

5.      Grant funding is critical to the Road Services Division.  In 2020, the King County Transportation Needs Report reflected nearly $20 billion in infrastructure needs across the unincorporated King County road network.  The total 2025 budget available for all Roads Services Division functions is approximately $148,141,000.  Road Services Division budgeting decisions must balance continuing infrastructure needs in light of multiple additional challenges to the road network.  Physical challenges, some of which are related to climate impacts, include flooding, slides, and colder and hotter temperatures.  The existing network manages increased demand over time, due to population growth in surrounding cities and resultant travel between cities and counties.  Meanwhile, local, state, and federal inability to adequately invest in infrastructure asset management is a persistent concern, compounded by regulatorily required

DECLARATION OF TRICIA DAVIS - 2

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

construction such as replacement of culverts for fish passage and the Americans with Disabilities Act transition plan.  Further, rising construction costs driven by supply chain issues, labor shortages, and materials costs affect funded projects.

**RSD Receives Federal Grants**

6.      RSD relies on multiple Congressionally authorized grant funding programs.  As of the date of this Declaration, RSD is managing twenty-seven federal grant-supported projects and programs, valued at $88,092,567 through approximately eleven different discretionary and formula grant programs.  Of the $88,092,567, $84,687,144 is funded through the Federal Highway Administration ("FHWA"), a division of the U.S. Department of Transportation ("USDOT").

7.      **Formula Funding** The bulk of RSD's federal grants include formula funding allocated to the Washington state Department of Transportation ("WSDOT") and the Puget Sound Regional Council ("PSRC"),from the FHWA. WSDOT and PSRC distribute the funding through competitive grant making processes. The formulas typically include factors set by Congress or agency rule making.  Currently, 21 of RSD's 27 grants that are partly or entirely federally funded fall into this category.  For these grants, RSD enters into agreements with WSDOT rather than directly with the federal agency that provided the formula funding.  While the state of Washington initially receives the formula funding, federal funding conditions apply to RSD because the agreements that RSD enters with the state of Washington incorporate by reference the terms of the federal aid project agreement between the state and the federal government.  A template Washington State Department of Transportation Local Agency Agreement ("Agreement") is attached to this declaration as Davis Declaration **Exhibit A** (Davis Dec. Ex. A).  Among other things, the Agreement requires that local jurisdictions must agree to comply with "…the federal aid project agreement entered into between the State and Federal Government…" Davis Dec. Ex. A at 1.  Further, potential future restrictions on federal formula

DECLARATION OF TRICIA DAVIS - 3

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

grants allocated to WSDOT or PSRC related to changed grant conditions would have a substantial negative impact on overall grant revenue, which is a critical element of RSD's annual budget.

8.    For formula grant funding awarded through WSDOT and PSRC, the WSDOT Local Programs Division administers and is the point of contact throughout the life of a grant-funded project.  The Local Programs Division assists local agencies in meeting federal grant requirements and approves any actions relating to federal grants.  Coordination typically consists of various project and financial forms submitted for approval to begin billing a grant to a project, advancing to the next stage of a project, making changes to a project, and officially closing out a project.  WSDOT and PSRC also require regular project status reports on an annual, biannual, or quarterly basis, depending on the program.  Billing is through WSDOT, on a monthly to quarterly basis.  Federal grant programs administered through WSDOT include the Bridge Investment Program[1], the Highway Safety Improvement Program ("HSIP")[2], and the Safe Routes to School[3].  The types of projects typically funded through PSRC include those funded through the Surface Transportation Block Grant (STBG) program for projects to preserve and improve the conditions and performance on any Federal-aid highway, bridge and tunnel projects on any public road, pedestrian and bicycle infrastructure, and transit capital projects.

9.    An example of a critical Bridge Investment Program project is the Fifteen Mile Creek Bridge Replacement.  The $5,893,268.00 grant funds replacement of Fifteen Mile Bridge, which carries SE May Valley Road, a high-volume arterial, over Fifteen Mile Creek.  The bridge has outlived its useful life.  The timber members have developed weather checks and areas of rot. The narrow, 26-foot-wide deck has substandard rails, curbs, and a timber sidewalk that has been covered with steel grating. The hydraulic opening is restricted at the bridge, causing the channel and bridge supports to experience scour during flooding events.  Channel-bank erosion is also present.  A sufficiency rating system is in place to evaluate bridges based on their condition.

---

[1] Infrastructure Investment and Jobs Act, § 11118, Pub. L. 117-58, 135 Stat. 429, 483 (codified at 23 USC § 124).
[2] *Id*. § 11111, 135 Stat. 475 (codified at 23 U.S.C. § 148).
[3] *Id*. § 11119, 135 Stat. 495 (codified at 23 U.S.C. § 208).

DECLARATION OF TRICIA DAVIS - 4

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Scoring ranges from 0, when a bridge cannot carry traffic loads and must be closed, to 100 for new bridges with no deficiencies.  The Fifteen Mile Creek Bridge has a sufficiency rating of 9 out of 100.  Design for the new bridge is complete, and the project is construction-ready.  If the Local Bridges Program funding fails, RSD will not be able to complete the project.

10.     An example of a critical STBG project grant is the $3,719,500.00 Berrydale Bridge Replacement.  The Berrydale Bridge conveys Kent-Black Diamond Road, a high-volume arterial, over the Burlington Northern-Santa Fe railroad corridor, a critical link to eastern Washington. The existing timber bridge does not meet federal standards.  It has multiple structural deficiencies and is past its useful service life, increasing risk of bridge collapse and limiting freight expansion.  The existing bridge has five timber spans and supporting components located within the railroad right-of-way.  The timber spans are located below the Federal Standards for railroad right-of-way clearance, and the supporting components do not have standard protections, putting the bridge at risk of collapse if a train were to collide with it.  The current bridge has deficient bridge rails and approach guardrails, meaning the standard crash impact and vehicle deflection measures are not currently in place.  Additionally, the current bridge does not have any shoulders for pedestrian or bicycle use.  It has a sufficiency rating of 20.9 out of 100.  Should the grant funding fail, the bridge replacement project would not be able to continue.  The roadway it carries is a designated lifeline route due to its connection to critical infrastructure and/or facilities; adding urgency to maintaining and enhancing the operation of the road given its role in county emergency planning and response.

11.     **Discretionary Grants.** The RSD also applies for and receives discretionary grants that are administered directly by federal agencies. Two such discretionary grants include those  administered by USDOT, and FHWA.  In those cases, each agency makes the award determinations, and the RSD enters into a grant agreement with the agency governing the use of the funds.  At this time, RSD has two active projects supported by those agency's direct grants.  They include an $800,000 USDOT grant funds development of the comprehensive Safety Action Plan for roads, for which a consultant has already been engaged, and  a $6,849,816 FHWA grant

DECLARATION OF TRICIA DAVIS - 5

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

supporting construction of three critical fish passage infrastructure projects, which are already in the design stage.  The latter of these grants was issued pursuant to DOT's General Terms and Conditions Under the Fiscal Year 2022 Culvert AOP Program, FHWA Programs, dated December 11, 2023.

**New Conditions on Federal Grants**

12.    USDOT and FHWA have revised 2025 grant agreement templates, adding terms and conditions that appear to be unrelated to Congress's intent to fund infrastructure projects. For instance, a template FHWA Competitive Grant Program General Terms and Conditions dated April 22, 2025, is attached to this declaration as Davis Declaration **Exhibit B**. This 2025 version adds the following conditions:

> **18.2  Federal Law and Public Policy Requirements.** (a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; a*nd the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law. (b) The failure of this grant agreement to expressly identify Federal law applicable to the Recipient or activities under this grant agreement does not make that law inapplicable.*
> …
> **18.4 Implementation of Executive Order 14173** (a) *Pursuant to Section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code. (b) Pursuant to Section (3)(b)(iv)(B), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal 25 of 32 anti-discrimination laws*.

**Davis Dec. Ex. B** (Emphasis added).

13. Exhibit A to the template FHWA Competitive Grant Program General Terms and Conditions, attached to this declaration as **Davis Dec. Ex. C,** requires grantees to certify that

DECLARATION OF TRICIA DAVIS - 6

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

they will "comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this [grant project]." The revised Exhibit lists President Trump's DEI Order, Executive Order 14173, and Gender Ideology Order, Executive Order 14168, (among other recent Trump administration executive orders), and two criminal immigration statutes,   8 U.S.C. 1324 and 8 U.S.C. 1327 as "provisions" purportedly "applicable" to grant agreements.

14.     DOT appears to have made similar changes to other grant templates.  For instance, similar terms were added to a DOT-Federal Aviation Administration template and DOT-Federal Railroad Administration template.

15.     The Secretary of Transportation, Sean Duffy, has informed RSD that DOT will impose similar new conditions on existing grants, and "recipients" of DOT funds.  In an April 24, 2025, letter sent to RSD ("Letter") the Secretary asserted:

> As *recipients* of such DOT funds, you have entered into legally enforceable agreements with the United States Government and are obligated to comply fully with all applicable Federal law and regulations.  These laws and regulations include the United States Constitution, Federal statutes, applicable rules, and *public policy requirements*, including, among others, those protecting free speech and religious liberty and those prohibiting discrimination and *enforcing controls on illegal immigration*.

*See* Declaration of David Morrison in Support of Plaintiff's Motion for Temporary Restraining Order, Exhibit D, Dkt. # 6  (emphasis added).  The Letter further asserts that the DOT cannot indirectly establish, induce or endorse discrimination and that "[t]hese same principles apply to *recipients* of Federal financial assistance from DOT, as both a matter of Federal law and by virtue of contractual provisions governing receipt of DOT funding".  *Id.*  The Letter warns that the DOT considers any "diversity, equity and inclusion" policy to presumptively violate federal anti-discrimination laws.  *Id.*  It states:

> Whether or not described in neutral terms, any policy, program or activity that is premised on a prohibited classification, including discriminatory

DECLARATION OF TRICIA DAVIS - 7

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

> *policies or practices designed to achieve so -called "diversity, equity and*
> *inclusion," or "DEI" goals, presumptively violates Federal law.*

*Id.* (emphasis added). The Letter does not define what constitutes a DEI "goal" or "program", and it does not explain how grant recipients might comply with federal anti-discrimination laws absent such programs and goals. Nor does it explain what "public policy requirements*"* might be considered to carry the force of law.

16.    With regard to immigration enforcement, the Letter states that "…DOT expects its *recipients* to comply with Federal *law enforcement directives and to cooperate with Federal officials* in the enforcement of Federal immigration law…". *Id.* The Letter warns that "…*failure to cooperate generally* with Federal authorities in the enforcement of Federal law, *will jeopardize your continued receipt of Federal financial assistance from DOT* and could lead to a loss of Federal funding from DOT", and that DOT "…may also *terminate funding* if DOT determines that continued funding is no longer in the public interest…" *Id.* (emphasis added).

17.    Because neither the grant templates nor the Letter define what constitutes a DEI "goal" or "program", identify specific "public policy requirements" that would be considered legally binding, or identify a legal basis for the requirement to "generally" cooperate with Federal officials, it is impossible to know if RSD, WSDOT, or PSRC can comply with the revised conditions as described in the Letter. The Letter's discussion of "…any policy program or activity…" that is "…designed to achieve so-called 'diversity, equity and inclusion' or 'DEI' goals…" as presumptively violative of federal law is particularly concerning.

18.    Because the proposed terms are vague and appear to directly conflict with other required federal, state, and local laws that RSD must apply as a public employer, including Affirmative Action and Disadvantaged Business requirements specifically referenced in the Agreement, it is not possible to know what an illegal "'DEI' goal" might be. *See* Davis Dec. Ex. A; 49 C.F.R. pt. 26; *id.* § 21.5(b)(7), (c)(1).

DECLARATION OF TRICIA DAVIS - 8

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

19.     Should the new template conditions and the Letter's requirements regarding DEI be allowed to take effect, it is unlikely that RSD will be able to meet them. In that case, current and future grant-funded projects and programs will be severely impacted. The Letter requirements directly impact ongoing RSD projects that will assess, repair, and replace failing and outdated structures. Moreover, King County's project design through full project build out always requires extensive third-party contract commitments. All of the grant funding described above is distributed periodically, over the life of the funded projects, as RSD submits invoices for reimbursement.  Should the grants fail, in many cases RSD will be unable to pay for completed work. For most, there is no available alternate funding source. To put it plainly, if future formula and discretionary grant funds become unavailable due to the new conditions, RSD's budget will be thrown into chaos, leading to further deterioration of RSD assets, and resultant damage to commerce and risks of harm to the traveling public.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 20th day of May, 2025.



DocuSigned by:

771E66D2EB854EF...

