THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

Plaintiffs,

v.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

Defendants.

No. 2:25-cv-00814-BJR

DECLARATION OF CASEY
HOPKINS (METROPOLITAN
GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY)

I, CASEY HOPKINS, declare as follows:

1.      This declaration is based on my knowledge, professional education and experience. I am over the age of eighteen and suffer from no legal incapacity. I submit this declaration in support of the Metropolitan Government of Nashville & Davidson County ("Nashville"), which is one of many grant recipients that has been affected by the newly added terms and conditions imposed on federal grant funding.

2.      I am the Policy Manager in the Nashville Department of Transportation & Multimodal Infrastructure of Nashville ("NDOT"). I have served in this position since April 2024. My position is a part of the division of Communications and Policy. Before that, I began with Nashville in September of 2020, and served as the Grants Administrator in the Finance Division within NDOT. Subsequently, I was promoted to become the Grants Coordinator. Until

DECLARATION OF CASEY HOPKINS - 1
No. 2:25-cv-00814-BJR

{N0689077.1} PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

December 2024, when the Finance Division backfilled my position, I continued to hold many of my prior responsibilities and am still available for help for the new staff.

3.    In these positions, I coordinated or oversaw a wide range of federal and state grant activities, including identifying new funding opportunities; assembling and supporting the project team to create and submit grant applications; seeking vendors externally to assist on grant applications or collaborating with coworkers internally to implement grants; and managing the application process. Once the grants were awarded, I worked with project managers to ensure that the grant agreement is in place. I managed the grant schedules and the reporting goals promised in the grants.  On occasion, I prepared the grant reports for the team. I worked with teams to submit federal or state reimbursements, or did so on their behalf.

4.    I was involved in both of the grants at issue in this lawsuit from the grant application phase until the present.

*Safe Streets and Roads For All (SS4A) Grant*

5.    Nolensville Pike is a major thoroughfare that connects many immigrant and refugee communities to Downtown Nashville. As it exists today, Nolensville Pike is largely auto-oriented. There are gaps in overhead lighting and inadequate sidewalks for pedestrians which creates a dangerous environment for the community. Between 2017 and 2021, 48 crashes resulted in serious injury or fatality. Over thirty-seven percent of these crashes involved a pedestrian. Sadly, 2022 was another record-breaking year for pedestrian fatalities with 49 people dying, of which most were attempting to cross a high-speed road like Nolensville Pike. Critical grant funding is needed to provide safe facilities to achieve zero traffic deaths or serious injuries.

6.    In order to create a safer environment for the community, Nashville created a project, "We Are Nolensville Pike."  The project aims to improve the conditions along

[N0689077.1] PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Nolensville Pike in order to reduce safety risks to pedestrians and drivers. Particularly, the project seeks to improve lighting along the roadway, improve and increase the crossing locations in the area, increase the availability of sidewalks for pedestrians, and improve the transit facilities along Nolensville Pike. Further, the project will include a demonstration on Gallatin Pike for emergency vehicle preemption devices.

7.  In 2023, Nashville applied for a Safe Streets and Roads For All grant with the United States Department of Transportation ("DOT"). Nashville sought approximately $13 million in federal funding and offered a cash match of local funds in the amount of approximately $3.3 million. In December 2024, DOT awarded Nashville the requested approximately $13 million to fund the We Are Nolensville Pike project. A true and accurate copy of the Notice of Award is attached as Exhibit A.

8.  In January 2024, the Federal Highway Administration ("FHWA") provided Nashville with the first draft grant agreement to begin filling out. The draft agreement included a January 2024 version of the "General Terms and Conditions Under the Fiscal Year 2023 Safe Streets and Roads for All ("SS4A") Grant Program" ("2024 Version of SS4A Terms and Conditions") and a January 2024 version of the "Exhibits to FHWA Grant Agreement Under the Fiscal Year 2023 Safe Streets and Roads For All (SS4A) Grant Program" ("2024 Version of SS4A Exhibits")  Nashville then began working with FHWA to fill out and finalize the agreement.

9.  On May 14, 2025, Nashville received an updated draft grant agreement template from FHWA. This draft grant agreement template included new terms and conditions that were not included in the previous template provided in January 2024. A true and accurate copy of the 2025 draft grant agreement is attached as Exhibit B.

DECLARATION OF CASEY HOPKINS - 3
No. 2:25-cv-00814-BJR

{N0689077.1} PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

10.     The new draft agreement incorporated the updated version, revised in March 2025, of the "General Terms and Conditions Under the Fiscal Year 2023 Safe Streets and Roads for All ("SS4A") Grant Program" ("2025 Version of SS4A Terms and Conditions"). The 2025 Version of SS4A Terms and Conditions requires Nashville to "cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." The document further requires compliance with Executive Order 14173 (Ending Illegal Discrimination and Restoring Merit-Based Opportunity). Particularly, it requires Nashville to (1) "agree[] that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code" and (2) "certif[y] that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws."

11.     The 2025 Version of SS4A Terms and Conditions further incorporates an updated version, revised in March 2025, of the "Exhibits to FHWA Grant Agreement Under the Fiscal Year 2023 Safe Streets and Roads For All (SS4A) Grant Program" ("2025 Version of SS4A Exhibits") into the grant agreement. Exhibit A of the 2025 Version of SS4A Exhibits requires Nashville to agree to comply with all applicable Executive Orders. The document then includes a non-exhaustive list of the "applicable Executive Orders", including Executive Order 14168 (Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government), and Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity).

12.     If Nashville refuses the grant agreement conditions and is denied the federal

DECLARATION OF CASEY HOPKINS - 4
No. 2:25-cv-00814-BJR

{N0689077.1} PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

funding for the We Are Nolensville Pike project, Nashville will suffer significant impacts on its ability to improve the safety for the community along Nolensville Pike.

13.     In the short term, Nashville will experience delays in being able to start to work with a consultant on final designs and construction of the project. The longer construction is delayed, the higher the likelihood is that heightened inflation costs will impact the project.

14.     In the long term, Nashville does not have the capital funds to make up for the $13 million in federal funding that could be lost. Without the funding, the project cannot happen as it is currently proposed. A portion of the funding for the project may be available elsewhere in the budget, but that funding is dependent on competing budgetary priorities within Nashville.

15.     If the funding were to be denied, the impact on the community is significant. Nolensville Pike is one of the most dangerous corridors in Nashville. Many of the crashes along that roadway involve pedestrians or crashes caused by unsafe connectivity along the corridor.   It is a very busy corridor with many businesses and residences. Many of the residents along Nolensville Pike are renters and are often below the federal poverty line, so the residents may not own vehicles and may depend on sidewalks or other transportation options to travel. It is vitally important to address the safety concerns that exist along Nolensville Pike quickly to respond to the risk of injury or death to pedestrians and drivers in the area.

16.     A denial in funding impacts the contractors that Nashville hopes to work with on this project. Nashville has worked with its procurement office and has begun the process of selecting suitable contractors for this contract, including an architecture and engineering firm. Any delay in the project negatively impacts the timelines of the project and presents the risk of losing preferred contractors and vendors. In fact, at least one vendor has already begun asking about expected timelines for approval and implementation of the project so that they can plan

DECLARATION OF CASEY HOPKINS - 5
No. 2:25-cv-00814-BJR

{N0689077.1} PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

accordingly with other projects.

17.     There would also be an impact on emergency response vehicle response time if the funding were denied.  The Gallatin Pike portion of the project will allow emergency vehicles to use a device to wirelessly change traffic lights to be able to improve response times to emergencies in Nashville. The denial of the funding will negatively impact Nashville's ability to more promptly respond to emergencies in Nashville and thereby improve the outcomes of those emergencies. The goal is to take the valuable information Nashville will obtain from this demonstration project and potentially apply these devices county wide.

