THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

                        Plaintiffs,

    v.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

                        Defendants.

No. 2:25-cv-00814-BJR

DECLARATION OF NATALIE
VERLINICH

I, NATALIE VERLINICH declare as follows:

1.      I am over the age of 18 years, am competent to testify as to the matters in this declaration, and make it based on personal knowledge and my review of relevant records.

2.      I am the Manager of the Housing Division for the City of Santa Monica ("City"). I have been in this position since February 2024. I am a member of the City's Housing and Human Services Department's leadership team. Before serving in this position, I was Senior Development Analyst for six (6) years.

3.      As the Housing Manager, I manage the operation, activities and staff of the Housing Division, which includes the Santa Monica Housing Authority and the Preservation and Production Unit. The Housing Division also develops and manages programs/activities designed to stimulate the preservation, production, and financing of affordable housing.

DECLARATION OF NATALIE VERLINICH - 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

4.      In my role as Housing Manager, I oversee the work of the Santa Monica Housing Authority ("SMHA"). SMHA was created by resolution of the Santa Monica City Council on January 27, 1975 pursuant to California Health & Safety Code Section 34240 *et seq.* The SMHA is a legally independent body from the City empowered to accept federal funding to implement federal housing programs, like the Section 8 Housing Choice Voucher ("HCV") program and the Continuum of Care ("CoC") program. The SMHA is governed by a housing authority board, compromised of all seven Santa Monica City Council members and two participants in SMHA's voucher programs.

5.      The SMHA administers several tenant-based rental assistance programs funded by the federal Department of Housing and Urban Development ("HUD"), including the HCV program, Veteran's Affairs Supportive Housing, Emergency Housing Vouchers program, HOME Investment Partnerships program, and CoC.

6.      SMHA's annual budget is approximately $29 million, approximately $26 million of which is devoted to the various rental assistance programs. Of this $26 million, approximately $4.5 million is allocated to the CoC program, though we had expected that number to increase to $5.6 million in the coming fiscal year.

7.      The SMHA receives CoC funds for permanent housing assistance. First, through scattered site housing assistance, the SMHA issues an eligible household a voucher and the household selects an apartment of its choice within the City of Santa Monica geographic area. If the household moves out of the apartment, the contract with the owner ends and the household can move with continued assistance to another apartment. Second, under site specific housing assistance, the SMHA refers an eligible household to a specific property run by a nonprofit organization, based on their service needs and availability. If the household no longer requires

DECLARATION OF NATALIE VERLINICH - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

site-specific housing, and wishes to move, the household must fill out a move request to receive a scattered site voucher or apply to graduate from the CoC program to the HCV program. A small number of participants are eligible to request to graduate from the CoC program each year.

8.      SMHA uses CoC grant funds for rental assistance for homeless individuals and households only. Participants must be chronically homeless, residing in a transitional housing that will be eliminated, recently homeless and unable to maintain housing, residing in a place not meant for human habitation or an emergency shelter for at least 12 months in the last 3 years, or receiving assistance through a VA-funded assistance program. In addition, the participant household must include at least one member with a chronic physical illness or disability, substance use disorder, serious mental illness, developmental disability, post-traumatic stress disorder, or cognitive impairments resulting from brain injury. In short, CoC participants face some of the most significant barriers to getting into and sustaining housing, and are among the most vulnerable members of our community.

9.      The City of Santa Monica also contracts with non-profit agencies that provide supportive services to participants in SMHA's CoC program, including case management, education services, employment assistance and job training, life skills training, outpatient mental health and substance abuse treatment services, transportation, and others.

10.      SMHA has received CoC grant funds for rental assistance (and funds under the predecessor program Shelter+Care) since the mid-1990s. CoC participants remain eligible to continue receiving assistance under the program so long as funding remains available. We have one participant who has been continuously housed under the program since 1996. Currently, there are currently approximately 230 participants in the CoC program including 163 in the scattered site program and 66 participants in the site-specific program. There are an additional

DECLARATION OF NATALIE VERLINICH - 3
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

eight applications currently in the process of leasing up or under review for a site-specific voucher.

