1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

                              Plaintiffs,

        v.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

                              Defendants.

No. 2:25-cv-00814-BJR

DECLARATION OF ANN
CHANECKA

I, ANN CHANECKA declare as follows based on my personal knowledge and review of

relevant documents:

        1.      I am a resident of the State of Arizona. If called to do so, I could and would testify

competently under oath to the facts stated below.

        2.      I am the Director for the City of Tucson's ("Tucson's") Department of Housing

and Community Development ("**HCD**"), a position I have held from May 30, 2023 to present.

Prior to this position, I served as the Deputy Director of HCD and also as an Executive

Management Advisor to the City Manager.

        3.      In my role as HCD Director, I oversee the Public Housing Authority for the

region including the Housing Choice Voucher and Public Housing Programs; services for the

DECLARATION OF ANN CHANECKA - 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

unhoused; community development programs; affordable housing development; and more. This includes oversight of the departmental budget, personnel, and grant execution.

4.     HCD is responsible for administering and advancing Tucson's goals regarding affordable housing and community well-being within the city, with a focus on low-income individuals and marginalized populations. HCD oversees programs funded by federal, state, and local sources related to housing assistance, homelessness prevention, neighborhood revitalization, and affordable housing development. HCD also collaborates with local organizations, community stakeholders, and government agencies to foster sustainable development, enhance the quality of life, and address the socio-economic needs of Tucson's diverse communities.  HCD's mission is to "transform lives through stable and affordable housing, vital services, and thriving neighborhoods." Toward these goals, HCD receives HUD Continuum of Care ("**CoC**") funds and will need to certify compliance with the grant terms or forego this critical grant funding.

5.     The CoC program for the Tucson metropolitan area (the "**Tucson/Pima CoC**") is administered through the Tucson Pima Collaboration to End Homelessness ("**TPCH**"). TPCH's membership is made up of community and faith-based organizations, homeless service providers, government entities, behavioral health agencies, and individuals committed to the mission of ending homelessness and addressing the issues related to homelessness in our community. The coalition is governed by a General Council, which has both voting and non-voting members. The TPCH General Council voting members elect the members of the TPCH Continuum of Care Board (the "**CoC Board**"). TPCH convenes and coordinates community partners to create a forum for community consensus on needs and homeless service delivery, but does not provide direct services.

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

6.      Tucson serves as the Tucson/Pima CoC lead agency and the "Collaborative Applicant" for purposes of CoC funding, which includes CoC Planning and Coordination, Coordinated Entry Implementation, Youth Employment and Education, Youth Diversion, Youth Transitional Housing, Domestic Violence Rapid Rehousing, Single Adult and Family Rapid Rehousing, Safe Haven, Single Adult and Family Permanent Supportive Housing, and Street Outreach programs.

7.      As lead agency, Tucson's team works to facilitate and administer the Tucson/Pima CoC by coordinating meetings of the CoC Board and various committees, overseeing the Coordinated Entry system and associated funding, coordinating the Lived Experience Council, hosting community-wide trainings, and generally acting as the convening and coordinating body for cross-sector planning for regional initiatives ending homelessness.

8.      Tucson also partners with Pima County, which serves as the Homeless Management Information System (HMIS) lead agency for the Tucson/Pima CoC.  Tucson and Pima County collaborate on projects such as the Point in Time Count, community data requests, and the Housing Central Command initiative. ("**Lead Agencies**" as used here means Tucson and Pima County collectively.)

9.      TPCH has a CoC Program Grant Committee  that provides expertise and guidance to the CoC Board related to HUD CoC funding for the Tucson/Pima CoC. The CoC Program Grant Committee monitors the performance of CoC funding recipients and subrecipients; recommends performance improvement plans to the CoC Board; recommends priorities and community strategies related to the use of CoC program funds to the CoC Board; develops and recommends performance improvement targets for CoC projects consistent with the Tucson/Pima CoC's adopted system performance improvement strategies; and  reviews, updates,

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

and oversees the implementation of the Tucson/Pima CoC's approved reallocation policies.

