The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR. COUNTY, *et al.*,

                              Plaintiffs,

        v.

SCOTT TURNER, *et al.,*

                              Defendants.

Case No. 2:25-cv-00814-BJR

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

        Defendants oppose Plaintiffs' second motion for a temporary restraining order (TRO) and preliminary injunction for the same reasons they opposed the first. At bottom, Plaintiffs want to receive federal grant money without having to sign contracts with terms they dislike. This Court lacks jurisdiction to hear these contract disputes, which may be brought only in the Court of Federal Claims. Even if the Court had jurisdiction, the agencies have discretion to add grant agreement terms, and Plaintiffs' dislike for them does not make them unlawful. In light of the Court's desire to streamline these proceedings, and to conserve the Court's and the parties' resources, Defendants file this combined response to Plaintiffs' motion.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## PROCEDURAL BACKGROUND

A group of eight cities and counties—King County, Pierce County, Snohomish County, City and County of San Francisco, County of Santa Clara, City of Boston, City of Columbus, and City of New York (the Original Plaintiffs)—sued the U.S. Department of Housing and Urban Development (HUD), the U.S. Department of Transportation (DOT), and the Federal Transit Administration (FTA), as well as their heads in their official capacities, on May 2, 2025, alleging that some new terms the agencies added to new contracts for federal grants were unlawful. Dkt. 1. Seven of those Original Plaintiffs (excluding the City of Columbus) moved for a TRO on May 5, and the Court held a hearing and granted their motion two days later. Dkts. 5, 51–52. After granting the TRO motion, the Court converted it to a preliminary injunction motion to be heard fourteen days later when the TRO was set to expire. Dkt. 53.

The Court's temporary order restrained the agencies from imposing or enforcing the challenged grant terms or canceling the grants because of the terms. Dkt. 52 at 4. The Original Plaintiffs used that time to try to make the temporary relief permanent. The day after the TRO issued, King County Metro Transit electronically executed all its available FTA grants (Dkt. 57 ¶¶ 16–17), and their counsel emailed FTA staff saying, among other things, "[I]n the event that the TRO expires, the Restrained Conditions will not be imposed or enforced against King County as to any grant or other instrument, document, or record, that may be obligated, executed, or submitted by King County Metro during the period that the TRO was in effect." Dkt. 60 at 181. Because the TRO is, by definition, temporary, counsel for Defendants responded that FTA may enforce the terms once the TRO or any subsequent injunction expires. *Id.* at 179. Similarly, other Plaintiffs, including King County, San Francisco, and Santa Clara, returned redlined grant agreements to HUD and argued the temporary order required HUD to make the grant funds

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

available despite the permanent alterations.[1] *See* Dkt. 56 ¶ 7 (King County and San Francisco); Dkt. 61 at 7, 13, 15 (Santa Clara); Dkt. 58 at 4:14–17.

On May 21, the Court held a hearing on the Original Plaintiffs' preliminary injunction motion. Dkt. 73. At the hearing, the Court indicated it would grant a preliminary injunction in a written order to follow in a few days. *See id.* In the meantime, it found good cause to extend the TRO for up to 14 days. *Id.*

The Original Plaintiffs waited until after the Court issued its oral ruling to announce they planned to amend their complaint to add 23 new plaintiffs with claims against HUD, DOT, and newly added components of DOT: the Federal Highway Administration, the Federal Aviation Administration, and the Federal Railroad Administration, as well as the component heads in their official capacities. The newly added 23 units of local government (the New Plaintiffs) bring the same claims and challenge materially the same contract terms as the Original Plaintiffs. Dkt. 71.[2] They (along with the City of Columbus) also seek a TRO and preliminary injunction, and have filed a combined motion seeking both. Dkt. 72. The Court ordered Defendants to respond to the TRO portion of the motion by May 23 at noon. Dkt. 118. However, to expedite matters, Defendants respectfully submit this opposition in response to the New Plaintiffs' entire combined motion, opposing the issuance of both a TRO and a preliminary injunction.

---

[1] New York City returned signed grant agreements to HUD before filing suit—but added statements in the margins that it did not consent to the terms at issue. Dkt. 56 ¶ 6.

[2] Plaintiffs also allege they expect that FTA's Fiscal Year 2025 Certifications and Assurances will include the grant terms they object to. Dkt. 71 ¶ 175. The Certificates and Assurances have since been published and do not include the terms. *See* https://www.transit.dot.gov/funding/grantee-resources/certifications-and-assurances/certifications-assurances (clean and redlined versions).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ARGUMENT**

Defendants oppose the New Plaintiffs' TRO and preliminary injunction motion for the same reasons they opposed the first and incorporate by reference their submissions in opposition to the Original Plaintiffs' requests for a TRO and preliminary injunction, Dkts. 36, 55–57, 69-1, as well as their oral arguments against both motions.

Additionally, the New Plaintiffs argue they are likely to succeed on a Tenth Amendment claim against DOT based on the DOT Immigration Cooperation Term. Dkt. 72 at 9. That term states the grant recipient agrees to "cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." Dkt. 71 ¶ 172. The New Plaintiffs argue this term violates the principle that the federal government cannot directly require that local governments assist with federal immigration enforcement and cannot "force" them indirectly through federal grant terms. Dkt. 72 at 9.

