THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

                              Plaintiffs,

vs.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

                              Defendants.

No. 2:25-cv-00814-BJR

ORDER GRANTING PLAINTIFFS'
FIRST AND SECOND MOTIONS
FOR PRELIMINARY INJUNCTION

[PROPOSED]

This matter came before the Court on the initial Motion for Preliminary Injunction ("First

Motion") filed by the original Plaintiffs[1] and the combined Second Motion for Temporary

Restraining Order and Preliminary Injunction ("Second Motion") filed by all Plaintiffs (together,

the "Motions").[2] Having considered the briefs and declarations submitted in support of and in

_____

[1] Plaintiffs Martin Luther King, Jr. County ("King County"), Pierce County, Snohomish County,
City and County of San Francisco ("San Francisco"), County of Santa Clara ("Santa Clara"),
City of Boston ("Boston"), and City of New York ("NYC") filed a Motion for Temporary
Restraining Order (TRO) on May 5, 2025. Dkt. # 5. At the TRO hearing on May 7, 2025, these
Plaintiffs indicated their intent to file a motion for preliminary injunction, and the Court
converted the motion to a Motion for Preliminary Injunction to be heard fourteen days later.
[2] The original Plaintiffs who moved for a preliminary injunction (PI) in the First Motion as to the
CoC Grant Conditions, as further defined below, are: King County, Pierce County, Snohomish
County, San Francisco, Santa Clara, Boston, and NYC (collectively, "Original HUD Plaintiffs").
King County also moved for a PI as to the FTA Grant Conditions, as further defined below, in
the First Motion. The Plaintiffs who moved for a PI in the Second Motion as to the CoC Grant
Conditions are: City of Cambridge ("Cambridge"), King County Regional Homelessness

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

opposition to both Motions, the arguments of counsel at the hearings on May 7 and May 21, 2025, and the other pleadings and papers filed in this action, the Court makes the following Findings of Fact and Conclusions of Law with respect to the portion of the Motions seeking a PI.

## I.    FINDINGS OF FACT

### A.    Continuum of Care Grant Conditions

1.    The HUD Plaintiffs rely on federal funding from the Continuum of Care (CoC) program established by Congress to provide critical services to individuals and families experiencing homelessness, including rapid rehousing, permanent supportive housing, and other services.

2.    In July 2024, Defendant U.S. Department of Housing and Urban Development (HUD) posted a biennial Notice of Funding Opportunity (NOFO), inviting applications from local coalitions, known as "Continuums," for CoC funding. None of the conditions challenged here were included in the NOFO. After reviewing applications, HUD conditionally awarded the HUD Plaintiffs and their Continuums hundreds of millions of dollars in CoC grants in Fiscal Year 2024. Relying on these awards, the HUD Plaintiffs have already committed, and in some cases expended,

Authority ("KCRHA"), Metropolitan Government of Nashville & Davidson County ("Nashville"), City of Pasadena ("Pasadena"), Pima County, City of San José ("San José"), Santa Monica Housing Authority ("Santa Monica HA"), and City of Tucson ("Tucson") (collectively, the "New HUD Plaintiffs" and, together with the Original HUD Plaintiffs, the "HUD Plaintiffs"). The Plaintiffs who moved for a PI in the Second Motion as to the DOT Grant Conditions, as further defined below, are: City of Bend ("Bend"), Boston, City of Chicago ("Chicago"), City of Columbus ("Columbus"), City of Culver City ("Culver City"), City of Denver ("Denver"), Intercity Transit, King County, City of Minneapolis ("Minneapolis"), Nashville, NYC, Pierce County, Pima County, City of Pittsburgh ("Pittsburgh"), Port of Seattle ("Seattle"), City of Portland ("Portland"), San Francisco, San José, Santa Clara, City of Santa Monica ("Santa Monica"), Snohomish County, County of Sonoma ("Sonoma County"), Central Puget Sound Regional Transit Authority ("Sound Transit"), San Francisco County Transportation Authority ("SFCTA"), Treasure Island Mobility Management Agency ("TIMMA"), Tucson, and City of Wilsonville ("Wilsonville") (collectively, "DOT Plaintiffs" and, together with HUD Plaintiffs, "Plaintiffs").

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

millions of dollars for homelessness assistance services.

