THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

                            Plaintiffs,

        v.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

                            Defendants.

No. 2:25-cv-00814-BJR

DECLARATION OF TONI
ESPARZA

I, TONI ESPARZA declare as follows:

1.      I am over the age of eighteen, competent to testify, and make this declaration

based on my personal knowledge and on my review of relevant business records.

**Background**

2.      I am the Assistant Director of the Parks & Community Services Department for

the City of Bellevue (Bellevue). My duties include overseeing the Human Services Division,

which is in the Parks & Community Services Department. The Human Services Division

receives Federal funding through the Community Development Block Grant (CDBG)

Entitlement Program administered by the US Department of Housing and Urban Development

(HUD). I have served in this role for seven years. Prior to my current role, I spent more than 20

years working in human services and education non-profits, serving low- and moderate-income

DECLARATION OF TONI ESPARZA - 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1  individuals.  My 27+ years of experience have focused on ensuring community members in need

2  can access the services necessary to thrive.

3      3.      Bellevue, through its Human Services Division, helps to ensure that the basic

4  needs of Bellevue residents are met by providing human services to the community, including

5  basic human needs for survival, finding and retaining gainful employment, support in times of

6  personal and family crisis, assistance in overcoming family or individual problems, support for

7  older adults and individuals with disabilities, services for children and youth, and help in gaining

8  access to available, appropriate services.  Bellevue's Human Services Division meets its

9  community's needs in four primary ways: as planner to assess and anticipate needs and develop

10  appropriate policy and program responses; as facilitator to convene and engage others in

11  community problem-solving to develop and improve services; as educator to increase

12  understanding of the needs of the community; and as funder to disburse funds to support a

13  network of services that respond to community needs.

14      4.      Low- and moderate-income households make up 23.8% of Bellevue's 59,800

15  households.  31.8% of Bellevue households are cost-burdened, meaning that those households

16  pay more than 30% of their income toward housing expenses and face higher risk of housing

17  instability, eviction, and homelessness.  Low- and moderate-income Bellevue residents are cost-

18  burdened at much higher rates.  74% of households earning 0-50% AMI are cost-burdened. 63%

19  of households earning 51-80% AMI are cost-burdened. Bellevue faces a current shortage of

20  approximately 5,000 units of affordable housing.  An estimated 8.3% of Bellevue residents have

21  incomes below the Federal poverty level.

22  **Bellevue's reliance on the CDBG Entitlement Program**

23      5.      To help meet the basic needs of its low- and moderate-income residents,

DECLARATION OF TONI ESPARZA - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Bellevue's Human Services Division relies upon the receipt of Federal funding from the CDBG Entitlement Program. The program is authorized under Title 1 of the Housing and Community Development Act of 1974, Public Law 93-383, as amended; 42 U.S.C. 5301 et seq. The CDBG Entitlement Program provides annual grants to entitled states, cities and counties to develop viable urban communities by providing decent housing and a suitable living environment, and by expanding economic opportunities, principally for low- and moderate-income persons. This is a non-competitive formula-based grant program which distributes funds to states, cities, and counties based upon specific parameters set by Congress. This statutory formula uses several objective measures of community needs, including the extent of poverty, population, housing overcrowding, age of housing and population growth lag in relationship to other metropolitan areas to determine grant amounts.

6. For over 50 years, Bellevue has relied upon funding from the CDBG Entitlement Program to help meet the basic needs of its low- and moderate-income residents. The CDBG Entitlement Program is an integral part of Bellevue's financial planning and budget and provides funding for Human Services Division staffing and project implementation to accomplish HUD National Objectives, including funding for critical programs that help to meet the basic needs of low- and moderate-income Bellevue residents.

7. During Bellevue's biennial budget process in 2024, based on the formula for determining funding allocations under the CDBG Entitlement Program and continuous receipt of funding under this program for over 50 years, Bellevue reasonably relied upon the expectation that it would continue to receive funding in 2025 under the same or similar terms as in the past, and budgeted for the use of an estimated $800,000-900,000 in 2025 CDBG Entitlement Program funding. Bellevue is relying upon these funds to be used in the approximate amounts below for

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the following purposes:

    a.  $269,000 on Bellevue's Home Repair Assistance program (Home Repair Program), which provides low- and moderate-income Bellevue homeowners with zero-interest deferred loans and grants for home repairs related to health and safety issues.  The Home Repair program serves approximately 30 households annually, primarily older adults.

    b.  $264,000 on Bellevue's Microenterprise Business Assistance program (Microenterprise Program), which provides funding to four organizations that support low- and moderate-income small business owners.  Under the Microenterprise Program, these organizations will support approximately 75 low-and moderate-income small business owners and their 75 businesses.

    c.  $140,000 on public services (Public Services) to unhoused individuals in the community by providing funding to a non-profit homeless shelter.

    d.  $200,000 on Human Services Division administration and planning (Administration) to help administer and support the CDBG-funded programs, identify human services needs of the community, and complete HUD planning requirements including the Five Year Consolidated Plan, Annual Action Plan, and Consolidated Annual Performance Evaluation Report (CAPER).

8.    On May 14, 2025, HUD notified Bellevue that it would be entitled to receive $879,477 under the CDBG Entitlement Program of the 2025 Fiscal Year. To receive this funding, the following must occur: (1) Bellevue must submit a Consolidated Plan (a five-year

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

plan which describes community outreach, needs, resources, priorities and proposed activities to be undertaken with respect to HUD programs) with certifications, (2) HUD must approve the Consolidated Plan, (3) Bellevue must execute a grant agreement provided by HUD. Bellevue submitted its Consolidated Plan and certifications on May 30, 2025. As of the date of this Certification, HUD has not yet approved Bellevue's Consolidated Plan but Bellevue expects that its Plan meets HUD requirements and that HUD will be providing a grant agreement for its 2025 Entitlement Program funding.

**New conditions expected to be imposed on CDBG Entitlement Program**

9.     After Bellevue submitted its Consolidated Plan, HUD notified Bellevue on June 13, 2025, that one of the certification forms (Form 424B) was updated and requires resubmission by July 13, 2025. This updated form includes a new term, requiring that the applicant "[w]ill not use Federal funding to promote diversity, equity, and inclusion (DEI) mandates, policies, programs, or activities that violate any applicable Federal anti-discrimination laws." As of the date of this Declaration, Bellevue has not yet submitted this updated form.

10.     On July 9, 2025, HUD directed Bellevue to take certain actions to modify its Consolidated Plan and provide additional assurances by noon on July 10, 2025, or face disapproval of its Plan (**Exhibit A**). The actions directed to modify the Plan include: "Remove or replace all 'equity' references throughout the document and replace with 'activities and actions that do not violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964'"; and "Replacing all 'immigrant' and 'migrant' references with 'legal/documented migrant/immigrant'." The additional assurances directed to be included state requirements that Bellevue shall administer grant funds with "all applicable immigration restrictions and requirements," which broadly include: "any applicable requirements" set by

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

HUD, the Attorney General's Office, and executive orders; requirements to not use funding to "facilitate the subsidization or promotion of illegal immigration;" and requirements to use SAVE or an equivalent verification system approved by the federal government to prevent grant funds from being provided to an ineligible alien.

