THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARTIN LUTHER KING, JR. COUNTY, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development, et al.,<br><br>  Defendants. | No. 2:25-cv-00814-BJR<br><br>SUPPLEMENTAL DECLARATION OF ELLEN SEMONOFF |

I, ELLEN SEMONOFF, declare as follows:

1. I am over the age of 18 years, am competent to testify as to matters in this declaration, and make it based on personal knowledge and my review of relevant records.

2. I am the Assistant City Manager for Human Services for the City of Cambridge (the "City"). I have served in this position since 2004.

3. Among my duties as Assistant City Manager for Human Services, I am responsible for the leadership and daily management of the City's Department of Human Services Programs ("DHSP").

4. In addition to the CoC grants, Cambridge receives significant funding from other HUD grants in FY2024 and FY2025, which support programs and services that directly benefit the City and its residents.

SUPPLEMENTAL DECLARATION
OF ELLEN SEMONOFF - 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

5. For example, Cambridge receives federal funding from HUD through its Emergency Solutions Grants (ESG) program, which provides funding to communities to help individuals and families experiencing homeless or at risk of homelessness retain or regain stable housing.

6. Cambridge's ESG grant, administered by DHSP, supports twelve unique projects, primarily emergency shelters and street outreach to homeless or at-risk individuals and families.

7. Cambridge's ESG grant supports prevention and rapid rehousing work at Cambridge's Multi-Service Center and through HomeStart, a homeless services and eviction prevention non-profit organization. The ESG grant supports homeless shelters, homeless street outreach programs, homelessness prevention programs, and rapid rehousing services.

8. Cambridge's ESG grant also partially funds two City positions, a homeless prevention case manager at Cambridge's Multi-Service Center and a ESG grant manager.

9. Cambridge's ESG grant allocation for federal FY25 is $226,880.

10. The ongoing budgetary uncertainty and negative impacts if DHSP is faced with full or partial cuts of federal funding will be significant. Any reduction to ESG funding would pose a huge challenge to Cambridge, and would likely compromise the City's ability to fund and support homeless shelter services, homeless prevention efforts at the City's Multi-Service Center, and its support of vital HomeStart services. Loss of these services would in turn likely increase homelessness in the City.

11. In addition to HUD grants, the City also receives federal funding from the Department of Health and Human Services (HHS) through the Massachusetts Executive Office of Housing and Livable Communities (EOHLC).

12. EOHLC annually receives federal funding from HHS' Low-Income Home

SUPPLEMENTAL DECLARATION
OF ELLEN SEMONOFF - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Energy Assistance Program (LIHEAP). LIHEAP provides funding to states and communities to help with home energy and emergency energy assistance needs for low-income households.

13. The City's LIHEAP grants are passed through EOHLC and are administered by DHSP.

14. Cambridge's total LIHEAP grant allocation for federal FY25 was $1,740,174.

15. The loss of LIHEAP funding would have a major impact on Cambridge's fuel assistance programs to low-income residents, potentially forcing the City to cease these programs if replacement funding could not be found. LIHEAP funds support the City's Fuel Assistance Program, a designated HEAP program for both Cambridge and Somerville residents. The Fuel Assistant Program helps more than 1,350 low-income households in Cambridge and Somerville pay their winter heating bills.

16. Cambridge would likely face a potential fiscal and public services crisis if it were deprived of some or all of the funding from HUD, HHS, and other federal grants. Federal funding supports important and significant City programs, loss of which would force Cambridge to eliminate programs or significantly reduce operations in other areas to continue funding the programs. DHSP is currently operating with significant uncertainty related to the FFY 2025 HUD formula grants that DHSP relies on for Cambridge FY2026 services- $395,796 from the Public Services portion of the Community Development Block Grant and $226,880 from the ESG grant. DHSP plans to expend approximately $140,000 in Cambridge funds to ensure continuation of services funded by these formula grants for the first quarter of FY26 (July 1, 2025 through September 30, 2025) because of this ongoing budgetary uncertainty. Cambridge, however, will be unable to afford to use City funds as a long-term solution to continue providing the services funded by these formula grants without continued funding from the HUD grants.

SUPPLEMENTAL DECLARATION
OF ELLEN SEMONOFF - 3
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

17. The City would be forced to eliminate initiatives which support housing stability and combat homelessness funded by such grants, or reallocate Cambridge funds to maintain such programs, services and positions at the cost of other programs or priorities.

