THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR. COUNTY, et al.,

Plaintiffs,

v.

SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development, et al.,

Defendants.

No. 2:25-cv-00814-BJR

DECLARATION OF CASSANDRA BECKER

I, CASSANDRA BECKER declare as follows:

1. I am the Division Administrator of the Housing Access and Affordability Division of the Dane County Department of Human Services.

2. In total, I have over 11 years of experience in the housing and community development field in Dane County.

3. Dane County is experiencing a severe housing and homelessness crisis. Hundreds of people in Dane County are homeless on any given night. For example, according to a January 2024 Unsheltered Point-in-Time (PIT) Count, which takes a snapshot of the number of people without housing on a specific date, 737 households were experiencing homelessness.

4. In order to house people experiencing homelessness, Dane County receives funding from the U.S. Department of Housing and Urban

DECLARATION OF CASSANDRA BECKER- 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Development's (HUD) Continuum of Care (CoC) program for permanent supportive housing to individuals who are chronically homeless as defined by HUD.

5. There were 123 households (160 individuals) enrolled in the CoC program for FY2023 (04/01/24-03/31/25) who have a documented mental health diagnosis and were previously experiencing homeless for a long period of time before being stability housed.

6. The individuals in the CoC program are very low-income, and the majority of them receive federal Supplemental Security Insurance or Social Security Disability Insurance (SSI/SSDI) as their main source of income. The rental assistance provided via the CoC program is vital to these individuals' long term economic and housing stability because the amount of SSI/SSDI is insufficient to cover rent and other essentials. Without the rental assistance provided through the CoC grant, the households enrolled in the program would be unlikely to afford housing on their limited income. Those without enough support would likely face eviction and return to homelessness.

7. Dane County enhanced this program by applying for additional HUD funds to expand client services to include Supportive Services. Thanks to those additional HUD funds, since April 2024, clients with the most serious mental health and more complex medical needs now receive more frequent support and crisis interventions by support teams built around clients. This HUD-funded Supportive Services program funds three full time staff to help those needing the most intensive services. These additional staff are able to triage and support clients during personal crises and develop personal service plans with clients to help prevent further decline. Supportive services also use other eligible costs to assist participants with transportation and other basis needs.

8. Dane County receives CoC funds through the Dane County/Madison Continuum

DECLARATION OF CASSANDRA BECKER- 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

of Care allocation process. The City of Madison is the lead applicant for the funds, and Dane County is a grantee in the process. Dane County then subcontracts with Housing Initiatives, Inc., a local agency that provides services funded by the HUD CoC grants funds allocated to Dane County.

9. Dane County has applied annually for CoC funding as part of a continuum since at least 2009.

10. In 2025, Dane County anticipates receiving $1,670,021 in HUD CoC funding.

11. On or about March 20, 2025, HUD issued an updated CoC Grant Agreement for FY 2024. Attached to this Declaration as Exhibit A is a true and correct copy of this CoC Agreement #WI0096L5I032417.

12. The FY 2024 CoC Grant Agreement contains additional funding conditions that were not included in the NOFO and of which Dane County was not aware when it applied for funding. Specifically, the new CoC Agreement requires Dane County to agree to a number of conditions including but not limited to ones related to "gender ideology;" immigration verification and enforcement; and abortion. None of these conditions appeared in prior CoC agreements.

13. These new conditions are difficult to meet. The immigration verification condition requires Dane County to agree to "administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the PRWORA and any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws." This requires that Dane County use the Systematic Alien Verification for

DECLARATION OF CASSANDRA BECKER- 3
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Entitlements (SAVE) system or equivalent verification system approved by the federal government. Dane County has made a good faith effort to register for the SAVE system without success.

14. The grant conditions are in tension with Dane County contracts with service providers that include a requirement that providers agree not to discriminate against applicants based on protected status. It is important to the Dane County Human Services Department that its providers offer services in a manner that is consistent with state law and County ordinance provisions that prohibit discrimination based on protected status.

15. Backfilling the loss of HUD CoC funds with general purpose revenue is not possible without cuts or elimination of other vital services. No other source of funding exists to support a sponsor-based rental assistance program. Dane County is limited in the amount of funds it can invest in its operations due to state levy limits.

16. Rents in Dane County continue to climb, placing an immense cost burden on low-income households. Without HUD CoC funding most if not all of 123 households served in the program will face significant financial hardship that will likely result in evictions and a return to homelessness.

