THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

                Plaintiffs,

    v.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

                Defendants.

No. 2:25-cv-00814-BJR

DECLARATION OF JOHN
FOLLETT

I, John Follett, declare as follows:

1.      I am a resident of the State of Oregon. I am over the age of eighteen, competent to testify, and make this declaration based on personal knowledge and my review of relevant records.

2.      I am employed by the City of Eugene ("Eugene") as the Administrative Division Manager for Eugene Springfield Fire. I was appointed to that position in July of 2021. In this role my responsibilities include oversight of budgeting and financial reporting, which includes Eugene's participation in federal financial assistance programs.

3.      In 2010, the cities of Eugene and Springfield entered into an intergovernmental agreement to functionally consolidate operations of the two fire departments while allowing the cities to retain full budget authority over their respective expenditures. The consolidated fire departments operate under the name Eugene Springfield Fire ("ESF"). ESF provides fire and emergency response services within the Eugene/Springfield metro area. Eugene receives federal

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    financial assistance originating from the Department of Health and Human Services ("HHS")

2    that Eugene uses to support ESF services. Such HHS funds are often received in the form of

3    pass-through funding from the State of Oregon and its political subsidiaries.

4        4.    Eugene has received, or expects to receive, millions of dollars in federal funding

5    from the State of Oregon for providing Ground Emergency Medical Transportation ("GEMT")

6    through the Oregon Health Authority ("OHA"). The Intergovernmental Transfer Agreement

7    between Eugene and OHA is attached as Exhibit A (the "GEMT Fee For Service Agreement").

8    In FY25 alone Eugene received approximately $578,644 of GEMT payments from OHA covered

9    by the GEMT Fee For Service Agreement. Based on information available to me, I understand

10   such GEMT federal funds Eugene receives from OHA originate from HHS. Eugene also

11   regularly applies for, and receives, subrecipient grants from OHA related to preparedness and

12   response training that provide funds originating from HHS.

13       5.    Eugene must agree to certain terms and conditions as a condition of receiving

14   sub-recipient funding some of which, on knowledge or belief, the State of Oregon, as a direct

15   recipient from HHS, must pass through to sub-recipients like Eugene. For example, the GEMT

16   Fee For Service Agreement includes, as its Exhibit C, certain "Federal Terms and Conditions."

17       6.    The loss of HHS program allocations because of changes to terms and conditions

18   binding upon sub-recipients would irreparably harm Eugene and its residents. Eugene relies on

19   funding from HHS programs to fund emergency medical transport programs. Further, the loss of

20   HHS program funding for preparedness and response training will lessen the amounts that

21   Eugene can budget for training and result in less overall training to those critical first responders.

22       I declare under penalty of perjury that the foregoing is true and correct.

23       EXECUTED this 8th day of July, 2025.

24       CITY OF EUGENE

25       By:

26       John Follett
         Eugene Springfield Fire Administrative

27       Division Manager

DECLARATION OF JOHN FOLLETT - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A



182774-0182774-0

**Agreement Number #182774-0**

## STATE OF OREGON
## INTERGOVERNMENTAL TRANSFER AGREEMENT

In compliance with the Americans with Disabilities Act, this document is available in alternate formats such as Braille, large print, audio recordings, Web-based communications and other electronic formats. To request an alternate format, please send an e-mail to dhs-oha.publicationrequest@state.or.us or call 503-378-3486 (voice) or 503-378-3523 (TTY) to arrange for the alternative format.

This Agreement is between the State of Oregon, acting by and through its Oregon Health Authority, hereinafter referred to as "OHA" and

**Eugene Fire and EMS**
**1705 West 2nd Avenue**
**Eugene, OR, 97402**
**Contact: Michael Caven**
**Phone: 541-682-7115**
**Email: mcaven@eugene-or.gov; tsmith@eugene-or.gov**

hereinafter referred to as "Agency."

Work to be performed under this Agreement relates principally to OHA's

**OHA Health Systems Division**
**Fee For Service Operations and Quality Assurance**
**500 Summer Street NE, Salem OR, 97301**
**Agreement Administrator: Carmen Armendariz**
**Telephone: 503-891-4395**
**E-mail address: carmen.armendariz@oha.oregon.gov**

1.    **Effective Date and Duration.**

This Agreement shall become effective on the date this Agreement has been fully executed by every party and, when required, approved by Department of Justice. This Intergovernmental Transfer Agreement is an expense reimbursement agreement for approved costs for the period beginning on or after **July 1, 2022** and ending **June 30, 2023**. Unless extended or terminated earlier in accordance with its terms, this Agreement shall expire on **June 30, 2025**.

Agreement termination or expiration shall not extinguish or prejudice either party's right to enforce this Agreement with respect to any default by the other party that has not been cured.

**2.     Agreement Documents.**

    **a.**    This Agreement consists of this document and includes the following listed exhibits which are incorporated into this Agreement:

        (1) Exhibit A, Part 1:  Agreement
        (2) Exhibit A, Part 2:  Payment and Financial Reporting
        (3) Exhibit A, Part 3:  Special Terms and Conditions
        (4) Exhibit B:          Standard Terms and Conditions
        (5) Exhibit C:          Federal Terms and Conditions

    There are no understandings, agreements, or representations, oral or written, regarding this Agreement that are not specified herein.

    **b.**    In the event of a conflict between two or more of the documents comprising this Agreement, the language in the document with the highest precedence shall control. The precedence of each of the documents comprising this Agreement is as follows, listed from highest precedence to lowest precedence: this Agreement without Exhibits, Exhibits C, B, and A.

    **c.**    For purposes of this Agreement, "Work" means the agreement to reimburse costs for allowable costs for the 2023 state fiscal year as specified in this Agreement.

**3.     Consideration.**

See Exhibit 2, Payment and Financial Reporting.

**4.     Vendor or Subrecipient Determination.** In accordance with the State Controller's Oregon Accounting Manual, policy 30.40.00.104, OHA's determination is that:

    ☐ Agency is a subrecipient    ☒ Agency is a Vendor    ☐ Not applicable

Catalog of Federal Domestic Assistance (CFDA) #(s) of federal funds to be paid through this Agreement: CFDA 93.778

5.    **Agency Data and Certification.**

    a.    **Agency Information.** This information is requested pursuant to ORS 305.385.

        **PLEASE PRINT OR TYPE THE FOLLOWING INFORMATION:**

**Agency Name (exactly as filed with the IRS):**    City of Eugene

Street address:    100 W 10th Ave, Suite 400

City, state, zip code:    Eugene, OR 97401

Email address:    TSmith@eugene-or.gov

Telephone:    ( 541 ) 682-5498    Facsimile:    ( 541) 682-7116

**Agency Proof of Insurance:** Agency shall provide the following information upon submission of the signed Agreement. All insurance listed herein must be in effect prior to Agreement execution.

Workers' Compensation Insurance Company: Safety National Casualty Corporation

Policy #: SP4066759    Expiration Date: 7/1/2024

    b.    **Certification.** Without limiting the generality of the foregoing, by signature on this Agreement, the undersigned hereby certifies under penalty of perjury that:

        **(1)**    Agency is in compliance with all insurance requirements of this Agreement and notwithstanding any provision to the contrary, Agency shall deliver to the OHA Agreement Administrator (see page 1 of this Agreement) the required Certificate(s) of Insurance within 30 days of execution of this Agreement. By certifying compliance with all insurance as required by this Agreement, Agency acknowledges it may be found in breach of the Agreement for failure to obtain required insurance. Agency may also be in breach of the Agreement for failure to provide Certificate(s) of Insurance as required and to maintain required coverage for the duration of the Agreement;

        **(2)**    Agency acknowledges that the Oregon False Claims Act, ORS 180.750 to 180.785, applies to any "claim" (as defined by ORS 180.750) that is made by (or caused by) the Agency and that pertains to this Agreement or to the project for which the Agreement work is being performed. Agency certifies that no claim described in the previous sentence is or will be a "false claim" (as defined by ORS 180.750) or an act prohibited by ORS 180.755. Agency further acknowledges that in addition to the remedies under this Agreement, if it makes (or causes to be made) a false claim or performs (or causes to be performed) an act prohibited under the Oregon False Claims Act, the Oregon Attorney General may enforce the liabilities and penalties provided by the Oregon False Claims Act against the Agency;

