THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

                           Plaintiffs,

        v.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

                           Defendants.

No. 2:25-cv-00814-BJR

DECLARATION OF
YOLANDA CHAVEZ

I, Yolanda Chavez, declare as follows:

1.       I am an Assistant City Administrative Officer in the Office of the City

Administrative Officer ("CAO") for the City of Los Angeles ("City"). The CAO is the financial

advisor to the Mayor and City Council. I have served in this position since 2016. My colleagues

and I advise the City's departments in preparing their proposed annual budgets for submission to

the Mayor's Office. We then make recommendations to the Mayor and help the Mayor's Office

finalize the budget. Once City Council and the Mayor approve the budget, my colleagues and I

administer the budget, including by tracking revenue and expenditures and implementing policy

and programmatic changes as directed by the Adopted Budget. Among the CAO work groups

that I supervise is the Grants Group, which tracks federal grants awarded to all City departments,

including the Department of Transportation, Los Angeles World Airports, and the Housing

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Department. My responsibilities also include assessing impacts of the proposed federal budget on the City. Previously, I served as the Deputy Assistant Secretary for Grant Programs at the U.S. Department of Housing and Urban Development for five years.

2.      I am over eighteen years of age. I have personal knowledge of the facts contained in this declaration and am otherwise competent to testify to the matters in this declaration.

**The City Depends on Federal Funding for its Transportation Infrastructure.**

3.      The City of Los Angeles Department of Transportation ("LADOT") manages Los Angeles County's second-largest transit system in terms of ridership, providing citywide transit services that complement Los Angeles County's trunk line bus and rail services. LADOT operates two primary bus systems in the City of Los Angeles: the Downtown Area Short Hop (DASH) system, which includes 32 bus routes in neighborhoods across the City, and the Commuter Express system, a network of 15 freeway based express bus service routes. LADOT also operates Cityride paratransit services for older adults and persons with disabilities throughout Los Angeles County and portions of western Ventura County. Cityride is a user-side transportation service for seniors and persons with disabilities offered by the City to supplement the federally-mandated Access Services paratransit program. LADOT is also piloting a program called LAnow, a new on-demand shared-ride service, operating a fleet of over 500 buses, vans, and non-revenue vehicles.

4.      LADOT has maintained a longstanding partnership with the Federal Transit Administration (FTA) of the United State Department of Transportation to secure federal grant funding that supports and improves local transit infrastructure. These grants are essential to the Department's financial planning and are used to expand local transit options, meet the needs of underserved communities, and improve the safety and reliability of its operations. Federal

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

funding enables LADOT to implement key projects and maintain its transit vehicles and facilities in a good state of repair, ensuring continued service for City residents.

5.      LADOT receives federal funding through two FTA grant programs codified in 49 U.S.C Chapter 53. Funding levels for these programs were most recently authorized by the Fix America's Surface Transportation (FAST) Act, Pub. L. No. 114-94 (2015); and the Infrastructure, Investment, and Jobs (IIJA) Act, Pub. L. No. 117-58 (2021), also known as the Bipartisan Infrastructure Law (BPIL). The two grant programs set forth in 49 U.S.C. Chapter 53 that are currently utilized by LADOT are: Section 5307 (urbanized area formula grants); and Section 5339 (bus and bus facilities grants). These programs provide a mix of formula and discretionary grants to transit agencies. Formula grants are non-competitive and allocated based on criteria such as population and characteristics of the service area. Discretionary grants are awarded through a competitive application process at the discretion of the FTA.

6.      As of the date of this declaration, LADOT has received approval for approximately nine obligated FTA grants totaling over $124,436,731. Of this amount, LADOT has drawn down roughly $87,237,516, leaving approximately $37,199,215 for ongoing projects. In addition, LADOT has been allocated $72,964,700 in federal funds for fiscal years 2020 through 2025, which are pending obligation with the FTA. Applications for these funds have not yet been developed, as the relevant apportionments have not been finalized.

