THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

                    Plaintiffs,

    v.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

                    Defendants.

No. 2:25-cv-00814-BJR

DECLARATION OF KEVIN MUHS

I, KEVIN MUHS, declare as follows:

1.      My name is Kevin Muhs. I am over the age of 18. I make this declaration based on my personal knowledge, and a review of the relevant business records of the City of Milwaukee ("Milwaukee"), Department of Public Works.

2.      I have worked for the City of Milwaukee Department of Public works since 2022 and I currently serve as the City Engineer. Prior to serving as City Engineer, I served for ten years in multiple engineering and executive-level positions for the Southeastern Wisconsin Regional Planning Commission from 2012-2022, including serving in the role of Executive Director from 2019-2022.

3.      I hold a Bachelor of Science degree in Civil Engineering from Marquette University (2010), and a Master of Science degree from the Transportation, Transit Research

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Group at the Massachusetts Institute of Technology (2012).

4.     Milwaukee's Department of Public Works Infrastructure Services Division ("Milwaukee Infrastructure Services") is currently administering five discretionary, reimbursable capital grants from the United States Department of Transportation ("USDOT"). The five grants come from the Safe Streets and Roads for All Program ("SS4A"; FFY2022, FFY2023, and FFY2024), Local and Regional Project Assistance Program ("RAISE"; FFY2023), and Neighborhood Access and Equity ("RCN"; FFY2023) programs, as authorized by the Infrastructure Investment and Jobs Act and Inflation Reduction Act. Additionally, we have submitted an application for the FFY2025 SS4A opportunity. Each of these grants is described in more detail below.

5.     Milwaukee Infrastructure Services also receives significant USDOT pass-through funding from the State of Wisconsin, including regularly administering projects funded in part by the National Highway Performance Program, Surface Transportation Block Grant Program, Congestion Mitigation and Air Quality Program, Highway Safety Improvement Program, Transportation Alternatives Program, and Carbon Reduction Program. The total funding can vary, but typically ranges from $25 million to $65 million annually.

6.     Milwaukee heavily relies on its federal partner, USDOT, to help it provide safe, high-quality infrastructure for Milwaukee's residents, connecting neighborhoods, reducing deaths and serious injuries from transportation, and supporting economic revitalization in some of the poorest zip codes in Wisconsin. Milwaukee's USDOT funding is a critical part of the city's budgeting process. Without the type of robust federal support described in this declaration, Milwaukee could not provide schoolchildren with safer routes to their schools, rebuild vital arteries of economically depressed neighborhoods to bring back thriving businesses, provide safe

DECLARATION OF KEVIN MUHS - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    pedestrian crossings in as many high-crash areas of the city, and install a significant number of

2    traffic calming devices to address Milwaukee's reckless driving problem. Without the federal

3    funding described in this declaration, Milwaukee will become a significantly less safe place to be

4    a pedestrian or a driver, and will become significantly less desirable to new small businesses.

5        7.    The FY2023 RAISE "Reimagining Villard Avenue" grant provides $14.3 million

6    in USDOT funding. This grant provides funding for Milwaukee Infrastructure Services to

7    reconstruct W. Villard Avenue between Sherman Boulevard and Teutonia Avenue to support

8    economic development and safe travel for all users. This project is intended to include protected

9    bike lanes, bus stop improvements, pedestrian safety enhancements, and retrofitting some safety

10   improvements between Teutonia and 20th Street. If this project does not move forward, I expect

11   past crash trends in the corridor to continue, which would mean approximately 3 fatal and 12

12   serious injury crashes on the corridor every five years for the foreseeable future. Based on

13   nationally-accepted guidance from the Federal Highway Administration, I estimate that

14   approximately 175 direct jobs will be created by this project and a broader $20 million in

15   economic benefits will be generated for Milwaukeeans. The City of Milwaukee does not have

16   the resources to continue the project without the assistance of these USDOT funds. Although we

17   have been awarded these funds, the first funding agreement is still in negotiation for preliminary

18   engineering and environmental review services, which are expected to cost approximately $1.8

19   million.

20       8.    A recently transmitted revised template agreement for the FY2023 RAISE

21   "Reimaging Villard Avenue" grant incorporates "Federal Law and Public Policy Requirements,"

22   which include the challenged terms related to immigration and diversity, equity, and inclusion,

23   via a link to the "General Terms and Conditions Under the Fiscal Year 2023 RAISE Program:

DECLARATION OF KEVIN MUHS - 3
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FHWA Projects," dated October 1, 2024, which is available at

https://www.transportation.gov/policy-initiatives/raise/raise-grant-agreements. (Muhs Exhibit A,

pg. 3, section 1.1, and Muhs Exhibit B, linked terms and conditions.) Section 21.3 of the linked

terms includes the following:

> **21.2**    **Federal Law and Public Policy Requirements.**
>
> (a) The Recipient shall ensure that Federal funding is expended in full accordance with the
> United States Constitution, Federal law, and statutory and public policy requirements:
> including but not limited to, those protecting free speech, religious liberty, public welfare,
> the environment, and prohibiting discrimination; and the Recipient will cooperate with
> Federal officials in the enforcement of Federal law, including cooperating with and not
> impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices
> and components of the Department of Homeland Security in the enforcement of Federal
> immigration law.
>
> (b) Pursuant to Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-
> Based Opportunity, the Recipient agrees that its compliance in all respects with all
> applicable Federal anti-discrimination laws is material to the government's payment
> decisions for purposes of section 3729(b)(4) of title 31, United States Code.
>
> (c) Pursuant to Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-
> Based Opportunity, by entering into this agreement, the Recipient certifies that it does
> not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that
> violate any applicable Federal anti-discrimination laws.
>
> (d) The failure of this agreement to expressly identify Federal law applicable to the Recipient
> or activities under this agreement does not make that law inapplicable.

9.      It is unclear what the contested diversity, equity, and inclusion terms add to the

extensive nondiscrimination requirements of the grant, other than creating ambiguity. Milwaukee

has interpreted them to mean that the city must not operate any programs that violate applicable

federal antidiscrimination law, whether those programs constitute diversity, equity, or inclusion,

or not. Since the draft agreement and its incorporated documents already require compliance

with federal antidiscrimination law, Milwaukee cannot know what USDOT means by adding a

term specific to diversity, equity, and inclusion, many programs of which, Milwaukee believes,

*do not* violate federal antidiscrimination law.  But without clear guidance from USDOT, it is

impossible for Milwaukee to know whether USDOT interprets its term as Milwaukee does,

whether USDOT interprets its term to mean that a grant recipient may not operate any diversity,

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

equity, or inclusion programs at all (without defining such programs) because USDOT believes all such programs inherently violate federal antidiscrimination law, or whether USDOT's interpretation is subject to the winds of change. Such ambiguity opens Milwaukee up to the possibility of crippling litigation if USDOT, or a private citizen standing in USDOT's shoes via the False Claims Act, interprets this highly ambiguous term differently.

10.    To the extent that Milwaukee is not covered under any of the currently existing preliminary injunctions from litigation in which Milwaukee was not a party, such as State of California v. Duffy, 1:25-cv-00208-JJM-PAS (D.R.I.) which may, currently, extend to all or some of Milwaukee's funding because the State of Wisconsin is a party, I expect these terms to be included and enforced in future agreements and amendments.

11.    The FY2022 SS4A "Accessible Intersections for All" grant provides $4.4 million USDOT funding with a $1.1 million Milwaukee match. This grant provides funding for Milwaukee Infrastructure Services to add pedestrian safety improvements and accessible pedestrian signals for to up to 23 intersections in five high-crash corridors across Milwaukee (sections of Capitol Drive, Atkinson Avenue, Greenfield Avenue, Chavez Drive, and Forest Home Avenue). This project will use interventions with known crash reduction factors vetted by the Federal Highway Administration to reduce fatal and serious injury crashes, and I expect current elevated crash rates to continue without the interventions funded by this project. The City of Milwaukee does not have the resources to continue the project without the assistance of these USDOT funds. The funds are/will be obligated in multiple phases, based on consecutive agreements with USDOT. Milwaukee's current agreement for preliminary engineering and environmental review activities does not contain any of the challenged conditions; however, I expect Milwaukee Infrastructure Services to sign or amend an agreement with USDOT to begin

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the final engineering and design phase of work in the spring of 2026 governing the remaining

unobligated portions of the grant, which currently total approximately $3.8 million.

12.     USDOT has already added a nearly identical "Federal Law and Public Policy

Requirements" to the FY2022, FY2023, and FY2024 grant terms for the Safer Streets for All

grant program, and I therefore expect to see the "Federal Law and Public Policy Requirements"

appear in Milwaukee's subsequent agreements for this grant. (See

https://www.transportation.gov/grants/ss4a/grant-agreements, copies of downloaded terms kept

on file by declarant, for FY2024 at sec. 27.2, FY2023 at sec. 24.2, FY2022 at sec. 24.2).

13.     The FY2023 SS4A "Safe, Welcoming, and Enjoyable Streets to Grow

Milwaukee" grant provides $4 million USDOT funding with a $1.0 million Milwaukee match.

This grant is a planning and demonstration grant to help Milwaukee Infrastructure Services test

new traffic calming and bikeway protection elements and technologies, and also pilot and

evaluate public outreach and involvement techniques. Using these funds, I expect Milwaukee to

be able to evaluate public acceptance and effectiveness of a variety of infrastructure safety

interventions in our local context. Without these funds, we would not have the resources to

pursue this effort and future safety interventions across the City would be less efficient and

effective. The funds are obligated in multiple phases, based on consecutive agreements with

USDOT. Milwaukee's current agreement for Planning, Preliminary Design, Data Collection, and

Environmental Review activities does not contain any of the challenged conditions; however, I

expect that Milwaukee Infrastructure Services will need to amend or sign an agreement with

USDOT to begin the next phase of work in fall, 2025. Remaining fund which will be governed

under subsequent amendments or new agreements will total approximitaly $2.5 million. Because

this FY2023 SS4A "Safe, Welcoming, and Enjoyable Streets to Grow Milwaukee" grant falls

DECLARATION OF KEVIN MUHS - 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

within the same grant program as the FY2022 SS4A "Accessible Intersections for All" grant, I expect the "Federal Law and Public Policy Requirements," including the contested terms related to immigration enforcement and diversity, equity, and inclusion to be inserted into all subsequent agreements governing the remaining unobligated portions of the grant, which currently total approximately $2.5 million.

14.    The FY2024 SS4A "Center Street Transformation" grant provides $25 million USDOT funding with a minimum $6.25 million Milwaukee match. This grant provides funding for Milwaukee Infrastructure Services to reconstruct W. Center Street between Sherman Boulevard and Teutonia Avenue to support economic development and safe travel for all users. This project is intended to include protected bike lanes, bus stop improvements, and pedestrian safety enhancements.  If this project does not move forward, I expect past crash trends in the corridor to continue, which would mean approximately 6 fatal and 21 serious injury crashes on the corridor every five years for the foreseeable future. Based on nationally-accepted guidance from the Federal Highway Administration, I estimate that approximately 380 direct jobs will be created by this project and a broader $57 million in economic benefits will be generated for Milwaukeeans. The City of Milwaukee does not have the resources to continue the project without the assistance of these USDOT funds. Although we have been awarded these funds, this funding agreement is still in negotiation. Because this FY2024 SS4A "Center Street Transformation" grant falls within the same grant program as the FY2022 SS4A "Accessible Intersections for All" grant, I expect the "Federal Law and Public Policy Requirements," including the contested terms related to immigration enforcement and diversity, equity, and inclusion to be inserted into all agreements governing this grant, for the reasons described above.

15.    The FY2025 SS4A "Safe Streets for Kids" grant, should the City's project be

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

selected for award, would provide $8 million in USDOT funding with a $2 million Milwaukee match. This grant application includes traffic safety-focused street improvements on two corridors: N. Martin Luther King Junior Dr. from W. Wright St. to N 8th St. and W. Forest Home Av. from W. Lincoln Av. to W. Mitchell St. These corridors were selected because they are both part of the updated High Injury Network and both have a number of kid-related destinations like schools, parks, and libraries either directly on the corridor or extremely close by. The construction work will include repaving the street and infrastructure such as improved pedestrian crossings (such as curb extensions, raised crosswalks, and crossing beacons), transit improvements (enhanced boarding areas, such as shelters or possibly in-lane stops), and biking improvements (protected crossings and possibly fully protected bike lanes, if space allows). Because this FY2025 SS4A "Safe Streets for Kids" grant falls within the same grant program as the FY2022 SS4A "Accessible Intersections for All" grant, I expect the "Federal Law and Public Policy Requirements," including the contested terms related to immigration enforcement and diversity, equity, and inclusion to be inserted into all agreements governing this grant, for the reasons described above.

