Docusign Envelope ID: 45B0FD1F-A751-42D8-B4B4-285B5D5DBD25
Case 2:25-cv-00814-BJR    Document 233    Filed 07/14/25    Page 1 of 6

THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR. COUNTY, et al.,

                    Plaintiffs,

v.

SCOTT TURNER, in his official capacity as Secretary of the U.S. Department of Housing and Urban Development, et al.,

                    Defendant.

No. 2:25-cv-00814

DECLARATION OF BRIAN DRANZIK

I, Brian Dranzik, declare as follows:

1. I am a resident of the State of Wisconsin. I am over the age of eighteen, competent to testify, and make this declaration based on my personal knowledge and on my review of relevant business records.

2. I have been employed by the Milwaukee Mitchell International Airport (the "Airport") as the Airport Director since October 2017. Before that, I was the Director of Transportation for Milwaukee County for nearly five years.

3. The Airport is operated by the Milwaukee County Department of Transportation. The Airport is the largest airport in Wisconsin, and has been named one of J.D. Powers' top ten medium-sized airports. In 2024, the Airport reached 6.3 million passenger enplanements, a 5% increase over the 6 million passengers in 2023. The Airport is an economic engine for the region. Based on the most recent economic impact report, the Airport annually generates approximately $3 billion in the region, supports nearly 26,000 jobs in the community, and generates over $900

DECLARATION OF BRIAN DRANZIK - 1

million in total earnings.  *See*

https://www.mitchellairport.com/application/files/9816/5591/0387/Brochure_v1.pdf.

      4.      As the Airport Director, I am responsible for the safe, reliable, and efficient operation of the Airport. My work focuses on passenger experience, commercial development to maximize revenue and profit from Airport assets, ongoing capital investment and maintenance, outreach with stakeholder groups, security, emergency response and preparedness programs, and operational compliance with state and federal regulations.

      5.      The Airport relies on federal grants as a critical source of funding for airport capital projects that are necessary to operate a safe and efficient airport.  The loss of federal grants for capital construction and improvements would limit the Airport's funding capacity to carry out future projects tied to safety, security, and operational efficiencies.  Over the past 5 years, for example, the Airport obtained over $44 million in federal grants that contributed to over $52 million in projects to ensure airfield safety and to modernize airport terminals (plus approximately $60 million in Covid relief funds).

      6.      Currently, the Airport relies on four different sources of federal grants:  Airport Improvement Program Entitlement Grants (the amount of which are set by statutory formula), Airport Improvement Program Discretionary Grants (competitively bid, but allocated by FAA based on National Plan of Integrated Airport Systems prioritization), Infrastructure Investment and Jobs Act ("IIJA"), Airport Infrastructure Grants (set by statutory formula), and IIJA Airport Terminal Program Grants (competitively awarded annually through 2026).  The Airport's reliance on federal grants is not only long-term, but immediate.  For federal fiscal years 2025 and 2026, the financing for airport capital projects is premised on these grants providing over $57 million in capital funding for projects including terminal redevelopment and airfield rehabilitation and improvements.

      7.      For FY 2025 alone, the Airport has applied for federal grants totaling over $33 million.  This includes over $17 million in IIJA Airport Infrastructure formula grants to carry out extensive and necessary airfield strengthening and rehabilitation projects for major runways, taxiways, and aircraft aprons and ramps, including pavement work that is required for most of

Case No.: 2:25-CV-00814
DECLARATION OF BRIAN DRANZIK - 2

the commercial flight operations at the Airport. The anticipated FY 2025 grants also include a $5.875 million Airport Infrastructure formula grant and a $8.5 million Airport Terminal Program Grant for Phase I of a project to replace aging and outdated Concourse E buildings with a new international terminal building. This is a $77 million project that is critical for accommodating the growth in international air service at the Airport and ensuring operational safety. The major design work for the redevelopment of Concourse E is complete, and the project has already been delayed once due to the Covid-19 pandemic. Without this anticipated federal funding in FY 2025, the project cannot move forward as planned, which would have a profound impact on the Airport's ability to serve the traveling public.

8. For FY 2026, the Airport plans to apply for Airport Improvement Entitlement grants and Airport Infrastructure formula grants totaling over $24 million to complete major runway and taxiway rehabilitation and improvements on parts of the airfield critical to commercial flight operations.

9. The Airport has not yet received grant agreements from FAA for the pending fiscal year 2025 grant applications, but it anticipates receiving the agreements, as it has in previous years, no later than September 2025.

10. Although the Airport has not yet received its FY 2025 grant agreements, FAA has posted on its website a 2025 template agreement for projects approved this year. The 2025 agreement template, for the first time, contains additional funding conditions that were not included in any of the grant application documents, and that the Airport was not aware of when it applied for funding. The new conditions are entirely unrelated to FAA grant programs. For example, the new FAA grant conditions would require the County to certify that it will "cooperate with and not impede" Federal officials in the enforcement of Federal immigration law (the "Immigration Condition") and would require the County to certify that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives "that violate any applicable Federal anti-discrimination laws" (the "DEI Condition"). Neither of these conditions appeared in prior FAA agreements.

11. In addition, on April 24, 2025, the Secretary of Transportation, Sean Duffy, sent a

Case No.: 2:25-CV-00814
DECLARATION OF BRIAN DRANZIK - 3

letter to transportation agencies nationwide, which purports to "provide a reminder" of funding recipients' statutory and contractual obligations. The Duffy Letter references the Immigration Condition and the DEI Condition. Regarding the Immigration Condition, it states that "declining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability. See 8 U.S.C. § 1324 and 8 U.S.C. § 1373." Regarding the DEI condition, it states "[w]hether or not described in neutral terms, any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called "diversity, equity, and inclusion," or "DEI," presumptively violates federal law.

12. The Milwaukee County Sheriff's Office is the primary local law enforcement presence at the Airport. The Immigration Condition does not define what it means for local law enforcement to "cooperate with and not impede" Federal immigration enforcement efforts, which raises concerns about the scope of the required "cooperation" and makes it difficult, if not impossible, for the County to determine if it is able to comply with this condition.

13. Similarly, the DEI Condition does not define what it means by "programs promoting diversity, equity, and inclusion (DEI) initiatives." Further, the Duffy letter states that even a policy "described in neutral terms" that is "designed to achieve" this undefined concept of DEI "presumptively violates federal law." This language makes it difficult, if not impossible, to determine what is required to comply with this condition.

14. If the County is denied access to over $33 million in federal funding this fiscal year, and another $24 million in funding next fiscal year, it will require the County to change course with respect to these planned infrastructure projects. The forced alternatives could include cancelling, delaying or modifying projects, where possible, or altering the financing plan for critical projects by replacing grant funds with bonds that will increase the costs of projects and impact what tenants and passengers pay to use the airport. Being forced to pursue any of these alternatives instead of obtaining the anticipated federal grant funding would result in immediate harm to the County and the Airport. The loss of federal funding would also

Case No.: 2:25-CV-00814
DECLARATION OF BRIAN DRANZIK - 4

materially impair the County's ability to fund capital projects over the long-term and to maintain its position as a major economic and employment driver in the region.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 9th day of July, 2025.

*Brian Dranzik*

Brian Dranzik, AAE, Airport Director
Milwaukee Mitchell International Airport

Case No.: 2:25-CV-00814
DECLARATION OF BRIAN DRANZIK - 5

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I served a true and correct copy of the foregoing document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 14th day of July, 2025.

/s/ Gabriela DeGregorio
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE - 1

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750