1

THE HONORABLE BARBARA J. ROTHSTEIN

2

3

4

5       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
6              AT SEATTLE

7   MARTIN LUTHER KING, JR.
    COUNTY, et al.,                          No. 2:25-cv-00814-BJR
8
                        Plaintiffs,          DECLARATION OF
9                                            PATRICK AUCH,
          v.                                 PROGRAM MANAGER
10                                           FOR THE TRANSPORTATION
    SCOTT TURNER in his official capacity    DEPARTMENT,
11  as Secretary of the U.S. Department of   CITY OF SAN DIEGO
    Housing and Urban Development, et al.,
12
13                      Defendants.

14

15      I, PATRICK AUCH, declare as follows:

16      1.      I have personal knowledge of the facts in this declaration based on information

17  provided to me in the performance of my job duties and my review of business records. If called

18  as a witness, I could and would testify competently to the matters set out below.

19      2.      I am currently the Program Manager of the Transportation Department (TD) for

20  the City of San Diego (City or San Diego). Previously, I was employed in various roles for the

21  City's TD, including Supervising Management Analyst, Senior Management Analyst, and

22  Associate Management Analyst. I have worked for the TD since 2016.

23      3.      The Transportation Department is responsible for the operation and maintenance

24  of San Diego's infrastructure in the public right of way, such as streets, sidewalks, and traffic

25  signals. The TD also performs numerous other functions, including traffic safety and service

26  evaluations and engineering analysis of traffic data; planning and coordinating work in the right

27

DECLARATION OF PATRICK AUCH - 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

of way; and keeping communities clean and safe through abatement and cleanup.

4.      Through its work, the TD builds out San Diego's multi-modal network to move people and goods, and maintains this network's right of way, which function to provide efficient and safe travel throughout the entire San Diego region for all modes of transit.

5.      As the eight-largest city in the United States, San Diego faces the challenge of maintaining over 6,600 miles of streets and alleys as well as 4,500 miles of sidewalks, in addition to certain segments of approximately 350 bridges within the City limits.

6.      In my position as Program Manager for the Transportation Department, I manage and supervise TD's federal grant applications and grant compliance for San Diego. For years, TD has worked with the U.S. Department of Transportation (DOT), primarily through its Federal Highway Administration (FHWA), and the California Department of Transportation (Caltrans), using federal funds to improve all aspects of San Diego's transportation system. Federal grants are an integral part of the TD's financial planning and budget. Not only do these grants provide critical funding for San Diego's project implementation, it enhances the TD's capacity to operate and maintain its infrastructure, while helping the TD to maximize all travel options.

7.      San Diego significantly depends on federal funding awarded by the FHWA. San Diego's TD is a recipient of approximately $200 million[1] in awarded and expected FHWA funding. Of this amount, around $128 million is in active grant awards and around $72 million is expected funding, in obligated grants or awarded but unobligated funds from FHWA.

8.      Almost all of San Diego's FHWA funding is passed through other government entities, including the California Department of Transportation and several others. In short, San

---

[1] While approximately $200 million in awarded and expected FHWA funding supports San Diego's TD, this amount does not reflect additional DOT funds that are relied upon by other City agencies and departments.

DECLARATION OF PATRICK AUCH - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Diego generally receives awarded FHWA funding through various federal programs from the State of California, pursuant to grant agreements between San Diego and the State specifying the type of work and amount of federal funds to be used for phases of City projects. Federal funding derives from numerous grant programs, some examples being the Bridge Investment Program (BIP), Safe Streets and Roads for All (SS4A) grant program, Highway Bridge Program (HBP), Highway Infrastructure Program (HIP), Highway Safety Improvement Program (HSIP), and Community Project Funding/Congressionally Directed Spending (CPF/CDS).

9.    For example, one of San Diego's projects for which it receives its largest source of federal funding through HBP is a complete overhaul of the West Mission Bay Drive Bridge, which was originally constructed in the 1950s. San Diego is a subrecipient, through Caltrans, of around $122 million in federal funding over years. This awarded funding occurred after Caltrans evaluated this bridge and classified it as functionally obsolete. With these funds, San Diego is replacing one four-lane bridge with two separate three-lane bridges. The project also includes road-widening, inclusion of a bike path, and environmental mitigation. Due to the popularity of this location, the bridge serves all San Diego residents and the millions of tourists that visit our beaches near West Mission Bay Drive. Currently, San Diego is owed approximately $12 million in federal reimbursements from DOT for eligible costs spent on this project.

10.    San Diego's TD has numerous other ongoing projects, all of which are funded through various federal programs from FHWA. These projects account for many millions in active federal grants, contributing to enhanced safety improvements, ranging from improved streets and widened roadways for improved traffic flow to bridge upgrades, construction of bike lanes, and many other aspects to maintain San Diego's transportation infrastructure.

11.    At least one of San Diego active FHWA grants is subject to newly imposed grant

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

conditions. One example is the SS4A grant program, of which San Diego is a direct recipient. The SS4A program is an infrastructure bill that supports regional and local initiatives through competitive grants to prevent roadway deaths and serious injuries. In fiscal year 2023, San Diego was awarded around $680,000 in federal funding from FHWA. These funds support San Diego's comprehensive speed management plan, which identifies areas on the high-injury network where speed is the leading collision factor as well as high pedestrian and bicyclist activity that would benefit from lower speed limits. San Diego has expended federal funds to evaluate and identify traffic-calming initiatives in neighborhoods with high pedestrian and bike activity. Funds also support a City program intended to quickly and efficiently enable safety projects on the high-injury network, ensuring public safety in historically disadvantaged communities.

12.    Recently, FHWA alerted City staff about executing an updated grant agreement for the SS4A grant program. In FHWA's proposed grant agreement, they incorporate updated "General Terms and Conditions Under the Fiscal Year 2023 Safe Streets and Roads for All Grant Program," which a representative of San Diego must acknowledge by signature. San Diego is in a tough position. It must decide in the coming weeks whether to sign this updated grant agreement, which imposes new federal grant conditions for these funds.

13.    Importantly, San Diego expects additional federal funding from FHWA for at least five other projects. Some of these projects have deadlines to execute new or revised sub-recipient grant agreements with Caltrans, incorporating new federal grant conditions.

14.    One key example is a San Diego project to rehabilitate the Palm Avenue/Interstate 805 Interchange Bridge, for which the City was awarded $24 million in federal funding through the Bridge Investment Program. The BIP is a program that provides funding for projects that replace, protect, preserve, and rehabilitate bridges to reduce the number of bridges in poor

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

condition or at risk of declining into poor condition. For San Diego specifically, this project will rehabilitate and preserve the 40-year-old overcrossing that is a key connector for the Otay Mesa community and is located a few miles from San Diego's international border with Mexico. The bridge currently serves approximately 38,000 vehicles per day, including about 750 freight trucks. Current delays caused by the state of this overcrossing has contributed to rising consumer costs and elevated long-term maintenance needs. According to the federal government under a prior administration, it estimated that this project would create approximately $30 million in benefits from reduced congestion and traffic delays. The modernization of this bridge will also increase its resiliency to earthquakes and provide safe access for all San Diego residents and tourists. Funding is vital and necessary as well for traffic improvements and safety.

15.    Because San Diego elected to use Caltrans as a passthrough agency in award administration for this $24 million FHWA grant, San Diego and Caltrans executed a subrecipient grant agreement in June 2024, which incorporates by reference a separate executed grant agreement between Caltrans and FHWA around the same time. Around April 2025, FHWA issued a revised version of its Competitive Grant Program General Terms and Conditions as well as FHWA Exhibits to Competitive Grant Agreements. *See* Exhibits A and B.  In response, around June 2025, Caltrans and FHWA executed a supplemental agreement which incorporates the 2025 FHWA General Terms and Conditions along with Exhibits. San Diego must now execute a revised subrecipient agreement with Caltrans, agreeing to incorporate the revised grant terms and conditions, in order to receive funding for this project.

16.    Another example is San Diego's award of approximately $32 million in federal funding through HBP for a project that will replace an existing two-lane bridge with a four-lane bridge at El Camino Real. The project will provide a structurally sound bridge over the San

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Dieguito River. The urgent need stems from recurring discharge from the River, which can potentially damage historically vulnerable surrounding areas that are prone to flooding during rainstorms. Without these funds, San Diego lacks much-needed support to alleviate floods and improve traffic and pedestrian flow to nearby coastal and recreational resources. San Diego now awaits to review and execute a subrecipient agreement with Caltrans for this project.

17.    Additionally, San Diego was awarded approximately $4.4 million through a HBP grant for a project that proposes to replace the existing southbound Fairmount Avenue Bridge over Adaline Drive with a single-span 120-foot pre-cast girder bridge. This updated bridge will include widened lanes, a widened shoulder with a Class II bike lane, an inner shoulder, and a barrier with a separated sidewalk for pedestrians. San Diego also plans to update the northbound side of the Fairmount Avenue Bridge. The project allows the City to replace and rehabilitate its public highway bridges over waterways and other topographical barriers, particularly when the State of California and FHWA have determined they are of significant importance. San Diego expects to execute a subrecipient grant agreement with Caltrans for this project.

18.    Further, San Diego is waiting to review a grant agreement for an award of $3.1 million in federal funds through CPF/CDS for the Downtown San Diego Mobility project. These funds will be used to convert Sixth Avenue and Beech Street into two-way Class IV protected bike lanes. It will also fund an expansion of bike lanes on select streets. The funds are necessary to implement safety upgrades for all residents within San Diego's downtown area. San Diego anticipates executing a subrecipient grant agreement with Caltrans for this as well.

19.    Finally, through CPF/CDS, San Diego was awarded around $4.1 million in federal funds for a project that will install a one-way protected cycle track along both directions of Gilman Drive. It will also include a continuous sidewalk along the west side of Gilman Drive

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

and improvements to street lighting, ADA accessibility, and traffic signals. San Diego anticipates executing a subrecipient grant agreement with Caltrans for the project later this year.

20.     The imminent possibility of being unable to execute any of these FHWA grants is creating fiscal uncertainty, which is impacting the Transportation Department's ability to plan in the short- and long-term as well as execute critical infrastructure-related transportation projects in a timely manner. In addition to the large, wide ranging impacts that would be caused by losing access to funding that is anticipated to be received, San Diego faces immediate harm of being unable to sign grant agreements for these vital local projects. And if any awarded funding is paused or terminated for any reason, San Diego will most likely be forced to divert funds from a budget that is already facing a $258 million deficit during the present fiscal year.

21.     Currently, San Diego awaits federal reimbursements in the amount of $10.3 million. These funds are owed to San Diego for eligible expenses that it has fronted on various projects. San Diego's TD continuously relies on promised federal dollars to pay staff, contractors, consultants, and construction costs associated with approved projects. And San Diego anticipates seeking additional federal funding due to its urgent need to maintain and improve its infrastructure, particularly when it faces a massive budget deficit.

/ / /

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

22.     The impact of losing any federal funds would contribute to further loss of life and injury on San Diego's roads, streets, bridges, and beyond. Ensuring San Diego's transportation system is safe for everyone, including residents and visitors, remains a critical part of retaining and growing our economy. Any disruption in federal funding will have an immediate and long-term impact on the safety and economic vitality of the entire San Diego region.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this __8th__ day of July, 2025 in San Diego, California.


_____
                    PATRICK AUCH

DECLARATION OF PATRICK AUCH - 8
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A

**FEDERAL HIGHWAY ADMINISTRATION**

**COMPETITIVE GRANT PROGRAM GENERAL TERMS AND CONDITIONS**

**Date: April 22, 2025**

# TABLE OF CONTENTS

GENERAL TERMS AND CONDITIONS ............................................................................ 6
Article 1 PURPOSE ........................................................................................................... 6
    1.1    Purpose ................................................................................................................. 6
Article 2 FHWA ROLE ...................................................................................................... 6
    2.1    Federal Highway Administration (FHWA) Responsibilities. ................................ 6
Article 3 RECIPIENT ROLE ............................................................................................. 6
    3.1    Statements on the Project .................................................................................... 6
    3.2    Statements on Authority and Capacity ................................................................ 6
    3.3    USDOT FHWA Reliance ..................................................................................... 7
    3.4    Project Delivery. .................................................................................................. 7
    3.5    Rights and Powers Affecting the Project. ............................................................ 7
    3.6    Subaward to Designated Subrecipient ................................................................. 8
    3.7    Designated Subrecipient Statements and Responsibilities ................................... 8
Article 4 AWARD AMOUNT, OBLIGATION, AND TIME PERIODS ................................. 8
    4.1    Federal Award Amount ....................................................................................... 8
    4.2    Federal Obligations. ............................................................................................ 8
    4.3    Budget Period. ..................................................................................................... 9
    4.4    Period of Performance. ...................................................................................... 10
Article 5 STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES ................... 10
    5.1    Notification Requirement .................................................................................. 10
    5.2    Scope and Statement of Work Changes ............................................................ 10
    5.3    Schedule Changes .............................................................................................. 10
    5.4    Budget Changes. ................................................................................................ 11
    5.5    FHWA Acceptance of Changes. ........................................................................ 12
Article 6 GENERAL REPORTING TERMS ...................................................................... 12
    6.1    Report Submission ............................................................................................ 12
    6.2    Alternative Reporting Methods ......................................................................... 12
Article 7 PROGRESS AND FINANCIAL REPORTING .................................................... 12
    7.1    Project Progress and Financial Reports and Recertifications. ............................ 12
    7.2    Final Progress Reports and Financial Information ............................................. 13
Article 8 PERFORMANCE REPORTING ......................................................................... 13
    8.1    Baseline Performance Measurement. ................................................................ 13
    8.2    Post-construction Performance Measurement. .................................................. 14
    8.3    Project Outcomes Report. .................................................................................. 14
    8.4    General Performance Measures ......................................................................... 14
    8.5    Performance Reporting Survival. ...................................................................... 15
Article 9 NONCOMPLIANCE AND REMEDIES .............................................................. 15
    9.1    Noncompliance Determinations. ....................................................................... 15
    9.2    Remedies. .......................................................................................................... 15
    9.3    Other Oversight Entities ................................................................................... 16
Article 10 AGREEMENT TERMINATION ....................................................................... 16
    10.1    FHWA Termination. ......................................................................................... 16
    10.2    Closeout Termination. ...................................................................................... 17
    10.3    Post-Termination Adjustments ......................................................................... 17
    10.4    Non-Terminating Events. .................................................................................. 17