_____
TRICIA DAVIS

DECLARATION OF TRICIA DAVIS - 9

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON  98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I served a true and correct copy of the foregoing document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants Scott Turner, U.S. Dept. of Housing and Urban Development, Sean Duffy, U.S. Dept. of Transportation, Tariq Bokhari, the Federal Transit Administration, Gloria M. Shepherd, the Federal Highway Administration, Chris Rocheleau, the Federal Aviation Administration, Drew Feeley, the Federal Railroad Administration* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 21st day of May, 2025.

/s/ Gabriela DeGregorio
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A

 **Washington State Department of Transportation**

# Local Agency Agreement

Agency

Address

| ALN 20.205 - Highway Planning and Construction |
|---|
| (Assistance Listing Number) |
| **Project Number** |
| **Agreement Number** |
| For WSDOT Use Only |

The Local Agency having complied, or hereby agreeing to comply, with the terms and conditions set forth in (1) Title 23, U.S. Code Highways, (2) the regulations issued pursuant thereto, (3) 2 CFR Part 200, (4) 2 CFR Part 180 – certifying that the local agency is not excluded from receiving Federal funds by a Federal suspension or debarment, (5) the policies and procedures promulgated by the Washington State Department of Transportation, and (6) the federal aid project agreement entered into between the State and Federal Government, relative to the above project, the Washington State Department of Transportation will authorize the Local Agency to proceed on the project by a separate notification. Federal funds which are to be obligated for the project may not exceed the amount shown herein on line r, column 3, without written authority by the State, subject to the approval of the Federal Highway Administration. All project costs not reimbursed by the Federal Government shall be the responsibility of the Local Agency.

**Project Description**

Name                                                                Length

Termini

**Description of Work**

Project Agreement End Date

Advertisement Date

| Indirect Cost Rate |
|---|
| ☐ Yes  ☐ No |

| **Type of Work** | **Estimate of Funding** | | |
|---|---|---|---|
| | (1) Estimated Total Project Funds | (2) Estimated Agency Funds | (3) Estimated Federal Funds |
| PE ___%  Federal Aid Participation Ratio(s) for PE — a. Agency | | | |
| b. Other | | | |
| c. Other | | | |
| d. State Services | | | |
| e. Total PE Cost Estimate | 0.00 | 0.00 | 0.00 |
| Right of Way ___%  Federal Aid Participation Ratio(s) for RW — f. Agency | | | |
| g. Other | | | |
| h. Other | | | |
| i. State Services | | | |
| j. Total R/W Cost Estimate | 0.00 | 0.00 | 0.00 |
| Construction ___%  Federal Aid Participation Ratio(s) for CN — k. Contract | | | |
| l. Other | | | |
| m. Other | | | |
| n. Other | | | |
| o. Agency | | | |
| p. State Services | | | |
| q. Total CN Cost Estimate | 0.00 | 0.00 | 0.00 |
| r. Total Project Cost Estimate | 0.00 | 0.00 | 0.00 |

**Agency Official**

By

Title

Agency Date

**Washington State Department of Transportation**

By

Director, Local Programs

Date Executed

# Construction Method of Financing (Check Method Selected)

## State Ad and Award

Method A - Advance Payment - Agency Share of total construction cost (based on contract award)

Method B - Withhold from gas tax the Agency's share of total construction coast (line 5, column 2) in the amount of

$ _____ at $ _____ per month for _____ months.

## Local Force or Local Ad and Award

Method C - Agency cost incurred with partial reimbursement

The Local Agency further stipulates that pursuant to said Title 23, regulations and policies and procedures, and as a condition to payment of the federal funds obligated, it accepts and will comply with the applicable provisions set forth below. Adopted by official action on _____, _____, Resolution/Ordinance No. _____.

# Provisions

### I. Scope of Work

The Agency shall provide all the work, labor, materials, and services necessary to perform the project which is described and set forth in detail in the "Project Description" and "Type of Work."

When the State acts for and on behalf of the Agency, the State shall be deemed an agent of the Agency and shall perform the services described and indicated in "Type of Work" on the face of this agreement, in accordance with plans and specifications as proposed by the Agency and approved by the State and the Federal Highway Administration.

When the State acts for the Agency but is not subject to the right of control by the Agency, the State shall have the right to perform the work subject to the ordinary procedures of the State and Federal Highway Administration.

### II. Delegation of Authority

The State is willing to fulfill the responsibilities to the Federal Government by the administration of this project. The Agency agrees that the State shall have the full authority to carry out this administration. The State shall review, process, and approve documents required for federal aid reimbursement in accordance with federal requirements. If the State advertises and awards the contract, the State will further act for the Agency in all matters concerning the project as requested by the Agency. If the Local Agency advertises and awards the project, the State shall review the work to ensure conformity with the approved plans and specifications.

### III. Project Administration

Certain types of work and services shall be provided by the State on this project as requested by the Agency and described in the Type of Work above. In addition, the State will furnish qualified personnel for the supervision and inspection of the work in progress. On Local Agency advertised and awarded projects, the supervision and inspection shall be limited to ensuring all work is in conformance with approved plans, specifications, and federal aid requirements. The salary of such engineer or other supervisor and all other salaries and costs incurred by State forces upon the project will be considered a cost thereof. All costs related to this project incurred by employees of the State in the customary manner on highway payrolls and vouchers shall be charged as costs of the project.

### IV. Availability of Records

All project records in support of all costs incurred and actual expenditures kept by the Agency are to be maintained in accordance with local government accounting procedures prescribed by the Washington State Auditor's Office, the U.S. Department of Transportation, and the Washington State Department of Transportation. The records shall be open to inspection by the State and Federal Government at all reasonable times and shall be retained and made available for such inspection for a period of not less than three years from the final payment of any federal aid funds to the Agency. Copies of said records shall be furnished to the State and/or Federal Government upon request.

### V. Compliance with Provisions

The Agency shall not incur any federal aid participation costs on any classification of work on this project until authorized in writing by the State for each classification. The classifications of work for projects are:

1. Preliminary engineering.
2. Right of way acquisition.
3. Project construction.

Once written authorization is given, the Agency agrees to show continuous progress through monthly billings. Failure to show continuous progress may result the Agency's project becoming inactive, as described in 23 CFR 630, and subject to de-obligation of federal aid funds and/or agreement closure.

If right of way acquisition, or actual construction of the road for which preliminary engineering is undertaken is not started by the close of the tenth fiscal year following the fiscal year in which preliminary engineering phase was authorized, the Agency will repay to the State the sum or sums of federal funds paid to the Agency under the terms of this agreement (see Section IX).

If actual construction of the road for which right of way has been purchased is not started by the close of the tenth fiscal year following the fiscal year in which the right of way phase was authorized, the Agency will repay to the State the sum or sums of federal funds paid to the Agency under the terms of this agreement (see Section IX).

The Agency agrees that all stages of construction necessary to provide the initially planned complete facility within the limits of this project will conform to at least the minimum values set by approved statewide design standards applicable to this class of highways, even though such additional work is financed without federal aid participation.

The Agency agrees that on federal aid highway construction projects, the current federal aid regulations which apply to liquidated damages relative to the basis of federal participation in the project cost shall be applicable in the event the contractor fails to complete the contract within the contract time.

## VI. Payment and Partial Reimbursement

The total cost of the project, including all review and engineering costs and other expenses of the State, is to be paid by the Agency and by the Federal Government. Federal funding shall be in accordance with the Federal Transportation Act, as amended, 2 CFR Part 200. The State shall not be ultimately responsible for any of the costs of the project. The Agency shall be ultimately responsible for all costs associated with the project which are not reimbursed by the Federal Government. Nothing in this agreement shall be construed as a promise by the State as to the amount or nature of federal participation in this project.

The Agency shall bill the state for federal aid project costs incurred in conformity with applicable federal and state laws. The agency shall minimize the time elapsed between receipt of federal aid funds and subsequent payment of incurred costs. Expenditures by the Local Agency for maintenance, general administration, supervision, and other overhead shall not be eligible for federal participation unless a current indirect cost plan has been prepared in accordance with the regulations outlined in 2 CFR Part 200 - Uniform Admin Requirements, Cost Principles and Audit Requirements for Federal Awards, and retained for audit.

The State will pay for State incurred costs on the project. Following payment, the State shall bill the Federal Government for reimbursement of those costs eligible for federal participation to the extent that such costs are attributable and properly allocable to this project. The State shall bill the Agency for that portion of State costs which were not reimbursed by the Federal Government (see Section IX).

1. Project Construction Costs

Project construction financing will be accomplished by one of the three methods as indicated in this agreement.

**Method A** – The Agency will place with the State, within (20) days after the execution of the construction contract, an advance in the amount of the Agency's share of the total construction cost based on the contract award. The State will notify the Agency of the exact amount to be deposited with the State. The State will pay all costs incurred under the contract upon presentation of progress billings from the contractor. Following such payments, the State will submit a billing to the Federal Government for the federal aid participation share of the cost. When the project is substantially completed and final actual costs of the project can be determined, the State will present the Agency with a final billing showing the amount due the State or the amount due the Agency. This billing will be cleared by either a payment from the Agency to the State or by a refund from the State to the Agency.

**Method B** – The Agency's share of the total construction cost as shown on the face of this agreement shall be withheld from its monthly fuel tax allotments. The face of this agreement establishes the months in which the withholding shall take place and the exact amount to be withheld each month. The extent of withholding will be confirmed by letter from the State at the time of contract award. Upon receipt of progress billings from the contractor, the State will submit such billings to the Federal Government for payment of its participating portion of such billings.

**Method C** – The Agency may submit vouchers to the State in the format prescribed by the State, in duplicate, not more than once per month for those costs eligible for Federal participation to the extent that such costs are directly attributable and properly allocable to this project. Expenditures by the Local Agency for maintenance, general administration, supervision, and other overhead shall not be eligible for Federal participation unless claimed under a previously approved indirect cost plan.

The State shall reimburse the Agency for the Federal share of eligible project costs up to the amount shown on the face of this agreement. At the time of audit, the Agency will provide documentation of all costs incurred on the project. The State shall bill the Agency for all costs incurred by the State relative to the project. The State shall also bill the Agency for the federal funds paid by the State to the Agency for project costs which are subsequently determined to be ineligible for federal participation (see Section IX).

## VII. Audit of Federal Consultant Contracts

The Agency, if services of a consultant are required, shall be responsible for audit of the consultant's records to determine eligible federal aid costs on the project. The report of said audit shall be in the Agency's files and made available to the State and the Federal Government.

An audit shall be conducted by the WSDOT Internal Audit Office in accordance with generally accepted governmental auditing standards as issued by the United States General Accounting Office by the Comptroller General of the United States; WSDOT Manual M 27-50, Consultant Authorization, Selection, and Agreement Administration; memoranda of understanding between WSDOT and FHWA; and 2 CFR Part 200.501 - Audit Requirements.

If upon audit it is found that overpayment or participation of federal money in ineligible items of cost has occurred, the Agency shall reimburse the State for the amount of such overpayment or excess participation (see Section IX).

## VIII. Single Audit Act

The Agency, as a subrecipient of federal funds, shall adhere to the federal regulations outlined in 2 CFR Part 200.501 as well as all applicable federal and state statutes and regulations. A subrecipient who expends $1,000,000 or more in federal awards from all sources during a given fiscal year shall have a single or program-specific audit performed for that year in accordance with the provisions of 2 CFR Part 200.501. Upon conclusion of the audit, the Agency shall be responsible for ensuring that a copy of the report is transmitted promptly to the State.

## IX. Payment of Billing

The Agency agrees that if payment or arrangement for payment of any of the State's billing relative to the project (e.g., State force work, project cancellation, overpayment, cost ineligible for federal participation, etc.) is not made to the State within 45 days after the Agency has been billed, the State shall effect reimbursement of the total sum due from the regular monthly fuel tax allotments to the Agency from the Motor Vehicle Fund. No additional Federal project funding will be approved until full payment is received unless otherwise directed by the Director, Local Programs.

Project Agreement End Date - This date is based on your projects Period of Performance (2 CFR Part 200.309).

Any costs incurred after the Project Agreement End Date are NOT eligible for federal reimbursement. All eligible costs incurred prior to the Project Agreement End Date must be submitted for reimbursement within 60 days after the Project Agreement End Date or they become ineligible for federal reimbursement.

## X. Traffic Control, Signing, Marking, and Roadway Maintenance

The Agency will not permit any changes to be made in the provisions for parking regulations and traffic control on this project without prior approval of the State and Federal Highway Administration. The Agency will not install or permit to be installed any signs, signals, or markings not in conformance with the standards approved by the Federal Highway Administration and MUTCD. The Agency will, at its own expense, maintain the improvement covered by this agreement.

## XI. Indemnity

The Agency shall hold the Federal Government and the State harmless from and shall process and defend at its own expense all claims, demands, or suits, whether at law or equity brought against the Agency, State, or Federal Government, arising from the Agency's execution, performance, or failure to perform any of the provisions of this agreement, or of any other agreement or contract connected with this agreement, or arising by reason of the participation of the State or Federal Government in the project, PROVIDED, nothing herein shall require the Agency to reimburse the State or the Federal Government for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the Federal Government or the State.