18.     The economic impacts of the project are significant as well. The total benefits of the project is calculated at an estimated $290 million. Further, providing safer access to businesses along the corridor is expected to improve the economy that area of Nashville as patrons would be better able to frequent the businesses located along the corridor.

19.     Even temporary interruption of the project during the pendency of the litigation has an impact on the community. Most importantly, the safety concerns along Nolensville Pike continue to persist and the risk of injury or death for pedestrians or those travelling along the corridor remains until the project can be implemented to improve these risks.

*Strengthening Mobility and Revolutionizing Transportation (SMART) Grant*

20.     In its efforts to improve the safety for its residents, Nashville developed a project entitled "Leveraging Advanced Data to Deliver Multimodal Safety" (LADDMS). The project allows Nashville to utilize LiDAR at key intersections in the city to help Nashville to better understand traffic safety concerns that often go unreported such as pedestrian crashes, bicyclist crashes, and "near-misses" involving pedestrians and cyclists. The project provides Nashville with the technology needed to detect these occurrences and study the data in order to deploy

DECLARATION OF CASEY HOPKINS - 6
No. 2:25-cv-00814-BJR

{N0689077.1} PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

safety interventions.

21.     In 2023, Nashville was awarded a Strengthening Mobility and Revolutionizing Transportation (SMART) grant from DOT for stage one of the LADDMS project. Stage one of the project allowed Nashville to temporarily install the technology needed to study traffic safety along Clarksville Pike as a pilot project. As a result of stage one, Nashville used the data collected from the technologies to deploy safety interventions.  Ultimately, Nashville observed a thirty percent decrease in high-speed driving and a seventy-five percent reduction of out-of-crosswalk events in the area as a result of the project.

22.     In 2024, Nashville applied for a stage two SMART grant to fund expansion of the LADDMS project. Stage two of the project aims to use the same technologies along Nolensville Pike and North Nashville to continue to study and respond to unreported crashes and near miss crashes. Nashville sought $10 million in federal funding for stage two of the project. In December 2024, DOT awarded Nashville the requested $10 million to fund stage two of the LADDMS project. A true and accurate copy of the Notice of Award is attached as Exhibit C.

23.     On May 15, 2025, Nashville received a draft grant agreement template from DOT. A true and accurate copy of the 2025 draft grant agreement is attached as Exhibit D.

24.     The draft agreement incorporated "DOT OST-R SMART General T&Cs Article 7-30 Version May092025" ("Articles 7-30"). Articles 7-30 require Nashville to "cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." The document also requires compliance with Executive Order 14173 (Ending Illegal Discrimination and Restoring Merit-Based Opportunity). It further requires Nashville to (1) "agree[] that its

DECLARATION OF CASEY HOPKINS - 7
No. 2:25-cv-00814-BJR

{N0689077.1} PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE (206) 245-1700
FACSIMILE (206) 245-1750

compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code" and (2) "certif[y] that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws."

25.     The draft grant agreement also incorporates "DOT OST-R SMART Program Exhibits Version May092025" ("SMART Exhibits"). Exhibit A of SMART Exhibits requires Nashville to agree to comply with all applicable Executive Orders and includes a non-exhaustive list of the "applicable Executive Orders", including Executive Order 14168 (Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government), and Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity).

26.     The draft grant agreement further incorporates a "Letter to All Recipients of USDOT" signed by DOT Secretary of Transportation, Sean Duffy ("Duffy letter"). This letter prohibits grantees from engaging in diversity, equity, and inclusion practices and requires grantees to cooperate with ICE officials or risk losing federal funding.

27.     If Nashville refuses the SMART grant agreement conditions and is denied the federal funding for stage two of the LADDMS project, Nashville will suffer significant impacts on its ability to study and improve the safety for the community along Nolensville Pike and in North Nashville.

28.     Nashville plans to start stage two of the project in Summer 2025. Any delay in the start of the project has a detrimental impact on the community as it delays Nashville's ability to collect the necessary data, analyze it, and deploy safety interventions to better protect the community. As shown in stage one of the project, safety interventions, such as speed feedback

[N0689077.1] PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

signs, have a proven positive impact on safety for the community.

29.     Nashville will be working with contractors and partners to advance this project. Nashville intends to work with Stancell Electric as a contractor to install the equipment for the project. Nashville also plans to work with university partners to analyze and respond to the data. Any delay in the project impacts the contractors' abilities to begin work on the project and impacts Nashville's ability to begin the processing of coordinating with university partners.

30.     It is unlikely that Nashville will have alternative funding options for the LADDMS project if it were unable to proceed with the funding from DOT. Even if other funding were to be available within Nashville's budget, the project would not be able to be completed on the same scale as it is currently proposed which lessens the positive impacts the project will have for the community.

31.     Any delay in implementing the LADDMS project presents ongoing safety risks to the community. As stated above, Nolensville Pike is a dangerous corridor for pedestrians and other drivers. Stage two of the project looks to expand the successful safety interventions from stage one to Nolensville Pike. With the information collected from LiDAR technologies, Nashville will be better able to plan a safe corridor for the community. Data collected from stage two of the LADDMS project will be used to help inform safety measures utilized in the We Are Nolensville Pike project to make sure the roadway is safe for the residents.

32.     Without stage two of the LADDMS project, Nashville would be left to continue to rely on only police reports to collect information about traffic safety in the community. These reports do not offer sufficient information to be able to study traffic patterns as the reports lack the information needed for thorough safety analysis. Further, many near-miss events go unreported which decreases the amount of available data.

[N0689077.1] PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

33.    A delay or loss of funding for this stage of the LADDMS project has a significant impact on the community. Creating a safer environment for the community to frequent the businesses in North Nashville and along Nolensville Pike will allow businesses in the areas to prosper as customers will feel safer travelling in the area.

34.    Additionally, the LADDMS project is a novel city initiative. If Nashville is successful in deploying the project, Nashville will be a model city and will be able to demonstrate to other cities how to utilize the LiDAR technologies to improve safety across the county.

35.    A component of the LADDMS project includes offering workforce development seminars to Middle Tennessee electrical workers to learn about the project and the technologies. These seminars would have a positive impact on electrical workers as they will be able to expand their service offerings to clients.

36.    Even a temporary interruption in the project during the pendency of the litigation has a detrimental impact on the community. If Nashville if unable to collect the necessary data to deploy safety interventions in the area, then the community will continue to be at risk of injury or even death as a result of dangerous driving. The quicker that Nashville is able to collect the data needed to deploy safety interventions, the more likely it is that Nashville will be able to better protect the community.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 20th day of May, 2025.

Casey Hopkins

{N0689077.1} PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

## CERTIFICATE OF SERVICE

2

3       I hereby certify that on May 21, 2025, I served a true and correct copy of the foregoing

4   document on the following parties by the method(s) indicated below:

5

| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants Scott Turner, U.S.*<br>*Dept. of Housing and Urban Development,*<br>*Sean Duffy, U.S. Dept. of Transportation,*<br>*Tariq Bokhari, the Federal Transit*<br>*Administration, Gloria M. Shepherd, the*<br>*Federal Highway Administration, Chris*<br>*Rocheleau, the Federal Aviation*<br>*Administration, Drew Feeley, the Federal*<br>*Railroad Administration* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |
|---|---|

6

7

8

9

10

11

12

13

14

15

16

17

18

19      I declare under penalty of perjury under the laws of the United States and the State of

20  Washington that the foregoing is true and correct.

21

22      DATED this 21ˢᵗ day of May, 2025.

23                                          */s/ Gabriela DeGregorio*

24                                          Gabriela DeGregorio
                                            Litigation Assistant
25                                          Pacifica Law Group LLP

26

27

CERTIFICATE OF SERVICE

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A

**From:** Teicher, Paul (OST)
**To:** Hopkins, Casey (NDOT)
**Subject:** SS4A FY23 Funding Awarded
**Date:** Thursday, December 14, 2023 3:34:27 PM

---

**Attention**: This email originated from a source external to Metro Government. Please exercise caution when opening any attachments or links from external sources.