11.     SMHA applies for CoC grant funds each year after receiving HUD's Notice of Funding Opportunity (NOFO), typically released in the summer or fall. SMHA is part of the Los Angeles Homeless Services Authority (LAHSA) Continuum of Care, meaning LAHSA evaluates our and other CoC members' funding applications based on prior year performance, ranking them to determine funding priorities since funding is limited. Projects ranking low may not get funded. SMHA's CoC projects have traditionally ranked very well and our program been renewed each year.

12.     Once LAHSA deems the application complete and ready for submission, we submit the application to HUD directly. After we receive an award letter from HUD, SMHA executes a grant agreement, and then funds are made available. SMHA submits drawdown requests through the City of Santa Monica's Finance Department quarterly or monthly.

13.     Last year, SMHA was awarded $4,822,406 in CoC grant funds, including $4,534,128 for rental assistance, $21,672 for supportive services, and $266,606 for administrative costs. Attached hereto as **Exhibit A** is a true and correct copy of the fully executed grant agreement for these CoC funds, signed June 24, 2024.

14.     Around July 2024, HUD posted a NOFO for CoC grants for Fiscal Year 2024 ("FY24"). SMHA applied and was awarded $5,641,659 in grant funds. Attached as **Exhibit B** is a true and correct copy of the March 11, 2025 award letter.

15.     SMHA's FY24 CoC grant award is approximately $800,000 more than the previous year's award, which we planned to use to house approximately 60 more households experiencing homelessness, or approximately 25% more households than we currently assist

DECLARATION OF NATALIE VERLINICH - 4
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Docusign Envelope ID: 99458EF2-542E-4DF2-B0BA-655AA497927E

under the CoC program. This is a significant and exciting expansion of our program, at a much needed time when the City of Santa Monica and other jurisdictions in the region have declared homelessness emergencies.

1.      SMHA has not received its grant agreement for this FY24 award. However, based on historical practice, we expect to receive the agreement and to execute it before the end of June 2025. This is consistent with an email I received on May 8, 2025 from our local HUD field office stating they will begin processing FY24 CoC grant awards.

16.     Indeed, SMHA will need to execute the FY24 grant agreement promptly after we receive it, to avoid disruptions for current CoC participants. SMHA has sufficient reserve funds to cover CoC expenses only for about a month or two if there is any disruption in funding.

17.     I have reviewed CoC FY24 agreements that other jurisdictions have received. They are consistent with each other and with the allegations in the Complaint in that they contain additional funding conditions that were not included in the NOFO. Specifically, the CoC agreements appear to prohibit activities related to diversity, equity, and inclusion, promoting "gender ideology" and elective abortions, and policies promoting illegal immigration. None of these conditions exist in our current or prior CoC agreements.

18.     The new conditions are vague and confusing, but from what I can discern, they would be very difficult to comply with. First regarding the prohibition on DEI activities, the SMHA has an obligation under the federal Fair Housing Act and state law, including California Government Code Section 8899.50 *et seq.* to affirmatively further fair housing. The AFFH obligation means the SMHA must take "meaningful actions that, taken together, address significant disparities in housing needs and in access to opportunity, replacing segregated living patterns with truly integrated and balanced living patterns, transforming racially and ethnically

DECLARATION OF NATALIE VERLINICH - 5
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

concentrated areas of poverty into areas of opportunity, and fostering and maintaining compliance with civil rights and fair housing laws." In other words, we have affirmative duties to promote diversity, equity, and inclusion. SMHA has also adopted policies to ensure meaningful access to persons with limited English proficiency, following HUD guidance to do so, in order to ensure our services are inclusive of households that are eligible for assistance regardless of national origin. To be clear, I consider these activities fully consistent with SMHA's obligations under non-discrimination laws, but they are activities that could be considered to "promote DEI."

19.     The conditions are also vague as to what constitutes "promoting" illegal immigration, elective abortion, or "gender ideology." For instance, SMHA does not provide rental assistance for individuals who are not able to demonstrate citizenship or eligible immigration status, but allows eligible individuals to live with ineligible non-citizens and the rent is prorated accordingly. SMHA does not consider this "promoting" illegal immigration but I have concerns this could be characterized that way since the term is so vague. Similarly, I have concerns SMHA staff requesting and using a participant's preferred pronoun, if different than the pronoun for their sex assigned at birth, could be considered "promoting gender ideology," though not doing so or inquiring invasively into a participant's medical history could be discriminatory or abusive.