10.    The Point-in-Time Count ("**PIT Count**") is a count of sheltered and unsheltered people experiencing homelessness on a single day in January. HUD requires that CoCs conduct the PIT Count biennially but the Tucson/Pima CoC performs it annually. A PIT Count includes people experiencing homelessness who are unsheltered, as well as sheltered in emergency shelter, transitional housing, and Safe Havens on a single night. Each PIT Count is planned, coordinated, and carried out locally.

11.    The Tucson/Pima CoC's 2024 PIT Count  identified 2,142 unduplicated persons experiencing homelessness.  During Tucson's 2024 fiscal year (July 1, 2024 to June 30, 2025), 7,411 individuals and households completed coordinated-entry-housing assessments, and 5,471 individuals were served by the regional homelessness response system, which includes all federally funded shelter, temporary, and permanent beds dedicated to persons experiencing homelessness within the Tucson/Pima CoC's geographic service area (which includes all of Pima County).

12.    As the Collaborative Applicant, Tucson administers the Tucson/Pima CoC funding competition on behalf of HUD. All agencies that apply for CoC funding must go through this competitive process. Tucson then submits to HUD the Tucson/Pima CoC Community Application and Priority List, HUD selects which programs on the list to fund and at what level, and then HUD enters into grant agreements directly with the agencies that run the funded programs. Some of the direct recipients, including Tucson, further distribute funding to subrecipients.

13.    Tucson has received continuous CoC program funding since the program was codified in the 2009 HEARTH Act and, prior to that, through the Shelter Plus Care CoC legacy

DECLARATION OF ANN CHANECKA - 4
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

program established in 1994. The Tucson/Pima CoC received $13,262,485 through the FY 2023

funding competition, which is funding Tucson/Pima CoC projects for the current fiscal year,

which ends June 30th. Of that total amount, Tucson directly administers $5,610,068. The

Tucson/Pima CoC also oversees $7,802,581 awarded under the CoC Program Supplemental

Funding Opportunity to Address Unsheltered and Rural Homelessness, $1,349,346 of which is

administered by Tucson.

14.    Tucson/Pima CoC members were awarded $14,550,224 in HUD FY 2024 CoC

program funds, as announced by HUD on January 14, 2025. The grantees and amounts awarded

are listed in **Exhibit A** to this Declaration.  Of this amount, Tucson is the direct recipient of more

than $6.1 million.

15.    To my knowledge, only one Tucson/Pima CoC grantee has actually received a

formal grant agreement from HUD (see **Exhibit B** to this Declaration). This grant agreement

contains new grant conditions prohibiting the use of grant funds "to promote 'gender ideology,'

as defined in E.O. 14168" or "elective abortions"; requiring the grantee to "certify[y] that it does

not operate any programs that violate any applicable Federal anti-discrimination laws"; requiring

the grantee to "agree[] that its compliance in all respects with all applicable Federal anti-

discrimination laws is material" under the False Claims Act;  and requiring the grantee to

"subject to the exceptions provided by PRWORA … use SAVE or an equivalent verification

system approved by the Federal government, to prevent any Federal public benefit from being

provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully

present in the United States."

16.    Tucson received a letter from HUD dated March 11, 2025, formally notifying the

City that it has been awarded $975,569 under the 2024 CoC Competition and Renewal or

DECLARATION OF ANN CHANECKA - 5
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Replacement of Youth Homeless Demonstration Program (see **Exhibit C** to this Declaration). The letter states that "[t]he Department's field office staff will notify you when they are available to process grant agreements; once all conditions are satisfied and the grant agreement is executed, your organization can expend the funds." We have not yet received the formal grant agreement for these funds, nor have we received a formal award letter for the other funding awarded to Tucson in January.

17.    Presumably, when HUD sends Tucson grant agreements for its CoC funding, those grant agreements will be the same as the one received by the nonprofit grantee. In addition to the provisions listed above, the agreement contains a provision that is not applicable to nonprofits, but would be applicable to Tucson: it prohibits government entities from using the provided funding "in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation."