"[W]hile the federal government may not *compel* them to do so, it may *encourage* States and municipalities to implement federal regulatory programs." *Env't Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 847 (9th Cir. 2003) (emphasis original). It may, for example, make certain federal funds available only to localities that enact a given regulatory regime. *S. Dakota v. Dole*, 483 U.S. 203, 205–08 (1987) (upholding federal statute conditioning state receipt of federal highway funds on state adoption of minimum drinking age of twenty-one). "[A]s long as the alternative to implementing a federal regulatory program does not offend the Constitution's guarantees of federalism, the fact that the alternative is difficult, expensive or otherwise unappealing is insufficient to establish a Tenth Amendment violation." *Env't Def. Ctr.*, 344 F.3d at 847 (quotation

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    omitted). The key is whether the financial inducement is "so coercive as to pass the point at which

2    pressure turns into compulsion." *Dole*, 483 U.S. at 211.

3          The New Plaintiffs' reliance on *National Federation of Independent Business v. Sebelius*,

4    567 U.S. 519 (2012), is unavailing. There, the Supreme Court found parts of the Affordable Care

5    Act to be coercive through a two-step analysis. First, the Court reaffirmed "Congress's authority

6    to condition the receipt of funds on the States' complying with restrictions on the use of those

7    funds, because that is the means by which Congress ensures that the funds are spent according to

8    its view of the 'general Welfare.'" *Id.* at 580. It observed, however, that when conditions on grants

9    "take the form of threats to terminate other significant independent grants," they could constitute

10   unconstitutional "pressure" on the states. *Id.* Accordingly, it determined the Affordable Care Act

11   could violate the Tenth Amendment because, "[i]nstead of simply refusing to grant the new funds

12   to States that will not accept the new conditions, Congress has also threatened to withhold those

13   States' existing Medicaid funds." *Id.* at 579–80. Only after establishing that the conditions in that

14   case threatened other "independent grants" did the Court move on to the second step of its analysis:

15   it examined those threatened grants to determine their significance, and, in the case of the

16   Affordable Care Act, found they were so large as to be highly significant. *Id.*

17         Here, the New Plaintiffs conclusorily argue that conditioning their grant funds is "coercive"

18   under *NFIB*—by eliding *NFIB*'s two analytical steps into one. But their Tenth Amendment claim

19   in fact fails at the first step, because the DOT Immigration Cooperation Term does not threaten

20   any "independent" grant funds: if enforced against any funded program, it will affect only the

21   funds that go to that program. And this first step of the *NFIB* analysis is essential—for without it,

22   any widely used federal condition on state and local funding would be unconstitutional. As of

23   2010, more than one-third of state and local government expenditures came from federal grants.

24   *NFIB*, 567 U.S. at 674 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting). Fifteen years later,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the proportion of state and local budgets that is federally funded remains enormous—as, indeed, Plaintiffs' declarations show. *See, e.g.*, Wagner Decl. ¶ 6 (federal funds make up 16% of San Francisco's total annual operating budget); Walker Decl. ¶ 7 (federal funds constitute around 13% of Pima County's overall budget).

But many grant conditions are widely used across the federal government, and even statutorily required. For instance, since 1964, all federal grants have been conditioned on a promise that the grantee will comply with federal antidiscrimination laws. *See Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629–30 (1983) (Marshall, J., dissenting) (citing 42 U.S.C. § 2000d). And since 1996, federal grants have come with the condition that they cannot be used to confer benefits on undocumented immigrants. *See* 8 U.S.C. § 1611(c)(1)(A). Under the New Plaintiffs' overbroad reading of *NFIB*, all such widely imposed conditions would be unconstitutionally coercive, simply because so much of local governments' funding derives from the federal government. But that is not the law.

Moreover, the New Plaintiffs are simply incorrect when they state that "the federal government cannot do indirectly through coercive grant conditions what it could not do directly." Dkt. 72 at 9 (citing *NFIB*, 567 U.S. at 578). *NFIB* in fact held the exact opposite: that the federal government can, constitutionally, use conditions on federal funds to "induce the States to adopt policies that the Federal Government itself could not impose." *NFIB*, 567 U.S. at 537–38. *See also Dole*, 483 U.S. at 210 (rejecting the argument that the Spending Clause imposes "a prohibition on the indirect achievement of objectives which Congress is not empowered to achieve directly").

The New Plaintiffs are unlikely to succeed on the merits of their Tenth Amendment claim and otherwise fail to meet the exacting standards for emergency relief for the reasons set forth in Defendants' earlier briefing. By way of this streamlined response, Defendants do not admit any of the New Plaintiffs' factual allegations.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

For the reasons set forth above and in Defendants' previous arguments, the Court should deny the New Plaintiffs' motion for a TRO and preliminary injunction. While Defendants anticipate the Court may include the New Plaintiffs in its forthcoming preliminary injunction order, Defendants request that order be secured by a bond and stayed pending a decision whether to appeal and, if appeal is authorized, stayed pending appeal. Defendants further request the order be narrowly tailored and specify it is intended only to restrict for the time being Defendants' enforcement of any enjoined contract terms—and not intended to permanently excise those terms from any grant agreements or incorporated documents, or to require Defendants to fund grants where Plaintiffs have unilaterally removed such terms.

Dated May 23, 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*s/ Brian C. Kipnis*
BRIAN C. KIPNIS

*s/ Annalisa L. Cravens*
ANNALISA L. CRAVENS

*s/ Sarah L. Bishop*
SARAH L. BISHOP
Assistant United States Attorneys
United States Attorney's Office
Western District of Washington
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: 206-553-7970
Fax:    206-553-4067
Email: brian.kipnis@usdoj.gov
          annalisa.cravens@usdoj.gov
          sarah.bishop@usdoj.gov

*Counsel for Defendants*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970