3.     In March 2025, HUD began presenting the HUD Plaintiffs with CoC grant agreements ("CoC Agreements") containing grant conditions ("CoC Grant Conditions") that were not included in the NOFO or authorized by any statute or regulation, specifically:

   a.  The CoC Agreements state that "[t]his Agreement, the Recipient's use of funds provided under this Agreement . . . , and the Recipient's operation of projects assisted with Grant Funds" are "governed by" not only certain specified statutes, rules, and grant-related documents, but also by "all current Executive Orders . . . ."

   b.  The CoC Agreements require the recipient to certify "it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964." The CoC Agreements also require the recipient to agree that "its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions" for purposes of the False Claims Act (FCA), 31 U.S.C. §§ 3729 et seq. President Donald J. Trump, HUD, and other agencies have confirmed their agenda is to prohibit policies or programs promoting inclusion for people of all races, ethnicities, national origins, sexes, gender identities, or sexual orientations through the guise of enforcing federal nondiscrimination law.

   c.  The CoC Agreements provide that "[n]o state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

illegal immigration or abets policies that seek to shield illegal aliens from deportation."

d.  The CoC Agreements further require the recipient to comply with "applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, other Executive Orders or immigration laws."

e.  The CoC Agreements also provide:

> Subject to the exceptions provided by [the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (PRWORA)], the recipient must use [the Systematic Alien Verification for Entitlements (SAVE) system], or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

f.  The CoC Agreements require the recipient to agree it "shall not use grant funds to promote 'gender ideology,' as defined in [Executive Order] 14168."

g.  The CoC Agreements prohibit the recipient from using grant funds "to fund or promote elective abortions, as required by [Executive Order] 14182, Enforcing the Hyde Amendment."

4.  On May 7, 2025, this Court entered a TRO enjoining Defendants HUD and Scott Turner from, among other things, imposing or enforcing the CoC Grant Conditions, rescinding or canceling the CoC Agreements or withholding funds based on such conditions, or requiring any "certification" or representation related to the those conditions with respect to the Original HUD Plaintiffs. On May 21, 2025, this Court extended the TRO for 14 days pending issuance of a PI. The TRO served, in part, to prevent imminent and irreparable harms that the Original HUD

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 4
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Plaintiffs faced from having to choose between accepting conditions that are likely unlawful or losing hundreds of millions of dollars in federal grant funding, including funding they had already budgeted and were committed to spending and that was necessary to serve vulnerable residents.

5.    Based on the May 7 TRO, many of the Original HUD Plaintiffs signed their CoC Agreements and, in submitting them, provided notice to Defendants that this Court ruled they were enjoined from "imposing or enforcing the CoC Grant Conditions as defined in Plaintiffs' Motion, with respect to any CoC funds awarded to Plaintiffs or members of Plaintiffs' Continuums; (2) rescinding or cancelling the CoC Grant Agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning CoC funds, based on such Grant Conditions; or (3) requiring Plaintiffs to make any 'certification' or other representation related to compliance with the CoC Grant Conditions." The Original HUD Plaintiffs included copies of the Court's May 7 TRO with their submissions. The Original HUD Plaintiffs intend to draw down on their CoC grant funds during the pendency of this litigation. At least one of the Original HUD Plaintiffs signed and returned its CoC Agreement prior to the May 7 TRO, with language rejecting the conditions enjoined by that TRO but otherwise accepting the CoC Agreement.

6.    Notwithstanding that the May 7 TRO enjoined Defendants from "delaying" or "withholding" CoC funds based on the CoC Grant Conditions, HUD has stated that it will not permit the Original HUD Plaintiffs to "draw down their FY 2024 CoC grant funds" if they "changed the grant agreement without HUD authorization," including by excising the CoC Grant Conditions subject to the TRO. Dkt. # 56 at 4.

7.    On May 21, 2025, Plaintiffs filed an Amended Complaint that, among other things, named additional Plaintiffs including the New HUD Plaintiffs. The Original HUD Plaintiffs and the New HUD Plaintiffs assert the same claims and allege materially similar harms with respect to

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 5
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the CoC Grant Conditions.

8.    On May 23, 2025, this Court entered a second TRO enjoining HUD and its officers and agents from taking various actions to impose, enforce, or withhold CoC funds as to Plaintiffs Cambridge and Pasadena and their Continuums based on the CoC Grant Conditions or materially similar terms or conditions. The second TRO also ordered HUD to immediately treat any actions taken to implement the CoC Grant Conditions against those Plaintiffs, including any delays or withholding of funds based on the conditions, as void, and enjoined HUD from retroactively applying the conditions to grant agreements during the effective period of the TRO.

9.    Notwithstanding the May 7 and May 23 TROs, HUD has continued to avoid disbursing CoC funds that have been awarded to the HUD Plaintiffs. Initially, as described above, HUD stated it would not permit any Original HUD Plaintiffs who did not return executed CoC Agreements that were unaltered and that contained without modification the CoC Grant Conditions to draw down funds. According to HUD, this was because, if the May 7 TRO expired and was not replaced by a preliminary or permanent injunction, HUD could then enforce the CoC Grant Conditions against HUD Plaintiffs who executed CoC Agreements before or while the TRO was in place. This Court's May 23 TRO resolved any ambiguity on this point by enjoining HUD from retroactively applying the CoC Grant Conditions.