11.      Bellevue expects that HUD will provide a grant agreement for its 2025 CDBG Entitlement Program funding that requires compliance with new conditions as set forth in information provided by HUD, in its General Administrative, National, and Departmental Policy Requirements and Terms for HUD's Financial Assistance Programs dated April 22, 2025 (**Exhibit B**) and an advisory letter to the Council of State Community Development Agencies and National Community Development Association dated June 5, 2025 (**Exhibit C**).  The terms of the updated Form 424B (as referenced in Paragraph 9 herein), Exhibit A, Exhibit B, and Exhibit C are referred to collectively herein as "New Conditions".

12.      These New Conditions included terms that have never before been included in grant agreements for the CDBG Entitlement Program, do not bear any direct correlation to the purpose of the CDBG Entitlement Program or HUD's National Objectives, and/or are not expressly authorized by the Federal statute authorizing the program, 42 U.S.C. 5301 et seq., or the Federal regulations setting forth the policies and procedures for making grants under this program, 24 CFR Part 570 Subpart D.

13.      These New Conditions present significant challenges for Bellevue.  For example, the immigration verification conditions require Bellevue to use the SAVE system or an equivalent verification system approved by the Federal government. Bellevue has never been asked to verify immigration status in the past to administer CDBG funds and does not have access to SAVE or an equivalent verification system from the Federal government.

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

14.     Furthermore, certain New Conditions such as the requirements that Federal funds not be used to "promote gender ideology," to "promote illegal immigration," or for "illegal DEI" are vague and could be interpreted to prohibit lawful activities that provide critical services to individuals, or require the administration of Bellevue programs funded by the CDBG Entitlement Program in a manner inconsistent with Federal or State anti-discrimination laws and Bellevue City Code and policies.  In compliance with CDBG Entitlement Program regulations, 24 CFR 91.225(b), Bellevue has certified that it will use funds in compliance with the requirements of anti-discrimination laws and certified that that the grant will be conducted and administered in conformity with Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d) and the Fair Housing Act (42 U.S.C. 3601-3619).  The meanings of "promote gender ideology" "promote illegal immigration," or for "illegal DEI" are vague and appear to go beyond existing Federal nondiscrimination requirements.  The New Conditions also appear to conflict with the Washington Law Against Discrimination, RCW 49.60.030.  These New Conditions also appear to be contrary to City Policy.  One of Bellevue's six core values is: "We create an inclusive and equitable community where everyone feels valued, respected and empowered to thrive.  We create an environment where everyone feels a sense of belonging, and experiences equitable treatment. We value the unique perspectives, backgrounds and identities of all individuals, ensuring that everyone has an opportunity to thrive and contribute to our community. We promote inclusivity, respect and fairness in every aspect of our operations, services and interactions."

**Negative impacts of losing CDBG Entitlement Program funding**

15.     Bellevue relies upon CDBG Entitlement Program funding.  If Bellevue does not receive the $879,477 in funding that it is entitled to for the 2025 Fiscal year, Bellevue and its

DECLARATION OF TONI ESPARZA - 7
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

community partners and residents will face immediate and irreparable harm.

16.     Of the funds budgeted for use in 2025 based upon anticipated funding from the CDBG Entitlement Program, Bellevue has already expended approximately $147,508.  Bellevue is relying upon CDBG Entitlement Program funding to pay for these expenditures and does not have another source of funding budgeted to cover these expenditures.

17.     Bellevue utilizes CDBG Entitlement Program funding to meet the HUD National Objective of providing benefit to low- and moderate-income persons.  Without this Federal funding, Bellevue does not have another funding source to sustain the programs that were promised this funding.  Low- and moderate-income individuals would suffer the effects of the reductions of these programs.

18.     CDBG Entitlement Program funds have been used to operate Bellevue's Home Repair Program in partnership with the King County Housing Authority since 1978, serving approximately 30 Bellevue households each year. Without this Federal funding, Bellevue's Home Repair Program would likely need to be terminated with the majority of the impacts being felt by low- and moderate-income older adults living in unsafe conditions.  Should Bellevue's Home Repair Program be forced to close, it would be a loss of 50-year-old program infrastructure that would have to be rebuilt should funding ever resume or be replaced.

19.     In 2025, CDBG Entitlement Program funds were also promised to support four community partner organizations through Bellevue's Microenterprise Program, which in total would support 75 low- and moderate-income small business owners and their 75 businesses. The Microenterprise Program would likely close without another funding source.  This would impact the low- and moderate-income small business owners and their employees.  The lack of support for these small business owners and their businesses could lead to challenges that would have an

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

economic impact for the community.

20.     In 2025, 15% of Bellevue's anticipated CDBG Entitlement Program funds were also promised for Public Services by providing funding to a shelter serving individuals experiencing homelessness.  Without this Federal funding, the shelter would be faced with making program reductions, which could include a reduction in the supportive services that help individuals move from being unsheltered to finding housing.  King County Regional Homelessness Authority recently published the 2024 Point In Time Count report, which indicated that homelessness across the County is increasing.  A reduction in services to individuals experiencing homelessness in Bellevue could lead to more individuals living unsheltered which has impacts on the entire city.

21.     Bellevue also anticipated using 20% of CDBG Entitlement Program funds for planning and administration of its CDBG program.  Without this Federal funding, at least one staff position would likely be eliminated and Bellevue's capacity to evaluate community need and plan for response would be greatly reduced.

22.     In addition to impacts to these specific Bellevue programs, there would be impacts to the six community partner organizations that were promised funding by Bellevue in 2025 based upon anticipated CDBG Entitlement Program funding. A lack of funding will cause impacts not only to services to the community, but also to the community partners' staffing and budgets. In addition, this is coming at a time that non-profit budgets are already strained by the end of pandemic funding and escalating community need.

23.     Bellevue has historically executed contracts with community partner organizations for programming funded by and meeting the goals of the CDBG Entitlement Program at the beginning of our fiscal year in anticipation of its grant award.  This year, given

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the uncertainty with Federal funding, Bellevue decided to wait to execute contracts until its HUD contract was finalized.  HUD maintains a "timeliness requirement" for CDBG grant recipients to spend their funds within certain time periods.  The delay in 2025 funding and contracting has placed Bellevue at high risk of being unable to meet HUD's timeliness requirement for spending of CDBG funds.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 10th day of July, 2025, at Bellevue, Washington.