18. Cambridge has already received notice that grants received through HUD will be subject to the terms at issue in this litigation.

19. On May 14, 2025, HUD sent correspondence to the Cambridge's Mayor, the Honorable Denise Simmons, stating "[a]s you are finalizing your Annual Action Plans or Consolidated Plans that are due for submission to our office by August 16, 2025, please be reminded that it is important to align with executive orders and applicable laws. . . . " A copy of this letter is attached as Cambridge Exhibit A.

20. In preparation for receiving a HUD grant award, Cambridge is required to submit its one-year action plan that requires a series of time-sensitive actions before an award may be accepted.

21. Among these time sensitive actions is a requirement that the Cambridge submit Form 424-B. A copy of the form is attached as Cambridge Exhibit B.

22. For the first time, a new requirement has been added to Form 424-B, Paragraph #6, which requires that recipients of HUD grants "will not use Federal funding to promote diversity, equity, and inclusion (DEI) mandates, policies, programs, or activities that violate any applicable Federal anti-discrimination laws."

23. Signing Form 424-B is an early requirement for Cambridge's ability to accept a federal FY25 grant allocation.

24. To qualify for federal FY25 grants, Cambridge must submit its Form 424-B by August 16, 2025.

SUPPLEMENTAL DECLARATION
OF ELLEN SEMONOFF - 4
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

25. Cambridge was also made aware of these additional burdens during an update from the National Community Development Association (NCDA).

26. On April 3, NCDA and the Council of State Community Development Agencies (COSCDA) sent a joint letter to HUD Secretary Turner seeking guidance on the federal FY25 Consolidated Plan and Annual Action Plan submissions.

27. In response, HUD sent a letter, dated June 5, 2025, which indicated that HUD plans to keep in place CPD-20-02 notice released January 14, 2025, Guidance on submitting Consolidated Plans and Annual Action Plans, to govern the submission of Consolidated Plans and Annual Action Plans for FY25. A copy of this letter is attached as Cambridge Exhibit C.

28. Per the June 5, 2025 letter, HUD's FY25 grant agreement will emphasize recipients' required compliance with the Trump Administration's executive orders and policies.

29. Such executive orders include Executive Order 14168, requiring grant funds not be used to "promote gender ideology", and Executive Order 14218, which prohibits undocumented immigrants from receiving public benefits.

30. The City anticipates that HHS LIHEAP funding may also be subject to the terms at issue in this litigation.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 7th day of July, 2025.


Ellen Semonoff (Jul 7, 2025 15:59 EDT)
Ellen Semonoff
Assistant City Manager for Human Services
City of Cambridge

SUPPLEMENTAL DECLARATION
OF ELLEN SEMONOFF - 5
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-7000

OFFICE OF COMMUNITY PLANNING
AND DEVELOPMENT

May 14, 2025

The Honorable Denise Simmons
Mayor of Cambridge
795 Massachusetts Ave., 2nd floor
Cambridge, MA 02139-3219

Dear Mayor Simmons,

Secretary Scott Turner is committed to improving housing opportunities, reducing regulations to lower housing cost, and expanding housing supply for hardworking Americans. The nationwide shortage of rental and owner-occupied properties and the current rate of construction has not kept pace with the demand. This lack of adequate housing supply leads to higher prices for renters and homebuyers alike, forcing some into homelessness and preventing countless Americans from becoming homeowners. Across the country, partnerships between public and private sectors are providing millions of Americans an opportunity to get ahead. HUD is determined to continue its collaboration with you so programs are responsibly utilized and can spark additional leveraging and partnerships to address the nation's housing crisis.

As authorized by the Consolidated Appropriations Act (Public Law 119-4) on March 15, 2025, I am honored and excited to announce that your jurisdiction is receiving the following Fiscal Year 2025 allocations for the identified programs:

        Community Development Block Grant (CDBG) - $2,638,641.00

        HOME Investment Partnerships (HOME) - $648,119.56

        Emergency Solutions Grants (ESG) - $226,880.00

        Housing Opportunities for Persons W/ HIV/AIDS (HOPWA) - $2,395,799.00

        Housing Trust Fund (HTF) - $0.00

        Recovery Housing Program (RHP) - $0.00

In addition, your jurisdiction's CDBG allocation for this year provides you with $9,693,205.00 in available Section 108 loan guarantee borrowing authority. Section 108 permits you to borrow up to five times of your current CDBG allocation. This loan allows jurisdictions to maximize access to low-interest capital, and provide long-term financing to invest in Opportunity Zones, or further address gap financing for big projects that you envision for your community.