17. In addition to CoC funds, Dane County, as the lead entity of the Dane County Urban County Consortium (Dane County UCC), annually receives Community Development Block Grant (CDBG) and HOME Investment Partnerships (HOME) funds through the U.S. Department of Housing and Urban Development (HUD) as a formula grantee. Dane County then contracts with multiple subrecipients and housing developers that provide services and construct new housing units funded by the HUD CDBG and HOME funds allocated to Dane County.

DECLARATION OF CASSANDRA BECKER- 4
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

18. Dane County has to produce a 5-year Consolidated Plan that is guided by community input on the needs in our community. Following the approval of the Consolidated Plan, Dane County procures contracts with multiple subrecipients and housing developers that provide services and construct new housing units funded by the HUD CDBG and HOME funds allocated to Dane County. An Annual Action Plan is drafted and submitted to HUD for review following receiving notice of Dane County's awarded amount for the fiscal year. Upon approval of the Annual Action Plan, a grant agreement is issued by HUD to Dane County for the year's source of funds. At the completion of the fiscal year, Dane County is responsible for submitting the Consolidated Annual Performance Evaluation Report (CAPER) for review and approval, which outlines the activities and performance metrics from the prior year.

19. In 2025 Dane County anticipates receiving $1,088,902 in CDBG Funds and $551,908 in HOME funds. Those funds are used to provide decent housing, provide a suitable living environment, and expand economic opportunities. In the 2024 Consolidated Annual Performance Evaluation Report (CAPER), Dane County reported the following achievements:

- 1,077 Families were assisted with CDBG and HOME funds (a 50% increase from 2023)
- 163 Businesses assisted (a 29% increase from 2023)
- 31 Jobs created or retained
- 22 Households provided with affordable housing units
- 38 Households supported through home rehabilitation or acquisition.

20. If Dane County is denied CDBG and HOME funding by HUD it would be unable to serve the low-to-moderate income households who need the services most. Without this funding, most, if not all of the 527 households served by the program this year will face significant financial hardship that could result in evictions, return to homelessness, or living in places that are not safe and sanitary.

DECLARATION OF CASSANDRA BECKER- 5
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

21.  The loss of funding to Dane County would mean that in 2025 there would be 14 nonprofit agencies that would have insufficient funding to operate their programs. The economic burden that will be placed on the agencies is one they have not prepared for. In this situation, it would be worse than the global pandemic they just survived five years ago, as at least during that time, they had funding available and learned to use it as efficiently as possible.

22.  No other source of funding exists to support housing programs of the size and scope of CDBG and HOME. Dane County is limited in the amount of tax levy it can invest in its operations due to state levy limits. Backfilling the loss of HUD CDBG and HOME funds with Dane County general purpose revenue is not possible without cuts or elimination of other vital services.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 8th day of July, 2025.

*C.S.B*
Cassandra Becker

DECLARATION OF CASSANDRA BECKER- 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A

**Grant Number/FAIN: WI0096L5I032417**
**Recipient Name: Dane County, WI**
**Tax ID No.: 39-6005684**
**Unique Entity Identifier (UEI) Number: M7DYJMKQ9MH7**

## CONTINUUM OF CARE PROGRAM (Assistance Listing# 14.267) GRANT AGREEMENT

This Grant Agreement ("this Agreement") is made by and between the United States Department of Housing and Urban Development ("HUD") and <u>Dane County, WI</u> (the "Recipient").

This Agreement, the Recipient's use of funds provided under this Agreement (the "Grant" or "Grant Funds"), and the Recipient's operation of projects assisted with Grant Funds are governed by

1. The Consolidated Appropriations Act, 2024 (Public Law 118-42, approved March 9, 2024);

2. title IV of the McKinney-Vento Homeless Assistance Act 42 U.S.C. 11301 et seq. (the "Act");

3. the Continuum of Care Program rule at 24 CFR part 578 (the "Rule"), as amended from time to time;

4. the Notice of Funding Opportunity for FY 2024 and FY 2025 Continuum of Care Competition and Renewal or Replacement of Youth Homeless Demonstration Program (NOFO), except for references in the NOFO to Executive Orders that have since been repealed;

5. all current Executive Orders; and

6. the Recipient's application submissions on the basis of which these Grant Funds were approved by HUD, including the certifications, assurances, technical submission documents, and any information or documentation required to meet any grant award condition (collectively, the "Application").

The Application is incorporated herein as part of this Agreement, except that only the project (those projects) listed below are funded by this Agreement. In the event of any conflict between any application provision and any provision contained in this Agreement, this Agreement shall control. Capitalized terms that are not defined in this agreement shall have the meanings given in the Rule.