        **(3)**    The information shown in Section 5a, "Agency Information" above is Agency's true, accurate and correct information;

        **(4)**    To the best of the undersigned's knowledge, Agency has not discriminated against and will not discriminate against minority, women or emerging small

business enterprises certified under ORS 200.055 in obtaining any required subcontracts;

**(5)**    Agency and Agency's employees and agents are not included on the list titled "Specially Designated Nationals" maintained by the Office of Foreign Assets Control of the United States Department of the Treasury and currently found at *https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx*;

**(6)**    Agency is not listed on the non-procurement portion of the General Service Administration's "List of Parties Excluded from Federal procurement or Non-procurement Programs" found at *https://www.sam.gov/portal/public/SAM/*;

**(7)**    Agency is not subject to backup withholding because:

**(a)**    Agency is exempt from backup withholding;

**(b)**    Agency has not been notified by the IRS that Agency is subject to backup withholding as a result of a failure to report all interest or dividends; or

**(c)**    The IRS has notified Agency that Agency is no longer subject to backup withholding; and

**(8)**    Contractor Federal Identification Number (FEIN) or Social Security Number (SSN) provided is true and accurate. If this information changes, Contractor shall provide OHA with the new FEIN or SSN within 10 days.

**AGENCY, BY EXECUTION OF THIS AGREEMENT, HEREBY ACKNOWLEDGES THAT AGENCY HAS READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS.**

**6.    Signatures.**

**By: City of Eugene/Eugene Springfield Fire**

| | |
|---|---|
| _Authorized Signature_ | Sarah Medary |
| Authorized Signature | Printed Name |
| City Manager | 03/22/2024 |
| Title | Date |

**State of Oregon, acting by and through its Oregon Health Authority
By:**

| | |
|---|---|
| Authorized Signature | Printed Name |
| Title | Date |

**Approved for Legal Sufficiency:**

| | |
|---|---|
| Approved via email by Jeff Wahl, Attorney-in-Charge | 03/14/2024 |
| Department of Justice | Date |

Reviewed and Approved by
Chief Caven _MC_   Date 03/21/2024

## EXHIBIT A

### Part 1
### AGREEMENT

This Intergovernmental Transfer Agreement ("Agreement") is entered into between the Oregon Health Authority (OHA) and Agency, the Ground Emergency Medical Transportation (GEMT) Provider. This Agreement provides for an intergovernmental transfer of funds (1) to the OHA from Agency in order to provide the non-federal share of the reconciled cost reimbursement amount for the uncompensated Medicaid cost associated with GEMT services provided to OHA Medicaid recipients; and (2) from OHA to Agency in an amount of 100 percent of the reconciled cost reimbursement amount for the uncompensated Medicaid cost associated with GEMT services provided to OHA Medicaid recipients. The intergovernmental transfer program for GEMT providers is established pursuant to Oregon Revised Statute (ORS) 413.234 to 413.235 and in accordance with Oregon Administrative Rule (OAR) 410-136-3370 and in accordance with 42 CFR 433.51.

1.  Fund Transfer. Agency, as a local governmental entity and provider of GEMT services, agrees to transfer funds to OHA as specified in this Agreement in accordance with OAR 410-136- 3370. The transfer to OHA is a condition of payment by OHA for the uncompensated Medicaid cost associated with GEMT services and shall be made prior to any payment by OHA to Agency.

2.  Agency will transfer funds to OHA equivalent to: (1) the non-federal share of Agency's reconciled claim for the uncompensated Medicaid cost associated with the provision of GEMT services for Medicaid recipients during the eligible period; and (2) OHA's fee to cover the costs of administering the GEMT intergovernmental transfer program for providers.

3.  By signing this Agreement, Agency certifies that the funds transferred to OHA as the state share of financial participation qualify for federal financial participation pursuant to 42 CFR part 433.51 where the public funds are appropriated directly to the State or local Medicaid agency and under its administrative control, or certified by the contributing public agency as representing expenditures eligible for federal financial participation under this section and the public funds are not Federal funds, or are Federal funds authorized by Federal law to be used to match other Federal funds.

4.  Agency and OHA agree that both parties shall maintain necessary records and supporting documentation applicable to the uncompensated Medicaid cost associated with GEMT services payments to assure that claims for total funds and federal funds are in accordance with applicable state and federal requirements.

5.  Agency and OHA agree that each party shall have access to the other party's records and supporting documentation as necessary to verify the respective payments under this Agreement.

**EXHIBIT A**

**Part 2**
**Payment and Financial Reporting**

1.    Payment Provisions.

    a.    Agency shall submit documentation to OHA supporting Agency's claim for uncompensated Medicaid costs for GEMT services provided to Medicaid recipients for the time period beginning July 1, 2022 and ending June 30, 2023 (the "eligible period").

    b.    On or before May 15, 2024, Agency shall pay OHA the amount set forth in the table below, the non-federal share of the provider's reconciled claim for the uncompensated Medicaid cost of GEMT services provided to Medicaid recipients for the eligible period based on the applicable match rate, provided by OHA, in effect at the time of the claim.

    c.    Along with payment of the non-federal share, Agency shall pay OHA the administrative fee, as established by OHA and set forth in the table below, for administration of the GEMT intergovernmental transfer program.

    d.    Agency's payments to OHA shall be through either an electronic transfer to a bank account specified by OHA or by submitting written checks to OHA.

        Mail payments to:

        Oregon Health Authority
        OFS Receipting Unit
        P.O. Box 14006
        Salem, Oregon 97309

        For electronic transfer setup contact:
        Daniel Spurrier, DHS/OHA OFS Receipting Unit
        Email: daniel.spurrier@dhsoha.state.or.us
        Phone: 503-945-6858

    e.    OHA shall make payment to Agency the amount set forth in the table below equal to 100 percent of the Agency's allowable reconciled claim for the uncompensated Medicaid cost of GEMT services provided to Medicaid recipients.

    f.    OHA's payment to Agency shall be made by electronic transfer not later than June 30, 2024, to a bank account specified by Agency.

    g.    Agency's claims to OHA for overdue payments on invoices are subject to ORS 293.462.

| | |
|---|---:|
| **Agency's Payment to OHA – Non-Federal Share of GEMT Services** | **$112,349.37** |
| **Agency's Payment to OHA – Administrative Fee** | **$22,469.87** |
| **OHA's Payment to Agency** | **$578,644.21** |

2.    Travel and Other Expenses.

    OHA will not reimburse Agency for any travel or additional expenses under this Agreement.

## EXHIBIT A

### Part 3
### Special Terms and Conditions

1.  **Confidentiality of Client Information.**

    a.    Client Information:

    (1)    All information as to personal facts and circumstances obtained by the Agency on the client ("Client Information") shall be treated as privileged communications, shall be held confidential, and shall not be divulged without the written consent of the client, his or her guardian, or the responsible parent when the client is a minor child, or except as required by other terms of this Agreement. Nothing prohibits the disclosure of information in summaries, statistical, or other form, which does not identify particular individuals.

    (2)    The use or disclosure of Client Information shall be limited to persons directly connected with the administration of this Agreement. Confidentiality policies shall be applied to all requests from outside sources.

    (3)    If Agency, or any of its officers, directors, employees, agents, or subcontractors receives or has access to confidential Social Security Administration (SSA), or Federal Tax Information (FTI) records in the performance of Work under this Agreement, Agency shall comply, and ensure that all of Agency's officers, directors, employees, agents and subcontractors comply, with the following provisions:

    (a)    With respect to SSA records:

    (i)    Provide a current list of employees and employees of any agent or subcontractor with access to SSA records;

    (ii)    Adhere to the same security requirements as employees of OHA;

    (iii)    Abide by all relevant Federal laws, restrictions on access, use, disclosure, and the security requirements contained within OHA's agreement with SSA;

    (iv)    Provide its employees and agents the same security awareness training as OHA's employees; and

    (v)    Include the provisions of this Section 1.a.(3)(a) in any subcontract.