7.      Given the substantial funding at stake, FTA grant programs are essential to LADOT's ongoing transit operations. LADOT relies on the funds provided by these grant programs to develop, maintain, and modernize its transit system, including both vehicles and facilities. For example, LADOT uses Section 5307 (urbanized area formula grants) funds primarily for capital expenditures, such as replacing aging buses, expanding the fleet with new

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

buses, and upgrading maintenance facilities to support the transition to an all-electric bus fleet. LADOT plans to use $24,422,282 in FTA grants towards a total of $41,386,600 for the purchase of 17 Commuter Express buses and 7 DASH buses. LADOT also plans to use FTA grant funds to fully electrify bus yard facilities including, $3,215,977 in grants for the Downtown Bus Yard, $12,964,506 for the Washington Bus Yard, and approximately $35,000,000 for the Sylmar Bus Yard. Without these grant funds, LADOT risks relying on a bus fleet that is beyond its useful life and of insufficient capacity. Operating buses beyond their useful life conflicts with USDOT's Transit Asset Management program policies and poses direct risks to riders of the public transit system. It also leads to more frequent breakdowns and costly repairs for vehicles that are no longer under warranty.

8.      Continued funding from the FTA is essential to LADOT's transit operations, particularly given the scale of enhancements needed to prepare for major upcoming events such as the 2026 FIFA World Cup, the 2027 Super Bowl, and the 2028 Olympic and Paralympic Games. Without these funds, critical elements of LADOT's existing and planned future operations would almost certainly face significant reductions. Not only would this jeopardize planned capital investments, but also it would have serious downstream impacts on LADOT's ability to sustain core services. In addition, any cuts to transit operations and service levels would disproportionately impact low-income communities dependent on public transit while undermining the City's ability to prepare for the unprecedented demand expected during the World Cup, Super Bowl, and Olympic Games. There is no alternative funding source capable of filling the gap that would be left if any portion of these grants were reduced or withheld.

///

///

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

9.      In addition, under the Infrastructure Investment and Jobs Act (IIJA), California must maintain a Statewide Transportation Improvement Program (STIP), which identifies all federally funded projects planned over a four-year period. Accordingly, LADOT is already actively planning for the needs of transportation projects years in advance, including projects needed to prepare for the upcoming Olympic Games. This extended planning horizon, combined with the multiyear nature of the FTA funding process, underscores the irreplaceable role that these federal grants play in LADOT's long-term transit strategy. If FTA funding were removed or restricted, LADOT would be forced to radically revise its capital project pipeline, service models, and overall financial planning, resulting in fewer mobility options, diminished transit service coverage, and increased congestion across the city. Such setbacks would not only hinder Los Angeles's ability to host major events, but would also undermine everyday mobility for Angelenos who depend on safe, reliable public transportation for many years into the future.

**The Terms Imposed by the Federal Transit Administration's New Master Agreement Imperil Funding for Critical LADOT Projects.**

10.      Under the two FTA grant programs utilized by LADOT, codified at 49 U.S.C. sections 5307 and 5339, each of LADOT's additional awarded (but not yet obligated) grants will require execution of agreements that incorporate the FTA's recently updated 2025 Master Agreement Version 33. While LADOT has historically executed each annual update to the Master Agreement without concern, the introduction of new terms in the 2025 version has raised uncertainty about the availability of future funds. In addition, it is not clear to LADOT whether the FTA will assert that any new draws to existing grants will likewise be subject to the new Master Grant Agreement.

///

///

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

11.    For example, LADOT is deeply concerned about the new Section 12(n) in the 2025 Master Agreement, which reads as follows:

(n)    *Federal Anti-Discrimination.*

    (1)    Pursuant to section (3)(b)(iv)(A), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

    (2)    Pursuant to section (3)(b)(iv)(B), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, by entering into this Agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

12.    While it is framed as a nondiscrimination requirement, Section 12(n) appears to go beyond the already comprehensive provisions relating to federal civil rights and nondiscrimination laws that have long existed in prior versions of the Master Agreement. These provision already obligate LADOT and other recipients to comply with federal laws prohibiting discrimination based on race, color, religion, national origin, sex (including sexual orientation), age, and disability. Section 12(k) even includes a broad catch-all requirement to comply with any other applicable federal nondiscrimination requirements. It is therefore unclear what new or additional obligation Section 12(n) imposes.