16.    The FY2023 RCN "Connecting North to South: A Complete 6th Street" grant provides $36.56 million in USDOT funding. This grant provides funding for Milwaukee Infrastructure Services to reconstruct N. 6th Street between North Avenue and National Avenue to support economic development and mitigate historical damage from the urban renewal period in this corridor. The new street will emphasize moving through the corridor on foot, biking, and via transit.  The funds were intended to be obligated in multiple phases, based on consecutive agreements with USDOT. Recent actions by Congress as part of the One Big Beautiful Bill Act rescinded $34.51 million in unobligated funding for this project. Milwaukee's current agreement

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

for preliminary engineering and environmental review activities does not contain any of the challenged conditions and USDOT has not yet published revised grant terms for the Reconnecting Communities grant program; however, based on USDOT Secretary Sean Duffy's April 24, 2025 letter ("Duffy letter"), https://www.transportation.gov/sites/dot.gov/files/2025-04/Follow%20the%20Law%20Letter%20to%20Applicants%204.24.25.pdf, I remain concerned that Milwaukee Infrastructure Services may be required to accept revised terms and conditions that incorporate the contested terms related to immigration enforcement and diversity, equity, and inclusion before receiving reimbursement for the funding covered under the current agreement.

17.     Milwaukee Infrastructure Services also receives pass-through USDOT funding from the State of Wisconsin, as described above. Based on the Duffy letter and USDOT's consistent revisions to its terms and conditions, I believe that USDOT will incorporate the contested terms, including those related to immigration enforcement and diversity, equity, and inclusion into the agreements with the State of Wisconsin governing Milwaukee's pass-through USDOT funds, and that the State of Wisconsin will pass those obligations, assurances, and certifications on to Milwaukee.  The incorporation of those terms is problematic for the same reasons, and to the extent, described under the FY2023 RAISE "Reimagining Villard Avenue" grant above. Losing access to these funds would halt numerous paving improvement, safety, and transportation network improvement projects across the City, resulting in more lives lost due to transportation on the City's street network; more potholes and failing pavement for the City's residents, businesses, and visitors; a reduction in economic growth for the City's businesses and residents; and a decline in quality of life and neighborhood safety in areas near where current and future projects are planned. The City's annual amount of pass-through USDOT funding is

DECLARATION OF KEVIN MUHS - 9
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

generally equal to or higher than the City's available local resources for all transportation

projects in the City, and therefore the City would be unable to backfill lost USDOT pass-through

funding to continue these numerous projects.


I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this **8TH** day of July, 2025.

KEVIN MUHS

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A

Muhs Decl. Exhibit A

**5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION**
*Revised 2025-04-23*

| | | | |
|---|---|---|---|
| **1.** | **Award No.** | **2.** **Effective Date**<br>See No. 17 Below | **3.** **Assistance Listings No.**<br>20.933 |

**4.** **Award To**

Unique Entity Id.:
TIN No.:

**5.** **Sponsoring Office**
U.S. Department of Transportation
Federal Highway Administration
Office of Acquisition & Grants Management
1200 New Jersey Avenue, SE
HCFA-32, Mail Drop E62-204
Washington, DC 20590

**6.** **Period of Performance**
Effective Date of Award –

**7.** **Total Amount**
Federal Share:                    $0
Recipient Share:               $0
Total:                                  $0

**8.** **Type of Agreement**
Grant

**9.** **Authority**
49 U.S.C. 6702; Infrastructure Investment and Jobs Act (Pub. L. No. 117-58, div. J, Nov. 15, 2021); Consolidated Appropriations Act, 2023 (Pub. L. 117-328, Dec. 29, 2022)

**10.** **Procurement Request No.**

**11.** **Federal Funds Obligated**
$0

**12.** **Submit Payment Requests To**
See Article 18 of the General Terms and Conditions.

**13.** **Payment Office**
See Article 18 of the General Terms and Conditions.

**14.** **Accounting and Appropriations Data**

**15.** **Description of Project**

**RECIPIENT**
**16.  Signature of Person Authorized to Sign**

_____
Signature                                    Date
Name:
Title:

**FEDERAL HIGHWAY ADMINISTRATION**
**17.   Signature of Agreement Officer**

_____
Signature                                    Date
Name:
Title: Agreement Officer

## U.S. DEPARTMENT OF TRANSPORTATION

## GRANT AGREEMENT UNDER THE
## FISCAL YEAR 2023 RAISE PROGRAM

This agreement is between the United States Department of Transportation (the "**USDOT**") and the [insert full name of recipient] (the "**Recipient**").

This agreement reflects the selection of the Recipient to receive a RAISE Grant for the [insert project name from USDOT award letter].

If schedule A to this agreement identifies a Designated Subrecipient, that Designated Subrecipient is also a party to this agreement, and the parties want the Designated Subrecipient to carry out the project with the Recipient's assistance and oversight.

The parties therefore agree to the following:

## ARTICLE 1
## GENERAL TERMS AND CONDITIONS.

**1.1    General Terms and Conditions.**

(a) In this agreement, "**General Terms and Conditions**" means the content of the document titled "General Terms and Conditions Under the Fiscal Year 2023 RAISE Program: FHWA Projects," dated April 23, 2025, which is available at https://www.transportation.gov/BUILDgrants/grant-agreements. The General Terms and Conditions reference the information contained in the schedules to this agreement. The General Terms and Conditions are part of this agreement.

(b) The Recipient states that it has knowledge of the General Terms and Conditions.

(c) The Recipient acknowledges that the General Terms and Conditions impose obligations on the Recipient and that the Recipient's non-compliance with the General Terms and Conditions may result in remedial action, terminating of the RAISE Grant, disallowing costs incurred for the Project, requiring the Recipient to refund to the USDOT the RAISE Grant, and reporting the non-compliance in the Federal-government-wide integrity and performance system.

## ARTICLE 2
## SPECIAL TERMS AND CONDITIONS.

[Choose the appropriate one of these two alternatives.]
[**Alternative #1:** If there are no special terms and conditions, then use the following:]

There are no special terms for this award.

**5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION**
*Revised 2025-04-23*

[**Alternative #2:** If there are special terms and conditions, repeat and modify the following as needed:]

**2.1**    **[Special Term Title].**

[special term text]

5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION
*Revised 2025-04-23*

## SCHEDULE A
## ADMINISTRATIVE INFORMATION

**1.   Application.**

Application Title:     [insert full descriptive title from box 15 of the SF-424]

Application Date:     [insert the date in box 3 of the SF-424]

**2.   Recipient's Unique Entity Identifier.**

See section 28.3 of the General Terms and Conditions.

**3.   Recipient Contact(s).**

Name
Title
Agency
Mailing Address
Phone Number
Email Address

**4.   Recipient Key Personnel.**

| Name | Title or Position |
|------|-------------------|
| [Insert name] | [insert title] |

**5.   USDOT Project Contact(s).**

[enter name]
Agreement Officer (AO)
Federal Highway Administration
Office of Acquisition and Grants Management
HCFA-32, Mail Stop E62-310
1200 New Jersey Avenue, S.E.
Washington, DC 20590
[enter telephone]
[enter email address]

and

[enter name]
Agreement Specialist (AS)
Office of Acquisition and Grants Management
HCFA-32, Mail Stop E62-204
1200 New Jersey Avenue, S.E.

**Commented [USDOT1]:** Additional Information. For additional context on how the here is used, see the definition of "Technical Application" in section 29.5 in the General Terms and Conditions and the use of the term "Technical Application" throughout the General Terms and Conditions.

**Commented [USDOT2]:** Additional Information. For additional context on how Recipient Contacts are used and when the Recipient is required to update these contacts, see sections 20.2, 23.3, and 23.4 in the General Terms and Conditions.

**Commented [USDOT3]:** Drafting Instruction: Add rows to identify as many key personnel as necessary.  See section 3.6 of the General Terms & Conditions.

**Commented [USDOT4]:** Additional Information. For additional context on how USDOT Project Contacts are used, see sections 6.1, 20.2, and 23.2 in the General Terms and Conditions.

Washington, DC 20590
[enter telephone]
[enter email]

and

[enter name]
Agreement Officer Representative (AOR)
[enter job title]
[enter office]
[enter address]
[enter telephone]
[email address]

and

[enter name]
[enter job title]
[enter office]
[enter address]
[enter telephone]
[email address]

**6.    Payment System.**

USDOT Payment System:     DELPHI eInvoicing

**7.    Office for Subaward and Contract Authorization.**

USDOT Office for Subaward and Contract Authorization:   FHWA Office of Acquisition and Grants Management

**8.    Federal Award Identification Number.**

See section 28.2 of the General Terms and Conditions.

**9.    Designated Subrecipient.**

Designated Subrecipient:     None

5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION
*Revised 2025-04-23*

**SCHEDULE B**
**PROJECT ACTIVITIES**

**1.**   **General Project Description.**

[Insert text from the USDOT award letter.]

**2.**   **Statement of Work.**

[Insert statement of work.]

> **Commented [USDOT5]: Drafting Instruction:** This is OST's description of the project. This description is included in the USDOT selection memo (not necessarily the same as the fact sheet description).

> **Commented [USDOT6]: Drafting instructions:**
>
> This section is intended to supplement section 1 with more detail describing the project scope.
>
> The SOW should include, but is not limited to, quantitative information of project area/distance, detailed activity (e.g. paving, stormwater improvements, utility installation, adding a lane or path of certain width, etc.), and specification of materials to be used or equipment to be installed where relevant.
>
> If the project will be completed in segments or phases, describe each segment or phase. If the project has separate functional or geographic components, describe each component.

5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION
*Revised 2025-04-23*

### SCHEDULE C
### AWARD DATES AND PROJECT SCHEDULE

1.    **Award Dates.**

Budget Period End Date:        Budget Period End Date:[Choose the appropriate one of these two alternatives.]

[**Alternative #1:** If all funds are being obligated at once:]
Budget Period End Date: MM/DD/YYYY

[**Alternative #2:** If funds are to be obligated in multiple project phases:]
Base Phase Budget Period End Date:  MM/DD/YYYY
Option Phase 1 Budget Period End Date:  MM/DD/YYYY
Option Phase 2 Budget Period End Date: MM/DD/YYYY

Period of Performance End Date:    See section 28.5 of the General Terms and Conditions

2.    **Estimated Project Schedule.**

[Choose the appropriate one of these two alternatives.]
[**Alternative #1:** if this designated a Capital project at section 2 of schedule F:]

| Milestone | Schedule Date |
|---|---|
| Planned Construction Substantial Completion and Open to Traffic Date: | [insert date] |

[**Alternative #2:** if this designated a Planning project at section 2 of schedule F:]

| Milestone | Schedule Date |
|---|---|
| Planned Project Completion Date: | [insert date] |

3.    **Special Milestone Deadlines.**

[Choose the appropriate one of these two alternatives.]
[**Alternative #1:** If the only critical dates are completion dates, then use the following:]

None.

[**Alternative #2:** If there are additional critical dates, use this table and insert a row for each date. The milestone must be described in enough detail that there is no ambiguity about when

**Commented [USDOT7]:** **Additional Information.** For the definition of Budget Period, see section 28.4 in the General Terms and Conditions. See also its use in sections 4.3, 5.3, and 18.3.

**Commented [USDOT8]:** **Drafting Instruction:** The budget period identifies the period of time when eligible costs can be incurred (work performed) on a project and reimbursed with RAISE funds under this agreement. Work performed or claims for reimbursement after the budget period end date are not eligible for reimbursement with RAISE funds under this agreement. See section 18.3 of the General Terms and Conditions.

The budget period may include a reasonable and supportable amount of time for finalizing billing documentation for RAISE grant funds. The budget period does not include future project work activities or phases that are not currently authorized for reimbursement under this agreement.

If the funding act identified in schedule C is IIJA, then the RAISE funds under this agreement cancel on 9/30/2032. The RAISE grant funds must be expended, which includes the submission of a claim of reimbursement and payment by Treasury before the Budget Period end date. Recipients are encouraged to fully expend RAISE grant funds before 8/31/2032. Therefore, the Budget Period end date cannot be later than 9/30/2032 and should be before 8/31/2023.

**Commented [USDOT9]:** **Additional information.** See article 5 and section 17.1 of the General Terms and Conditions for context on how this schedule is used in the agreement and may affect the availability of RAISE funds for the project.

**Commented [USDOT10]:** **Drafting Instruction:** If any of the dates in section 2 differ from the dates in the application, each difference must be described in schedule E.

**Commented [USDOT11]:** **Drafting Instruction:** If this is a phased fund obligation grant agreement (i.e., schedule D section 2 sets the obligation type to "Multiple"), then there must be a completion milestone for each phase. Modify the table to include the applicable milestones for each phase (e.g. Planned Completion of Preliminary Design Date). **See Example Document.**

**5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION**
*Revised 2025-04-23*

it is met. Each of these milestones is intended to establish a clear trigger for USDOT to terminate the award or amend the terms of this agreement.

If railroad coordination agreements need to be executed, add a milestone for each, prefixed with "Railroad Coordination Agreement: " See section 27.5 of the General Terms and Conditions.

| Milestone | Deadline Date |
|---|---|
| [Insert milestone] | [insert date] |

5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION
*Revised 2025-04-23*

## SCHEDULE D
## AWARD AND PROJECT FINANCIAL INFORMATION

**1.    Award Amount.**

RAISE Grant Amount:        [$XXX]

> **Commented [USDOT12]:** Additional Information. This section affects the size of the Federal obligation at the time this agreement is executed. For additional context, including how Federal obligations occur when the Federal Obligation Type is "Multiple," see section 4.3 of the General Terms and Conditions.