10.5    Other Remedies ................................................................................ 18
Article 11 MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS
.......................................................................................................................... 18
11.1    Recipient Monitoring and Record Retention. .......................................... 18
11.2    Financial Records and Audits. ................................................................ 18
11.3    Internal Controls .................................................................................... 19
11.4    USDOT Record Access ........................................................................... 19
11.5    Title 23 Oversight Responsibilities ........................................................ 19
Article 12 CONTRACTING AND SUBAWARDS ............................................... 19
12.1    Minimum Wage Rates ............................................................................ 19
12.2    Buy America. ......................................................................................... 19
12.3    Small and Disadvantaged Business Requirements..................................... 19
12.4    Engineering and Design Services ............................................................ 20
12.5    Prohibition on Certain Telecommunications and Video Surveillance Services or
         Equipment. ........................................................................................... 20
12.6    Pass-through Entity Responsibilities ....................................................... 20
12.7    Subaward and Contract Authorization. .................................................... 20
Article 13 COSTS, PAYMENTS, AND UNEXPENDED FUNDS ......................... 20
13.1    Limitation of Federal Award Amount. ..................................................... 20
13.2    Projects Costs. ....................................................................................... 21
13.3    Timing of Project Costs. ......................................................................... 21
13.4    Recipient Recovery of Federal Funds ...................................................... 21
13.5    Unexpended Federal Funds ..................................................................... 21
13.6    Timing of Payments to the Recipient........................................................ 21
13.7    Payment Method. ................................................................................... 21
13.8    Information Supporting Expenditures........................................................ 22
13.9    Reimbursement Frequency ...................................................................... 22
Article 14 LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY.......... 22
14.1    Liquidation of Recipient Obligations........................................................ 22
Article 15 AGREEMENT MODIFICATIONS ..................................................... 23
15.1    Bilateral Modifications ........................................................................... 23
15.2    Unilateral Contact Modifications. ............................................................ 23
15.3    FHWA Unilateral Modifications. ............................................................. 23
15.4    Other Modifications................................................................................ 23
Article 16 Civil Rights and Title VI................................................................... 23
16.1    Title VI. ................................................................................................ 23
16.2    Legacy Infrastructure and Facilities. ....................................................... 24
Article 17 CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE .......... 24
17.1    Critical Infrastructure Security and Resilience........................................... 24
Article 18 FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL
POLICY REQUIREMENTS................................................................................ 25
18.1    Uniform Administrative Requirements for Federal Awards ....................... 25
18.2    Federal Law and Public Policy Requirements. ......................................... 25
18.3    Implementation of Executive Order 14025 .............................................. 25
18.4    Implementation of Executive Order 14173 .............................................. 25
18.5    Federal Freedom of Information Act. ....................................................... 26

18.6    History of Performance .................................................................................... 26
18.7    Whistleblower Protection.................................................................................. 26
18.8    External Award Terms and Obligations.............................................................. 26
18.9    Incorporated Certifications ............................................................................... 27
Article 19 ASSIGNMENT ............................................................................................... 27
19.1    Assignment Prohibited. .................................................................................... 27
Article 20 WAIVER ........................................................................................................ 27
20.1    Waivers............................................................................................................ 27
Article 21 ADDITIONAL TERMS AND CONDITIONS ................................................... 27
21.1    Effect of Urban or Rural Designation................................................................. 27
21.2    Disclaimer of Federal Liability.......................................................................... 28
21.3    Relocation and Real Property Acquisition. ........................................................ 28
21.4    Equipment Disposition. ................................................................................... 28
21.5    Environmental Review. .................................................................................... 28
21.6    Railroad Coordination ..................................................................................... 30
Article 22 MANDATORY AWARD INFORMATION ...................................................... 30
22.1    Information Contained in a Federal Award ....................................................... 30
22.2    Federal Award Identification Number. .............................................................. 30
22.3    Recipient's Unique Entity Identifier. ................................................................. 30
Article 23 CONSTRUCTION AND DEFINITIONS .......................................................... 31
23.1    Schedules ....................................................................................................... 31
23.2    Exhibits........................................................................................................... 31
23.3    Construction. ................................................................................................... 31
23.4    Integration. ...................................................................................................... 31
23.5    Definitions ....................................................................................................... 32
Article 24 AGREEMENT EXECUTION AND EFFECTIVE DATE ..................................... 32
24.1    Counterparts.................................................................................................... 32
24.2    Effective Date .................................................................................................. 32

## Index of Definitions

Environmental Review Entity .................................................................................................... 29
Federal Share ........................................................................................................................... 12
FHWA ......................................................................................................................................... 6
General Terms and Conditions ................................................................................................ 32
Grant ........................................................................................................................................ 32
Grant Amount .......................................................................................................................... 32
Grant Program ........................................................................................................................ 32
Program Statute ....................................................................................................................... 32
Project ...................................................................................................................................... 32
Project Closeout ...................................................................................................................... 17
Project Cost Savings ............................................................................................................... 11
Technical Application .............................................................................................................. 32
Title VI ..................................................................................................................................... 24

## GENERAL TERMS AND CONDITIONS

These General Terms and Conditions are incorporated by reference in this grant agreement under the Grant Program. The term "Recipient" is defined in this grant agreement. This grant agreement includes schedules A through H. The grant agreement may include special terms and conditions in grant agreement articles or schedules.

## ARTICLE 1
## PURPOSE

1.1    **Purpose.** The purpose of this award is to fund the eligible project defined in this grant agreement that has been selected to receive an award for the Grant Program. The parties will accomplish that purpose by achieving the following objectives:

(1)    timely completing the Project; and

(2)    ensuring that this award does not substitute for non-Federal investment in the Project, except as proposed in the Technical Application, as modified by schedule E.

## ARTICLE 2
## FHWA ROLE

2.1    **Federal Highway Administration (FHWA) Responsibilities.**

(a)    The FHWA is the operating administration under the United States Department of Transportation ("USDOT") responsible for the administration of the Grant Program, the approval and execution of this grant agreement, and any modifications to this grant agreement under section 15.1.

## ARTICLE 3
## RECIPIENT ROLE

3.1    **Statements on the Project.** The Recipient states that:

(1)    all material statements of fact in the Technical Application were accurate when that application was submitted; and

(2)    schedule E documents all material changes in the information contained in that application.

3.2    **Statements on Authority and Capacity.** The Recipient states that:

(1)     it has the authority to receive Federal financial assistance under this grant agreement;

(2)     it has the legal authority to complete the Project;

(3)     it has the capacity, including institutional, managerial, and financial capacity, to comply with its obligations under this grant agreement;

(4)     not less than the difference between the total eligible project costs listed in section 3 of schedule D and the Grant Amount listed in section 1 of schedule D is committed to fund the Project;

(5)     it has sufficient funds available to ensure that infrastructure completed or improved under this grant agreement will be operated and maintained in compliance with this agreement and applicable Federal law; and

(6)     the individual executing this grant agreement on behalf of the Recipient has authority to enter this grant agreement and make the statements in this article 3 and in section 18.9 on behalf of the Recipient.

**3.3     USDOT FHWA Reliance.** The Recipient acknowledges that:

(1)     the USDOT FHWA relied on statements of fact in the Technical Application to select the Project to receive this award;

(2)     the USDOT FHWA relied on statements of fact in both the Technical Application and this grant agreement to determine that the Recipient and the Project are eligible under the terms of the Notice of Funding Opportunity ("NOFO") in section 7 of schedule D.

(3)     the USDOT FHWA's selection of the Project to receive this award prevented awards under the NOFO to other eligible applicants.

**3.4     Project Delivery.**

(a) The Recipient shall complete the Project under the terms of this grant agreement.

(b) The Recipient shall ensure that the Project is financed, constructed, operated, and maintained in accordance with all Federal laws, regulations, and policies that are applicable to the Project.

**3.5     Rights and Powers Affecting the Project.**

(a) The Recipient shall not take or permit any action that deprive it of any rights or powers necessary to the Recipient's performance under this grant agreement without written approval of the FHWA.

(b) The Recipient shall act promptly, in a manner acceptable to the FHWA, to

acquire, extinguish, or modify any outstanding rights or claims of right of others that would interfere with the Recipient's performance under this grant agreement.

**3.6    Subaward to Designated Subrecipient.** If section 7 of schedule A identifies a Designated Subrecipient:

(1)    the Recipient hereby awards a subaward to the Designated Subrecipient for the purpose described in section 1.1;

(2)    the Recipient and the Designated Subrecipient may enter into a separate agreement, to which the FHWA is not a party, assigning responsibilities, including administrative and oversight responsibilities, among the Recipient and the Designated Subrecipient; and

(3)    for the purpose of 2 C.F.R. parts 200 and 1201, the Recipient is a pass-through entity.

**3.7    Designated Subrecipient Statements and Responsibilities.** If section 7 of schedule A identifies a Designated Subrecipient:

(1)    the Designated Subrecipient affirms all statements and acknowledgments that are attributed to the Recipient under sections 3.1 and 3.2; and

(2)    the Designated Subrecipient assumes the Recipient's reporting obligations under article 7.


# ARTICLE 4
# AWARD AMOUNT, OBLIGATION, AND TIME PERIODS


**4.1    Federal Award Amount.** The FHWA hereby awards a Grant to the Recipient in the amount listed in section 1 of schedule D as the Grant Amount.

**4.2    Federal Obligations.**

(a)    If the Federal Obligation Type identified in section 2 of schedule D is "Single," then this grant agreement obligates for the budget period the amount listed in section 1 of schedule D as the Grant Amount and sections 4.2(c)–4.2(h) do not apply to this grant agreement.

(b)    If the Federal Obligation Type identified in section 2 of schedule D is "Multiple," then an amount up to the Grant Amount listed in section 1 of schedule D will be obligated with one initial obligation and one or more subsequent, optional obligations, as described in sections 4.2(c)–4.2(h).

(c)    The Fund Obligation Table in section 2 of schedule D allocates the Grant among

separate portions of the Project for the purpose of the Federal obligation of funds. The scope of each portion of the Project that is identified in that table is described in the Technical Application, as modified by schedule E.

(d)  This grant agreement obligates for the budget period only for the amounts allocated in the Fund Obligation Table in section 2 of schedule D to the portion of the project described under "First Fund Obligation" in section 1 of schedule C.

(e)  This grant agreement does not obligate amounts allocated in the Fund Obligation Table in section 2 of schedule D to any portion of the project except the portion described under "First Fund Obligation" in section 1 of schedule C. The parties may obligate the amounts allocated to those portions of the Project only as described in section 4.2(f) or by modifying this grant agreement under article 15.

(f)  If the USDOT Payment System identified in section 5 of schedule A is "FMIS," then for each portion of the Project except the portion described under "First Fund Obligation" in section 1 of schedule C, the amount allocated in section 2 of schedule D to that portion of the Project is obligated if, not later than the statutory lapse date identified in this grant agreement as applicable to the Grant Program, the parties execute an instrument, in the form provided in Exhibit D, documenting that:

(1)  the FHWA determines that all applicable Federal requirements for obligating the amount are satisfied; and

(2)  the Recipient states that it is not required to request a modification of this grant agreement under article 5.

(g)  The Recipient shall not request reimbursement of costs for a portion of the Project described in section 1 of Schedule C except for the portion described under "First Fund Obligation", unless the amount allocated in section 2 of schedule D to that portion is obligated under section 4.2(f).

(h)  The Recipient acknowledges that:

(1)  the FHWA is not liable for payments for a portion of the Project described in section 1 of Schedule C except for the portion described under "First Fund Obligation", unless the amount allocated in section 2 of schedule D to that portion of the Project is obligated under section 4.2(f);

(2)  any portion of the Grant that is not obligated under this section 4.2 by the statutory lapse date identified in section 6 of schedule For those funds lapses on the day after that date and becomes unavailable for the Project; and

(3)  the FHWA may consider the failure to obligate funds by the statutory lapse date identified in section 6 of schedule F for those funds to be a basis for terminating this grant agreement under section 10.1.

**4.3    Budget Period.**

(a) If the Federal Obligation Type identified in section 1 of schedule C is "Single," then the budget period for this award begins on the effective date of this grant agreement and ends on the budget period end date that is listed in section 1 of schedule C or as determined in FMIS.

(b) If the Federal Obligation Type identified in section 1 of schedule C is "Multiple," then the first budget period for this award begins on the effective date of this grant agreement and the last budget period end date shall be no later than the end of the period of performance dated identified in section 4.4.

(c) In this grant agreement, "budget period" is used as defined at 2 C.F.R. 200.1.

**4.4    Period of Performance.**

(a) The period of performance for this award begins on the effective date of this grant agreement and ends on the period of performance end date that is listed in section 1 of schedule C.

(b) In this grant agreement, "period of performance" is used as defined at 2 C.F.R. 200.1.

**ARTICLE 5**
**STATEMENT OF WORK, SCHEDULE, AND BUDGET CHANGES**

**5.1    Notification Requirement.** The Recipient shall notify all FHWA representatives who are identified in section 4 of schedule A in writing within 30 calendar days of any change in circumstances or commitments that adversely affect the Recipient's plan to complete the Project. In that notification, the Recipient shall describe the change and what actions the Recipient has taken or plans to take to ensure completion of the Project. This notification requirement under this section 5.1 is separate from any requirements under this article 5 that the Recipient request modification of this grant agreement.

**5.2    Scope and Statement of Work Changes.** If the Project's activities differ from the activities described in the Technical Application, then the Recipient shall request a modification of this grant agreement in schedule E.

**5.3    Schedule Changes.** If one or more of the following conditions are satisfied, then the Recipient shall request a modification of this grant agreement to update schedule C:

(1)    a completion date for the Project or a portion of the Project is listed in section 2 of schedule C and the Recipient's estimate for that milestone changes to a date that is more than six months after the date listed in section 2 of schedule C;

(2)    a schedule change would require the budget period to continue after the budget period end date listed in section 1 of schedule C; and

(3)      a schedule change would require the period of performance to continue after the Period of Performance End Date listed in section 1 of schedule C.

For other schedule changes, the Recipient shall follow the applicable procedures of the FHWA and document the changes in writing.

**5.4      Budget Changes.**

(a) The Recipient acknowledges that if the cost of completing the Project increases:

(1)      that increase does not affect the Recipient's obligation under this grant agreement to complete the Project; and

(2)      the FHWA will not increase the amount of this award to address any funding shortfall.