## XII. Nondiscrimination Provision

No liability shall attach to the State or Federal Government except as expressly provided herein.

The Agency shall not discriminate on the basis of race, color, national origin, or sex in the award and performance of any USDOT-assisted contract and/or agreement or in the administration of its DBE program or the requirements of 49 CFR Part 26. The Agency shall take all necessary and reasonable steps under 49 CFR Part 26 to ensure nondiscrimination in the award and administration of USDOT-assisted contracts and agreements. The WSDOT's DBE program, as required by 49 CFR Part 26 and as approved by USDOT, is incorporated by reference in this agreement. Implementation of this program is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the Agency of its failure to carry out its approved program, the Department may impose sanctions as provided for under Part 26 and may, in appropriate cases, refer the matter for enforcement under 18 U.S.C. 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U. S. C. 3801 et seq.).

The Agency hereby agrees that it will incorporate or cause to be incorporated into any contract for construction work, or modification thereof, as defined in the rules and regulations of the Secretary of Labor in 41 CFR Chapter 60, which is paid for in whole or in part with funds obtained from the Federal Government or borrowed on the credit of the Federal Government pursuant to a grant, contract, loan, insurance, or guarantee or understanding pursuant to any federal program involving such grant, contract, loan, insurance, or guarantee, the required contract provisions for Federal-Aid Contracts (FHWA 1273), located in Chapter 44 of the Local Agency Guidelines.

The Agency further agrees that it will be bound by the above equal opportunity clause with respect to its own employment practices when it participates in federally assisted construction work: Provided, that if the applicant so participating is a State or Local Government, the above equal opportunity clause is not applicable to any agency, instrumentality, or subdivision of such government which does not participate in work on or under the contract.

The Agency also agrees:

(1) To assist and cooperate actively with the State in obtaining the compliance of contractors and subcontractors with the equal opportunity clause and rules, regulations, and relevant orders of the Secretary of Labor.

(2) To furnish the State such information as it may require for the supervision of such compliance and that it will otherwise assist the State in the discharge of its primary responsibility for securing compliance.

(3) To refrain from entering into any contract or contract modification subject to Executive Order 11246 of September 24, 1965, with a contractor debarred from, or who has not demonstrated eligibility for, government contracts and federally assisted construction contracts pursuant to the Executive Order.

(4) To carry out such sanctions and penalties for violation of the equal opportunity clause as may be imposed upon contractors and subcontractors by the State, Federal Highway Administration, or the Secretary of Labor pursuant to Part II, subpart D of the Executive Order.

In addition, the Agency agrees that if it fails or refuses to comply with these undertakings, the State may take any or all of the following actions:

(a) Cancel, terminate, or suspend this agreement in whole or in part;

(b) Refrain from extending any further assistance to the Agency under the program with respect to which the failure or refusal occurred until satisfactory assurance of future compliance has been received from the Agency; and

(c) Refer the case to the Department of Justice for appropriate legal proceedings.

**XIII. Liquidated Damages**

The Agency hereby agrees that the liquidated damages provisions of 23 CFR Part 635, Subpart 127, as supplemented, relative to the amount of Federal participation in the project cost, shall be applicable in the event the contractor fails to complete the contract within the contract time. Failure to include liquidated damages provision will not relieve the Agency from reduction of federal participation in accordance with this paragraph.

**XIV. Termination for Public Convenience**

The Secretary of the Washington State Department of Transportation may terminate the contract in whole, or from time to time in part, whenever:

(1) The requisite federal funding becomes unavailable through failure of appropriation or otherwise.

(2) The contractor is prevented from proceeding with the work as a direct result of an Executive Order of the President with respect to the prosecution of war or in the interest of national defense, or an Executive Order of the President or Governor of the State with respect to the preservation of energy resources.

(3) The contractor is prevented from proceeding with the work by reason of a preliminary, special, or permanent restraining order of a court of competent jurisdiction where the issuance of such order is primarily caused by the acts or omissions of persons or agencies other than the contractor.

(4) The Secretary is notified by the Federal Highway Administration that the project is inactive.

(5) The Secretary determines that such termination is in the best interests of the State.

**XV. Venue for Claims and/or Causes of Action**

For the convenience of the parties to this contract, it is agreed that any claims and/or causes of action which the Local Agency has against the State of Washington, growing out of this contract or the project with which it is concerned, shall be brought only in the Superior Court for Thurston County.

**XVI. Certification Regarding the Restrictions of the Use of Federal Funds for Lobbying**

The approving authority certifies, to the best of his or her knowledge and belief, that:

(1) No federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any federal agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with the awarding of any federal contract, the making of any federal grant, the making of any federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any federal agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with this federal contract, grant, loan, or cooperative agreement, the undersigned shall complete and submit the Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The undersigned shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subgrants, and contracts and subcontracts under grants, subgrants, loans, and cooperative agreements) which exceed $100,000, and that all such subrecipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification as a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

**XVII. Assurances**

Local agencies receiving Federal funding from the USDOT or its operating administrations (i.e., Federal Highway Administration, Federal Transit Administration, Federal Aviation Administration) are required to submit a written policy statement, signed by the Agency Executive and addressed to the State, documenting that all programs, activities, and services will be conducted in compliance with Section 504 and the Americans with Disabilities Act (ADA).

# Additional Provisions

# Instructions

1. **Agency Name and Billing Address** – Enter the Agency of primary interest which will become a party to the agreement.

2. **Project Number** – Leave blank. This number will be assigned by WSDOT. Not including all fund program prefixes (ex. "STBGR"), Project Number is defined as the Federal Award Identification Number (FAIN).

3. **Agreement Number** – Leave blank. This number will be assigned by WSDOT.

4.

   a. **Project Description** – Enter the project name, total length of the project (in miles), and a brief description of the termini. Data entered here must be consistent with the name, length, and termini noted in the STIP and Project Prospectus

      *Example:* (Name) "Regal Road", (Length) "1.2 miles", (Termini) "Smith Road to Main Street"

   b. **Description of Work** – Enter a concise statement of the major items of work to be performed. Statement must be consistent with the description of work noted in the STIP and Project Prospectus.

      *Example:* "Overlay Regal Road; install curb, gutter, and sidewalk; illumination; and traffic signal at the intersection of Regal Road and Dakota Avenue."

   c. **Project Agreement End Date** – Enter the Project Agreement End Date (mm/dd/yy). This date is based on the project's Period of Performance (2 CFR 200.309).

      For Planning Only projects – WSDOT recommends agencies estimate the end of the project's period of performance and add three years to determine the "Project Agreement End Date".

      For PE and RW – WSDOT recommends agencies estimate when the phase will be completed and add three years to determine the "Project Agreement End Date". For Construction – WSDOT recommends agencies estimate when construction will be completed and add three years to determine the "Project Agreement End Date".

   d. **Advertisement Date** – At construction authorization only, enter the proposed project advertisement date (mm/dd/yy).

   e. **Claiming Indirect Cost Rate** – Check the Yes box if the agency will be claiming indirect costs on the project. For those projects claiming indirect costs, supporting documentation that clearly shows the indirect cost rate being utilized must be provided with the local agency agreement. Indirect cost rate approval by your cognizant agency or through your agency's self-certification and supporting documentation is required to be available for review by FHWA, WSDOT and /or State Auditor. Check the No box if the agency will not be claiming indirect costs on the project. See section 23.5 for additional guidance.

4. **Type of Work and Funding (Round all dollar amounts to the nearest whole dollar)**

   a. **P**E – Lines a through d show Preliminary Engineering costs for the project by type of work (e.g., consultant, agency, state services, etc.).

      *Federal aid participation ratio for PE – enter ratio for PE lines with amounts in column 3.

      • **Line a** – Enter the estimated amount of agency work in columns 1 through 3.

      • **Line b & c** – Identify user, consultant, etc., and enter the estimated amounts in columns 1 through 3.

      • **Line d** – State Services. Every project must have funding for state services. Enter the estimated amounts in columns 1 through 3.

      • **Line e** – Total of lines a + b + c + d.

   b. **Right of Way** – If a Right of Way phase is authorized on the project, the appropriate costs are shown in lines f through i.

      *Federal aid participation ratio for RW – enter ratio for RW lines with amounts in column 3.

      • **Line f** – Enter the estimated amount of agency work in columns 1 through 3.

      • **Line g & h** – Identify user, consultant, etc., and enter the estimated amounts in columns 1 through 3.

      • **Line i** – State Services. Every project must have funding for state services. Enter the estimated amounts in columns 1 through 3.

      • **Line j** – Total of lines f + g + h + i.

   c. **Construction** – Lines k through p show construction costs for the project by type of work (e.g., contract, consultant, agency, state services, etc.).

*Federal aid participation ratio for CN – enter ratio for CN lines with amounts in column 3.

- **Line k** – Enter the estimated cost of the contract.

- **Lines l, m, & n** – Enter other estimated costs such as utility and construction contracts or non-federally matched contract costs.

- **Line o** – Enter estimated costs of all construction related agency work.

- **Line p** – State Services. Every project must have funding for state services. Enter the estimated amounts in columns 1 through 3.

- **Line q** – Total Construction Cost Estimate. Total of lines k + l + m + n + o +p.

d. **Total Project Cost Estimate**

- **Line r** – Total Cost Estimate of the Project. Total of lines e + j + q.

*Please remember, if the federal aid participation rate entered is not the maximum rate allowed by FHWA, then the participation rate entered becomes the maximum rate allowed.

6. **Signatures** – An authorized official of the local agency signs the agreement and enters their title and date of signature (mm/dd/yy). *Note:* Do NOT enter a date on the Date Executed line.

7. **Method of Construction Financing** – Choose the method of financing for the construction portion of the project.

a. **Method "A"** is used when the state administers the contract for the agency.

b. **Method "B"** is also used when the state administers the contract for the agency.

c. **Method "C"** is used with projects administered by the local agency. The agency will submit billings monthly through the state to FHWA for all eligible costs. The billings must document the payment requests from the contractor. If state-force work, such as audit and construction engineering, is to receive federal participation, it will be billed to the agency and FHWA simultaneously at the indicated ratio. To show continuous progress agencies should bill monthly until agreement is closed.

8. **Resolutions/Ordinances** – When someone other than the County Executive/Chairman, County Commissioners/Mayor is authorized to sign the agreement, the agency must submit to WSDOT with the agreement a copy of the Resolution/Ordinance designating that individual.

# EXHIBIT B

**FEDERAL HIGHWAY ADMINISTRATION**

**COMPETITIVE GRANT PROGRAM GENERAL TERMS AND CONDITIONS**

**Date: April 22, 2025**

**TABLE OF CONTENTS**

GENERAL TERMS AND CONDITIONS ................................................................. 6
Article 1 PURPOSE ................................................................................................. 6
    1.1    Purpose ................................................................................................ 6
Article 2 FHWA ROLE ........................................................................................... 6
    2.1    Federal Highway Administration (FHWA) Responsibilities. ................... 6
Article 3 RECIPIENT ROLE ................................................................................... 6
    3.1    Statements on the Project ...................................................................... 6
    3.2    Statements on Authority and Capacity .................................................. 6
    3.3    USDOT FHWA Reliance ....................................................................... 7
    3.4    Project Delivery. .................................................................................. 7
    3.5    Rights and Powers Affecting the Project. ............................................. 7
    3.6    Subaward to Designated Subrecipient ................................................... 8
    3.7    Designated Subrecipient Statements and Responsibilities ...................... 8
Article 4 AWARD AMOUNT, OBLIGATION, AND TIME PERIODS ................... 8
    4.1    Federal Award Amount ......................................................................... 8
    4.2    Federal Obligations. ............................................................................. 8
    4.3    Budget Period. ...................................................................................... 9
    4.4    Period of Performance. ....................................................................... 10
Article 5 STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES ... 10
    5.1    Notification Requirement ................................................................... 10
    5.2    Scope and Statement of Work Changes ............................................... 10
    5.3    Schedule Changes ............................................................................... 10
    5.4    Budget Changes. ................................................................................. 11
    5.5    FHWA Acceptance of Changes........................................................... 12
Article 6 GENERAL REPORTING TERMS ......................................................... 12
    6.1    Report Submission .............................................................................. 12
    6.2    Alternative Reporting Methods ........................................................... 12
Article 7 PROGRESS AND FINANCIAL REPORTING ...................................... 12
    7.1    Project Progress and Financial Reports and Recertifications.................. 12
    7.2    Final Progress Reports and Financial Information ................................ 13
Article 8 PERFORMANCE REPORTING ............................................................. 13
    8.1    Baseline Performance Measurement. ................................................... 13
    8.2    Post-construction Performance Measurement. ..................................... 14
    8.3    Project Outcomes Report..................................................................... 14
    8.4    General Performance Measures............................................................ 14
    8.5    Performance Reporting Survival. ........................................................ 15
Article 9 NONCOMPLIANCE AND REMEDIES ................................................ 15
    9.1    Noncompliance Determinations. ......................................................... 15
    9.2    Remedies. ........................................................................................... 15
    9.3    Other Oversight Entities ..................................................................... 16
Article 10 AGREEMENT TERMINATION........................................................... 16
    10.1    FHWA Termination............................................................................. 16
    10.2    Closeout Termination. ......................................................................... 17
    10.3    Post-Termination Adjustments ............................................................ 17
    10.4    Non-Terminating Events...................................................................... 17