To Whom It May Concern from Metropolitan Government of Nashville-Davidson County,

The We Are Nolensville Pike, for the Notice of Funding Opportunity (NOFO) Fiscal Year (FY) 2023 Safe Streets and Roads for All grant program, was selected for an award of $13,049,572.00 in Federal funding. Congratulations! This funding is to implement projects, as well as conduct supplemental planning and/or carry out demonstration activities.

This email is not authorization to begin work, and it does not guarantee Federal funding. The United States Department of Transportation (USDOT) and Metropolitan Government of Nashville-Davidson County UEI #LGZLHP6ZHM55 must establish and execute a signed, mutually agreed upon grant agreement prior to  the obligation of award funds.

Immediate Next Steps: USDOT made the public announcements related to the awards on December 13th, 2023. See the press release and the award recipient list here: FY 2023 SS4A Awards. We published a short summary of the proposal from your application on our Safe Streets and Roads for All website as part of the public announcement, pursuant to Section H Part 2 of the Notice of Funding Opportunity (NOFO). If you need to correct what is provided on our website once you see it, please let me know by emailing SS4A@dot.gov. The website link is https://www.transportation.gov/grants/SS4A.

What to Expect in the Next Few Weeks: My colleagues at the Federal Highway Administration (FHWA) are responsible for establishing and executing a SS4A grant agreement with Metropolitan Government of Nashville-Davidson County. You can expect to hear from a FHWA representative with your State's FHWA Division Office in the near future. In the weeks ahead you will receive more information about next steps, including an invitation to a FHWA-sponsored webinar for grant recipients to describe the process leading to an executed grant agreement. The webinar will be recorded for those who are unable to attend and posted to the SS4A website. In the meantime, if you have questions about next steps, please direct them to FHWA using the email SS4A.FHWA@dot.gov.

Finally, we ask for your patience as we work diligently toward executing grant agreements so your important safety work may begin. FHWA staff will be working with hundreds of new grant recipients to expeditiously process new grant agreements, and this will take time. It's exciting to see so many communities on the path to improving roadway safety, and the whole SS4A Program team is passionate about helping you succeed. Thank you for your commitment to roadway safety.

Paul



Paul D. Teicher

Grantor, Safe Streets and Roads for All

Office of Policy Development and Coordination Office of the Secretary of Transportation

**Summary of Award Information:**

Project Name: We Are Nolensville Pike

Applicant: Metropolitan Government of Nashville-Davidson County

Unique Entity Identifier: LGZLHP6ZHM55

Grant Type: Implementation

SS4A Grant Funding Amount: $13,049,572.00

**Funds for Supplemental Planning and Demonstration Activities: $240,004.00**

**Estimated Total Project Costs: $16,311,965.00**

Project Description: The Metropolitan Government of Nashville-Davidson County, Tennessee, is awarded funds to implement improvements along Nolensville Pike, a major State route that connects downtown Nashville to diverse residential neighborhoods in Davidson County. The proposal addresses safety issues related to substandard and/or missing walking, bicycling, and transit facilities; the need for pedestrian-scale lighting; and insufficient crossing locations throughout the project area. Nolensville Pike is a priority on the City's Vision Zero high-injury network and a focus of the Tennessee DOT's Pedestrian Road Safety Initiative. The project includes new sidewalks, crossing improvements like pedestrian hybrid beacons and high-visibility crosswalks, lighting, bike lane enhancements, intersection changes, signal timing adjustments, and bus stop improvements.

Preparing to Establish a Grant Agreement

The terms of the grant agreement will be in accordance with the FY 2023 SS4A NOFO and applicable Federal requirements. Below highlights key information to start becoming familiar with as the grant agreement development process begins.

- The Period of Performance will begin upon grant agreement execution, and will be a maximum of 5 years.
- Scope of Activities: Your award is to conduct implement projects, as well as supplemental planning and/or carry out demonstration activities.
  - Implementation of Projects: If your Implementation Grant project encompasses multiple project phases, funds will be obligated separately for each individual phase. Funds awarded for supplemental planning and demonstration activities cannot be shifted to cover project implementation costs.
  - Supplemental Planning: Funds awarded to conduct supplemental planning must result in a final written product that connects to, supports, and enhances an Action Plan. If your award does not include supplemental planning, please disregard.
  - Demonstration Activities: The funding awarded to carry out demonstration activities must inform an Action Plan's list of selected projects and strategies and their future implementation, and/or inform another part of the Action Plan. Demonstration activities are temporary in nature, and materials to be used must also be temporary and/or easily reversible. Additionally, demonstration activities must also measure potential benefits through data collection and evaluation as part of the grant agreement. Demonstration activities are subject to additional reviews and oversight to ensure compliance with Federal requirements, including but not limited to the National Environmental Policy Act. If your award does not include demonstration activities, please disregard.
- 2 CFR part 200: All SS4A awards will be administered pursuant to the Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards found in 2 CFR part 200 (NOFO p. 36). We encourage awardees to take the free FHWA training on these requirements (https://www.nhi.fhwa.dot.gov/course-search?tab=1&key=231034&sf=0&course_no=231034).
- Pre-Agreement Costs: No costs incurred before USDOT signs and executes the grant agreement will be reimbursed or counted toward the 20% match or cost-share requirement.
- Allowable Costs: To be considered allowable, costs incurred must be reasonable, necessary, and allocable, as described in 2 CFR Part 200 Subpart E – Cost Principles.
- Match and Cost-Sharing: Grant recipients are required to contribute no less than a 20% non-Federal match. Please review: https://www.transportation.gov/grants/ss4a/match-and-cost-share-examples.
- Maintenance Activities: Maintenance activities for an existing roadway primarily to

maintain a state of good repair are not an eligible activity.

- Educational and Outreach Materials: Any educational or outreach materials charged to the grant must align with the project goals and roadway safety. Costs of promotional items and memorabilia, including models, gifts, and souvenirs are unallowable. Costs of advertising and public relations designed solely to promote the non-Federal entity are unallowable. (2 CFR 200.421) USDOT's Use of DOT Funds for Public Involvement FAQs can assist in determining eligibility of related costs.

# EXHIBIT B

| | | |
|---|---|---|
| **1. Federal Award No.**<br>693JJ32540489 | **2. Effective Date**<br>See No. 16 Below | **3. Assistance Listings No.**<br>20.939 |

**4. Award To**
Metropolitan Government of Nashville-Davidson County

1 Public Square

Nashville, TN 37201-5007

Unique Entity Id.: LGZLHP6ZHM55

TIN No.: 62-0694743

**5. Sponsoring Office**
U.S. Department of Transportation

Federal Highway Administration

Office of Safety

1200 New Jersey Avenue, SE

HSSA-1, Mail Drop E71-117

Washington, DC 20590

**6. Period of Performance**
Effective Date of Award – 60 months

**7. Total Amount**

| | |
|---|---|
| Federal Share: | $13,049,572.00 |
| Recipient Share: | $3,262,393.00 |
| Other Federal Funds: | $0 |
| Other Funds: | $0 |
| Total: | $0 |
| | $16,311,965.00 |

**8. Type of Agreement**
Grant

**9. Authority**
Section 24112 of the Infrastructure Investment and Jobs Act (IIJA, Pub. L. 117–58, November 15, 2021)

**10. Procurement Request No.**
HSA240246PR

**11. Federal Funds Obligated**
Base Phase: Pre NEPA-Demonstration and Implementation Project– $3,271,344.00

**12. Submit Payment Requests To**
See Article 5.

**13. Accounting and Appropriations Data**
15X0174E50.0000.055SR30500.5592000000.41010.6100 6600

**14. Description of the Project**

The "We Are Nolensville Pike" project involves constructing improvements along Nolensville Pike to address safety issues related to substandard and/or missing walking, bicycling, and transit facilities, the need for pedestrian-scale lighting, and the lack of crossing locations present throughout the project area in all three phases. This project is phased agreement and will include an EVP demonstration project on Gallatin Pike in the base phase.