20.     If SMHA is, as we expect, asked to sign a FY24 CoC grant agreement with these new conditions, we will be forced to agree to terms that are impossible to comply with or lose access to more than $5.6 million in funding to house the most vulnerable members of our community. The approximately 230 households currently housed through SMHA's CoC program would be at immediate risk of returning to homelessness, with no alternative rental

DECLARATION OF NATALIE VERLINICH - 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

assistance programs to absorb them. SMHA's largest rental assistance program, the HCV program, is already under extremely tight resource constraints after having absorbed participants who transitioned off of SMHA's our HOME Voucher program due to continual reductions to the HOME funding allocation. Our HCV program simply could not absorb all 230 additional households if CoC funding were to end.

21.     As noted above, all CoC households have at least one member with a disability. Many CoC participants rely on networks of service providers, medical professionals, and others in their local community to navigate their daily lives. They would lose many of these connections if they lose their housing, which would derail treatment plans and also make it difficult for participants to get back into alternative or even temporary housing quickly.

22.     Not only would scores of tenants be forced back into homelessness, landlords that operate Permanent Supportive Housing (PSH) projects supported by site-specific CoC vouchers would be irreparably harmed by extended, if not permanent, vacancies. By losing these CoC Vouchers, these developments would likely fall into foreclosure, forced to close or sell due to lack of operating revenue from rental income from the CoC vouchers.

23.     Finally, SMHA would may have to lay off up to three (3) staff members who help administer the CoC program because SMHA's budget relies on CoC funds to pay their salaries.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 19th day of May, 2025.



NATALIE VERLINICH

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2025, I served a true and correct copy of the foregoing

document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants Scott Turner, U.S.*<br>*Dept. of Housing and Urban Development,*<br>*Sean Duffy, U.S. Dept. of Transportation,*<br>*Tariq Bokhari, the Federal Transit*<br>*Administration, Gloria M. Shepherd, the*<br>*Federal Highway Administration, Chris*<br>*Rocheleau, the Federal Aviation*<br>*Administration, Drew Feeley, the Federal*<br>*Railroad Administration* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of

Washington that the foregoing is true and correct.

DATED this 21st day of May, 2025.

/s/ Gabriela DeGregorio
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A



U.S. Department of Housing and Urban Development
Office of Community Planning and Development
300 N. Los Angeles Street
Suite 4054
Los Angeles, CA 90012

**Grant Number: CA0359L9D002316**
**Recipient's Name: City of Santa Monica Housing Authority**
**Tax ID Number: 95-6000790**
**Unique Entity Identifier [SAM]: XD8EQMV7EUV5**
**Federal Award Date: 6/24/2024**

## CONTINUUM OF CARE PROGRAM (CDFA# 14.267)
## GRANT AGREEMENT

This Grant Agreement ("this Agreement") is made by and between the United States Department of Housing and Urban Development ("HUD") and City of Santa Monica Housing Authority (the "Recipient").
This Agreement, the Recipient's use of funds provided under this Agreement (the "Grant" or "Grant Funds"), and the Recipient's operation of projects assisted with Grant Funds are governed by

1. The Consolidated Appropriations Act, 2023 (Pub. L. 117-328, approved December 29, 2022)

2. title IV of the McKinney-Vento Homeless Assistance Act 42 U.S.C. 11301 et seq. (the "Act");

3. the Continuum of Care Program rule at 24 CFR part 578 (the "Rule"), as amended from time to time;

4. and the Notice of Funding Opportunity for the fiscal year in which the funds were awarded; and

5. the Recipient's application submissions on the basis of which these Grant Funds were approved by HUD, including the certifications, assurances, technical submission documents, and any information or documentation required to meet any grant award condition (collectively, the "Application").

The Application is incorporated herein as part of this Agreement, except that only the project (those projects) listed below are funded by this Agreement. In the event of any conflict between any application provision and any provision contained in this Agreement, this Agreement shall control. Capitalized terms that are not defined in this agreement shall have the meanings given in the Rule.