18.    The new requirements contradict HUD regulations and 2024 and 2025 HUD CoC notice of funding opportunity requirements to which HCD and our partners remain obligated. For example, improving assistance to Lesbian, Gay, Bisexual, Transgender, and Queer+ (LGBTQ+) individuals is one of HUD's Homeless Policy Priorities and projects demonstrating efforts to address the needs of LGBTQ+ individuals and their families experiencing homelessness was a scoring criteria. Similarly, assessing racial disparities in the provision or outcome of homeless assistance and taken the necessary steps to address such disparities is a scoring criteria. This policy is also embedded in HUD regulations, 24 CFR § 5.106.

19.    The open-ended promise to comply with future immigration-related obligations imposed by HUD, ICE, or the USAG, could require assistance from HCD that we do not have the resources to provide. Our mission is to assist individuals with their housing needs, and we

DECLARATION OF ANN CHANECKA - 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

devote all our limited resources to that end. I am also concerned that if HCD is seen as an arm of law enforcement, this would cause people to distrust us and make individuals reluctant to participate in our programs or stay in our facilities, even when they are eligible for participation.

20.     The vague provision regarding "diversity, equity, and inclusion" calls into question whether grantees are even allowed to recognize historic and systemic inequities and actively combat them in an effort to ensure that those most in need of aid receive it, which is important to the efforts of the Tucson/Pima CoC.

21.     HCD uses SAVE for some of its programs, including for its public housing and housing choice voucher programs. However, based on guidance issued jointly by DOJ, HHS, and HUD in 2016, HCD has not used SAVE for certain programs that are necessary to protect life or safety, such as emergency shelter and short-term housing assistance programs.

22.     The inclusion of these provisions in the new CoC grant agreements forces Tucson, and other Tucson/Pima CoC members, to make an impossible choice: forgo the funding, or agree to conditions that are antithetical to their humanitarian mission and inconsistent with published HUD regulations.

23.     If Tucson refuses to sign the grant agreements and loses the CoC funding, or signs the grant agreements only to have the funding taken away, this would have devastating consequences for the community.

24.     Point-in-Time data indicates that the rate of homelessness has increased by 61.7% in the Tucson area since 2020. The Tucson/Pima CoC provides critical coordination of emergency and long-term homelessness solutions and the largest single source of funding for homelessness response in the region. In fiscal year 2024 (July 1, 2024 to June 30, 2025), the homeless response system in Pima County served 5471 people in 3892 households, including

DECLARATION OF ANN CHANECKA - 7
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

585 children. The loss of HUD CoC funds would hamstring efforts to reduce the number of people experiencing homelessness in the region.

25.    Tucson administers 42% of locally awarded CoC funds. The loss of these funds would devastate the local homelessness response infrastructure as Tucson is the primary coordinator of this work. A non-profit or other public entity would need to assume the responsibilities as the Collaborative Applicant for the CoC and administer the Coordinated Entry program. But it's doubtful that any other entity would have the resources to do so. Public trust in Tucson would be eroded among non-profit partners whose funding is awarded through the HCD-administered process.

26.    CoC funding is approximately 7.25% of the funding for all housing and related services provide by HCD. Without the CoC funding, programs would be eliminated and more than ten HCD staff positions would be eliminated. Tucson's Housing First program budget would be reduced by approximately 40%.

27.    Tucson's Subrecipient organizations would lose funding and the households enrolled in their services would be displaced. This includes the Southern Arizona AIDS Foundation, Old Pueblo Community Services, El Rio Community Health Centers, Community Bridges, Inc., Interfaith Community Services, Emerge Center Against Domestic Abuse, Primavera Foundation, Salvation Army, Pima County, and UArizona Southwest Institute for Research on Women. Lastly, the interruption of these programs would halt millions of dollars in rental assistance payments made to local landlords, causing them abrupt and unforeseeable financial hardship.

28.    There are currently 281 households enrolled in Tucson-administered CoC-funded supportive housing programs (separate from those served through non-City CoC programs).

DECLARATION OF ANN CHANECKA - 8
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

There is no available funding to provide continued services for these households in the absence of CoC funding renewal. Interruption would result in the immediate displacement of more than 850 individuals who are members of these households and who have no alternative housing resources. Local shelters are unable to house this many additional people, meaning that many of these displaced individuals would end up on the streets without any kind of shelter. Heat-related and other deaths among unsheltered persons have increased by 9% between 2022 and 2024 according to the Pima County Medical Examiner. The loss of CoC funding would cost lives.