10.    Nevertheless, HUD proceeded to instruct its regional offices not to process *any* CoC Agreements from any jurisdiction that is participating in this lawsuit, including agreements that were already submitted at the beginning of May. Thus, on May 28, 2025, a HUD regional office informed KCRHA that the office had "been instructed by HQ to place the FY2024 CoC grant agreements on hold for [KCRHA's] Continuum because of the pending litigation." 2d Beckmeyer Decl. ¶¶ 5–6, Ex. A (describing call where HUD indicated it could not "process,

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

forward any agreements to accounting for invoicing, or sign any agreements" and attaching an email that confirms, "We have been instructed by HQ to place the FY2024 CoC grant agreements on hold for the WA-500 Continuum because of the pending litigation."); *see also* Kong Decl. (Santa Clara) ¶ 5 ("HUD Headquarters has directed the field offices not to process any altered grant agreement."). The next day, HUD "update[d]" KCRHA that "HUD is working to comply with the court order and seeking clarity on how the TRO can be implemented in this circumstance," but confirmed that "[c]urrently, the FY2024 grants are still on hold." Witter Decl. ¶ 3 & Ex. A.

11.    HUD is violating the May 7 and May 23 TROs by placing on hold and refusing to process CoC Agreements from jurisdictions that are participating in this lawsuit and by refusing to permit those jurisdictions to draw down their Fiscal Year 2024 CoC grant funds if they changed the grant agreement without HUD authorization by excising the enjoined HUD Grant Conditions.

12.    For similar reasons to those stated in this Court's May 7 and May 23 TROs (Dkt. # 52; Dkt. # 152), the HUD Plaintiffs face immediate and irreparable harms during the pendency of this litigation absent a PI. The HUD Plaintiffs have an immediate need to receive CoC funds to sustain ongoing programs and services and are faced with the choice of losing these funds or accepting conditions that are likely unlawful. The HUD Plaintiffs have begun budgeting, planning, and contracting with service providers, some of whom are already incurring costs and expect reimbursement; households reliant on private rentals are at risk of eviction if there is even a short-term interruption of rent payments covered by CoC funds; and the interruption of funds could threaten the operation of supportive housing. Ultimately, any delay or loss of funding would result in disruption of services and cause irreparable damage to individuals' lives. For example:

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 7
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

a. Without CoC funding, 700 households in King County who live in private rentals would be at risk of eviction in the short term because their rent would not be paid, with 2,144 households impacted in total.

b. In San Francisco, close to 2,000 program participants would lose their housing subsidies and services and would be at risk of imminent evictions, causing individuals and families to slip back into homelessness. Interruption of funding from the CoC program supporting more than 1,400 households is estimated to cost San Francisco $17 million in direct rehousing costs.

c. If unable to access CoC funding conditionally awarded in January 2025, Santa Clara would lose one third of its budget for permanent supportive housing and rapid rehousing and would be forced to choose between redirecting County General Funds away from other services and programs toward programs for the homeless or dramatically cutting the programs, which would lead to higher rates of homelessness.

d. Without CoC funding, over 200 individuals in Cambridge would potentially lose their housing and access to critical supportive services, and the loss of supportive housing capacity would further strain Cambridge's emergency shelter system.

e. KCRHA supports 1,381 households with CoC-funded transitional housing, rapid rehousing, and other related programs. The loss of these funds would lead inevitably to the loss of housing for many of these vulnerable households and, in some instances, their returning to homelessness.

f. Similarly, a loss of CoC funding would place 850 Tucson residents enrolled in

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 8
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

supportive housing programs at immediate risk of displacement—a contingency Tucson has already had to account for by, among other things, operating permanent supportive housing programs below full capacity.

**B.     The DOT Grant Conditions**

13.     The DOT Plaintiffs have billions of dollars in appropriated funds through grant programs administered by the U.S. Department of Transportation (DOT), including DOT acting through its operating administrations the Federal Highway Administration (FHWA), Federal Aviation Administration (FAA), Federal Railroad Administration (FRA), and Federal Transit Administration (FTA) (collectively, the "DOT OAs," and together with Defendants DOT, Sean Duffy, Tariq Bokhari, Gloria M. Shepherd, Chris Rocheleau, and Drew Feeley, the "DOT Defendants").