Toni Esparza

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A

**From:** Clifton, Charlotte K <Charlotte.K.Clifton@hud.gov>
**Sent:** Thursday, July 10, 2025 9:50 AM
**To:** Esparza, Toni (She/Her) <TEsparza@bellevuewa.gov>
**Cc:** Keller, Maggie <maggie.Keller@hud.gov>
**Subject:** FW: NOTIFICATION: King County WA FY25 Consolidated Plan/Action Plan

> You don't often get email from charlotte.k.clifton@hud.gov. Learn why this is important

**[EXTERNAL EMAIL] Use caution when clicking links or opening attachments.**

Hi Toni,

Please see below. Currently, we are seeking more guidance, and I am aware that the deadline for today at noon is not attainable.

I will be in touch later today.

Thank you!

**Charlotte Clifton**
Community Planning and Development Representative
U.S. Department of Housing and Urban Development
909 First Avenue, Suite 340
Seattle, WA 98104
**206-220-5310**
**charlotte.k.clifton@hud.gov**



   

 

---

**From:** Scott, Joy F <Joy.F.Scott@hud.gov>
**Sent:** Wednesday, July 9, 2025 12:55 PM
**To:** dadair@bellevuewa.gov
**Cc:** Keller, Maggie <maggie.Keller@hud.gov>; Clifton, Charlotte K <Charlotte.K.Clifton@hud.gov>
**Subject:** FW: NOTIFICATION: King County WA FY25 Consolidated Plan/Action Plan

Hi Donna,

Maggie and Charlotte are out of the office today, so I wanted to reach out to you all to be sure you were aware of this request from HUD headquarters.  I wanted to highlight that if your plan is disapproved, you will still have 45 days to resubmit.

Headquarters is responsible for this executive order review, but if you would like to discuss anything about your plan with our local field office, we can meet with you or your staff. There is some guidance available in this letter from our General Deputy Assistant Secretary: https://ncdaonline.org/wp-content/uploads/2025/06/6-5-2025-HUD-Response-to-COSCDA-NCDA.pdf

Best,
Joy

---

**From:** CPD DAS for Field Operations <CPDDASforfieldoperations@hud.gov>

**Sent:** Tuesday, July 8, 2025 3:11 PM
**To:** lauwells@kingcounty.gov
**Cc:** SeattleCPD <SeattleCPD@hud.gov>; Keller, Maggie <maggie.Keller@hud.gov>; Reed, Carma <Carma.Reed@hud.gov>
**Subject:** NOTIFICATION: King County WA FY25 Consolidated Plan/Action Plan

Dear Grantee,

This message serves as notification that the Department is questioning the accuracy of King County's (including its consortium members) certification that the Community Development Block Grant (CDBG) funds described in its Fiscal Year 2025 Consolidated Plan/Action Plan (the Plan) will be administered in conformity with applicable laws, including Executive Orders. HUD is providing this opportunity for your jurisdiction to comment (i.e., provide specific evidence demonstrating compliance with the certification) by responding to this notification. The grantee's demonstration of the accuracy of its certification should include taking the actions described below by **noon on Thursday, July 10, 2025**. Failure to address HUD's concerns regarding the certification may result in HUD determining that the certification is inaccurate or unsatisfactory, which will result in disapproval of the Plan.

Please be advised that the content and matters addressed in this letter concern programs and funds which are separate and distinct from those covered by the Preliminary Injunction ordered by the U.S. District Court in *Martin Luther King, Jr. County, et al. v. Turner, et al.*, 2:25-cv-00814 (W.D. Wash.); 25-3664 (9th Cir.). That Preliminary Injunction is currently on appeal and HUD will continue to abide by it, pending the outcome of the appeal. Any questions regarding the Preliminary Injunction or its application should be referred to your own attorneys.

During HUD's review of the Fiscal Year 2025 Consolidated Plan/Action Plan submitted by your jurisdiction, the Department identified language in the Plan that appears to be inconsistent with *Executive Order 14168 Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Executive Order 14218 *Ending Taxpayer Subsidization of Open Borders,* Executive Order *14151 Ending Radical and Wasteful Government DEI Programs and Preferencing,* Executive Order 14173 *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*. Specifically, the jurisdiction's Plan states the following:

King County (Consortium Lead)
   a. **Page 64:** DEI: Advance racial equity and social justice within KCHA and in King County through the implementation and ongoing evaluation of KCHA's **equity**, diversity, inclusion, and belonging strategy.
   b. **Page 29:** King County's Regional Hazard Mitigation Plan includes

recommendations to promote **equity** and social justice in preparation for natural and human-made disasters. The information in the Consolidated Plan aligns with the information included in the Regional Hazard Mitigation Plan.

c. <u>**Page 64:**</u> • Advance racial **equity** and social justice within KCHA and in King County through the implementation and ongoing evaluation of KCHA's **equity**, diversity, inclusion, and belonging strategy.

d. <u>**Page 95:**</u> In 2022, there were 29,270 vacant units in the Consortium which include a variety of unoccupied housing units. Among these vacant units 8,847 (or 30 percent) are for rent, 2,543 (or nine percent) are rented but not occupied, 2,394 (or eight percent) are for sale only, 1,828 (or six percent) are owned but not occupied, 4,378 (or 15 percent) are for seasonal, recreational, or occasional use, 32 (or 0.1 percent) are set aside for **migrant** workers, and the remaining 9,248 (or 32 percent) are classified as vacant for another reason.

e. <u>**Page 123:**</u> All programs and projects reflect values of **equity** and social justice, including equitable development principles

f. <u>**Page 127:**</u> King County also considers other local plans and initiatives in making allocation decisions, such as plans regarding climate change, transit-oriented development, **equity** and social justice, the KCRHA 5-year Plan, the BSK Implementation Plan, the VSHSL Implementation Plan, the Crisis Care Centers Levy Implementation Plan, and the Health Through Housing Initiative.

- Auburn, WA (in King County's Consortia)
  - <u>**Page 185:**</u> King County also considers other plans and initiatives in making allocation decisions, such as climate change, transit-oriented development, **equity** and social justice, KCRHA 5-year Plan, Best Starts for Kids Implementation Plan, Veterans, Seniors, and Human Services Levy Implementation Plan, Crisis Care Centers Levy, and the Health Through Housing Initiative.
  - <u>**Page 185**</u>: In December 2024, the King County Council adopted the 2024 update to the King County Comprehensive Plan (KCCP), which has three overarching goals around **equity**, affordable housing, and climate change.
  - <u>**Page 187:**</u> King County also considers other plans and initiatives in making allocation decisions, such as climate change, transit-oriented development, **equity** and social justice, KCRHA 5-year Plan, Best Starts for Kids Implementation Plan, Veterans, Seniors, and Human Services Levy Implementation Plan, Crisis Care Centers Levy, and the Health Through Housing Initiative.
  - <u>**Page 187:**</u> In December 2024, the King County Council adopted the 2024 update to the King County Comprehensive Plan (KCCP), which has three overarching goals around **equity**, affordable housing, and climate change.
  - <u>**Page 193:**</u> KCRHA works toward a more effective and efficient system. This includes determining how to prioritize people who are experiencing homelessness while furthering racial **equity**, developing effective and culturally sensitive outreach, overcoming barriers to people obtaining housing, and reducing screening and other barriers identified in serving

people.
- o **Page 316:** The report specifically notes South King County as an area that should be prioritized because of the overrepresentation of Black, Indigenous, and people of color, as well as refugee, **immigrant**, and justice-involved populations.