2

    As you are finalizing your Annual Action Plans or Consolidated Plans that are due for submission to our office by August 16, 2025, please be reminded that it is important to align with executive orders and applicable laws. If you or any member of your staff have questions, please do not hesitate to contact your local HUD Field Office in Boston or CPDGDAS@hud.gov.

    Thank you for your interest in CPD programs and for ensuring that these dollars are responsibly achieving outcomes as intended by law. When people have a safe and stable place to call home, they can focus on contributing to the economy and be productive members of their respective communities.

Sincerely,

Claudette Fernandez
General Deputy Assistant Secretary
   for Community Planning and Development

# EXHIBIT B

| Applicant and Recipient Assurances and Certifications | U.S. Department of Housing and Urban Development | OMB Number: 2501-0044 Expiration Date: 2/28/2027 |
|---|---|---|

### Instructions for the HUD 424-B Assurances and Certifications

As part of your application for HUD funding, you, as the official authorized to sign on behalf of your organization or as an individual, must provide the following assurances and certifications. The Responsible Civil Rights Official has specified this form for use for purposes of general compliance with 24 CFR §§ 1.5, 3.115, 8.50, and 146.25, as applicable. The Responsible Civil Rights Official may require specific civil rights assurances to be furnished consistent with those authorities and will specify the form on which such assurances must be made. A failure to furnish or comply with the civil rights assurances contained in this form may result in the procedures to effect compliance at 24 CFR §§ 1.8, 3.115, 8.57, or 146.39.

By submitting this form, you are stating that all assertions made in this form are true, accurate, and correct.

As the duly representative of the applicant, I certify that the applicant: [Insert below the Name and title of the Authorized Representative, name of Organization and the date of signature]:
 *Authorized Representative Name:

 *Title:
 *Applicant/Recipient Organization:

1. Has the legal authority to apply for Federal assistance, has the institutional, managerial and financial capability (including funds to pay the non-Federal share of program costs) to plan, manage and complete the program as described in the application and the governing body has duly authorized the submission of the application, including these assurances and certifications, and authorized me as the official representative of the application to act in connection with the application and to provide any additional information as may be required.

2. Will administer the grant in compliance with Title VI of the Civil Rights Act of 1964 (42 U.S.C 2000(d)) and implementing regulations (24 CFR part 1), which provide that no person in the United States shall, on the grounds of race, color or national origin, be excluded from participation in, be denied the benefits of, or otherwise be subject to discrimination under any program or activity that receives Federal financial assistance OR if the applicant is a Federally recognized Indian tribe or its tribally designated housing entity, is subject to the Indian Civil Rights Act (25 U.S.C. 1301-1303).

3. Will administer the grant in compliance with Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), as amended, and implementing regulations at 24 CFR part 8, the American Disabilities Act (42 U.S.C. §§ 12101 et.seq.), and implementing regulations at 28 CFR part 35 or 36, as applicable, and the Age Discrimination Act of 1975 (42 U.S.C. 6101-07) as amended, and implementing regulations at 24 CFR part 146 which together provide that no person in the United States shall, on the grounds of disability or age, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity that receives Federal financial assistance; except if the grant program authorizes or limits participation to designated populations, then the applicant will comply with the nondiscrimination requirements within the designated population.

4. Will comply with the Fair Housing Act (42 U.S.C. 3601-19), as amended, and the implementing regulations at 24 CFR part 100, which prohibit discrimination in housing on the basis of race, color, religion, sex, disability, familial status, or national origin and will affirmatively further fair housing; except an applicant which is an Indian tribe or its instrumentality which is excluded by statute from coverage does not make this certification; and further except if the grant program authorizes or limits participation to designated populations, then the applicant will comply with the nondiscrimination requirements within the designated population.

5. Will comply with all applicable Federal nondiscrimination requirements, including those listed at 24 CFR §§ 5.105(a) and 5.106 as applicable.

6. Will not use Federal funding to promote diversity, equity, and inclusion (DEI) mandates, policies, programs, or activities that violate any applicable Federal anti-discrimination laws.