1

☐ The Recipient is a Unified Funding Agency (UFA).
☐ The Recipient is the sole recipient designated by the applicable Continuum of Care.
☒ The Recipient is not the only recipient designated by the applicable Continuum of Care.

HUD's total funding obligation authorized by this grant agreement is $1787551, allocated between the project(s) listed below (each identified by a separate grant number) and, within those projects, between budget line items, as shown below. The Grant Funds an individual project will receive are as shown in the Application on the final HUD-approved Summary Budget for the project. Recipient shall use the Grant Funds provided for the projects listed below, during the budget period(s) period stated below.

| **Grant No. (FAIN)** | **Grant Term** | **Performance Period** | **Budget Period** | **Total Amount** |
|---|---|---|---|---|
| WI0096L5I032417 | 12 | April 1, 2025 – March 31, 2026 | April 1, 2025 – March 31, 2026 | $1787551 |
| allocated between budget line items as follows: | | | | |
| a. Continuum of Care Planning Activities | | | | $0 |
| b. Acquisition | | | | $0 |
| c. Rehabilitation | | | | $0 |
| d. New construction | | | | $0 |
| e. Leasing | | | | $0 |
| f. Rental assistance | | | | $1363488 |
| g. Supportive services | | | | $351109 |
| h. Operating costs | | | | $0 |
| i. Homeless Management Information System | | | | $0 |
| j. Administrative costs | | | | $72954 |
| k. Relocation costs | | | | $0 |
| l. VAWA Costs | | | | $0 |
| m. Rural Costs | | | | $0 |
| n. HPC homelessness prevention activities: Housing relocation and stabilization services  Short-term and medium-term rental assistance | | | | $0 $0 |

**Pre-award Costs for Continuum of Care Planning**

The Recipient may, at its own risk, incur pre-award costs for continuum of care planning awards, after the date of the HUD selection notice and prior to the effective date of this

2

Agreement, if such costs: a) are consistent with 2 CFR 200.458; and b) would be allowable as a post-award cost; and c) do not exceed 10 percent of the total funds obligated to this award. The incurrence of pre-award costs in anticipation of an award imposes no obligation on HUD either to make the award, or to increase the amount of the approved budget, if the award is made for less than the amount anticipated and is inadequate to cover the pre-award costs incurred.

**These provisions apply to all Recipients:**

    The Recipient:

        (1) shall not use grant funds to promote "gender ideology," as defined in E.O. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

        (2) agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

        (3) certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964;

        (4) shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment; and

        (5) Notwithstanding anything in the NOFO or Application, this Grant shall not be governed by Executive Orders revoked by E.O. 14154, including E.O. 14008, or NOFO requirements implementing Executive Orders that have been revoked.

    The recipient must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.

    No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.

    Subject to the exceptions provided by PRWORA, the recipient must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

HUD will not enforce provisions of the Grant Agreement to the extent that they require the project to use a housing first program model.

As stated in Section III.A.2 of the NOFO, Faith-based organizations may be recipients or subrecipients for funds under this agreement on the same basis as any other organization. Recipients may not, in the selection of subrecipients, discriminate against an organization based on the organization's religious character, affiliation, or exercise.

If any new projects funded under this Agreement are for project-based rental assistance for a term of fifteen (15) years, the funding provided under this Agreement is for the performance period stated herein only. Additional funding is subject to the availability of annual appropriations.

The budget period and performance period of renewal projects funded by this Agreement will begin immediately at the end of the budget period and performance period of the grant being renewed. Eligible costs incurred between the end of Recipient's budget period and performance period under the grant being renewed and the date this Agreement is executed by both parties may be reimbursed with Grants Funds from this Agreement. No Grant Funds for renewal projects may be drawn down by Recipient before the end date of the project's budget period and performance period under the grant that has been renewed.

For any transition project funded under this Agreement the budget period and performance period of the transition project(s) will begin immediately at the end of the Recipient's final operating year under the grant being transitioned. Eligible costs, as defined by the Act and the Rule incurred between the end of Recipient's final operating year under the grant being transitioned and the execution of this Agreement may be paid with funds from the first operating year of this Agreement.

HUD designations of Continuums of Care as High-performing Communities (HPCS) are published on HUD.gov in the appropriate Fiscal Years' CoC Program Competition Funding Availability page. Notwithstanding anything to the contrary in the Application or this Agreement, Recipient may only use grant funds for HPC Homelessness Prevention Activities if the Continuum that designated the Recipient to apply for the grant was designated an HPC for the applicable fiscal year.