    (b)    With respect to Federal Tax Information (FTI), as defined in IRS Publication 1075:

    (i)    Agency and its officers, directors and employees with access to, or who use FTI provided by OHA must meet the background check requirements defined in IRS Publication 1075;

    (ii)    Any FTI made available to Agency shall be used only for the purpose of carrying out the provisions of this Agreement. Agency shall treat all information contained in FTI as confidential and that information shall not be divulged or made known in any

manner to any person except as may be necessary in the performance of this Agreement. Inspection by or disclosure to anyone other than an officer or employee of the Agency is prohibited;

(iii)    Agency shall account for all FTI upon receipt and shall properly store all FTI before, during, and after processing. In addition, all FTI related output and products will be given the same level of protection as required for the source material;

(iv)    No work involving FTI furnished under this Agreement will be subcontracted without prior written approval of the IRS;

(v)    Maintain a list of employees who are authorized access to FTI. Such list will be provided to OHA and, upon request, to the IRS reviewing office; and

(vi)    Include the provisions of this Section 1.a.(3)(b) in any subcontract.

(d)    Failure to abide by any of the requirements in this subsection could result in criminal or civil penalties and result in termination of this Agreement.

(e)    Agency may be subject to periodic and ongoing security reviews to ensure compliance with the requirements of Section 1.a.(3).

(4)    Except as prohibited by Section 1.a.(3) above, OHA, Agency and any subcontractor will share information as necessary to effectively serve OHA clients.

**b.    Non-Client Information:**

(1)    Each Party acknowledges that it and any of its officers, directors, employees and agents may, in the course of performing its responsibilities under the Agreement, be exposed to or acquire information that is confidential to the other Party. To the extent permitted by law, any and all information of any form provided to a Party or its officers, directors, employees and agents in the performance of the Agreement that reasonably could at the time of its disclosure be understood to be confidential shall be deemed to be confidential information of the originating Party ("Confidential Non-Client Information").

(2)    Confidential Non-Client Information shall be deemed not to include information that:

(a)    Is or becomes (other than by disclosure by the Party acquiring such information) publicly known or is contained in a publicly available document except to the extent applicable law still restricts disclosure;

(b)    Is furnished by the originating Party to others without restrictions similar to those imposed on the receiving Party under the Agreement;

(c)    Is rightfully in the receiving Party's possession without the obligation of nondisclosure prior to the time of its disclosure by the originating Party under the Agreement;

(d)    Is obtained from a source other than the originating Party without the obligation of confidentiality;

(e)    Is disclosed with the written consent of the originating Party; or

      (f)     Is independently developed by the receiving Party's officers, directors, employees and agents who can be shown to have had no access to the Confidential Non-Client Information.

  (3)    Nondisclosure.  The receiving Party shall hold all Confidential Non-Client Information in strict confidence, using at least the same degree of care that it uses in maintaining the confidentiality of its own confidential information; shall not sell, assign, license, market, transfer or otherwise dispose of, give or disclose Confidential Non-Client Information to third parties; shall not use Confidential Non-Client Information for any purposes whatsoever other than as contemplated by this Agreement or reasonably related thereto; and shall advise any of its officers, directors, employees and agents that receive or have access to the Confidential Non-Client Information of their obligations to keep Confidential Non-Client Information confidential.  These confidentiality obligations do not restrict disclosure of information otherwise qualifying as Confidential Non-Client Information if the receiving Party can show that either of the following conditions exists: (i) the information was disclosed in response to a subpoena or court order duly issued in a judicial or legislative process, in which case the receiving Party shall notify the originating Party of the subpoena five days prior to the disclosure, unless such notice could not reasonably be given; or (ii) the disclosure was required to respond to a request for the information made under the Oregon Public Records Law, ORS 192.410 to 192.505.  The receiving Party shall notify the originating Party of a public records request five days prior to the disclosure.

  c.    Upon request and pursuant to the instructions of OHA, Agency shall return or destroy all copies of Confidential Information, and Agency shall certify in writing the return or destruction of all Confidential Information.

## 2.    Amendments.

  a.    OHA reserves the right to amend or extend the Agreement under the following general circumstances:

OHA may extend the Agreement for additional periods of time and for additional money associated with the extended period(s) of time. The determination for any extension for time may be based on OHA's satisfaction with performance of the work or services provided by the Agency under this Agreement.

  b.    OHA further reserves the right to amend the Statement of Work for the following:

  (1)    Programmatic changes/additions or modifications deemed necessary to accurately reflect the original scope of work that may not have been expressed in the original Agreement or previous amendments to the Agreement;

  (2)    Implement additional phases of the Work; or

  (3)    As necessitated by changes in Code of Federal Regulations, Oregon Revised Statutes, or Oregon Administrative Rules which, in part or in combination, govern the provision of services provided under this Agreement.

  c.    Upon identification, by any party to this Agreement, of any circumstance which may require an amendment to this Agreement, the parties may enter into negotiations regarding the proposed modifications. Any resulting amendment must be in writing and be signed by all parties to the Agreement before the modified or additional provisions

are binding on either party. All amendments must comply with Exhibit B, Section 21, "Amendments" of this Agreement.

3.  **Agency Requirements to Report Abuse of Certain Classes of Persons.**

   a.  Agency shall comply with, and cause all employees to comply with, the applicable laws for mandatory reporting of abuse for certain classes of persons in Oregon, including:

   (1)   Children (ORS 419B.005 through 419B.045);

   (2)   Elderly Persons (ORS 124.055 through 124.065);

   (3)   Residents of Long Term Care Facilities (ORS 441.630 through 441.645);

   (4)   Adults with Mental Illness or Developmental Disabilities (ORS 430.735 through 430.743).

   (5)   Abuse of Individuals Living in State Hospitals (OAR 943-045-0400 through 945-045-0520)

   b.  Agency shall make reports of suspected abuse of persons who are members of the classes established in Section 3.a. above to Oregon's Statewide Abuse Reporting Hotline: 1-855-503-SAFE (7233), as a requirement of this Agreement.

   c.  Agency shall immediately report suspected child abuse, neglect or threat of harm to DHS' Child Protective Services or law enforcement officials in full accordance with the mandatory Child Abuse Reporting law (ORS 419B.005 through 419B.045). If law enforcement is notified, the Agency shall notify the referring DHS caseworker within 24 hours. Agency shall immediately contact the local DHS Child Protective Services office if questions arise as to whether or not an incident meets the definition of child abuse or neglect.

   d.  Agency shall report suspected abuse of the elderly or abuse of patients in a medical or care facility immediately to DHS' Aging and People with Disabilities office or to a law enforcement agency.

   e.  If known, the abuse report should contain the following:

   (1)   The name and address of the abused person and any people responsible for their care;

   (2)   The abused person's age;

   (3)   The nature and the extent of the abuse, including any evidence of previous abuse;

   (4)   The explanation given for the abuse;

   (5)   The date of the incident; and

   (6)   Any other information that might be helpful in establishing the cause of the abuse and the identity of the abuser.

f.    Agency who witnesses or has information about an alleged abusive act that has occurred at Oregon State Hospital (OSH) must immediately report the incident directly to the Office of Adult Abuse Prevention and Investigations:

   (1)    Weekdays 8 a.m. – 5 p.m. at 503-945-9495.

   (2)    Weekdays 5 p.m. – 10:00 pm or weekends from noon – 10 p.m. at 503-559-1201.

**5.    Nondiscrimination.**

a.    Agency must provide services to OHA clients without regard to race, religion, national origin, sex, age, marital status, sexual orientation or disability (as defined under the Americans with Disabilities Act). Agency services must reasonably accommodate the cultural, language and other special needs of clients.

b.    Agency certifies that Agency has a written policy and practice that meets the requirements described in House Bill 3060 (2017 Oregon Laws, chapter 212) for preventing sexual harassment, sexual assault, and discrimination against employees who are members of a protected class. Agency agrees, as a material term of this Agreement, to maintain such policy and practice in force during the entire Agreement term.