13.    LADOT is especially concerned by Section 12(n)(2)'s requirement that LADOT certify it does not operate "programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination law." This requirement is both vague and subjective. The ambiguity in this requirement is demonstrated by the inconsistent messaging coming from federal officials and policies.

///

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**The City Depends on Federal Funding to Operate its Airports.**

14.    Los Angeles World Airports ("LAWA") is an independent, financially self-sufficient department of the City of Los Angeles ("City") created pursuant to Article XXIV, Section 238 of the City Charter. LAWA is under the management and control of a seven-member Board of Airport Commissioners appointed by the Mayor and confirmed by the City Council. LAWA operates and maintains two airports, Los Angeles International Airport ("LAX") and Van Nuys Airport ("VNY"), within the five-county area of Los Angeles, Orange, Ventura, Riverside, and San Bernardino counties in California. LAX is located approximately 15 miles from downtown Los Angeles on the western boundary of the City. LAX offers commercial air service to every major city in the United States and to every major international destination, and is classified by the U.S. Federal Aviation Administration ("FAA") as a large hub airport. VNY is a general aviation airport located 20 miles northwest of downtown Los Angeles, in the San Fernando Valley. VNY is one of the busiest general aviation airports in the United States and critical for reducing and avoiding congestion at LAX and other commercial service airports.

15.    According to the Airports Council International's North American Airport Traffic Report, in 2023 LAX ranked as the fourth busiest airport in North America in terms of total passengers and the fifth busiest airport in North America in terms of cargo. In fiscal year 2023, passengers at LAX totaled 71 million. That number increased to 76.5 million in fiscal year 2024. In the next three years, Los Angeles will host 2026 FIFA World Cup matches, the 2026 NBA All Star Game, Superbowl LXI in 2027, and the 2028 Summer Olympic and Paralympic Games. Visitors and participants of all of these events are expected to use both LAX and VNY.

///

///

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

16.     LAX generates hundreds of thousands jobs in Southern California. This activity adds billions to local, state, and federal tax revenues. These jobs and this economic output are made possible in part by capital investments at the airports, which are supported through federal grants, primarily from the Federal Aviation Administration ("FAA").

17.     The Environmental Protection Agency has designated the Los Angeles area in which both LAX and VNY are located as an area of nonattainment of National Ambient Air Quality Standards for both ozone and particulate matter under the Clean Air Act, with Los Angeles classified as having the highest-possible "Extreme" nonattainment status. This means that achieving timely emissions reductions from airport facilities and vehicles like cars, service equipment, and trucks is critical to protecting public health and attaining EPA air quality standards. FAA grants support these efforts.

18.     LAWA employs over 3,000 City employees to operate and maintain its airports. Its 2024 fiscal year operating budget was $1.2 billion. LAWA operates as an independent "enterprise fund" within City government, meaning that its revenues, including grants, are the sole means by which it pays for its operating and capital expenses, debt service, and required reserves.

19.     In fiscal year 2024, LAWA's federal grants totaled $127.5 million, nearly 10% of its operating budget. Currently, LAWA receives most of its federal grant funding via the FAA's Airport Improvement Program ("AIP") and additional funding authorized and appropriated as part of the Infrastructure Investment and Jobs Act of 2021 (the "Bipartisan Infrastructure Law" or "BIL"), including through the Airport Infrastructure Grants program and Airport Terminal Program. Generally, federal grants are paid to the Department on a reimbursement basis when the grant agreement is approved, after eligible expenditures are made. The amount and timing of

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

receipt of actual AIP grant moneys may vary and may not be reimbursed for a significant period of time after the eligible expenditure is made.

20.    Under the AIP, the FAA awards grant moneys to airports around the country for capital improvement projects and airport operating costs. These grants are primarily used for airfield construction and reconstruction, land acquisition, security enhancement, noise mitigation projects, and the replacement of diesel equipment with electric vehicle technology through the VALE Program. These projects enhance airport safety and efficiency, provide for passenger security and convenience, reduce congestion and delay, and reduce effects of air pollutants and noise. AIP grants include entitlement funds, which are apportioned annually based upon the number of enplaned passengers and total landed weight of all-cargo aircraft at the airport, as well as discretionary funds, which are awarded by the FAA based on a national priority system.