**2.    Federal Obligation Information.**

[Choose the appropriate one of these two alternatives.]
[**Alternative #1:** If all funds are being obligated at once:]

Federal Obligation Type:        Single

[**Alternative #2:** If funds are to be obligated in project phases or by component:]

> **Commented [USDOT13]:** See Example Document.

Federal Obligation Type:        Multiple

> **Commented [USDOT14]:** Additional Information. To understand how this table is used and affects the Federal obligation of funds, see section 4.3(c)–(h) in the General Terms and Conditions.

| Obligation Condition Table | | |
|---|---|---|
| **Portion of the Project** | **Portion of the RAISE Grant** | **Obligation Condition** |
| [insert name of first phase (*e.g.*, "Base phase") or component (*e.g.*, "Component 1")] | [$XXX] | |
| [insert name of second phase (*e.g.*, "Option phase 1") or component (*e.g.*, "Component 2")] | [$XXX] | [USDOT will describe the conditions] |

> **Commented [USDOT15]:** Drafting Instruction: This table should contain a row for each obligation, but not any other breakdown of the Project. *E.g.*, if the project consists of multiple components, but those are all being obligated together, do not break out the components here.

> **Commented [USDOT16]:** Drafting Instruction: If there are more than two phases or components, add a row for each phase.

**3.    Approved Project Budget.**

> **Commented [USDOT17]:** Drafting Instruction: If any of the sources or amount of funds differ from the sources and amounts in the Application, each difference must be described in schedule E.

### Eligible Project Costs

| | [Component 1] | [Component 2] | Total |
|---|---|---|---|
| RAISE Funds: | [$XXX] | [$XXX] | [$XXX] |
| Other Federal Funds: | [$XXX] | [$XXX] | [$XXX] |
| Non-Federal Funds: | [$XXX] | [$XXX] | [$XXX] |
| Total: | [$XXX] | [$XXX] | [$XXX] |

> **Commented [USDOT18]:** Additional Information.  See also sections 1.1, 3.2, and 5.4 of the General Terms and Conditions for context on how this budget information is used in the agreement.

> **Commented [USDOT19]:** Drafting Instruction: If there is only a single component, use only the total column and remove other columns. If there are more than 2 components, add columns.

9 of 16

**4.    Cost Classification Table**

[If no costs are anticipated in a category, remove the row from the table.]

| Cost Classification | Total Costs | Non-RAISE Previously Incurred Costs | Eligible Costs |
|---|---|---|---|
| Administrative and legal expenses | | | |
| Land, structures, rights-of-way, appraisals, etc. | | | |
| Relocation expenses and payments | | | |
| Architectural and engineering fees | | | |
| Other architectural and engineering fees | | | |
| Project inspection fees | | | |
| Site work | | | |
| Demolition and removal | | | |
| Construction | | | |
| Equipment | | | |
| Miscellaneous | | | |
| Contingency | | | |
| **Project Total** | | | |

**5.    Approved Pre-award Costs**

[Choose the appropriate one of these two alternatives.]
[If FHWA did not approve pre-award costs:]

   **None.** The USDOT has not approved under this award any pre-award costs under 2 CFR 200.458.

[If FHWA approved pre-award costs]

> **Commented [USDOT20]:** See Example Document.

   On [insert date], [Recipient] sent a written request to the FHWA for pre-award approval under 2 CFR 200.458 for costs to [insert activity]. The pre-award approval request would allow the recipient to [describe the reason for pre-award authority]. [Recipient] requested pre-award approval for $XXX in RAISE Grant funds or non-Federal funds for match.

> **Commented [USDOT21]:** Drafting Instruction: Use whole dollars.

   The FHWA Office of Acquisition and Grants Management determined that the pre-award costs were incurred directly pursuant to the negotiation and in anticipation of the Federal award and were necessary for efficient and timely performance of the scope of work. That office issued a notice to proceed with pre-award costs on [insert date].

5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION
*Revised 2025-04-23*

### SCHEDULE E
### CHANGES FROM APPLICATION

**Scope**:

[ If the activities described in schedule B materially differ from the scope presented in the application, describe the changes here and explain the need for those changes. If there are no changes, state that there are no changes. ]

**Schedule**:

[ If any dates listed in sections 2–3 of schedule C differ from the estimated schedule presented in the application by more than six months, describe the changes here and provide an explanation of the cause of those changes. If there are no changes, state that there are no changes and remove the milestone table below. ]

The table below compares the Project milestone dates.

[Choose the appropriate one of these two alternatives.]
[**Alternative #1**: if this designated a Capital project at section 2 of schedule F:]

| Milestone | Application | Agreement |
|---|---|---|
| Planned Construction Substantial Completion and Open to Traffic Date: | [insert date] | [insert date] |

[**Alternative #2**: if this designated a Planning project at section 2 of schedule F:]

| Milestone | Application | Agreement |
|---|---|---|
| Planned Project Completion Date: | [insert date] | [insert date] |

**Budget**:

[ If any amounts listed in sections 3–4 of schedule D differ from the budget presented in the application, describe the changes here and provide an explanation of the cause of those changes. If there are no changes, state that there are no changes and remove the budget table below. ]

The table below provides a summary comparison of the Project budget.

| Fund Source | Application | | Schedule D | |
|---|---|---|---|---|
| | $ | % | $ | % |
| **Previously Incurred Costs** | | | | |
| Federal Funds | | | | |
| Non-Federal Funds | | | | |
| Total Previously Incurred Costs | | | | |
| **Future Eligible Project Costs** | | | | |
| RAISE Funds | | | | |

11 of 16

Commented [USDOT22]: Additional Information. The purposes of this schedule E are (1) to clearly and accurately document the differences between the Project described in the application and the Project being funded, including, at minimum, the scope, schedule, and budget and (2) to establish the parties' knowledge and acceptance of those differences.

To see how this information is used, see section 3.1 of the General Terms and Conditions.

Commented [USDOT23]: **Drafting Instruction:** If there are interim milestones that have shifted (*e.g.*, contract award or start of construction), and the explanation above references those interim milestones, add rows for those interim milestones. If there are multiple components, the text in the milestone column should be clear about which component is being referenced.

**5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION**
*Revised 2025-04-23*

| Fund Source | Application | | Schedule D | |
|---|---|---|---|---|
| | $ | % | $ | % |
| Other Federal Funds | | | | |
| Non-Federal Funds | | | | |
| Total Future Eligible Project Costs | | | | |
| Total Project Costs | | | | |

**Other:**

<span style="color:red">[ If there are notable changes in aspects of the Project other than scope, schedule, and budget (*e.g.,* recipient changes), then describe those changes here. If there are not, then state that there are no other notable changes from the application. ]</span>

5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION
*Revised 2025-04-23*

### SCHEDULE F
### RAISE PROGRAM DESIGNATIONS

**1.    Urban or Rural Designation.**

Urban-Rural Designation:    [Urban] [Rural]

**2.    Capital or Planning Designation.**

Capital-Planning Designation:    [Capital] [Planning]

**3.    Historically Disadvantaged Community or Area of Persistent Poverty Designation.**

HDC or APP Designation:    [Yes] [No]

**4.    Funding Act.**

Funding Act:    [IIJA] [FY2023]

**5.    Security Risk Designation.**

Security Risk Designation:    [Low] [Elevated]

**Commented [USDOT24]:** Additional Information. For additional context on how the urban-rural designation is used, see section 14.1 in the General Terms and Conditions.

**Commented [USDOT25]:** Additional Information. For additional context on how the capital-planning designation is used, see article 8 in the General Terms and Conditions.

**Commented [USDOT26]:** Additional Information. For additional context on how the HDC or APP designation is used, see section 14.2 in the General Terms and Conditions.

**Commented [USDOT27]:** Additional Information. For additional context on how the funding act is used, see sections 4.2 and 19.2 in the General Terms and Conditions.

**Commented [USDOT28]:** Additional Information. For additional context on how the Security Risk Designation is used, see section 13.1 in the General Terms and Conditions.

*5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION*
*Revised 2025-04-23*

## SCHEDULE G
### RAISE PERFORMANCE MEASUREMENT INFORMATION

[Choose the appropriate one of these two alternatives.]
[Alternative #1, if this designated a Capital project at section 2 of schedule F:]

**Study Area:** [Insert description of area to be studied]

**Baseline Measurement Date:**        [insert date]

**Baseline Report Date:**        [insert date]

**Table 1: Performance Measure Table**

| Measure | Category and Description | Measurement Frequency |
|---|---|---|
| [Insert Performance Measure] | [Performance Measure Category]  [Performance Measure Description] | [quarterly *or* annual] |
| [Insert Performance Measure] | [Performance Measure Category]  [Performance Measure Description] | [quarterly *or* annual] |

[Alternative #2, if this designated a Planning project at section 2 of schedule F:]

**Reserved.**

Commented [USDOT29]: **Additional Information.** See section 8.1 of the General Terms and Conditions for context on how the Baseline Measurement and Report dates are used to establish pre-construction reporting requirements.

Commented [USDOT30]: **Drafting Instruction:** This Pre-construction Measurement date should be as current as possible before the project begins construction.

Commented [USDOT31]: **Drafting Instruction:** This Pre-construction Report Date should be not more than 2 months after the Pre-construction Measurement Date.

Commented [USDOT32]: **Additional Information.** See article 8 of the General Terms and Conditions for context on how this table is used to establish the data collection and reporting requirements.

Commented [USDOT33]: **Drafting Instruction:** USDOT is looking for at least 2-4 measures.
Recipient: Please select measures from OST's guidance available online:
https://www.transportation.gov/RAISEgrants/performance

Enter the information from Table 1 of that guidance as follows:
• Primary Strategic Goal column = Performance Measure Category
• Measure column = Performance Measure Description

Insert either "quarterly" or "annual," based on OST guidance for that specific performance measure. Most measurements will be quarterly unless there is a showing that the measure does not have seasonal effects

Commented [USDOT34]: **Additional information.** There is no performance report under Article 8 of the General Terms & Conditions for awards designated in section 2 of Schedule F as "Planning".

5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION
*Revised 2025-04-23*

## SCHEDULE H
## LABOR AND WORK

1.    **Efforts to Support Good-Paying Jobs and Strong Labor Standards**

The Recipient states that rows marked with "X" in the following table are accurate:

| |
|---|
| The Recipient or a project partner promotes robust job creation by supporting good-paying jobs directly related to the project with free and fair choice to join a union. *(Describe robust job creation and identify the good-paying jobs in the supporting narrative below.)* |
| The Recipient or a project partner will invest in high-quality workforce training programs such as registered apprenticeship programs to recruit, train, and retain skilled workers, and implement policies such as targeted hiring preferences. *(Describe the training programs in the supporting narrative below.)* |
| The Recipient or a project partner will partner with high-quality workforce development programs with supportive services to help train, place, and retain workers in good-paying jobs or registered apprenticeships including through the use of local and economic hiring preferences, linkage agreements with workforce programs, and proactive plans to prevent harassment. *(Describe the supportive services provided to trainees and employees, preferences, and policies in the supporting narrative below.)* |
| The Recipient or a project partner will partner and engage with local unions or other worker-based organizations in the development and lifecycle of the project, including through evidence of project labor agreements and/or community benefit agreements. *(Describe the partnership or engagement with unions and/or other worker-based organizations and agreements in the supporting narrative below.)* |
| The Recipient or a project partner will partner with communities or community groups to develop workforce strategies. *(Describe the partnership and workforce strategies in the supporting narrative below.)* |
| The Recipient or a project partner has taken other actions related to the Project to create good-paying jobs with the free and fair choice to join a union and incorporate strong labor standards. *(Describe those actions in the supporting narrative below.)* |
| The Recipient or a project partner has not yet taken actions related to the Project to create good-paying jobs with the free and fair choice to join a union and incorporate strong labor standards but, before beginning construction of the Project, will take relevant actions described in schedule B. *(Identify the relevant actions from schedule B in the supporting narrative below.)* |

---

**Commented [USDOT35]:** Additional Information. NOFO section F.2.ii.c. require project to sufficiently consider job quality and labor rights, standards, and protections in their planning, as determined by the Department, before receiving funds for construction. The purpose of this schedule J is to document DOT's basis for determining the considerations were sufficient for this project. See also article 11 of the General Terms and Conditions.

**Commented [USDOT36]:** Drafting Instruction: Insert an "X" in the left column of one or more rows of this table. For each row marked, follow the relevant instructions describing what information should be placed in the supporting narrative at ¶ 2.

**Commented [USDOT37]:** Drafting Instruction: If this row is marked, schedule B must describe relevant activities that will be completed before construction begins. If it is the only row marked and this is a capital project, a critical milestone for completing those activities should be proposed at section 3 of schedule C.