(b) The Recipient shall request a modification of this grant agreement to update schedule D if, in comparing the Project's budget to the amounts listed in section 3 of schedule D:

(1)      the total "Non-Federal Funds" amount decreases; or

(2)      the total eligible Project costs amount decreases.

(c) For budget changes that are not identified in section 5.4(b), the Recipient shall follow the applicable procedures of the FHWA and document the changes in writing.

(d) If there are Project Cost Savings, then the Recipient may propose to the FHWA, in writing consistent with the FHWA's requirements, to include in this grant agreement specific additional activities that are within the scope of this award, as defined in section 1.1 and schedule B, and that the Recipient could complete with the Project Cost Savings.

In this grant agreement, "**Project Cost Savings**" means the difference between the actual eligible project costs and the total eligible project costs that are listed in section 3 of schedule D, but only if the actual eligible project costs are less than the total eligible project costs that are listed in section 3 of schedule D. There are no Project Cost Savings if the actual eligible project costs are equal to or greater than the total eligible project costs that are listed in section 3 of schedule D.

(e) If there are Project Cost Savings and either the Recipient does not make a proposal under section 5.4(d) or the FHWA does not accept the Recipient's proposal under section 5.4(d), then:

(1)      in a request under section 5.4(b), the Recipient shall reduce the Federal Share by the Project Cost Savings; and

(2)      if that modification reduces this award and the FHWA had reimbursed

costs exceeding the revised award, the Recipient shall refund to the FHWA the difference between the reimbursed costs and the revised award.

In this agreement, "**Federal Share**" means the sum of the total "Grant Funds" and "Other Federal Funds" amounts that are listed in section 3 of schedule D.

(f)  The Recipient acknowledges that amounts that are required to be refunded under section 5.4(e)(2) constitute a debt to the Federal Government that the FHWA may collect under 2 C.F.R. 200.346 and the Standards for Administrative Collection of Claims (31 C.F.R. part 901).

**5.5**    **FHWA Acceptance of Changes.** The FHWA may accept or reject modifications requested under this article 5, and in doing so may elect to consider only the interests of the Grant Program and the FHWA. The Recipient acknowledges that requesting a modification under this article 5 does not amend, modify, or supplement this grant agreement unless the FHWA accepts that modification request and the parties modify this grant agreement under section 15.1.


# ARTICLE 6
# GENERAL REPORTING TERMS


**6.1**    **Report Submission.** The Recipient shall send all reports required by this grant agreement to all FHWA contacts who are listed in section 4 of schedule A.

**6.2**    **Alternative Reporting Methods.** The FHWA may establish processes for the Recipient to submit reports required by this grant agreement, including electronic submission processes. If the Recipient is notified of those processes in writing, the Recipient shall use the processes required by the FHWA.


# ARTICLE 7
# PROGRESS AND FINANCIAL REPORTING


**7.1**    **Project Progress and Financial Reports and Recertifications.**

(a)  The Recipient will submit to FHWA project progress and financial reports and recertifications based on the frequency defined in the NOFO and section 8 of schedule A. If "Quarterly" or "Semiannual" are selected in section 8 of schedule A, then the reporting period and report submission due dates are defined in the table below.

| Quarterly Reporting Periods | | | Semiannual Reporting Periods | | |
|---|---|---|---|---|---|
| Reporting Period | | Due Date | Reporting Period | | Due Date |
| Quarter 1 | January 1 – March 31 | April 20 | Half Year 1 | January 1 – June 30 | July 20 |

| Quarter 2 | April 1 – June 30 | July 20 | Half Year 2 | July 1 – December 31 | January 20 of the next calendar year |
|---|---|---|---|---|---|
| Quarter 3 | July 1 – September 30 | October 20 | | | |
| Quarter 4 | October 1 – December 31 | January 20 of the next calendar year | | | |

If "Annual" is selected in section 8 of schedule A, then the reporting period is from January 1 to December 31 and the Recipient must submit reports to FHWA by January 20 of the next calendar year.

(b) If the date of this grant agreement is in the final month of a calendar year reporting period, then the Recipient shall submit the first Project Progress Report and Recertification in the second reporting period for the subsequent that begins after the date of this grant agreement.

(c) The Recipient shall submit to the FHWA a Project Progress Report and Recertification in the format and with the content described in exhibit C.

**7.2    Final Progress Reports and Financial Information.** No later than 120 days after the end of the period of performance, the Recipient shall submit:

(1)    a Final Project Progress Report and Recertification in the format and with the content described in exhibit C for each Project Progress Report and Recertification, including a final Federal Financial Report (SF-425); and

(2)    any other information required under FHWA award closeout procedures.

## ARTICLE 8
## PERFORMANCE REPORTING

**8.1    Baseline Performance Measurement.**

(a) The Recipient shall collect data for each performance measure that is identified in the Performance Measure Table in schedule G, accurate as of the Baseline Measurement Date that is identified in schedule G; and

(b) On or before the Baseline Report Date that is stated in schedule G, the Recipient shall submit a Baseline Performance Measurement Report that contains the data collected under this section 8.1 and a detailed description of the data sources, assumptions, variability, and estimated levels of precision for each performance measure that is

identified in the Performance Measure Table in schedule G.

**8.2    Post-construction Performance Measurement.**

(a) For each performance measure that is identified in the Performance Measure Table in schedule G with quarterly measurement frequency, for each of 12 consecutive calendar quarters, beginning with the first calendar quarter that begins after the Project substantial completion date, at least once during the quarter, the Recipient shall collect data for that performance measure;

(b) For each performance measure that is identified in the Performance Measure Table in schedule G with annual measurement frequency, the Recipient shall collect data for that performance measure on at least three separate occasions: (i) once during the four consecutive calendar quarters that begin after the Project substantial completion date; (ii) once during the fourth calendar quarter after the first collection; and (iii) once during the eighth calendar quarter after the first collection; and

(c) Not later than January 31 of each year that follows a calendar year during which data was collected under this section 8.2, the Recipient shall submit to the USDOT a Post-Project Performance Measurement Report containing the data collected under this section 8.2 in the previous calendar year and stating the dates when the data was collected.

(d) If an external factor significantly affects the value of a performance measure collected under this section 8.2, then the Recipient shall identify that external factor in the Post-Project Performance Measurement Report and discuss its influence on the performance measure.

**8.3    Project Outcomes Report.** The Recipient shall submit to the FHWA, not later than January 31 of the year that follows the final calendar year during which data was collected under section 8.2, a Project Outcomes Report that contains:

(1) a narrative discussion detailing project successes and the influence of external factors on project expectations;

(2) all baseline and post-Project performance measurement data that the Recipient reported in the Baseline Performance Measurement Report and the Post-Project Performance Measurement Reports; and

(3) an *ex post* examination of project effectiveness relative to the baseline data that the Recipient reported in the Baseline Performance Measurement Report.

**8.4    General Performance Measures.** For each performance measure that is enumerated in schedule G, the Recipient shall ensure that all data collections under this article 8 are completed in a manner consistent with the description, location, and other attributes associated with that performance measure in schedule G.

**8.5**    **Performance Reporting Survival.** The data collection and reporting requirements in this article 8 survive the termination of this agreement.

## ARTICLE 9
## NONCOMPLIANCE AND REMEDIES

**9.1**    **Noncompliance Determinations.**

(a) If the FHWA determines that the Recipient may have failed to comply with the United States Constitution, Federal law, or the terms and conditions of this grant agreement, the FHWA may notify the Recipient of a proposed determination of noncompliance. For the notice to be effective, it must be written and the FHWA must include an explanation of the nature of the noncompliance, describe a remedy, state whether that remedy is proposed or effective at an already determined date, and describe the process through and form in which the Recipient may respond to the notice.

(b) If the FHWA notifies the Recipient of a proposed determination of noncompliance under section 9.1(a), the Recipient may, not later than 7 calendar days after the notice, respond to that notice in the form and through the process described in that notice. In its response, the Recipient may:

    (1)    accept the remedy;

    (2)    acknowledge the noncompliance, but propose an alternative remedy; or

    (3)    dispute the noncompliance.

To dispute the noncompliance, the Recipient must include in its response documentation or other information supporting the Recipient's compliance.

(c) The FHWA may make a final determination of noncompliance only:

    (1)    after considering the Recipient's response under section 9.1(b); or

    (2)    if the Recipient fails to respond under section 9.1(b), after the time for that response has passed.

(d) To make a final determination of noncompliance, the FHWA must provide a notice to the Recipient that states the bases for that determination.

**9.2**    **Remedies.**

(a) If the FHWA makes a final determination of noncompliance under section 9.1, the FHWA may impose a remedy, including:

    (1)    additional conditions on the award;

(2)    any remedy permitted under 2 C.F.R. 200.339–200.340, including withholding of payments; disallowance of previously reimbursed costs, requiring refunds from the Recipient to the FHWA; suspension or termination of the award; or suspension and debarment under 2 C.F.R. part 180; or

(3)    any other remedy legally available.

(b) To impose a remedy, the FHWA must provide a written notice to the Recipient that describes the remedy, but the FHWA may make the remedy effective before the Recipient receives that notice.

(c) If the FHWA determines that it is in the public interest, the FHWA may impose a remedy, including all remedies described in section 9.2(a), before making a final determination of noncompliance under section 9.1. If it does so, then the notice provided under section 9.1(d) must also state whether the remedy imposed will continue, be rescinded, or modified.

(d) In imposing a remedy under this section 9.2 or making a public interest determination under section 9.2(c), the FHWA may elect to consider the interests of only the FHWA.

(e) The Recipient acknowledges that amounts that the FHWA requires the Recipient to refund to the FHWA due to a remedy under this section 9.2 constitute a debt to the Federal Government that the FHWA may collect under 2 C.F.R. 200.346 and the Standards for Administrative Collection of Claims (31 C.F.R. part 901).

**9.3    Other Oversight Entities.** Nothing in this article 9 limits any party's authority to report activity under this grant agreement to the United States Department of Transportation Inspector General or other appropriate oversight entities.

## ARTICLE 10
## AGREEMENT TERMINATION

**10.1    FHWA Termination.**

(a) The FHWA may terminate this grant agreement and all of its obligations under this agreement if any of the following occurs:

(1)    the Recipient fails to obtain or provide any non- Grant contribution or alternatives approved by the FHWA as provided in this grant agreement and consistent with schedule D;

(2)    a completion date for the Project or a component of the Project is listed in section 2 of schedule C and the Recipient fails to meet that milestone by six months after the date listed in section 2 of schedule C;

(3)     the Recipient fails to meet a milestone listed in section 3 of schedule C by the deadline date listed in that section for that milestone;

(4)     the Recipient fails to comply with the terms and conditions of this grant agreement, including a material failure to comply with the project schedule in schedule C even if it is beyond the reasonable control of the Recipient;

(5)     circumstances cause changes to the Project that the FHWA determines are inconsistent with the FHWA's basis for selecting the Project to receive a Grant; or

(6)     the FHWA determines that termination of this grant agreement is in the public interest.

(b) In terminating this grant agreement under this section, the FHWA may elect to consider only the interests of the FHWA.

(c) This section 10.1 does not limit the FHWA's ability to terminate this grant agreement as a remedy under section 9.2.

(d) The Recipient may request that the FHWA terminate this grant agreement under this section 10.1.

**10.2    Closeout Termination.**

(a) This grant agreement terminates on Project Closeout.

(b) In this grant agreement, "**Project Closeout**" means the date that the FHWA notifies the Recipient that the award is closed out. Under 2 C.F.R. 200.344, Project Closeout should occur no later than one year after the end of the period of performance.

**10.3    Post-Termination Adjustments.** The Recipient acknowledges that under 2 C.F.R. 200.345–200.346, termination of this grant agreement does not extinguish the FHWA's authority to disallow costs, including costs that the FHWA reimbursed before termination, and recover funds from the Recipient.

**10.4    Non-Terminating Events.**

(a) The end of the budget period described under section 4.3 does not terminate this grant agreement or the Recipient's obligations under this grant agreement.

(b) The end of the period of performance described under section 4.4 does not terminate this grant agreement or the Recipient's obligations under this grant agreement.

(c) The cancellation of funds under section 7 of schedule F does not terminate this grant agreement or the Recipient's obligations under this grant agreement.

10.5    **Other Remedies.** The termination authority under this article 10 supplements and does not limit the FHWA's remedial authority under article 9 or 2 C.F.R. part 200, including 2 C.F.R. 200.339–200.340.

## ARTICLE 11
## MONITORING, FINANCIAL MANAGEMENT, CONTROLS, AND RECORDS

**11.1    Recipient Monitoring and Record Retention.**

(a)  The Recipient shall monitor activities under this award, including activities under subawards and contracts, to ensure:

  (1)    that those activities comply with this grant agreement; and

  (2)    that funds provided under this award are not expended on costs that are not allowable under this award or not allocable to this award.

(b)  If the Recipient makes a subaward under this award, the Recipient shall monitor the activities of the subrecipient in compliance with 2 C.F.R. 200.332(e).

(c)  The Recipient shall retain records relevant to the award as required under 2 C.F.R. 200.334.

**11.2    Financial Records and Audits.**

(a)  The Recipient shall keep all project accounts and records that fully disclose the amount and disposition by the Recipient of the award funds, the total cost of the Project, and the amount or nature of that portion of the cost of the Project supplied by other sources, and any other financial records related to the project.

(b)  The Recipient shall keep accounts and records described under section 11.2(a) in accordance with a financial management system that meets the requirements of 2 C.F.R. 200.302–200.307, 2 C.F.R. 200 subpart F, and title 23, United States Code, and will facilitate an effective audit in accordance with 31 U.S.C. 7501–7506.

(c)  The Recipient shall separately identify expenditures under the fiscal year of the Grant Program in financial records required for audits under 31 U.S.C. 7501–7506. Specifically, the Recipient shall:

  (1)    list expenditures under that program separately on the schedule of expenditures of Federal awards required under 2 C.F.R. 200 subpart F, including the Federal Fiscal Year ("FY") in the program name; and

  (2)    list expenditures under that program on a separate row under Part II, Item 1 ("Federal Awards Expended During Fiscal Period") of Form SF-SAC, including the Federal Fiscal Year ("FY") in column c ("Additional Award

Identification").

**11.3    Internal Controls.** The Recipient shall establish and maintain internal controls as required under 2 C.F.R. 200.303.