10.5   Other Remedies ................................................................................................ 18
Article 11 MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS
................................................................................................................................... 18
    11.1   Recipient Monitoring and Record Retention. ............................................. 18
    11.2   Financial Records and Audits. .................................................................... 18
    11.3   Internal Controls ......................................................................................... 19
    11.4   USDOT Record Access ............................................................................... 19
    11.5   Title 23 Oversight Responsibilities ............................................................ 19
Article 12 CONTRACTING AND SUBAWARDS .................................................... 19
    12.1   Minimum Wage Rates ................................................................................ 19
    12.2   Buy America. ............................................................................................... 19
    12.3   Small and Disadvantaged Business Requirements....................................... 19
    12.4   Engineering and Design Services ................................................................ 20
    12.5   Prohibition on Certain Telecommunications and Video Surveillance Services or
          Equipment. ................................................................................................. 20
    12.6   Pass-through Entity Responsibilities .......................................................... 20
    12.7   Subaward and Contract Authorization. ....................................................... 20
Article 13 COSTS, PAYMENTS, AND UNEXPENDED FUNDS............................ 20
    13.1   Limitation of Federal Award Amount. ....................................................... 20
    13.2   Projects Costs. ............................................................................................. 21
    13.3   Timing of Project Costs. ............................................................................. 21
    13.4   Recipient Recovery of Federal Funds ........................................................ 21
    13.5   Unexpended Federal Funds ......................................................................... 21
    13.6   Timing of Payments to the Recipient.......................................................... 21
    13.7   Payment Method. ........................................................................................ 21
    13.8   Information Supporting Expenditures.......................................................... 22
    13.9   Reimbursement Frequency ......................................................................... 22
Article 14 LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY .................... 22
    14.1   Liquidation of Recipient Obligations.......................................................... 22
Article 15 AGREEMENT MODIFICATIONS ......................................................... 23
    15.1   Bilateral Modifications ............................................................................... 23
    15.2   Unilateral Contact Modifications. ............................................................... 23
    15.3   FHWA Unilateral Modifications. ............................................................... 23
    15.4   Other Modifications. ................................................................................... 23
Article 16 Civil Rights and Title VI........................................................................ 23
    16.1   Title VI. ...................................................................................................... 23
    16.2   Legacy Infrastructure and Facilities. .......................................................... 24
Article 17 CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE ...................... 24
    17.1   Critical Infrastructure Security and Resilience............................................ 24
Article 18 FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL
POLICY REQUIREMENTS........................................................................................ 25
    18.1   Uniform Administrative Requirements for Federal Awards ........................ 25
    18.2   Federal Law and Public Policy Requirements. ........................................... 25
    18.3   Implementation of Executive Order 14025 ................................................ 25
    18.4   Implementation of Executive Order 14173 ................................................ 25
    18.5   Federal Freedom of Information Act. .......................................................... 26

18.6    History of Performance ...................................................................................... 26
18.7    Whistleblower Protection.................................................................................. 26
18.8    External Award Terms and Obligations............................................................ 26
18.9    Incorporated Certifications ............................................................................... 27
Article 19 ASSIGNMENT .................................................................................................. 27
19.1    Assignment Prohibited. ..................................................................................... 27
Article 20 WAIVER............................................................................................................. 27
20.1    Waivers. ............................................................................................................ 27
Article 21 ADDITIONAL TERMS AND CONDITIONS ................................................... 27
21.1    Effect of Urban or Rural Designation............................................................... 27
21.2    Disclaimer of Federal Liability......................................................................... 28
21.3    Relocation and Real Property Acquisition. ....................................................... 28
21.4    Equipment Disposition. ..................................................................................... 28
21.5    Environmental Review. ..................................................................................... 28
21.6    Railroad Coordination ...................................................................................... 30
Article 22 MANDATORY AWARD INFORMATION ....................................................... 30
22.1    Information Contained in a Federal Award........................................................ 30
22.2    Federal Award Identification Number. .............................................................. 30
22.3    Recipient's Unique Entity Identifier. ................................................................ 30
Article 23 CONSTRUCTION AND DEFINITIONS ........................................................... 31
23.1    Schedules .......................................................................................................... 31
23.2    Exhibits ............................................................................................................. 31
23.3    Construction...................................................................................................... 31
23.4    Integration......................................................................................................... 31
23.5    Definitions ........................................................................................................ 32
Article 24 AGREEMENT EXECUTION AND EFFECTIVE DATE ................................... 32
24.1    Counterparts...................................................................................................... 32
24.2    Effective Date ................................................................................................... 32

**Index of Definitions**

Environmental Review Entity ................................................................................................. 29
Federal Share ......................................................................................................................... 12
FHWA ...................................................................................................................................... 6
General Terms and Conditions ............................................................................................... 32
Grant ...................................................................................................................................... 32
Grant Amount........................................................................................................................ 32
Grant Program ...................................................................................................................... 32
Program Statute..................................................................................................................... 32
Project ................................................................................................................................... 32
Project Closeout .................................................................................................................... 17
Project Cost Savings ............................................................................................................. 11
Technical Application............................................................................................................. 32
Title VI................................................................................................................................... 24

**GENERAL TERMS AND CONDITIONS**

These General Terms and Conditions are incorporated by reference in this grant agreement under the Grant Program. The term "Recipient" is defined in this grant agreement. This grant agreement includes schedules A through H. The grant agreement may include special terms and conditions in grant agreement articles or schedules.

## ARTICLE 1
## PURPOSE

1.1    **Purpose.** The purpose of this award is to fund the eligible project defined in this grant agreement that has been selected to receive an award for the Grant Program. The parties will accomplish that purpose by achieving the following objectives:

      (1)    timely completing the Project; and

      (2)    ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Technical Application, as modified by schedule E.

## ARTICLE 2
## FHWA ROLE

2.1    **Federal Highway Administration (FHWA) Responsibilities.**

(a)    The FHWA is the operating administration under the United States Department of Transportation ("USDOT") responsible for the administration of the Grant Program, the approval and execution of this grant agreement, and any modifications to this grant agreement under section 15.1.

## ARTICLE 3
## RECIPIENT ROLE

3.1    **Statements on the Project.** The Recipient states that:

      (1)    all material statements of fact in the Technical Application were accurate when that application was submitted; and

      (2)    schedule E documents all material changes in the information contained in that application.

3.2    **Statements on Authority and Capacity.** The Recipient states that:

  (1)  it has the authority to receive Federal financial assistance under this grant agreement;

  (2)  it has the legal authority to complete the Project;

  (3)  it has the capacity, including institutional, managerial, and financial capacity, to comply with its obligations under this grant agreement;

  (4)  not less than the difference between the total eligible project costs listed in section 3 of schedule D and the Grant Amount listed in section 1 of schedule D is committed to fund the Project;

  (5)  it has sufficient funds available to ensure that infrastructure completed or improved under this grant agreement will be operated and maintained in compliance with this agreement and applicable Federal law; and

  (6)  the individual executing this grant agreement on behalf of the Recipient has authority to enter this grant agreement and make the statements in this article 3 and in section 18.9 on behalf of the Recipient.

**3.3  USDOT FHWA Reliance.** The Recipient acknowledges that:

  (1)  the USDOT FHWA relied on statements of fact in the Technical Application to select the Project to receive this award;

  (2)  the USDOT FHWA relied on statements of fact in both the Technical Application and this grant agreement to determine that the Recipient and the Project are eligible under the terms of the Notice of Funding Opportunity ("NOFO") in section 7 of schedule D.

  (3)  the USDOT FHWA's selection of the Project to receive this award prevented awards under the NOFO to other eligible applicants.

**3.4  Project Delivery.**

 (a) The Recipient shall complete the Project under the terms of this grant agreement.

 (b) The Recipient shall ensure that the Project is financed, constructed, operated, and maintained in accordance with all Federal laws, regulations, and policies that are applicable to the Project.

**3.5  Rights and Powers Affecting the Project.**

 (a) The Recipient shall not take or permit any action that deprive it of any rights or powers necessary to the Recipient's performance under this grant agreement without written approval of the FHWA.

 (b) The Recipient shall act promptly, in a manner acceptable to the FHWA, to

acquire, extinguish, or modify any outstanding rights or claims of right of others that would interfere with the Recipient's performance under this grant agreement.

3.6    **Subaward to Designated Subrecipient.** If section 7 of schedule A identifies a Designated Subrecipient:

(1)    the Recipient hereby awards a subaward to the Designated Subrecipient for the purpose described in section 1.1;

(2)    the Recipient and the Designated Subrecipient may enter into a separate agreement, to which the FHWA is not a party, assigning responsibilities, including administrative and oversight responsibilities, among the Recipient and the Designated Subrecipient; and

(3)    for the purpose of 2 C.F.R. parts 200 and 1201, the Recipient is a pass-through entity.

3.7    **Designated Subrecipient Statements and Responsibilities.** If section 7 of schedule A identifies a Designated Subrecipient:

(1)    the Designated Subrecipient affirms all statements and acknowledgments that are attributed to the Recipient under sections 3.1 and 3.2; and

(2)    the Designated Subrecipient assumes the Recipient's reporting obligations under article 7.

## ARTICLE 4
## AWARD AMOUNT, OBLIGATION, AND TIME PERIODS

4.1    **Federal Award Amount.** The FHWA hereby awards a Grant to the Recipient in the amount listed in section 1 of schedule D as the Grant Amount.

4.2    **Federal Obligations.**

(a)    If the Federal Obligation Type identified in section 2 of schedule D is "Single," then this grant agreement obligates for the budget period the amount listed in section 1 of schedule D as the Grant Amount and sections 4.2(c)–4.2(h) do not apply to this grant agreement.

(b)    If the Federal Obligation Type identified in section 2 of schedule D is "Multiple," then an amount up to the Grant Amount listed in section 1 of schedule D will be obligated with one initial obligation and one or more subsequent, optional obligations, as described in sections 4.2(c)–4.2(h).

(c)    The Fund Obligation Table in section 2 of schedule D allocates the Grant among

8 of 32

separate portions of the Project for the purpose of the Federal obligation of funds. The scope of each portion of the Project that is identified in that table is described in the Technical Application, as modified by schedule E.

(d) This grant agreement obligates for the budget period only for the amounts allocated in the Fund Obligation Table in section 2 of schedule D to the portion of the project described under "First Fund Obligation" in section 1 of schedule C.

(e) This grant agreement does not obligate amounts allocated in the Fund Obligation Table in section 2 of schedule D to any portion of the project except the portion described under "First Fund Obligation" in section 1 of schedule C. The parties may obligate the amounts allocated to those portions of the Project only as described in section 4.2(f) or by modifying this grant agreement under article 15.

(f) If the USDOT Payment System identified in section 5 of schedule A is "FMIS," then for each portion of the Project except the portion described under "First Fund Obligation" in section 1 of schedule C, the amount allocated in section 2 of schedule D to that portion of the Project is obligated if, not later than the statutory lapse date identified in this grant agreement as applicable to the Grant Program, the parties execute an instrument, in the form provided in Exhibit D, documenting that:

    (1) the FHWA determines that all applicable Federal requirements for obligating the amount are satisfied; and

    (2) the Recipient states that it is not required to request a modification of this grant agreement under article 5.

(g) The Recipient shall not request reimbursement of costs for a portion of the Project described in section 1 of Schedule C except for the portion described under "First Fund Obligation", unless the amount allocated in section 2 of schedule D to that portion is obligated under section 4.2(f).

(h) The Recipient acknowledges that:

    (1) the FHWA is not liable for payments for a portion of the Project described in section 1 of Schedule C except for the portion described under "First Fund Obligation", unless the amount allocated in section 2 of schedule D to that portion of the Project is obligated under section 4.2(f);

    (2) any portion of the Grant that is not obligated under this section 4.2 by the statutory lapse date identified in section 6 of schedule For those funds lapses on the day after that date and becomes unavailable for the Project; and

    (3) the FHWA may consider the failure to obligate funds by the statutory lapse date identified in section 6 of schedule F for those funds to be a basis for terminating this grant agreement under section 10.1.

**4.3**    **Budget Period.**

(a) If the Federal Obligation Type identified in section 1 of schedule C is "Single," then the budget period for this award begins on the effective date of this grant agreement and ends on the budget period end date that is listed in section 1 of schedule C or as determined in FMIS.