**RECIPIENT**

**15.  Signature of Person Authorized to Sign**

THE METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY BY
AND THROUGH THE NASHVILLE
DEPARTMENT OF TRANSPORTATION
AND MULTIMODAL INFRASTRUCTURE
_____     DATE: _____
Freddie O'Connell, Mayor
The Metropolitan Government of Nashville
and Davidson County

RECOMMENDED BY:
_____     DATE: _____
Diana W. Alarcon, Director
Nashville Department of Transportation and
Multimodal Infrastructure

APPROVED AS TO AVAILABILITY
OF FUNDS:
_____     DATE: _____
Director of Finance
Department of Finance

APPROVED AS TO FORM
AND LEGALITY:
_____     DATE: _____
Assistant Metropolitan Attorney

ATTEST:
_____     DATE: _____
Metropolitan Clerk

**FEDERAL HIGHWAY ADMINISTRATION**

**16.  Signature of Agreement Officer**

_____
Signature                              Date
Name: Ryan Buck
Title: Agreement Officer

**U.S. DEPARTMENT OF TRANSPORTATION**

**GRANT AGREEMENT UNDER THE**
**FISCAL YEAR 2023 SAFE STREETS AND ROADS FOR ALL GRANT PROGRAM**

This agreement is between the United States Department of Transportation's (the "**USDOT**") Federal Highway Administration (the "**FHWA**") and the Metropolitan Government of Nashville-Davidson County (the "**Recipient**").

This agreement reflects the selection of the Recipient to receive a Safe Streets and Roads for All ("**SS4A**") Grant for the We Are Nolensville Pike Project.

The parties therefore agree to the following:

**ARTICLE 1**
**GENERAL TERMS AND CONDITIONS**

**1.1      General Terms and Conditions.**

(a)  In this agreement, "**General Terms and Conditions**" means the content of the document titled "General Terms and Conditions Under the Fiscal Year 2023 Safe Streets and Roads for All ("SS4A") Grant Program," dated March 17, 2025, which is available at https://www.transportation.gov/grants/ss4a/grant-agreements under "Fiscal Year 2023." Articles 7–30 are in the General Terms and Conditions. The General Terms and Conditions are part of this agreement.

(b)  The Recipient acknowledges that it has knowledge of the General Terms and Conditions. Recipient also states that it is required to comply with all applicable Federal laws and regulations including, but not limited to, the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (2 CFR part 200); National Environmental Policy Act (NEPA) (42 U.S.C. § 4321 et seq.); and Build America, Buy America Act (BIL, div. G §§ 70901-27).

(c)  The Recipient acknowledges that the General Terms and Conditions impose obligations on the Recipient and that the Recipient's non-compliance with the General Terms and Conditions may result in remedial action, termination of the SS4A Grant, disallowing costs incurred for the Project, requiring the Recipient to refund to the FHWA the SS4A Grant, and reporting the non-compliance in the Federal-government-wide integrity and performance system.

**ARTICLE 2**
**APPLICATION, PROJECT, AND AWARD**

**2.1    Application.**

Application Title:    We Are Nolensville Pike

Application Date:    7/10/2023

**2.2    Award Amount.**

SS4A Grant Amount: $13,049,572.00

**2.3    Federal Obligation Information.**

Federal Obligation Type:  Multiple

| Obligation Condition Table | | |
|---|---|---|
| | | |
| **Phase the Project** | **Allocation of the SS4A Grant** | **Obligation Condition** |
| **Project 1: Gallatin Pike Emergency Vehicle Demo Project** | | |
| Base Phase:<br>Pre NEPA | $10,345.00 | |

| Obligation Condition Table | | |
|---|---|---|
| | | |
| **Phase the Project** | **Allocation of the SS4A Grant** | **Obligation Condition** |
| Option Phase 1: Design, Utility, and Right-of-Way (if applicable) | $62,070.00 | The Recipient shall not expend any funds (Federal or non-Federal) for, seek reimbursement of eligible costs, or otherwise begin any part of the final design and construction of an Implementation Project unless and until: (1) The requirements of the National Environmental Policy Act (42 U.S.C. § 4321 et seq.) ("NEPA"), Section 106 ("the National Historic Preservation Act (16 U.S.C. § 470f) ("NHPA"), and any other applicable environmental laws and regulations have been met; and (2) FHWA, or a State with applicable NEPA Assignment authority, has approved the NEPA document for the Project and provided the Recipient with a written notice that the environmental review process is complete; and (3) FHWA has obligated additional funds for this phase and notified the Recipient in writing that the Recipient may proceed to the next activity after NEPA approval, and the Recipient has acknowledged receipt in writing of FHWA's notification. Recipient shall not proceed with any such activities until (2) and (3) as described in this section are met. Costs that are incurred before (2) and (3) as described in this section are met are not allowable costs under this agreement. Extent of activities that are permissible before NEPA is complete are those activities constituting "preliminary design" as specified in FHWA Order 6640.1A. |

| Obligation Condition Table | | |
|---|---|---|
| | | |
| **Phase the Project** | **Allocation of the SS4A Grant** | **Obligation Condition** |
| Option Phase 2: Construction | $227,590.00 | The Recipient shall not expend any funds (Federal or non-Federal) for, seek reimbursement of eligible costs, or otherwise begin any part of the construction or final design and construction of an Implementation Project unless and until: <br><br> (1)    The requirements of the National Environmental Policy Act (42 U.S.C. § 4321 et seq.) ("NEPA"), Section 106 ("the National Historic Preservation Act (16 U.S.C. § 470f) ("NHPA"), and any other applicable environmental laws and regulations have been met; and <br><br> (2) FHWA, or a State with applicable NEPA Assignment authority, has approved the NEPA document for the Project and provided the Recipient with a written notice that the environmental review process is complete; and <br><br> (3) FHWA has obligated additional funds for this phase and notified the Recipient in writing that the Recipient may proceed to the next activity after NEPA approval, and the Recipient has acknowledged receipt in writing of FHWA's notification. Recipient shall not proceed with any such activities until (2) and (3) as described in this section are met. Costs that are incurred before (2) and (3) as described in this section are met are not allowable costs under this agreement. <br><br> Extent of activities that are permissible before NEPA is complete are those activities constituting "preliminary design" as specified in FHWA Order 6640.1A. |