HUD's total funding obligation authorized by this grant agreement is $4,822,406, allocated between the project(s) listed below (each identified by a separate grant number) and, within those projects, between budget line items, as shown below. The Grant Funds an individual project will receive are as shown in the Application on the final HUD-approved Summary Budget for the project. Recipient shall use the Grant Funds provided for the projects listed below, during the budget period(s) period stated below.

| Grant No. | Grant Term | Performance Period | Total Amount |
|---|---|---|---|
| CA0359L9D002316 | 12 months | 06-01-2024 - 05-31-2025 | $4,822,406 |

|   |   |   |
|---|---|---|
| a. | Continuum of Care planning activities | $0 |
| b. | Acquisition | $0 |
| c. | Rehabilitation | $0 |
| d. | New construction | $0 |
| e. | Leasing | $0 |
| f. | Rental assistance | $4,534,128 |
| g. | Supportive services | $21,672 |
| h. | Operating costs | $0 |
| i. | Homeless Management Information System | $0 |
| j. | VAWA | $0 |
| k. | Rural | $0 |
| l. | Admin Costs | $266,606 |
| m. | Relocation Costs | $0 |
| n. | HPC homelessness prevention activities: |   |
|   | Housing relocation and stabilization services | $0 |
|   | Short-term and medium-term rental assistance | $0 |

Pre-award Costs for Continuum of Care Planning

  The Recipient may, at its own risk, incur pre-award costs for continuum of care planning awards, after the date of the HUD selection notice and prior to the effective date of this Agreement, if such costs: a) are consistent with 2 CFR 200.458; and b) would be allowable as a post-award cost; and c) do not exceed 10 percent of the total funds obligated to this award.  The incurrence of pre-award costs in anticipation of an award imposes no obligation on HUD either to make the award, or to increase the amount of the approved budget, if the award is made for less than the amount anticipated and is inadequate to cover the pre-award costs incurred.

These provisions apply to all Recipients:

  If any new projects funded under this Agreement are for project-based rental assistance for a term of fifteen (15) years, the funding provided under this Agreement is for the performance period stated herein only.  Additional funding is subject to the availability of annual appropriations.

  The budget period and performance period of renewal projects funded by this Agreement will begin immediately at the end of the budget period and performance period of the grant being renewed.  Eligible costs incurred between the end of Recipient's budget period and performance period under the grant being renewed and the date this Agreement is executed by both parties may be reimbursed with Grants Funds from this Agreement.  No Grant Funds for renewal projects may be drawn down by Recipient before the end date of the project's budget period and performance period under the grant that has been renewed.

  For any transition project funded under this Agreement the budget period and performance period of the transition project(s) will begin immediately at the end of the Recipient's final operating year under the grant being transitioned.  Eligible costs, as defined by the Act and the Rule incurred between the end of Recipient's final operating year under the grant being transitioned and the execution of this Agreement may be paid with funds from the first operating year of this Agreement.

  HUD designations of Continuums of Care as High-performing Communities (HPCS) are published on HUD.gov in the appropriate Fiscal Years' CoC Program Competition Funding Availability page.  Notwithstanding anything to the contrary in the Application or this Agreement, Recipient may only use grant funds for HPC Homelessness Prevention Activities if the Continuum that designated the Recipient to apply for the grant was designated an HPC for the applicable fiscal year.

  The Recipient must complete the attached "Indirect Cost Rate Schedule" and return it to HUD with this Agreement.  The Recipient must provide HUD with a revised schedule when any change is made to the rate(s) included in the schedule.  The schedule and any revisions HUD receives from the Recipient will be incorporated into and made part of this Agreement, provided that each rate included satisfies the applicable requirements under 2 CFR part 200 (including appendices).

  This Agreement shall remain in effect until the earlier of 1) written agreement by the parties; 2) by HUD alone, acting under the authority of 24 CFR 578.107; 3) upon expiration of the budget period and performance period for all projects funded under this Agreement; or 4) upon the expiration of the period of availability of Grant Funds for all projects funded under this Agreement.

HUD notifications to the Recipient shall be to the address of the Recipient as stated in the Recipient's applicant profile in e-snaps.  Recipient notifications to HUD shall be to the HUD Field Office executing the Agreement.  No right, benefit, or advantage of the Recipient hereunder may be assigned without prior written approval of HUD.