29.     Because of the current funding uncertainty, HCD is operating its CoC-funded permanent supportive housing programs below their full capacity until assurance of continued funding is provided through an executed grant agreement. This has reduced the number of households offered housing assistance during a time of critical community need. Additionally, HCD has had to develop contingency plans to bridge households with rental assistance through other sources until grant agreements are executed; however, this is only sustainable for approximately 3 months and negatively impacts HCD's ability to drive those resources into other areas of critical need to address the rising issue of homelessness in the community. Reduced capacity has additionally limited HCD's ability to transition residents from temporary shelters to permanent housing destinations.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 19th day of May, 2025.

_____
Ann Chanecka

DECLARATION OF ANN CHANECKA - 9
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I served a true and correct copy of the foregoing

document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants Scott Turner, U.S. Dept. of Housing and Urban Development, Sean Duffy, U.S. Dept. of Transportation, Tariq Bokhari, the Federal Transit Administration, Gloria M. Shepherd, the Federal Highway Administration, Chris Rocheleau, the Federal Aviation Administration, Drew Feeley, the Federal Railroad Administration* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of

Washington that the foregoing is true and correct.

DATED this 21st day of May, 2025.

/s/ Gabriela DeGregorio
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A

| Project Recipient | CoC Project Name | Project Amount | Project Start Date | Contract Status |
|---|---|---|---|---|
| City of Tucson | FY24 CoC Planning Grant (AZ-501) | $ 634,012.00 | 7/1/2025 | Contracts not released |
| City of Tucson | FY24 Tucson/Pima Coordinated Entry Project (SSO-CE) | $ 636,165.00 | 10/1/2025 | Award Letter Received |
| City of Tucson | Housing First PSH | $ 4,535,875.00 | 7/1/2025 (?) | Contracts not released |
| City of Tucson | FY24 Transitions PSH | $ 339,404.00 | 10/1/2025 | Award Letter Received |
| Community Bridges, Inc. | CBI Pima PSH 37 | $ 685,902.00 | 10/1/2025 | Contracts not released |
| Community Bridges, Inc. | CBI YOURRH Project | $ 537,568.00 | 9/1/2025 | Contracts not released |
| Goodwill Industries of Southern Arizona | The Goodwill Metro/REC Reengagement Project for Homeless Youth Renewal FY2024 | $ 157,534.00 | 10/1/2025 | Contracts not released |
| La Frontera Center, Inc. | Sonora House Safe Haven | $ 454,634.00 | 11/1/2025 | Contracts not released |
| Old Pueblo Community Services | Bread and Roses | $ 456,592.00 | 10/1/2025 | Contracts not released |
| Our Family Services, Inc. | OFS Home Again RRH 25-26 | $ 924,287.00 | 3/1/2025 | Contract sent from HUD |
| Our Family Services, Inc. | OFS YHDP Youth Care SSO 25-26 | $ 351,791.00 | 10/1/2025 | Contracts not released |
| Our Family Services, Inc. | OFS YHDP New Hope RRH 25-26 | $ 614,082.00 | 10/1/2025 | Contracts not released |
| Our Family Services, Inc. | OFS Secure Futures RRH 25-26 | $ 421,724.00 | 7/1/2025 | Contracts not released |
| Our Family Services, Inc. | OFS Homes First 25-26 | $ 289,493.00 | 5/1/2025 | Contract sent from HUD |
| Pima County | One-Stop FY2024 (RRH) | $ 283,204.00 | 12/1/2025 | Contracts not released |
| Pima County | La Casita FY2024 (youth RRH) | $ 260,495.00 | 7/1/2025 | Contracts not released |
| Pima County | Pima County HMIS Consolidation FY' 2024 | $ 448,750.00 | 7/1/2025 | Contracts not released |
| Southern Arizona AIDS Foundation | AVP-RR | $ 1,524,290.00 | New Project | Contracts not released |
| The Primavera Foundation, Inc | Primavera CoC Rapid Rehousing | $ 649,095.00 | New Project | Contracts not released |
| Emerge! Center Against Domestic Abuse | Rapid Re-Housing for Survivors of Domestic Abuse FY24 | $ 345,327.00 | 12/1/2025 | Contracts not released |
| | **Total** | **$ 14,550,224.00** | | |