14.     On April 24, 2025, DOT Secretary Sean Duffy issued a letter to "all recipients" of DOT grant funding announcing, among other things, a DOT "policy" to impose certain conditions on all DOT funding, including grants administered by DOT and the DOT OAs. In particular, Secretary Duffy's letter states that grant recipients' "legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." It also states that DOT interprets federal anti-discrimination law to presumptively prohibit "any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called 'diversity, equity, and inclusion' . . . goals." Finally, the letter states that "DOT recipients are prohibited from engaging in discriminatory actions in their own policies, programs, and activities."

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 9
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

15.     Pursuant to the policy set forth in Secretary Duffy's letter, the DOT Defendants began attaching new conditions related to immigration enforcement, executive orders, and diversity, equity, and inclusion (DEI) to DOT-funded grants.

16.     For instance, several DOT Plaintiffs were previously awarded FTA funds pursuant to programs codified in title 49, chapter 53 of the U.S. Code. These funds were awarded without any of the conditions challenged here.

17.     On April 25, 2025, FTA issued a revised Master Agreement, which applies to FTA grants awarded to the DOT Plaintiffs. The new Master Agreement contains the following new conditions ("FTA Grant Conditions"):

    a.   The FTA Master Agreement requires the recipient to "agree[] to comply with all applicable federal requirements and follow applicable federal guidance." The Master Agreement defines "Federal Requirement" to include "[a]n applicable federal law, regulation, or executive order."

    b.   The FTA Master Agreement provides:

> (1) Pursuant to section (3)(b)(iv)(A) [of Executive Order 14173], the Recipient agrees that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of [the FCA].

> (2) Pursuant to section (3)(b)(iv)(B) [of Executive Order 14173], by entering into this Agreement, the Recipient certifies that it does not operate any programs promoting [DEI] initiatives that violate any applicable Federal anti-discrimination laws.

While FTA grants have long required compliance with nondiscrimination laws, DOT has confirmed its intent to enforce a sweeping interpretation of these conditions inconsistent with statutory text and current court interpretations of the Federal antidiscrimination laws.

    c.   The FTA Master Agreement also provides:

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 10
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

> The Recipient . . . will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

18.    This Court's May 7 TRO enjoined Defendants DOT, FTA, Sean Duffy, and Mathew Welbes from, among other things, imposing or enforcing the FTA Grant Conditions, rescinding or canceling FTA funds or withholding funds based on such conditions, or requiring any "certification" or representation related to the those conditions as to King County—the sole Plaintiff to initially seek preliminary relief from the FTA Grant Conditions. This aspect of the TRO served, in part, to prevent immediate and irreparable harms that King County faced from having to choose between accepting likely unlawful conditions or losing hundreds of millions in FTA funding.

19.    In recent weeks, DOT and the remaining DOT OAs have attached substantially similar conditions to numerous other DOT grants. These include programs administered by FHWA, such as the Safe Streets and Roads for All (SS4A) program, the Federal Highway-Aid Program, the Bridge Investment Program, the Culvert Aquatic Organism Passage Program, and the Advanced Transportation Technology and Innovation (ATTAIN) program; programs administered by FAA, such as the Airport Infrastructure Grants (AIG) program; programs administered by FRA, such as the Railroad Crossing Elimination (RCE) Grant Program; and programs administered directly by DOT, such as the Strengthening Mobility and Revolutionizing Transportation (SMART) discretionary grant program. Moreover, Defendants Duffy, DOT, and the DOT OAs have made clear that these conditions will now appear in all DOT grants going forward.

20.    DOT and the remaining DOT OAs have provided grant agreements governing grant

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

programs that contain substantially the same three conditions as in the FTA Master Agreement (collectively and together with the FTA Grant Conditions, the "DOT Grant Conditions"):

a.  First, the DOT Defendants have imposed a discrimination condition ("DOT Discrimination Condition") that requires grant recipients, "[p]ursuant to Section (3)(b)(iv), Executive Order 14173" to agree that "its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of [the False Claims Act]," and that "it does not operate any programs promoting [DEI] initiatives that violate any applicable Federal anti-discrimination laws."

b.  Second, the DOT Defendants have imposed an immigration enforcement condition ("DOT Immigration Enforcement Condition") that requires recipients to "cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law."

c.  Third, the DOT Defendants have imposed a condition ("DOT EO Condition") that requires recipients to "comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this [grant]" and lists, among other things, Executive Orders 14168 ("Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government") and 14173 ("Ending Illegal Discrimination and Restoring Merit-

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Based Opportunity"), as well as two criminal immigration statutes (8 U.S.C. § 1324 and 8 U.S.C. § 1327) as "provisions" that are "applicable" to grant agreements.