- Bellevue, WA (in King County's Consortia)
  - o **Page 455:** DEI Viewing all activities through a lens of diversity, **equity**, and inclusion.

- Federal Way, WA (in King County's Consortia)
  - o **Page 497:** In the 2024 round, the City awarded funding to Congolese Integration Network for Amani House. Amani House will provide transitional housing and services for five families at a time who are recent **immigrants** and were experiencing homelessness.
  - o **Page 683:** Current microenterprise programs include non-English speaking and **immigrant** outreach components designed to meet the City's diverse needs.

- Kent, WA (in King County's Consortia)
  - o **Page 700:** The City has contracted with a Diversity, **Equity**, and Inclusion agency to update the City's Language Access Plan in order to remove barriers for those whom English is not their primary language.

This language includes provisions that appear to be inconsistent with the implementation of federal programs pursuant to the referenced executive orders.  To address this issue, your jurisdiction should provide assurance to the Department by taking the following actions:

1. Remove or replace all "equity" references throughout the document and replace with "activities and actions that do not violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964";
2. Replacing all "immigrant" and "migrant" references with "legal/documented migrant/immigrant"; and
3. Provide the following assurance statements within the Plan:

   " King County (including its consortium members or insert name of each consortium member jurisdiction) shall administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and certification requirement that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S. C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218 or other Executive Orders or immigration laws. The city will not use funding under this grant in a manner that by design or effect facilitates

the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.  Unless excepted by PRWORA, the city must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States."

"King County agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code."

"King County will not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964."

The grantee should re-submit the action plan to HUD by the deadline noted above.  Please work to revise and resubmit your Plan in HUD's Integrated Disbursement and Information System (IDIS) *and reply to this message indicating that you have re-submitted the plan in IDIS"* .  If HUD disapproves the Plan, the grantee must resubmit its Plan within 45 days after first notification of Plan disapproval (see 24 CFR 91.500(d)).

If you should have any questions, please reach out to the Office of Community Planning and Development, Office of Field Operations at cpddasforfieldoperations@hud.gov .

# EXHIBIT B

# General Administrative, National, and Departmental Policy Requirements and Terms for HUD's Financial Assistance Programs

The table below outlines various laws and policies that may apply to recipients of HUD's financial assistance programs. Recipients are responsible for making sure activities funded by Federal awards comply with applicable Federal requirements, whether the recipients carry out those activities directly or use contractors or subrecipients to carry out those activities. *See* 2 CFR 200.101(b)(1), 200.300(a), 200.303, 200.329(a), and 200.332.

The table is not intended to include an exhaustive list of all laws and policies applicable to HUD awards. For NOFOs, the laws and policies below apply if they are listed in the program notice or the program NOFO, Section VII.A., "Administrative, National and Departmental Policy Requirements and Terms for HUD Applicants and Recipients of Financial Assistance Awards." Some laws and policies may apply only to awards with certain types of activities or to certain types of recipients. For example, some may apply only to construction awards, or awards associated with publications. Some of the exceptions are noted in the tables below.

In addition, the requirements as stated below apply only to the extent they are consistent with the requirements stated by applicable Federal statutes, regulations, and the applicable program NOFO or notices. The legal agreement signed pursuant to an award with the recipient or subaward with a subrecipient must contain assurances (and certifications where applicable) of compliance with program requirements including, but not limited to, nondiscrimination and equal opportunity requirements.

| No. | Summary of Laws and Policies | Source | Additional Information |
|---|---|---|---|
| 1. | **Compliance with Fair Housing and Civil Rights Laws** Recipients must comply with all applicable fair housing and civil rights requirements, including, but not limited to, the Fair Housing Act; Title VI of the Civil Rights Act of 1964; the Age Discrimination Act of 1975; Section 504 of the Rehabilitation Act of 1973; and Title II and Title III of the Americans with Disabilities Act of 1990. | Fair Housing Act Statute: 42 U.S.C. §§ 3601 – 3619 Regulations: 24 CFR part 100 et seq. Title VI of the Civil Rights Act of 1964 Statute: 42 U.S.C. § 2000d et seq. Regulations: 24 CFR part 1 The Age Discrimination of Act of 1975 Statute: 42 U.S.C. §§ 6101-6107 Regulations: 24 CFR part 146 Section 504 of the Rehabilitation Act of 1973 Statute: 29 U.S.C. § 794 Regulations: 24 CFR part 8 The Americans with Disabilities Act (ADA) Statute: Title II of the ADA (42 U.S.C. §§ 12131 – 12165). DOJ's Title II implementing regulations: 28 CFR part 35. Statute: Title III of the ADA (42 U.S.C. §§ 12181 – 12189). DOJ's Title III implementing regulations: 28 CFR part 36 | |
| 2. | **Affirmatively Furthering Fair Housing Requirements** The Fair Housing Act requires HUD to administer its programs and activities in a | Statute: Section 808(e)(5) of the Fair Housing Act (42 U.S.C. § 3608(e)(5)) Regulations: 24 CFR 5.150 | |

| | | | |
|---|---|---|---|
| | manner to affirmatively further the purposes of the Fair Housing Act. HUD requires all recipients of HUD funding, including those awarded and announced under HUD's Notice of Funding Opportunities (NOFOs), to comply with its affirmatively further fair housing regulation published at 90 FR 11020 (March 3, 2025), as may be amended. | | |
| 3. | **Economic Opportunities for Low- and Very Low-Income Persons**<br>Section 3 of the Housing and Urban Development Act of 1968, entitled *Economic Opportunities for Low-and Very Low-Income Persons* requires, to the greatest extent feasible, that training, employment, contracting and other economic opportunities be directed to low- and very low-income persons, especially recipients of government assistance for housing, and to businesses that provide economic opportunities to low- and very low-income persons. | Statute: Section 3 of the Housing and Urban Development Act of 1968 (12 U.S.C. § 1701u)<br><br>Regulations: 24 CFR part 75 | HUD encourages recipients to utilize the Section 3 Resource Hub to discover local opportunities for workforce and business development. |
| 4. | **Compliance with Immigration Requirements**<br>The recipient must administer its award in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.<br><br>No state or unit of general local government that receives HUD funding under may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.<br><br>Subject to the exceptions provided by PRWORA, the recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States. | Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA)<br><br>Executive Order 14218: Ending Taxpayer Subsidization of Open Borders | |