7. Will comply with the acquisition and relocation requirements of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended (42 U.S.C. 4601) and implementing regulations at 49 CFR part 24 and, as applicable, Section 104(d) of the Housing and Community Development Act of 1974 (42 U.S.C. 5304(d)) and implementing regulations at 24 CFR part 42, subpart A.

8. Will comply with the environmental requirements of the National Environmental Policy Act (42 U.S.C. 4321 et.seq.) and related Federal authorities prior to the commitment or expenditure of funds for property.

9. That no Federal appropriated funds have been paid, or will be paid, by or on behalf of the applicant, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, and officer or employee of Congress, or an employee of a Member of Congress, in connection with the awarding of this Federal grant or its extension, renewal, amendment or modification. If funds other than Federal appropriated funds have or will be paid for influencing or attempting to influence the persons listed above, I shall complete and submit Standard Form-LLL, Disclosure Form to Report Lobbying. I certify that I shall require all subawards at all tiers (including sub-grants and contracts) to similarly certify and disclose accordingly. Federally recognized Indian Tribes and tribally designated housing entities (TDHEs) established by Federally-recognized Indian tribes as a result of the exercise of the tribe's sovereign power are excluded from coverage by the Byrd Amendment, but State-recognized Indian tribes and TDHEs established under State law are not excluded from the statute's coverage.

**I/We, the undersigned, certify under penalty of perjury that the information provided above is true, accurate, and correct. WARNING: Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil and administrative penalties. (18 U.S.C. §§287, 1001, 1010, 1012, 1014; 31 U.S.C. §3729, 3802; 24 CFR §28.10(b)(1)(iii)).**

 * Signature:

 * Date: (mm/dd/yyyy):

**Public Reporting Burden Statement:** The public reporting burden for this collection of information is estimated to average 0.5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering, and maintaining the data needed, and completing and reviewing the collection of information. Comments regarding the accuracy of this burden estimate and any suggestions for reducing this burden can be sent to: U.S. Department of Housing and Urban Development, Office of the Chief Data Officer, R, 451 7th St SW, Room 4176, Washington, DC 20410-5000. **Do not send completed HUD 424-B forms to this address.** This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a valid OMB control number. The Department of Housing and Urban Development is authorized to collect this information under the authority cited in the Notice of Funding Opportunity for this grant program. The information collected provides assurances and certifications for legal requirements related to the administration of this grant program. HUD will use this information to ensure compliance of its grantees. This information is required to obtain the benefit sought in the grant program. This information will not be held confidential and may be made available to the public in accordance with the Freedom of Information Act (5 U.S.C. §552).

# EXHIBIT C



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-7000

June 5, 2025

Ms. Tess Hembree
Executive Director
Council of State Community Development Agencies
630 I Street, NW
Washington, DC 20001-3736

Ms. Vicki Watson
Executive Director
National Community Development Association (NCDA)
1775 Eye Street NW, Suite 1150
Washington, DC 20006

Dear Ms. Hembree & Ms. Watson:

      On behalf of Secretary Scott Turner, thank you for your letter regarding the Department of Housing and Urban Development's (HUD) Office of Community Planning and Development's (CPD) grantee consolidated plan and annual action plan submissions for Fiscal Year (FY) 2025. Your letter states that Council of State Community Development Agencies (COSCDA) and National Community Development Association (NCDA) members are concerned that their submissions may be flagged for noncompliance with the Administration's executive orders. As a result, both agencies are requesting that HUD issue a memorandum like the guidance provided to Community Development Block Grant – Disaster Recovery (CDBG-DR) grantees under the Universal Notice.

      CPD administers the CDBG-DR program through *Federal Register* Notice each time it receives a Congressional appropriation. This approach has been taken because the CDBG-DR program does not have its own authorization and corresponding regulations. As a result, CPD must describe the processes, procedures, timelines, waivers, and alternative requirements that HUD intends to implement with each allocation of CDBG-DR funding after a qualifying Presidential disaster declaration. Specifically, following the most recent appropriation of CDBG-DR funds for qualifying disasters, the Department published an Allocation Announcement Notice (AAN) in the *Federal Register* that incorporates, via cross-reference, the waivers and alternative requirements provided in the Universal Notice, as appropriate, along with any other new requirements imposed by the specific appropriation.