The Recipient must use the Grant Funds only for costs (including indirect costs) that meet the applicable requirements in 2 CFR part 200 (including appendices), as may be amended from time to time. The Recipient's indirect cost rate information is as provided in Addendum #1 to this Agreement. The Recipient must immediately notify HUD upon any change in the Recipient's indirect cost rate, so that HUD can amend the Agreement to reflect the change if necessary.

HUD notifications to the Recipient shall be to the address of the Recipient as stated in the Recipient's applicant profile in *e-snaps*. Recipient notifications to HUD shall be to the HUD Field Office executing the Agreement. No right, benefit, or advantage of the Recipient hereunder

may be assigned without prior written approval of HUD.

The Recipient must comply with the applicable requirements in 2 CFR part 200, as may be amended from time to time.

*Build America, Buy America Act*. The Grantee must comply with the requirements of the Build America, Buy America (BABA) Act, 41 USC 8301 note, and all applicable rules and notices, as may be amended, if applicable to the Grantee's infrastructure project. Pursuant to HUD's Notice, "Public Interest Phased Implementation Waiver for FY 2022 and 2023 of Build America, Buy America Provisions as Applied to Recipients of HUD Federal Financial Assistance" (88 FR 17001), any funds obligated by HUD on or after the applicable listed effective dates, are subject to BABA requirements, unless excepted by a waiver.

*Waste, Fraud, Abuse, and Whistleblower Protections*. Any person who becomes aware of the existence or apparent existence of fraud, waste or abuse of any HUD award must report such incidents to both the HUD official responsible for the award and to HUD's Office of Inspector General (OIG). HUD OIG is available to receive allegations of fraud, waste, and abuse related to HUD programs via its hotline number (1-800-347-3735) and its online hotline form. You must comply with 41 U.S.C. § 4712, which includes informing your employees in writing of their rights and remedies, in the predominant native language of the workforce. Under 41 U.S.C. § 4712, employees of a government contractor, subcontractor, grantee, and subgrantee—as well as a personal services contractor—who make a protected disclosure about a Federal grant or contract cannot be discharged, demoted, or otherwise discriminated against as long as they reasonably believe the information they disclose is evidence of:
    1. Gross mismanagement of a Federal contract or grant;
    2. Waste of Federal funds;
    3. Abuse of authority relating to a Federal contract or grant;
    4. Substantial and specific danger to public health and safety; or
    5. Violations of law, rule, or regulation related to a Federal contract or grant.

HUD may terminate all or a portion of the Grant in accordance with the Act, the Rule, and 2 CFR 200.340.   The Agreement constitutes the entire agreement between the parties and may be amended only in writing executed by HUD and the Recipient.

By signing below, Recipients that are states and units of local government certify that they are following a current HUD approved CHAS (Consolidated Plan).

5

This agreement is hereby executed on behalf of the parties as follows:

**UNITED STATES OF AMERICA,**
**Secretary of Housing and Urban Development**

BY: ___*Signed by: Matthew C. LaMantia*_____
(Signature)

_____Matthew C. LaMantia, Acting Director_____
(Typed Name and Title)

_____March 20, 2025_____
(Date/Federal Award Date)


**RECIPIENT**

Dane County, WI_____
(Name of Organization)


BY: _____
    (Signature of Authorized Official)

    _____
    (Typed Name and Title of Authorized Official)

    _____
       (Date)

Addendum #1 to WI0096L5I032417

OMB Number. 2501-0044
Expiration Date: 2/28/2027

| **Indirect Cost Information for Award Applicant/Recipient** |
|---|
| 1. Federal Program/Assistance Listing Program Title:<br>CONTINUUM OF CARE PROGRAM/Assistance Listing# 14.267 |
| 2. Legal Name of Applicant/Recipient: |
| 3. Indirect Cost Rate Information for the Applicant/Recipient:<br>*Please check the box that applies to the Applicant/Recipient and complete the table only as provided by the instructions accompanying this form.*<br><br>☐ The Applicant/Recipient will not charge indirect costs using an indirect cost rate.<br><br>☐ The Applicant/Recipient will calculate and charge indirect costs under the award by applying a *de minimis* rate as provided by 2 CFR 200.414(f), as may be amended from time to time.<br><br>☐ The Applicant/Recipient will calculate and charge indirect costs under the award using the indirect cost rate(s) in the table below, and each rate in this table is included in an indirect cost rate proposal developed in accordance with the applicable appendix to 2 CFR part 200 and, *if required*, has been approved by the cognizant agency for indirect costs.<br><br>{{TABLE}} |
| 4. Submission Type (check only one):<br>☐ Initial submission  ☐ Update | 5. Effective date(s): |
| 6. Certification of Authorized Representative for the Applicant/Recipient:<br>**Under penalty of perjury, I certify on behalf of the Applicant/Recipient that<br>(1) all information provided on this form is true, complete, and accurate, and<br>(2) the Applicant/Recipient will provide HUD with an update to this form immediately upon learning of any change in the information provided on this form, and<br>(3) I am authorized to speak for the Applicant/Recipient regarding all information provided on this form.<br><br>Signature: _____<br>Date: _____<br>Name: _____<br>Title: _____ |