## EXHIBIT B

### Standard Terms and Conditions

1.   **Governing Law, Consent to Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of Oregon without regard to principles of conflicts of law. Any claim, action, suit or proceeding (collectively, "Claim") between the parties that arises from or relates to this Agreement shall be brought and conducted solely and exclusively within a circuit court for the State of Oregon of proper jurisdiction. THE PARTIES, BY EXECUTION OF THIS AGREEMENT, HEREBY CONSENT TO THE IN PERSONAM JURISDICTION OF SAID COURTS. Except as provided in this section, neither party waives any form of defense or immunity, whether sovereign immunity, governmental immunity, immunity based on the eleventh amendment to the Constitution of the United States or otherwise, from any Claim or from the jurisdiction of any court. The parties acknowledge that this is a binding and enforceable agreement and, to the extent permitted by law, expressly waive any defense alleging that either party does not have the right to seek judicial enforcement of this Agreement.

2.   **Compliance with Law.** Agency shall comply with and require all subcontractors to comply with all federal, state and local laws, regulations, executive orders and ordinances applicable to the Agency and the Agreement. All employers, including Agency, that employ subject workers who provide services in the State of Oregon shall comply with ORS 656.017 and provide the required Workers' Compensation coverage, unless such employers are exempt under ORS 656.126.

3.   **Independent Contractors.** The parties agree and acknowledge that their relationship is that of independent contracting parties and that Agency is not an officer, employee, or agent of the State of Oregon as those terms are used in ORS 30.265 or otherwise.

4.   **Representations and Warranties.**

a.   **Agency's Representations and Warranties.** Agency represents and warrants to OHA that:

(1)   Agency has the power and authority to enter into and perform this Agreement;

(2)   This Agreement, when executed and delivered, shall be a valid and binding obligation of Agency enforceable in accordance with its terms;

(3)   Agency has the skill and knowledge possessed by well-informed members of its industry, trade or profession and Agency will apply that skill and knowledge with care and diligence to perform the Work in a professional manner and in accordance with standards prevalent in Agency's industry, trade or profession;

(4)   Agency shall, at all times during the term of this Agreement, be qualified, professionally competent, and duly licensed to perform the Service; and

(5)   Agency prepared its proposal related to this Agreement, if any, independently from all other proposers, and without collusion, fraud, or other dishonesty.

b.   Warranties Cumulative. The warranties set forth in this section are in addition to, and not in lieu of, any other warranties provided.

5.    **Funds Available and Authorized; Payments**.

    a.    The State of Oregon's payment obligations under this Agreement are conditioned upon OHA receiving funding, appropriations, limitations, allotment, or other expenditure authority sufficient to allow OHA, in the exercise of its reasonable administrative discretion, to meet its payment obligations under this Agreement. Agency is not entitled to receive payment under this Agreement from any part of Oregon state government other than OHA. Nothing in this Agreement is to be construed as permitting any violation of Article XI, Section 7 of the Oregon Constitution or any other law regulating liabilities or monetary obligations of the State of Oregon. OHA represents that as of the date it executes this Agreement, it has sufficient appropriations and limitation for the current biennium to make payments under this Agreement.

    b.    Payment Method. Payments under this Agreement will be made by Electronic Funds Transfer (EFT) and shall be processed in accordance with the provisions of OAR 407-120-0100 through 407-120-0380 or OAR 410-120-1260 through OAR 410-120-1460, as applicable, and any other Oregon Administrative Rules that are program-specific to the billings and payments. Upon request, Agency shall provide its taxpayer identification number (TIN) and other necessary banking information to receive EFT payment. Agency shall maintain at its own expense a single financial institution or authorized payment agent capable of receiving and processing EFT using the Automated Clearing House (ACH) transfer method. The most current designation and EFT information will be used for all payments under this Agreement. Agency shall provide this designation and information on a form provided by OHA. In the event that EFT information changes or the Agency elects to designate a different financial institution for the receipt of any payment made using EFT procedures, the Agency shall provide the changed information or designation to OHA on a OHA-approved form. OHA is not required to make any payment under this Agreement until receipt of the correct EFT designation and payment information from the Agency.

6.    **Recovery of Overpayments.** IF BILLINGS UNDER THIS AGREEMENT, OR UNDER ANY OTHER AGREEMENT BETWEEN AGENCY AND OHA, RESULT IN PAYMENTS TO AGENCY TO WHICH AGENCY IS NOT ENTITLED, OHA, AFTER GIVING WRITTEN NOTIFICATION TO AGENCY, MAY WITHHOLD FROM PAYMENTS DUE TO AGENCY SUCH AMOUNTS, OVER SUCH PERIODS OF TIME, AS ARE NECESSARY TO RECOVER THE AMOUNT OF THE OVERPAYMENT. NOTHING IN THIS SECTION SHALL REQUIRE AGENCY OR OHA TO ACT IN VIOLATION OF STATE OR FEDERAL LAW OR THE CONSTITUTION OF THE STATE OF OREGON.

7.    **Ownership of Work Product.**

    a.    **Definitions.** As used in this Section 7 and elsewhere in this Agreement, the following terms have the meanings set forth below:

       (1)    "Agency Intellectual Property" means any intellectual property owned by Agency and developed independently from the Work.

       (2)    "Third Party Intellectual Property" means any intellectual property owned by parties other than OHA or Agency.

       (3)    "Work Product" means every invention, discovery, work of authorship, trade secret or other tangible or intangible item and all intellectual property rights therein that Agency is required to deliver to OHA pursuant to the Work.

b.    **Original Works.** All Work Product created by Agency pursuant to the Work, including derivative works and compilations, and whether or not such Work Product is considered a "work made for hire," shall be the exclusive property of OHA. OHA and Agency agree that all Work Product is "work made for hire" of which OHA is the author within the meaning of the United States Copyright Act. If for any reason the original Work Product created pursuant to the Work is not "work made for hire," Agency hereby irrevocably assigns to OHA any and all of its rights, title, and interest in all original Work Product created pursuant to the Work, whether arising from copyright, patent, trademark, trade secret, or any other state or federal intellectual property law or doctrine. Upon OHA's reasonable request, Agency shall execute such further documents and instruments necessary to fully vest such rights in OHA. Agency forever waives any and all rights relating to original Work Product created pursuant to the Work, including without limitation, any and all rights arising under 17 U.S.C. §106A or any other rights of identification of authorship or rights of approval, restriction or limitation on use or subsequent modifications.

c.    In the event that Work Product is Agency Intellectual Property, a derivative work based on Agency Intellectual Property or a compilation that includes Agency Intellectual Property, Agency hereby grants to OHA an irrevocable, non-exclusive, perpetual, royalty-free license to use, reproduce, prepare derivative works based upon, distribute copies of, perform and display Agency Intellectual Property and the pre-existing elements of the Agency Intellectual Property employed in the Work Product, and to authorize others to do the same on OHA's behalf.

d.    In the event that Work Product is Third Party Intellectual Property, a derivative work based on Third Party Intellectual Property or a compilation that includes Third Party Intellectual Property, Agency shall secure on OHA's behalf and in the name of OHA an irrevocable, non-exclusive, perpetual, royalty-free license to use, reproduce, prepare derivative works based upon, distribute copies of, perform and display the Third Party Intellectual Property and the pre-existing elements of the Third Party Intellectual Property employed in the Work Product, and to authorize others to do the same on OHA's behalf.