21.    Between June 2009 and September 2024, the Department received approximately $643.9 million under the AIP program. Currently, the FAA has awarded LAWA $53.7 million in discretionary AIP funds for fiscal year 2025 and future years, which have not yet been obligated through the execution of grant agreements. For the fiscal year 2025, LAWA has further requested an additional $35.4 million in discretionary AIP funds, for which the grant applications are still pending before the FAA.

22.    The Bipartisan Infrastructure Law was approved by the U.S. Congress and signed by the President on November 15, 2021. BIL authorizes and appropriates approximately $20 billion nationally in grants for airport infrastructure development over five years between fiscal years 2022 and 2026. Up to approximately $2.9 billion per year of BIL funds will be awarded to primary airports as Airport Infrastructure Grants ("Infrastructure Grants"), allocated on the same basis as AIP entitlement grants. In fiscal year 2023, the Department was awarded

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

approximately $79.1 million of Infrastructure Grants for LAX and $844,000 for VNY. In fiscal year 2024, the Department was awarded approximately $72.5 million of Infrastructure Grants for LAX and $851,000 for VNY. The Department intends to use approximately $280 million of Infrastructure Grants to finance roadway improvement projects that are essential to reduce congestion on access roads, diminish air quality impacts, and improve access for LAX passengers and employees. The FAA has awarded over $226 million in LAWA Infrastructure Grants for fiscal years 2023 through 2025 that have not yet been obligated through the execution of grant agreements.

23.     In addition to the Infrastructure Grants, BIL authorizes and appropriates approximately $1 billion per year of grants to be awarded for fiscal years 2021 to 2026 through discretionary grants under the Airport Terminal Program ("ATP"), with up to 55% going to large hub airports like LAX. On February 27, 2023, the Department was awarded a $50 million ATP grant for fiscal year 2023 for terminal roadway improvements at LAX. Terminal roadway improvements enhance safety, efficiency, and the user experience of ground transportation in and around LAX by separating airport and local traffic, incorporating transportation technology, and reconfiguring the roadway access to the airport. More specifically, modernized infrastructure, improved security systems, and enhanced emergency preparedness all enhance airport safety. On February 15, 2024, the Department was awarded a $31 million ATP grant for fiscal year 2024 for auxiliary curb projects at LAX through which LAWA will provide enhanced and convenient access for private and commercial vehicles. The auxiliary curb project also includes access roadway, drainage, and other related improvements. For fiscal year 2025, LAWA has requested $30 million in ATP grants, for which the grant application is still pending before the FAA.

///

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

24.     Among other uses for these grants will be the reconstruction of taxiways at VNY and extension of taxiways at LAX, which are essential for safety and efficiency at both airports, as well as continuation of sound insulation efforts at homes in the vicinity of LAX in noise zones in excess of FAA compatibility thresholds, and construction of retaining walls for LAX access roads to ensure safe and efficient access with less congestion. In addition, the grants will support the purchase of new electric buses and electric ground support equipment to reduce emissions.

25.     As an example of a specific project grant, the FAA awarded LAWA nearly $19 million for its VNY Taxiway Reconstruction Project. This project, which builds on a series of prior, substantial airfield upgrades, involves replacement of taxiway and shoulder pavements, reconfiguring taxiway intersections, replacing taxiway lighting systems, and modifying airfield signage, among other things. The Project will enhance safety and allow the taxiways to meet the most current FAA safety standards. Taxiway projects, which minimize airfield wait times, enhance aircraft movement, and make taxiway surfaces safer, all of which minimize runway incursions, are important to enhance safety for all airport users. LAWA has not yet fully executed the grant agreement and must decide by September 2025 whether to do so subject to the newly imposed grant conditions discussed below.