**5TEMPLATE; NOT INTENDED FOR EXECUTION WITHOUT MODIFICATION**
*Revised 2025-04-23*

| |
|---|
| The Recipient or a project partner has not taken actions related to the Project to improve good-paying jobs and strong labor standards and will not take those actions under this award. |

**2.**     **Supporting Narrative.**

[ Insert supporting text, as described in the table above. ]

> **Commented [USDOT39]:** **Drafting Instruction:** For each row checked in the preceding table, add a heading here and, below that heading, add narrative text that is only as long as necessary to address the italicized prompt for that row.

# EXHIBIT B

Muhs Decl. Exhibit B

**U.S. DEPARTMENT OF TRANSPORTATION GENERAL TERMS AND CONDITIONS
UNDER THE
FISCAL YEAR 2023 RAISE PROGRAM:
FHWA PROJECTS**

Revision date: April 23, 2025

# Table of Contents

Article 1 Purpose........................................................................................................................ 5
1.1     Purpose. ..................................................................................................................... 5
Article 2 USDOT ROLE ........................................................................................................... 5
2.1     Division of USDOT Responsibilities. ....................................................................... 5
2.2     USDOT Program Contacts. ....................................................................................... 6
Article 3 RECIPIENT ROLE .................................................................................................... 6
3.1     Statements on the Project. ......................................................................................... 6
3.2     Statements on Authority and Capacity. ..................................................................... 6
3.3     USDOT Reliance........................................................................................................ 7
3.4     Project Delivery.......................................................................................................... 7
3.5     Rights and Powers Affecting the Project. ................................................................. 7
3.6     Notification of Changes to Key Personnel................................................................. 8
3.7     Subaward to Designated Subrecipient. ...................................................................... 8
3.8     Designated Subrecipient Statements and Responsibilities. ....................................... 8
3.9     Title 23 Oversight Responsibilities for Subawards. .................................................. 8
Article 4 AWARD AMOUNT AND FEDERAL OBLIGATION ............................................. 8
4.1     Federal Award Amount............................................................................................... 8
4.2     Federal Funding Source. ............................................................................................ 8
4.3     Federal Obligations. ................................................................................................... 9
Article 5 STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES...................... 10
5.1     Change Notification Requirement.............................................................................. 10
5.2     Scope and Statement of Work Changes. .................................................................... 10
5.3     Schedule Changes....................................................................................................... 10
5.4     Budget Changes.......................................................................................................... 11
5.5     USDOT Acceptance of Changes. ............................................................................... 12
Article 6 GENERAL REPORTING TERMS .............................................................................. 12
6.1     Report Submission. .................................................................................................... 12
6.2     Alternative Reporting Methods................................................................................... 12
6.3     Paperwork Reduction Act Information........................................................................ 12
Article 7 PROGRESS AND FINANCIAL REPORTING ........................................................... 13
7.1     Quarterly Project Progress Reports and Recertifications............................................ 13
7.2     Final Progress Reports and Financial Information. .................................................... 13
Article 8 PERFORMANCE REPORTING ................................................................................. 13
8.1     Baseline Performance Measurement. ......................................................................... 13
8.2     Post-construction Performance Measurement. ........................................................... 13
8.3     Project Outcomes Report. .......................................................................................... 14
8.4     Performance Reporting Survival. ............................................................................... 14
Article 9 RESERVED ................................................................................................................. 15
Article 10 RESERVED ................................................................................................................ 15
Article 11 LABOR AND WORK ................................................................................................ 15
11.1    Labor and Work.......................................................................................................... 15
Article 12 CIVIL RIGHTS AND TITLE VI .............................................................................. 15
12.1    Civil Rights and Title VI. .......................................................................................... 15
12.2    Legacy Infrastructure and Facilities. ......................................................................... 16
Article 13 CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE........................... 16

13.1    Critical Infrastructure Security and Resilience. .................................................. 16
Article 14 RAISE PROGRAM DESIGNATIONS .................................................................. 17
14.1    Effect of Urban or Rural Designation. ................................................................. 17
14.2    Effect of Historically Disadvantaged Community or Area of Persistent Poverty
Designation. .................................................................................................................................. 17
Article 15 CONTRACTING AND SUBAWARDS .............................................................. 17
15.1    Minimum Wage Rates. ......................................................................................... 17
15.2    Buy America. ........................................................................................................ 17
15.3    Small and Disadvantaged Business Requirements. ............................................. 18
15.4    Engineering and Design Services. ....................................................................... 18
15.5    Prohibition on Certain Telecommunications and Video Surveillance Services or
Equipment. .................................................................................................................................... 18
15.6    Pass-through Entity Responsibilities. .................................................................. 18
15.7    Subaward and Contract Authorization. ................................................................ 18
Article 16 NONCOMPLIANCE AND REMEDIES ............................................................ 19
16.1    Noncompliance Determinations. ......................................................................... 19
16.2    Remedies. ............................................................................................................. 20
16.3    Other Oversight Entities. ..................................................................................... 20
Article 17 AGREEMENT TERMINATION ........................................................................ 20
17.1    USDOT Termination. ........................................................................................... 20
17.2    Closeout Termination. .......................................................................................... 21
17.3    Post-Termination Adjustments. ........................................................................... 21
17.4    Non-Terminating Events. ..................................................................................... 21
17.5    Other Remedies. ................................................................................................... 22
Article 18 COSTS, PAYMENTS, AND UNEXPENDED FUNDS ...................................... 22
18.1    Limitation of Federal Award Amount. ................................................................ 22
18.2    Projects Costs. ...................................................................................................... 22
18.3    Timing of Project Costs. ...................................................................................... 22
18.4    Recipient Recovery of Federal Funds. ................................................................ 22
18.5    Unexpended Federal Funds. ................................................................................. 22
18.6    Timing of Payments to the Recipient. ................................................................. 23
18.7    Payment Method. ................................................................................................. 23
18.8    Information Supporting Expenditures. ................................................................. 23
18.9    Reimbursement Frequency. ................................................................................. 23
Article 19 LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY ................ 23
19.1    Liquidation of Recipient Obligations. ................................................................. 23
19.2    Funds Cancellation. ............................................................................................. 24
Article 20 AGREEMENT MODIFICATIONS ..................................................................... 24
20.1    Bilateral Modifications. ....................................................................................... 24
20.2    Unilateral Contact Modifications. ....................................................................... 24
20.3    USDOT Unilateral Modifications. ....................................................................... 24
20.4    Other Modifications. ............................................................................................ 24
Article 21 FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL
POLICY REQUIREMENTS ................................................................................................. 25
21.1    Uniform Administrative Requirements for Federal Awards. ............................... 25
21.2    Federal Law and Public Policy Requirements. ................................................... 25
21.3    Federal Freedom of Information Act. ................................................................... 25

21.4     History of Performance. ............................................................................. 25
21.5     Whistleblower Protection. .......................................................................... 26
21.6     External Award Terms and Obligations. ................................................... 26
21.7     Incorporated Certifications. ....................................................................... 26
Article 22 MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS .... 27
22.1     Recipient Monitoring and Record Retention. ............................................ 27
22.2     Financial Records and Audits. ................................................................... 27
22.3     Internal Controls. ....................................................................................... 27
22.4     USDOT Record Access. ............................................................................. 28
Article 23 NOTICES ................................................................................................... 28
23.1     Form of Notice. .......................................................................................... 28
23.2     Method of Notice to USDOT. .................................................................... 28
23.3     Method of Notice to Recipient. .................................................................. 28
23.4     Recipient Contacts for Notice. .................................................................. 29
23.5     Additional Mandatory Notices to USDOT ................................................ 29
23.6     Scope of Notice Requirements. .................................................................. 29
Article 24 INFORMATION REQUESTS ................................................................... 29
24.1     USDOT Information Requests. ................................................................... 29
Article 25 ASSIGNMENT .......................................................................................... 30
25.1     Assignment Prohibited. .............................................................................. 30
Article 26 WAIVER .................................................................................................... 30
26.1     Waivers ....................................................................................................... 30
Article 27 ADDITIONAL TERMS AND CONDITIONS .......................................... 30
27.1     Disclaimer of Federal Liability .................................................................. 30
27.2     Relocation and Real Property Acquisition. ............................................... 30
27.3     Equipment Disposition. .............................................................................. 31
27.4     Environmental Review. .............................................................................. 31
27.5     Railroad Coordination. ............................................................................... 32
Article 28 MANDATORY AWARD INFORMATION .............................................. 32
28.1     Information Contained in a Federal Award. .............................................. 32
28.2     Federal Award Identification Number. ...................................................... 33
28.3     Recipient's Unique Entity Identifier. ........................................................ 33
28.4     Budget Period. ............................................................................................ 33
28.5     Period of Performance. .............................................................................. 33
Article 29 CONSTRUCTION AND DEFINITIONS ................................................. 34
29.1     Schedules. ................................................................................................... 34
29.2     Exhibits. ...................................................................................................... 34
29.3     Construction. .............................................................................................. 34
29.4     Integration. ................................................................................................. 35
29.5     Definitions. ................................................................................................. 35
29.6     References to Times of Day. ...................................................................... 35
Article 30 AGREEMENT EXECUTION AND EFFECTIVE DATE .......................... 35
30.1     Counterparts. .............................................................................................. 35
30.2     Effective Date. ............................................................................................ 36

## GENERAL TERMS AND CONDITIONS

The Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021), and the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (Dec. 29, 2022) appropriated funds to the United States Department of Transportation (the "**USDOT**") for fiscal year 2023 under the heading "National Infrastructure Investments." The funds are available to carry out 49 U.S.C. 6702 by providing Federal financial assistance for surface transportation infrastructure projects that will have a significant local or regional impact. The USDOT program administering those funds is the Rebuilding American Infrastructure with Sustainability and Equity Program (the "**RAISE Program**").

On December 14, 2022, the USDOT posted a funding opportunity at Grants.gov with funding opportunity title "FY 2023 National Infrastructure Investments" and funding opportunity number DTOS59-23-RA-RAISE. The notice of funding opportunity posted at Grants.gov, as amended on January 5, 2023, and February 3, 2023, (the "**NOFO**") solicited applications for Federal financial assistance under the fiscal year 2023 RAISE Program. On June 28, 2023, the USDOT announced application selections under the NOFO.

These general terms and conditions are incorporated by reference in a project-specific agreement under the fiscal year 2023 RAISE Program. The term "Recipient" is defined in the project-specific portion of the agreement. The project-specific portion of the agreement includes schedules A through H. The project-specific portion of the agreement may include special terms and conditions in project-specific articles.

## ARTICLE 1
## PURPOSE

**1.1    Purpose.**

The purpose of this award is to fund an eligible project that will have a significant local or regional impact and improve transportation infrastructure. The parties will accomplish that purpose by achieving the following objectives:

(1)    timely completing the Project; and

(2)    ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Technical Application, as modified by schedule D.

## ARTICLE 2
## USDOT ROLE

**2.1    Division of USDOT Responsibilities.**

(a) The Office of the Secretary of Transportation is responsible for the USDOT's overall administration of the RAISE Program, the approval of this agreement, and any

modifications to this agreement under section 20.1.

(b) The Federal Highway Administration (the "**FHWA**") will administer this agreement on behalf of the USDOT. In this agreement, the "**Administering Operating Administration**" means the FHWA.

**2.2  USDOT Program Contacts.**

FHWA RAISE Program Manager
Federal Highway Administration
Office of Freight Management and Operations
1200 New Jersey Avenue SE
Room E84-429
Washington, DC 20590
(202) 366-2639 or (202) 366-1200
FHWA-TIGER.Reports@dot.gov

and

OST RAISE Grants Coordinator
United States Department of Transportation
Office of the Secretary
1200 New Jersey Avenue SE
Room W84-227
Washington, DC 20590
(202) 366-8914
BUILDGrants@dot.gov

**ARTICLE 3
RECIPIENT ROLE**

**3.1  Statements on the Project.**

The Recipient states that:

(1)  all material statements of fact in the Technical Application were accurate when that application was submitted; and

(2)  schedule E documents all material changes in the information contained in that application.

**3.2  Statements on Authority and Capacity.**

The Recipient states that:

(1)  it has the authority to receive Federal financial assistance under this agreement;

(2)  it has the legal authority to complete the Project;

(3)    it has the capacity, including institutional, managerial, and financial capacity, to comply with its obligations under this agreement;

(4)    not less than the difference between the total eligible project costs listed in section 3 of schedule D and the RAISE Grant Amount listed in section 1 of schedule D is committed to fund the Project;

(5)    it has sufficient funds available to ensure that infrastructure completed or improved under this agreement will be operated and maintained in compliance with this agreement and applicable Federal law; and

(6)    the individual executing this agreement on behalf of the Recipient has authority to enter this agreement and make the statements in this article 3 and in section 21.7 on behalf of the Recipient.