**11.4    USDOT Record Access.** The FHWA may access Recipient records related to this award under 2 C.F.R. 200.337.

**11.5    Title 23 Oversight Responsibilities.** This award is subject to the oversight requirements of title 23, United States Code.

## ARTICLE 12
## CONTRACTING AND SUBAWARDS

**12.1    Minimum Wage Rates.** The Recipient shall include, in all contracts in excess of $2,000 for construction work to be performed on a Federal-aid highway (or work that is treated as if performed on a Federal-aid highway) under the Project that involves labor, provisions establishing minimum rates of wages, to be predetermined by the United States Secretary of Labor, in accordance with 23 U.S.C. 113, as applicable, that contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

**12.2    Buy America.**

(a) Steel, iron, and manufactured products used in the Project are subject to 23 U.S.C. 313, as implemented by the FHWA. The Recipient acknowledges that this grant agreement is neither a waiver of 23 U.S.C. 313(a) nor a finding under 23 U.S.C. 313(b).

(b) Construction materials used in the Project are subject to the domestic preference requirement at § 70914 of the Build America, Buy America Act, Pub. L. No. 117-58, div. G, tit. IX, subtit. A, 135 Stat. 429, 1298 (2021), as implemented by OMB, USDOT, and FHWA. The Recipient acknowledges that this grant agreement is neither a waiver of § 70914(a) nor a finding under § 70914(b).

(c) Under 2 C.F.R. 200.322, as appropriate and to the extent consistent with law, the Recipient should, to the greatest extent practicable under this award, provide a preference for the purchase, acquisition, or use of goods, products, or materials produced in the United States (including but not limited to iron, aluminum, steel, cement, and other manufactured products). The Recipient shall include the requirements of 2 C.F.R. 200.322 in all subawards including all contracts and purchase orders for work or products under this award.

**12.3    Small and Disadvantaged Business Requirements.**

(a) If any funds under this award are administered by or through a State Department of Transportation, the Recipient shall expend those funds in compliance with the requirements at 49 C.F.R. part 26, including any amendments thereto.

(b) If any funds under this award are not administered by or through a State Department of Transportation, the Recipient shall expend those funds in compliance with the requirements at 2 C.F.R. 200.321, including any amendments thereto.

12.4    **Engineering and Design Services.** As applicable, the Recipient shall award each contract or sub- contract for program management, construction management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping, or related services with respect to the Project in the same manner that a contract for architectural and engineering services that is negotiated under the Brooks Act, 40 U.S.C. 1101-1104 as implemented in 23 U.S.C. 112(b)(2), or an equivalent qualifications-based requirement prescribed for or by the Recipient and approved in writing by the USDOT.

12.5    **Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment.** The Recipient acknowledges that Section 889 of Pub. L. No. 115-232 and 2 C.F.R. 200.216 prohibit the Recipient and all subrecipients from procuring or obtaining certain telecommunications and video surveillance services or equipment under the Grant award.

12.6    **Pass-through Entity Responsibilities.** If the Recipient makes a subaward under the Grant award, the Recipient shall comply with the requirements on pass-through entities under 2 C.F.R. parts 200 and 1201, including 2 C.F.R. 200.331–200.333.

12.7    **Subaward and Contract Authorization.**

(a) If the FHWA Office for Subaward and Contract Authorization identified in section 6 of schedule A is "FHWA Division," then the Recipient shall comply with subaward and contract authorization requirements under 23 C.F.R chapter I.

(b) If the FHWA Office for Subaward and Contract Authorization identified in section 6 of schedule A is "FHWA Office of Acquisition and Grants Management," then the Recipient must follow the requirements in 2 C.F.R. 200.308, 2 C.F.R. 200.333, and 23 C.F.R. 172, as applicable. Approvals under 2 C.F.R. 200.308(f)(6) do not apply to the procurement of goods and services.


**ARTICLE 13**
**COSTS, PAYMENTS, AND UNEXPENDED FUNDS**


13.1    **Limitation of Federal Award Amount.** Under the Grant Program award, the FHWA shall not provide funding greater than the amount obligated under section 4.2, and FMIS as applicable. The Recipient acknowledges that the FHWA is not liable for

payments exceeding that amount, and the Recipient shall not request reimbursement of costs exceeding that amount.

**13.2    Projects Costs.** The Grant Program award is subject to the cost principles at 2 C.F.R. 200 subpart E, including provisions on determining allocable costs and determining allowable costs.

**13.3    Timing of Project Costs.**

(a) The Recipient shall not charge to the Grant Program award costs that are incurred after the budget period.

(b) Except as permitted under section 13.3(d), the Recipient shall not charge to the Grant award costs that were incurred before the date of this grant agreement.

(c) The execution of this grant agreement will terminate and supersede any previous FHWA approval for the Recipient to incur costs under the Grant Program award for the Project. Section 4 of schedule D is the exclusive FHWA approval of costs incurred before the date of this grant agreement.

(d) If section 4 of schedule D identifies an advance construction authorization under 23 U.S.C. 115 or identifies a pre-award approval under 2 C.F.R. 200.458, then the Recipient may charge to the Grant Program award, for payment from the Grant Program grant or other Federal amounts, costs that were incurred before the date of this grant agreement, were consistent with that authorization, and would have been allowable if incurred during the budget period.

**13.4    Recipient Recovery of Federal Funds.** The Recipient shall make all reasonable efforts, including initiating litigation, if necessary, to recover Federal funds if the FHWA determines, after consultation with the Recipient, that those funds have been spent fraudulently, wastefully, or in violation of Federal laws, or misused in any manner under this award. The Recipient shall not enter a settlement or other final position, in court or otherwise, involving the recovery of funds under the Grant award unless approved in advance in writing by the FHWA.

**13.5    Unexpended Federal Funds.** Any Federal funds that are awarded at section 4.1 but not expended on allocable, allowable costs remain the property of the United States.

**13.6    Timing of Payments to the Recipient.**

(a) Reimbursement is the payment method for the Grant Program.

(b) The Recipient shall not request reimbursement of a cost before the Recipient has entered into an obligation for that cost.

**13.7    Payment Method.**

(a) If the USDOT Payment System identified in section 5 of schedule A is "FMIS," then

the Recipient shall follow FMIS procedures to request and receive reimbursement payments under this award.

(b) If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then the Recipient shall use the DELPHI eInvoicing System to request reimbursement under this award unless the FHWA agreement officer provides written approval for the Recipient to use a different request and payment method.

(c) The FHWA may deny a payment request that is not submitted using the method identified in this section 13.7.

**13.8   Information Supporting Expenditures.**

(a) If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then when requesting reimbursement of costs incurred or credit for cost share incurred, the Recipient shall electronically submit the SF 271 (Outlay Report and Request for Reimbursement for Construction Programs), shall identify the Federal share and the Recipient's share of costs, and shall submit supporting cost detail to clearly document all costs incurred. As supporting cost detail, the Recipient shall include a detailed breakout of all costs incurred, including direct labor, indirect costs, other direct costs, and travel.

(b) If the Recipient submits a request for reimbursement that the FHWA determines does not include or is not supported by sufficient detail, the FHWA may deny the request or withhold processing the request until the Recipient provides sufficient detail.

**13.9   Reimbursement Frequency.** If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then the Recipient shall not request reimbursement more frequently than monthly.

# ARTICLE 14
# LIQUIDATION, ADJUSTMENTS, AND FUNDS AVAILABILITY

**14.1   Liquidation of Recipient Obligations.**

(a) The Recipient shall liquidate all obligations of award funds under this grant agreement not later than the earlier of (1) 120 days after the end of the period of performance or (2) the statutory funds cancellation date identified in section 7 of schedule F.

(b) Liquidation of obligations and adjustment of costs under the project-specific agreement follow the requirements of 2 C.F.R. 200.344–200.346.

## ARTICLE 15
## AGREEMENT MODIFICATIONS

**15.1    Bilateral Modifications.** The parties may amend, modify, or supplement this grant agreement by mutual agreement in writing signed by the FHWA and the Recipient. Either party may request to amend, modify, or supplement this grant agreement by written notice to the other party.

**15.2    Unilateral Contact Modifications.**

(a)  The Recipient may update the contacts who are listed in section 3 of schedule A by written notice to all of the FHWA contacts who are listed in section 4 of schedule A.

(b)  The FHWA may update the contacts who are listed in section 4 of schedule A by written notice to all of the Recipient contacts who are listed in section 3 of schedule A.

**15.3    FHWA Unilateral Modifications.**

(a)  The FHWA may unilaterally modify this grant agreement to comply with Federal law, including the Program Statute.

(b)  To unilaterally modify this grant agreement under this section 15.3, the FHWA must provide a notice to the Recipient that includes a description of the modification and state the date that the modification is effective.

**15.4    Other Modifications.** The parties shall not amend, modify, or supplement this grant agreement except as permitted under sections 15.1, 15.2, or 15.3. If an amendment, modification, or supplement is not permitted under section 15.1, not permitted under section 15.2, and not permitted under section 15.3, it is void.

## ARTICLE 16
## CIVIL RIGHTS AND TITLE VI

**16.1    Title VI.**

(a)   The purpose of sections 16.1(b)-16.1(c) is to ensure that the Recipient has a plan to comply with Title VI and 49 C.F.R. part 21, including any amendments thereto.

(b) If the Recipient is a State DOT recipient of apportioned (formula) Federal-aid highway funding or a non-State DOT who has received other Federal funds and has a current Title VI Plan on file with the FHWA, then the Recipient shall submit to the FHWA before signing this grant agreement documentation showing that the Recipient has a current Title VI Plan on file with FHWA.

(c) If the Recipient is a non-State DOT and does not have a current Title VI Plan on file with the FHWA then as described in chapter II, section 2 of DOT Order 1000.12C, including any amendments or updates thereto, FHWA must complete a Title VI Assessment of the Recipient before entering this grant agreement. Until DOT guidance on conducting such an assessment is finalized, FHWA may rely on the date of Title VI assurances provided with the signing of the grant agreement.

(d) In this section 12.1, **"Title VI"** means Title VI of the Civil Rights Act of 1964, Pub. L. No. 88-352 (codified at 42 U.S.C. 2000d to 2000d-4a).

### 16.2    Legacy Infrastructure and Facilities.

In furtherance of the Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336 (codified at 42 U.S.C. 12101-12213), and Section 504 of the Rehabilitation Act of 1973, Pub. L. No. 93-112 (codified at 29 U.S.C. 794), not later than one year after the date of this agreement, the Recipient shall develop a plan to address any legacy infrastructure or facilities that are not compliant with ADA standards and are involved in, or closely associated with, the Project. Consistent with 49 C.F.R. part 27, even in the absence of prior discriminatory practice or usage, a Recipient administering a program or activity receiving Federal financial assistance is expected to take action to ensure that no person is excluded from participation in or denied the benefits of the program or activity on the basis of disability.

# ARTICLE 17
# CRITICAL INFRASTRUCTURE SECURITY AND RESILIENCE

### 17.1    Critical Infrastructure Security and Resilience.

(a) Consistent with Presidential Policy Directive 21, "Critical Infrastructure Security and Resilience" (Feb. 12, 2013), and the National Security Presidential Memorandum on Critical Infrastructure Security and Resilience (NSM-22), the Recipient shall consider physical and cyber security and resilience in planning, design, and oversight of the Project.

(b) If the Security Risk Designation in section 3 of schedule F is "Elevated," then, not later that than two years after the date of this agreement, the Recipient shall submit to the FHWA a report that:

   (1)    identifies a cybersecurity Point of Contact for the transportation infrastructure being improved in the Project;

   (2)    summarizes or contains a cybersecurity incident reporting plan for the transportation infrastructure being improved in the Project;

   (3)    summarizes or contains a cybersecurity incident response plan for the transportation infrastructure being improved in the Project;

(4)     documents the results of a self-assessment of the Recipient's cybersecurity posture and capabilities; and

(5)     describes any additional actions that the Recipient has taken to consider or address cybersecurity risk of the transportation infrastructure being improved in the Project.

## ARTICLE 18
## FEDERAL FINANCIAL ASSISTANCE, ADMINISTRATIVE, AND NATIONAL POLICY REQUIREMENTS

**18.1    Uniform Administrative Requirements for Federal Awards.** The Recipient shall comply with the obligations on non-Federal entities under 2 C.F.R. parts 200 and 1201.

**18.2    Federal Law and Public Policy Requirements.**

(a) The Recipient shall ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those protecting free speech, religious liberty, public welfare, the environment, and prohibiting discrimination; and the Recipient will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law.

(b) The failure of this grant agreement to expressly identify Federal law applicable to the Recipient or activities under this grant agreement does not make that law inapplicable.

**18.3    Implementation of Executive Order 14025.** Consistent with Executive Order 14025, "Worker Organizing and Empowerment" (Apr. 26, 2021), Schedule H, Labor and Work, documents the consideration of job quality and labor rights, standards, and protections related to the Project.

**18.4    Implementation of Executive Order 14173**

(a) Pursuant to Section (3)(b)(iv)(A), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, the Recipient agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

(b) Pursuant to Section (3)(b)(iv)(B), Executive Order 14173, Ending Illegal Discrimination And Restoring Merit-Based Opportunity, by entering into this agreement, the Recipient certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal

anti-discrimination laws.

**18.5    Federal Freedom of Information Act.**

(a) The FHWA is subject to the Freedom of Information Act, 5 U.S.C. 552.

(b) The Recipient acknowledges that the Technical Application and materials submitted to the FHWA by the Recipient related to this grant agreement may become FHWA records subject to public release under 5 U.S.C. 552.

**18.6    History of Performance.** Under 2 C.F.R 200.206, any Federal agency may consider the Recipient's performance under this grant agreement, when evaluating the risks of making a future Federal financial assistance award to the Recipient.

**18.7    Whistleblower Protection.**

(a) The Recipient acknowledges that it is a "grantee" within the scope of 41 U.S.C. 4712, which prohibits the Recipient from taking certain actions against an employee for certain disclosures of information that the employee reasonably believes are evidence of gross mismanagement of the Grant Program award, gross waste of Federal funds, or a violation of Federal law related this this award.

(b) The Recipient shall inform its employees in writing of the rights and remedies provided under 41 U.S.C. 4712, in the predominant native language of the workforce.