(b) If the Federal Obligation Type identified in section 1 of schedule C is "Multiple," then the first budget period for this award begins on the effective date of this grant agreement and the last budget period end date shall be no later than the end of the period of performance dated identified in section 4.4.

(c) In this grant agreement, "budget period" is used as defined at 2 C.F.R. 200.1.

**4.4     Period of Performance.**

(a) The period of performance for this award begins on the effective date of this grant agreement and ends on the period of performance end date that is listed in section 1 of schedule C.

(b) In this grant agreement, "period of performance" is used as defined at 2 C.F.R. 200.1.

**ARTICLE 5**
**STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES**

**5.1     Notification Requirement.** The Recipient shall notify all FHWA representatives who are identified in section 4 of schedule A in writing within 30 calendar days of any change in circumstances or commitments that adversely affect the Recipient's plan to complete the Project. In that notification, the Recipient shall describe the change and what actions the Recipient has taken or plans to take to ensure completion of the Project. This notification requirement under this section 5.1 is separate from any requirements under this article 5 that the Recipient request modification of this grant agreement.

**5.2     Scope and Statement of Work Changes.** If the Project's activities differ from the activities described in the Technical Application, then the Recipient shall request a modification of this grant agreement in schedule E.

**5.3     Schedule Changes.** If one or more of the following conditions are satisfied, then the Recipient shall request a modification of this grant agreement to update schedule C:

   (1)     a completion date for the Project or a portion of the Project is listed in section 2 of schedule C and the Recipient's estimate for that milestone changes to a date that is more than six months after the date listed in section 2 of schedule C;

   (2)     a schedule change would require the budget period to continue after the budget period end date listed in section 1 of schedule C; and

(3)    a schedule change would require the period of performance to continue after the Period of Performance End Date listed in section 1 of schedule C.

For other schedule changes, the Recipient shall follow the applicable procedures of the FHWA and document the changes in writing.

**5.4    Budget Changes.**

(a) The Recipient acknowledges that if the cost of completing the Project increases:

(1)    that increase does not affect the Recipient's obligation under this grant agreement to complete the Project; and

(2)    the FHWA will not increase the amount of this award to address any funding shortfall.

(b) The Recipient shall request a modification of this grant agreement to update schedule D if, in comparing the Project's budget to the amounts listed in section 3 of schedule D:

(1)    the total "Non-Federal Funds" amount decreases; or

(2)    the total eligible Project costs amount decreases.

(c) For budget changes that are not identified in section 5.4(b), the Recipient shall follow the applicable procedures of the FHWA and document the changes in writing.

(d) If there are Project Cost Savings, then the Recipient may propose to the FHWA, in writing consistent with the FHWA's requirements, to include in this grant agreement specific additional activities that are within the scope of this award, as defined in section 1.1 and schedule B, and that the Recipient could complete with the Project Cost Savings.

In this grant agreement, "**Project Cost Savings**" means the difference between the actual eligible project costs and the total eligible project costs that are listed in section 3 of schedule D, but only if the actual eligible project costs are less than the total eligible project costs that are listed in section 3 of schedule D. There are no Project Cost Savings if the actual eligible project costs are equal to or greater than the total eligible project costs that are listed in section 3 of schedule D.

(e) If there are Project Cost Savings and either the Recipient does not make a proposal under section 5.4(d) or the FHWA does not accept the Recipient's proposal under section 5.4(d), then:

(1)    in a request under section 5.4(b), the Recipient shall reduce the Federal Share by the Project Cost Savings; and

(2)    if that modification reduces this award and the FHWA had reimbursed

11 of 32

costs exceeding the revised award, the Recipient shall refund to the FHWA the difference between the reimbursed costs and the revised award.

In this agreement, "**Federal Share**" means the sum of the total "Grant Funds" and "Other Federal Funds" amounts that are listed in section 3 of schedule D.

(f) The Recipient acknowledges that amounts that are required to be refunded under section 5.4(e)(2) constitute a debt to the Federal Government that the FHWA may collect under 2 C.F.R. 200.346 and the Standards for Administrative Collection of Claims (31 C.F.R. part 901).

5.5    **FHWA Acceptance of Changes.** The FHWA may accept or reject modifications requested under this article 5, and in doing so may elect to consider only the interests of the Grant Program and the FHWA. The Recipient acknowledges that requesting a modification under this article 5 does not amend, modify, or supplement this grant agreement unless the FHWA accepts that modification request and the parties modify this grant agreement under section 15.1.


**ARTICLE 6**
**GENERAL REPORTING TERMS**


6.1    **Report Submission.** The Recipient shall send all reports required by this grant agreement to all FHWA contacts who are listed in section 4 of schedule A.

6.2    **Alternative Reporting Methods.** The FHWA may establish processes for the Recipient to submit reports required by this grant agreement, including electronic submission processes. If the Recipient is notified of those processes in writing, the Recipient shall use the processes required by the FHWA.


**ARTICLE 7**
**PROGRESS AND FINANCIAL REPORTING**


7.1    **Project Progress and Financial Reports and Recertifications.**

(a) The Recipient will submit to FHWA project progress and financial reports and recertifications based on the frequency defined in the NOFO and section 8 of schedule A. If "Quarterly" or "Semiannual" are selected in section 8 of schedule A, then the reporting period and report submission due dates are defined in the table below.

| Quarterly Reporting Periods | | | Semiannual Reporting Periods | | |
|---|---|---|---|---|---|
| **Reporting Period** | | **Due Date** | **Reporting Period** | | **Due Date** |
| Quarter 1 | January 1 – March 31 | April 20 | Half Year 1 | January 1 – June 30 | July 20 |

| Quarter 2 | April 1 – June 30 | July 20 | Half Year 2 | July 1 – December 31 | January 20 of the next calendar year |
|---|---|---|---|---|---|
| Quarter 3 | July 1 – September 30 | October 20 | | | |
| Quarter 4 | October 1 – December 31 | January 20 of the next calendar year | | | |

If "Annual" is selected in section 8 of schedule A, then the reporting period is from January 1 to December 31 and the Recipient must submit reports to FHWA by January 20 of the next calendar year.

(b) If the date of this grant agreement is in the final month of a calendar year reporting period, then the Recipient shall submit the first Project Progress Report and Recertification in the second reporting period for the subsequent that begins after the date of this grant agreement.

(c) The Recipient shall submit to the FHWA a Project Progress Report and Recertification in the format and with the content described in exhibit C.

**7.2     Final Progress Reports and Financial Information.** No later than 120 days after the end of the period of performance, the Recipient shall submit:

(1)     a Final Project Progress Report and Recertification in the format and with the content described in exhibit C for each Project Progress Report and Recertification, including a final Federal Financial Report (SF-425); and

(2)     any other information required under FHWA award closeout procedures.

**ARTICLE 8**
**PERFORMANCE REPORTING**

**8.1     Baseline Performance Measurement.**

(a) The Recipient shall collect data for each performance measure that is identified in the Performance Measure Table in schedule G, accurate as of the Baseline Measurement Date that is identified in schedule G; and

(b) On or before the Baseline Report Date that is stated in schedule G, the Recipient shall submit a Baseline Performance Measurement Report that contains the data collected under this section 8.1 and a detailed description of the data sources, assumptions, variability, and estimated levels of precision for each performance measure that is

identified in the Performance Measure Table in schedule G.

**8.2     Post-construction Performance Measurement.**

(a) For each performance measure that is identified in the Performance Measure Table in schedule G with quarterly measurement frequency, for each of 12 consecutive calendar quarters, beginning with the first calendar quarter that begins after the Project substantial completion date, at least once during the quarter, the Recipient shall collect data for that performance measure;

(b) For each performance measure that is identified in the Performance Measure Table in schedule G with annual measurement frequency, the Recipient shall collect data for that performance measure on at least three separate occasions: (i) once during the four consecutive calendar quarters that begin after the Project substantial completion date; (ii) once during the fourth calendar quarter after the first collection; and (iii) once during the eighth calendar quarter after the first collection; and

(c) Not later than January 31 of each year that follows a calendar year during which data was collected under this section 8.2, the Recipient shall submit to the USDOT a Post-Project Performance Measurement Report containing the data collected under this section 8.2 in the previous calendar year and stating the dates when the data was collected.

(d) If an external factor significantly affects the value of a performance measure collected under this section 8.2, then the Recipient shall identify that external factor in the Post-Project Performance Measurement Report and discuss its influence on the performance measure.

**8.3     Project Outcomes Report.** The Recipient shall submit to the FHWA, not later than January 31 of the year that follows the final calendar year during which data was collected under section 8.2, a Project Outcomes Report that contains:

(1)     a narrative discussion detailing project successes and the influence of external factors on project expectations;

(2)     all baseline and post-Project performance measurement data that the Recipient reported in the Baseline Performance Measurement Report and the Post-Project Performance Measurement Reports; and

(3)     an *ex post* examination of project effectiveness relative to the baseline data that the Recipient reported in the Baseline Performance Measurement Report.

**8.4     General Performance Measures.** For each performance measure that is enumerated in schedule G, the Recipient shall ensure that all data collections under this article 8 are completed in a manner consistent with the description, location, and other attributes associated with that performance measure in schedule G.

**8.5** **Performance Reporting Survival.** The data collection and reporting requirements in this article 8 survive the termination of this agreement.

**ARTICLE 9**
**NONCOMPLIANCE AND REMEDIES**

**9.1** **Noncompliance Determinations.**

(a) If the FHWA determines that the Recipient may have failed to comply with the United States Constitution, Federal law, or the terms and conditions of this grant agreement, the FHWA may notify the Recipient of a proposed determination of noncompliance. For the notice to be effective, it must be written and the FHWA must include an explanation of the nature of the noncompliance, describe a remedy, state whether that remedy is proposed or effective at an already determined date, and describe the process through and form in which the Recipient may respond to the notice.

(b) If the FHWA notifies the Recipient of a proposed determination of noncompliance under section 9.1(a), the Recipient may, not later than 7 calendar days after the notice, respond to that notice in the form and through the process described in that notice. In its response, the Recipient may:

(1) accept the remedy;

(2) acknowledge the noncompliance, but propose an alternative remedy; or

(3) dispute the noncompliance.

To dispute the noncompliance, the Recipient must include in its response documentation or other information supporting the Recipient's compliance.

(c) The FHWA may make a final determination of noncompliance only:

(1) after considering the Recipient's response under section 9.1(b); or

(2) if the Recipient fails to respond under section 9.1(b), after the time for that response has passed.

(d) To make a final determination of noncompliance, the FHWA must provide a notice to the Recipient that states the bases for that determination.

**9.2** **Remedies.**

(a) If the FHWA makes a final determination of noncompliance under section 9.1, the FHWA may impose a remedy, including:

(1) additional conditions on the award;

(2)      any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the FHWA; suspension or termination of the award; or suspension and debarment under 2 C.F.R. part 180; or

(3)      any other remedy legally available.

(b) To impose a remedy, the FHWA must provide a written notice to the Recipient that describes the remedy, but the FHWA may make the remedy effective before the Recipient receives that notice.

(c) If the FHWA determines that it is in the public interest, the FHWA may impose a remedy, including all remedies described in section 9.2(a), before making a final determination of noncompliance under section 9.1. If it does so, then the notice provided under section 9.1(d) must also state whether the remedy imposed will continue, be rescinded, or modified.

(d) In imposing a remedy under this section 9.2 or making a public interest determination under section 9.2(c), the FHWA may elect to consider the interests of only the FHWA.

(e) The Recipient acknowledges that amounts that the FHWA requires the Recipient to refund to the FHWA due to a remedy under this section 9.2 constitute a debt to the Federal Government that the FHWA may collect under 2 C.F.R. 200.346 and the Standards for Administrative Collection of Claims (31 C.F.R. part 901).

**9.3**    **Other Oversight Entities.** Nothing in this article 9 limits any party's authority to report activity under this grant agreement to the United States Department of Transportation Inspector General or other appropriate oversight entities.

## ARTICLE 10
## AGREEMENT TERMINATION

**10.1**    **FHWA Termination.**

(a) The FHWA may terminate this grant agreement and all of its obligations under this agreement if any of the following occurs:

(1)      the Recipient fails to obtain or provide any non- Grant contribution or alternatives approved by the FHWA as provided in this grant agreement and consistent with schedule D;

(2)      a completion date for the Project or a component of the Project is listed in section 2 of schedule C and the Recipient fails to meet that milestone by six months after the date listed in section 2 of schedule C;

(3)    the Recipient fails to meet a milestone listed in section 3 of schedule C by the deadline date listed in that section for that milestone;

(4)    the Recipient fails to comply with the terms and conditions of this grant agreement, including a material failure to comply with the project schedule in schedule C even if it is beyond the reasonable control of the Recipient;

(5)    circumstances cause changes to the Project that the FHWA determines are inconsistent with the FHWA's basis for selecting the Project to receive a Grant; or

(6)    the FHWA determines that termination of this grant agreement is in the public interest.