| Obligation Condition Table | | |
|---|---|---|
| **Phase the Project** | **Allocation of the SS4A Grant** | **Obligation Condition** |
| **Project 2:** | **We are Nolensville Pike (Nolensville Pike Corridor Project)** | |
| Base Phase:<br>NEPA | $3,260,999 | |
| Option Phase 1: Final Design, Right-of-Way, and Utility Relocation | $2,245,628.80 | The Recipient shall not expend any funds (Federal or non-Federal) for, seek reimbursement of eligible costs, or otherwise begin any part of the final design and construction of an Implementation Project unless and until:<br><br>(1) The requirements of the National Environmental Policy Act (42 U.S.C. § 4321 et seq.) ("NEPA"), Section 106 of the National Historic Preservation Act (16 U.S.C. § 470f) ("NHPA"), and any other applicable environmental laws and regulations have been met; and<br><br>(2) FHWA, or a State with applicable NEPA Assignment authority, has approved the NEPA document for the Project and provided the Recipient with a written notice that the environmental review process is complete; and<br><br>(3) FHWA has obligated additional funds for this phase and notified the Recipient in writing that the Recipient may proceed to the next activity after NEPA approval, and the Recipient has acknowledged receipt in writing of FHWA's notification. Recipient shall not proceed with any such activities until (2) and (3) as described in this section are met. Costs that are incurred before (2) and (3) as described in this section are met are not allowable costs under this agreement.<br><br>Extent of activities that are permissible before NEPA is complete are those activities constituting "preliminary design" as specified in FHWA Order 6640.1A. |

| Obligation Condition Table | | |
|---|---|---|
| **Phase the Project** | **Allocation of the SS4A Grant** | **Obligation Condition** |
| Option Phase 2: Construction | $7,242,939.20 | The Recipient shall not expend any funds (Federal or non-Federal) for, seek reimbursement of eligible costs, or otherwise begin any part of the construction or final design and construction of an Implementation Project unless and until:<br><br>(1)     The requirements of the National Environmental Policy Act (42 U.S.C. § 4321 et seq.) ("NEPA"), Section 106 of the National Historic Preservation Act (16 U.S.C. § 470f) ("NHPA"), and any other applicable environmental laws and regulations have been met; and<br><br>(2) FHWA, or a State with applicable NEPA Assignment authority, has approved the NEPA document for the Project and provided the Recipient with a written notice that the environmental review process is complete; and<br><br>(3) FHWA has obligated additional funds for this phase and notified the Recipient in writing that the Recipient may proceed to the next activity after NEPA approval, and the Recipient has acknowledged receipt in writing of FHWA's notification. Recipient shall not proceed with any such activities until (2) and (3) as described in this section are met. Costs that are incurred before (2) and (3) as described in this section are met are not allowable costs under this agreement.<br><br>Extent of activities that are permissible before NEPA is complete are those activities constituting "preliminary design" as specified in FHWA Order 6640.1A. |

**2.4     Budget Period.**

Base Phase:  October 1, 2024 and end October 1, 2027

Option Phase 1: RESERVED

Option Phase 2: RESERVED

**2.5     Grant Designation.**

Designation:     Implementation

# ARTICLE 3
# SUMMARY PROJECT INFORMATION

**3.1** **Summary of Project's Statement of Work.**

**The projects will be completed in three phases as follow:**

Project 1: Gallatin Pike Demo Project

- Base Phase:

  The base phase will perform the necessary environmental studies and preliminary design activities, as defined in FHWA Order 6640.1A, needed to determine project alternatives and obtain a NEPA determination. This may include but is not limited to surveys, engineering studies, geotechnical work, preliminary engineering, environmental justice analysis, public involvement, obtain permits, design exceptions, guardrail layouts, existing property lines, title and deed research, grading plans, ditch designs, intersection design/configuration improvements, quantity estimates, traffic control plans, etc.]

- Option Phase 1:

  Activities for the final design and right of way phase may include but are not limited to: Develop final construction plans, acquire any necessary right-of-way or easements, and conduct necessary utility coordination and applicable utility relocation activities.

- Option Phase 2:

  Activities for the construction phase may include but are not limited to: Bid preparation, solicit for Construction Engineering and Inspection (CEI) services, construction biding, hold pre-construction meetings, construct the project, and perform project closeout activities.

Project 2: We are Nolensville Pike (Nolensville Pike Corridor Project)

- Base Phase:

  The base phase will perform the necessary environmental studies and preliminary design activities, as defined in FHWA Order 6640.1A, needed to determine project alternatives and obtain a NEPA determination. This may include but is not limited to surveys, engineering studies, geotechnical work, preliminary engineering, environmental justice analysis, public involvement, obtain permits, design exceptions, guardrail layouts, existing property lines, title and deed research, grading plans, ditch designs, intersection design/configuration improvements, quantity estimates, traffic control plans, etc.]

- Option Phase 1:

  Activities for the final design and right of way phase may include but are not limited to: Develop final construction plans, acquire any necessary right-of-way or easements, and conduct necessary utility coordination and applicable utility relocation activities.

- Option Phase 2:

  Activities for the construction phase may include but are not limited to: Bid preparation, solicit for Construction Engineering and Inspection (CEI) services, construction biding, hold pre-construction meetings, construct the project, and perform project closeout activities.

**3.2    Project's Estimated Schedule.**

**Demonstration Activity Schedule:  (Gallatin Pike Emergency Vehicle Demo Project)**

| Milestone | Schedule Date |
|---|---|
| Planned NEPA Completion Date: | December 31, 2025 |
| Planned Construction Start Date | July 1, 2025 |
| Planned Evaluation Period End Date: | September 1, 2027 |
| Planned SS4A Final Report Date: | October 1, 2027 |

**Implementation Schedule (Construction): We are Nolensville Pike (Nolensville Pike Corridor Project)**

| Milestone | Schedule Date |
|---|---|
| Planned NEPA Completion Date: | December 31, 2025 |
| Planned Construction Start Date | May 31, 2027 |
| Planned Construction Substantial Completion and Open to Public Use Date: | May 31, 2029 |
| Planned SS4A Final Report Date: | September 30, 2029 |

**3.3    Project's Estimated Costs.**

(a)  Eligible Project Costs

| Eligible Project Costs | |
|---|---|
| SS4A Grant Amount: | $13,049,572.00 |
| Other Federal Funds: | $0.00 |
| State Funds: | $0.00 |
| Local Funds: | $3,262,393.00 |
| In-Kind Match: | $0.00 |
| Other Funds: | $0.00 |
| Total Eligible Project Cost: | $16,311,965.00 |

(b) Cost Classification Table – Planning and Demonstration Grants with demonstration activities and Implementation Grants Only

Drafting Instructions: Utilize the descriptions from the SF-424C (https://www.grants.gov/forms/sf-424-family.html) to determine what cost goes in each row.

| Cost Classification | Total Costs | Non-SS4A Previously Incurred Costs | Eligible Costs |
|---|---|---|---|
| Administrative and legal expenses | $140,352.00 | | **$140,352.00** |
| Land, structures, rights-of-way, appraisals, etc. | $701,759.00 | | **$701,759.00** |
| Architectural and engineering fees | $2,105,277.00 | | **$2,105,277.00** |
| Project inspection fees | $1,403,518.00 | | **$1,403,518.00** |
| Site work | $1,403,518.00 | | **$1,403,518.00** |
| Demolition and removal | $701,759.00 | | **$701,759.00** |
| Construction | $7,578,994.00 | | **$7,578,994.00** |
| Miscellaneous | $300,002.00 | | **$300,002.00** |
| Contingency | $1,976,786.00 | | **$1,976,786.00** |
| **Project Total** | **16,311,965.00** | | **16,311,965.00** |

(c) Indirect Costs

Indirect costs are allowable under this Agreement in accordance with 2 CFR part 200 and the Recipient's approved Budget Application.  In the event the Recipient's indirect cost rate changes, the Recipient will notify FHWA of the planned adjustment and provide supporting documentation for such adjustment. This Indirect Cost provision does not operate to waive the limitations on Federal funding provided in this document. The Recipient's indirect costs are allowable only insofar as they do not cause the Recipient to exceed the total obligated funding.