Build America, Buy America Act. The Grantee must comply with the requirements of the Build America, Buy America (BABA) Act, 41 USC 8301 note, and all applicable rules and notices, as may be amended, if applicable to the Grantee's infrastructure project. Pursuant to HUD's Notice, "Public Interest Phased Implementation Waiver for FY 2022 and 2023 of Build America, Buy America Provisions as Applied to Recipients of HUD Federal Financial Assistance" (88 FR 17001), any funds obligated by HUD on or after the applicable listed effective dates, are subject to BABA requirements, unless excepted by a waiver.

The Agreement constitutes the entire agreement between the parties and may be amended only in writing executed by HUD and the Recipient.

By signing below, Recipients that are states and units of local government certify that they are following a current HUD approved CHAS (Consolidated Plan).

This agreement is hereby executed on behalf of the parties as follows:

**UNITED STATES OF AMERICA,**
**Secretary of Housing and Urban Development**

By:

_____
(Signature)

Rufus Washington, Director
_____
(Typed Name and Title)

June 24, 2024
_____
(Date)

**RECIPIENT**

City of Santa Monica Housing Authority
_____
(Name of Organization)

By:

*Natalie Verlinich*
_____
(Signature of Authorized Official)

Natalie Verlinich, Housing Manager
_____
(Typed Name and Title of Authorized Official)

June 24, 2024
_____
(Date)

**Indirect Cost Schedule**

| Agency/Dept./Major Function | Indirect Cost Rate | Direct Cost Base |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

This schedule must include each indirect cost rate that will be used to calculate the Recipient's indirect costs under the grant.  The schedule must also specify the type of direct cost base to which each included rate applies (for example, Modified Total Direct Costs (MTDC)).  Do not include indirect cost rate information for subrecipients.

For government entities, enter each agency or department that will carry out activities under the grant, the indirect cost rate applicable to each department/agency (including if the de minimis rate is used per 2 CFR §200.414), and the type of direct cost base to which the rate will be applied.

For nonprofit organizations that use the Simplified Allocation Method for indirect costs or elects to use the de minimis rate of 10% of Modified Total Direct Costs in accordance with 2 CFR §200.414, enter the applicable indirect cost rate and type of direct cost base in the first row of the table.

For nonprofit organizations that use the Multiple Base Allocation Method, enter each major function of the organization for which a rate was developed and will be used under the grant, the indirect cost rate applicable to that major function, and the type of direct cost base to which the rate will be applied.

To learn more about the indirect cost requirements, see 24 CFR 578.63; 2 CFR part 200, subpart E; Appendix IV to Part 200 (for nonprofit organizations); and Appendix VII to Part 200 (for state and local governments).

# EXHIBIT B



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-7000

PRINCIPAL DEPUTY ASSISTANT SECRETARY FOR
COMMUNITY PLANNING AND DEVELOPMENT

March 11, 2025

Ms. Natalie Verlinich
Housing Manager
City of Santa Monica Housing Authority
1685 Main St. Mail Stop #19
Santa Monica, CA  90401

Dear Ms. Verlinich:

Congratulations!  I am delighted to inform you of the funding for your project(s) under the Department of Housing and Urban Development's (HUD) Notice of Funding Opportunity (NOFO) for Fiscal Year (FY) 2024 Continuum of Care (CoC) Competition and Renewal or Replacement of Youth Homeless Demonstration Program Grants for a total of $5,641,659.

The CoC Program is an important part of HUD's mission. CoCs around the country will continue to improve the lives of people experiencing homelessness through their local planning efforts and through the direct housing and service programs funded under the FY 2024 CoC Program Competition.  Projects like those of your organization, funded through the CoC program, continue to demonstrate their value by improving accountability and performance every year.

The enclosure provides details about your organization's award(s) including: the name(s) of the individual project(s); the project number(s); and the specific amount(s) for each project.  The Department's field office staff will notify you when they are available to process grant agreements; once all conditions are satisfied and the grant agreement is executed, your organization can expend the funds.

HUD commends your organization's work and encourages it to continue to strive for excellence in the fight to end homelessness.

Sincerely,

David C. Woll Jr.
Principal Deputy Assistant Secretary

Enclosure

CA0359L9D002417
CA0359 SIP
$5,641,659

Total Amount:        **$5,641,659**