# EXHIBIT B

**Grant Number/FAIN:** ███████████
**Recipient Name:** ████████████████
**Tax ID No.:** █████████
**Unique Entity Identifier (UEI) Number:** ████████████

## CONTINUUM OF CARE PROGRAM (Assistance Listing# 14.267) GRANT AGREEMENT

This Grant Agreement ("this Agreement") is made by and between the United States Department of Housing and Urban Development ("HUD") and ████████████████ (the "Recipient").

This Agreement, the Recipient's use of funds provided under this Agreement (the "Grant" or "Grant Funds"), and the Recipient's operation of projects assisted with Grant Funds are governed by

1. The Consolidated Appropriations Act, 2024 (Public Law 118-42, approved March 9, 2024);

2. title IV of the McKinney-Vento Homeless Assistance Act 42 U.S.C. 11301 et seq. (the "Act");

3. the Continuum of Care Program rule at 24 CFR part 578 (the "Rule"), as amended from time to time;

4. the Notice of Funding Opportunity for FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program (NOFO), except for references in the NOFO to Executive Orders that have since been repealed;

5. all current Executive Orders; and

6. the Recipient's application submissions on the basis of which these Grant Funds were approved by HUD, including the certifications, assurances, technical submission documents, and any information or documentation required to meet any grant award condition (collectively, the "Application").

The Application is incorporated herein as part of this Agreement, except that only the project (those projects) listed below are funded by this Agreement. In the event of any conflict between any application provision and any provision contained in this Agreement, this Agreement shall control. Capitalized terms that are not defined in this agreement shall have the meanings given in the Rule.

☐    The Recipient is a Unified Funding Agency (UFA).

1

☐    The Recipient is the sole recipient designated by the applicable Continuum of Care.
☒    The Recipient is not the only recipient designated by the applicable Continuum of Care.


HUD's total funding obligation authorized by this grant agreement is $924,287, allocated between the project(s) listed below (each identified by a separate grant number) and, within those projects, between budget line items, as shown below. The Grant Funds an individual project will receive are as shown in the Application on the final HUD-approved Summary Budget for the project. Recipient shall use the Grant Funds provided for the projects listed below, during the budget period(s) period stated below.

| Grant No. (FAIN) | Grant Term | Performance Period | Budget Period | Total Amount |
|---|---|---|---|---|
| ███████████ | 12 | 03/01/2025-02/28/2026 | 03/01/2025-02/28/2026 | $924,287 |
| allocated between budget line items as follows: | | | | |
| a.  Continuum of Care Planning Activities | | | | $0 |
| b.  Acquisition | | | | $0 |
| c.  Rehabilitation | | | | $0 |
| d.  New construction | | | | $0 |
| e.  Leasing | | | | $0 |
| f.  Rental assistance | | | | $631,428 |
| g.  Supportive services | | | | $227,644 |
| h.  Operating costs | | | | $0 |
| i.  Homeless Management Information System | | | | $0 |
| j.  Administrative costs | | | | $65,215 |
| k.  Relocation costs | | | | $0 |
| l.  VAWA Costs | | | | $0 |
| m.  Rural Costs | | | | $0 |
| n.  HPC homelessness prevention activities: | | | | |
|      Housing relocation and stabilization services | | | | $0 |
|      Short-term and medium-term rental assistance | | | | $0 |

**Pre-award Costs for Continuum of Care Planning**

The Recipient may, at its own risk, incur pre-award costs for continuum of care planning awards, after the date of the HUD selection notice and prior to the effective date of this Agreement, if such costs: a) are consistent with 2 CFR 200.458; and b) would be allowable as a post-award cost; and c) do not exceed 10 percent of the total funds obligated to this award. The incurrence of pre-award costs in anticipation of an award imposes no obligation on HUD either to make the award, or to increase the amount of the approved budget, if the award is made for less than the amount anticipated and is inadequate to cover the pre-award costs incurred.