21.    After the May 7 TRO issued, King County electronically executed FTA grant agreements and amendments and then emailed FTA clarifying that, in doing so, King County was relying on the TRO's prohibition on imposing or enforcing the FTA Grant Conditions and that King County understood those conditions would not be applied against it. FTA responded indicating that "when the TRO (or any subsequent injunctive order) expires, FTA may treat the Restrained Conditions like any other part of an agreement, regardless of whether the agreement was signed while the TRO was in effect." Suppl. Morrison Decl., Ex. C. FTA has represented that King County's execution of these agreements and amendments "accepted the terms of the Master Agreement, subject to the limitations set forth" in the TRO. Dkt. # 57 ¶ 16. Despite this, FTA has taken the position that despite King County's accepting its pending grants subject to the limitations set forth in the TRO, King County is bound by the FTA Grant Conditions, Dkt. #57 ¶ 16-17.

22.    This Court's May 23 TRO enjoined DOT, the DOT OAs, and their officers and agents from taking various actions to impose, enforce, or withhold DOT funds as to Plaintiffs Columbus, Intercity Transit, King County, Minneapolis, NYC, Port of Seattle, and Tucson or their subrecipients based on the DOT Grant Conditions or materially similar terms or conditions. The May 23 TRO also ordered DOT and the DOT OAs to immediately treat any actions taken to implement the DOT Grant Conditions against those Plaintiffs, including any delays or withholding of funds based on the conditions, as void, and enjoined DOT and the DOT OAs from retroactively applying the conditions to grant agreements during the effective period of the TRO.

23.    For similar reasons to those stated in this Court's May 7 and May 23 TROs (Dkt. #

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 13
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

52; Dkt. # 152), the DOT Plaintiffs face immediate and irreparable harms during the pendency of this litigation absent a preliminary injunction. Any delay or loss of DOT funding would force the DOT Plaintiffs to substantially curtail existing and planned transportation safety and other improvement operations, including enhancing pedestrian safety, conducting airport safety and resiliency improvements, maintaining and replacing a range of transit vehicles, and implementing advanced transportation technology. In some cases, the DOT Plaintiffs need to draw down grant awards immediately or else divert resources from other projects or services and face significant project delays. The loss of DOT funding would require the DOT Plaintiffs to fundamentally rework their longstanding financial plans and procedures, capital project delivery processes, and service delivery models in ways that could have significant impacts on their missions, employees, and constituents. Given the significance of the impacts, the uncertainty surrounding continued DOT funding is already causing the DOT Plaintiffs harm. To give just a few examples:

a.  The loss of FTA funding would cause King County to substantially curtail its existing and near-future planned transit operations and entirely abandon some elements of its structure. King County would have to fundamentally rework its longstanding financial plans and procedures, capital project delivery process, and service delivery models in ways that could have significant impacts on the County's mission, its employees, and its riders. Its service network would likely have to be cut back in ways that could significantly reduce mobility options for a large portion of King County's population while potentially increasing traffic congestion and slowing the movement of freight and goods across the region.

b.  A loss of FHWA funding would require Nashville to immediately delay, and ultimately postpone indefinitely, pedestrian and driver safety improvements to

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 14
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Nolensville Pike, a major thoroughfare that has experienced scores of fatalities in recent years. Such a delay or postponement would result in increased safety risks to Nashville residents and likely additional traffic accidents and fatalities.

c.  San Francisco Municipal Transit Agency (SFMTA) is relying on $94.8 million in formula grants from FTA to replace legacy light rail vehicles that are at the end of their useful lives. Even the possibility of being unable to execute this grant is undermining SFMTA's ability to plan for the completion of this project, which is already under contract, as replacing the remaining vehicles would require diverting resources from other necessary work.

d.  A loss of FAA funding would force King County to indefinitely postpone grant-funded projects that are already underway at King County International Airport, including rehabilitation of its secondary runway and taxiway, which, according to the FAA, are currently out of compliance with FAA requirements. Postponing or canceling these projects would lead to continued deterioration of airport infrastructure.

e.  San José and other stakeholders have already invested substantial time and resources into a project to install traffic signals in reliance on $1.2 million in FRA funds. A loss of FRA funding would force San José to divert funds from other critical work to keep the project afloat because canceling the project would entail losing all of San José's existing investment in the project, including $381,956 in reimbursements San José has paid to Union Pacific. San José has no alternative sources of funding available.

f.  Finally, uncertainty as to the availability of already-awarded DOT funds is

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

negatively impacting plans Minneapolis developed for a DOT SMART grant project to create digital tools to better manage curb space. Loss of DOT SMART funds would require eliminating the project, resulting in worsened safety risks, deterioration of air quality, and inefficiencies due to increasing competition for limited curb space related to rideshares, food-delivery services, e-commerce, and parking demands. Without clarity as to the availability of funds, Minneapolis has had to delay hiring personnel and purchasing equipment needed to complete the project.