| 5. | **Accessible Technology**<br>Section 508 of the Rehabilitation Act of 1973 requires recipients to ensure access to information, programs, and activities for persons with disabilities consistent with HUD's regulations at 24 CFR § 8.6. | Statute: Section 508 of the Rehabilitation Act of 1973 (29 U.S.C. § 794d); Section 504 of the Rehabilitation Act (29 U.S.C. § 794); and Title II of the ADA (42 U.S.C. §§ 12131 – 12165) as applicable.<br><br>Regulations: Access Board's Section 508 regulations at 36 CFR part 1194; HUD's Section 504 regulations at 24 CFR § 8.6; and DOJ's regulations at 28 CFR part 35, subpart E and H. and H | Recipients can also learn about Section 508 at Section508.gov and the U.S. Access Board website. |
| 6. | **Ensuring the Consideration of Small Businesses, Minority Businesses, Women's Business Enterprises, Veteran-Owned Businesses, and Labor Surplus Area Firms**<br>HUD ensures that small businesses, minority businesses, women's business enterprises, veteran-owned businesses, and labor surplus area firms receive consideration in HUD's contracting opportunities and financial assistance programs. Recipients are required to ensure that, when possible, small businesses, minority businesses, women's business enterprises, veteran-owned businesses, and labor surplus area firms receive consideration consistent with 2 CFR 200.321. | Regulations: 2 CFR 200.321 | |
| 7. | **Equal Participation of Faith-based Organizations in HUD Programs and Activities**<br>HUD's regulations on the equal participation of faith-based organizations are at 24 CFR 5.109. These regulations provide, among other things, that a faith-based organization that participates in a HUD-funded program or activity retains its independence, and may continue to carry out its mission provided that it does not use direct Federal financial assistance to support or engage in any explicitly religious activities; an organization that engages in explicitly religious activities must separate those activities, in time or location, from activities supported by direct Federal financial assistance and participation must be voluntary; a faith-based organization that carries out programs or activities with direct Federal financial assistance from HUD must provide beneficiaries and prospective | Statute: Religious Freedom Restoration Act of 1993, as amended (42 U.S.C. 2000bb *et seq.*)<br><br>Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.*;<br><br>Regulations: 24 CFR 5.109 | |

| | | | |
|---|---|---|---|
| | beneficiaries with a written notice of certain protections; beneficiaries and prospective beneficiaries may object to the religious character of an organization, upon which the organization must undertake reasonable efforts to identify and refer the beneficiary or prospective beneficiary to an alternative provider; and an organization that receives Federal financial assistance under a HUD program or activity may not discriminate against a beneficiary or prospective beneficiary on the basis of religion, religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice. (See 24 CFR 5.109). | | |
| 8. | **Real Estate Acquisition and Relocation**<br>With certain exceptions, HUD-funded programs or projects are subject to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA) and the government-wide regulations issued by the Federal Highway Administration. The URA applies to acquisitions of real property and relocation occurring as a direct result of the acquisition, rehabilitation, or demolition of real property for Federal or Federally funded programs or projects.<br><br>The relocation requirements of the URA and its implementing regulations at 49 CFR part 24, cover any displaced person who moves from real property or moves personal property from real property as a direct result of acquisition, rehabilitation, or demolition for a program or project receiving HUD assistance. | Statute: Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended (URA) (42 U.S.C. § 4601 et seq.)<br><br>Regulations: 49 CFR part 24 | HUD's Relocation and Real Estate Division (RRED) is preparing guidance to describe the effective date and applicability of the 2024 URA Final Rule's provisions to HUD funded projects. This guidance will be promulgated in a Federal Register Notice.<br><br>RRED's current websites include regulations, Handbook, Policy Briefs, FAQs, tools, resources, contacts, and on-line training materials.  These materials and resources will require revision and updating to reflect the new regulatory requirements.  Inquiries for additional assistance can be directed to the RRED program staff contact listing contained within the websites as follows:<br>https://www.hud.gov/program_offices/comm_planning/relocation<br>https://www.hudexchange.info/programs/relocation/ |
| 9. | **Participation in a HUD-Sponsored Program Evaluation** | Statute: 12 USC 1701z-1 and 12 USC 1702z-2 | |

|  | | |
|---|---|---|
|  | As a condition of the receipt of the award under a NOFO, the recipient is required to cooperate with all HUD staff, contractors, or designated grantees performing research or evaluation studies funded by HUD. In addition, all recipients must comply with the requirements of 24 CFR part 60 when conducting or participating in research activities sponsored or funded by HUD that involve human subjects. | 24 CFR part 60 -- Protection of Human Subjects<br><br>Federal Register Notice, (FR-6278-N-01)<br><br>Also, see applicable NOFO. | |
| 10. | **OMB Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards**<br>Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, set forth in 2 CFR part 200, apply, except as otherwise provided by the Program NOFO or applicable program regulations. | Regulations: 2 CFR part 200 | |
| 11. | **Drug-Free Workplace**<br>Recipients must comply with the drug-free workplace laws set forth in subpart B (or subpart C, if the recipient is an individual) of 2 CFR part 2429, which adopts the government-wide implementation (2 CFR part 182) of sections 5152-5158 of the Drug-Free Workplace Act of 1988 (Pub. L. 100-690, Title V, Subtitle D; 41 U.S.C. 701-707). | Regulations: 2 CFR part 2429, subparts B (or C, if the recipient is an individual); 2 CFR part 182 | |
| 12. | **Privacy Act Requirements Related to Safeguarding Resident/Client Files**<br>In maintaining resident and client files, funding recipients must follow all applicable privacy laws, including state, local, and tribal laws concerning the disclosure of records that pertain to individuals and take reasonable measures to ensure that all files are safeguarded, including when reviewing, printing, or copying client files. Federal requirements will apply where state, local, or tribal laws are inconsistent with Federal requirements, to the extent such Federal requirements preempt state, local, and tribal laws. When collecting or maintaining personally identifiable information for inclusion in a HUD system of records as defined by the Privacy Act of 1974, recipients must comply with agency rules, regulations, or other requirements issued under the Privacy Act of 1974, including, but not limited to 24 CFR part 5 subpart B, PIH-2015-06, and other related issuances, as applicable. | Statute: Privacy Act of 1974, as amended (5 U.S.C. 552a)<br><br>Regulations: 24 CFR part 5 subpart B; HUD Rule PIH-2015-06 | |
| 13. | **Compliance with the Federal Funding Accountability and Transparency Act of 2006 (Public Law 109-282) (Transparency Act), as amended**<br>All recipients must comply with the award terms found in 2 CFR part 170 Appendix A. | Regulations: 2 CFR part 170, Appendix A to 2 CFR part 170 | |
| 14. | **Eminent Domain**<br>No federal funds provided under the Federal award may be used to support any Federal, | This requirement is a recurring condition in HUD's annual appropriations Acts. | |