      In contrast, the consolidated plan and annual action plan submission process for CPD formula grantees is governed by the regulations at 24 CFR Part 91. The January 14, 2025, notice entitled CPD-25-02, Guidance on Submitting Consolidated Plans and Annual Action Plans for FY 2025 remains in effect, including the requirements at 24 CFR 91.500(b) located on page 5. HUD has no plans at this time to update this notice as it continues to accurately document when HUD may disapprove a plan according to the regulations. 24 CFR 91.500(b) states that HUD may disapprove a plan or a portion of a plan if it is inconsistent with the purpose of the Cranston-Gonzalez National Affordable Housing Act (42 U.S.C. 12703), if it is substantially incomplete,

or, in the case of a CDBG certification under §91.225(a) and (b) or §91.325(a) and (b), if it is not satisfactory to the Secretary in accordance with §570.304, §570.429(g), or §570.485(c).  The following are examples provided in §91.500(b) of substantially incomplete plans:

1. A plan that was developed without the required citizen participation or the required consultation;

2. A plan that fails to satisfy all the required elements in this part; and

3. A plan for which a certification is rejected by HUD as inaccurate, after HUD has inspected the evidence and provided due notice and opportunity to the jurisdiction for comment; and

4. A plan that does not include a description of the manner in which the unit of general local government or state will provide financial or other assistance to a public housing agency if the public housing agency is designated as "troubled" by HUD.

Grantees are also encouraged to review the White House Executive Orders as they develop their consolidated plan and annual action plans.  After submission and HUD's review of these plans, the FY2025 grant agreement will also emphasize conformity with applicable Administration priorities and executive orders.  Under the FY 2025 grant agreement, conformity means that a grantee:

1. shall not use grant funds to promote "gender ideology," as defined in Executive Order (E.O.) 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

2. agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

3. certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964;

4. shall not use any grant funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment; and that

5. notwithstanding anything in the grant or application, this Grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or requirements implementing Executive Orders that have been revoked.

6. The Grantee must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable

      requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.

7. If applicable, no state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.

8. Unless excepted by PRWORA, the Grantee must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

9. Faith-based organizations may be subrecipients for funds on the same basis as any other organization. Grantees may not, in the selection of subrecipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

Grantees should be reminded that they must also continue to use their CPD funding in a manner that complies with applicable statutes, which include:

- Section 109 of the HCDA, 42 U.S.C. 5309;
- Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.*;
- Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.*;
- Title VIII of the Civil Rights Act of 1968 (The Fair Housing Act), 42 U.S.C. 3601 – 19;
- Section 504 and 508 of the Rehabilitation Act of 1973, 29 U.S.C. 794;
- The Americans with Disabilities Act of 1990, 42 U.S.C. 12131 *et seq.*; and
- Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (Public Law 104-193) (PRWORA).

Your letter also requests a 60-day extension to allow grantees time to comply with any Administration requested changes. Under 24 CFR 91.15, each jurisdiction should submit its consolidated plan to HUD at least 45 days before the start of its program year. The majority of CPD's grantees have a program year start date of July 1st, which means those grantees would submit their plan on or before May 15th. As you are aware, the Department is required to release its formula allocations within 60 days of appropriation. For FY 2025, HUD posted these allocations on May 13, 2025. Given the timing of most annual appropriations, it is not unusual for a grantee to be able to submit its plan as soon as allocations are announced and completes its citizen participation process. We are aware that many grantees begin their planning process well in advance of an allocation announcement and provide guidance on this in CPD Notice 25-02. Additionally, §91.15(a) provides HUD the ability to grant a jurisdiction an extension of the submission deadline for good cause, with the exception of the deadline of August 16. **The Department's failure to receive the plan by August 16, 2025, will automatically result in a loss of CDBG funds for the program year.**

We value our partnership with NCDA and COSCDA and the broader CDBG Coalition's efforts to assist grantees across the nation perform and achieve program outcomes. Thank you for the collaboration in guiding grantees and reminding them of the value of aligning with applicable statutes, regulations, and executive orders in developing and preparing to submit their respective consolidated plan and/or annual action plan. CPD staff, as always, are available to provide technical assistance.

We look forward to continuing our partnership with you. If you should have any questions, please reach out to me via email at Claudette.Fernandez1@hud.gov.

Sincerely,

Claudette Fernandez
Digitally signed by Claudette Fernandez
Date: 2025.06.05 12:13:50 -04'00'

Claudette Fernandez
General Deputy Assistant Secretary

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I served a true and correct copy of the foregoing document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 14th day of July, 2025.

/s/ Gabriela DeGregorio
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE - 1

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750