| Agency/department/major function | Indirect cost rate | Type of Direct Cost Base | Type of Rate |
|---|---|---|---|
|  | % |  |  |
|  | % |  |  |
|  | % |  |  |

7

**\*\*Warning:** Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil and administrative penalties (18 U.S.C §§ 287, 1001, 1010, 1012, 1014; 31 U.S.C. § 3729, 3802; 24 CFR § 28.10(b)(iii)).

**Public Reporting Burden Statement:** This collection of information is estimated to average 0.25 hours per response, including the time for reviewing instructions, searching existing data sources, gathering, and maintaining the data needed, and completing and reviewing the collection of the requested information. Comments regarding the accuracy of this burden estimate and any suggestions for reducing this burden can be sent to: U.S. Department of Housing and Urban Development, Office of the Chief Data Officer, R, 451 7th St SW, Room 8210, Washington, DC 20410-5000. Do not send completed forms to this address. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a valid OMB control number. This agency is authorized to collect this information under Section 102 of the Department of Housing and Urban Development Reform Act of 1989. The information you provide will enable HUD to carry out its responsibilities under this Act and ensure greater accountability and integrity in the provision of certain types of assistance administered by HUD. This information is required to obtain the benefit sought in the grant program. Failure to provide any required information may delay the processing of your application and may result in sanctions and penalties including of the administrative and civil money penalties specified under 24 CFR §4.38. This information will not be held confidential and may be made available to the public in accordance with the Freedom of Information Act (5 U.S.C. §552). The information contained on the form is not retrieved by a personal identifier, therefore it does not meet the threshold for a Privacy Act Statement.

OMB Number. 2501-0044<br>Expiration Date: 2/28/2027

**Instructions for Completing the Indirect Cost Information for the Award Applicant/Recipient**

| Number | Item | Instructions |
|---|---|---|
| 1 | Federal Program/ Assistance Listing Program Title | Enter the title of the program as listed in the applicable funding announcement or notice of funding availability. |
| 2 | Legal Name of Applicant/ Recipient | Enter the legal name of the entity that will serve as the recipient of the award from HUD. |
| 3 | Indirect Cost Rate Information for the Applicant/ Recipient | Mark the one (and only one) checkbox that best reflects how the indirect costs of the Applicant/Recipient will be calculated and charged under the award. Do not include indirect cost rate information for subrecipients.<br><br>The table following the third checkbox must be completed only if that checkbox is checked. When listing a rate in the table, enter the percentage amount (for example, "15%"), the type of direct cost base to be used (for example, "MTDC"), and the type of rate ("predetermined," "final," "fixed," or "provisional").<br><br>If using the Simplified Allocation Method for indirect costs, enter the applicable indirect cost rate and type of direct cost base in the first row of the table.<br><br>If using the Multiple Allocation Base Method, enter each major function of the organization for which a rate was developed and will be used under the award, the indirect cost rate applicable to that major function, and the type of direct cost base to which the rate will be applied.<br><br>If the Applicant/Recipient is a government and more than one agency or department will carry out activities under the award, enter each agency or department that will carry out activities under the award, the indirect cost rate(s) for that agency or department, and the type of direct cost base to which each rate will be applied. |
| 4 | Submission Type | Check the appropriate box to identify whether this is the first submission of this form for the award or an update to a previous submission of this form for the award. |
| 5 | Effective date(s) | Enter the date(s) for which the information on this form applies. |
| 6 | Certification of Authorized Representative for the Applicant/ Recipient | An employee or officer of the Applicant/Recipient with the capacity and authority to make this certification for the Applicant/Recipient must make the certification by signing as provided. They must also provide the date of their signature, full name, and position title. |

9

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I served a true and correct copy of the foregoing document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 14th day of July, 2025.

/s/ Gabriela DeGregorio
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE - 1

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750