8.    **Agency Default.** Agency shall be in default under this Agreement upon the occurrence of any of the following events:

a.    Agency fails to perform, observe or discharge any of its covenants, agreements or obligations set forth herein.

b.    Any representation, warranty or statement made by Agency herein or in any documents or reports relied upon by OHA to measure the delivery of services, the expenditure of payments or the performance by Agency is untrue in any material respect when made;

c.    Agency (1) applies for or consents to the appointment of, or taking of possession by, a receiver, custodian, trustee, or liquidator of itself or all of its property, (2) admits in writing its inability, or is generally unable, to pay its debts as they become due, (3) makes a general assignment for the benefit of its creditors, (4) is adjudicated a bankrupt or insolvent, (5) commences a voluntary case under the Federal Bankruptcy Code (as now or hereafter in effect), (6) files a petition seeking to take advantage of any other law relating to bankruptcy, insolvency, reorganization, winding-up, or composition or adjustment of debts, (7) fails to controvert in a timely and appropriate manner, or acquiesces in writing to, any petition filed against it in an involuntary case under the Bankruptcy Code, or (8) takes any action for the purpose of effecting any of the foregoing; or

d.    A proceeding or case is commenced, without the application or consent of Agency, in any court of competent jurisdiction, seeking (1) the liquidation, dissolution or winding-up, or the composition or readjustment of debts of Agency, (2) the appointment of a trustee, receiver, custodian, liquidator, or the like of Agency or of all or any substantial part of its assets, or (3) similar relief in respect to Agency under any law relating to bankruptcy, insolvency, reorganization, winding-up, or composition or adjustment of debts, and such proceeding or case continues undismissed, or an order, judgment, or decree approving or ordering any of the foregoing is entered and continues unstayed and in effect for a period of sixty consecutive days, or an order for relief against Agency is entered in an involuntary case under the Federal Bankruptcy Code (as now or hereafter in effect).

9.    **OHA Default.** OHA shall be in default under this Agreement upon the occurrence of any of the following events:

a.    OHA fails to perform, observe or discharge any of its covenants, agreements, or obligations set forth herein; or

b.    Any representation, warranty or statement made by OHA herein is untrue in any material respect when made.

10.    **Termination.**

a.    **Agency Termination.** Agency may terminate this Agreement:

(1)    For its convenience, upon at least 90 days advance written notice to OHA;

(2)    Upon 45 days advance written notice to OHA, if Agency does not obtain funding, appropriations and other expenditure authorizations from Agency's governing body, federal, state or other sources sufficient to permit Agency to satisfy its performance obligations under this Agreement, as determined by Agency in the reasonable exercise of its administrative discretion; or

(3)    Upon 30 days advance written notice to OHA, if OHA is in default under the Agreement and such default remains uncured at the end of said 30-day period or such longer period, if any, as Agency may specify in the notice.

b.    **OHA Termination.** OHA may terminate this Agreement:

(1)    For its convenience, upon at least thirty days advance written notice to Agency;

(2)    Upon 45 days advance written notice to Agency, if OHA does not obtain funding, appropriations and other expenditure authorizations from federal, state or other sources sufficient to meet the payment obligations of OHA under this Agreement, as determined by OHA in the reasonable exercise of its administrative discretion. Notwithstanding the preceding sentence, OHA may terminate this Agreement in whole or in part, immediately upon written notice to Agency or at such other time as it may determine if action by the Oregon Legislative Assembly or Emergency Board reduces OHA's legislative authorization for expenditure of funds to such a degree that OHA will no longer have sufficient expenditure authority to meet its payment obligations under this Agreement, as determined by OHA in the reasonable exercise of its administrative discretion, and the effective date for such reduction in expenditure authorization is less than 45 days from the date the action is taken;

(3)    Immediately upon written notice to Agency if Oregon statutes or federal laws, regulations or guidelines are modified, changed or interpreted by the Oregon

Legislative Assembly, the federal government or a court in such a way that OHA no longer has the authority to meet its obligations under this Agreement or no longer has the authority to provide payment from the funding source it had planned to use;

(4)   Upon 30 days advance written notice to Agency, if Agency is in default under this Agreement and such default remains uncured at the end of said 30-day period or such longer period, if any, as OHA may specify in the notice;

(5)   Immediately upon written notice to Agency, if any license or certificate required by law or regulation to be held by Agency or a subcontractor is for any reason denied, revoked, suspended, not renewed or changed in such a way that Agency or a subcontractor no longer meets requirements to deliver the service. This termination right may only be exercised with respect to the particular part of the Work impacted by the loss of necessary licensure or certification; or

(6)   Immediately upon written notice to Agency, if OHA determines that Agency or any of its subcontractors have endangered or are endangering the health or safety of an Agency client or others.

c.   **Mutual Termination.** The Agreement may be terminated immediately upon mutual written consent of the parties or at such time as the parties may agree in the written consent.

d.   **Return of Property**. Upon termination of this Agreement for any reason whatsoever, Agency shall immediately deliver to OHA all of OHA's property (including without limitation any Work Products for which OHA has made payment in whole or in part) that are in the possession or under the control of Agency in whatever stage of development and form of recordation such OHA property is expressed or embodied at that time. Upon receiving a notice of termination of this Agreement, Agency shall immediately cease all activities under this Agreement, unless OHA expressly directs otherwise in such notice of termination. Upon OHA's request, Agency shall surrender to anyone OHA designates, all documents, research or objects or other tangible things needed to complete the Work Products.

11.   **Effect of Termination.**

a.   **Entire Agreement.**

(1)   Upon termination of this Agreement in its entirety, OHA shall have no further obligation to pay Agency under this Agreement.

(2)   Upon termination of this Agreement in its entirety, Agency shall have no further obligation to perform Work under this Agreement.

b.   **Obligations and Liabilities.** Notwithstanding Section 11.a. above, any termination of this Agreement shall not prejudice any obligations or liabilities of either party accrued prior to such termination.

12.   **Limitation of Liabilities.** NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT. NEITHER PARTY SHALL BE LIABLE FOR ANY DAMAGES OF ANY SORT ARISING SOLELY FROM THE TERMINATION OF THIS AGREEMENT OR ANY PART HEREOF IN ACCORDANCE WITH ITS TERMS.

13.   **Indemnity/Hold Harmless Provision.** OHA and Agency shall be responsible exclusively with respect to their employees, for providing for employment-related benefits and deductions that are required by law, including but not limited to federal and state income tax deductions,

workers compensation coverage, and PERS contributions. Agency shall perform the services under this Agreement as an independent contractor. Agency and OHA each shall be responsible, to the other, to the extent permitted by the Oregon Constitution, subject to the limitations of the Tort Claims Act (ORS 30. 260-30.300), only for the acts, omissions or negligence of its own officers, employees or agents.

14. **Reserved.**

15. **Records Maintenance; Access.** Agency shall maintain all financial records relating to this Agreement in accordance with generally accepted accounting principles. In addition, Agency shall maintain any other records, books, documents, papers, plans, records of shipments and payments and writings of Agency, whether in paper, electronic or other form, that are pertinent to this Agreement in such a manner as to clearly document Agency's performance. All financial records, other records, books, documents, papers, plans, records of shipments and payments and writings of Agency whether in paper, electronic or other form, that are pertinent to this Agreement, are collectively referred to as "Records." Agency acknowledges and agrees that OHA and the Oregon Secretary of State's Office and the federal government and their duly authorized representatives shall have access to all Records to perform examinations and audits and make excerpts and transcripts. Agency shall retain and keep accessible all Records for a minimum of six (6) years, or such longer period as may be required by applicable law, following final payment and termination of this Agreement, or until the conclusion of any audit, controversy or litigation arising out of or related to this Agreement, whichever date is later. Agency shall maintain Records in accordance with the records retention schedules set forth in OAR Chapter 166.

16. **Information Privacy/Security/Access.** If the Work performed under this Agreement requires Agency or its subcontractor(s) to have access to or use of any OHA computer system or other OHA Information Asset for which OHA imposes security requirements, and OHA grants Agency or its subcontractor(s) access to such OHA Information Assets or Network and Information Systems, Agency shall comply and require all subcontractor(s) to which such access has been granted to comply with OAR 943-014-0300 through OAR 943-014-0320, as such rules may be revised from time to time. For purposes of this section, "Information Asset" and "Network and Information System" have the meaning set forth in OAR 943-014-0305, as such rule may be revised from time to time.