26.     The Taxiway C Easterly Extension Project is another example of important projects that might not proceed without federal grant funding. LAWA has applied for approximately $32,969,377 of AIP funds for this project, which the FAA has not yet awarded. This taxiway project is an element of airfield safety improvements in the Airfield and Terminal Modernization Project to improve aircraft operations and sequencing at the departure end of Runway 25R and provide direct access to the proposed development of additional cargo facilities to more efficiently handle increasing cargo operations through LAX. This project would further

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

improve airport operational management by segregating eastbound and westbound taxiing aircraft on Taxiway C and Taxiway B, increasing the separation between the two taxiways and improving airport safety. Similar to the VNY Taxiway Reconstruction Project, this project would reduce airfield wait times and enhance aircraft movement; it would also remove gates that require passenger busing. All of these improvements make the airport safer. The Taxiway C Easterly Extension Project is one part of a larger Airfield & Terminal Modernization Project, a multi-billion-dollar project to elevate the passenger experience, enhance airfield safety, and make other improvements to reduce airport-related congestion and back-ups on public streets. Projects like these are integral to maintaining a safe and secure airport.

**New Terms Imposed on FAA Grants Imperil Airport Funding.**

27.    As a result of the following new conditions that the Trump Administration has placed on FAA grants, it is uncertain whether LAWA can execute and comply with FAA grant agreements. These conditions apply to the issued but not yet executed grant agreements, pending grant applications, and future grant applications. Specifically, the FAA has modified the conditions applicable to grant funding primarily through three recently-issued documents: a letter dated April 24, 2025 from Secretary of Transportation Sean P. Duffy (the "Duffy Letter"); the April 24, 2025 "Airport Improvement Program Grant Assurances" notice in the Federal Register, which established revised grant assurance language that the FAA said it would implement immediately, 90 Fed. Reg. 17501 (Apr. 25, 2025) ("GA Changes"); and a revised Fiscal Year 2025 Grant Agreement, which the FAA posted on its website around the same time as the GA Changes without providing airport sponsors notice or an opportunity to comment ("Revised Template").

///

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

28.     The Duffy Letter provides that "[w]hether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called 'diversity, equity, and inclusion,' or 'DEI,' goals, presumptively violates Federal law." The Duffy Letter further advises grant recipients that "your legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." Moreover, "[d]eclining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detention contravenes Federal law and may give rise to civil and criminal liability." The letter further advises that DOT "will vigorously enforce the law on equal terms as to all its recipients and intends to take appropriate measures to assess their compliance based on the interpretation of Federal law set forth in this letter" and that "[n]oncompliance with applicable Federal laws, or failure to cooperate generally with Federal authorities in the enforcement of Federal law, will jeopardize your continued receipt of Federal financial assistance . . . ."

29.     In the GA Changes, the FAA added a number of Executive Orders to the list of applicable provisions in Grant Assurance 1, *General Federal Requirements*, all of which have been subject to litigation and/or preliminary injunctions. These include:

- 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing;

- 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government; and

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

- 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity.

30.    The FAA's modification of the Revised Template also causes concern as follows:

- Condition 31 was added, which provides: "Pursuant to Section (3)(b)(iv), Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, the sponsor: a. Agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of 31 U.S.C. § 3729(b)(4); and b. certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws."

- Condition 32 was added, stating: "The Sponsor shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Sponsor will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in and the enforcement of Federal immigration law."

- Condition 35 was added, which states: "The sponsor will follow applicable federal laws pertaining to [8 U.S.C.] Subchapter 12 and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter."

31.    The Revised Template signature page provides that, by signing, the sponsor agrees to "ratify and adopt all assurances, statements, representations, warranties, covenants, and agreements contained in the Project Application and incorporated materials referred to in the foregoing [Revised Template] and does hereby accept this [Revised Template] and by such acceptance agrees to comply with all the Grant Assurances, terms, and conditions in this [Revised Template] and in the Project Application."

///

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

32.     These terms present the City with the same problems faced by the LADOT in parsing the FTA's recently updated 2025 Master Agreement. Further, many of the terms are subjective. Finally, some of the requirements ask LAWA to commit the City to an open-ended agreement to comply with unknown future amendments to regulations, such as to Disadvantaged Business Enterprise and Airport Concessions Disadvantaged Business Enterprise regulations.