**3.3    USDOT Reliance.**

The Recipient acknowledges that:

(1)    the USDOT relied on statements of fact in the Technical Application to select the Project to receive this award;

(2)    the USDOT relied on statements of fact in both the Technical Application and this agreement to determine that the Recipient and the Project are eligible under the terms of the NOFO;

(3)    the USDOT relied on statements of fact in both the Technical Application and this agreement to establish the terms of this agreement; and

(4)    the USDOT's selection of the Project to receive this award prevented awards under the NOFO to other eligible applicants.

**3.4    Project Delivery.**

(a)  The Recipient shall complete the Project under the terms of this agreement.

(b)  The Recipient shall ensure that the Project is financed, constructed, operated, and maintained in accordance with all Federal laws, regulations, and policies that are applicable to projects of the Administering Operating Administration.

**3.5    Rights and Powers Affecting the Project.**

(a)  The Recipient shall not take or permit any action that deprive it of any rights or powers necessary to the Recipient's performance under this agreement without written approval of the USDOT.

(b)  The Recipient shall act promptly, in a manner acceptable to the USDOT, to acquire, extinguish, or modify any outstanding rights or claims of right of others that would interfere with the Recipient's performance under this agreement.

**3.6     Notification of Changes to Key Personnel.**

The Recipient shall notify USDOT within 30 calendar days of any change in key personnel who are identified in section 4 of schedule A.

**3.7     Subaward to Designated Subrecipient.**

If section 9 of schedule A identifies a Designated Subrecipient:

(1)     the Recipient hereby awards a subaward to the Designated Subrecipient for the purpose described in section 1.1;

(2)     the Recipient and the Designated Subrecipient may enter into a separate agreement, to which the USDOT is not a party, assigning responsibilities, including administrative and oversight responsibilities, among the Recipient and the Designated Subrecipient; and

(3)     for the purpose of 2 CFR parts 200 and 1201, the Recipient is a pass-through entity.

**3.8     Designated Subrecipient Statements and Responsibilities.**

If section 9 of schedule A identifies a Designated Subrecipient:

(1)     the Designated Subrecipient affirms all statements and acknowledgments that are attributed to the Recipient under sections 3.1 and 3.2; and

(2)     the Designated Subrecipient assumes the Recipient's reporting obligations under articles 7 and 8.

**3.9     Title 23 Oversight Responsibilities for Subawards.**

If section 9 of schedule A identifies a Designated Subrecipient, then for the purpose of 23 U.S.C. 106(g), the Recipient shall act as if funds under this award are Federal funds under title 23, United States Code.

## ARTICLE 4
## AWARD AMOUNT AND FEDERAL OBLIGATION

**4.1     Federal Award Amount.**

The USDOT hereby awards a RAISE Grant to the Recipient in the amount listed in section 1 of schedule D as the RAISE Grant Amount.

**4.2     Federal Funding Source.**

(a) If section 4 of schedule F identifies the Funding Act as "IIJA," then the RAISE Grant is from RAISE Program funding that was appropriated in division J of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021).

(b) If section 4 of schedule F identifies the Funding Act as "FY2023," then the RAISE Grant is from RAISE Program funding that was appropriated in the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (Dec. 29, 2022).

(c) If section 4 of schedule F contains a table that lists separate amounts for "IIJA" and "FY2023," then the amount listed for "IIJA" is from RAISE Program funding that was appropriated in division J of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021) and the amount listed for "FY2023" is from RAISE Program funding that was appropriated in the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (Dec. 29, 2022).

### 4.3    Federal Obligations.

(a) If the Federal Obligation Type identified in section 2 of schedule D is "Single," then this agreement obligates for the budget period the amount listed in section 1 of schedule D as the RAISE Grant Amount and sections 4.3(c)–4.3(h) do not apply to this agreement.

(b) If the Federal Obligation Type identified in section 2 of schedule D is "Multiple," then an amount up to the RAISE Grant Amount listed in section 1 of schedule D will be obligated with one initial obligation and one or more subsequent, optional obligations, as described in sections 4.3(c)–4.3(h).

(c) The Obligation Condition Table in section 2 of schedule D allocates the RAISE Grant among separate portions of the Project for the purpose of the Federal obligation of funds. The scope of each portion of the Project that is identified in that table is described in section 2 of schedule B.

(d) This agreement obligates for the budget period only the amounts allocated in the Obligation Condition Table in section 2 of schedule D to portions of the Project for which that table does not list an obligation condition.

(e) This agreement does not obligate amounts allocated in the Obligation Condition Table in section 2 of schedule D to portions of the Project for which that table lists an obligation condition. The parties may obligate the amounts allocated to those portions of the Project only as described in section 4.3(f) or by modifying this agreement under article 20.

(f) For each portion of the Project for which the Obligation Condition Table in section 2 of schedule D lists an obligation condition, the amount allocated in that table to that portion of the Project is obligated if, not later than the statutory lapse date identified in section 4.3(h) for that portion of the Project, the parties execute an instrument, in the form provided in Exhibit D, documenting that:

    (1)     the USDOT determines that the obligation condition listed in that table for that portion of the Project is satisfied;

    (2)     the USDOT determines that all applicable Federal requirements for obligating the amount are satisfied; and

    (3)     the Recipient states that it is not required to request a modification of this agreement under article 5.

(g) The Recipient shall not request reimbursement of costs for a portion of the Project for which the Obligation Condition Table in section 2 of schedule D lists an obligation condition, unless the amount allocated in that table to that portion of the Project is obligated under section 4.3(f).

(h) RAISE Program funding that was appropriated in division J of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021), lapses and is unavailable for obligation, by statute, after September 30, 2027. RAISE Program funding that was appropriated in the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (Dec. 29, 2022) will not lapse and remains available for obligation until expended. Section 4.2 identifies the specific source or sources of funding for this award.

(i) The Recipient acknowledges that:

    (1) the USDOT is not liable for payments for a portion of the Project for which the Obligation Condition Table in section 2 of schedule D lists an obligation condition, unless the amount allocated in that table to that portion of the Project is obligated under section 4.3(f);

    (2) any portion of the RAISE Grant that is not obligated under this section 4.3 by the statutory lapse date identified in section 4.3(h) for those funds lapses on the day after that date and becomes unavailable for the Project; and

    (3) the USDOT may consider the failure to obligate funds by the statutory lapse date identified in section 4.3(h) for those funds to be a basis for terminating this agreement under section 17.1.

## ARTICLE 5
## STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES

**5.1**     **Change Notification Requirement.**

The Recipient shall notify USDOT within 30 calendar days of any change in circumstances or commitments that adversely affect the Recipient's capacity or intent to complete the Project in compliance with this agreement. In that notice, the Recipient shall describe the change and what actions the Recipient has taken or plans to take to ensure completion of the Project. The notification requirement under this section 5.1 is separate from any requirements under this article 5 that the Recipient request modification of this agreement.

**5.2**     **Scope and Statement of Work Changes.**

If the Project's activities differ from the activities described in schedule B, then the Recipient shall request a modification of this agreement to update schedule B.

**5.3**     **Schedule Changes.**

If one or more of the following conditions are satisfied, then the Recipient shall request a modification of this agreement to update schedule C:

(1)    a completion date for the Project or a component of the Project is listed in section 2 of schedule C and the Recipient's estimate for that milestone changes to a date that is more than six months after the date listed in section 2 of schedule C;

(2)    a schedule change would require the budget period to continue after the final budget period end date listed in section 1 of schedule C (i.e., for projects with multiple phases, changes to the base phase budget period end date for projects with two phase, or changes to base or secondary phase budget period end dates for projects with three phases, etc., will not trigger notification/modification requirements); or

(3)    the USDOT Payment System identified in section 6 of schedule A is "DELPHI eInvoicing" and a schedule change would require the period of performance to continue after the period of performance listed on page 1, line 6 of the project-specific agreement.

For other schedule changes, the Recipient shall follow the applicable procedures of the Administering Operating Administration and document the changes in writing.

**5.4    Budget Changes.**

(a) The Recipient acknowledges that if the cost of completing the Project increases:

(1)    that increase does not affect the Recipient's obligation under this agreement to complete the Project; and

(2)    the USDOT will not increase the amount of this award to address any funding shortfall.

(b) The Recipient shall request a modification of this agreement to update schedule D if, in comparing the Project's budget to the amounts listed in section 3 of schedule D:

(1)    the total "Non-Federal Funds" amount decreases; or

(2)    the total eligible project costs amount decreases.

(c) For budget changes that are not identified in section 5.4(b), the Recipient shall follow the applicable procedures of the Administering Operating Administration and document the changes in writing.

(d) If there are Project Cost Savings, then the Recipient may propose to the USDOT, in writing consistent with the Administering Operating Administration's requirements, to include in the Project specific additional activities that are within the scope of this award, as defined in section 1.1 and schedule B, and that the Recipient could complete with the Project Cost Savings.

In this agreement, "**Project Cost Savings**" means the difference between the actual eligible project costs and the total eligible project costs that are listed in section 3 of schedule D, but only if the actual eligible project costs are less than the total eligible project costs that are listed in section 3 of schedule D. There are no Project Cost

Savings if the actual eligible project costs are equal to or greater than the total eligible project costs that are listed in section 3 of schedule D.

(e) If there are Project Cost Savings and either the Recipient does not make a proposal under section 5.4(d) or the USDOT does not accept the Recipient's proposal under section 5.4(d), then:

   (1)   in a request under section 5.4(b), the Recipient shall reduce the Federal Share by the Project Cost Savings; and

   (2)   if that modification reduces this award and the USDOT had reimbursed costs exceeding the revised award, the Recipient shall refund to the USDOT the difference between the reimbursed costs and the revised award.

   In this agreement, "**Federal Share**" means the sum of the total "RAISE Funds" and "Other Federal Funds" amounts that are listed in section 3 of schedule D.

(f) The Recipient acknowledges that amounts that are required to be refunded under section 5.4(e)(2) constitute a debt to the Federal Government that the USDOT may collect under 2 CFR 200.346 and the Standards for Administrative Collection of Claims (31 CFR parts 901).

**5.5    USDOT Acceptance of Changes.**

The USDOT may accept or reject modifications requested under this article 5, and in doing so may elect to consider only the interests of the RAISE Program and the USDOT. The Recipient acknowledges that requesting a modification under this article 5 does not amend, modify, or supplement this agreement unless the USDOT accepts that modification request and the parties modify this agreement under section 20.1.


# ARTICLE 6
# GENERAL REPORTING TERMS


**6.1    Report Submission.**

The Recipient shall send all reports required by this agreement to all USDOT contacts who are listed in section 5 of schedule A and all USDOT contacts who are listed in section 2.2.

**6.2    Alternative Reporting Methods.**

The Administering Operating Administration may establish processes for the Recipient to submit reports required by this agreement, including electronic submission processes. If the Administering Operating Administration informs the Recipient of those processes in writing, the Recipient shall use the processes identified by the Administering Operating Administration.

**6.3    Paperwork Reduction Act Information.**

Under 5 CFR 1320.6, the Recipient is not required to respond to a collection of information that does not display a currently valid control number issued by the Office of Management

and Budget (the "**OMB**"). Collections of information conducted under this agreement are approved under OMB Control No. 2105-0563.

## ARTICLE 7
## PROGRESS AND FINANCIAL REPORTING

**7.1    Quarterly Project Progress Reports and Recertifications.**

On or before the 20th day of the first month of each calendar year quarter and until the end of the period of performance, the Recipient shall submit to the USDOT a Quarterly Project Progress Report and Recertification in the format and with the content described in exhibit C. If the date of this agreement is in the final month of a calendar year quarter, then the Recipient shall submit the first Quarterly Project Progress Report and Recertification in the second calendar year quarter that begins after the date of this agreement.

**7.2    Final Progress Reports and Financial Information.**

No later than 120 days after the end of the period of performance, the Recipient shall submit:

(1)    a Final Project Progress Report and Recertification in the format and with the content described in exhibit C for each Quarterly Project Progress Report and Recertification, including a final Federal Financial Report (SF-425); and

(2)    any other information required under the Administering Operating Administration's award closeout procedures.

## ARTICLE 8
## PERFORMANCE REPORTING

**8.1    Baseline Performance Measurement.**

If the Capital-Planning Designation in section 2 of schedule F is "Capital," then

(1)    the Recipient shall collect data for each performance measure that is identified in the Performance Measure Table in schedule G, accurate as of the Baseline Measurement Date that is identified in schedule G; and

(2)    on or before the Baseline Report Date that is stated in schedule G, the Recipient shall submit a Baseline Performance Measurement Report that contains the data collected under this section 8.1 and a detailed description of the data sources, assumptions, variability, and estimated levels of precision for each performance measure that is identified in the Performance Measure Table in schedule G.

**8.2    Post-construction Performance Measurement.**

If the Capital-Planning Designation in section 2 of schedule F is "Capital," then

(1)    for each performance measure that is identified in the Performance Measure Table in schedule G with quarterly measurement frequency, for each of 12 consecutive calendar quarters, beginning with the first calendar quarter that begins after the Project substantial completion date, at least once during the quarter, the Recipient shall collect data for that performance measure;

(2)    for each performance measure that is identified in the Performance Measure Table in schedule G with annual measurement frequency, the Recipient shall collect data for that performance measure on at least three separate occasions: (i) once during the four consecutive calendar quarters that begin after the Project substantial completion date; (ii) once during the fourth calendar quarter after the first collection; and (iii) once during the eighth calendar quarter after the first collection; and

(3)    not later than January 31 of each year that follows a calendar year during which data was collected under this section 8.2, the Recipient shall submit to the USDOT a Post-construction Performance Measurement Report containing the data collected under this section 8.2 in the previous calendar year and stating the dates when the data was collected.