**18.8    External Award Terms and Obligations.**

(a) In addition to this document and the contents described in article 25 this grant agreement includes the following additional terms as integral parts:

    (1) Appendix A to 2 C.F.R. part 25: System for Award Management and Universal Identifier Requirements;

    (2) Appendix A to 2 C.F.R. part 170: Reporting Subawards and Executive Compensation;

    (3) 2 C.F.R. part 175: Award Term for Trafficking in Persons; and

    (4) Appendix XII to 2 C.F.R. part 200: Award Term and Condition for Recipient Integrity and Performance Matters.

(b) The Recipient shall comply with:

    (1) 49 C.F.R. part 20: New Restrictions on Lobbying;

    (2) 49 C.F.R. part 21: Nondiscrimination in Federally-Assisted Programs of the Department of Transportation—Effectuation of Title VI of the Civil Rights Act of 1964;

(3)    49 C.F.R. part 27: Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance;

(4)    23 C.F.R. Chapter 1: Federal Highway Administration, Department of Transportation as, applicable to the Recipient.

(5)    Subpart B of 49 C.F.R. part 32: Governmentwide Requirements for Drug-free Workplace (Financial Assistance).

**18.9**    **Incorporated Certifications.** The Recipient makes the statements in the following certifications, which are incorporated by reference:

(1)    Appendix A to 49 C.F.R. part 20 (Certification Regarding Lobbying).


**ARTICLE 19**
**ASSIGNMENT**


**19.1**    **Assignment Prohibited.** The Recipient shall not transfer to any other entity any discretion granted under this grant agreement, any right to satisfy a condition under this grant agreement, any remedy under this grant agreement, or any obligation imposed under this grant agreement.


**ARTICLE 20**
**WAIVER**


**20.1**    **Waivers.**

(a) A waiver of a term of this grant agreement granted by the FHWA will not be effective unless it is in writing and signed by an authorized representative of the FHWA.

(b) A waiver of a term of this grant agreement granted by the FHWA on one occasion will not operate as a waiver on other occasions.

(c) If the FHWA fails to require strict performance of a term of this grant agreement, fails to exercise a remedy for a breach of this grant agreement, or fails to reject a payment during a breach of this grant agreement, that failure does not constitute a waiver of that term or breach.


**ARTICLE 21**
**ADDITIONAL TERMS AND CONDITIONS**


**21.1**    **Effect of Urban or Rural Designation.** As applicable to the Grant Program, based on information that the Recipient provided to the FHWA, including the Technical

Application, if section 1 of schedule F designates the Grant award as an urban award or a rural award, as defined in the NOFO, then the Recipient shall comply with the requirements that accompany that designation on minimum award size, geographic location, and cost sharing.

**21.2    Disclaimer of Federal Liability.** The FHWA shall not be responsible or liable for any damage to property or any injury to persons that may arise from, or be incident to, performance or compliance with this grant agreement.

**21.3    Relocation and Real Property Acquisition.**

(a) The Recipient shall comply with the land acquisition policies in 49 C.F.R. part 24 subpart B and shall pay or reimburse property owners for necessary expenses as specified in that subpart.

(b) The Recipient shall provide a relocation assistance program offering the services described in 49 C.F.R. part 24 subpart C and shall provide reasonable relocation payments and assistance to displaced persons as required in 49 C.F.R. part 24 subparts D–E.

(c) The Recipient shall make available to displaced persons comparable replacement dwellings in accordance with 49 C.F.R. part 24.

**21.4    Equipment Disposition.**

(a) In accordance with 2 C.F.R. 200.313 and 1201.313, if the Recipient, a Designated Subrecipient, or a subrecipient acquires equipment under the Grant Program award, then when that equipment is no longer needed for the Project:

    (1)    if the entity that acquired the equipment is a State, the State shall dispose of that equipment in accordance with State laws and procedures; and

    (2)    if the entity that acquired the equipment is an Indian Tribe, the Indian Tribe shall dispose of that equipment in accordance with tribal laws and procedures. If such laws and procedures do not exist, Indian Tribes must follow the guidance in 2 C.F.R. 200.313; and

    (3)    if the entity that acquired the equipment is neither a State nor an Indian Tribe, that entity shall request disposition instructions from the FHWA.

(b) In accordance with 2 C.F.R. 200.443(d), the distribution of the proceeds from the disposition of equipment must be made in accordance with 2 C.F.R. 200.310-200.316 and 2 C.F.R. 1201.313.

(c) The Recipient shall ensure compliance with this section 21.4 for all tiers of subawards under the Grant Program award.

**21.5    Environmental Review.**

(a) In this section, "**Environmental Review Entity**" means:

    (1)    if the Project is located in a State that has assumed responsibilities for environmental review activities under 23 U.S.C. 326 or 23 U.S.C. 327 and the Project is within the scope of the assumed responsibilities, the State; and

    (2)    for all other cases, the FHWA.

(b) Except as authorized under section 21.5(c), the Recipient shall not begin final design; acquire real property, construction materials, or equipment; begin construction; or take other actions that represent an irretrievable commitment of resources for the Project unless and until:

    (1)    the Environmental Review Entity complies with the National Environmental Policy Act, 42 U.S.C. 4321 et seq. and any other applicable environmental laws and regulations; and

    (2)    if the Environmental Review Entity is not the Recipient, the Environmental Review Entity provides the Recipient with written notice that the environmental review process is complete.

(c) If the Recipient is using procedures for early acquisition of real property under 23 C.F.R. 710.501 or hardship and protective acquisitions of real property 23 C.F.R. 710.503, the Recipient shall comply with 23 C.F.R. 771.113(d)(1).

(d) The Recipient acknowledges that:

    (1)    the Environmental Review Entity's actions under section 21.5(a) depend on the Recipient conducting necessary environmental analyses and submitting necessary documents to the Environmental Review Entity; and

    (2)    applicable environmental statutes and regulation may require the Recipient to prepare and submit documents to other Federal, State, and local agencies.

(e) Consistent with 23 C.F.R. 771.105(a), to the extent practicable and consistent with Federal law, the Recipient shall coordinate all environmental investigations, reviews, and consultations as a single process.

(f) The activities described in schedule B and other information described in this grant agreement may inform environmental decision-making processes, but the parties do not intend this grant agreement to document the alternatives under consideration under those processes. If a build alternative is selected that does not align with schedule B or other information in this grant agreement, then:

    (1)    the parties may amend the grant agreement under section 15.1 for consistency with the selected build alternative; or

(2)    if the FHWA determines that the condition at section 10.1(a)(5) is satisfied, the FHWA may terminate this grant agreement under section 10.1(a)(5).

(g)  The Recipient shall complete any mitigation activities described in the environmental document or documents for the Project, including the terms and conditions contained in the required permits and authorizations for the Project.

**21.6    Railroad Coordination.** If section 3 of schedule C includes one or more milestones identified as a "Railroad Coordination Agreement," then for each of those milestones, the Recipient shall enter a standard written railroad coordination agreement, consistent with 23 C.F.R. 646.216(d), no later than the deadline date identified for that milestone, with the identified railroad for work and operation within that railroad's right-of-way.

## ARTICLE 22
## MANDATORY AWARD INFORMATION

**22.1    Information Contained in a Federal Award.** For 2 C.F.R. 200.211

(1)    the "Federal Award Date" is the date of this grant agreement, as defined under section 24.2;

(2)    the "Assistance Listings Number" is provided in section 7 of schedule D; and

(3)    this award is not for research and development.

**22.2    Federal Award Identification Number.**

(a)  The Federal Award Identification Number ("FAIN") will be generated when the FHWA authorizes the project in FMIS. If the Recipient is a State DOT, they acknowledge that they have access to FMIS and can retrieve the FAIN from FMIS. If the Recipient is a non-State DOT, they acknowledge that the FAIN is on the FMIS project authorization.

**22.3    Recipient's Unique Entity Identifier.**

(a)  If the USDOT Payment System identified in section 5 of schedule A is "FMIS," then the Recipient's Unique Entity Identifier, as defined at 2 C.F.R. 25.400, is available in FMIS or GrantSolutions, as applicable. The Recipient acknowledges that it has access to FMIS or GrantSolutions and can retrieve the unique entity identifier from FMIS or GrantSolutions, as applicable.

(b)  If the USDOT Payment System identified in section 5 of schedule A is "DELPHI eInvoicing," then the Recipient's Unique Entity Identifier, as defined at 2 C.F.R. 25.400, is listed on page 1, line 4 of the Non-State DOT Recipient Signature Page.

**ARTICLE 23**
**CONSTRUCTION AND DEFINITIONS**

**23.1    Schedules.** This grant agreement includes the following schedules as integral parts:

| | |
|---|---|
| Schedule A | Administrative Information |
| Schedule B | Project Activities |
| Schedule C | Award Dates and Project Schedule |
| Schedule D | Award and Project Financial Information |
| Schedule E | Project Changes |
| Schedule F | Grant Program Designations |
| Schedule G | Grant Performance Measurement Information |
| Schedule H | Labor and Work |

**23.2    Exhibits.** The following exhibits, which are located in the document titled "Federal Highway Administration Exhibits to Competitive Grant Agreements", and available at https://www.fhwa.dot.gov/pgc/, are part of this grant agreement.

| | |
|---|---|
| Exhibit A | Applicable Federal Laws and Regulations |
| Exhibit B | Additional Standard Terms |
| Exhibit C | Project Progress Reports and Recertifications: Format and Content |
| Exhibit D | Form for Subsequent Obligation of Funds |

**23.3    Construction.**

(a) In these General Terms and Conditions:

(1)    unless expressly specified, a reference to a section or article refers to that section or article in these General Terms and Conditions;

(2)    a reference to a section or other subdivision of a schedule listed in section 23.1 will expressly identify the relevant schedule; and

(3)    there are no references to articles or sections in this grant agreement portions of this grant agreement that are not contained in schedules listed in section 23.1.

(b) If a provision in these General Terms and Conditions or the exhibits conflicts with a provision in this grant agreement, then this grant agreement prevails. If a provision in the exhibits conflicts with a provision in these General Terms and Conditions, then the provision in these General Terms and Conditions prevails.

**23.4    Integration.** This grant agreement constitutes the entire agreement of the parties relating to the Grant Program and awards under that program and supersedes any previous agreements, oral or written, relating to the Grant Program and awards under that program.

**23.5    Definitions.** In this grant agreement,, the following definitions apply:

"**General Terms and Conditions**" means this document, including articles 1–24.

"**Grant**" means an award of Federal Highway Administration grant program funds that were made available under the Notice of Funding Opportunity ("NOFO") identified in section 7 of schedule D.

"**Grant Amount**" means the amount of the grant funds awarded to the Recipient in section 1 of schedule D.

"**Grant Program**" means the grant program on the title page of Schedules A to H to the Grant Agreement.

"**Program Statute**" means the collective statutory text in schedule F.

"**Project**" means the project proposed in the Technical Application, as modified by the negotiated provisions of this grant agreement, including schedules A to H.

"**Technical Application**" means the application identified in section 1 of schedule A, including Standard Form 424 and all information and attachments submitted with that form through Grants.gov.

## ARTICLE 24
## AGREEMENT EXECUTION AND EFFECTIVE DATE

**24.1    Counterparts.** This grant agreement may be executed in counterparts, which constitute one document. The parties intend each countersigned original to have identical legal effect.

**24.2    Effective Date.** This grant agreement will become effective when all parties have signed it. The date of this grant agreement will be the date this grant agreement is signed by the last party to sign it. This instrument constitutes a Grant when the FHWA's authorized representative signs it.

# EXHIBIT B

**FEDERAL HIGHWAY ADMINISTRATION**

**EXHIBITS TO COMPETITIVE GRANT AGREEMENTS**


**Date:  April 16, 2025**

# EXHIBIT A
## APPLICABLE FEDERAL LAWS AND REGULATIONS

By entering into this grant agreement under the grant program on the title page of Schedules A to H to the Grant Agreement the Recipient assures and certifies, with respect to this Grant, that it will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Project. Performance under this grant agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Recipient and any applicable sub-recipients. The applicable provisions to this grant agreement include, but are not limited to, the following:

**General Federal Legislation**
   a. Davis-Bacon Act – 40 U.S.C. 3141, et seq., as applicable under 23 U.S.C. 113
   b. Federal Fair Labor Standards Act – 29 U.S.C. 201, et seq.
   c. Hatch Act – 5 U.S.C. 1501, et seq.
   d. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 – 42 U.S.C. 4601, et seq.
   e. National Historic Preservation Act of 1966 - Section 106 – 54 U.S.C. 306108
   f. Archeological and Historic Preservation Act of 1974 – 54 U.S.C. 312501, et seq.
   g. Native American Graves Protection and Repatriation Act – 25 U.S.C. 3001, et seq.
   h. Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. 7401, et seq.
   i. Section 404 of the Clean Water Act, as amended – 33 U.S.C. 1344
   j. Section 7 of the Endangered Species Act, P.L. 93-205, as amended – 16 U.S.C. 1536
   k. Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. 1451, et seq.
   l. Flood Disaster Protection Act of 1973 - Section 102(a) – 42 U.S.C. 4012a
   m. Age Discrimination Act of 1975 – 42 U.S.C. 6101, et seq.
   n. American Indian Religious Freedom Act, P.L. 95-341, as amended
   o. Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.
   p. The Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. 4541, et seq.
   q. Sections 523 and 527 of the Public Health Service Act of 1912, as amended – 42 U.S.C. 290dd through 290dd-2
   r. Architectural Barriers Act of 1968 – 42 U.S.C. 4151, et seq.
   s. Power Plant and Industrial Fuel Use Act of 1978, P.L. 100-42 - Section 403 – 42 U.S.C. 8373
   t. Contract Work Hours and Safety Standards Act – 40 U.S.C. 3701, et seq.
   u. Copeland Anti-kickback Act, as amended – 18 U.S.C. 874 and 40 U.S.C. 3145
   v. National Environmental Policy Act of 1969 – 42 U.S.C. 4321, et seq.
   w. Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. 1271, et seq.
   x. Federal Water Pollution Control Act, as amended – 33 U.S.C. 1251-1376
   y. Single Audit Act of 1984 – 31 U.S.C. 7501, et seq.
   z. Americans with Disabilities Act of 1990 – 42 U.S.C. 12101, et seq.
   aa. Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681 through 1683 and 1685 through 1687
   bb. Section 504 of the Rehabilitation Act of 1973, as amended – 29 U.S.C. 794

cc. Title VI of the Civil Rights Act of 1964 – 42 U.S.C. 2000d, et seq.
dd. Title IX of the Federal Property and Administrative Services Act of 1949 – 40 U.S.C. 1101 -1104, 541, et seq.
ee. Limitation on Use of Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. 1352
ff. Freedom of Information Act – 5 U.S.C. 552, as amended
gg. Magnuson-Stevens Fishery Conservation and Management Act – 16 U.S.C. 1855
hh. Farmland Protection Policy Act of 1981 – 7 U.S.C. 4201, et seq.
ii. Noise Control Act of 1972 – 42 U.S.C. 4901, et seq.
jj. Fish and Wildlife Coordination Act of 1956 – 16 U.S.C. 661, et seq.
kk. Section 9 of the Rivers and Harbors Act and the General Bridge Act of 1946 – 33 U.S.C. 401 and 525
ll. Section 4(f) of the Department of Transportation Act of 1966 – 49 U.S.C. 303 and 23 U.S.C. 138
mm. Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended – 42 U.S.C. 9601, et seq.
nn. Safe Drinking Water Act – 42 U.S.C. 300f to 300j-26
oo. Wilderness Act – 16 U.S.C. 1131-1136
pp. Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 – 42 U.S.C. 6901, et seq.
qq. Migratory Bird Treaty Act – 16 U.S.C. 703, et seq.
rr. The Federal Funding Transparency and Accountability Act of 2006, as amended (Pub. L. 109–282, as amended by section 6202 of Public Law 110–252)
ss. Cargo Preference Act of 1954 – 46 U.S.C. 55305
tt. Section 889 of the John D. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. 115-232