(b) In terminating this grant agreement under this section, the FHWA may elect to consider only the interests of the FHWA.

(c) This section 10.1 does not limit the FHWA's ability to terminate this grant agreement as a remedy under section 9.2.

(d) The Recipient may request that the FHWA terminate this grant agreement under this section 10.1.

**10.2    Closeout Termination.**

(a) This grant agreement terminates on Project Closeout.

(b) In this grant agreement, "**Project Closeout**" means the date that the FHWA notifies the Recipient that the award is closed out. Under 2 C.F.R. 200.344, Project Closeout should occur no later than one year after the end of the period of performance.

**10.3    Post-Termination Adjustments.** The Recipient acknowledges that under 2 C.F.R. 200.345–200.346, termination of this grant agreement does not extinguish the FHWA's authority to disallow costs, including costs that the FHWA reimbursed before termination, and recover funds from the Recipient.

**10.4    Non-Terminating Events.**

(a) The end of the budget period described under section 4.3 does not terminate this grant agreement or the Recipient's obligations under this grant agreement.

(b) The end of the period of performance described under section 4.4 does not terminate this grant agreement or the Recipient's obligations under this grant agreement.

(c) The cancellation of funds under section 7 of schedule F does not terminate this grant agreement or the Recipient's obligations under this grant agreement.

**10.5** **Other Remedies.** The termination authority under this article 10 supplements and does not limit the FHWA's remedial authority under article 9 or 2 C.F.R. part 200, including 2 C.F.R. 200.339–200.340.

## ARTICLE 11
## MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS

**11.1** **Recipient Monitoring and Record Retention.**

(a) The Recipient shall monitor activities under this award, including activities under subawards and contracts, to ensure:

    (1)    that those activities comply with this grant agreement; and

    (2)    that funds provided under this award are not expended on costs that are not allowable under this award or not allocable to this award.

(b) If the Recipient makes a subaward under this award, the Recipient shall monitor the activities of the subrecipient in compliance with 2 C.F.R. 200.332(e).

(c) The Recipient shall retain records relevant to the award as required under 2 C.F.R. 200.334.

**11.2** **Financial Records and Audits.**

(a) The Recipient shall keep all project accounts and records that fully disclose the amount and disposition by the Recipient of the award funds, the total cost of the Project, and the amount or nature of that portion of the cost of the Project supplied by other sources, and any other financial records related to the project.

(b) The Recipient shall keep accounts and records described under section 11.2(a) in accordance with a financial management system that meets the requirements of 2 C.F.R. 200.302–200.307, 2 C.F.R. 200 subpart F, and title 23, United States Code, and will facilitate an effective audit in accordance with 31 U.S.C. 7501–7506.

(c) The Recipient shall separately identify expenditures under the fiscal year of the Grant Program in financial records required for audits under 31 U.S.C. 7501–7506. Specifically, the Recipient shall:

    (1)    list expenditures under that program separately on the schedule of expenditures of Federal awards required under 2 C.F.R. 200 subpart F, including the Federal Fiscal Year ("FY") in the program name; and

    (2)    list expenditures under that program on a separate row under Part II, Item 1 ("Federal Awards Expended During Fiscal Period") of Form SF-SAC, including the Federal Fiscal Year ("FY") in column c ("Additional Award

Identification").

**11.3    Internal Controls.** The Recipient shall establish and maintain internal controls as required under 2 C.F.R. 200.303.

**11.4    USDOT Record Access.** The FHWA may access Recipient records related to this award under 2 C.F.R. 200.337.

**11.5    Title 23 Oversight Responsibilities.** This award is subject to the oversight requirements of title 23, United States Code.

## ARTICLE 12
## CONTRACTING AND SUBAWARDS

**12.1    Minimum Wage Rates.** The Recipient shall include, in all contracts in excess of $2,000 for construction work to be performed on a Federal-aid highway (or work that is treated as if performed on a Federal-aid highway) under the Project that involves labor, provisions establishing minimum rates of wages, to be predetermined by the United States Secretary of Labor, in accordance with 23 U.S.C. 113, as applicable, that contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

**12.2    Buy America.**

(a) Steel, iron, and manufactured products used in the Project are subject to 23 U.S.C. 313, as implemented by the FHWA. The Recipient acknowledges that this grant agreement is neither a waiver of 23 U.S.C. 313(a) nor a finding under 23 U.S.C. 313(b).

(b) Construction materials used in the Project are subject to the domestic preference requirement at § 70914 of the Build America, Buy America Act, Pub. L. No. 117-58, div. G, tit. IX, subtit. A, 135 Stat. 429, 1298 (2021), as implemented by OMB, USDOT, and FHWA. The Recipient acknowledges that this grant agreement is neither a waiver of § 70914(a) nor a finding under § 70914(b).

(c) Under 2 C.F.R. 200.322, as appropriate and to the extent consistent with law, the Recipient should, to the greatest extent practicable under this award, provide a preference for the purchase, acquisition, or use of goods, products, or materials produced in the United States (including but not limited to iron, aluminum, steel, cement, and other manufactured products). The Recipient shall include the requirements of 2 C.F.R. 200.322 in all subawards including all contracts and purchase orders for work or products under this award.

**12.3    Small and Disadvantaged Business Requirements.**

(a) If any funds under this award are administered by or through a State Department of Transportation, the Recipient shall expend those funds in compliance with the requirements at 49 C.F.R. part 26, including any amendments thereto.

(b) If any funds under this award are not administered by or through a State Department of Transportation, the Recipient shall expend those funds in compliance with the requirements at 2 C.F.R. 200.321, including any amendments thereto.

12.4    **Engineering and Design Services.** As applicable, the Recipient shall award each contract or sub- contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping, or related services with respect to the Project in the same manner that a contract for architectural and engineering services that is negotiated under the Brooks Act, 40 U.S.C. 1101-1104 as implemented in 23 U.S.C. 112(b)(2), or an equivalent qualifications-based requirement prescribed for or by the Recipient and approved in writing by the USDOT.

12.5    **Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment.** The Recipient acknowledges that Section 889 of Pub. L. No. 115-232 and 2 C.F.R. 200.216 prohibit the Recipient and all subrecipients from procuring or obtaining certain telecommunications and video surveillance services or equipment under the Grant award.

12.6    **Pass-through Entity Responsibilities.** If the Recipient makes a subaward under the Grant award, the Recipient shall comply with the requirements on pass-through entities under 2 C.F.R. parts 200 and 1201, including 2 C.F.R. 200.331–200.333.

12.7    **Subaward and Contract Authorization.**

(a) If the FHWA Office for Subaward and Contract Authorization identified in section 6 of schedule A is "FHWA Division," then the Recipient shall comply with subaward and contract authorization requirements under 23 C.F.R chapter I.

(b) If the FHWA Office for Subaward and Contract Authorization identified in section 6 of schedule A is "FHWA Office of Acquisition and Grants Management," then the Recipient must follow the requirements in 2 C.F.R. 200.308, 2 C.F.R. 200.333, and 23 C.F.R. 172, as applicable. Approvals under 2 C.F.R. 200.308(f)(6) do not apply to the procurement of goods and services.

### ARTICLE 13
### COSTS, PAYMENTS, AND UNEXPENDED FUNDS

13.1    **Limitation of Federal Award Amount.** Under the Grant Program award, the FHWA shall not provide funding greater than the amount obligated under section 4.2, and FMIS as applicable. The Recipient acknowledges that the FHWA is not liable for

payments exceeding that amount, and the Recipient shall not request reimbursement of costs exceeding that amount.

**13.2    Projects Costs.** The Grant Program award is subject to the cost principles at 2 C.F.R. 200 subpart E, including provisions on determining allocable costs and determining allowable costs.

**13.3    Timing of Project Costs.**

(a) The Recipient shall not charge to the Grant Program award costs that are incurred after the budget period.

(b) Except as permitted under section 13.3(d), the Recipient shall not charge to the Grant award costs that were incurred before the date of this grant agreement.

(c) The execution of this grant agreement will terminate and supersede any previous FHWA approval for the Recipient to incur costs under the Grant Program award for the Project. Section 4 of schedule D is the exclusive FHWA approval of costs incurred before the date of this grant agreement.

(d) If section 4 of schedule D identifies an advance construction authorization under 23 U.S.C. 115 or identifies a pre-award approval under 2 C.F.R. 200.458, then the Recipient may charge to the Grant Program award, for payment from the Grant Program grant or other Federal amounts, costs that were incurred before the date of this grant agreement, were consistent with that authorization, and would have been allowable if incurred during the budget period.

**13.4    Recipient Recovery of Federal Funds.** The Recipient shall make all reasonable efforts, including initiating litigation, if necessary, to recover Federal funds if the FHWA determines, after consultation with the Recipient, that those funds have been spent fraudulently, wastefully, or in violation of Federal laws, or misused in any manner under this award. The Recipient shall not enter a settlement or other final position, in court or otherwise, involving the recovery of funds under the Grant award unless approved in advance in writing by the FHWA.

**13.5    Unexpended Federal Funds.** Any Federal funds that are awarded at section 4.1 but not expended on allocable, allowable costs remain the property of the United States.

**13.6    Timing of Payments to the Recipient.**

(a) Reimbursement is the payment method for the Grant Program.

(b) The Recipient shall not request reimbursement of a cost before the Recipient has entered into an obligation for that cost.

**13.7    Payment Method.**

(a) If the USDOT Payment System identified in section 5 of schedule A is "FMIS," then

21 of 32

the Recipient shall follow FMIS procedures to request and receive reimbursement payments under this award.

(b) If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then the Recipient shall use the DELPHI eInvoicing System to request reimbursement under this award unless the FHWA agreement officer provides written approval for the Recipient to use a different request and payment method.

(c) The FHWA may deny a payment request that is not submitted using the method identified in this section 13.7.

**13.8    Information Supporting Expenditures.**

(a) If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then when requesting reimbursement of costs incurred or credit for cost share incurred, the Recipient shall electronically submit the SF 271 (Outlay Report and Request for Reimbursement for Construction Programs), shall identify the Federal share and the Recipient's share of costs, and shall submit supporting cost detail to clearly document all costs incurred. As supporting cost detail, the Recipient shall include a detailed breakout of all costs incurred, including direct labor, indirect costs, other direct costs, and travel.

(b) If the Recipient submits a request for reimbursement that the FHWA determines does not include or is not supported by sufficient detail, the FHWA may deny the request or withhold processing the request until the Recipient provides sufficient detail.

**13.9    Reimbursement Frequency.** If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then the Recipient shall not request reimbursement more frequently than monthly.

**ARTICLE 14**
**LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY**

**14.1    Liquidation of Recipient Obligations.**

(a) The Recipient shall liquidate all obligations of award funds under this grant agreement not later than the earlier of (1) 120 days after the end of the period of performance or (2) the statutory funds cancellation date identified in section 7 of schedule F.

(b) Liquidation of obligations and adjustment of costs under the project-specific agreement follow the requirements of 2 C.F.R. 200.344–200.346.

## ARTICLE 15
## AGREEMENT MODIFICATIONS

**15.1    Bilateral Modifications.** The parties may amend, modify, or supplement this grant agreement by mutual agreement in writing signed by the FHWA and the Recipient. Either party may request to amend, modify, or supplement this grant agreement by written notice to the other party.

**15.2    Unilateral Contact Modifications.**

(a) The Recipient may update the contacts who are listed in section 3 of schedule A by written notice to all of the FHWA contacts who are listed in section 4 of schedule A.

(b) The FHWA may update the contacts who are listed in section 4 of schedule A by written notice to all of the Recipient contacts who are listed in section 3 of schedule A.

**15.3    FHWA Unilateral Modifications.**

(a) The FHWA may unilaterally modify this grant agreement to comply with Federal law, including the Program Statute.

(b) To unilaterally modify this grant agreement under this section 15.3, the FHWA must provide a notice to the Recipient that includes a description of the modification and state the date that the modification is effective.

**15.4    Other Modifications.** The parties shall not amend, modify, or supplement this grant agreement except as permitted under sections 15.1, 15.2, or 15.3. If an amendment, modification, or supplement is not permitted under section 15.1, not permitted under section 15.2, and not permitted under section 15.3, it is void.

## ARTICLE 16
## CIVIL RIGHTS AND TITLE VI

**16.1    Title VI.**

(a)  The purpose of sections 16.1(b)-16.1(c) is to ensure that the Recipient has a plan to comply with Title VI and 49 C.F.R. part 21, including any amendments thereto.

(b) If the Recipient is a State DOT recipient of apportioned (formula) Federal-aid highway funding or a non-State DOT who has received other Federal funds and has a current Title VI Plan on file with the FHWA, then the Recipient shall submit to the FHWA before signing this grant agreement documentation showing that the Recipient has a current Title VI Plan on file with FHWA.