**ARTICLE 4**

**RECIPIENT INFORMATION**

**4.1    Recipient Contact(s).**

Valeria Martinez
Vision Zero Coordinator
Metropolitan Government of Nashville-Davidson County
750 S. 5th Street, Nashville TN, 37206
615-948-8234
Valeria.martinez@nashville.gov

**4.2    Recipient Key Personnel.**

| Name | Title or Position |
|------|-------------------|
| **Valeria Martinez** | **Vision Zero Coordinator** |
| Katrina Jones | Capital Projects Manager |

**4.3    USDOT Project Contact(s).**

Safe Streets and Roads for All Program Manager
Federal Highway Administration
Office of Safety
HSSA-1, Mail Stop:  E71-117
1200 New Jersey Avenue, S.E.
Washington, DC 20590
202-366-2822
SS4A.FHWA@dot.gov

and

Agreement Officer (AO)
Federal Highway Administration
Office of Acquisition and Grants Management
HCFA-33, Mail Stop E62-310
1200 New Jersey Avenue, S.E.
Washington, DC 20590
202-493-2402
HCFASS4A@dot.gov

and

Division Administrator – Tennessee
Agreement Officer's Representative (AOR)
404 BNA Drive, Suite 508, Nashville, TN 37217
615-781-5770
Tennessee.FHWA@dot.gov

and

Sonya Baker
Tennessee Division Office Lead Point of Contact
Safety Engineer
404 BNA Drive, Suite 508, Nashville, TN 37217
615-781-5788
sonya.baker@dot.gov

## ARTICLE 5
## USDOT ADMINISTRATIVE INFORMATION

**5.1    Office for Subaward and Contract Authorization.**

USDOT Office for Subaward and Contract Authorization:   FHWA Office of Acquisition and Grants Management

SUBAWARDS AND CONTRACTS APPROVAL

Note: See 2 CFR § 200.331, Subrecipient and contractor determinations, for definitions of subrecipient (who is awarded a subaward) versus contractor (who is awarded a contract).

Note: Recipients with a procurement system deemed approved and accepted by the Government or by the Agreement Officer (the "**AO**") are exempt from the requirements of this clause. See 2 CFR 200.317 through 200.327. Note:  This clause is only applicable to grants that do not include construction.

In accordance with 2 CFR 200.308(f)(6), the recipient or subrecipient shall obtain prior written approval from the USDOT agreement officer for the subaward, if the subaward activities were not proposed in the application or approved in the Federal award. This provision is in accordance with 2 CFR 200.308 (f) (6) and does not apply to procurement transactions for goods and services. Approval will be issued through written notification from the AO or a formal amendment to the Agreement.

The following subawards and contracts are currently approved under the Agreement by the AO. This list does not include supplies, material, equipment, or general support services which are exempt from the pre-approval requirements of this clause.

**5.2    Reimbursement Requests**

(a)  The Recipient may request reimbursement of costs incurred within the budget period of this agreement if those costs do not exceed the amount of funds obligated and are allowable under the applicable cost provisions of 2 C.F.R. Part 200, Subpart E. The Recipient shall not request reimbursement more frequently than monthly.

(b)  The Recipient shall use the DELPHI iSupplier System to submit requests for reimbursement to the payment office. When requesting reimbursement of costs incurred or credit for cost share incurred, the Recipient shall electronically submit supporting cost detail with the SF-270 (Request for Advance or Reimbursement) or SF-271 (Outlay Report and Request for Reimbursement for Construction Programs) to clearly document all costs incurred.

(c)  The Recipient's supporting cost detail shall include a detailed breakout of all costs incurred, including direct labor, indirect costs, other direct costs, travel, etc., and the Recipient shall identify the Federal share and the Recipient's share of costs. If the Recipient does not provide sufficient detail in a request for reimbursement, the Agreement Officer's Representative (the "**AOR**") may withhold processing that request until the Recipient provides sufficient detail.

(d)  The USDOT shall not reimburse costs unless the AOR reviews and approves the costs to ensure that progress on this agreement is sufficient to substantiate payment.

(e)  In the rare instance the Recipient is unable to receive electronic funds transfers (EFT), payment by EFT would impose a hardship on the Recipient because of their inability to manage an account at a financial institution, and/or the Recipient is unable to use the DELPHI iSupplier System to submit their requests for disbursement, the FHWA may waive the requirement that the Recipient use the DELPHI iSupplier System.

The Recipient shall contact the Division Office Lead Point of Contact for instructions on and requirements related to pursuing a waiver.

(f) The requirements set forth in these terms and conditions supersede previous financial invoicing requirements for Recipients.

## ARTICLE 6
## SPECIAL GRANT TERMS

**6.1** SS4A funds must be expended within five years after the grant agreement is executed and DOT obligates the funds, which is the budget period end date in section 10.3 of the Terms and Conditions and section 2.4 in this agreement.

**6.2.** The Recipient demonstrates compliance with civil rights obligations and nondiscrimination laws, including Titles VI of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act, and accompanying regulations. Recipients of Federal transportation funding will also be required to comply fully with regulations and guidance for the ADA, Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, and all other civil rights requirements.

**6.3** SS4A Funds will be allocated to the Recipient and made available to the Recipient in accordance with FHWA procedures.

**6.4** The Recipient of a Planning and Demonstration Grant that involves a demonstration activity agrees to provide an assessment of each demonstration activity and update the existing Action Plan, which will incorporate the information gathered in the Action Plan's list of projects or strategies and/or inform another part of the existing Action Plan.  The Recipient also agrees that demonstration activities are temporary in nature and must be removed and/or ended following the conclusion of the project if the assessment of the demonstration activities does not affirm that the activities provide safety benefits.

**6.5** The Recipient of an Implementation Grant agrees to update its Action Plan within two years of the date of this agreement to: align with all Comprehensive Safety Action Plan components in Table 1 of the SS4A FY 2023 NOFO corresponding with any "no" responses in the Self-Certification Eligibility Worksheet; ensure that the Action Plan's safety focus includes all road users, including pedestrians, bicyclists, and motor vehicle safety; and ensure that the Action Plan was last updated not more than three years prior.

**6.6** The Recipient acknowledges that it is required to conduct certain environmental analyses and to prepare and submit to FHWA, or State with applicable NEPA Assignment authority, documents required under NEPA, and other applicable environmental statutes and regulations before the Government will obligate funds for Option Phase 1 under this agreement and provide the Recipient with a written notice to proceed with Option Phase 1.

**6.7** The Government's execution of this agreement does not in any way constitute pre-approval or waiver of any of the regulations imposed upon Recipient under the applicable Federal rules, regulations and laws regarding SS4A projects undertaken in accordance with the terms and conditions of this agreement. The Recipient shall comply with all applicable Federal requirements before incurring any costs under this agreement.

**6.8** There are no other special grant requirements.

**ATTACHMENT A**
**PERFORMANCE MEASUREMENT INFORMATION**

**Study Area:**

**Project 1: Gallatin Pike Project:**

The demonstration project will implement emergency vehicle preemption (EVP) along US31E/DR6/Gallatin Pike, a key route for emergency response in northeast Nashville. The test segment is 1.2 miles long and includes a Fire/EMS station located nearby. EVP will be installed at six consecutive signalized intersections and 60 emergency response vehicles.

**Project 2: Nolensville Pike:**

The project is situated along Nolensville Pike (US31A/US41A/SR11), an urban principal arterial with a 40-mph speed limit. The focus segment spans from McCall Street in the north to Haywood Lane in the south, covering approximately 2.5 miles. This section lies within Nashville's High Injury Network (HIN), encompassing vehicular, pedestrian, and all-mode traffic, and includes some of the city's most hazardous intersections, prone to fatalities and serious injuries.