2

**These provisions apply to all Recipients:**

The Recipient:

(1) shall not use grant funds to promote "gender ideology," as defined in E.O. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

(2) agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

(3) certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964;

(4) shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment; and

(5) Notwithstanding anything in the NOFO or Application, this Grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or NOFO requirements implementing Executive Orders that have been revoked.

The recipient must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.

No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.

Subject to the exceptions provided by PRWORA, the recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

HUD will not enforce provisions of the Grant Agreement to the extent that they require the project to use a housing first program model.

As stated in Section III.A.2 of the NOFO, Faith-based organizations may be recipients or subrecipients for funds under this agreement on the same basis as any other organization.

3

Recipients may not, in the selection of subrecipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

If any new projects funded under this Agreement are for project-based rental assistance for a term of fifteen (15) years, the funding provided under this Agreement is for the performance period stated herein only. Additional funding is subject to the availability of annual appropriations.

The budget period and performance period of renewal projects funded by this Agreement will begin immediately at the end of the budget period and performance period of the grant being renewed. Eligible costs incurred between the end of Recipient's budget period and performance period under the grant being renewed and the date this Agreement is executed by both parties may be reimbursed with Grants Funds from this Agreement. No Grant Funds for renewal projects may be drawn down by Recipient before the end date of the project's budget period and performance period under the grant that has been renewed.

For any transition project funded under this Agreement the budget period and performance period of the transition project(s) will begin immediately at the end of the Recipient's final operating year under the grant being transitioned. Eligible costs, as defined by the Act and the Rule incurred between the end of Recipient's final operating year under the grant being transitioned and the execution of this Agreement may be paid with funds from the first operating year of this Agreement.

HUD designations of Continuums of Care as High-performing Communities (HPCS) are published on HUD.gov in the appropriate Fiscal Years' CoC Program Competition Funding Availability page. Notwithstanding anything to the contrary in the Application or this Agreement, Recipient may only use grant funds for HPC Homelessness Prevention Activities if the Continuum that designated the Recipient to apply for the grant was designated an HPC for the applicable fiscal year.

The Recipient must use the Grant Funds only for costs (including indirect costs) that meet the applicable requirements in 2 CFR part 200 (including appendices), as may be amended from time to time. The Recipient's indirect cost rate information is as provided in Addendum #1 to this Agreement. The Recipient must immediately notify HUD upon any change in the Recipient's indirect cost rate, so that HUD can amend the Agreement to reflect the change if necessary.

HUD notifications to the Recipient shall be to the address of the Recipient as stated in the Recipient's applicant profile in *e-snaps*. Recipient notifications to HUD shall be to the HUD Field Office executing the Agreement. No right, benefit, or advantage of the Recipient hereunder may be assigned without prior written approval of HUD.

The Recipient must comply with the applicable requirements in 2 CFR part 200, as may be amended from time to time.

*Build America, Buy America Act*. The Grantee must comply with the requirements of the Build America, Buy America (BABA) Act, 41 USC 8301 note, and all applicable rules and notices, as may be amended, if applicable to the Grantee's infrastructure project. Pursuant to HUD's Notice,

4

"Public Interest Phased Implementation Waiver for FY 2022 and 2023 of Build America, Buy America Provisions as Applied to Recipients of HUD Federal Financial Assistance" (88 FR 17001), any funds obligated by HUD on or after the applicable listed effective dates, are subject to BABA requirements, unless excepted by a waiver.

*Waste, Fraud, Abuse, and Whistleblower Protections*. Any person who becomes aware of the existence or apparent existence of fraud, waste or abuse of any HUD award must report such incidents to both the HUD official responsible for the award and to HUD's Office of Inspector General (OIG). HUD OIG is available to receive allegations of fraud, waste, and abuse related to HUD programs via its hotline number (1-800-347-3735) and its online hotline form. You must comply with 41 U.S.C. § 4712, which includes informing your employees in writing of their rights and remedies, in the predominant native language of the workforce. Under 41 U.S.C. § 4712, employees of a government contractor, subcontractor, grantee, and subgrantee—as well as a personal services contractor—who make a protected disclosure about a Federal grant or contract cannot be discharged, demoted, or otherwise discriminated against as long as they reasonably believe the information they disclose is evidence of:
1. Gross mismanagement of a Federal contract or grant;
2. Waste of Federal funds;
3. Abuse of authority relating to a Federal contract or grant;
4. Substantial and specific danger to public health and safety; or
5. Violations of law, rule, or regulation related to a Federal contract or grant.