## II.    CONCLUSIONS OF LAW

1.    The Court has jurisdiction over Defendants and the subject matter of this action. Plaintiffs' claims are not subject to the Tucker Act because the sources of their asserted rights are the U.S. Constitution and statutes, including the Separation of Powers doctrine, the Spending Clause, the Fifth Amendment's vagueness doctrine, the Tenth Amendment, and the Administrative Procedure Act (APA). Moreover, the type of relief Plaintiffs seek is declaratory and injunctive, precisely the kind of relief that is generally not available in the Court of Federal Claims. *See Doe v. Tenet*, 329 F.3d 1135, 1141 (9th Cir. 2003).

2.    The Court deems no security bond is required under Rule 65(c).

3.    Plaintiffs have standing to bring this suit. "A loss of funds promised under federal law satisfies Article III's standing requirement." *City & Cnty. of S.F. v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019). Here, Plaintiffs have been awarded or conditionally awarded federal grant funds that they could lose unless they accept unlawful conditions that would dictate how they govern on matters of public concern. This imminent loss of funds or infringement of rights is traceable to the

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 16
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

conditions at issue and redressable by an order barring their enforcement. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

4.      To obtain a preliminary injunction, the Plaintiffs must establish (1) they are likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65(b)(1).

5.      There is a strong likelihood that the HUD Plaintiffs will succeed on the merits of their claims that the CoC Grant Conditions violate (1) the Constitution's separation of powers doctrine, *San Francisco*, 897 F.3d at 1234; (2) the Spending Clause, *S. Dakota v. Dole*, 483 U.S. 203, 207–08 (1987); (3) the Fifth Amendment's vagueness doctrine; and (4) the APA, 5 U.S.C. § 706(2).

6.      There is a strong likelihood that the DOT Plaintiffs will succeed on the merits of their claims that the DOT Grant Conditions violate (1) the Constitution's separation of powers doctrine, *San Francisco*, 897 F.3d at 1234; (2) the Spending Clause, *Dole*, 483 U.S. at 207–08; (3) the Fifth Amendment's vagueness doctrine; (4) the Tenth Amendment, *Nat'l Fed'n of Indep. Bus. v. Sebelius* ("*NFIB*"), 567 U.S. 519, 577–78 (2012); and (5) the APA, 5 U.S.C. § 706(2).

7.      The HUD Plaintiffs and the DOT Plaintiffs have also shown that they are likely to suffer irreparable harm during the pendency of litigation in the absence of a preliminary injunction.

8.      The balance of equities tips toward the HUD Plaintiffs and the DOT Plaintiffs and the public interest strongly weighs in favor of entering a preliminary injunction.

### III.      ORDER

It is now, therefore, ORDERED as follows:

1.      Plaintiffs' Motion for Preliminary Injunction is GRANTED;

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

2.      Plaintiffs' Second Motion for Preliminary Injunction is GRANTED;

3.      HUD and its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined HUD Parties"), are enjoined from (1) imposing or enforcing the CoC Grant Conditions, as defined in the Motions, or any materially similar terms or conditions with respect to any CoC funds awarded to the HUD Plaintiffs or members of their Continuums; (2) as to the HUD Plaintiffs, rescinding, withholding, cancelling, or otherwise not processing any CoC Agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning CoC funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objection to conditions enjoined by this preliminary injunction; (3) requiring the HUD Plaintiffs to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign CoC Agreements based on HUD Plaintiffs' participation in this lawsuit;

4.      The Enjoined HUD Parties shall immediately treat any actions taken to implement or enforce the CoC Grant Conditions or any materially similar terms or conditions as to the HUD Plaintiffs or their Continuums, including any delays or withholding of funds based on such conditions, as null, void, and rescinded; while this PI or the previous TROs are in effect, shall treat as null and void any such conditions included in any grant agreement executed by any Plaintiff or member of a Plaintiff Continuum; and may not retroactively apply such conditions to grant agreements during the effective period of this PI or the previous TROs. The Enjoined HUD Parties shall immediately take every step necessary to effectuate this order, including clearing any administrative, operational, or technical hurdles to implementation;

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 18
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

5.      DOT, the DOT OAs, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined DOT Parties"), are enjoined from (1) imposing or enforcing the DOT Grant Conditions, as defined in the Motions, or any materially similar terms or conditions to any DOT funds awarded, directly or indirectly, to the DOT Plaintiffs or their subrecipients; (2) as to the DOT Plaintiffs or their subrecipients, rescinding, withholding, cancelling, or otherwise not processing the DOT grant awards, or pausing, freezing, impeding, blocking, canceling, terminating, delaying, withholding, or conditioning DOT funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objection to conditions enjoined by this preliminary injunction; (3) requiring the DOT Plaintiffs or their subrecipients to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign grant agreements based on DOT Plaintiffs' participation in this lawsuit;