|  | | | |
|---|---|---|---|
|  | state, or local project that seeks to use the power of eminent domain, unless eminent domain is used only for public use. Public use may not be construed to include economic development that primarily benefits private entities. Public use includes use of funds for mass transit, railroad, airport, seaport, or highway projects, and utility projects which benefit or serve the general public (including energy-related, communication-related, water-related, and waste water-related infrastructure), other structures designated for use by the general public or with other common-carrier or public-utility functions that serve the general public and are subject to regulation and oversight by the government, and projects for the removal of an immediate threat to public health and safety or brownfields, as defined in the Small Business Liability Relief and Brownfields Revitalization Act (Pub. L. 107-118). | | |
| 15. | **Accessibility for Persons with Disabilities** applies to all HUD-funded activities. All grantees must ensure that no one is excluded from participation or denied the benefits of any program or activity that receives Federal Financial assistance consistent with the provisions of 24 CFR Part 8, Subpart C. | Statute: Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)<br><br>Regulations: 24 CFR part 8, subpart C | HUD's Resources: Section 504 of the Rehabilitation Act of 1973 |
| 16. | **Violence Against Women Act**<br>*Requirements for Covered Housing Programs*<br>The Violence Against Women Act of 1994 (VAWA), as amended, provides housing protections for victims of domestic violence, dating violence, sexual assault, and stalking in many of HUD's housing programs. In general, under the VAWA rule, an applicant for assistance or a tenant already assisted under a covered housing program may not be denied admission to, denied assistance under, terminated from participation in, or evicted from the housing on the basis or as a direct result of the fact that the applicant or tenant is or has been a victim of domestic violence, dating violence, sexual assault, or stalking, if the applicant or tenant otherwise qualifies for admission, assistance, participation, or occupancy.<br><br>The VAWA rule also requires that the covered housing providers establish emergency transfer plans for facilitating the emergency relocation of certain tenants who are victims of domestic violence, dating violence, sexual assault, or stalking. VAWA, as reauthorized by the Violence Against Women Act Reauthorization Act of 2022, prohibits any public housing agency or owner or manager or housing assisted under a covered housing program from discriminating against any | Statute: The Violence Against Women Act of 1994, as amended, housing provisions at 34 U.S.C. 12491, et seq.<br><br>HUD's regulations implementing VAWA, as amended by the Violence Against Women Reauthorization Act of 2013, are at 24 CFR part 5, subpart L, Protection for Victims of Domestic Violence, Dating Violence, Sexual Assault, or Stalking (collectively, the VAWA rule), and in the applicable program regulations | The specific HUD programs that are subject to the VAWA housing protections are listed in the "covered housing program" definition at 24 CFR 5.2003, and as may be identified by HUD through further regulations, notices, or any other means. |

| | | | |
|---|---|---|---|
| | person because that person has opposed any act or practice made unlawful by the housing title of VAWA or because that person testified, assisted, or participated in any related matter. It also prohibits any public housing agency or owner or manager of housing assisted under a covered housing program from coercing, intimidating, threatening, interfering with, or retaliating against any person who exercises or assists or encourages a person to exercise any rights or protections under the housing title of VAWA.<br><br>*Protecting the right to report crime and emergencies from one's home*<br>VAWA also protects the right to report crime and emergencies from housing. It establishes that landlords, homeowners, tenants, residents, occupants, and guests of, and applicants for, housing have the right to seek law enforcement or emergency assistance on their own behalf or on behalf of another person in need of assistance. It prohibits actual or threatened penalties based on requests for assistance or criminal activity of which an individual is a victim or otherwise not at fault under the laws or policies adopted or enforced by (any municipal, county, or state government that receives funding under Section 106 of the Housing and Community Development Act of 1974). | | |
| 17. | **Conducting Business in Accordance with Ethical Standards**<br>All Federal award recipients, except states and tribes subject to 2 CFR 200.317, must have a code of conduct (or written standards of conduct) for procurements that meet all requirements in 2 CFR 200.318(c). Before entering into an agreement with HUD, each applicant selected for an award under a NOFO must ensure an up-to-date copy of the organization's code of conduct, dated and signed by the Executive Director, Chair, or equivalent official, of the governing body of the organization, is available in Code of Conduct e-library. Applicants can check the e-Library to confirm whether HUD has received their Code of Conduct. States and Tribes subject to 2 CFR 200.317 must follow the same policies and procedures for procurements under Federal awards that the state uses for procurements from its non-Federal funds. If such policies and procedures do not exist, they must follow the code of conduct requirements in 2 CFR 200.318(c).<br><br>All recipients must comply with the conflict-of-interest requirements in the applicable program regulations and grant agreements. If there are no program-specific regulations for | Regulations: 2 CFR 200.112, 2 CFR 200.113, 2 CFR 200.317, CFR 200.318(c). | |

| | | | |
|---|---|---|---|
| | the award, the conflict-of-interest requirements specified below this table, titled *Conflicts of Interest*, apply. Recipients must disclose in writing any potential conflict of interest to HUD. | | |
| 18. | **Build America, Buy America ("BABA")** The recipient must comply with the requirements of the Build America, Buy America (BABA) Act, Sections 70901-52 of Public Law No. 117-58, 41 U.S.C. 8301 note, and all applicable rules and notices, as may be amended, if applicable to the Grantee's infrastructure project. Applicants are encouraged to consult with the NOFO point of contact to confirm additional requirements or waivers specific to each grant. | Statute: Build America, Buy America (BABA) Act, Sections 70901-52 of Pub. L. No. 117-58, 41 U.S.C. 8301 note | For additional resources, please see https://babawaiver.hud.gov/s/ |
| 19. | **Trafficking in Persons** The award term in Appendix A to 2 CFR part 175 applies to each grant or cooperative agreement HUD makes with a private entity, as defined in 2 CFR 175.300; and each grant or cooperative agreement HUD makes with a state, local government, Indian tribe, foreign public entity, or any other recipient, where funding under the award could be provided to a subrecipient that is a private entity. However, where the award term refers to the agency's regulatory implementation of the OMB guidelines in 2 CFR part 180, those references will be understood to refer to 2 CFR part 2424. | Statute: Section 106(g) of the Trafficking Victims Protection Act of 2000 (TVPA), as amended (22 U.S.C. 7104(g)) Regulations: 2 CFR part 175, 2 CFR part 180, 2 CFR part 2424 | |
| 20. | **Applicable Environmental Requirements** As applicable under 24 CFR part 50 or 24 CFR part 58, recipients must comply with the National Environmental Policy Act (NEPA). | Regulations: 24 CFR part 50, 24 CFR part 58 | |
| 21. | **Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment** Federal award funds must not be used to purchase, lease, or renew or extend contracts for "covered telecommunications equipment or services" as described in 2 CFR 200.216, which include equipment or services provided by Huawei Technologies Company or the ZTE Corporation (or any subsidiary or affiliate of such entities). | Statute: Section 889 of Public Law 115-232 (41 USC 3901 note prec.) Regulation: 2 CFR 200.216, Prohibition on Certain Telecommunication and Video Surveillance Equipment or Services | |
| 22. | **The Freedom of Information Act (FOIA)** The FOIA gives any person the right to request access to HUD records. HUD must disclose the records requested unless they are protected by one or more of the exempt categories of information found in the FOIA. In addition to responding to FOIA requests from members of the public, HUD may also share records within HUD or with other Federal agencies, if HUD determines that sharing is relevant to the respective program's objectives. | Statute: 5 USC § 552 Regulations: 24 CFR pt 15 | |
| 23. | **Waste, Fraud, Abuse, and Whistleblower Protections.** Any person who becomes aware | Statute: 41 U.S.C. § 4712 | HUD OIG is available to receive |