17. **Force Majeure.** Neither OHA nor Agency shall be held responsible for delay or default caused by fire, civil unrest, labor unrest, act of nature, or war which is beyond the reasonable control of OHA or Agency, respectively. Each party shall, however, make all reasonable efforts to remove or eliminate such cause of delay or default and shall, upon the cessation of the cause, diligently pursue performance of its obligations under this Agreement. OHA may terminate this Agreement upon written notice to the other party after reasonably determining that the delay or default will likely prevent successful performance of this Agreement.

18. **Assignment of Agreement, Successors in Interest.**

    a.    Agency shall not assign or transfer its interest in this Agreement without prior written approval of OHA. Any such assignment or transfer, if approved, is subject to such conditions and provisions as OHA may deem necessary. No approval by OHA of any assignment or transfer of interest shall be deemed to create any obligation of OHA in addition to those set forth in the Agreement.

    b.    The provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their respective successors and permitted assigns.

19. **Subcontracts.** Agency shall not enter into any subcontracts for any of the Work required by this Agreement without OHA's prior written consent. In addition to any other provisions OHA may require, Agency shall include in any permitted subcontract under this Agreement provisions to ensure that OHA will receive the benefit of subcontractor performance as if the subcontractor were the Agency with respect to Sections 1, 2, 3, 4, 7, 15, 16, 18, 19, 20, and 22 of this Exhibit B. OHA's consent to any subcontract shall not relieve Agency of any of its duties or obligations under this Agreement.

20. **No Third Party Beneficiaries.** OHA and Agency are the only parties to this Agreement and are the only parties entitled to enforce its terms. The parties agree that Agency's performance under this Agreement is solely for the benefit of OHA to assist and enable OHA to accomplish its statutory mission. Nothing in this Agreement gives, is intended to give, or shall be construed to give or provide any benefit or right, whether directly, indirectly or otherwise, to third persons any greater than the rights and benefits enjoyed by the general public unless such third persons are individually identified by name herein and expressly described as intended beneficiaries of the terms of this Agreement.

21. **Amendments.** No amendment, modification or change of terms of this Agreement shall bind either party unless in writing and signed by both parties and when required the Department of Justice. Such amendment, modification or change, if made, shall be effective only in the specific instance and for the specific purpose given.

22. **Severability.** The parties agree that if any term or provision of this Agreement is declared by a court of competent jurisdiction to be illegal or in conflict with any law, the validity of the remaining terms and provisions shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if the Agreement did not contain the particular term or provision held to be invalid.

23. **Survival.** Sections 1, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 16, 20, 23, 28, 29 and 30 of this Exhibit B shall survive Agreement expiration or termination as well as those the provisions of this Agreement that by their context are meant to survive. Agreement expiration or termination shall not extinguish or prejudice OHA's right to enforce this Agreement with respect to any default by Agency that has not been cured.

24. **Notice.** Except as otherwise expressly provided in this Agreement, any communications between the parties hereto or notices to be given hereunder shall be given in writing by personal delivery, facsimile, or mailing the same, postage prepaid to Agency or OHA at the address or number set forth in this Agreement, or to such other addresses or numbers as either party may indicate pursuant to this section. Any communication or notice so addressed and mailed by regular mail shall be deemed received and effective five days after the date of mailing. Any communication or notice delivered by facsimile shall be deemed received and effective on the day the transmitting machine generates a receipt of the successful transmission, if transmission was during normal business hours of the recipient, or on the next business day if transmission was outside normal business hours of the recipient. Notwithstanding the foregoing, to be effective against the other party, any notice transmitted by facsimile must be confirmed by telephone notice to the other party at number listed below. Any communication or notice given by personal delivery shall be deemed effective when actually delivered to the addressee.

OHA:    Office of Contracts and Procurement
        635 Capitol Street NE, Suite 350
        Salem, Oregon 97301
        Telephone: 503-945-5818
        Facsimile Number: 503-378-4324

25.    **Headings.** The headings and captions to sections of this Agreement have been inserted for identification and reference purposes only and shall not be used to construe the meaning or to interpret this Agreement.

26.    **Counterparts.** This Agreement and any subsequent amendments may be executed in several counterparts, all of which when taken together shall constitute one agreement binding on all parties, notwithstanding that all parties are not signatories to the same counterpart. Each copy of this Agreement and any amendments so executed shall constitute an original.

27.    **Construction.** The parties agree and acknowledge that the rule of construction that ambiguities in a written agreement are to be construed against the party preparing or drafting the agreement shall not be applicable to the interpretation of this Agreement.

28.    **Waiver.** The failure of either party to enforce any provision of this Agreement shall not constitute a waiver by that party of that or any other provision. No waiver or consent shall be effective unless in writing and signed by the party against whom it is asserted.

29.    **Alternative Dispute Resolution.** The parties should attempt in good faith to resolve any dispute arising out of this agreement. This may be done at any management level, including at a level higher than persons directly responsible for administration of the agreement. In addition, the parties may agree to utilize a jointly selected mediator or arbitrator (for non-binding arbitration) to resolve the dispute short of litigation.

30.    **Contribution.** If any third party makes any claim or brings any action, suit or proceeding alleging a tort as now or hereafter defined in ORS 30.260 ("Third Party Claim") against a party (the "Notified Party") with respect to which the other party ("Other Party") may have liability, the Notified Party must promptly notify the Other Party in writing of the Third Party Claim and deliver to the Other Party a copy of the claim, process, and all legal pleadings with respect to the Third Party Claim. Either party is entitled to participate in the defense of a Third Party Claim, and to defend a Third Party Claim with counsel of its own choosing. Receipt by the Other Party of the notice and copies required in this paragraph and meaningful opportunity for the Other Party to participate in the investigation, defense and settlement of the Third Party Claim with counsel of its own choosing are conditions precedent to the Other Party's liability with respect to the Third Party Claim.

With respect to a Third Party Claim for which the State is jointly liable with the Agency (or would be if joined in the Third Party Claim ), the State shall contribute to the amount of expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred and paid or payable by the Agency in such proportion as is appropriate to reflect the relative fault of the State on the one hand and of the Agency on the other hand in connection with the events which resulted in such expenses, judgments, fines or settlement amounts, as well as any other relevant equitable considerations. The relative fault of the State on the one hand and of the Agency on the other hand shall be determined by reference to, among other things, the parties' relative intent, knowledge, access to information and opportunity to correct or prevent the circumstances resulting in such expenses, judgments, fines or settlement amounts. The State's contribution amount in any instance is capped to the same extent it would have been capped under Oregon law if the State had sole liability in the proceeding.

With respect to a Third Party Claim for which the Agency is jointly liable with the State (or would be if joined in the Third Party Claim), the Agency shall contribute to the amount of expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred and paid or payable by the State in such proportion as is appropriate to reflect the relative fault of the Agency on the one hand and of the State on the other hand in connection with the events which resulted in such expenses, judgments, fines or settlement

amounts, as well as any other relevant equitable considerations. The relative fault of the Agency on the one hand and of the State on the other hand shall be determined by reference to, among other things, the parties' relative intent, knowledge, access to information and opportunity to correct or prevent the circumstances resulting in such expenses, judgments, fines or settlement amounts. The Agency's contribution amount in any instance is capped to the same extent it would have been capped under Oregon law if it had sole liability in the proceeding.

**31.**    **Reserved.**

**32.**    **Stop-Work Order.** OHA may, at any time, by written notice to the Agency, require the Agency to stop all, or any part of the work required by this Agreement for a period of up to 90 days after the date of the notice, or for any further period to which the parties may agree through a duly executed amendment. Upon receipt of the notice, Agency shall immediately comply with the Stop-Work Order terms and take all necessary steps to minimize the incurrence of costs allocable to the work affected by the stop work order notice. Within a period of 90 days after issuance of the written notice, or within any extension of that period to which the parties have agreed, OHA shall either:

    **a.**    Cancel or modify the stop work order by a supplementary written notice; or

    **b.**    Terminate the work as permitted by either the Default or the Convenience provisions of Section 10, Termination.