33.     LAWA must decide by September 2025 whether to sign and fully execute grant agreements that the FAA has issued to it and that collectively total $55.3 million. And it has submitted grant applications that are still pending with the FAA for a total of an additional $65.4million that would, if granted by the FAA, be subject to the conditions at issue in this action.

34.     In addition, LAWA expects to apply for approximately $275 million-$350 million of AIP and AIG entitlement funds in fiscal year 2026 (starting October 1, 2025) for further roadway access work and other critical airport safety, security, and efficiency projects, among other projects, for which grant agreements would have to be executed.

35.     Loss or delay of federal funding would have direct, substantial, and wide-ranging impacts on LAWA's operations and finances, including the delivery of capital projects to improve the safety, efficiency, and quality of airport operations, and reduce environmental effects. LAWA relies on federal funds to support its capital projects, which involve development, construction, maintenance, repair, and modernization of its facilities for the benefit and safety of the public. Such projects are long-term and costly investments, and involve contracting with many other parties. To manage these projects, LAWA develops long-term funding plans and must carefully manage financial risk. LAWA depends on stable and predictable funding to inform decisionmakers and stakeholders of proposed expenditures and expected costs.

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

36.     If federal funding is denied or delayed as a result of grant agreement conditions, LAWA would likely need to substantially curtail or delay some of its capital projects. This would delay or eliminate the projects' benefits, including reduced: risks to safety, delay for airlines and airline passengers, congestion on and air pollution from roadways, noise impacts to nearby residents, and the overall time passengers and employees need to travel. It is also likely to significantly increase project costs if projects are delayed into the future. This will reduce the scope of benefits LAWA can provide through its enterprise funds, and likely increase costs to airlines, other users, and passengers, as well as local residents and communities.

37.     Because LAWA is enterprise funded, a loss of federal grant funds will reduce total available revenues for the airports' operations, maintenance, and capital expenditures and/or require increases in charges to airport users (including charges to airlines that would pass along costs to passengers). In the face of reduced or eliminated federal funds, LAWA may need to incur additional indebtedness, possibly by issuing additional municipal bonds, to finance projects. The increased costs associated with such indebtedness would further reduce future funds available for operations, maintenance or additional capital projects.

**New Terms Imposed on HUD Grants Imperil Funding for Critical City Housing Programs.**

38.     As a result of new conditions imposed on federal grants from the U.S. Department of Housing and Urban Development ("HUD"), the City stands to lose approximately $99,714,766.44 in formula block grants for fiscal year 2024-2025, including $48,007,436 in Community Development Block Grants, $23,237,026.44 in HOME grants, $4,256,090 in ESG grants, and $24,214,214 in HOPWA grants. These grants, which are distributed based on predetermined formulas often involving factors like population and income, are a crucial source of revenue for many City housing services and programs.

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

39.     Losing formula block grant funding could have detrimental impacts on Los Angeles' ability to provide essential services, particularly to vulnerable communities. The City relies on these funds to support safety net programs, economic development initiatives, and address critical needs in low to moderate-income communities. Without these consistent funding sources, the City might face the challenge of scaling back or eliminating programs that offer a vital first access point to resources for these families. Anticipated negative impacts include:

- Worsening Homelessness: Cuts to programs like and Homeless Assistance Grants can put people who are currently housed at risk of homelessness and hinder efforts to help those experiencing homelessness.

- Reduced Access to Affordable Housing: Loss of HOME and CDBG funding makes it more difficult for communities to develop and maintain affordable housing options, limiting access for low and moderate-income individuals.

- Strain on Support Systems: Programs like ESG provide essential services to those experiencing or at risk of homelessness. Funding cuts would place a significant strain on these systems, potentially leading to increased reliance on emergency services.

- Disproportionate Impact on Vulnerable Populations: Certain groups, including older adults, people with disabilities, and specific racial and ethnic groups, are more heavily impacted by homelessness and rely on these programs. Funding cuts would worsen existing disparities.

- Hindered Community Development: CDBG supports a variety of community development activities. Loss of this funding could impede projects focused on improving infrastructure, creating jobs, and enhancing neighborhood safety.