If an external factor significantly affects the value of a performance measure collected under this section 8.2, then the Recipient shall identify that external factor in the Post-construction Performance Measurement Report and discuss its influence on the performance measure.

**8.3    Project Outcomes Report.**

If the Capital-Planning Designation in section 2 of schedule F is "Capital," then the Recipient shall submit to the USDOT, not later than January 31 of the year that follows the final calendar year during which data was collected under section 8.2, a Project Outcomes Report that contains:

(1)    a narrative discussion detailing project successes and the influence of external factors on project expectations;

(2)    all baseline and post-construction performance measurement data that the Recipient reported in the Baseline Performance Measurement Report and the Post-construction Performance Measurement Reports; and

(3)    an *ex post* examination of project effectiveness relative to the baseline data that the Recipient reported in the Baseline Performance Measurement Report.

**8.4    Performance Reporting Survival.**

The data collection and reporting requirements in this article 8 survive the termination of this agreement.

14 of 36

**ARTICLE 9**
**RESERVED**


**ARTICLE 10**
**RESERVED**


**ARTICLE 11**
**LABOR AND WORK**

**11.1    Labor and Work.**

Schedule H documents the consideration of job quality and labor rights, standards, and protections related to the Project.


**ARTICLE 12**
**CIVIL RIGHTS AND TITLE VI**

**12.1    Civil Rights and Title VI.**

(a)  T purpose of sections 12.1(b)–12.1(c) is to ensure that the Recipient has a plan to comply with civil rights obligations and nondiscrimination laws, including Title VI and 49 CFR part 21, including any amendments thereto.

(b)  If the Recipient is an "Existing" Recipient then the Recipient shall submit to the USDOT either:

    (1)    not later than one month after the date of this agreement, documentation showing that the Recipient has complied with all reporting requirements under the Administering Operating Administration's implementation of Title VI; or

    (2)    not later than six months after the date of this agreement, both a Title VI Plan and a Community Participation Plan, as those plans are described in chapter II, sections 3–4 of DOT Order 1000.12C, including any amendments or updates thereto.

(c)  If the Recipient is a "New" Recipient then the Administering Operating Administration completed a Title VI Assessment of the Recipient, as described in chapter II, section 2 of DOT Order 1000.12C, including any amendments or updates thereto.

(d)  In this section 12.1,

    (1)    "**Title VI**" means Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified at 42 U.S.C. 2000d to 2000d-4a).

    (2)    "**Existing**" means a prior recipient of DOT federal financial assistance since the publication of DOT Order 1000.12C on June 11, 2021.

(3) "**New**" means a recipient who has not received DOT federal financial assistance since the publication of DOT Order 1000.12C on June 11, 2021.

**12.2    Legacy Infrastructure and Facilities.**

In furtherance of the Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336 (codified at 42 U.S.C. 12101–12213), and Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112 (codified at 29 U.S.C. 794), not later than one year after the date of this agreement, the Recipient shall develop a plan to address any legacy infrastructure or facilities that are not compliant with ADA standards and are involved in, or closely associated with, the Project. Consistent with 49 CFR part 27, even in the absence of prior discriminatory practice or usage, a Recipient administering a program or activity receiving Federal financial assistance is expected to take action to ensure that no person is excluded from participation in or denied the benefits of the program or activity on the basis of disability.

## ARTICLE 13
## CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE

**13.1    Critical Infrastructure Security and Resilience.**

(a) Consistent with Presidential Policy Directive 21, "Critical Infrastructure Security and Resilience" (Feb. 12, 2013), and the National Security Presidential Memorandum on Improving Cybersecurity for Critical Infrastructure Control Systems (July 28, 2021), the Recipient shall consider physical and cyber security and resilience in planning, design, and oversight of the Project.

(b) If the Security Risk Designation in section 5 of schedule F is "Elevated," then the Recipient shall:

   (1) in the first Quarterly Project Progress Report and Recertification that the Recipient submits under section 7.1, identify a cybersecurity Point of Contact for the transportation infrastructure being improved in the Project; and

   (2) in the second Quarterly Project Progress Report and Recertification that the Recipient submits under section 7.1, provide a plan for completing the requirements in section 13.1(c).

(c) If the Security Risk Designation in section 5 of schedule F is "Elevated," then not later than the eighth Quarterly Project Progress Report and Recertification that the Recipient submits under section 7.1, the Recipient shall include each of the following in a Quarterly Project Progress Report and Recertification that the Recipient submits under section 7.1:

   (1) a cybersecurity incident reporting plan for the transportation infrastructure being improved in the Project or a summary of that plan;

   (2) a cybersecurity incident response plan for the transportation infrastructure being improved in the Project or a summary of that plan;

(3)     the results of a self-assessment of the Recipient's cybersecurity posture and capabilities or a summary of those results; and

(4)     a description of any additional actions that the Recipient has taken to consider or address cybersecurity risk of the transportation infrastructure being improved in the Project.

## ARTICLE 14
## RAISE PROGRAM DESIGNATIONS

**14.1    Effect of Urban or Rural Designation.**

Based on information that the Recipient provided to the USDOT, including the Technical Application, section 1 of schedule F designates this award as an urban award or a rural award, as defined in the NOFO. The Recipient shall comply with the requirements that accompany that designation on minimum award size, geographic location, and cost sharing.

**14.2    Effect of Historically Disadvantaged Community or Area of Persistent Poverty Designation.**

If section 3 of schedule F lists "Yes" for the "HDC or APP Designation," then based on information that the Recipient provided to the USDOT, including the Technical Application, the USDOT determined that the Project will be carried out in a historically disadvantaged community or an area of persistent poverty, as defined in the NOFO. The Recipient shall incur a majority of the costs under this award in historically disadvantaged communities or areas of persistent poverty.

## ARTICLE 15
## CONTRACTING AND SUBAWARDS

**15.1    Minimum Wage Rates.**

The Recipient shall include, in all contracts in excess of $2,000 for work on the Project that involves labor, provisions establishing minimum rates of wages, to be predetermined by the United States Secretary of Labor, in accordance with the Davis-Bacon Act, 40 U.S.C. 3141–3148, or 23 U.S.C. 113, as applicable, that contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

**15.2    Buy America.**

(a) Steel, iron, and manufactured products used in the Project are subject to 23 U.S.C. 313, as implemented by the Federal Highway Administration. The Recipient acknowledges that this agreement is neither a waiver of 23 U.S.C. 313(a) nor a finding under 23 U.S.C. 313(b).

(b) Construction materials used in the Project are subject to the domestic preference

requirement at § 70914 of the Build America, Buy America Act, Pub. L. No. 117-58, div. G, tit. IX, subtit. A, 135 Stat. 429, 1298 (2021), as implemented by OMB, USDOT, and FHWA. The Recipient acknowledges that this agreement is neither a waiver of § 70914(a) nor a finding under § 70914(b).

(c) Under 2 CFR 200.322, as appropriate and to the extent consistent with law, the Recipient should, to the greatest extent practicable under this award, provide a preference for the purchase, acquisition, or use of goods, products, or materials produced in the United States (including but not limited to iron, aluminum, steel, cement, and other manufactured products). The Recipient shall include the requirements of 2 CFR 200.322 in all subawards including all contracts and purchase orders for work or products under this award.

**15.3    Small and Disadvantaged Business Requirements.**

(a) If any funds under this award are administered by or through a State Department of Transportation, the Recipient shall expend those funds in compliance with the requirements at 49 CFR part 26, including any amendments thereto.

(b) If any funds under this award are not administered by or through a State Department of Transportation, the Recipient shall expend those funds in compliance with the requirements at 2 CFR 200.321, including any amendments thereto.

**15.4    Engineering and Design Services.**

The Recipient shall award each contract or sub- contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping, or related services with respect to the project in the same manner that a contract for architectural and engineering services is negotiated under the Brooks Act, 40 U.S.C. 1101–1104 as implemented in 23 U.S.C. 112(b)(2), or an equivalent qualifications-based requirement prescribed for or by the Recipient and approved in writing by the USDOT.

**15.5    Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment.**

The Recipient acknowledges that Section 889 of Pub. L. No. 115-232 and 2 CFR 200.216 prohibit the Recipient and all subrecipients from procuring or obtaining certain telecommunications and video surveillance services or equipment under this award.

**15.6    Pass-through Entity Responsibilities.**

If the Recipient makes a subaward under this award, the Recipient shall comply with the requirements on pass-through entities under 2 CFR parts 200 and 1201, including 2 CFR 200.331–200.333.

**15.7    Subaward and Contract Authorization.**

(a) If the USDOT Office for Subaward and Contract Authorization identified in section 7 of schedule A is "FHWA Division," then the Recipient shall comply with subaward and

contract authorization requirements under 23 CFR chapter I, subchapter G.

(b) If the USDOT Office for Subaward and Contract Authorization identified in section 7 of schedule A is "FHWA Office of Acquisition and Grants Management," then the Recipient shall obtain prior written approval from the USDOT agreement officer pursuant to 2 CFR 200.308 and 23 CFR part 172, as applicable, for the subaward or contracting out of any work under this agreement. Approvals under 2 CFR 200.308 will be contingent upon a fair and reasonable price determination on the part of the Recipient and the agreement officer's concurrence on that determination. Approvals under 2 CFR 200.308(f)(6) do not apply to the acquisition of supplies, material, equipment, or general support services.

## ARTICLE 16
## NONCOMPLIANCE AND REMEDIES

### 16.1    Noncompliance Determinations.

(a) If the USDOT determines that the Recipient may have failed to comply with the United States Constitution, Federal law, or the terms and conditions of this agreement, the USDOT may notify the Recipient of a proposed determination of noncompliance. For that notice to be effective, USDOT must include an explanation of the nature of the noncompliance, describe a remedy, state whether that remedy is proposed or effective at an already determined date, and describe the process through and form in which the Recipient may respond to the notice.

(b) If the USDOT notifies the Recipient of a proposed determination of noncompliance under section 16.1(a), the Recipient may, not later than 7 calendar days after the notice, respond to that notice in the form and through the process described in that notice. In its response, the Recipient may:

    (1)    accept the remedy;

    (2)    acknowledge the noncompliance, but propose an alternative remedy; or

    (3)    dispute the noncompliance.

To dispute the noncompliance, the Recipient must include in its response documentation or other information supporting the Recipient's compliance.

(c) The USDOT may make a final determination of noncompliance only:

    (1)    after considering the Recipient's response under section 16.1(b); or

    (2)    if the Recipient fails to respond under section 16.1(b), after the time for that response has passed.

(d) To make a final determination of noncompliance, the USDOT must provide to the Recipient a notice that states the bases for that determination.

**16.2    Remedies.**

(a) If the USDOT makes a final determination of noncompliance under section 16.1, the USDOT may impose a remedy, including:

    (1)    additional conditions on the award;

    (2)    any remedy permitted under 2 CFR 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the USDOT; suspension or termination of the award; or suspension and disbarment under 2 CFR part 180; or

    (3)    any other remedy legally available.

(b) To impose a remedy, the USDOT must provide to the Recipient a notice that describes the remedy, but the USDOT may make the remedy effective before the Recipient receives that notice.

(c) If the USDOT determines that it is in the public interest, the USDOT may impose a remedy, including all remedies described in section 16.2(a), before making a final determination of noncompliance under section 16.1. If it does so, then the notice provided under section 16.1(d) must also state whether the remedy imposed will continue, be rescinded, or modified.

(d) In imposing a remedy under this section 16.2 or making a public interest determination under section 16.2(c), the USDOT may elect to consider the interests of only the USDOT.

(e) The Recipient acknowledges that amounts that the USDOT requires the Recipient to refund to the USDOT due to a remedy under this section 16.2 constitute a debt to the Federal Government that the USDOT may collect under 2 CFR 200.346 and the Standards for Administrative Collection of Claims (31 CFR parts 901).

**16.3    Other Oversight Entities.**

Nothing in this article 16 limits any party's authority to report activity under this agreement to the United States Department of Transportation Inspector General or other appropriate oversight entities.

## ARTICLE 17
## AGREEMENT TERMINATION

**17.1    USDOT Termination.**

(a) The USDOT may terminate this agreement and all of its obligations under this agreement if any of the following occurs:

    (1)    the Recipient fails to timely obtain or timely provide any non-RAISE Grant contribution or alternatives approved by the USDOT as provided in this

agreement and consistent with schedule D;

 (2) a completion date for the Project or a component of the Project is listed in section 2 of schedule C and the Recipient fails to meet that milestone by six months after the date listed in section 2 of schedule C;

 (3) the Recipient fails to meet a milestone listed in section 3 of schedule C by the deadline date listed in that section for that milestone;

 (4) the Recipient fails to comply with the terms and conditions of this agreement, including a material failure to comply with the project schedule in schedule C even if it is beyond the reasonable control of the Recipient;

 (5) circumstances cause changes to the Project that the USDOT determines are inconsistent with the USDOT's basis for selecting the Project to receive a RAISE Grant; or

 (6) the USDOT determines that termination of this agreement is in the public interest.