**Executive Orders**
a. Executive Order 11990 – Protection of Wetlands
b. Executive Order 11988 – Floodplain Management
c. Executive Order 12372 – Intergovernmental Review of Federal Programs
d. Executive Order 12549 – Debarment and Suspension
e. Executive Order 14005 – Ensuring the Future is Made in All of America by All of America's Workers
f. Executive Order 14025 – Worker Organizing and Empowerment
g. Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship
h. Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing
i. Executive Order 14154 – Unleashing American Energy
j. Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government
k. Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-based Opportunity

**Presidential Policy Directives and Memorandums**
   a.  Presidential Policy Directive 21 – Critical Infrastructure Security and Resilience
   b.  National Security Presidential Memorandum on Improving Cybersecurity for Critical Infrastructure Systems


**General Federal Regulations**
   a.  Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards – 2 C.F.R. Parts 200, 1201
   b.  Non-procurement Suspension and Debarment – 2 C.F.R. Parts 180, 1200
   c.  Investigative and Enforcement Procedures – 14 C.F.R. Part 13
   d.  Procedures for predetermination of wage rates – 29 C.F.R. Part 1
   e.  Contractors and subcontractors on public building or public work financed in whole or part by loans or grants from the United States – 29 C.F.R. Part 3
   f.  Labor standards provisions applicable to contracts governing federally financed and assisted construction (also labor standards provisions applicable to non-construction contracts subject to the Contract Work Hours and Safety Standards Act) – 29 C.F.R. Part 5
   g.  Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and federally assisted contracting requirements) – 41 C.F.R. Parts 60, et seq.
   h.  New Restrictions on Lobbying – 49 C.F.R. Part 20
   i.  Nondiscrimination in Federally Assisted Programs of the Department of Transportation – Effectuation of Title VI of the Civil Rights Act of 1964 – 49 C.F.R. Part 21
   j.  Uniform relocation assistance and real property acquisition for Federal and Federally assisted programs – 49 C.F.R. Part 24
   k.  Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance – 49 C.F.R. Part 25
   l.  Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving or Benefiting from Federal Financial Assistance – 49 C.F.R. Part 27
   m.  DOT's implementation of DOJ's ADA Title II regulations compliance procedures for all programs, services, and regulatory activities relating to transportation under 28 C.F.R. Part 35
   n.  Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation – 49 C.F.R. Part 28
   o.  Denial of public works contracts to suppliers of goods and services of countries that deny procurement market access to U.S. contractors – 49 C.F.R. Part 30
   p.  Governmentwide Requirements for Drug-Free Workplace (Financial Assistance) – 49 C.F.R. Part 32
   q.  DOT's implementing ADA regulations for transit services and transit vehicles, including the DOT's standards for accessible transportation facilities in Part 37, Appendix A – 49 C.F.R. Parts 37 and 38
   r.  Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs – 49 C.F.R. Part 26 (as applicable under section 18.3 of this grant agreement)

**Office of Management and Budget Circulars**
   a.  Any applicable OMB Circular.

**Highway Federal Legislation**
   a.  Highways – Title 23, U.S.C. including but not limited to:
   b.  Brooks Act (for FHWA projects, this incorporates Title IX of the Federal Property and Administrative Services Act of 1949 (formerly 40 U.S.C. 541, et seq.)) – 40 U.S.C. 1101-1104; 23 U.S.C. 112(b)(2)
   c.  Letting of Contracts, 23 U.S.C. 112
   d.  Highway Design and Construction Standards, 23 U.S.C. 109
   e.  Prevailing Rate of Wage, 23 U.S.C. 113
   f.  Planning, 23 U.S.C. 134 and 135 (except for projects that are not regionally significant that do not receive funding under Title 23 or Chapter 53 of Title 49)
   g.  Tolls, 23 U.S.C. 301 (to the extent the Recipient wishes to toll an existing free facility that has received Title 23 funds in the past); except as authorized by 23 U.S.C. 129 and 166.
   h.  Size, Weight, and Length Limitations – 23 U.S.C. 127, 49 U.S.C. 31101 et seq.
   i.  Buy America – 23 U.S.C. 313
       (see http://www.fhwa.dot.gov/construction/contracts/buyam_qa.cfm)
   j.  Nondiscrimination – 23 U.S.C. 140
   k.  Efficient Environmental Reviews - 23 U.S.C. 139

**Federal Highway Regulations**
   a.  Highways – Title 23, C.F.R. including but not limited to the specific parts identified herein.
   b.  Planning – 23 C.F.R. Part 450 (except for projects that are not regionally significant that do not receive funding under Title 23 or Chapter 53 of Title 49)
   c.  National Highway System Design Standards – 23 C.F.R. Part 625
   d.  Preconstruction Procedures – 23 C.F.R. Part 630 Subparts A and B
   e.  Construction and Maintenance – 23 C.F.R. Part 635
   f.  Manual on Uniform Traffic Control Devices – 23 C.F.R. Part 655
   g.  Environmental Impact and Related Procedures – 23 C.F.R. Part 771
   h.  Procedures for Abatement of Highway Traffic and Construction Noise – 23 C.F.R. Part 772
   i.  Intelligent Transportation System Architecture and Standards – 23 C.F.R. Part 940
   j.  Procedures Implementing Section 4(f) of the Department of Transportation Act – 23 C.F.R. Part 774
   k.  Permitting Requirements under the National Pollutant Discharge Elimination System – 40 C.F.R. Part 122
   l.  Required Contract Provisions – 23 C.F.R. Part 633 (Form 1273)
   m. External Programs – 23 C.F.R. Part 230

Specific assurances required to be included in the grant agreement by any of the above laws, regulations, or circulars are hereby incorporated by reference into this grant agreement.

**EXHIBIT B**
**ADDITIONAL STANDARD TERMS**

**TERM B.1**
**TITLE VI ASSURANCE**
**(Implementing Title VI of the Civil Rights Act of 1964, as amended)**

**ASSURANCE CONCERNING NONDISCRIMINATION IN FEDERALLY-ASSISTED PROGRAMS AND ACTIVITIES RECEIVING OR BENEFITING FROM FEDERAL FINANCIAL ASSISTANCE**

(Implementing the Rehabilitation Act of 1973, as amended, and the Americans With Disabilities Act, as amended)

49 C.F.R. Parts 21, 25, 27, 37 and 38

**The United States Department of Transportation (USDOT)**

**Standard Title VI/Non-Discrimination Assurances**

**DOT Order No. 1050.2A**

By signing and submitting the Technical Application and by entering into this grant agreement under the grant program on the title page of Schedules A to H to the Grant Agreement, the Recipient **HEREBY AGREES THAT**, as a condition to receiving any Federal financial assistance from the U.S. Department of Transportation (DOT), through the Federal Highway Administration (FHWA), it is subject to and will comply with the following:

**Statutory/Regulatory Authorities**

- Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*, 78 stat. 252), (prohibits discrimination on the basis of race, color, national origin);
- 49 C.F.R. Part 21 (entitled *Non-discrimination In Federally-Assisted Programs Of The Department Of Transportation—Effectuation Of Title VI Of The Civil Rights Act Of 1964*);
- 28 C.F.R. section 50.3 (U.S. Department of Justice Guidelines for Enforcement of Title VI of the Civil Rights Act of 1964);

The preceding statutory and regulatory cites hereinafter are referred to as the "Acts" and "Regulations," respectively.

**General Assurances**

In accordance with the Acts, the Regulations, and other pertinent directives, circulars, policy, memoranda, and/or guidance, the Recipient hereby gives assurance that it will promptly take any measures necessary to ensure that:

*"No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity," for which the Recipient receives Federal financial assistance from DOT, including the FHWA.*

The Civil Rights Restoration Act of 1987 clarified the original intent of Congress, with respect to Title VI and other Non-discrimination requirements (The Age Discrimination Act of 1975, and Section 504 of the Rehabilitation Act of 1973), by restoring the broad, institutional-wide scope and coverage of these non-discrimination statutes and requirements to include all programs and activities of the Recipient, so long as any portion of the program is Federally assisted.

### Specific Assurances

More specifically, and without limiting the above general Assurance, the Recipient agrees with and gives the following Assurances with respect to its Federally assisted award under the grant program on the title page of Schedules A to H to the Grant Agreement:

1. The Recipient agrees that each "activity," "facility," or "program," as defined in §§ 21.23 (b) and 21.23 (e) of 49 C.F.R. § 21 will be (with regard to an "activity") facilitated, or will be (with regard to a "facility") operated, or will be (with regard to a "program") conducted in compliance with all requirements imposed by, or pursuant to the Acts and the Regulations.

2. The Recipient will insert the following notification in all solicitations for bids, Requests For Proposals for work, or material subject to the Acts and the Regulations made in connection with an award under the grant program on the title page of Schedules A to H to the Grant Agreement and, in adapted form, in all proposals for negotiated agreements regardless of funding source:

   *"The Recipient, in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (78 Stat. 252, 42 U.S.C. §§ 2000d to 2000d-4) and the Regulations, hereby notifies all bidders that it will affirmatively ensure that for any contract entered into pursuant to this advertisement, disadvantaged business enterprises will be afforded full and fair opportunity to submit bids in response to this invitation and will not be discriminated against on the grounds of race, color, or national origin in consideration for an award."*

3. The Recipient will insert the clauses of Appendix A and E of this Assurance in every contract or agreement subject to the Acts and the Regulations.

4. The Recipient will insert the clauses of Appendix B of this Assurance, as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a Recipient.

B-3

5. That where the Recipient receives Federal financial assistance to construct a facility, or part of a facility, the Assurance will extend to the entire facility and facilities operated in connection therewith.

6. That where the Recipient receives Federal financial assistance in the form, or for the acquisition of real property or an interest in real property, the Assurance will extend to rights to space on, over, or under such property.

7. That the Recipient will include the clauses set forth in Appendix C and Appendix D of this Assurance, as a covenant running with the land, in any future deeds, leases, licenses, permits, or similar instruments entered into by the Recipient with other parties:

   a. for the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and
   b. for the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

8. That this Assurance obligates the Recipient for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the Assurance obligates the Recipient, or any transferee for the longer of the following periods:

   a. the period during which the property is used for a purpose for which the Federal financial assistance is extended, or for another purpose involving the provision of similar services or benefits; or
   b. the period during which the Recipient retains ownership or possession of the property.

9. The Recipient will provide for such methods of administration for the program as are found by the Secretary of Transportation or the official to whom he/she delegates specific authority to give reasonable guarantee that it, other recipients, sub-recipients, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the Acts, the Regulations, and this Assurance.

10. The Recipient agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the Acts, the Regulations, and this Assurance.

By signing this ASSURANCE, the Recipient also agrees to comply (and require any sub-recipients, contractors, successors, transferees, and/or assignees to comply) with all applicable provisions governing the FHWA's access to records, accounts, documents, information, facilities, and staff. You also recognize that you must comply with any program or compliance reviews, and/or complaint investigations conducted by the FHWA. You must keep records, reports, and submit the material for review upon request to FHWA, or its designee in a timely,

complete, and accurate way. Additionally, you must comply with all other reporting, data collection, and evaluation requirements, as prescribed by law or detailed in program guidance.

The Recipient gives this ASSURANCE in consideration of and for obtaining any Federal grants, loans, contracts, agreements, property, and/or discounts, or other Federal-aid and Federal financial assistance extended after the date hereof to the recipients by the U.S. Department of Transportation under the grant program on the title page of Schedules A to H to the Grant Agreement . This ASSURANCE is binding on the Recipient, other recipients, sub-recipients, contractors, subcontractors and their subcontractors', transferees, successors in interest, and any other participants in the award under the grant program on the title page of Schedules A to H to the Grant Agreement.

## APPENDIX A

During the performance of this contract, the contractor, for itself, its assignees, and successors in interest (hereinafter referred to as the "contractor") agrees as follows:

1. **Compliance with Regulations:** The contractor (hereinafter includes consultants) will comply with the Acts and the Regulations relative to Non-discrimination in Federally-assisted programs of the U.S. Department of Transportation, Federal Highway Administration (FHWA), as they may be amended from time to time, which are herein incorporated by reference and made a part of this contract.

2. **Non-discrimination:** The contractor, with regard to the work performed by it during the contract, will not discriminate on the grounds of race, color, or national origin in the selection and retention of subcontractors, including procurements of materials and leases of equipment. The contractor will not participate directly or indirectly in the discrimination prohibited by the Acts and the Regulations, including employment practices when the contract covers any activity, project, or program set forth in Appendix B of 49 C.F.R. Part 21.

3. **Solicitations for Subcontracts, Including Procurements of Materials and Equipment:** In all solicitations, either by competitive bidding, or negotiation made by the contractor for work to be performed under a subcontract, including procurements of materials, or leases of equipment, each potential subcontractor or supplier will be notified by the contractor of the contractor's obligations under this contract and the Acts and the Regulations relative to Non-discrimination on the grounds of race, color, or national origin.