(c) If the Recipient is a non-State DOT and does not have a current Title VI Plan on file with the FHWA then as described in chapter II, section 2 of DOT Order 1000.12C, including any amendments or updates thereto, FHWA must complete a Title VI Assessment of the Recipient before entering this grant agreement. Until DOT guidance on conducting such an assessment is finalized, FHWA may rely on the date of Title VI assurances provided with the signing of the grant agreement.

(d) In this section 12.1, **"Title VI"** means Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified at 42 U.S.C. 2000d to 2000d-4a).

## 16.2    Legacy Infrastructure and Facilities.

In furtherance of the Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336 (codified at 42 U.S.C. 12101-12213), and Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112 (codified at 29 U.S.C. 794), not later than one year after the date of this agreement, the Recipient shall develop a plan to address any legacy infrastructure or facilities that are not compliant with ADA standards and are involved in, or closely associated with, the Project. Consistent with 49 C.F.R. part 27, even in the absence of prior discriminatory practice or usage, a Recipient administering a program or activity receiving Federal financial assistance is expected to take action to ensure that no person is excluded from participation in or denied the benefits of the program or activity on the basis of disability.

## ARTICLE 17
## CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE

## 17.1    Critical Infrastructure Security and Resilience.

(a) Consistent with Presidential Policy Directive 21, "Critical Infrastructure Security and Resilience" (Feb. 12, 2013), and the National Security Presidential Memorandum on Critical Infrastructure Security and Resilience (NSM-22), the Recipient shall consider physical and cyber security and resilience in planning, design, and oversight of the Project.

(b) If the Security Risk Designation in section 3 of schedule F is "Elevated," then, not later that than two years after the date of this agreement, the Recipient shall submit to the FHWA a report that:

(1)    identifies a cybersecurity Point of Contact for the transportation infrastructure being improved in the Project;

(2)    summarizes or contains a cybersecurity incident reporting plan for the transportation infrastructure being improved in the Project;

(3)    summarizes or contains a cybersecurity incident response plan for the transportation infrastructure being improved in the Project;

(4)    documents the results of a self-assessment of the Recipient's cybersecurity posture and capabilities; and

(5)    describes any additional actions that the Recipient has taken to consider or address cybersecurity risk of the transportation infrastructure being improved in the Project.

**ARTICLE 18**
**FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS**

18.1    **Uniform Administrative Requirements for Federal Awards.** The Recipient shall comply with the obligations on non-Federal entities under 2 C.F.R. parts 200 and 1201.

18.2    **Federal Law and Public Policy Requirements.**

(a)  The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(b)  The failure of this grant agreement to expressly identify Federal law applicable to the Recipient or activities under this grant agreement does not make that law inapplicable.

18.3    **Implementation of Executive Order 14025.** Consistent with Executive Order 14025, "Worker Organizing and Empowerment" (Apr. 26, 2021), Schedule H, Labor and Work, documents the consideration of job quality and labor rights, standards, and protections related to the Project.

18.4    **Implementation of Executive Order 14173**

(a)  Pursuant to Section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(b)  Pursuant to Section (3)(b)(iv)(B), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal

25 of 32

anti-discrimination laws.

**18.5    Federal Freedom of Information Act.**

(a) The FHWA is subject to the Freedom of Information Act, 5 U.S.C. 552.

(b) The Recipient acknowledges that the Technical Application and materials submitted to the FHWA by the Recipient related to this grant agreement may become FHWA records subject to public release under 5 U.S.C. 552.

**18.6    History of Performance.** Under 2 C.F.R 200.206, any Federal agency may consider the Recipient's performance under this grant agreement, when evaluating the risks of making a future Federal financial assistance award to the Recipient.

**18.7    Whistleblower Protection.**

(a) The Recipient acknowledges that it is a "grantee" within the scope of 41 U.S.C. 4712, which prohibits the Recipient from taking certain actions against an employee for certain disclosures of information that the employee reasonably believes are evidence of gross mismanagement of the Grant Program award, gross waste of Federal funds, or a violation of Federal law related this this award.

(b) The Recipient shall inform its employees in writing of the rights and remedies provided under 41 U.S.C. 4712, in the predominant native language of the workforce.

**18.8    External Award Terms and Obligations.**

(a) In addition to this document and the contents described in article 25 this grant agreement includes the following additional terms as integral parts:

  (1)    Appendix A to 2 C.F.R. part 25: System for Award Management and Universal Identifier Requirements;

  (2)    Appendix A to 2 C.F.R. part 170: Reporting Subawards and Executive Compensation;

  (3)    2 C.F.R. part 175: Award Term for Trafficking in Persons; and

  (4)    Appendix XII to 2 C.F.R. part 200: Award Term and Condition for Recipient Integrity and Performance Matters.

(b) The Recipient shall comply with:

  (1)    49 C.F.R. part 20: New Restrictions on Lobbying;

  (2)    49 C.F.R. part 21: Nondiscrimination in Federally-Assisted Programs of the Department of Transportation—Effectuation of Title VI of the Civil Rights Act of 1964;

    (3)    49 C.F.R. part 27: Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance;

    (4)    23 C.F.R. Chapter 1: Federal Highway Administration, Department of Transportation as, applicable to the Recipient.

    (5)    Subpart B of 49 C.F.R. part 32: Governmentwide Requirements for Drug-free Workplace (Financial Assistance).

**18.9**    **Incorporated Certifications.** The Recipient makes the statements in the following certifications, which are incorporated by reference:

    (1)    Appendix A to 49 C.F.R. part 20 (Certification Regarding Lobbying).

## ARTICLE 19
## ASSIGNMENT

**19.1**    **Assignment Prohibited.** The Recipient shall not transfer to any other entity any discretion granted under this grant agreement, any right to satisfy a condition under this grant agreement, any remedy under this grant agreement, or any obligation imposed under this grant agreement.

## ARTICLE 20
## WAIVER

**20.1**    **Waivers.**

  (a)  A waiver of a term of this grant agreement granted by the FHWA will not be effective unless it is in writing and signed by an authorized representative of the FHWA.

  (b)  A waiver of a term of this grant agreement granted by the FHWA on one occasion will not operate as a waiver on other occasions.

  (c)  If the FHWA fails to require strict performance of a term of this grant agreement, fails to exercise a remedy for a breach of this grant agreement, or fails to reject a payment during a breach of this grant agreement, that failure does not constitute a waiver of that term or breach.

## ARTICLE 21
## ADDITIONAL TERMS AND CONDITIONS

**21.1**    **Effect of Urban or Rural Designation.** As applicable to the Grant Program, based on information that the Recipient provided to the FHWA, including the Technical

Application, if section 1 of schedule F designates the Grant award as an urban award or a rural award, as defined in the NOFO, then the Recipient shall comply with the requirements that accompany that designation on minimum award size, geographic location, and cost sharing.

**21.2    Disclaimer of Federal Liability.** The FHWA shall not be responsible or liable for any damage to property or any injury to persons that may arise from, or be incident to, performance or compliance with this grant agreement.

**21.3    Relocation and Real Property Acquisition.**

(a) The Recipient shall comply with the land acquisition policies in 49 C.F.R. part 24 subpart B and shall pay or reimburse property owners for necessary expenses as specified in that subpart.

(b) The Recipient shall provide a relocation assistance program offering the services described in 49 C.F.R. part 24 subpart C and shall provide reasonable relocation payments and assistance to displaced persons as required in 49 C.F.R. part 24 subparts D–E.

(c) The Recipient shall make available to displaced persons comparable replacement dwellings in accordance with 49 C.F.R. part 24.

**21.4    Equipment Disposition.**

(a) In accordance with 2 C.F.R. 200.313 and 1201.313, if the Recipient, a Designated Subrecipient, or a subrecipient acquires equipment under the Grant Program award, then when that equipment is no longer needed for the Project:

    (1)    if the entity that acquired the equipment is a State, the State shall dispose of that equipment in accordance with State laws and procedures; and

    (2)    if the entity that acquired the equipment is an Indian Tribe, the Indian Tribe shall dispose of that equipment in accordance with tribal laws and procedures. If such laws and procedures do not exist, Indian Tribes must follow the guidance in 2 C.F.R. 200.313; and

    (3)    if the entity that acquired the equipment is neither a State nor an Indian Tribe, that entity shall request disposition instructions from the FHWA.

(b) In accordance with 2 C.F.R. 200.443(d), the distribution of the proceeds from the disposition of equipment must be made in accordance with 2 C.F.R. 200.310-200.316 and 2 C.F.R. 1201.313.

(c) The Recipient shall ensure compliance with this section 21.4 for all tiers of subawards under the Grant Program award.

**21.5    Environmental Review.**

28 of 32

(a) In this section, "**Environmental Review Entity**" means:

    (1)    if the Project is located in a State that has assumed responsibilities for environmental review activities under 23 U.S.C. 326 or 23 U.S.C. 327 and the Project is within the scope of the assumed responsibilities, the State; and

    (2)    for all other cases, the FHWA.

(b) Except as authorized under section 21.5(c), the Recipient shall not begin final design; acquire real property, construction materials, or equipment; begin construction; or take other actions that represent an irretrievable commitment of resources for the Project unless and until:

    (1)    the Environmental Review Entity complies with the National Environmental Policy Act, 42 U.S.C. 4321 et seq. and any other applicable environmental laws and regulations; and

    (2)    if the Environmental Review Entity is not the Recipient, the Environmental Review Entity provides the Recipient with written notice that the environmental review process is complete.

(c) If the Recipient is using procedures for early acquisition of real property under 23 C.F.R. 710.501 or hardship and protective acquisitions of real property 23 C.F.R. 710.503, the Recipient shall comply with 23 C.F.R. 771.113(d)(1).

(d) The Recipient acknowledges that:

    (1)    the Environmental Review Entity's actions under section 21.5(a) depend on the Recipient conducting necessary environmental analyses and submitting necessary documents to the Environmental Review Entity; and

    (2)    applicable environmental statutes and regulation may require the Recipient to prepare and submit documents to other Federal, State, and local agencies.

(e) Consistent with 23 C.F.R. 771.105(a), to the extent practicable and consistent with Federal law, the Recipient shall coordinate all environmental investigations, reviews, and consultations as a single process.

(f) The activities described in schedule B and other information described in this grant agreement may inform environmental decision-making processes, but the parties do not intend this grant agreement to document the alternatives under consideration under those processes. If a build alternative is selected that does not align with schedule B or other information in this grant agreement, then:

    (1)    the parties may amend the grant agreement under section 15.1 for consistency with the selected build alternative; or

(2)     if the FHWA determines that the condition at section 10.1(a)(5) is satisfied, the FHWA may terminate this grant agreement under section 10.1(a)(5).

(g) The Recipient shall complete any mitigation activities described in the environmental document or documents for the Project, including the terms and conditions contained in the required permits and authorizations for the Project.

**21.6    Railroad Coordination.** If section 3 of schedule C includes one or more milestones identified as a "Railroad Coordination Agreement," then for each of those milestones, the Recipient shall enter a standard written railroad coordination agreement, consistent with 23 C.F.R. 646.216(d), no later than the deadline date identified for that milestone, with the identified railroad for work and operation within that railroad's right-of-way.


## ARTICLE 22
## MANDATORY AWARD INFORMATION


**22.1    Information Contained in a Federal Award.** For 2 C.F.R. 200.211

(1)     the "Federal Award Date" is the date of this grant agreement, as defined under section 24.2;

(2)     the "Assistance Listings Number" is provided in section 7 of schedule D; and

(3)     this award is not for research and development.

**22.2    Federal Award Identification Number.**

(a) The Federal Award Identification Number ("FAIN") will be generated when the FHWA authorizes the project in FMIS. If the Recipient is a State DOT, they acknowledge that they have access to FMIS and can retrieve the FAIN from FMIS. If the Recipient is a non-State DOT, they acknowledge that the FAIN is on the FMIS project authorization.

**22.3    Recipient's Unique Entity Identifier.**

(a) If the USDOT Payment System identified in section 5 of schedule A is "FMIS," then the Recipient's Unique Entity Identifier, as defined at 2 C.F.R. 25.400, is available in FMIS or GrantSolutions, as applicable. The Recipient acknowledges that it has access to FMIS or GrantSolutions and can retrieve the unique entity identifier from FMIS or GrantSolutions, as applicable.

(b) If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then the Recipient's Unique Entity Identifier, as defined at 2 C.F.R. 25.400, is listed on page 1, line 4 of the Non-State DOT Recipient Signature Page.