**Baseline Measurement Date: September 1, 2027**

**Baseline Report Date: October 30, 2027**

**Table 1: Performance Measure Table**

| Measure | Category and Description | Measurement Frequency and Reporting Deadline |
|---|---|---|
| Safety Performance [for Implementation Grants and Planning and Demonstration Grants with demonstration activities] | Fatalities:  Total annual fatalities in the project location(s) | Annually and within 120 days after the end of the period of performance |
| Safety Performance [for Implementation Grants and Planning and Demonstration Grants with demonstration activities] | Serious Injuries:  Total annual serious injuries in the project location(s) [if available] | Annually and within 120 days after the end of the period of performance |
| Safety Performance [for Implementation Grants and Planning and | Crashes by Road User Category:  Total annual crashes in the project location(s) broken out by types of roadway users involved (e.g., pedestrians, bicyclists, | Annually and within 120 days after the end of the |

| Measure | Category and Description | Measurement Frequency and Reporting Deadline |
|---|---|---|
| Demonstration Grants with demonstration activities] | motorcyclist, passenger vehicle occupant, commercial vehicle occupant) | period of performance |
| Costs<br><br>[for all Grants] | Project Costs:  Quantification of the cost of each eligible project carried out using the grant | Within 120 days after the end of the period of performance |
| Outcomes and Benefits<br><br>[for Implementation Grants and Planning and Demonstration Grants with demonstration activities] | Quantitative Project Benefits:  Quantification of evidence-based projects or strategies implemented (e.g., miles of sidewalks installed, number of pedestrian crossings upgraded, etc.) | Within 120 days after the end of the period of performance |
| Outcomes and Benefits<br><br>[for Implementation Grants and Planning and Demonstration Grants with demonstration activities] | Qualitative Project Benefits:  Qualitative description of evidence-based projects or strategies implemented (e.g., narrative descriptions, testimonials, high-quality before and after photos, etc.) | Within 120 days after the end of the period of performance |
| Outcomes and Benefits<br><br>[for Implementation Grants and Planning and Demonstration Grants with demonstration activities] | Project Location(s):  GIS/geo coordinate information identifying specific project location(s) | Within 120 days after the end of the period of performance |
| Lessons Learned and Recommendations<br><br>[for all Grants] | Lessons Learned and Recommendations:  Description of lessons learned and any recommendations relating to future projects or strategies to prevent death and serious injury on roads and streets. | Within 120 days after the end of the period of performance |

**ATTACHMENT B**
**CHANGES FROM APPLICATION**

Describe all material differences between the scope, schedule, and budget described in the application and the scope, schedule, and budget described in Article 3. The purpose of Attachment B is to clearly and accurately document any differences in scope, schedule, and budget to establish the parties' knowledge and acceptance of those differences. See Article 11 for the Statement of Work, Schedule, and Budget Changes. If there are no changes, please insert "N/A" in Section 3.3 of the table.

**Scope**: N/A

**Schedule**: N/A

**Budget**: N/A

The table below provides a summary comparison of the project budget.

| Fund Source | Application | | Section 3.3 | |
|---|---|---|---|---|
| | $ | % | $ | % |
| **Previously Incurred Costs (Non-Eligible Project Costs)** | 0 | 0 | 0 | 0 |
| Federal Funds | 0 | 0 | 0 | 0 |
| Non-Federal Funds | 0 | 0 | 0 | 0 |
| Total Previously Incurred Costs | 0 | 0 | 0 | 0 |
| **Future Eligible Project Costs** | | | | |
| SS4AFunds | | | | |
| Other Federal Funds | | | | |
| Non-Federal Funds | | | | |
| Total Future Eligible Project Costs | | | | |
| Total Project Costs | | | | |

**ATTACHMENT C**
**[RESERVED]**

**ATTACHMENT D**
**[RESERVED]**

**ATTACHMENT E**
**LABOR AND WORKFORCE**

1.    **Efforts to Support Good-Paying Jobs and Strong Labor Standards**

The Recipient states that rows marked with "X" in the following table align with the application:

| | |
|---|---|
| | The Recipient or a project partner promotes robust job creation by supporting good-paying jobs directly related to the project with free and fair choice to join a union. *(Describe robust job creation and identify the good-paying jobs in the supporting narrative below.)* |
| | The Recipient or a project partner will invest in high-quality workforce training programs such as registered apprenticeship programs to recruit, train, and retain skilled workers, and implement policies such as targeted hiring preferences. *(Describe the training programs in the supporting narrative below.)* |
| | The Recipient or a project partner will partner with high-quality workforce development programs with supportive services to help train, place, and retain workers in good-paying jobs or registered apprenticeships including through the use of local and economic hiring preferences, linkage agreements with workforce programs, and proactive plans to prevent harassment. *(Describe the supportive services provided to trainees and employees, preferences, and policies in the supporting narrative below.)* |
| | The Recipient or a project partner will partner and engage with local unions or other worker-based organizations in the development and lifecycle of the project, including through evidence of project labor agreements and/or community benefit agreements. *(Describe the partnership or engagement with unions and/or other worker-based organizations and agreements in the supporting narrative below.)* |
| | The Recipient or a project partner will partner with communities or community groups to develop workforce strategies. *(Describe the partnership and workforce strategies in the supporting narrative below.)* |
| | The Recipient or a project partner has taken other actions related to the Project to create good-paying jobs with the free and fair choice to join a union and incorporate strong labor standards. *(Describe those actions in the supporting narrative below.)* |
| | The Recipient or a project partner has not yet taken actions related to the Project to create good-paying jobs with the free and fair choice to join a union and incorporate strong labor standards but, before beginning construction of the Project, will take relevant actions described in schedule B. *(Identify the relevant actions from schedule B in the supporting narrative below.)* |
| | The Recipient or a project partner has not taken actions related to the Project to improve good-paying jobs and strong labor standards and will not take those actions under this award. |

2.    **Supporting Narrative.**

Metro is already promoting good-paying jobs with free and fair choice to join a union and expand strong labor standards as shown in our labor policy below:

Chapter 3.56 Metro Charter - Labor Policy

3.56.010 - Right of employees to organize - Collective bargaining

Employees of metropolitan government shall have, and be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join and assist any employee organization, or to refrain from belonging, and to bargain collectively through representatives of their own choosing on questions of wages, hours, retirement benefits and all other terms and conditions of employment for the purpose of representation free from actual interference, restraint or coercion.

Currently Metro Nashville has three (3) labor unions. The Fire Union (Fire Department), Fraternal Order of Police (Metro Nashville Police Department), and the Service Employee International Union (SEIU) for other employees.

To promote the entry and retention of underrepresented populations and minorities, Metro recognizes the growing expectations workers have for their employers and have implemented comprehensive strategies and policies to meet these expectations. This includes enhancing benefits packages offered by Metro to workers, ultimately aiming to increase employee retention and reduce turnover. Metro has implemented hiring policies that prioritize diversity, equity, and inclusion. This includes actively seeking underrepresented populations and minorities during the recruitment and hiring processes. By fostering a diverse and inclusive workforce, Metro aims to create an environment that values and embraces different perspectives and experiences. To further bolster this initiative Metro has hired a Chief Diversity Equity & Inclusion Officer with the central Human Resources department. The Chief DEIO is responsible to for the development and implementation of results-focused policies and strategies for Metro.

Metro regularly holds diversity and inclusion training in an effort to increase awareness and understanding of equity in the workplace. These include workshops, seminars, and cultural competency training to promote a respectful and inclusive work environment. Diversity classes are mandatory for all Metro employees.