HUD may terminate all or a portion of the Grant in accordance with the Act, the Rule, and 2 CFR 200.340.    The Agreement constitutes the entire agreement between the parties and may be amended only in writing executed by HUD and the Recipient.

By signing below, Recipients that are states and units of local government certify that they are following a current HUD approved CHAS (Consolidated Plan).

This agreement is hereby executed on behalf of the parties as follows:

**UNITED STATES OF AMERICA,**
**Secretary of Housing and Urban Development**

BY: REBECCA BLANCO *(Digitally signed by REBECCA BLANCO, DN: CN = REBECCA BLANCO, C = US, O = U.S. Government OU = Department of Housing and Urban Development, Office of Community Planning and Development, Date: 2025.03.31 11:24:55 -07'00')*
_____
(Signature)

Rebecca Blanco, CPD Director
_____
(Typed Name and Title)

March 31, 2025
_____
(Date/Federal Award Date)


**RECIPIENT**

████████████
_____
(Name of Organization)


BY: _____
(Signature of Authorized Official)


_____
(Typed Name and Title of Authorized Official)


_____
(Date)

OMB Number. 2501-0044
Expiration Date: 2/28/2027

Addendum #1 to AZ0146L9T012410

## Indirect Cost Information for Award Applicant/Recipient

1. Federal Program/Assistance Listing Program Title:
CONTINUUM OF CARE PROGRAM/Assistance Listing# 14.267

2. Legal Name of Applicant/Recipient:

3. Indirect Cost Rate Information for the Applicant/Recipient:
*Please check the box that applies to the Applicant/Recipient and complete the table only as provided by the instructions accompanying this form.*

☐ The Applicant/Recipient will not charge indirect costs using an indirect cost rate.

☐ The Applicant/Recipient will calculate and charge indirect costs under the award by applying a *de minimis* rate as provided by 2 CFR 200.414(f), as may be amended from time to time.

☐ The Applicant/Recipient will calculate and charge indirect costs under the award using the indirect cost rate(s) in the table below, and each rate in this table is included in an indirect cost rate proposal developed in accordance with the applicable appendix to 2 CFR part 200 and, *if required*, has been approved by the cognizant agency for indirect costs.

| Agency/department/major function | Indirect cost rate | Type of Direct Cost Base | Type of Rate |
|---|---|---|---|
| | % | | |
| | % | | |
| | % | | |

4. Submission Type (check only one):
☐ Initial submission  ☐ Update

5. Effective date(s):

6. Certification of Authorized Representative for the Applicant/Recipient:
**Under penalty of perjury, I certify on behalf of the Applicant/Recipient that
(1) all information provided on this form is true, complete, and accurate, and
(2) the Applicant/Recipient will provide HUD with an update to this form immediately upon learning of any change in the information provided on this form, and
(3) I am authorized to speak for the Applicant/Recipient regarding all information provided on this form.

Signature: _____
Date: _____
Name: _____
Title: _____

7

**\*\*Warning:** Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil and administrative penalties (18 U.S.C §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. § 3729, 3802; 24 CFR § 28.10(b)(iii)).

**Public Reporting Burden Statement:** This collection of information is estimated to average 0.25 hours per response, including the time for reviewing instructions, searching existing data sources, gathering, and maintaining the data needed, and completing and reviewing the collection of the requested information. Comments regarding the accuracy of this burden estimate and any suggestions for reducing this burden can be sent to: U.S. Department of Housing and Urban Development, Office of the Chief Data Officer, R, 451 7th St SW, Room 8210, Washington, DC 20410-5000. Do not send completed forms to this address. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a valid OMB control number. This agency is authorized to collect this information under Section 102 of the Department of Housing and Urban Development Reform Act of 1989. The information you provide will enable HUD to carry out its responsibilities under this Act and ensure greater accountability and integrity in the provision of certain types of assistance administered by HUD. This information is required to obtain the benefit sought in the grant program. Failure to provide any required information may delay the processing of your application and may result in sanctions and penalties including of the administrative and civil money penalties specified under 24 CFR §4.38. This information will not be held confidential and may be made available to the public in accordance with the Freedom of Information Act (5 U.S.C. §552). The information contained on the form is not retrieved by a personal identifier, therefore it does not meet the threshold for a Privacy Act Statement.