6.      The Enjoined DOT Parties shall immediately treat any actions taken to implement or enforce the DOT Grant Conditions or any materially similar terms or conditions as to DOT funds awarded, directly or indirectly, to the DOT Plaintiffs or their subrecipients, including any delays or withholding of funds based on such conditions, as null, void, and rescinded; while this PI or the previous TROs are in effect, shall treat as null and void any such conditions included in any grant agreement executed by any DOT Plaintiff or subrecipient; and may not retroactively apply such conditions to grant agreements during the effective period of this PI or the previous TROs. The Enjoined DOT Parties shall immediately take every step necessary to effectuate this order, including clearing any administrative, operational, or technical hurdles to implementation;

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

7.      Defendants' counsel shall provide written notice of this Order to all Defendants and their employees by the end of the second day after issuance of this Order;

8.      By the end of the second day after issuance of this Order, the Defendants SHALL FILE on the Court's electronic docket and serve upon Plaintiffs a Status Report documenting the actions that they have taken to comply with this Order, including a copy of the notice and an explanation as to whom the notice was sent;

9.      This order remains in effect pending further orders from this Court.


Dated this ___ day of _____, 2025.


_____
HONORABLE BARBARA J. ROTHSTEIN

Presented by:

PACIFICA LAW GROUP LLP

*/s/ Paul J. Lawrence*
Paul J. Lawrence, WSBA #13557
Jamie Lisagor, WSBA #39946
Sarah S. Washburn, WSBA #44418
Meha Goyal, WSBA #56058
Luther Reed-Caulkins, WSBA #62513

*Attorneys for All Plaintiffs*

LEESA MANION
King County Prosecuting Attorney

*/s/ David J. Hackett*
David J. Hackett, WSBA #21234
Alison Holcomb, WSBA #23303
Erin Overbey, WSBA #21907
Cristy Craig, WSBA #27451
Donna Bond, WSBA #36177

*Attorneys for Plaintiff Martin Luther
King, Jr. County*

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 20
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

JASON J. CUMMINGS
Snohomish County Prosecuting Attorney

*/s/ Bridget E. Casey*
Bridget E. Casey, WSBA #30459
Rebecca J. Guadamud, WSBA #39718
Rebecca E. Wendling, WSBA #35887

*Attorneys for Plaintiff Snohomish County*
DAVID CHIU
San Francisco City Attorney

*/s/ David Chiu*
David Chiu (CA Bar No. 189542)
Yvonne R. Meré (CA Bar No. 175394)
Mollie M. Lee (CA Bar No. 251404)
Sara J. Eisenberg (CA Bar No. 269303)
Ronald H. Lee (CA Bar No. 238720)
Alexander J. Holtzman (CA Bar No. 311813)

*Attorneys for Plaintiffs City and County of*
*San Francisco, San Francisco County*
*Transportation Authority, and Treasure*
*Island Mobility Management Agency*

OFFICE OF THE COUNTY COUNSEL,
COUNTY OF SANTA CLARA

*/s/ Tony LoPresti*
Tony LoPresti (CA Bar No. 289269)
Kavita Narayan (CA Bar No. 264191)
Meredith A. Johnson (CA Bar No. 291018)
Stefanie L. Wilson (CA Bar No. 314899)
Cara H. Sandberg (CA Bar No. 291058)

*Attorneys for Plaintiff County of Santa Clara*

ADAM CEDERBAUM
Corporation Counsel, City of Boston

*/s/ Samantha H. Fuchs*
Samantha H. Fuchs (MA BBO No. 708216)
Samuel B. Dinning (MA BBO No. 704304)

*Attorneys for Plaintiff City of Boston*

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 21
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY

*/s/ Richard N. Coglianese*
Richard N. Coglianese (OH Bar No. 0066830)

*Attorney for Plaintiff City of Columbus*
PUBLIC RIGHTS PROJECT

*/s/ Sharanya Mohan*
Sharanya (Sai) Mohan (CA Bar No. 350675)
Naomi Tsu (OR Bar No. 242511)
Toby Merrill (MA Bar No. 601071)

*Counsel for Plaintiffs City of Columbus, City
& County of Denver, Metro Government of
Nashville & Davidson County, Pima County,
County of Sonoma, City of Bend, City of
Cambridge, City of Chicago, City of Culver
City, City of Minneapolis, City of Pasadena,
City of Pittsburgh, City of Portland, City of
San José, City of Santa Monica, City of
Tucson, City of Wilsonville, and Santa Monica
Housing Authority*


MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York

*/s/ Doris Bernhardt*
Doris Bernhardt (NY Bar No. 4449385)
Joshua P. Rubin (NY Bar No. 2734051)
Aatif Iqbal (NY Bar No. 5068515)

*Attorneys for Plaintiff City of New York*


ASHLEY M. KELLIHER
DAVID P. STEINBERGER
Assistant City Attorneys

*/s/ Ashley M. Kelliher*
Ashley M. Kelliher (CO Bar No. 40220)
David P. Steinberger (CO Bar No. 48530)

*Attorneys for Plaintiff City and County of Denver*

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

LAURA CONOVER
Pima County Attorney

*/s/ Bobby Yu*
Samuel E. Brown (AZ Bar No. 027474)
Bobby Yu (AZ Bar No. 031237)
Kyle Johnson (AZ Bar No. 032908)

*Attorneys for Plaintiff Pima County*


ROBERT H. PITTMAN, County Counsel

*/s/ Joshua A. Myers*
Joshua A. Myers (CA Bar No. 250988)

*Attorneys for Plaintiff County of Sonoma*


OFFICE OF THE CITY ATTORNEY
FOR THE CITY OF BEND

*/s/ Ian M. Leitheiser*
Ian M. Leitheiser (OSB #993106)
Elizabeth Oshel (OSB #104705)
Michael J. Gaffney (OSB #251680)

*Attorneys for Plaintiff City of Bend*


CITY OF CAMBRIDGE, LAW DEPARTMENT
MEGAN B. BAYER, CITY SOLICITOR

*/s/ Megan B. Bayer*
Megan B. Bayer (MA BBO No. 669494)
Elliott J. Veloso (MA BBO No. 677292)
Diane Pires (MA BBO No. 681713)

*Attorneys for Plaintiff City of Cambridge*


MARY B. RICHARDSON-LOWRY
Corporation Counsel of the City of Chicago

*/s/ Rebecca Hirsch*
Rebecca Hirsch (IL Bar No. 6279592)*

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 23
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Chelsey Metcalf (IL Bar No. 6337233)*

2    *Attorneys for Plaintiff City of Chicago*

3    KRISTYN ANDERSON
4    City Attorney

5    */s/ Kristyn Anderson*
6    Kristyn Anderson (MN Lic. 0267752)
     Sara J. Lathrop (MN Lic. 0310232)
7    Munazza Humayun (MN Lic. 0390788)

8    *Attorneys for Plaintiff City of Minneapolis*

9    KRYSIA KUBIAK, Esq.
10   City Solicitor

11   */s/ Julie E. Koren*
     Julie E. Koren (PA Bar No. 309642)
12
13   *Counsel for Plaintiff City of Pittsburgh*

14   ROBERT TAYLOR
15   Portland City Attorney

16   */s/ Caroline Turco*
     Caroline Turco (OR Bar No. 083813)
17
     *Attorney for Plaintiff City of Portland*
18
19   NORA FRIMANN
     City Attorney
20
21   */s/ Nora Frimann*
     Nora Frimann (CA Bar No. 93249)
22   Elisa Tolentino (CA Bar No. 245962)
23   *Attorneys for Plaintiff City of San José*

24   CITY OF WILSONVILLE
25
     */s/ Amanda R. Guile-Hinman*
26   Amanda R. Guile-Hinman, WSBA #46282

27   *Attorneys for the City of Wilsonville*

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 24
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY

*/s/ Andrés Muñoz*
Andrés Muñoz, WSBA #50224
Desmond Brown, WSBA #16232

*Attorneys for the Central Puget Sound
Regional Transit Authority*

LAW, LYMAN, DANIEL, KAMERRER
& BOGDANOVICH, P.S.

*/s/ Jeffrey S. Myers*
Jeffrey S. Myers, WSBA #16390
Erin L. Hillier, WSBA #42883
Jakub Kocztorz, WSBA #61393

*Attorneys for Plaintiff Intercity Transit*

PORT OF SEATTLE
Anderson & Kreiger LLP

*/s/ Melissa C. Allison*
Melissa C. Allison (MA Bar No. 657470)
David S. Mackey (MA Bar No. 542277)
Christina S. Marshall (MA Bar No. 688348)

*Attorneys for Plaintiff Port of Seattle*

KING COUNTY REGIONAL
HOMELESSNESS AUTHORITY

*/s/ Edmund Witter*
Edmund Witter, WSBA #52339

*Attorneys for Plaintiff King County Regional
Homelessness Authority*

        * Pro Hac Vice application forthcoming

ORDER GRANTING PLAINTIFFS' FIRST AND SECOND
MOTIONS FOR PRELIMINARY INJUNCTION - 25
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750