| | | | |
|---|---|---|---|
| | of the existence or apparent existence of fraud, waste or abuse of any HUD award must report such incidents to both the HUD official responsible for the award and to HUD's Office of Inspector General (OIG). All HUD awards are subject to the requirements under 41 U.S.C. § 4712, which includes informing employees in writing of their rights and remedies, in the predominant native language of the workforce.<br><br>Under 41 U.S.C. § 4712, employees of a government contractor, subcontractor, grantee, and subgrantee— as well as a personal services contractor—who make a protected disclosure about a Federal grant or contract cannot be discharged, demoted, or otherwise discriminated against as long as they reasonably believe the information they disclose is evidence of:<br>1.     Gross mismanagement of a Federal contract or grant;<br>2.     Gross waste of Federal funds;<br>3.     Abuse of authority relating to a Federal contract or grant;<br>4.     Substantial and specific danger to public health and safety; or<br>5.     Violations of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant. | | allegations of fraud, waste, and abuse related to HUD programs via its hotline number (1-800-347-3735) and its online hotline form.<br><br>See Federal Contractor or Grantee Protections \| Office of Inspector General, Department of Housing and Urban Development: https://www.hudoig.gov/fraud/whistleblower-rights/federal-contractor-grantee-protections |
| 24. | **Other Presidential Executive Actions Affecting Federal Financial Assistance Programs**<br>Recipients of Federal Awards must comply with applicable existing and future Executive Orders, as advised by the Department, including but not limited to the following:<br><br>Executive Order (EO) 14219, *Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative*, requires agencies to focus its limited enforcement resources on regulations authorized by constitutional Federal statutes.<br><br>EO 14218, *Ending Taxpayer Subsidization of Open Borders*, prohibits taxpayer resources and benefits from going to unqualified aliens.<br><br>EO 14202, *Eradicating Anti-Christian Bias*, establishes a taskforce to eradicate Anti-Christian bias within the U.S. Department of Justice. EO 14205, *Establishment of the White House Faith Office*, establishes the White House Faith Office within the Executive Office of the President to empower faith-based entities. | Executive Orders:<br>• 14219 (Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative);<br>• 14218 (Ending Taxpayer Subsidization of Open Borders);<br>• 14202 (Eradicating Anti-Christian Bias); 14205 (Establishment of the White House Faith Office);<br>• 14182 (Enforcing the Hyde Amendment);<br>• 14173 (Ending Illegal Discrimination and Restoring Merit-Based Opportunity);<br>• 14168 (Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government);<br>• 14151 (Ending Radical and Wasteful Government DEI Programs and Preferencing); and<br>• 14148 (Initial Rescissions of Harmful Executive Orders and Actions) | This list is non-exhaustive. You may find additional Executive Orders at this webpage: https://www.whitehouse.gov/presidential-actions/. |

| | | |
|---|---|---|
| EO 14182, *Enforcing the Hyde Amendment*, prohibits the use of Federal taxpayer dollars to fund or promote elective abortion.<br><br>EO 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, requires Federal agencies to terminate all discriminatory and illegal preferences.<br><br>EO 14168, *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, sets forth U.S. policy recognizing two sexes, male and female.<br><br>EO 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, requires the OMB Director assisted by the Attorney General and the OPM Director to coordinate the termination of all discriminatory programs and activities.<br><br>EO 14148, *Initial Rescission of Harmful Executive Orders and Action*, revokes 67 EOs that were each issued between January 20, 2021, and January 16, 2025; and 11 Presidential memoranda issued between March 13, 2023, and January 14, 2025, to advance fairness, safety, and improve the economy. | | |

**Conflicts of Interest**

All applicants, recipients, and subrecipients must comply with the conflict-of-interest requirements in the applicable program regulations and grant agreements. If there are no program-specific regulations for the award, the following conflict-of-interest requirements apply:

i.     Conflicts Subject to Procurement Regulations. In the procurement of property or services by recipients and subrecipients, the conflict-of-interest rules in 2 CFR 200.317 and 2 CFR 200.318(c) shall apply. In all cases not governed by 2 CFR 200.317 and 2 CFR 200.318(c), recipients and subrecipients must follow the requirements contained in paragraphs ii-v below.

ii.    General prohibition. No person who is an employee, agent, consultant, officer, or elected or appointed official of the recipient or subrecipient and who exercises or has exercised any functions or responsibilities with respect to assisted activities, or who is in a position to participate in a decision making process or gain inside information with regard to such activities, may obtain a financial interest or benefit from the activity, or have a financial interest in any contract, subcontract, or agreement with respect thereto, or the proceeds thereunder, either for himself or herself or for those with whom he or she has immediate family or business ties, during his or her tenure or for one year thereafter. Immediate family ties include (whether by blood, marriage or adoption) the spouse, parent (including a stepparent), child (including a stepchild), sibling (including a stepsibling), grandparent, grandchild, and in-laws of a covered person.

iii.    Exceptions. HUD may grant an exception to the general prohibition in paragraph (ii) upon the recipient's written request and satisfaction of the threshold requirements in paragraph (iv), if HUD determines the exception will further the Federal purpose of the award and the effective and efficient administration of the recipient's program or project, taking into account the cumulative effects of the factors in paragraph (v).

iv.    Threshold requirements for exceptions. HUD will consider an exception only after the recipient has provided the following documentation:

    a.    A disclosure of the nature of the conflict, accompanied by an assurance that there has been public disclosure of the conflict and a description of how the public disclosure was made; and

    b.    An opinion of the recipient's attorney that the interest for which the exception is sought would not violate state, local, or tribal law.

v.    Factors to be considered for exceptions. In determining whether to grant a requested exception after the recipient has satisfactorily met the threshold requirements in paragraph (iii), HUD will consider the cumulative effect of the following factors, where applicable:

    a.    Whether the exception would provide a significant cost benefit or an essential degree of expertise to the program or project that would otherwise not be available;

    b.    Whether an opportunity was provided for open competitive bidding or negotiation;

    c.    Whether the person affected is a member of a group or class of low- or moderate-income persons intended to be the beneficiaries of the assisted activity, and the exception will permit such person to receive generally the same interests or benefits as are being made available or provided to the group or class;

    d.    Whether the affected person has withdrawn from his or her functions or responsibilities, or the decision-making process with respect to the specific assisted activity in question;

    e.    Whether the interest or benefit was present before the affected person was in a position as described in paragraph (ii);

    f.    Whether undue hardship will result either to the recipient or the person affected when weighed against the public interest served by avoiding the prohibited conflict; and

    g.    Any other relevant considerations.

vi.    For purposes of the above requirements, once procured, contractors are considered agents of the recipient or subrecipient and are subject to the above conflict of interest rules in addition to those for procurements at 2 CFR 200.317 or 2 CFR 200.318, as applicable.