If the Stop Work Order is canceled, OHA may, after receiving and evaluating a request by the Agency, make an adjustment in the time required to complete this Agreement and the Agreement price by a duly executed amendment.

## EXHIBIT C

### Federal Terms and Conditions

**General Applicability and Compliance.** Unless exempt under 45 CFR Part 87 for Faith-Based Organizations (Federal Register, July 16, 2004, Volume 69, #136), or other federal provisions, Agency shall comply and, as indicated, cause all subcontractors to comply with the following federal requirements to the extent that they are applicable to this Agreement, to Agency, or to the Work, or to any combination of the foregoing. For purposes of this Agreement, all references to federal and state laws are references to federal and state laws as they may be amended from time to time.

1.   **Miscellaneous Federal Provisions.** Agency shall comply and require all subcontractors to comply with all federal laws, regulations, and executive orders applicable to the Agreement or to the delivery of Work. Without limiting the generality of the foregoing, Agency expressly agrees to comply and require all subcontractors to comply with the following laws, regulations and executive orders to the extent they are applicable to the Agreement: (a) Title VI and VII of the Civil Rights Act of 1964, as amended, (b) Sections 503 and 504 of the Rehabilitation Act of 1973, as amended, (c) the Americans with Disabilities Act of 1990, as amended, (d) Executive Order 11246, as amended, (e) the Health Insurance Portability and Accountability Act of 1996, as amended, (f) the Age Discrimination in Employment Act of 1967, as amended, and the Age Discrimination Act of 1975, as amended, (g) the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended, (h) all regulations and administrative rules established pursuant to the foregoing laws, (i) all other applicable requirements of federal civil rights and rehabilitation statutes, rules and regulations, and (j) all federal laws requiring reporting of client abuse. These laws, regulations and executive orders are incorporated by reference herein to the extent that they are applicable to the Agreement and required by law to be so incorporated. No federal funds may be used to provide Work in violation of 42 U.S.C. 14402.

2.   **Equal Employment Opportunity.** If this Agreement, including amendments, is for more than $10,000, then Agency shall comply and require all subcontractors to comply with Executive Order 11246, entitled "Equal Employment Opportunity," as amended by Executive Order 11375, and as supplemented in Department of Labor regulations (41 CFR Part 60).

3.   **Clean Air, Clean Water, EPA Regulations.** If this Agreement, including amendments, exceeds $100,000 then Agency shall comply and require all subcontractors to comply with all applicable standards, orders, or requirements issued under Section 306 of the Clean Air Act (42 U.S.C. 7606), the Federal Water Pollution Control Act as amended (commonly known as the Clean Water Act) (33 U.S.C. 1251 to 1387), specifically including, but not limited to Section 508 (33 U.S.C. 1368), Executive Order 11738, and Environmental Protection Agency regulations (2 CFR Part 1532), which prohibit the use under non-exempt Federal contracts, grants or loans of facilities included on the EPA List of Violating Facilities. Violations shall be reported to OHA, United States Department of Health and Human Services and the appropriate Regional Office of the Environmental Protection Agency. Agency shall include and require all subcontractors to include in all contracts with subcontractors receiving more than $100,000, language requiring the subcontractor to comply with the federal laws identified in this section.

4.   **Energy Efficiency.** Agency shall comply and require all subcontractors to comply with applicable mandatory standards and policies relating to energy efficiency that are contained in the Oregon energy conservation plan issued in compliance with the Energy Policy and Conservation Act 42 U.S. C. 6201 et. seq. (Pub. L. 94-163).

5.   **Truth in Lobbying.** By signing this Agreement, the Agency certifies, to the best of the Agency's knowledge and belief that:

a.  No federal appropriated funds have been paid or will be paid, by or on behalf of Agency, to any person for influencing or attempting to influence an officer or employee of an agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any federal contract, the making of any federal grant, the making of any federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment or modification of any federal contract, grant, loan or cooperative agreement.

b.  If any funds other than federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this federal contract, grant, loan or cooperative agreement, the Agency shall complete and submit Standard Form LLL, "Disclosure Form to Report Lobbying" in accordance with its instructions.

c.  The Agency shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients and subcontractors shall certify and disclose accordingly.

d.  This certification is a material representation of fact upon which reliance was placed when this Agreement was made or entered into. Submission of this certification is a prerequisite for making or entering into this Agreement imposed by section 1352, Title 31 of the U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

e.  No part of any federal funds paid to Agency under this Agreement shall be used, other than for normal and recognized executive legislative relationships, for publicity or propaganda purposes, for the preparation, distribution, or use of any kit, pamphlet, booklet, publication, electronic communication, radio, television, or video presentation designed to support or defeat the enactment of legislation before the United States Congress or any State or local legislature itself, or designed to support or defeat any proposed or pending regulation, administrative action, or order issued by the executive branch of any State or local government itself.

f.  No part of any federal funds paid to Agency under this Agreement shall be used to pay the salary or expenses of any grant or contract recipient, or agent acting for such recipient, related to any activity designed to influence the enactment of legislation, appropriations, regulation, administrative action, or Executive order proposed or pending before the United States Congress or any State government, State legislature or local legislature or legislative body, other than for normal and recognized executive-legislative relationships or participation by an agency or officer of a State, local or tribal government in policymaking and administrative processes within the executive branch of that government.

g.  The prohibitions in subsections (e) and (f) of this section shall include any activity to advocate or promote any proposed, pending or future Federal, State or local tax increase, or any proposed, pending, or future requirement or restriction an any legal consumer product, including its sale or marketing, including but not limited to the advocacy or promotion of gun control.

h.    No part of any federal funds paid to Agency under this Agreement may be used for any activity that promotes the legalization of any drug or other substance included in schedule I of the schedules of controlled substances established under section 202 of the Controlled Substances Act except for normal and recognized executive congressional communications.  This limitation shall not apply when there is significant medical evidence of a therapeutic advantage to the use of such drug or other substance of that federally sponsored clinical trials are being conducted to determine therapeutic advantage.

6.    **Resource Conservation and Recovery.** Agency shall comply and require all subcontractors to comply with all mandatory standards and policies that relate to resource conservation and recovery pursuant to the Resource Conservation and Recovery Act (codified at 42 U.S.C. 6901 et. seq.). Section 6002 of that Act (codified at 42 U.S.C. 6962) requires that preference be given in procurement programs to the purchase of specific products containing recycled materials identified in guidelines developed by the Environmental Protection Agency. Current guidelines are set forth in 40 CFR Part 247.

7.    **Audits.**

a.    Agency shall comply, and require all subcontractors to comply, with applicable audit requirements and responsibilities set forth in this Agreement and applicable state or federal law.

b.    If Agency expends $750,000 or more in federal funds (from all sources) in a federal fiscal year, Agency shall have a single organization-wide audit conducted in accordance with the provisions of 2 CFR Subtitle B with guidance at 2 CFR Part 200. Copies of all audits must be submitted to OHA within 30 days of completion. If Agency expends less than $750,000 in a federal fiscal year, Agency is exempt from Federal audit requirements for that year.  Records must be available as provided in Exhibit B, "Records Maintenance, Access".

8.    **Debarment and Suspension.** Agency shall not permit any person or entity to be a subcontractor if the person or entity is listed on the non-procurement portion of the General Service Administration's "List of Parties Excluded from Federal Procurement or Non-procurement Programs" in accordance with Executive Orders No. 12549 and No. 12689, "Debarment and Suspension". (See 2 CFR Part 180.) This list contains the names of parties debarred, suspended, or otherwise excluded by agencies, and contractors declared ineligible under statutory authority other than Executive Order No. 12549. Subcontractors with awards that exceed the simplified acquisition threshold shall provide the required certification regarding their exclusion status and that of their principals prior to award.