40.     The potential loss of formula grants is particularly concerning in light of the City's already strained budget. Los Angeles has been grappling with a substantial budget deficit, leading to difficult choices about spending and staffing. In response to the fiscal challenges, including the threat of reduced federal grants, the Los Angeles City Council has taken steps such as declaring a state of fiscal emergency. Any decrease in federal funding would exacerbate these

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

challenges, potentially forcing deeper cuts to essential services.

41.     Among the new conditions that have been imposed on HUD grants is an April 4, 2025 directive from HUD Secretary Scott Turner to HUD grantees and stakeholders emphasizing that federal housing assistance cannot be extended to illegal aliens. The directive announces that HUD grant agreements must now include language complying with Executive Order 14218, "Ending Taxpayer Subsidization of Open Borders," and reminded grantees and stakeholders of existing legal frameworks, such as the Personal Responsibility and Work Opportunity Reconciliation Act and Section 214 of the Housing and Community Development Act, which prohibit illegal aliens from receiving certain federal public benefits.

42.     In addition, a grantee must now certify to a number of Executive Orders, such as EO 14219, Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative; EO 14218, Ending Taxpayer Subsidization of Open Borders; EO 14202, Eradicating Anti-Christian Bias; EO 14205, Establishment of the White House Faith Office; EO 14182, Enforcing the Hyde Amendment; EO 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity; EO 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government; EO 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing; and EO 14148, Initial Rescissions of Harmful Executive Orders and Actions and all implementing regulations issued pursuant to these statutes and authorities. By accepting the grant renewal, the grantee agrees that it will comply in all respects with all applicable federal anti-discrimination laws is material to the government's payment decisions for the purposes of section 3729(b)(4) of title 31, United States Code; and certifies that it does not operate any programs promoting Diversity, Equity, and Inclusion (DEI) that violate any applicable federal anti-discrimination

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

laws. EO 14218 prohibits HUD from making financial assistance available to persons other than United States citizens or certain categories of eligible noncitizens in Federal grant programs.

43.    Additionally, Secretary Turner reported that he instructed HUD leadership to review existing programs and implement mechanisms to ensure compliance with Executive Order 14218. This includes taking steps to ensure that federal resources are not used to support "sanctuary" policies in state and local jurisdictions that prevent federal authorities from deporting illegal aliens.

44.    On June 18, 2025, the City received an email from HUD notifying the City that HUD would be reviewing fiscal year 2025 Consolidated and Annual Action Plans to ensure alignment with applicable White House Executive Orders, and that the fiscal year 2025 Office of Community Planning and Development's (CPD) formula grant agreements will include language to emphasize compliance with these Executive Orders. The email referred the City to a June 5, 2025 letter from HUD General Deputy Assistant Secretary Claudette Fernandez to the Council of State Community Development Agencies and the National Community Development Association, wherein she reiterated Secretary Turner's directive that HUD would require conformity with applicable Administration priorities and executive orders.

45.    In addition, on June 12, 2025, HUD notified the City by email that the recently revised HUD 424-B certification form required to process and approve grant applications had been revised a second time, and that the City would need to sign and submit the newly revised form. The new version of the form includes condition number 6, which requires the City to certify that it "[w]ill not use Federal funding to promote diversity, equity, and inclusion (DEI) mandates, policies, programs, or activities that violate any applicable Federal anti-discrimination laws."

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

46.     These terms pose the same problems as the conditions that the Trump Administration attached to the City's transportation and airport grants, including that many are vague, ambiguous, and subjective. The City faces an impossible choice of agreeing to terms that are too vague to be understood, that may be illegal, and that may be fraught with legal risk, or else forfeiting nearly $100 million in grants needed for critical housing projects.

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 8th day of July, 2025.

_____
Yolanda Chavez

DECLARATION OF YOLANDA CHAVEZ
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1
2
3
4

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2025, I served a true and correct copy of the foregoing

document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

5
6
7
8
9
10
11
12
13
14
15

I declare under penalty of perjury under the laws of the United States and the State of

Washington that the foregoing is true and correct.

16
17

DATED this 14th day of July, 2025.

18
19
20

*/s/ Gabriela DeGregorio*
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

21
22
23
24
25
26
27

CERTIFICATE OF SERVICE - 1

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750