(b) In terminating this agreement under this section, the USDOT may elect to consider only the interests of the USDOT.

(c) This section 17.1 does not limit the USDOT's ability to terminate this agreement as a remedy under section 16.2.

(d) The Recipient may request that the USDOT terminate the agreement under this section 17.1.

**17.2 Closeout Termination.**

(a) This agreement terminates on Project Closeout.

(b) In this agreement, "**Project Closeout**" means the date that the USDOT informs the Recipient that the award is closed out. Under 2 CFR 200.344, Project Closeout should occur no later than 120 days after the end of the period of performance.

**17.3 Post-Termination Adjustments.**

The Recipient acknowledges that under 2 CFR 200.345–200.346, termination of the agreement does not extinguish the USDOT's authority to disallow costs, including costs that the USDOT reimbursed before termination, and recover funds from the Recipient.

**17.4 Non-Terminating Events.**

(a) The end of the budget period described under section 28.4 does not terminate this agreement or the Recipient's obligations under this agreement.

(b) The end of the period of performance described under section 28.5 does not terminate this agreement or the Recipient's obligations under this agreement.

(c) The cancellation of funds under section 19.2 does not terminate this agreement or the

Recipient's obligations under this agreement.

**17.5    Other Remedies.**

The termination authority under this article 17 supplements and does not limit the USDOT's remedial authority under article 16 or 2 CFR part 200, including 2 CFR 200.339–200.340.

## ARTICLE 18
## COSTS, PAYMENTS, AND UNEXPENDED FUNDS

**18.1    Limitation of Federal Award Amount.**

Under this award, the USDOT shall not provide funding greater than the amount obligated under section 4.3. The Recipient acknowledges that the USDOT is not liable for payments exceeding that amount, and the Recipient shall not request reimbursement of costs exceeding that amount.

**18.2    Projects Costs.**

This award is subject to the cost principles at 2 CFR 200 subpart E, including provisions on determining allocable costs and determining allowable costs.

**18.3    Timing of Project Costs.**

(a)  The Recipient shall not charge to this award costs that are incurred after the final budget period.

(b)  The Recipient shall not charge to this award costs that were incurred before the date of this agreement unless those costs are identified in section 5 of schedule D and would have been allowable if incurred during the budget period. This limitation applies to costs incurred under an advance construction authorization (23 U.S.C. 115), costs incurred prior to authorization (23 CFR 1.9(b)), and pre-award costs under 2 CFR 200.458. This agreement hereby terminates and supersedes any previous USDOT approval for the Recipient to incur costs under this award for the Project. Section 5 of schedule D is the exclusive USDOT approval of costs incurred before the date of this agreement.

**18.4    Recipient Recovery of Federal Funds.**

The Recipient shall make all reasonable efforts, including initiating litigation, if necessary, to recover Federal funds if the USDOT determines, after consultation with the Recipient, that those funds have been spent fraudulently, wastefully, or in violation of Federal laws, or misused in any manner under this award. The Recipient shall not enter a settlement or other final position, in court or otherwise, involving the recovery of funds under the award unless approved in advance in writing by the USDOT.

**18.5    Unexpended Federal Funds.**

Any Federal funds that are awarded at section 4.1 but not expended on allocable, allowable costs remain the property of the United States.

**18.6    Timing of Payments to the Recipient.**

(a)  Reimbursement is the payment method for the RAISE Program.

(b)  The Recipient shall not request reimbursement of a cost before the Recipient has entered into an obligation for that cost.

**18.7    Payment Method.**

(a)  If the USDOT Payment System identified in section 6 of schedule A is "FMIS," then the Recipient shall follow FMIS procedures to request and receive reimbursement payments under this award.

(b)  If the USDOT Payment System identified in section 6 of schedule A is "DELPHI eInvoicing," then the Recipient shall use the DELPHI eInvoicing System to request reimbursement under this award unless the USDOT agreement officer provides written approval for the Recipient to use a different request and payment method.

(c)  The USDOT may deny a payment request that is not submitted using the method identified in this section 18.7.

**18.8    Information Supporting Expenditures.**

(a)  If the USDOT Payment System identified in section 6 of schedule A is "DELPHI eInvoicing," then when requesting reimbursement of costs incurred or credit for cost share incurred, the Recipient shall electronically submit the SF 271 (Outlay Report and Request for Reimbursement for Construction Programs), shall identify the Federal share and the Recipient's share of costs, and shall submit supporting cost detail to clearly document all costs incurred. As supporting cost detail, the Recipient shall include a detailed breakout of all costs incurred, including direct labor, indirect costs, other direct costs, and travel.

(b)  If the Recipient submits a request for reimbursement that the USDOT determines does not include or is not supported by sufficient detail, the USDOT may deny the request or withhold processing the request until the Recipient provides sufficient detail.

**18.9    Reimbursement Frequency.**

If the USDOT Payment System identified in section 6 of schedule A is "DELPHI eInvoicing," then the Recipient shall not request reimbursement more frequently than monthly.

**ARTICLE 19**
**LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY**

**19.1    Liquidation of Recipient Obligations.**

(a)  The Recipient shall liquidate all obligations of award funds under this agreement not later than the earlier of (1) 120 days after the end of the period of performance or (2) the

statutory funds cancellation date identified in section 19.2.

(b) Liquidation of obligations and adjustment of costs under this agreement follow the requirements of 2 CFR 200.344–200.346.

**19.2    Funds Cancellation.**

(a) RAISE Program funding that was appropriated in division J of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021), is canceled by statute after September 30, 2032, and then unavailable for any purpose, including adjustments.

(b) RAISE Program funding that was appropriated in the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (Dec. 29, 2022) remains available until expended.

(c) Section 4.2 identifies the specific source or sources of funding for this award.

## ARTICLE 20
## AGREEMENT MODIFICATIONS

**20.1    Bilateral Modifications.**

The parties may amend, modify, or supplement this agreement by mutual agreement in writing signed by the USDOT and the Recipient. Either party may request to amend, modify, or supplement this agreement by notice to the other party.

**20.2    Unilateral Contact Modifications.**

(a) The Recipient may update the contacts who are listed in section 3 of schedule A by notice to USDOT.

(b) The USDOT may update the contacts who are listed in section 5 of schedule A and section 2.2 by notice to the Recipient.

**20.3    USDOT Unilateral Modifications.**

(a) The USDOT may unilaterally modify this agreement to comply with Federal law, including the Program Statute.

(b) To unilaterally modify this agreement under this section 20.3, the USDOT must provide to the Recipient a notice that includes a description of the modification and state the date that the modification is effective.

**20.4    Other Modifications.**

The parties shall not amend, modify, or supplement this agreement except as permitted under sections 20.1, 20.2, or 20.3. If an amendment, modification, or supplement is not permitted under section 20.1, not permitted under section 20.2, and not permitted under section 20.3, it is void.

## ARTICLE 21
## FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS

**21.1    Uniform Administrative Requirements for Federal Awards.**

The Recipient shall comply with the obligations on non-Federal entities under 2 CFR parts 200 and 1201.

**21.2    Federal Law and Public Policy Requirements.**

(a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(b) Pursuant to Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(c) Pursuant to Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws.

(d) The failure of this agreement to expressly identify Federal law applicable to the Recipient or activities under this agreement does not make that law inapplicable.

**21.3    Federal Freedom of Information Act.**

(a) The USDOT is subject to the Freedom of Information Act, 5 U.S.C. 552.

(b) The Recipient acknowledges that the Technical Application and materials submitted to the USDOT by the Recipient related to this agreement may become USDOT records subject to public release under 5 U.S.C. 552.

**21.4    History of Performance.**

Under 2 CFR 200.206, any Federal agency may consider the Recipient's performance under this agreement, when evaluating the risks of making a future Federal financial assistance award to the Recipient.

**21.5    Whistleblower Protection.**

(a) The Recipient acknowledges that it is a "grantee" within the scope of 41 U.S.C. 4712, which prohibits the Recipient from taking certain actions against an employee for certain disclosures of information that the employee reasonably believes are evidence of gross mismanagement of this award, gross waste of Federal funds, or a violation of Federal law related this this award.

(b) The Recipient shall inform its employees in writing of the rights and remedies provided under 41 U.S.C. 4712, in the predominant native language of the workforce.

**21.6    External Award Terms and Obligations.**

(a) In addition to this document and the contents described in article 29, this agreement includes the following additional terms as integral parts:

(1)    Appendix A to 2 CFR part 25: System for Award Management and Universal Identifier Requirements;

(2)    Appendix A to 2 CFR part 170: Reporting Subawards and Executive Compensation;

(3)    2 CFR part 175: Award Term for Trafficking in Persons; and

(4)    Appendix XII to 2 CFR part 200: Award Term and Condition for Recipient Integrity and Performance Matters.

(b) The Recipient shall comply with:

(1)    49 CFR part 20: New Restrictions on Lobbying;

(2)    49 CFR part 21: Nondiscrimination in Federally-Assisted Programs of the Department of Transportation—Effectuation of Title VI of the Civil Rights Act of 1964, including any amendments thereto;

(3)    49 CFR part 27: Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance; and

(4)    Subpart B of 49 CFR part 32: Governmentwide Requirements for Drug-free Workplace (Financial Assistance).

**21.7    Incorporated Certifications.**

The Recipient makes the statements in the following certifications, which are incorporated by reference:

(1) Appendix A to 49 CFR part 20 (Certification Regarding Lobbying).

**ARTICLE 22**
**MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS**

**22.1    Recipient Monitoring and Record Retention.**

(a) The Recipient shall monitor activities under this award, including activities under subawards and contracts, to ensure:

    (1)    that those activities comply with this agreement; and

    (2)    that funds provided under this award are not expended on costs that are not allowable under this award or not allocable to this award.

(b) If the Recipient makes a subaward under this award, the Recipient shall monitor the activities of the subrecipient in compliance with 2 CFR 200.332(e).

(c) The Recipient shall retain records relevant to the award as required under 2 CFR 200.334.

**22.2    Financial Records and Audits.**

(a) The Recipient shall keep all project accounts and records that fully disclose the amount and disposition by the Recipient of the award funds, the total cost of the Project, and the amount or nature of that portion of the cost of the Project supplied by other sources, and any other financial records related to the project.

(b) The Recipient shall keep accounts and records described under section 22.2(a) in accordance with a financial management system that meets the requirements of 2 CFR 200.302–200.307, 2 CFR 200 subpart F, and title 23, United States Code, and will facilitate an effective audit in accordance with 31 U.S.C. 7501–7506.

(c) The Recipient shall separately identify expenditures under the fiscal year 2023 RAISE Program in financial records required for audits under 31 U.S.C. 7501–7506. Specifically, the Recipient shall:

    (1)    list expenditures under that program separately on the schedule of expenditures of Federal awards required under 2 CFR 200 subpart F, including "FY 2023" in the program name; and

    (2)    list expenditures under that program on a separate row under Part II, Item 1 ("Federal Awards Expended During Fiscal Period") of Form SF-SAC, including "FY 2023" in column c ("Additional Award Identification").

**22.3    Internal Controls.**

The Recipient shall establish and maintain internal controls as required under 2 CFR 200.303.

**22.4    USDOT Record Access.**

The USDOT may access Recipient records related to this award under 2 CFR 200.337.

## ARTICLE 23
## NOTICES

**23.1    Form of Notice.**

(a) For a notice under this agreement to be valid, it must be in writing.

(b) For a notice to USDOT under this agreement to be valid, it must be signed and dated by an individual with authority to act on behalf of the Recipient.

**23.2    Method of Notice to USDOT.**

(a) For a notice to USDOT under this agreement to be valid, it must be sent by one or more of the following: (1) email; (2) a national transportation company with all fees prepaid and receipt of delivery; or (3) by registered or certified mail with return receipt requested and postage prepaid.

(b) For a notice to USDOT under this agreement to be valid, it must be addressed to all of the USDOT contacts who are listed in section 5 of schedule A and section 2.2.

(c) Except as specified in section 23.2(d), a valid notice to USDOT under this agreement will be deemed to have been received on the earliest of (1) when the email is received by USDOT, as recorded by USDOT's email systems, and (2) when indicated on the receipt of delivery by national transportation company or mail.

(d) If a valid notice or other communication to USDOT under this agreement is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day.

**23.3    Method of Notice to Recipient.**

(a) Except as specified in section 23.3(d), for a notice to the Recipient under this agreement to be valid, it must be sent by one or more of the following: (1) email; (2) a national transportation company with all fees prepaid and receipt of delivery; or (3) registered or certified mail with return receipt requested and postage prepaid.

(b) For a notice to the Recipient under this agreement to be valid, it must be addressed to all of the Recipient contacts who are listed in section 3 of schedule A.