4. **Information and Reports:** The contractor will provide all information and reports required by the Acts, the Regulations, and directives issued pursuant thereto and will permit access to its books, records, accounts, other sources of information, and its facilities as may be determined by the Recipient or the FHWA to be pertinent to ascertain compliance with such Acts, Regulations, and instructions. Where any information required of a contractor is in the exclusive possession of another who fails or refuses to furnish the information, the contractor will so certify to the Recipient or the FHWA, as appropriate, and will set forth what efforts it has made to obtain the information.

5. **Sanctions for Noncompliance:** In the event of a contractor's noncompliance with the Non-discrimination provisions of this contract, the Recipient will impose such contract sanctions as it or the FHWA may determine to be appropriate, including, but not limited to:

   a. withholding payments to the contractor under the contract until the contractor complies; and/or
   b. cancelling, terminating, or suspending a contract, in whole or in part.

6. **Incorporation of Provisions:** The contractor will include the provisions of paragraphs one through six in every subcontract, including procurements of materials and leases of equipment, unless exempt by the Acts, the Regulations and directives issued pursuant thereto. The contractor will take action with respect to any subcontract or procurement as

the Recipient or the FHWA may direct as a means of enforcing such provisions including sanctions for noncompliance. Provided, that if the contractor becomes involved in, or is threatened with litigation by a subcontractor, or supplier because of such direction, the contractor may request the Recipient to enter into any litigation to protect the interests of the Recipient. In addition, the contractor may request the United States to enter into the litigation to protect the interests of the United States.

**APPENDIX B**

**CLAUSES FOR DEEDS TRANSFERRING UNITED STATES PROPERTY**

The following clauses will be included in deeds effecting or recording the transfer of real property, structures, or improvements thereon, or granting interest therein from the United States pursuant to the provisions of Specific Assurance 4:

**NOW, THEREFORE,** the U.S. Department of Transportation as authorized by law and upon the condition that the Recipient will accept title to the lands and maintain the project constructed thereon in accordance with the terms and conditions of the award under the grant program on the title page of Schedules A to H to the Grant Agreement**,** and the policies and procedures prescribed by the Federal Highway Administration (FHWA) of the U.S. Department of Transportation in accordance and in compliance with all requirements imposed by Title 49, Code of Federal Regulations, U.S. Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Non-discrimination in Federally-assisted programs of the U.S. Department of Transportation pertaining to and effectuating the provisions of Title VI of the Civil Rights Act of 1964 (78 Stat. 252; 42 U.S.C. § 2000d to 2000d-4), does hereby remise, release, quitclaim and convey unto the Recipient all the right, title and interest of the U.S. Department of Transportation in and to said lands described in Exhibit A attached hereto and made a part hereof.

**(HABENDUM CLAUSE)**

**TO HAVE AND TO HOLD** said lands and interests therein unto Recipient and its successors forever, subject, however, to the covenants, conditions, restrictions and reservations herein contained as follows, which will remain in effect for the period during which the real property or structures are used for a purpose for which Federal financial assistance is extended or for another purpose involving the provision of similar services or benefits and will be binding on the Recipient, its successors and assigns.

The Recipient, in consideration of the conveyance of said lands and interests in lands, does hereby covenant and agree as a covenant running with the land for itself, its successors and assigns, that (1) no person will on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination with regard to any facility located wholly or in part on, over, or under such lands hereby conveyed [,] [and]* (2) that the Recipient will use the lands and interests in lands and interests in lands so conveyed, in compliance with all requirements imposed by or pursuant to Title 49, Code of Federal Regulations, U.S. Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Non-discrimination in Federally-assisted programs of the U.S. Department of Transportation, Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations and Acts may be amended[, and (3) that in the event of breach of any of the above-mentioned non-discrimination conditions, the Department will have a right to enter or re-enter said lands and facilities on said land, and that above described land and facilities will thereon revert to and vest in and become the absolute property of the U.S. Department of Transportation and its assigns as such interest existed prior to this instruction].*

(*Reverter clause and related language to be used only when it is determined that such a clause is necessary in order to make clear the purpose of Title VI.)

## APPENDIX C

## CLAUSES FOR TRANSFER OF REAL PROPERTY ACQUIRED OR IMPROVED UNDER THE ACTIVITY, FACILITY, OR PROGRAM

The following clauses will be included in deeds, licenses, leases, permits, or similar instruments entered into by the Recipient pursuant to the provisions of Specific Assurance 7(a):

A.   The (Recipient, lessee, permittee, etc. as appropriate) for himself/herself, his/her heirs, personal representatives, successors in interest, and assigns, as a part of the consideration hereof, does hereby covenant and agree [in the case of deeds and leases add "as a covenant running with the land"] that:

1.   In the event facilities are constructed, maintained, or otherwise operated on the property described in this (deed, license, lease, permit, etc.) for a purpose for which a U.S. Department of Transportation activity, facility, or program is extended or for another purpose involving the provision of similar services or benefits, the (Recipient, licensee, lessee, permittee, etc.) will maintain and operate such facilities and services in compliance with all requirements imposed by the Acts and Regulations (as may be amended) such that no person on the grounds of race, color, or national origin, will be excluded from participation in, denied the benefits of, or be otherwise subjected to discrimination in the use of said facilities.

B.   With respect to licenses, leases, permits, etc., in the event of breach of any of the above Non-discrimination covenants, Recipient will have the right to terminate the (lease, license, permit, etc.) and to enter, re-enter, and repossess said lands and facilities thereon, and hold the same as if the (lease, license, permit, etc.) had never been made or issued.*

C.   With respect to a deed, in the event of breach of any of the above Non-discrimination covenants, the Recipient will have the right to enter or re-enter the lands and facilities thereon, and the above described lands and facilities will there upon revert to and vest in and become the absolute property of the Recipient and its assigns.*

(*Reverter clause and related language to be used only when it is determined that such a clause is necessary to make clear the purpose of Title VI.)

**APPENDIX D**

**CLAUSES FOR CONSTRUCTION/USE/ACCESS TO REAL PROPERTY ACQUIRED UNDER THE ACTIVITY, FACILITY OR PROGRAM**

The following clauses will be included in deeds, licenses, permits, or similar instruments/agreements entered into by Recipient pursuant to the provisions of Specific Assurance 7(b):

A.  The (Recipient, licensee, permittee, etc., as appropriate) for himself/herself, his/her heirs, personal representatives, successors in interest, and assigns, as a part of the consideration hereof, does hereby covenant and agree (in the case of deeds and leases add, "as a covenant running with the land") that (1) no person on the ground of race, color, or national origin, will be excluded from participation in, denied the benefits of, or be otherwise subjected to discrimination in the use of said facilities, (2) that in the construction of any improvements on, over, or under such land, and the furnishing of services thereon, no person on the ground of race, color, or national origin, will be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination, (3) that the (Recipient, licensee, lessee, permittee, etc.) will use the premises in compliance with all other requirements imposed by or pursuant to the Acts and Regulations, as amended, set forth in this Assurance.

B.  With respect to (licenses, leases, permits, etc.), in the event of breach of any of the above Non-discrimination covenants, Recipient will have the right to terminate the (license, permit, etc., as appropriate) and to enter or re-enter and repossess said land and the facilities thereon, and hold the same as if said (license, permit, etc., as appropriate) had never been made or issued.*

C.  With respect to deeds, in the event of breach of any of the above Non-discrimination covenants, Recipient will there upon revert to and vest in and become the absolute property of Recipient and its assigns.*

(*Reverter clause and related language to be used only when it is determined that such a clause is necessary to make clear the purpose of Title VI.)

## APPENDIX E

During the performance of this contract, the contractor, for itself, its assignees, and successors in interest (hereinafter referred to as the "contractor") agrees to comply with the following non-discrimination statutes and authorities; including but not limited to:

### **Pertinent Non-Discrimination Authorities:**

- Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq*., 78 stat. 252), (prohibits discrimination on the basis of race, color, national origin); and 49 C.F.R. Part 21.
- The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, (42 U.S.C. § 4601), (prohibits unfair treatment of persons displaced or whose property has been acquired because of Federal or Federal-aid programs and projects);
- Federal-Aid Highway Act of 1973, (23 U.S.C. § 324 *et seq*.), (prohibits discrimination on the basis of sex);
- Section 504 of the Rehabilitation Act of 1973, (29 U.S.C. § 794 *et seq*.), as amended, (prohibits discrimination on the basis of disability); and 49 C.F.R. Part 27;
- The Age Discrimination Act of 1975, as amended, (42 U.S.C. § 6101 *et seq*.), (prohibits discrimination on the basis of age);
- Airport and Airway Improvement Act of 1982, (49 U.S.C. § 471, Section 47123), as amended, (prohibits discrimination based on race, creed, color, national origin, or sex);
- The Civil Rights Restoration Act of 1987, (PL 100-209), (Broadened the scope, coverage and applicability of Title VI of the Civil Rights Act of 1964, The Age Discrimination Act of 1975 and Section 504 of the Rehabilitation Act of 1973, by expanding the definition of the terms "programs or activities" to include all of the programs or activities of the Federal-aid recipients, sub-recipients and contractors, whether such programs or activities are Federally funded or not);
- Titles II and III of the Americans with Disabilities Act, which prohibit discrimination on the basis of disability in the operation of public entities, public and private transportation systems, places of public accommodation, and certain testing entities (42 U.S.C. §§ 12131 – 12189) as implemented by Department of Transportation regulations at 49 C.F.R. Parts 37 and 38;
- The Federal Aviation Administration's Non-discrimination statute (49 U.S.C. § 47123) (prohibits discrimination on the basis of race, color, national origin, and sex);
- Title IX of the Education Amendments of 1972, as amended, which prohibits you from discriminating because of sex in education programs or activities (20 U.S.C. § 1681 et seq).

**TERM B.2**
**CERTIFICATION REGARDING DEBARMENT, SUSPENSION, AND OTHER**
**RESPONSIBILITY MATTERS -- PRIMARY COVERED TRANSACTIONS**

**2 C.F.R. Parts 180 and 1200**

These assurances and certifications are applicable to all Federal-aid construction contracts, design-build contracts, subcontracts, lower-tier subcontracts, purchase orders, lease agreements, consultant contracts or any other covered transaction requiring FHWA approval or that is estimated to cost $25,000 or more – as defined in 2 C.F.R. Parts 180 and 1200.

By signing and submitting the Technical Application and by entering into this agreement under the grant program on the title page of Schedules A to H to the Grant Agreement, the Recipient is providing the assurances and certifications for First Tier Participants and Lower Tier Participants in the award under the grant program on the title page of Schedules A to H to the Grant Agreement, as set out below.

**1. Instructions for Certification – First Tier Participants:**

a. The prospective first tier participant is providing the certification set out below.

b. The inability of a person to provide the certification set out below will not necessarily result in denial of participation in this covered transaction. The prospective first tier participant shall submit an explanation of why it cannot provide the certification set out below. The certification or explanation will be considered in connection with the department or agency's determination whether to enter into this transaction. However, failure of the prospective first tier participant to furnish a certification or an explanation shall disqualify such a person from participation in this transaction.

c. The certification in this clause is a material representation of fact upon which reliance was placed when the contracting agency determined to enter into this transaction. If it is later determined that the prospective participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the contracting agency may terminate this transaction for cause of default.

d. The prospective first tier participant shall provide immediate written notice to the contracting agency to whom this proposal is submitted if any time the prospective first tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

e. The terms "covered transaction," "civil judgment," "debarred," "suspended," "ineligible," "participant," "person," "principal," and "voluntarily excluded," as used in this clause, are defined in 2 C.F.R. Parts 180 and 1200. "First Tier Covered Transactions" refers to any covered transaction between a Recipient or subrecipient of Federal funds and a participant (such as the prime or general contract). "Lower Tier Covered Transactions" refers to any covered transaction under a First Tier Covered Transaction (such as subcontracts). "First Tier Participant" refers to

the participant who has entered into a covered transaction with a Recipient or subrecipient of Federal funds (such as the prime or general contractor). "Lower Tier Participant" refers to any participant who has entered into a covered transaction with a First Tier Participant or other Lower Tier Participants (such as subcontractors and suppliers).

f. The prospective first tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency entering into this transaction.

g. The prospective first tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion-Lower Tier Covered Transactions," provided by the department or contracting agency, entering into this covered transaction, without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions exceeding the $25,000 threshold.

h. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant is responsible for ensuring that its principals are not suspended, debarred, or otherwise ineligible to participate in covered transactions. To verify the eligibility of its principals, as well as the eligibility of any lower tier prospective participants, each participant may, but is not required to, check the System for Award Management website (https://www.sam.gov/), which is compiled by the General Services Administration.

i. Nothing contained in the foregoing shall be construed to require the establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of the prospective participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

j. Except for transactions authorized under paragraph (f) of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency may terminate this transaction for cause or default.

**Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion – First Tier Participants:**

a. The prospective first tier participant certifies to the best of its knowledge and belief, that it and its principals:

(1) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participating in covered transactions by any Federal department or agency;

(2) Have not within a three-year period preceding this proposal been convicted of or had a civil judgment, including a civil settlement, rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

(3) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph (a)(2) of this certification; and

(4) Have not within a three-year period preceding this application/proposal had one or more public transactions (Federal, State or local) terminated for cause or default.

b. Where the prospective participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

## 2. Instructions for Certification - Lower Tier Participants:

(Applicable to all subcontracts, purchase orders and other lower tier transactions requiring prior FHWA approval or estimated to cost $25,000 or more - 2 C.F.R. Parts 180 and 1200)

a. The prospective lower tier participant is providing the certification set out below.

b. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department, or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

c. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous by reason of changed circumstances.

d. The terms "covered transaction," "civil settlement," "debarred," "suspended," "ineligible," "participant," "person," "principal," and "voluntarily excluded," as used in this clause, are defined in 2 C.F.R. Parts 180 and 1200. You may contact the person to which this proposal is submitted for assistance in obtaining a copy of those regulations. "First Tier Covered Transactions" refers to any covered transaction between a Recipient or subrecipient of Federal funds and a participant (such as the prime or general contract). "Lower Tier Covered Transactions" refers to any covered transaction under a First Tier Covered Transaction (such as subcontracts). "First Tier Participant" refers to the participant who has entered into a covered

transaction with a Recipient or subrecipient of Federal funds (such as the prime or general contractor). "Lower Tier Participant" refers any participant who has entered into a covered transaction with a First Tier Participant or other Lower Tier Participants (such as subcontractors and suppliers).

e. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

f. The prospective lower tier participant further agrees by submitting this proposal that it will include this clause titled "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion-Lower Tier Covered Transaction," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions exceeding the $25,000 threshold.

g. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant is responsible for ensuring that its principals are not suspended, debarred, or otherwise ineligible to participate in covered transactions. To verify the eligibility of its principals, as well as the eligibility of any lower tier prospective participants, each participant may, but is not required to, check the System for Award Management website (https://www.sam.gov/), which is compiled by the General Services Administration.

h. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

i. Except for transactions authorized under paragraph e of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion -- Lower Tier Participants:**

1. The prospective lower tier participant certifies, by submission of this proposal, that neither it nor its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participating in covered transactions by any Federal department or agency.

2. Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

**TERM B.3**
**REQUIREMENTS REGARDING DELINQUENT TAX LIABILITY OR A FELONY CONVICTION UNDER ANY FEDERAL LAW**

As required by sections 744 and 745 of Title VII, Division E of the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (Dec. 29, 2022), similar provisions in prior appropriation acts, and anticipated for future appropriations acts, and implemented through USDOT Order 4200.6, the funds provided under this award shall not be used to enter into a contract, memorandum of understanding, or cooperative agreement with, make a grant to, or provide a loan or loan guarantee to, any corporation that:

(1) Has any unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, and that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability, where the awarding agency is aware of the unpaid tax liability, unless a Federal agency has considered suspension or debarment of the corporation and made a determination that suspension or debarment is not necessary to protect the interests of the Government; or

(2) Was convicted of a felony criminal violation under any Federal law within the preceding 24 months, where the awarding agency is aware of the conviction, unless a Federal agency has considered suspension or debarment of the corporation and made a determination that suspension or debarment is not necessary to protect the interests of the Government.

The Recipient therefore agrees:

1. **Definitions.** For the purposes of this exhibit, the following definitions apply:

   "**Covered Transaction**" means a transaction that uses any funds under this award and that is a contract, memorandum of understanding, cooperative agreement, grant, loan, or loan guarantee.

   "**Felony Conviction**" means a conviction within the preceding 24 months of a felony criminal violation under any Federal law and includes conviction of an offense defined in a section of the United States Code that specifically classifies the offense as a felony and conviction of an offense that is classified as a felony under 18 U.S.C. 3559.

   "**Participant**" means the Recipient, an entity who submits a proposal for a Covered Transaction, or an entity who enters into a Covered Transaction.

   "**Tax Delinquency**" means an unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted, or have lapsed, and that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability.

2. **Mandatory Check in the System for Award Management.** Before entering a Covered Transaction with another entity, a Participant shall check the System for Award Management (the "**SAM**") at http://www.sam.gov/ for an entry describing that entity.

3. **Mandatory Certifications.** Before entering a Covered Transaction with another entity, a Participant shall require that entity to:

   (1) Certify whether the entity has a Tax Delinquency; and

   (2) Certify whether the entity has a Felony Conviction.

4. **Prohibition.** If

   (1) the SAM entry for an entity indicates that the entity has a Tax Delinquency or a Federal Conviction;

   (2) an entity provides an affirmative response to either certification in section 3; or

   (3) an entity's certification under section 3 was inaccurate when made or became inaccurate after being made

then a Participant shall not enter or continue a Covered Transaction with that entity unless the USDOT has determined in writing that suspension or debarment of that entity are not necessary to protect the interests of the Government.

5. **Mandatory Notice to the USDOT FHWA.**

   (a) If the SAM entry for a Participant indicates that the Participant has a Tax Delinquency or a Felony Conviction, the Recipient shall notify the USDOT FHWA in writing of that entry.

   (b) If a Participant provides an affirmative response to either certification in section 1, the Recipient shall notify the USDOT FHWA in writing of that affirmative response.

   (c) If the Recipient knows that a Participant's certification under section 1 was inaccurate when made or became inaccurate after being made, the Recipient shall notify the USDOT FHWA in writing of that inaccuracy.

6. **Flow Down.** For all Covered Transactions, including all tiers of subcontracts and subawards, the Recipient shall:

   (1) require the SAM check in section 2;

   (2) require the certifications in section 3;

   (3) include the prohibition in section 4; and

(4) require all Participants to notify the Recipient in writing of any information that would require the Recipient to notify the USDOT FHWA under section 5.

**TERM B.4**
**RECIPIENT POLICY TO BAN TEXT MESSAGING WHILE DRIVING**

(a) *Definitions.* The following definitions are intended to be consistent with the definitions in DOT Order 3902.10, Text Messaging While Driving (Dec. 30, 2009) and Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving (Oct. 1, 2009). For clarification purposes, they may expand upon the definitions in the executive order.

For the purpose of this Term B.4, "**Motor Vehicles**" means any vehicle, self-propelled or drawn by mechanical power, designed and operated principally for use on a local, State or Federal roadway, but does not include a military design motor vehicle or any other vehicle excluded under Federal Management Regulation 102-34-15.

For the purpose of this Term B.4, "**Driving**" means operating a motor vehicle on a roadway, including while temporarily stationary because of traffic congestion, a traffic signal, a stop sign, another traffic control device, or otherwise. It does not include being in your vehicle (with or without the motor running) in a location off the roadway where it is safe and legal to remain stationary.

For the purpose of this Term B.4, "**Text messaging**" means reading from or entering data into any handheld or other electronic device (including, but not limited to, cell phones, navigational tools, laptop computers, or other electronic devices), including for the purpose of Short Message Service (SMS) texting, e-mailing, instant messaging, obtaining navigational information, or engaging in any other form of electronic data retrieval or electronic data communication. The term does not include the use of a cell phone or other electronic device for the limited purpose of entering a telephone number to make an outgoing call or answer an incoming call, unless this practice is prohibited by State or local law. The term also does not include glancing at or listening to a navigational device that is secured in a commercially designed holder affixed to the vehicle, provided that the destination and route are programmed into the device either before driving or while stopped in a location off the roadway where it is safe and legal to remain stationary.

For the purpose of this Term B.4, the "**Government**" includes the United States Government and State, local, and tribal governments at all levels.

(b) *Workplace Safety.* In accordance with Executive Order 13513, Federal Leadership on Reducing Text Messaging While Driving (Oct. 1, 2009) and DOT Order 3902.10, Text Messaging While
Driving (Dec. 30, 2009), the Recipient, subrecipients, contractors, and subcontractors are encouraged to:
    (1) adopt and enforce workplace safety policies to decrease crashes caused by distracted drivers including policies to ban text messaging while driving—
        (i) Company-owned or -rented vehicles or Government-owned, leased or rented vehicles; or
        (ii) Privately-owned vehicles when on official Government business or when performing any work for or on behalf of the Government.

(2) Conduct workplace safety initiatives in a manner commensurate with the size of the business, such as—

(i) Establishment of new rules and programs or re-evaluation of existing programs to prohibit text messaging while driving; and

(ii) Education, awareness, and other outreach to employees about the safety risks associated with texting while driving.

(c) *Subawards and Contracts.* To the extent permitted by law, the Recipient shall insert the substance of this exhibit, including this paragraph (c), in all subawards, contracts, and subcontracts under this award that exceed the micro-purchase threshold, other than contracts and subcontracts for the acquisition of commercially available off-the-shelf items.

## EXHIBIT C
## PROJECT PROGRESS REPORTS AND RECERTIFICATIONS:
## FORMAT AND CONTENT

1.    **Purpose**. The purpose of the Project Progress Reports and Recertifications under the grant program on the title page of Schedules A to H to the Grant Agreement are to ensure that the project scope, schedule, and budget will be maintained to the maximum extent possible.

2.    **Format and Content.** The Recipient shall produce a cost, schedule, and project status report that contains the sections enumerated in the following list. At the discretion of the FHWA, modifications or additions can be made to produce a progress reporting format that will most effectively serve both the Recipient and the FHWA. Some projects will have a more extensive project progress status reporting than others. For smaller projects, the FHWA may determine that the content of the project progress reports will be streamlined and project status meetings will be held on a less-frequent basis. The first project progress report should include a detailed description and, where appropriate, drawings of the items funded.

   (a) **Project Overall Status.** This section provides an overall status of the project's scope, schedule and budget. The Recipient shall note and explain any deviations from the scope of work, the schedule, or the budget that are described in this grant agreement.

   (b) **Project Significant Activities and Issues.** This section provides highlights of key activities, accomplishments, and issues occurring on the project during the previous quarter. Activities and deliverables to be reported on should include meetings, audits and other reviews, design packages submitted, advertisements, awards, construction submittals, construction completion milestones, submittals related to any grant award requirements, media or Congressional inquiries, value engineering/constructability reviews, and other items of significance.

   (c) **Action Items/Outstanding Issues.** This section should draw attention to, and track the progress of, highly significant or sensitive issues requiring action and direction in order to resolve. The Recipient should include administrative items and outstanding issues that could have a significant or adverse effect on the project's scope, schedule, or budget. Status, responsible person(s), and due dates should be included for each action item/outstanding issue. Action items requiring action or direction should be included in the quarterly status meeting agenda. The action items/outstanding issues may be dropped from this section upon full implementation of the remedial action, and upon no further monitoring anticipated.

   (d) **Project Scope Overview.** The purpose of this section is to provide a further update regarding the project scope. If the original scope contained in the grant agreement is still accurate, this section can simply state that the scope is unchanged.

   (e) **Project Schedule.** An updated master program schedule reflecting the current status of the program activities should be included in this section. A Gantt (bar) type chart is probably the most appropriate for quarterly reporting purposes, with the ultimate format to be agreed upon between the Recipient and the USDOT. It is imperative that

the master program schedule be integrated, i.e., the individual contract milestones tied to each other, such that any delays occurring in one activity will be reflected throughout the entire program schedule, with a realistic completion date being reported. Narratives, tables, and/or graphs should accompany the updated master program schedule, basically detailing the current schedule status, delays and potential exposures, and recovery efforts. The following information should also be included:

- Current overall project completion percentage vs. latest plan percentage.

- Completion percentages vs. latest plan percentages for major activities such as right-of-way, major or critical design contracts, major or critical construction contracts, and significant force accounts or task orders. A schedule status description should also be included for each of these major or critical elements.

- Any delays or potential exposures to milestone and final completion dates. The delays and exposures should be quantified, and overall schedule impacts assessed. The reasons for the delays and exposures should be explained, and initiatives being analyzed or implemented in order to recover the schedule should be detailed.

**(f) Project Cost.** An updated cost spreadsheet reflecting the current forecasted cost vs. the latest approved budget vs. the baseline budget should be included in this section. One way to track project cost is to show: (1) Baseline Budget, (2) Latest Approved Budget, (3) Current Forecasted Cost Estimate, (4) Expenditures or Commitments to Date, and (5) Variance between Current Forecasted Cost and Latest Approved Budget. Line items should include all significant cost centers, such as prior costs, right-of-way, preliminary engineering, environmental mitigation, general engineering consultant, section design contracts, construction administration, utilities, construction packages, force accounts/task orders, wrap-up insurance, construction contingencies, management contingencies, and other contingencies. The line items can be broken-up in enough detail such that specific areas of cost change can be sufficiently tracked and future improvements made to the overall cost estimating methodology. A Program Total line should be included at the bottom of the spreadsheet. Narratives, tables, and/or graphs should accompany the updated cost spreadsheet, basically detailing the current cost status, reasons for cost deviations, impacts of cost overruns, and efforts to mitigate cost overruns. The following information should be provided:

- Reasons for each line item deviation from the approved budget, impacts resulting from the deviations, and initiatives being analyzed or implemented in order to recover any cost overruns.

- Transfer of costs to and from contingency line items, and reasons supporting the transfers.

- Speculative cost changes that potentially may develop in the future, a quantified dollar range for each potential cost change, and the current status of the speculative change. Also, a comparison analysis to the available contingency amounts should be included, showing that reasonable and sufficient amounts of contingency remain to keep the project within the latest approved budget.

- Detailed cost breakdown of the general engineering consultant (GEC) services (if applicable), including such line items as contract amounts, task orders issued (amounts), balance remaining for tasks, and accrued (billable) costs.

- Federal obligations and/or disbursements for the project, compared to planned obligations and disbursements.

(g) **Federal Financial Report (SF-425).** The Federal Financial Report (SF-425) is a financial reporting form used throughout the Federal Government Grant system. Recipients shall complete this form and attach it to each quarterly Project Progress and Monitoring Report. The form is available at https://www.grants.gov/forms/post-award-reporting-forms.html.

(h) **Certifications.**

i.    A certification that the Recipient is in compliance with 2 C.F.R. 200.303 (Internal Controls) and 2 C.F.R. Part 200, Subpart F (Audit Requirements).

ii.    The certification required under 2 C.F.R. 200.415(a).

## EXHIBIT D
## FORM FOR SUBSEQUENT OBLIGATION OF FUNDS

The FHWA and **[recipient name]** entered a grant agreement for the **[project name]** that was executed by the FHWA on **[date of FHWA signature on original grant agreement]** (the "**Agreement**").

As described in section 4.2(f) of the General Terms and Conditions, this instrument authorizes the obligation of **[$XXX]** for **[insert portion of project listed in the Fund Obligation Table in section 1 of schedule C]**.

**[Recipient name]** states that:

(1)     schedule B of the Agreement accurately describe the Project's activities;

(2)     for each completion date listed in section 2 of schedule C of the Agreement, the Recipient's estimate for that milestone is not more than six months after the date listed in section 2 of schedule C of the Agreement;

(3)     comparing the Project's current budget with the amounts listed in section 3 of schedule D of the Agreement, the "Non-Federal Funds" amount has not decreased and the total eligible project costs amount has not decreased; and

(4)     under the terms of article 5 of the General Terms and Conditions, the Recipient is not presently required to request a modification to the Agreement.

**[Recipient name]** acknowledges that FHWA is acting in reliance on the Recipient's statements above.

_____By: _____
Date                                                 Signature of Recipient's Authorized Representative

                                                     **[insert name]**
                                                     _____
                                                     Name

                                                     **[insert title]**
                                                     _____
                                                     Title

The FHWA has determined that:

(1)     all applicable Federal requirements for obligating these funds are satisfied.

D-1

_____ By: _____
Date                                              Signature of FHWA Division Administrator

**[insert name]**
_____
Name

**[insert title]**
_____
Title

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I served a true and correct copy of the foregoing document on the following parties by the method(s) indicated below:

| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 14th day of July, 2025.

*/s/ Gabriela DeGregorio*
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE - 1