30 of 32

**ARTICLE 23**
**CONSTRUCTION AND DEFINITIONS**

23.1    **Schedules.** This grant agreement includes the following schedules as integral parts:

| | |
|---|---|
| Schedule A | Administrative Information |
| Schedule B | Project Activities |
| Schedule C | Award Dates and Project Schedule |
| Schedule D | Award and Project Financial Information |
| Schedule E | Project Changes |
| Schedule F | Grant Program Designations |
| Schedule G | Grant Performance Measurement Information |
| Schedule H | Labor and Work |

23.2    **Exhibits.** The following exhibits, which are located in the document titled "Federal Highway Administration Exhibits to Competitive Grant Agreements", and available at https://www.fhwa.dot.gov/pgc/, are part of this grant agreement.

| | |
|---|---|
| Exhibit A | Applicable Federal Laws and Regulations |
| Exhibit B | Additional Standard Terms |
| Exhibit C | Project Progress Reports and Recertifications: Format and Content |
| Exhibit D | Form for Subsequent Obligation of Funds |

23.3    **Construction.**

(a) In these General Terms and Conditions:

(1)    unless expressly specified, a reference to a section or article refers to that section or article in these General Terms and Conditions;

(2)    a reference to a section or other subdivision of a schedule listed in section 23.1 will expressly identify the relevant schedule; and

(3)    there are no references to articles or sections in this grant agreement portions of this grant agreement that are not contained in schedules listed in section 23.1.

(b) If a provision in these General Terms and Conditions or the exhibits conflicts with a provision in this grant agreement, then this grant agreement prevails. If a provision in the exhibits conflicts with a provision in these General Terms and Conditions, then the provision in these General Terms and Conditions prevails.

23.4    **Integration.** This grant agreement constitutes the entire agreement of the parties relating to the Grant Program and awards under that program and supersedes any previous agreements, oral or written, relating to the Grant Program and awards under that program.

31 of 32

**23.5** **Definitions.** In this grant agreement,, the following definitions apply:

"**General Terms and Conditions**" means this document, including articles 1–24.

"**Grant**" means an award of Federal Highway Administration grant program funds that were made available under the Notice of Funding Opportunity ("NOFO") identified in section 7 of schedule D.

"**Grant Amount**" means the amount of the grant funds awarded to the Recipient in section 1 of schedule D.

"**Grant Program**" means the grant program on the title page of Schedules A to H to the Grant Agreement.

"**Program Statute**" means the collective statutory text in schedule F.

"**Project**" means the project proposed in the Technical Application, as modified by the negotiated provisions of this grant agreement, including schedules A to H.

"**Technical Application**" means the application identified in section 1 of schedule A, including Standard Form 424 and all information and attachments submitted with that form through Grants.gov.

## ARTICLE 24
## AGREEMENT EXECUTION AND EFFECTIVE DATE

**24.1** **Counterparts.** This grant agreement may be executed in counterparts, which constitute one document. The parties intend each countersigned original to have identical legal effect.

**24.2** **Effective Date.** This grant agreement will become effective when all parties have signed it. The date of this grant agreement will be the date this grant agreement is signed by the last party to sign it. This instrument constitutes a Grant when the FHWA's authorized representative signs it.

# EXHIBIT C

**FEDERAL HIGHWAY ADMINISTRATION**

**EXHIBITS TO COMPETITIVE GRANT AGREEMENTS**


**Date:  April 30, 2025**

**EXHIBIT A**
**APPLICABLE FEDERAL LAWS AND REGULATIONS**

By entering into this grant agreement under the grant program on the title page of Schedules A to H to the Grant Agreement the Recipient assures and certifies, with respect to this Grant, that it will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Project. Performance under this grant agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Recipient and any applicable sub-recipients. The applicable provisions to this grant agreement include, but are not limited to, the following:

**General Federal Legislation**
   a. Davis-Bacon Act – 40 U.S.C. 3141, et seq., as applicable under 23 U.S.C. 113
   b. Federal Fair Labor Standards Act – 29 U.S.C. 201, et seq.
   c. Hatch Act – 5 U.S.C. 1501, et seq.
   d. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 – 42 U.S.C. 4601, et seq.
   e. National Historic Preservation Act of 1966 - Section 106 – 54 U.S.C. 306108
   f. Archeological and Historic Preservation Act of 1974 – 54 U.S.C. 312501, et seq.
   g. Native American Graves Protection and Repatriation Act – 25 U.S.C. 3001, et seq.
   h. Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. 7401, et seq.
   i. Section 404 of the Clean Water Act, as amended – 33 U.S.C. 1344
   j. Section 7 of the Endangered Species Act, P.L. 93-205, as amended – 16 U.S.C. 1536
   k. Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. 1451, et seq.
   l. Flood Disaster Protection Act of 1973 - Section 102(a) – 42 U.S.C. 4012a
   m. Age Discrimination Act of 1975 – 42 U.S.C. 6101, et seq.
   n. American Indian Religious Freedom Act, P.L. 95-341, as amended
   o. Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.
   p. The Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. 4541, et seq.
   q. Sections 523 and 527 of the Public Health Service Act of 1912, as amended – 42 U.S.C. 290dd through 290dd-2
   r. Architectural Barriers Act of 1968 – 42 U.S.C. 4151, et seq.
   s. Power Plant and Industrial Fuel Use Act of 1978, P.L. 100-42 - Section 403 – 42 U.S.C. 8373
   t. Contract Work Hours and Safety Standards Act – 40 U.S.C. 3701, et seq.
   u. Copeland Anti-kickback Act, as amended – 18 U.S.C. 874 and 40 U.S.C. 3145
   v. National Environmental Policy Act of 1969 – 42 U.S.C. 4321, et seq.
   w. Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. 1271, et seq.
   x. Federal Water Pollution Control Act, as amended – 33 U.S.C. 1251-1376
   y. Single Audit Act of 1984 – 31 U.S.C. 7501, et seq.
   z. Americans with Disabilities Act of 1990 – 42 U.S.C. 12101, et seq.
   aa. Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681 through 1683 and 1685 through 1687
   bb. Section 504 of the Rehabilitation Act of 1973, as amended – 29 U.S.C. 794

A-1

cc. Title VI of the Civil Rights Act of 1964 – 42 U.S.C. 2000d, et seq.

dd. Title IX of the Federal Property and Administrative Services Act of 1949 – 40 U.S.C. 1101 -1104, 541, et seq.

ee. Limitation on Use of Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. 1352

ff. Freedom of Information Act – 5 U.S.C. 552, as amended

gg. Magnuson-Stevens Fishery Conservation and Management Act – 16 U.S.C. 1855

hh. Farmland Protection Policy Act of 1981 – 7 U.S.C. 4201, et seq.

ii. Noise Control Act of 1972 – 42 U.S.C. 4901, et seq.

jj. Fish and Wildlife Coordination Act of 1956 – 16 U.S.C. 661, et seq.

kk. Section 9 of the Rivers and Harbors Act and the General Bridge Act of 1946 – 33 U.S.C. 401 and 525

ll. Section 4(f) of the Department of Transportation Act of 1966 – 49 U.S.C. 303 and 23 U.S.C. 138

mm. Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended – 42 U.S.C. 9601, et seq.

nn. Safe Drinking Water Act – 42 U.S.C. 300f to 300j-26

oo. Wilderness Act – 16 U.S.C. 1131-1136

pp. Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 – 42 U.S.C. 6901, et seq.

qq. Migratory Bird Treaty Act – 16 U.S.C. 703, et seq.

rr. The Federal Funding Transparency and Accountability Act of 2006, as amended (Pub. L. 109–282, as amended by section 6202 of Public Law 110–252)

ss. Cargo Preference Act of 1954 – 46 U.S.C. 55305

tt. Section 889 of the John D. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. 115-232

uu. Bringing in and harboring certain aliens – 8 U.S.C. 1324

vv. Aiding or assisting certain aliens to enter – 8 U.S.C. 1327

## Executive Orders

a. Executive Order 11990 – Protection of Wetlands

b. Executive Order 11988 – Floodplain Management

c. Executive Order 12372 – Intergovernmental Review of Federal Programs

d. Executive Order 12549 – Debarment and Suspension

e. Executive Order 14005 – Ensuring the Future is Made in All of America by All of America's Workers

f. Executive Order 14025 – Worker Organizing and Empowerment

g. Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

h. Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

i. Executive Order 14154 – Unleashing American Energy

j. Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

k. Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-based Opportunity

A-2

**Presidential Policy Directives and Memorandums**
a. Presidential Policy Directive 21 – Critical Infrastructure Security and Resilience
b. National Security Presidential Memorandum on Improving Cybersecurity for Critical Infrastructure Systems

**General Federal Regulations**
a. Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards – 2 C.F.R. Parts 200, 1201
b. Non-procurement Suspension and Debarment – 2 C.F.R. Parts 180, 1200
c. Investigative and Enforcement Procedures – 14 C.F.R. Part 13
d. Procedures for predetermination of wage rates – 29 C.F.R. Part 1
e. Contractors and subcontractors on public building or public work financed in whole or part by loans or grants from the United States – 29 C.F.R. Part 3
f. Labor standards provisions applicable to contracts governing federally financed and assisted construction (also labor standards provisions applicable to non-construction contracts subject to the Contract Work Hours and Safety Standards Act) – 29 C.F.R. Part 5
g. Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and federally assisted contracting requirements) – 41 C.F.R. Parts 60, et seq.
h. New Restrictions on Lobbying – 49 C.F.R. Part 20
i. Nondiscrimination in Federally Assisted Programs of the Department of Transportation – Effectuation of Title VI of the Civil Rights Act of 1964 – 49 C.F.R. Part 21, including any amendments thereto
j. Uniform relocation assistance and real property acquisition for Federal and Federally assisted programs – 49 C.F.R. Part 24
k. Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance – 49 C.F.R. Part 25
l. Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving or Benefiting from Federal Financial Assistance – 49 C.F.R. Part 27
m. DOT's implementation of DOJ's ADA Title II regulations compliance procedures for all programs, services, and regulatory activities relating to transportation under 28 C.F.R. Part 35
n. Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation – 49 C.F.R. Part 28
o. Denial of public works contracts to suppliers of goods and services of countries that deny procurement market access to U.S. contractors – 49 C.F.R. Part 30
p. Governmentwide Requirements for Drug-Free Workplace (Financial Assistance) – 49 C.F.R. Part 32
q. DOT's implementing ADA regulations for transit services and transit vehicles, including the DOT's standards for accessible transportation facilities in Part 37, Appendix A – 49 C.F.R. Parts 37 and 38
r. Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs – 49 C.F.R. Part 26, including any amendments thereto (as applicable under section 18.3 of this grant agreement)

A-3

**Office of Management and Budget Circulars**
   a. Any applicable OMB Circular.

**Highway Federal Legislation**
   a. Highways – Title 23, U.S.C. including but not limited to:
   b. Brooks Act (for FHWA projects, this incorporates Title IX of the Federal Property and Administrative Services Act of 1949 (formerly 40 U.S.C. 541, et seq.)) – 40 U.S.C. 1101-1104; 23 U.S.C. 112(b)(2)
   c. Letting of Contracts, 23 U.S.C. 112
   d. Highway Design and Construction Standards, 23 U.S.C. 109
   e. Prevailing Rate of Wage, 23 U.S.C. 113
   f. Planning, 23 U.S.C. 134 and 135 (except for projects that are not regionally significant that do not receive funding under Title 23 or Chapter 53 of Title 49)
   g. Tolls, 23 U.S.C. 301 (to the extent the Recipient wishes to toll an existing free facility that has received Title 23 funds in the past); except as authorized by 23 U.S.C. 129 and 166.
   h. Size, Weight, and Length Limitations – 23 U.S.C. 127, 49 U.S.C. 31101 et seq.
   i. Buy America – 23 U.S.C. 313
      (see http://www.fhwa.dot.gov/construction/contracts/buyam_qa.cfm)
   j. Nondiscrimination – 23 U.S.C. 140
   k. Efficient Environmental Reviews - 23 U.S.C. 139

**Federal Highway Regulations**
   a. Highways – Title 23, C.F.R. including but not limited to the specific parts identified herein.
   b. Planning – 23 C.F.R. Part 450 (except for projects that are not regionally significant that do not receive funding under Title 23 or Chapter 53 of Title 49)
   c. National Highway System Design Standards – 23 C.F.R. Part 625
   d. Preconstruction Procedures – 23 C.F.R. Part 630 Subparts A and B
   e. Construction and Maintenance – 23 C.F.R. Part 635
   f. Manual on Uniform Traffic Control Devices – 23 C.F.R. Part 655
   g. Environmental Impact and Related Procedures – 23 C.F.R. Part 771
   h. Procedures for Abatement of Highway Traffic and Construction Noise – 23 C.F.R. Part 772
   i. Intelligent Transportation System Architecture and Standards – 23 C.F.R. Part 940
   j. Procedures Implementing Section 4(f) of the Department of Transportation Act – 23 C.F.R. Part 774
   k. Permitting Requirements under the National Pollutant Discharge Elimination System – 40 C.F.R. Part 122
   l. Required Contract Provisions – 23 C.F.R. Part 633 (Form 1273)
   m. External Programs – 23 C.F.R. Part 230

Specific assurances required to be included in the grant agreement by any of the above laws, regulations, or circulars are hereby incorporated by reference into this grant agreement.