**ATTACHMENT F**
**CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE**

1.    **Efforts to strengthen the Security and Resilience of Critical Infrastructure against both Physical and Cyber Threats.**

The Recipient states that rows marked with "X" in the following table are accurate:

| | |
|---|---|
| **X** | The Recipient demonstrates, prior to the signing of this agreement, effort to consider and address physical and cyber security risks relevant to the transportation mode and type and scale of the activities. |
| **X** | The Recipient appropriately considered and addressed physical and cyber security and resilience in the planning, design and oversight of the project, as determined by the Department and the Department of Homeland Security. |
| | The Recipient complies with 2 CFR 200.216 and the prohibition on certain telecommunications and video surveillance services or equipment. |

2.    **Supporting Narrative.**

 We comply with all local, state and federal laws regarding physical and cyber security risks relevant to transportation mode and type and scale of projects, including this project. We will appropriately consider the physical and cyber security and resilience in the planning, design, and oversight of the project, as determined by the Department and the Department of Homeland Security.

# EXHIBIT C

| | |
|---|---|
| **From:** | Zhu, Madeline (OST) |
| **To:** | Hopkins, Casey (NDOT) |
| **Cc:** | Nguyen, Thy (OST); Caldwell, Stanley (OST) |
| **Subject:** | SMART Stage 2 Application |
| **Date:** | Monday, December 16, 2024 8:33:30 AM |
| **Attachments:** | 2024 Stage 2 SMART Amplification Toolkit.docx |

**Attention**: This email originated from a source external to Metro Government. Please exercise caution when opening any attachments or links from external sources.

Good Morning,

We are pleased to notify you that Applicant Organization's project entitled *Leveraging Advanced data to Deliver Multimodal Safety (LADDMS)* has been selected for funding through the Strengthening Mobility and Revolutionizing Transportation (SMART) Grants Program. Congratulations on joining the first-ever cohort of Stage 2 awardees, and on the success of your Stage 1 project advancing to wide-scale implementation.

This news is now public and may be shared with your networks. Attached you will find a SMART Amplification Toolkit with resources and references to help you drive awareness.

Many awardees may choose to hold an event to officially announce or kick-off their SMART Grant awards.  If you are holding an announcement event or convening with local stakeholders and media, and would like a representative of the SMART Grants team to join, please let us know and we will be happy to get someone from DOT to attend if schedules permit.

Please note that this email is not an authorization to begin work, and it does not guarantee Federal funding. USDOT and Applicant Organization must establish and execute a signed, mutually agreed upon grant agreement prior to the disbursement of award funds. No costs incurred before USDOT signs and executes the grant agreement will be reimbursed.

A grants management specialist will reach out to you in the next few days. Coordination with your grants management specialist and prompt return of requested information will expedite the process of establishing and executing your grant agreement.

You have also received an email from Valid Eval that provides feedback on your proposal.

We are delighted to be your partner in making transportation in your community safer, more equitable, greener, and more competitive. Thank you for your application, and we look forward to working with you.


Sincerely,

Madeline



**Madeline Zhu (she/her)**
Policy Advisor
SMART Grants Program
Office of the Assistant Secretary for Research and Technology
U.S. Department of Transportation
(202) 961-9598
https://www.transportation.gov/grants/SMART

# EXHIBIT D

**ASSISTANCE AGREEMENT**

| 1. Award No.<br>69A3552541040 | | 2. Modification No. | 3. Effective Date<br>05/15/2025 | 4. CFDA No.<br>20.941 |
|---|---|---|---|---|

| 5. Awarded To<br>NASHVILLE & DAVIDSON COUNTY, METROPOLITAN GO<br>Attn: VAUGHN  WILSON<br><br>1 PUBLIC SQ<br>NASHVILLE TN 372015007 | 6. Sponsoring Office<br>OFFICE OF THE SECRETARY<br>Off of Asst Sec for Research & Tech<br>1200 New Jersey Avenue, East Building, 3rd<br>Washington DC 20590 | 7. Period of Performance<br>05/15/2025<br>through<br>05/14/2028 |
|---|---|---|

| 8. Type of Agreement<br>[X] Grant<br>[ ] Cooperative Agreement<br>[ ] Other | 9. Authority<br>Pub. L. 117-58, November 15, 2021<br>IIJA Section 25005 | 10. Purchase Request or Funding Document No.<br>OS2025R1SMG048 |
|---|---|---|

| 11. Remittance Address<br>NASHVILLE & DAVIDSON COUNTY, METROPOLITAN GO<br>Attn: METRO GOVERNMENT OF NASHVILLE AND D<br>METRO FINANCE DEPARTMENT<br>700 2ND AVENUE SOUTH, STE 310<br>NASHVILLE TN 37210 | 12. Total Amount<br>Govt. Share: $10,000,000.00<br><br>Cost Share : $0.00<br><br>Total    : $10,000,000.00 | 13. Funds Obligated<br>This action:<br>$10,000,000.00<br><br>Total   :<br>$10,000,000.00 |
|---|---|---|

| 14. Principal Investigator<br>CASEY HOPKINS<br>Phone: 615-880-1676 | 15. Program Manager<br>THY H. NGUYEN<br>Phone: 202-875-0520 | 16. Administrator<br>OFFICE OF THE SECRETARY<br>Off of Asst Sec for Research & Tech<br>1200 New Jersey Avenue, East Building, 3<br>Washington DC 20590 |
|---|---|---|

| 17. Submit Payment Requests To<br>OST Delphi eInvoicing System<br>https://einvoice.esc.gov | 18. Paying Office<br>OST Delphi eInvoicing System<br>https://einvoice.esc.gov | 19. Submit Reports To<br>See Reporting<br>Requirements Checklist<br>attachment |
|---|---|---|

20. Accounting and Appropriation Data
1734X2400B.2025.POLX000GRT.54000SMART.41000.61006600.0000000000.0000000000.0000000000.0000000000

21. Research Title and/or Description of Project
Leveraging Advanced data to Deliver Multimodal Safety (LADDMS)

| For the Recipient | For the United States of America |
|---|---|
| 22. Signature of Person Authorized to Sign | 25. Signature of Grants/Agreements Officer |
| 23. Name and Title | 24. Date Signed | 26. Name of Officer<br>THY H. NGUYEN | 27. Date Signed |

| **CONTINUATION SHEET** | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>69A3552541040 | | | PAGE<br>2 | OF<br>2 |

NAME OF OFFEROR OR CONTRACTOR
NASHVILLE & DAVIDSON COUNTY, METROPOLITAN GOVERNMENT OF

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | UEI:  LGZLHP6ZHM55<br>This agreement between the United States Department of Transportation (the USDOT) and the Metropolitan Government of Nashville reflects the selection of the Recipient to receive a Strengthening Mobility and Revolutionizing Transportation (SMART) Stage 2 Grant for the project entitled "Leveraging Advanced data to Deliver Multimodal Safety (LADDMS)".<br><br>The Recipient therefore agrees to all applicable Federal Financial Assistance law and regulations, and award TERMS & CONDITIONS, as provided in the following attachments:<br><br>1. DOT OST-R SMART Reporting Requirements Checklist Version May092025<br>2. DOT OST-R SMART Specific T&Cs Article 1-6 Version May09205<br>3. DOT OST-R SMART General T&Cs Article 7-30 Version May092025<br>4. DOT OST-R SMART Program Exhibits Version May092025<br>5. Letter to All Recipients of USDOT<br><br>Prepay Indicate: NO | | | | |
| 00006 | TN Metropolitan Government of Nashville<br><br>Obligated Amount: $10,000,000.00<br><br><br>The total amount of award: $10,000,000.00. The obligation for this award is $10,000,000.00. | | | | 10,000,000.00 |

JULY 2004