8

OMB Number: 2501-0044
Expiration Date: 2/28/2027

**Instructions for Completing the Indirect Cost Information for the Award Applicant/Recipient**

| Number | Item | Instructions |
|---|---|---|
| 1 | Federal Program/ Assistance Listing Program Title | Enter the title of the program as listed in the applicable funding announcement or notice of funding availability. |
| 2 | Legal Name of Applicant/ Recipient | Enter the legal name of the entity that will serve as the recipient of the award from HUD. |
| 3 | Indirect Cost Rate Information for the Applicant/ Recipient | Mark the one (and only one) checkbox that best reflects how the indirect costs of the Applicant/Recipient will be calculated and charged under the award. Do not include indirect cost rate information for subrecipients.<br><br>The table following the third checkbox must be completed only if that checkbox is checked. When listing a rate in the table, enter the percentage amount (for example, "15%"), the type of direct cost base to be used (for example, "MTDC"), and the type of rate ("predetermined," "final," "fixed," or "provisional").<br><br>If using the Simplified Allocation Method for indirect costs, enter the applicable indirect cost rate and type of direct cost base in the first row of the table.<br><br>If using the Multiple Allocation Base Method, enter each major function of the organization for which a rate was developed and will be used under the award, the indirect cost rate applicable to that major function, and the type of direct cost base to which the rate will be applied.<br><br>If the Applicant/Recipient is a government and more than one agency or department will carry out activities under the award, enter each agency or department that will carry out activities under the award, the indirect cost rate(s) for that agency or department, and the type of direct cost base to which each rate will be applied. |
| 4 | Submission Type | Check the appropriate box to identify whether this is the first submission of this form for the award or an update to a previous submission of this form for the award. |
| 5 | Effective date(s) | Enter the date(s) for which the information on this form applies. |
| 6 | Certification of Authorized Representative for the Applicant/ Recipient | An employee or officer of the Applicant/Recipient with the capacity and authority to make this certification for the Applicant/Recipient must make the certification by signing as provided. They must also provide the date of their signature, full name, and position title. |

9

# EXHIBIT C



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-7000

PRINCIPAL DEPUTY ASSISTANT SECRETARY FOR
COMMUNITY PLANNING AND DEVELOPMENT

March 11, 2025

Ms. Ann Chanecka
Director
City of Tucson
310 N Commerce Park Loop
Santa Rita Building, First Floor
Tucson, AZ  85745

Dear Ms. Chanecka:

Congratulations!  I am delighted to inform you of the funding for your project(s) under the Department of Housing and Urban Development's (HUD) Notice of Funding Opportunity (NOFO) for Fiscal Year (FY) 2024 Continuum of Care (CoC) Competition and Renewal or Replacement of Youth Homeless Demonstration Program Grants for a total of $975,569.

The CoC Program is an important part of HUD's mission. CoCs around the country will continue to improve the lives of people experiencing homelessness through their local planning efforts and through the direct housing and service programs funded under the FY 2024 CoC Program Competition.  Projects like those of your organization, funded through the CoC program, continue to demonstrate their value by improving accountability and performance every year.

The enclosure provides details about your organization's award(s) including: the name(s) of the individual project(s); the project number(s); and the specific amount(s) for each project.  The Department's field office staff will notify you when they are available to process grant agreements; once all conditions are satisfied and the grant agreement is executed, your organization can expend the funds.

HUD commends your organization's work and encourages it to continue to strive for excellence in the fight to end homelessness.

Sincerely,

David C. Woll Jr.
Principal Deputy Assistant Secretary

Enclosure

AZ0210L9T012405

FY24 Tucson/Pima Coordinated Entry Project (SSO-CE)

$636,165

AZ0221Y9T012404

FY24 Transitions PSH

$339,404

Total Amount:        **$975,569**