Recipients must disclose in writing any potential conflict of interest to HUD.

# EXHIBIT C



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-7000

OFFICE OF COMMUNITY PLANNING
AND DEVELOPMENT

June 5, 2025

Ms. Tess Hembree
Executive Director
Council of State Community Development Agencies
630 I Street, NW
Washington, DC 20001-3736

Ms. Vicki Watson
Executive Director
National Community Development Association (NCDA)
1775 Eye Street NW, Suite 1150
Washington, DC 20006

Dear Ms. Hembree & Ms. Watson:

On behalf of Secretary Scott Turner, thank you for your letter regarding the Department of Housing and Urban Development's (HUD) Office of Community Planning and Development's (CPD) grantee consolidated plan and annual action plan submissions for Fiscal Year (FY) 2025. Your letter states that Council of State Community Development Agencies (COSCDA) and National Community Development Association (NCDA) members are concerned that their submissions may be flagged for noncompliance with the Administration's executive orders. As a result, both agencies are requesting that HUD issue a memorandum like the guidance provided to Community Development Block Grant – Disaster Recovery (CDBG-DR) grantees under the Universal Notice.

CPD administers the CDBG-DR program through *Federal Register* Notice each time it receives a Congressional appropriation. This approach has been taken because the CDBG-DR program does not have its own authorization and corresponding regulations. As a result, CPD must describe the processes, procedures, timelines, waivers, and alternative requirements that HUD intends to implement with each allocation of CDBG-DR funding after a qualifying Presidential disaster declaration. Specifically, following the most recent appropriation of CDBG-DR funds for qualifying disasters, the Department published an Allocation Announcement Notice (AAN) in the *Federal Register* that incorporates, via cross-reference, the waivers and alternative requirements provided in the Universal Notice, as appropriate, along with any other new requirements imposed by the specific appropriation.

In contrast, the consolidated plan and annual action plan submission process for CPD formula grantees is governed by the regulations at 24 CFR Part 91. The January 14, 2025, notice entitled CPD-25-02, Guidance on Submitting Consolidated Plans and Annual Action Plans for FY 2025 remains in effect, including the requirements at 24 CFR 91.500(b) located on page 5. HUD has no plans at this time to update this notice as it continues to accurately document when HUD may disapprove a plan according to the regulations. 24 CFR 91.500(b) states that HUD may disapprove a plan or a portion of a plan if it is inconsistent with the purpose of the Cranston-Gonzalez National Affordable Housing Act (42 U.S.C. 12703), if it is substantially incomplete,

or, in the case of a CDBG certification under §91.225(a) and (b) or §91.325(a) and (b), if it is not satisfactory to the Secretary in accordance with §570.304, §570.429(g), or §570.485(c). The following are examples provided in §91.500(b) of substantially incomplete plans:

1. A plan that was developed without the required citizen participation or the required consultation;

2. A plan that fails to satisfy all the required elements in this part; and

3. A plan for which a certification is rejected by HUD as inaccurate, after HUD has inspected the evidence and provided due notice and opportunity to the jurisdiction for comment; and

4. A plan that does not include a description of the manner in which the unit of general local government or state will provide financial or other assistance to a public housing agency if the public housing agency is designated as "troubled" by HUD.

Grantees are also encouraged to review the White House Executive Orders as they develop their consolidated plan and annual action plans. After submission and HUD's review of these plans, the FY2025 grant agreement will also emphasize conformity with applicable Administration priorities and executive orders. Under the FY 2025 grant agreement, conformity means that a grantee:

1. shall not use grant funds to promote "gender ideology," as defined in Executive Order (E.O.) 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

2. agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

3. certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964;

4. shall not use any grant funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment; and that

5. notwithstanding anything in the grant or application, this Grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or requirements implementing Executive Orders that have been revoked.

6. The Grantee must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable

requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.

7. If applicable, no state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.

8. Unless excepted by PRWORA, the Grantee must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

9. Faith-based organizations may be subrecipients for funds on the same basis as any other organization. Grantees may not, in the selection of subrecipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

Grantees should be reminded that they must also continue to use their CPD funding in a manner that complies with applicable statutes, which include:

- Section 109 of the HCDA, 42 U.S.C. 5309;
- Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.*;
- Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.*;
- Title VIII of the Civil Rights Act of 1968 (The Fair Housing Act), 42 U.S.C. 3601 – 19;
- Section 504 and 508 of the Rehabilitation Act of 1973, 29 U.S.C. 794;
- The Americans with Disabilities Act of 1990,42 U.S.C. 12131 *et seq.*; and
- Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Public Law 104-193) (PRWORA).

Your letter also requests a 60-day extension to allow grantees time to comply with any Administration requested changes. Under 24 CFR 91.15, each jurisdiction should submit its consolidated plan to HUD at least 45 days before the start of its program year. The majority of CPD's grantees have a program year start date of July 1st, which means those grantees would submit their plan on or before May 15th. As you are aware, the Department is required to release its formula allocations within 60 days of appropriation. For FY 2025, HUD posted these allocations on May 13, 2025. Given the timing of most annual appropriations, it is not unusual for a grantee to be able to submit its plan as soon as allocations are announced and completes its citizen participation process. We are aware that many grantees begin their planning process well in advance of an allocation announcement and provide guidance on this in CPD Notice 25-02. Additionally, §91.15(a) provides HUD the ability to grant a jurisdiction an extension of the submission deadline for good cause, with the exception of the deadline of August 16. **The Department's failure to receive the plan by August 16, 2025, will automatically result in a loss of CDBG funds for the program year.**

We value our partnership with NCDA and COSCDA and the broader CDBG Coalition's efforts to assist grantees across the nation perform and achieve program outcomes. Thank you for the collaboration in guiding grantees and reminding them of the value of aligning with applicable statutes, regulations, and executive orders in developing and preparing to submit their respective consolidated plan and/or annual action plan. CPD staff, as always, are available to provide technical assistance.

We look forward to continuing our partnership with you. If you should have any questions, please reach out to me via email at Claudette.Fernandez1@hud.gov.

Sincerely,

Claudette
Fernandez

Digitally signed by
Claudette Fernandez
Date: 2025.06.05
12:13:50 -04'00'

Claudette Fernandez
General Deputy Assistant Secretary

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on July 14, 2025, I served a true and correct copy of the foregoing

4   document on the following parties by the method(s) indicated below:

5

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

14

15        I declare under penalty of perjury under the laws of the United States and the State of

16   Washington that the foregoing is true and correct.

17

18        DATED this 14th day of July, 2025.

19                                         /s/ Gabriela DeGregorio
                                          Gabriela DeGregorio
20                                         Litigation Assistant
                                          Pacifica Law Group LLP

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE - 1

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750