9.    **Drug-Free Workplace.** Agency shall comply and cause all subcontractors to comply with the following provisions to maintain a drug-free workplace: (i) Agency certifies that it will provide a drug-free workplace by publishing a statement notifying its employees that the unlawful manufacture, distribution, dispensation, possession or use of a controlled substance, except as may be present in lawfully prescribed or over-the-counter medications, is prohibited in Agency's workplace or while providing services to OHA clients. Agency's notice shall specify the actions that will be taken by Agency against its employees for violation of such prohibitions; (ii) Establish a drug-free awareness program to inform its employees about: The dangers of drug abuse in the workplace, Agency's policy of maintaining a drug-free workplace, any available drug counseling, rehabilitation, and employee assistance programs, and the penalties that may be imposed upon employees for drug abuse violations; (iii) Provide each employee to be engaged in the performance of services under this Agreement a copy of the statement mentioned in paragraph (i) above; (iv) Notify each employee in the statement

required by paragraph (i) above that, as a condition of employment to provide services under this Agreement, the employee will: abide by the terms of the statement, and notify the employer of any criminal drug statute conviction for a violation occurring in the workplace no later than five (5) days after such conviction; (v) Notify OHA within ten (10) days after receiving notice under subparagraph (iv) above from an employee or otherwise receiving actual notice of such conviction; (vi) Impose a sanction on, or require the satisfactory participation in a drug abuse assistance or rehabilitation program by any employee who is so convicted as required by Section 5154 of the Drug-Free Workplace Act of 1988; (vii) Make a good-faith effort to continue a drug-free workplace through implementation of subparagraphs (i) through (vi) above; (viii) Require any subcontractor to comply with subparagraphs (i) through (vii) above; (ix) Neither Agency, or any of Agency's employees, officers, agents or subcontractors may provide any service required under this Agreement while under the influence of drugs. For purposes of this provision, "under the influence" means: observed abnormal behavior or impairments in mental or physical performance leading a reasonable person to believe the Agency or Agency's employee, officer, agent or subcontractor has used a controlled substance, prescription or non-prescription medication that impairs the Agency or Agency's employee, officer, agent or subcontractor's performance of essential job function or creates a direct threat to OHA clients or others. Examples of abnormal behavior include, but are not limited to: hallucinations, paranoia or violent outbursts. Examples of impairments in physical or mental performance include, but are not limited to: slurred speech, difficulty walking or performing job activities; and (x) Violation of any provision of this subsection may result in termination of this Agreement.

10.   **Pro-Children Act.** Agency shall comply and require all subcontractors to comply with the Pro-Children Act of 1994 (codified at 20 U.S.C. Section 6081 et. seq.).

11.   **Medicaid Services.** Agency shall comply with all applicable federal and state laws and regulation pertaining to the provision of Medicaid Services under the Medicaid Act, Title XIX, 42 U.S.C. Section 1396 et. seq., including without limitation:

   a.   Keep such records as are necessary to fully disclose the extent of the services provided to individuals receiving Medicaid assistance and shall furnish such information to any state or federal agency responsible for administering the Medicaid program regarding any payments claimed by such person or institution for providing Medicaid Services as the state or federal agency may from time to time request. 42 U.S.C. Section 1396a (a)(27); 42 CFR Part 431.107(b)(1) & (2).

   b.   Comply with all disclosure requirements of 42 CFR Part 1002.3(a) and 42 CFR Part 455 Subpart (B).

   c.   Maintain written notices and procedures respecting advance directives in compliance with 42 U.S.C. Section 1396(a)(57) and (w), 42 CFR Part 431.107(b)(4), and 42 CFR Part 489 subpart I.

   d.   Certify when submitting any claim for the provision of Medicaid Services that the information submitted is true, accurate and complete. Agency shall acknowledge Agency's understanding that payment of the claim will be from federal and state funds and that any falsification or concealment of a material fact may be prosecuted under federal and state laws.

   e.   Entities receiving $5 million or more annually (under this Agreement and any other Medicaid contract) for furnishing Medicaid health care items or services shall, as a condition of receiving such payments, adopt written fraud, waste and abuse policies and procedures and inform employees, contractors and agents about the policies and

procedures in compliance with Section 6032 of the Deficit Reduction Act of 2005, 42 U.S.C. § 1396a(a)(68).

12. **Agency-based Voter Registration.** If applicable Agency shall comply with the Agency-based Voter Registration sections of the National Voter Registration Act of 1993 that require voter registration opportunities be offered where an individual may apply for or receive an application for public assistance.

13. **Disclosure.**

    a.    42 CFR Part 455.104 requires the State Medicaid agency to obtain the following information from any provider of Medicaid or CHIP services, including fiscal agents of providers and managed care entities: (1) the name and address (including the primary business address, every business location and P.O. Box address) of any person (individual or corporation) with an ownership or control interest in the provider, fiscal agent or managed care entity; (2) in the case of an individual, the date of birth and Social Security Number, or, in the case of a corporation, the tax identification number of the entity, with an ownership interest in the provider, fiscal agent or managed care entity or of any subcontractor in which the provider, fiscal agent or managed care entity has a 5% or more interest; (3) whether the person (individual or corporation) with an ownership or control interest in the provider, fiscal agent or managed care entity is related to another person with ownership or control interest in the provider, fiscal agent or managed care entity as a spouse, parent, child or sibling, or whether the person (individual or corporation) with an ownership or control interest in any subcontractor in which the provider, fiscal agent or managed care entity has a 5% or more interest is related to another person with ownership or control interest in the provider, fiscal agent or managed care entity as a spouse, parent, child or sibling; (4) the name of any other provider, fiscal agent or managed care entity in which an owner of the provider, fiscal agent or managed care entity has an ownership or control interest; and, (5) the name, address, date of birth and Social Security Number of any managing employee of the provider, fiscal agent or managed care entity.

    b.    42 CFR Part 455.434 requires as a condition of enrollment as a Medicaid or CHIP provider, to consent to criminal background checks, including fingerprinting when required to do so under state law, or by the category of the provider based on risk of fraud, waste and abuse under federal law.

    c.    As such, a provider must disclose any person with a 5% or greater direct or indirect ownership interest in the provider whom has been convicted of a criminal offense related to that person's involvement with the Medicare, Medicaid, or title XXI program in the last 10 years.

    d.    Agency shall make the disclosures required by this Section 13. to OHA. OHA reserves the right to take such action required by law, or where OHA has discretion, it deems appropriate, based on the information received (or the failure to receive information) from the provider, fiscal agent or managed care entity.

14. **Federal Intellectual Property Rights Notice.** The federal funding agency, as the awarding agency of the funds used, at least in part, for the Work under this Agreement, may have certain rights as set forth in the federal requirements pertinent to these funds. For purposes of this subsection, the terms "grant" and "award" refer to funding issued by the federal funding agency to the State of Oregon. The Agency agrees that it has been provided the following notice:

a.    The federal funding agency reserves a royalty-free, nonexclusive and irrevocable right to reproduce, publish, or otherwise use the Work, and to authorize others to do so, for Federal Government purposes with respect to:

    (1)    The copyright in any Work developed under a grant, subgrant or agreement under a grant or subgrant; and

    (2)    Any rights of copyright to which a grantee, subgrantee or a contractor purchases ownership with grant support.

b.    The parties are subject to applicable federal regulations governing patents and inventions, including government-wide regulations issued by the Department of Commerce at 37 CFR Part 401, "Rights to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Grants, Contracts and Cooperative Agreements."

c.    The parties are subject to applicable requirements and regulations of the federal funding agency regarding rights in data first produced under a grant, subgrant or agreement under a grant or subgrant.

**Signature:** *Mike Caven*
Mike Caven (Mar 21, 2024 16:11 PDT)

**Email:** mcaven@eugene-or.gov

1
2
3
4

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I served a true and correct copy of the foregoing

document on the following parties by the method(s) indicated below:

5
6
7
8
9
10
11
12
13
14

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

15
16

I declare under penalty of perjury under the laws of the United States and the State of

Washington that the foregoing is true and correct.

17
18

DATED this 14th day of July, 2025.

19
20

/s/ Gabriela DeGregorio
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

21
22
23
24
25
26
27

CERTIFICATE OF SERVICE - 1