(c) A valid notice to the Recipient under this agreement is effective when received by the Recipient. It will be deemed to have been received:

(1)    for email, on receipt; and, for other delivery, when indicated on the receipt of delivery by national transportation company or mail; or

(2)      if the Recipient rejects or otherwise refuses to accept it, or if it cannot be delivered because of a change in address or representatives for which no notice was given, then on that rejection, refusal, or inability to deliver.

(d) For a notice to the Recipient under article 16 to be valid, it must be sent by one or more of the following: (1) a national transportation company with all fees prepaid and receipt of delivery or (2) registered or certified mail with return receipt requested and postage prepaid.

**23.4    Recipient Contacts for Notice.**

If a Recipient contact who is listed in section 3 of schedule A is unable to receive notices under this agreement on behalf of the Recipient, then the Recipient shall promptly identify one or more replacement contacts under section 20.2(a).

**23.5    Additional Mandatory Notices to USDOT.**

The Recipient shall notify the USDOT if any one of the following conditions is satisfied, not later than 5 business days after that condition is satisfied:

(1)      the Recipient receives a communication related to this award or this agreement from the United States Comptroller General, a Federal Inspector General, or any other oversight entity; or

(2)      the Recipient becomes aware of waste, fraud, abuse, or potentially criminal activity related to this agreement.

**23.6    Scope of Notice Requirements.**

The form and method requirements of this article 23, including sections 23.1, 23.2, and 23.3, apply only to communications for which this agreement expressly uses one or more of the following words: "notice"; "notification"; "notify"; or "notifying." This article 23 does not control or limit other communication between the parties about the Project or this agreement.

**ARTICLE 24**
**INFORMATION REQUESTS**

**24.1    USDOT Information Requests.**

(a) By notice, the USDOT may request from the Recipient any information that the USDOT determines is necessary to fulfill its oversight responsibilities under the Program Statute or other Federal law.

(b) If the USDOT requests information from the Recipient under section 24.1(a), the Recipient shall respond in the form and at the time detailed in the notice requesting information.

(c) This section 24.1 does not limit the Recipient's obligations under section 22.4 or 2 CFR 200.337 to provide access to Recipient records.

# ARTICLE 25
## ASSIGNMENT

**25.1    Assignment Prohibited.**

The Recipient shall not transfer to any other entity any discretion granted under this agreement, any right to satisfy a condition under this agreement, any remedy under this agreement, or any obligation imposed under this agreement.

# ARTICLE 26
## WAIVER

**26.1    Waivers.**

(a) A waiver of a term of this agreement granted by the USDOT will not be effective unless it is in writing and signed by an authorized representative of the USDOT.

(b) A waiver of a term of this agreement granted by the USDOT on one occasion will not operate as a waiver on other occasions.

(c) If the USDOT fails to require strict performance of a term of this agreement, fails to exercise a remedy for a breach of this agreement, or fails to reject a payment during a breach of this agreement, that failure does not constitute a waiver of that term or breach.

# ARTICLE 27
## ADDITIONAL TERMS AND CONDITIONS

**27.1    Disclaimer of Federal Liability.**

The USDOT shall not be responsible or liable for any damage to property or any injury to persons that may arise from, or be incident to, performance or compliance with this agreement.

**27.2    Relocation and Real Property Acquisition.**

(a) To the greatest extent practicable under State law, the Recipient shall comply with the land acquisition policies in 49 CFR 24 subpart B and shall pay or reimburse property owners for necessary expenses as specified in that subpart.

(b) The Recipient shall provide a relocation assistance program offering the services described in 49 CFR 24 subpart C and shall provide reasonable relocation payments and assistance to displaced persons as required in 49 CFR 24 subparts D–E.

(c) The Recipient shall make available to displaced persons comparable replacement dwellings in accordance with 49 CFR 24.

**27.3    Equipment Disposition.**

(a) In accordance with 2 CFR 200.313 and 1201.313, if the Recipient or a subrecipient acquires equipment under this award, then when that equipment is no longer needed for the Project:

   (1)    if the entity that acquired the equipment is a State, the State shall dispose of that equipment in accordance with State laws and procedures;

   (2)    if the entity that acquired the equipment is an Indian Tribe, the Indian Tribe shall dispose of that equipment in accordance with tribal laws and procedures. If such laws and procedures do not exist, Indian Tribes must follow the guidance in 2 CFR 200.313; and

   (3)    if the entity that acquired the equipment is neither a State nor an Indian Tribe , that entity shall request disposition instructions from the Administering Operating Administration.

(b) In accordance with 2 CFR 200.443(d), the distribution of the proceeds from the disposition of equipment must be made in accordance with 2 CFR 200.310–200.316 and 2 CFR 1201.313.

(c) The Recipient shall ensure compliance with this section 27.3 for all tiers of subawards under this award.

**27.4    Environmental Review.**

(a) In this section, "**Environmental Review Entity**" means:

   (1)    if the Project is located in a State that has assumed responsibilities for environmental review activities under 23 U.S.C. 326 or 23 U.S.C. 327 and the Project is within the scope of the assumed responsibilities, the State; and

   (2)    for all other cases, the FHWA.

(b) Except as authorized under section 27.4(c), the Recipient shall not begin final design; acquire real property, construction materials, or equipment; begin construction; or take other actions that represent an irretrievable commitment of resources for the Project unless and until:

   (1)    the Environmental Review Entity complies with the National Environmental Policy Act, 42 U.S.C. 4321 to 4370m-12, and any other applicable environmental laws and regulations; and

   (2)    if the Environmental Review Entity is not the Recipient, the Environmental Review Entity provides the Recipient with written communication stating that the environmental review process is complete.

(c) If the Recipient is using procedures for early acquisition of real property under 23 CFR 710.501 or hardship and protective acquisitions of real property 23 CFR 710.503, the Recipient shall comply with 23 CFR 771.113(d)(1).

(d) The Recipient acknowledges that:

    (1)    the Environmental Review Entity's actions under section 27.4(a) depend on the Recipient conducting necessary environmental analyses and submitting necessary documents to the Environmental Review Entity; and

    (2)    applicable environmental statutes and regulation may require the Recipient to prepare and submit documents to other Federal, State, and local agencies.

(e) Consistent with 23 CFR 771.105(a), to the extent practicable and consistent with Federal law, the Recipient shall coordinate all environmental investigations, reviews, and consultations as a single process.

(f) The activities described in schedule B and other information described in this agreement may inform environmental decision-making processes, but the parties do not intend this agreement to document the alternatives under consideration under those processes. If a build alternative is selected that does not align with schedule B or other information in this agreement, then:

    (1)    the parties may amend this agreement under section 20.1 for consistency with the selected build alternative; or

    (2)    if the USDOT determines that the condition at section 17.1(a)(5) is satisfied, the USDOT may terminate this agreement under section 17.1(a)(5).

(g) The Recipient shall complete any mitigation activities described in the environmental document or documents for the Project, including the terms and conditions contained in the required permits and authorizations for the Project.

## 27.5    Railroad Coordination.

If section 3 of schedule C includes one or more milestones identified as a "Railroad Coordination Agreement," then for each of those milestones, the Recipient shall enter a standard written railroad coordination agreement, consistent with 23 CFR 646.216(d), no later than the deadline date identified for that milestone, with the identified railroad for work and operation within that railroad's right-of-way.

## ARTICLE 28
## MANDATORY AWARD INFORMATION

## 28.1    Information Contained in a Federal Award.

For 2 CFR 200.211:

    (1)    the "Federal Award Date" is the date of this agreement, as defined under section

        30.2;

(2)    the "Assistance Listings Number" is 20.933 and the "Assistance Listings Title" is "National Infrastructure Investments"; and

(3)    this award is not for research and development.

## 28.2  Federal Award Identification Number.

(a) If the USDOT Payment System identified in section 6 of schedule A is "FMIS," then the Federal Award Identification Number will be generated when the FHWA Division authorizes the project in FMIS. The Recipient acknowledges that it has access to FMIS and can retrieve the FAIN from FMIS.

(b) If the USDOT Payment System identified in section 6 of schedule A is "DELPHI eInvoicing," then the Federal Award Identification Number is listed on page 1, line 1 of the project-specific agreement.

## 28.3  Recipient's Unique Entity Identifier.

(a) If the USDOT Payment System identified in section 6 of schedule A is "FMIS," then the Recipient's Unique Entity Identifier, as defined at 2 CFR 25.400, is available in FMIS. The Recipient acknowledges that it has access to FMIS and can retrieve the unique entity identifier from FMIS.

(b) If the USDOT Payment System identified in section 6 of schedule A is "DELPHI eInvoicing," then the Recipient's Unique Entity Identifier, as defined at 2 CFR 25.400, is listed on page 1, line 4 of the project-specific agreement.

## 28.4  Budget Period.

The budget period for this award begins on the date of this agreement and ends on the budget period end date that is listed in section 1 of schedule C. In this agreement, "budget period" is used as defined at 2 CFR 200.1.

## 28.5  Period of Performance.

(a) If the USDOT Payment System identified in section 6 of schedule A is "FMIS," then the period of performance for this award begins on the date of this agreement and ends on project end date in FMIS.

(b) If the USDOT Payment System identified in section 6 of schedule A is "DELPHI eInvoicing," then the period of performance for this award is listed on page 1, line 6 of the project-specific agreement.

(c) In this agreement, "period of performance" is used as defined at 2 CFR 200.1.

**ARTICLE 29**
**CONSTRUCTION AND DEFINITIONS**

**29.1    Schedules.**

This agreement includes the following schedules as integral parts:

Schedule A          Administrative Information
Schedule B          Project Activities
Schedule C          Award Dates and Project Schedule
Schedule D          Award and Project Financial Information
Schedule E          Changes from Application
Schedule F          RAISE Program Designations
Schedule G          RAISE Performance Measurement Information
Schedule H          Labor and Work

**29.2    Exhibits.**

The following exhibits, which are located in the document titled "Exhibits to FHWA Grant Agreements Under the Fiscal Year 2023 RAISE Program," dated April 23, 2025, and available at https://www.transportation.gov/BUILDgrants/grant-agreements, are part of this agreement.

Exhibit A          Applicable Federal Laws and Regulations
Exhibit B          Additional Standard Terms
Exhibit C          Quarterly Project Progress Reports and Recertifications: Format and Content
Exhibit D          Form for Subsequent Obligation of Funds

**29.3    Construction.**

(a) In these General Terms and Conditions:

   (1)     unless expressly specified, a reference to a section or article refers to that section or article in these General Terms and Conditions;

   (2)     a reference to a section or other subdivision of a schedule listed in section 29.1 will expressly identify the relevant schedule; and

   (3)     there are no references to articles or sections in project-specific portions of the agreement that are not contained in schedules listed in section 29.1.

(b) If a provision in these General Terms and Conditions or the exhibits conflicts with a provision in the project-specific portion of the agreement, then the project-specific portion of the agreement prevails. If a provision in the exhibits conflicts with a provision in these General Terms and Conditions, then the provision in these General Terms and Conditions prevails.

34 of 36

**29.4    Integration.**

This agreement constitutes the entire agreement of the parties relating to the RAISE Program and awards under that program and supersedes any previous agreements, oral or written, relating to the RAISE Program and awards under that program.

**29.5    Definitions.**

In this agreement, the following definitions apply:

"**General Terms and Conditions**" means this document, including articles 1–30.

"**Program Statute**" means the collective statutory text:

(1)    at 49 U.S.C. 6702;

(2)    under the heading "Department of Transportation—Office of the Secretary—National Infrastructure Investments" in title VIII of division J of the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58 (Nov. 15, 2021), and all other provisions of that act that apply to amounts appropriated under that heading; and

(3)    under the heading "Department of Transportation—Office of the Secretary—National Infrastructure Investments" in title I of division L of the Consolidated Appropriations Act, 2023 Pub. L. No. 117-328 (Dec. 29, 2022), and all other provisions of that act that apply to amounts appropriated under that heading.

"**Project**" means the project proposed in the Technical Application, as modified by the negotiated provisions of this agreement, including schedules A–H.

"**RAISE Grant**" means an award of funds that were made available under the NOFO.

"**Technical Application**" means the application identified in section 1 of schedule A, including Standard Form 424 and all information and attachments submitted with that form through Grants.gov.

**29.6    References to Times of Day.**

All references to times of day in this agreement are deemed references to that time at the prevailing local time in Washington, DC.

**ARTICLE 30**
**AGREEMENT EXECUTION AND EFFECTIVE DATE**

**30.1    Counterparts.**

This agreement may be executed in counterparts, which constitute one document. The parties intend each countersigned original to have identical legal effect.

35 of 36

**30.2    Effective Date.**

The agreement will become effective when all parties have signed it. The date of this agreement will be the date this agreement is signed by the last party to sign it. This instrument constitutes a RAISE Grant when the USDOT's authorized representative signs it.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2025, I served a true and correct copy of the foregoing document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 14th day of July, 2025.

/s/ Gabriela DeGregorio
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE - 1

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750