THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

                    Plaintiffs,

          v.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

                    Defendants.

No. 2:25-cv-00814-BJR

DECLARATION OF ANN M.
STILLMAN

I, ANN M. STILLMAN declare as follows:

1.      I am over the age of eighteen, competent to testify, and make this declaration

based on my personal knowledge and my review of relevant business records.

**Personal Background**

2.      I am the Director of the Department of Public Works (DPW) within the County of

San Mateo, California (County).  As Director, my duties include, but are not limited to,

overseeing and representing DPW, which includes overseeing County Airports, Maintained

Roadways, Vehicles and Equipment, Facilities, Special Districts, Administration, Engineering

and Resource Protection and other duties.  I have held this position since July 12, 2022.

3.      Prior to accepting the role of Director of DPW, I was the Interim Director of

DPW, and prior to that, the Deputy Director of the DPW's Division of Engineering and Resource

DECLARATION OF ANN M. STILLMAN- 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

Protection and I have more than 30 years of professional experience in DPW.

2

4.       I have a Bachelor of Science degree from Humboldt State University (currently

3

California State Polytechnic University, Humboldt). I am also duly registered as a Professional

4

Engineer in Civil Engineering by the California State Board of Registration for Professional

5

6

Engineers and Land Surveyors.

7

5.       DPW plans, designs, constructs, operates, and maintains facilities and equipment

8

that are safe and accessible to the clients of County agencies, the general public and County

9

employees. DPW has a budget of approximately $300 million and is comprised of over 300

10

employees in five divisions: Administrative Services, Airports, Engineering and Resource

11

Protection, Facility and Capital Projects, and Road Services. Most of the DPW's budget is

12

13

funded from sources other than the County's general fund. The budget includes federal and state

14

funds for aviation and transportation, gas tax and Senate Bill 1 revenue to maintain 316 miles of

15

County roads, and property tax revenue and service charges to provide various services to the 46

16

special districts governed by the Board of Supervisors and administered by DPW.

17

6.       DPW currently has approximately $2.4 million in programmed federal funds.

18

**AIRPORTS**

19

7.       In particular, funding from the Federal Aviation Administration (FAA) is critical

20

21

to the County Airports for airfield improvements. DPW further expects to receive four (4) FAA

22

grants in July-August 2025 as follows:

23

a.    $1,500,000 Airport Improvement Grant (AIP) – San Carlos Airport

24

Taxiway Reconfiguration and Repair – Construction (FAA required safety

25

& standards project)

26

b.    $150,977 Airport Infrastructure Grant (AIG) – Half Moon Bay Airport

27

DECLARATION OF ANN M. STILLMAN- 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Taxiway Rehabilitation – Design

    c.  $114,126 Airport Infrastructure Grant (AIG) – San Carlos Airport Transient Apron Rehabilitation – Design

    d.  $165,581 Airport Infrastructure Grant (AIG) – San Carlos Airport Terminal Narrative Report

8.     When the e-grant offers from the FAA are received, the County generally has five (5) days to execute the grant agreements via electronic signature. If the AIG grant funds are not used, they will expire at the end of September 2025.

9.     As of April 25, 2025, we understand the FAA grant assurances were updated to incorporate requirements related certain executive orders, including the following:

    a.  EO 14151 Ending Racial and Wasteful Government DEI Programs and Preferencing

    b.  EO 14168 Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

    c.  EO 14173 Ending Illegal Discrimination and Restoring Merit-Based Opportunity

10.    Attached as Exhibit A are the Grant Assurances with updated terms.

## ROADS

11.    The County has submitted two Department of Transportation (DOT) Safe Streets for All (SS4A) discretionary grant applications for the Pescadero Creek Road (PCR) Rural Safety Project.

12.    In 2024, the County submitted a SS4A grant application for $4,400,000 (with a $1,100,000 match) but only received a partial funding award for planning and demonstration

DECLARATION OF ANN M. STILLMAN- 3
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

activity in the amount of $480,000 (with a $120,000 match) and on June 10, 2025, the County Board of Supervisors (BOS) approved the funding agreement for the 2024 SS4A grant award. Attached as Exhibit B is a copy of the grant award.

13.    The receipt of the final funding agreement for execution from the Federal Highway Administration (FHWA) is imminent, but there have been delays, given changes happening at the federal level.

14.    The County has also prepared a SS4A grant application for 2025 to fund all work that was not awarded from the County's 2024 SS4A grant application, including permanent improvements from the 2024 SS4A funded demonstration activity.

15.    The 2025 SS4A grant application for $4,100,000 (with approximately $1,000,000 match) was submitted on Thursday, June 26, 2025.

16.    Form SF-424, contains basic information about the applicant (County) and the grant project, including the County's funding request. Form SF-424D, contains assurances applicants must agree to and that the County must sign off on with the application, including the requirement that the County will "comply with all applicable requirements of all other federal laws, executive orders, regulations, and policies governing this program." Attached as Exhibit C to this declaration are the SS4A grant applications.

17.    Below is a chart depicting the amounts awarded and requested for 2024 SS4A and 2025 SS4A grants:

DECLARATION OF ANN M. STILLMAN- 4
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

| 2024 Grant Award | | | 2025 Grant Application | | |
|---|---|---|---|---|---|
| Fed Request (Award) | Match | Total | Fed Request | Match | Total |
| $480,000 | $120,000 | $600,000 | $4,119,025 | $1,029,756 | $5,148,781 |

**New Conditions Imposed on Awarded FAA and DOT/FHWA Funds**

18.    As explained above, the FAA grant assurances and SS4A applications contain requirements that the County comply with Executive Orders issued by the Trump administration.

19.    Specifically, the terms of the grant assurances and applications require the County to agree to conditions related to "gender ideology" and purport to prohibit diversity, equity and inclusion.  None of these conditions appeared in prior grant Agreements.

20.    Additionally, the applications require compliance with "all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this program."

21.    These new conditions present significant challenges for the County.  For example, what constitutes "promoting gender ideology" is vague and ambiguous and has no relationship to the activity of providing construction or maintenance services for airports and roads.  Further, diversity, equity and inclusion are important tenets of the County's core values and improve the delivery of services to the residents of the County. In upholding these principles, DPW can ensure that veterans, persons with disabilities, the economically disadvantaged and historically marginalized individuals receive the same quality of services and access to County resources as residents who are differently situated.

22.    Moreover, the requirement that the County comply with "all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this

DECLARATION OF ANN M. STILLMAN- 5
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

program" is too broad and difficult to know which of the Administration's Executive Orders would purport to apply to the expenditures under these grants, including any orders related to immigration enforcement.

### Negative Impacts of Losing Funding

23.     These newly imposed conditions force the County to either agree to new conditions imposed on the grants already awarded to the County, including conditions that are vague, ambiguous, and contrary to County values, or lose access to more than $2,400,000 in already-awarded funding to maintain the County's critical infrastructure. Moreover, the 2025 SS4A grant application requesting $4,100,000 would also be at risk if approved, as the County expects to need to agree to the same conditions in a forthcoming grant agreement. The impacts of losing these funds would be devastating for several reasons. The County Airports rely on FAA funding for airfield projects, which maintain the airfield for the use of based and transient aircraft, support economic activity, and ensure regulatory compliance. The SS4A grants provide funding to improve the County roadways for all users that rely on various modes of transportation. The SS4A grant and grant applications build off a prior grant awarded the County where we performed a safety audit of roadways in collaboration with FHWA. The improvements identified in the audit may be realized with the SS4A grant funding.

24.     The most significant impact of a loss of these funds would be directly impacting the airports and roadway users that rely on these facilities on a regular and recurring basis. In addition to aviation users, public safety agencies, emergency responders, and the surrounding communities that depend on safe and accessible airport facilities and roadways would also be affected.

25.     Additionally, the loss of FAA funding would impact the County as Airports are a

DECLARATION OF ANN M. STILLMAN- 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

resource for disaster staging/planning and evacuation and it would also limit the Airports' ability to support youth STEM education programs and host community events that promote aviation awareness and help ensure the long-term viability of the airports. A loss of these funds would directly impact the Airports' ability to complete critical safety and infrastructure projects that support regulatory compliance and operational reliability.

26.    Losing the FAA grants would result in the loss of over $1,900,000 in immediate Airport funding. This would jeopardize critical safety and compliance projects, delay necessary repairs, increase local cost burdens, and threaten the long-term operational integrity of the Airports' enterprise fund. Beyond the Airport tenants and businesses, these impacts would be felt by emergency service providers, law enforcement, U.S. Coast Guard, and the surrounding communities who rely on safe and well-maintained airport infrastructure.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this ⁸ day of July 2025.

_____
ANN M. STILLMAN

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# EXHIBIT A

# ASSURANCES

## AIRPORT SPONSORS

**A. General.**

1. These assurances shall be complied with in the performance of grant agreements for airport development, airport planning, and noise compatibility program grants for airport sponsors.

2. These assurances are required to be submitted as part of the project application by sponsors requesting funds under the provisions of Title 49, U.S.C., subtitle VII, as amended. As used herein, the term "public agency sponsor" means a public agency with control of a public-use airport; the term "private sponsor" means a private owner of a public-use airport; and the term "sponsor" includes both public agency sponsors and private sponsors.

3. Upon acceptance of this grant offer by the sponsor, these assurances are incorporated in and become part of this Grant Agreement.

**B. Duration and Applicability.**

1. **Airport Development or Noise Compatibility Program Projects Undertaken by a Public Agency Sponsor.**

   The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect throughout the useful life of the facilities developed or equipment acquired for an airport development or noise compatibility program project, or throughout the useful life of the project items installed within a facility under a noise compatibility program project, but in any event not to exceed twenty (20) years from the date of acceptance of a grant offer of Federal funds for the project. However, there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport. There shall be no limit on the duration of the terms, conditions, and assurances with respect to real property acquired with federal funds. Furthermore, the duration of the Civil Rights assurance shall be specified in the assurances.

2. **Airport Development or Noise Compatibility Projects Undertaken by a Private Sponsor.**

   The preceding paragraph (1) also applies to a private sponsor except that the useful life of project items installed within a facility or the useful life of the facilities developed or equipment acquired under an airport development or noise compatibility program project shall be no less than ten (10) years from the date of acceptance of Federal aid for the project.

3. **Airport Planning Undertaken by a Sponsor.**

   Unless otherwise specified in this Grant Agreement, only Assurances 1, 2, 3, 5, 6, 13, 18, 23, 25, 30, 32, 33, 34, 37, and 40 in Section C apply to planning projects. The terms, conditions, and assurances of this Grant Agreement shall remain in full force and effect during the life of the project; there shall be no limit on the duration of the assurances regarding Exclusive Rights and Airport Revenue so long as the airport is used as an airport.

C.  **Sponsor Certification.**

The sponsor hereby assures and certifies, with respect to this grant that:

1.  **General Federal Requirements**

The Sponsor will comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this Grant. Performance under this agreement shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the Sponsor and any applicable sub-recipients. The applicable provisions to this agreement include, but are not limited to, the following:

FEDERAL LEGISLATION

a.  49 U.S.C. subtitle VII, as amended.

b.  Davis-Bacon Act, as amended — 40 U.S.C. §§ 3141-3144, 3146, and 3147, et seq.[1]

c.  Federal Fair Labor Standards Act – 29 U.S.C. § 201, et seq.

d.  Hatch Act – 5 U.S.C. § 1501, et seq.[2]

e.  Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4601, et seq.[1, 2]

f.  National Historic Preservation Act of 1966 – Section 106 – 54 U.S.C. § 306108.[1]

g.  Archeological and Historic Preservation Act of 1974 – 54 U.S.C. § 312501, et seq.[1]

h.  Native Americans Grave Repatriation Act – 25 U.S.C. § 3001, et seq.

i.  Clean Air Act, P.L. 90-148, as amended – 42 U.S.C. § 7401, et seq.

j.  Coastal Zone Management Act, P.L. 92-583, as amended – 16 U.S.C. § 1451, et seq.

k.  Flood Disaster Protection Act of 1973 – Section 102(a) - 42 U.S.C. § 4012a.[1]

l.  49 U.S.C. § 303, (formerly known as Section 4(f)).

m.  Rehabilitation Act of 1973 – 29 U.S.C. § 794.

n.  Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) (prohibits discrimination on the basis of race, color, national origin).

o.  Americans with Disabilities Act of 1990, as amended, (42 U.S.C. § 12101 et seq.) (prohibits discrimination on the basis of disability).

p.  Age Discrimination Act of 1975 – 42 U.S.C. § 6101, et seq.

q.  American Indian Religious Freedom Act, P.L. 95-341, as amended.

r.  Architectural Barriers Act of 1968, as amended – 42 U.S.C. § 4151, et seq.[1]

s.  Powerplant and Industrial Fuel Use Act of 1978 – Section 403 – 42 U.S.C. § 8373.[1]

t.  Contract Work Hours and Safety Standards Act – 40 U.S.C. § 3701, et seq.[1]

u.  Copeland Anti-kickback Act – 18 U.S.C. § 874.[1]

v.  National Environmental Policy Act of 1969 – 42 U.S.C. § 4321, et seq.[1]

w.  Wild and Scenic Rivers Act, P.L. 90-542, as amended – 16 U.S.C. § 1271, et seq.

x.  Single Audit Act of 1984 – 31 U.S.C. § 7501, et seq.[2]

y.  Drug-Free Workplace Act of 1988 – 41 U.S.C. §§ 8101 through 8105.

z.  The Federal Funding Accountability and Transparency Act of 2006, as amended (P.L. 109-282, as amended by section 6202 of P.L. 110-252).

aa. Civil Rights Restoration Act of 1987, P.L. 100-259.

bb. Infrastructure Investment and Jobs Act, P.L. 117-58, Title VIII.

cc. Build America, Buy America Act, P.L. 117-58, Title IX.

dd. Endangered Species Act – 16 U.S.C. 1531, et seq.

ee. Title IX of the Education Amendments of 1972, as amended – 20 U.S.C. 1681–1683 and 1685–1687.

ff. Drug Abuse Office and Treatment Act of 1972, as amended – 21 U.S.C. 1101, et seq.

gg. Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

hh. Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970, P.L. 91-616, as amended – 42 U.S.C. § 4541, et seq.

ii. Appropriated Funds to Influence Certain Federal Contracting and Financial Transactions – 31 U.S.C. § 1352.

## EXECUTIVE ORDERS

a.  Executive Order 11990 – Protection of Wetlands

b.  Executive Order 11988 – Floodplain Management

c.  Executive Order 12372 – Intergovernmental Review of Federal Programs

d.  Executive Order 12699 – Seismic Safety of Federal and Federally Assisted New Building Construction[1]

e.  Executive Order 14005 – Ensuring the Future is Made in all of America by All of America's Workers

f.  Executive Order 14149 – Restoring Freedom of Speech and Ending Federal Censorship

g.  Executive Order 14151 – Ending Radical and Wasteful Government DEI Programs and Preferencing

h.  Executive Order 14154 – Unleashing American Energy

i.  Executive Order 14168 – Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

j.  Executive Order 14173 – Ending Illegal Discrimination and Restoring Merit-Based Opportunity

## FEDERAL REGULATIONS

a. 2 CFR Part 180 – OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement).

b. 2 CFR Part 200 and 1201 – Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards. [3, 4, 5]

c. 2 CFR Part 1200 – Nonprocurement Suspension and Debarment.

d. 14 CFR Part 13 – Investigative and Enforcement Procedures.

e. 14 CFR Part 16 – Rules of Practice for Federally-Assisted Airport Enforcement Proceedings.

f. 14 CFR Part 150 – Airport Noise Compatibility Planning.

g. 28 CFR Part 35 – Nondiscrimination on the Basis of Disability in State and Local Government Services.

h. 28 CFR § 50.3 – U.S. Department of Justice Guidelines for the Enforcement of Title VI of the Civil Rights Act of 1964.

i. 29 CFR Part 1 – Procedures for Predetermination of Wage Rates.[1]

j. 29 CFR Part 3 – Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States.[1]

k. 29 CFR Part 5 – Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction (Also Labor Standards Provisions Applicable to Nonconstruction Contracts Subject to the Contract Work Hours and Safety Standards Act).[1]

l. 41 CFR Part 60 – Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor (Federal and Federally-assisted contracting requirements).[1]

m. 49 CFR Part 20 – New Restrictions on Lobbying.

n. 49 CFR Part 21 – Nondiscrimination in Federally-Assisted Programs of the Department of Transportation - Effectuation of Title VI of the Civil Rights Act of 1964.

o. 49 CFR Part 23 – Participation by Disadvantage Business Enterprise in Airport Concessions.

p. 49 CFR Part 24 – Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally-Assisted Programs.[1, 2]

q. 49 CFR Part 26 – Participation by Disadvantaged Business Enterprises in Department of Transportation Financial Assistance Programs.

r. 49 CFR Part 27 – Nondiscrimination on the Basis of Disability in Programs or Activities Receiving Federal Financial Assistance.[1]

s. 49 CFR Part 28 – Enforcement of Nondiscrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Transportation.

t. 49 CFR Part 30 – Denial of Public Works Contracts to Suppliers of Goods and Services of Countries That Deny Procurement Market Access to U.S. Contractors.

u. 49 CFR Part 32 – Governmentwide Requirements for Drug-Free Workplace (Financial Assistance).

v. 49 CFR Part 37 – Transportation Services for Individuals with Disabilities (ADA).

   w.  49 CFR Part 38 – Americans with Disabilities Act (ADA) Accessibility Specifications for Transportation Vehicles.

   x.  49 CFR Part 41 – Seismic Safety.

### FOOTNOTES TO ASSURANCE (C)(1)

1  These laws do not apply to airport planning sponsors.
2  These laws do not apply to private sponsors.
3  2 CFR Part 200 contains requirements for State and Local Governments receiving Federal assistance. Any requirement levied upon State and Local Governments by this regulation shall apply where applicable to private sponsors receiving Federal assistance under Title 49, United States Code.
4  Cost principles established in 2 CFR Part 200 subpart E must be used as guidelines for determining the eligibility of specific types of expenses.
5  Audit requirements established in 2 CFR Part 200 subpart F are the guidelines for audits.

### SPECIFIC ASSURANCES

Specific assurances required to be included in grant agreements by any of the above laws, regulations or circulars are incorporated by reference in this Grant Agreement.

**2.  Responsibility and Authority of the Sponsor.**

   a.  Public Agency Sponsor:

   It has legal authority to apply for this Grant, and to finance and carry out the proposed project; that a resolution, motion or similar action has been duly adopted or passed as an official act of the applicant's governing body authorizing the filing of the application, including all understandings and assurances contained therein, and directing and authorizing the person identified as the official representative of the applicant to act in connection with the application and to provide such additional information as may be required.

   b.  Private Sponsor:

   It has legal authority to apply for this Grant and to finance and carry out the proposed project and comply with all terms, conditions, and assurances of this Grant Agreement. It shall designate an official representative and shall in writing direct and authorize that person to file this application, including all understandings and assurances contained therein; to act in connection with this application; and to provide such additional information as may be required.

**3.  Sponsor Fund Availability.**

It has sufficient funds available for that portion of the project costs which are not to be paid by the United States. It has sufficient funds available to assure operation and maintenance of items funded under this Grant Agreement which it will own or control.

**4.  Good Title.**

   a.  It, a public agency or the Federal government, holds good title, satisfactory to the Secretary, to the landing area of the airport or site thereof, or will give assurance satisfactory to the Secretary that good title will be acquired.

    b. For noise compatibility program projects to be carried out on the property of the sponsor, it holds good title satisfactory to the Secretary to that portion of the property upon which Federal funds will be expended or will give assurance to the Secretary that good title will be obtained.

**5. Preserving Rights and Powers.**

    a. It will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform any or all of the terms, conditions, and assurances in this Grant Agreement without the written approval of the Secretary, and will act promptly to acquire, extinguish or modify any outstanding rights or claims of right of others which would interfere with such performance by the sponsor. This shall be done in a manner acceptable to the Secretary.

    b. Subject to 49 U.S.C. 47107(a)(16) and (x), it will not sell, lease, encumber, or otherwise transfer or dispose of any part of its title or other interests in the property shown on Exhibit A to this application or, for a noise compatibility program project, that portion of the property upon which Federal funds have been expended, for the duration of the terms, conditions, and assurances in this Grant Agreement without approval by the Secretary. If the transferee is found by the Secretary to be eligible under Title 49, United States Code, to assume the obligations of this Grant Agreement and to have the power, authority, and financial resources to carry out all such obligations, the sponsor shall insert in the contract or document transferring or disposing of the sponsor's interest, and make binding upon the transferee all of the terms, conditions, and assurances contained in this Grant Agreement.

    c. For all noise compatibility program projects which are to be carried out by another unit of local government or are on property owned by a unit of local government other than the sponsor, it will enter into an agreement with that government. Except as otherwise specified by the Secretary, that agreement shall obligate that government to the same terms, conditions, and assurances that would be applicable to it if it applied directly to the FAA for a grant to undertake the noise compatibility program project. That agreement and changes thereto must be satisfactory to the Secretary. It will take steps to enforce this agreement against the local government if there is substantial non-compliance with the terms of the agreement.

    d. For noise compatibility program projects to be carried out on privately owned property, it will enter into an agreement with the owner of that property which includes provisions specified by the Secretary. It will take steps to enforce this agreement against the property owner whenever there is substantial non-compliance with the terms of the agreement.

    e. If the sponsor is a private sponsor, it will take steps satisfactory to the Secretary to ensure that the airport will continue to function as a public-use airport in accordance with these assurances for the duration of these assurances.

    f. If an arrangement is made for management and operation of the airport by any agency or person other than the sponsor or an employee of the sponsor, the sponsor will reserve sufficient rights and authority to ensure that the airport will be operated and maintained in accordance with Title 49, United States Code, the regulations and the terms, conditions and assurances in this Grant Agreement and shall ensure that such arrangement also requires compliance therewith.

    g. Sponsors of commercial service airports will not permit or enter into any arrangement that results in permission for the owner or tenant of a property used as a residence, or zoned for

residential use, to taxi an aircraft between that property and any location on airport. Sponsors of general aviation airports entering into any arrangement that results in permission for the owner of residential real property adjacent to or near the airport must comply with the requirements of Sec. 136 of Public Law 112-95 and the sponsor assurances.

**6.  Consistency with Local Plans.**

The project is reasonably consistent with plans (existing at the time of submission of this application) of public agencies that are authorized by the State in which the project is located to plan for the development of the area surrounding the airport.

**7.  Consideration of Local Interest.**

It has given fair consideration to the interest of communities in or near where the project may be located.

**8.  Consultation with Users.**

In making a decision to undertake any airport development project under Title 49, United States Code, it has undertaken reasonable consultations with affected parties using the airport at which project is proposed.

**9.  Public Hearings.**

In projects involving the location of an airport, an airport runway, or a major runway extension, it has afforded the opportunity for public hearings for the purpose of considering the economic, social, and environmental effects of the airport or runway location and its consistency with goals and objectives of such planning as has been carried out by the community and it shall, when requested by the Secretary, submit a copy of the transcript of such hearings to the Secretary. Further, for such projects, it has on its management board either voting representation from the communities where the project is located or has advised the communities that they have the right to petition the Secretary concerning a proposed project.

**10.  Metropolitan Planning Organization.**

In projects involving the location of an airport, an airport runway, or a major runway extension at a medium or large hub airport, the sponsor has made available to and has provided upon request to the metropolitan planning organization in the area in which the airport is located, if any, a copy of the proposed amendment to the airport layout plan to depict the project and a copy of any airport master plan in which the project is described or depicted.

**11.  Pavement Preventive Maintenance-Management.**

With respect to a project approved after January 1, 1995, for the replacement or reconstruction of pavement at the airport, it assures or certifies that it has implemented an effective airport pavement maintenance-management program, and it assures that it will use such program for the useful life of any pavement constructed, reconstructed, or repaired with Federal financial assistance at the airport. It will provide such reports on pavement condition and pavement management programs as the Secretary determines may be useful.

**12.  Terminal Development Prerequisites.**

For projects which include terminal development at a public use airport, as defined in Title 49, it has, on the date of submittal of the project grant application, all the safety equipment required for

certification of such airport under 49 U.S.C. 44706, and all the security equipment required by rule or regulation, and has provided for access to the passenger enplaning and deplaning area of such airport to passengers enplaning and deplaning from aircraft other than air carrier aircraft.

13. **Accounting System, Audit, and Record Keeping Requirements.**

   a. It shall keep all project accounts and records which fully disclose the amount and disposition by the recipient of the proceeds of this Grant, the total cost of the project in connection with which this Grant is given or used, and the amount or nature of that portion of the cost of the project supplied by other sources, and such other financial records pertinent to the project. The accounts and records shall be kept in accordance with an accounting system that will facilitate an effective audit in accordance with the Single Audit Act of 1984.

   b. It shall make available to the Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, for the purpose of audit and examination, any books, documents, papers, and records of the recipient that are pertinent to this Grant. The Secretary may require that an appropriate audit be conducted by a recipient. In any case in which an independent audit is made of the accounts of a sponsor relating to the disposition of the proceeds of a grant or relating to the project in connection with which this Grant was given or used, it shall file a certified copy of such audit with the Comptroller General of the United States not later than six (6) months following the close of the fiscal year for which the audit was made.

14. **Minimum Wage Rates.**

   It shall include, in all contracts in excess of $2,000 for work on any projects funded under this Grant Agreement which involve labor, provisions establishing minimum rates of wages, to be predetermined by the Secretary of Labor under 40 U.S.C. 3141-3144, 3146, and 3147, Public Building, Property, and Works), which contractors shall pay to skilled and unskilled labor, and such minimum rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work.

15. **Veteran's Preference.**

   It shall include in all contracts for work on any project funded under this Grant Agreement which involve labor, such provisions as are necessary to insure that, in the employment of labor (except in executive, administrative, and supervisory positions), preference shall be given to Vietnam era veterans, Persian Gulf veterans, Afghanistan-Iraq war veterans, disabled veterans, and small business concerns owned and controlled by disabled veterans as defined in 49 U.S.C. 47112. However, this preference shall apply only where the individuals are available and qualified to perform the work to which the employment relates.

16. **Conformity to Plans and Specifications.**

   It will execute the project subject to plans, specifications, and schedules approved by the Secretary. Such plans, specifications, and schedules shall be submitted to the Secretary prior to commencement of site preparation, construction, or other performance under this Grant Agreement, and, upon approval of the Secretary, shall be incorporated into this Grant Agreement. Any modification to the approved plans, specifications, and schedules shall also be subject to approval of the Secretary and incorporated into this Grant Agreement.

**17. Construction Inspection and Approval.**

It will provide and maintain competent technical supervision at the construction site throughout the project to assure that the work conforms to the plans, specifications, and schedules approved by the Secretary for the project. It shall subject the construction work on any project contained in an approved project application to inspection and approval by the Secretary and such work shall be in accordance with regulations and procedures prescribed by the Secretary. Such regulations and procedures shall require such cost and progress reporting by the sponsor or sponsors of such project as the Secretary shall deem necessary.

**18. Planning Projects.**

In carrying out planning projects:

a. It will execute the project in accordance with the approved program narrative contained in the project application or with the modifications similarly approved.

b. It will furnish the Secretary with such periodic reports as required pertaining to the planning project and planning work activities.

c. It will include in all published material prepared in connection with the planning project a notice that the material was prepared under a grant provided by the United States.

d. It will make such material available for examination by the public and agrees that no material prepared with funds under this project shall be subject to copyright in the United States or any other country.

e. It will give the Secretary unrestricted authority to publish, disclose, distribute, and otherwise use any of the material prepared in connection with this grant.

f. It will grant the Secretary the right to disapprove the sponsor's employment of specific consultants and their subcontractors to do all or any part of this project as well as the right to disapprove the proposed scope and cost of professional services.

g. It will grant the Secretary the right to disapprove the use of the sponsor's employees to do all or any part of the project.

h. It understands and agrees that the Secretary's approval of this project grant or the Secretary's approval of any planning material developed as part of this grant does not constitute or imply any assurance or commitment on the part of the Secretary to approve any pending or future application for a Federal airport grant.

**19. Operation and Maintenance.**

a. The airport and all facilities which are necessary to serve the aeronautical users of the airport, other than facilities owned or controlled by the United States, shall be operated at all times in a safe and serviceable condition and in accordance with the minimum standards as may be required or prescribed by applicable Federal, state, and local agencies for maintenance and operation. It will not cause or permit any activity or action thereon which would interfere with its use for airport purposes. It will suitably operate and maintain the airport and all facilities thereon or connected therewith, with due regard to climatic and flood conditions. Any proposal to temporarily close the airport for non-aeronautical purposes must first be approved by the Secretary. In furtherance of this assurance, the sponsor will have in effect arrangements for:

1. Operating the airport's aeronautical facilities whenever required;

2. Promptly marking and lighting hazards resulting from airport conditions, including temporary conditions; and

3. Promptly notifying pilots of any condition affecting aeronautical use of the airport. Nothing contained herein shall be construed to require that the airport be operated for aeronautical use during temporary periods when snow, flood, or other climatic conditions interfere with such operation and maintenance. Further, nothing herein shall be construed as requiring the maintenance, repair, restoration, or replacement of any structure or facility which is substantially damaged or destroyed due to an act of God or other condition or circumstance beyond the control of the sponsor.

b. It will suitably operate and maintain noise compatibility program items that it owns or controls upon which Federal funds have been expended.

**20. Hazard Removal and Mitigation.**

It will take appropriate action to assure that such terminal airspace as is required to protect instrument and visual operations to the airport (including established minimum flight altitudes) will be adequately cleared and protected by removing, lowering, relocating, marking, or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

**21. Compatible Land Use.**

It will take appropriate action, to the extent reasonable, including the adoption of zoning laws, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft. In addition, if the project is for noise compatibility program implementation, it will not cause or permit any change in land use, within its jurisdiction, that will reduce its compatibility, with respect to the airport, of the noise compatibility program measures upon which Federal funds have been expended.

**22. Economic Nondiscrimination.**

a. It will make the airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities, including commercial aeronautical activities offering services to the public at the airport.

b. In any agreement, contract, lease, or other arrangement under which a right or privilege at the airport is granted to any person, firm, or corporation to conduct or to engage in any aeronautical activity for furnishing services to the public at the airport, the sponsor will insert and enforce provisions requiring the contractor to:

1. Furnish said services on a reasonable, and not unjustly discriminatory, basis to all users thereof, and

2. Charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that the contractor may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

c.  Each fixed-based operator at the airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport and utilizing the same or similar facilities.

d.  Each air carrier using such airport shall have the right to service itself or to use any fixed-based operator that is authorized or permitted by the airport to serve any air carrier at such airport.

e.  Each air carrier using such airport (whether as a tenant, non-tenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rules, regulations, conditions, rates, fees, rentals, and other charges with respect to facilities directly and substantially related to providing air transportation as are applicable to all such air carriers which make similar use of such airport and utilize similar facilities, subject to reasonable classifications such as tenants or non-tenants and signatory carriers and non-signatory carriers. Classification or status as tenant or signatory shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to those already imposed on air carriers in such classification or status.

f.  It will not exercise or grant any right or privilege which operates to prevent any person, firm, or corporation operating aircraft on the airport from performing any services on its own aircraft with its own employees (including, but not limited to maintenance, repair, and fueling) that it may choose to perform.

g.  In the event the sponsor itself exercises any of the rights and privileges referred to in this assurance, the services involved will be provided on the same conditions as would apply to the furnishing of such services by commercial aeronautical service providers authorized by the sponsor under these provisions.

h.  The sponsor may establish such reasonable, and not unjustly discriminatory, conditions to be met by all users of the airport as may be necessary for the safe and efficient operation of the airport.

i.  The sponsor may prohibit or limit any given type, kind or class of aeronautical use of the airport if such action is necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.

**23. Exclusive Rights.**

It will permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public. For purposes of this paragraph, the providing of the services at an airport by a single fixed-based operator shall not be construed as an exclusive right if both of the following apply:

a.  It would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and

b.  If allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport. It further agrees that it will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities, including, but not limited to charter flights, pilot training, aircraft rental and sightseeing, aerial photography, crop dusting, aerial advertising and surveying, air carrier operations, aircraft sales and services, sale of aviation petroleum products whether or not

conducted in conjunction with other aeronautical activity, repair and maintenance of aircraft, sale of aircraft parts, and any other activities which because of their direct relationship to the operation of aircraft can be regarded as an aeronautical activity, and that it will terminate any exclusive right to conduct an aeronautical activity now existing at such an airport before the grant of any assistance under Title 49, United States Code.

**24. Fee and Rental Structure.**

It will maintain a fee and rental structure for the facilities and services at the airport which will make the airport as self-sustaining as possible under the circumstances existing at the particular airport, taking into account such factors as the volume of traffic and economy of collection. No part of the Federal share of an airport development, airport planning or noise compatibility project for which a Grant is made under Title 49, United States Code, the Airport and Airway Improvement Act of 1982, the Federal Airport Act or the Airport and Airway Development Act of 1970 shall be included in the rate basis in establishing fees, rates, and charges for users of that airport.

**25. Airport Revenues.**

a. All revenues generated by the airport and any local taxes on aviation fuel established after December 30, 1987, will be expended by it for the capital or operating costs of the airport; the local airport system; or other local facilities which are owned or operated by the owner or operator of the airport and which are directly and substantially related to the actual air transportation of passengers or property; or for noise mitigation purposes on or off the airport. The following exceptions apply to this paragraph:

1. If covenants or assurances in debt obligations issued before September 3, 1982, by the owner or operator of the airport, or provisions enacted before September 3, 1982, in governing statutes controlling the owner or operator's financing, provide for the use of the revenues from any of the airport owner or operator's facilities, including the airport, to support not only the airport but also the airport owner or operator's general debt obligations or other facilities, then this limitation on the use of all revenues generated by the airport (and, in the case of a public airport, local taxes on aviation fuel) shall not apply.

2. If the Secretary approves the sale of a privately owned airport to a public sponsor and provides funding for any portion of the public sponsor's acquisition of land, this limitation on the use of all revenues generated by the sale shall not apply to certain proceeds from the sale. This is conditioned on repayment to the Secretary by the private owner of an amount equal to the remaining unamortized portion (amortized over a 20-year period) of any airport improvement grant made to the private owner for any purpose other than land acquisition on or after October 1, 1996, plus an amount equal to the federal share of the current fair market value of any land acquired with an airport improvement grant made to that airport on or after October 1, 1996.

3. Certain revenue derived from or generated by mineral extraction, production, lease, or other means at a general aviation airport (as defined at 49 U.S.C. 47102), if the FAA determines the airport sponsor meets the requirements set forth in Section 813 of Public Law 112-95.

b. As part of the annual audit required under the Single Audit Act of 1984, the sponsor will direct that the audit will review, and the resulting audit report will provide an opinion concerning, the use of airport revenue and taxes in paragraph (a), and indicating whether funds paid or

transferred to the owner or operator are paid or transferred in a manner consistent with Title 49, United States Code and any other applicable provision of law, including any regulation promulgated by the Secretary or Administrator.

c.  Any civil penalties or other sanctions will be imposed for violation of this assurance in accordance with the provisions of 49 U.S.C. 47107.

## 26. Reports and Inspections.

It will:

a.  submit to the Secretary such annual or special financial and operations reports as the Secretary may reasonably request and make such reports available to the public; make available to the public at reasonable times and places a report of the airport budget in a format prescribed by the Secretary;

b.  for airport development projects, make the airport and all airport records and documents affecting the airport, including deeds, leases, operation and use agreements, regulations and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request;

c.  for noise compatibility program projects, make records and documents relating to the project and continued compliance with the terms, conditions, and assurances of this Grant Agreement including deeds, leases, agreements, regulations, and other instruments, available for inspection by any duly authorized agent of the Secretary upon reasonable request; and

d.  in a format and time prescribed by the Secretary, provide to the Secretary and make available to the public following each of its fiscal years, an annual report listing in detail:

    1.  all amounts paid by the airport to any other unit of government and the purposes for which each such payment was made; and

    2.  all services and property provided by the airport to other units of government and the amount of compensation received for provision of each such service and property.

## 27. Use by Government Aircraft.

It will make available all of the facilities of the airport developed with Federal financial assistance and all those usable for landing and takeoff of aircraft to the United States for use by Government aircraft in common with other aircraft at all times without charge, except, if the use by Government aircraft is substantial, charge may be made for a reasonable share, proportional to such use, for the cost of operating and maintaining the facilities used. Unless otherwise determined by the Secretary, or otherwise agreed to by the sponsor and the using agency, substantial use of an airport by Government aircraft will be considered to exist when operations of such aircraft are in excess of those which, in the opinion of the Secretary, would unduly interfere with use of the landing areas by other authorized aircraft, or during any calendar month that:

a.  Five (5) or more Government aircraft are regularly based at the airport or on land adjacent thereto; or

b.  The total number of movements (counting each landing as a movement) of Government aircraft is 300 or more, or the gross accumulative weight of Government aircraft using the airport (the total movement of Government aircraft multiplied by gross weights of such aircraft) is in excess of five million pounds.

**28. Land for Federal Facilities.**

It will furnish without cost to the Federal Government for use in connection with any air traffic control or air navigation activities, or weather-reporting and communication activities related to air traffic control, any areas of land or water, or estate therein as the Secretary considers necessary or desirable for construction, operation, and maintenance at Federal expense of space or facilities for such purposes. Such areas or any portion thereof will be made available as provided herein within four months after receipt of a written request from the Secretary.

**29. Airport Layout Plan.**

   a.  The airport owner or operator will maintain a current airport layout plan of the airport showing:

      1.  boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes and proposed additions thereto;

      2.  the location and nature of all existing and proposed airport facilities and structures (such as runways, taxiways, aprons, terminal buildings, hangars and roads), including all proposed extensions and reductions of existing airport facilities;

      3.  the location of all existing and proposed non-aviation areas and of all existing improvements thereon; and

      4.  all proposed and existing access points used to taxi aircraft across the airport's property boundary.

   b.  Subject to subsection 49 U.S.C. 47107(x), the Secretary will review and approve or disapprove the plan and any revision or modification of the plan before the plan, revision, or modification takes effect.

   c.  The owner or operator will not make or allow any alteration in the airport or any of its facilities unless the alteration—

      1. is outside the scope of the Secretary's review and approval authority as set forth in subsection (x); or

      2. complies with the portions of the plan approved by the Secretary.

   d.  When the airport owner or operator makes a change or alteration in the airport or the facilities  which the Secretary determines adversely affects the safety, utility, or efficiency of any federally owned, leased, or funded property on or off the airport and which is not in conformity with the airport layout plan as approved by the Secretary, the owner or operator will, if requested, by the Secretary:

      1.  eliminate such adverse effect in a manner approved by the Secretary; or

      2.  bear all costs of relocating such property or its replacement to a site acceptable to the Secretary and of restoring the property or its replacement to the level of safety, utility, efficiency, and cost of operation that existed before the alteration was made, except in the case of a relocation or replacement of an existing airport facility due to a change in the Secretary's design standards beyond the control of the airport sponsor.

**30. Civil Rights.**

It will promptly take any measures necessary to ensure that no person in the United States shall, on the grounds of race, color, and national origin (including limited English proficiency) in accordance with the provisions of  Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4); creed and sex per 49 U.S.C. 47123 and related requirements; age per the Age Discrimination Act of 1975 and related requirements; or disability per the Americans with Disabilities Act of 1990 and related requirements, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program and activity conducted with, or benefiting from, funds received from this Grant.

a. Using the definitions of activity, facility, and program as found and defined in 49 CFR 21.23(b) and 21.23(e), the sponsor will facilitate all programs, operate all facilities, or conduct all programs in compliance with all non-discrimination requirements imposed by or pursuant to these assurances.

b. Applicability

1. Programs and Activities. If the sponsor has received a grant (or other federal assistance) for any of the sponsor's program or activities, these requirements extend to all of the sponsor's programs and activities.

2. Facilities. Where it receives a grant or other federal financial assistance to construct, expand, renovate, remodel, alter, or acquire a facility, or part of a facility, the assurance extends to the entire facility and facilities operated in connection therewith.

3. Real Property. Where the sponsor receives a grant or other Federal financial assistance in the form of, or for the acquisition of real property or an interest in real property, the assurance will extend to rights to space on, over, or under such property.

c. Duration.

The sponsor agrees that it is obligated to this assurance for the period during which Federal financial assistance is extended to the program, except where the Federal financial assistance is to provide, or is in the form of, personal property, or real property, or interest therein, or structures or improvements thereon, in which case the assurance obligates the sponsor, or any transferee for the longer of the following periods:

1. So long as the airport is used as an airport, or for another purpose involving the provision of similar services or benefits; or

2. So long as the sponsor retains ownership or possession of the property.

d. Required Solicitation Language. It will include the following notification in all solicitations for bids, Requests For Proposals for work, or material under this Grant Agreement and in all proposals for agreements, including airport concessions, regardless of funding source:

"The (**[Selection Criteria: Sponsor Name]**), in accordance with the provisions of Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d to 2000d-4) and the Regulations, hereby notifies all bidders or offerors that it will affirmatively ensure that for any contract entered into pursuant to this advertisement,  all businesses will be afforded full and fair opportunity to submit bids in response to this invitation and no businesses will be discriminated against on the grounds of

race, color, national origin (including limited English proficiency), creed, sex , age, or disability in consideration for an award."

e.   Required Contract Provisions.

1.   It will insert the non-discrimination contract clauses requiring compliance with the acts and regulations relative to non-discrimination in Federally-assisted programs of the Department of Transportation (DOT), and incorporating the acts and regulations into the contracts by reference in every contract or agreement subject to the non-discrimination in Federally-assisted programs of the DOT acts and regulations.

2.   It will include a list of the pertinent non-discrimination authorities in every contract that is subject to the non-discrimination acts and regulations.

3.   It will insert non-discrimination contract clauses as a covenant running with the land, in any deed from the United States effecting or recording a transfer of real property, structures, use, or improvements thereon or interest therein to a sponsor.

4.   It will insert non-discrimination contract clauses prohibiting discrimination on the basis of race, color, national origin (including limited English proficiency), creed, sex, age, or disability as a covenant running with the land, in any future deeds, leases, license, permits, or similar instruments entered into by the sponsor with other parties:

a.   For the subsequent transfer of real property acquired or improved under the applicable activity, project, or program; and

b.   For the construction or use of, or access to, space on, over, or under real property acquired or improved under the applicable activity, project, or program.

f.   It will provide for such methods of administration for the program as are found by the Secretary to give reasonable guarantee that it, other recipients, sub-recipients, sub-grantees, contractors, subcontractors, consultants, transferees, successors in interest, and other participants of Federal financial assistance under such program will comply with all requirements imposed or pursuant to the acts, the regulations, and this assurance.

g.   It agrees that the United States has a right to seek judicial enforcement with regard to any matter arising under the acts, the regulations, and this assurance.

**31.  Disposal of Land.**

a.   For land purchased under a grant for airport noise compatibility purposes, including land serving as a noise buffer, it will dispose of the land, when the land is no longer needed for such purposes, at fair market value, at the earliest practicable time. That portion of the proceeds of such disposition which is proportionate to the United States' share of acquisition of such land will be, at the discretion of the Secretary, (1) reinvested in another project at the airport, or (2) transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1.   Reinvestment in an approved noise compatibility project;

2.   Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C.  47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

If land acquired under a grant for noise compatibility purposes is leased at fair market value and consistent with noise buffering purposes, the lease will not be considered a disposal of the land. Revenues derived from such a lease may be used for an approved airport development project that would otherwise be eligible for grant funding or any permitted use of airport revenue.

b. For land purchased under a grant for airport development purposes (other than noise compatibility), it will, when the land is no longer needed for airport purposes, dispose of such land at fair market value or make available to the Secretary an amount equal to the United States' proportionate share of the fair market value of the land. That portion of the proceeds of such disposition which is proportionate to the United States' share of the cost of acquisition of such land will, upon application to the Secretary, be reinvested or transferred to another eligible airport as prescribed by the Secretary. The Secretary shall give preference to the following, in descending order:

1. Reinvestment in an approved noise compatibility project;

2. Reinvestment in an approved project that is eligible for grant funding under 49 U.S.C. 47117(e);

3. Reinvestment in an approved airport development project that is eligible for grant funding under 49 U.S.C. 47114, 47115, or 47117;

4. Transfer to an eligible sponsor of another public airport to be reinvested in an approved noise compatibility project at that airport; or

5. Payment to the Secretary for deposit in the Airport and Airway Trust Fund.

c. Land shall be considered to be needed for airport purposes under this assurance if (1) it may be needed for aeronautical purposes (including runway protection zones) or serve as noise buffer land, and (2) the revenue from interim uses of such land contributes to the financial self-sufficiency of the airport. Further, land purchased with a grant received by an airport operator or owner before December 31, 1987, will be considered to be needed for airport purposes if the Secretary or Federal agency making such grant before December 31, 1987, was notified by the operator or owner of the uses of such land, did not object to such use, and the land continues to be used for that purpose, such use having commenced no later than December 15, 1989.

d. Disposition of such land under (a), (b), or (c) will be subject to the retention or reservation of any interest or right therein necessary to ensure that such land will only be used for purposes which are compatible with noise levels associated with operation of the airport.

## 32. Engineering and Design Services.

If any phase of such project has received Federal funds under Chapter 471 subchapter 1 of Title 49 U.S.C., it will award each contract, or sub-contract for program management, construction

management, planning studies, feasibility studies, architectural services, preliminary engineering, design, engineering, surveying, mapping or related services in the same manner as a contract for architectural and engineering services is negotiated under Chapter 11 of Title 40 U S.C., or an equivalent qualifications-based requirement prescribed for or by the sponsor of the airport.

**33. Foreign Market Restrictions.**

It will not allow funds provided under this Grant to be used to fund any project which uses any product or service of a foreign country during the period in which such foreign country is listed by the United States Trade Representative as denying fair and equitable market opportunities for products and suppliers of the United States in procurement and construction.

**34. Policies, Standards, and Specifications.**

It will carry out any project funded under an Airport Improvement Program Grant in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, current FAA Advisory Circulars for AIP projects as of [Selection Criteria: Project Application Date].

**35. Relocation and Real Property Acquisition.**

   a.  It will be guided in acquiring real property, to the greatest extent practicable under State law, by the land acquisition policies in Subpart B of 49 CFR Part 24 and will pay or reimburse property owners for necessary expenses as specified in Subpart B.

   b.  It will provide a relocation assistance program offering the services described in Subpart C of 49 CFR Part 24 and fair and reasonable relocation payments and assistance to displaced persons as required in Subpart D and E of 49 CFR Part 24.

   c.  It will make available within a reasonable period of time prior to displacement, comparable replacement dwellings to displaced persons in accordance with Subpart E of 49 CFR Part 24.

**36. Access By Intercity Buses.**

The airport owner or operator will permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport; however, it has no obligation to fund special facilities for intercity buses or for other modes of transportation.

**37. Disadvantaged Business Enterprises.**

The sponsor shall not discriminate on the basis of race, color, national origin, or sex, in the award and performance of any DOT-assisted contract covered by 49 CFR Part 26, or in the award and performance of any concession activity contract covered by 49 CFR Part 23. In addition, the sponsor shall not discriminate on the basis of race, color, national origin or sex in the administration of its Disadvantaged Business Enterprise (DBE) and Airport Concessions Disadvantaged Business Enterprise (ACDBE) programs or the requirements of 49 CFR Parts 23 and 26. The sponsor shall take all necessary and reasonable steps under 49 CFR Parts 23 and 26 to ensure nondiscrimination in the award and administration of DOT-assisted contracts, and/or concession contracts. The sponsor's DBE and ACDBE programs, as required by 49 CFR Parts 26 and 23, and as approved by DOT, are incorporated by reference in this agreement. Implementation of these programs is a legal obligation and failure to carry out its terms shall be treated as a violation of this agreement. Upon notification to the sponsor of its failure to carry out its approved program, the Department may impose sanctions as provided for under Parts 26 and 23 and may, in appropriate cases, refer the matter for

enforcement under 18 U.S.C. § 1001 and/or the Program Fraud Civil Remedies Act of 1986 (31 U.S.C. §§ 3801-3809, 3812).

**38. Hangar Construction.**

If the airport owner or operator and a person who owns an aircraft agree that a hangar is to be constructed at the airport for the aircraft at the aircraft owner's expense, the airport owner or operator will grant to the aircraft owner for the hangar a long term lease that is subject to such terms and conditions on the hangar as the airport owner or operator may impose.

**39. Competitive Access.**

a.  If the airport owner or operator of a medium or large hub airport (as defined in 49 U.S.C. § 47102) has been unable to accommodate one or more requests by an air carrier for access to gates or other facilities at that airport in order to allow the air carrier to provide service to the airport or to expand service at the airport, the airport owner or operator shall transmit a report to the Secretary that:

    1.  Describes the requests;

    2.  Provides an explanation as to why the requests could not be accommodated; and

    3.  Provides a time frame within which, if any, the airport will be able to accommodate the requests.

b.  Such report shall be due on either February 1 or August 1 of each year if the airport has been unable to accommodate the request(s) in the six-month period prior to the applicable due date.

**40. Access to Leaded Aviation Gasoline**

a.  If 100-octane low lead aviation gasoline (100LL) was made available at an airport, at any time during calendar year 2022, an airport owner or operator may not restrict or prohibit the sale of, or self-fueling with 100-octane low lead aviation gasoline.

b.  This requirement remains until the earlier of December 31, 2030, or the date on which the airport or any retail fuel seller at the airport makes available an unleaded aviation gasoline that has been authorized for use by the FAA as a replacement for 100-octane low lead aviation gasoline for use in nearly all piston-engine aircraft and engine models; and meets either an industry consensus standard or other standard that facilitates the safe use, production, and distribution of such unleaded aviation gasoline, as determined appropriate by the FAA.

c.  An airport owner or operator understands and agrees, that any violation of this grant assurance is subject to civil penalties as provided for in 49 U.S.C. § 46301(a)(8).

# EXHIBIT B

Revised March 2025

| | | |
|---|---|---|
| 1. **Federal Award No.** | 2. **Effective Date**<br>See No. 16 Below | 3. **Assistance Listings No.**<br>20.939 |

4. **Award To**
County of San Mateo
555 County Center, 5th Floor
Redwood City, CA 94063-1665

5. **Sponsoring Office**
U.S. Department of Transportation
Federal Highway Administration
Office of Safety
1200 New Jersey Avenue, SE
HSSA-1, Mail Drop E71-117
Washington, DC 20590

Unique Entity Id.: MFFRTNKE5KP7
TIN No.: 94-6000532

6. **Period of Performance**
Effective Date of Award – 60 months

7. **Total Amount**

| | |
|---|---|
| Federal Share: | $480,000.00 |
| Recipient Share: | $120,000.00 |
| Other Federal Funds: | $0 |
| Other Funds: | $0 |
| Total: | $600,000.00 |

8. **Type of Agreement**
Grant

9. **Authority**
Section 24112 of the Infrastructure Investment and Jobs Act (IIJA, Pub. L. 117–58, November 15, 2021)

10. **Procurement Request No.**
HSA250280PR [insert PR Number]

11. **Federal Funds Obligated**
Base Phase: $320,000.00

12. **Submit Payment Requests To**
See Article 5.

13. **Accounting and Appropriations Data [insert Data]**

14. **Description of the Project** The phased project will consist of a planning study with preliminary engineering for roadway improvements and the piloting of low-cost demonstration activities to test the effectiveness of proposed improvements that will be recommended as part of the planning study process, with community input.

1 of 22

Revised March 2025

**RECIPIENT**

**15.  Signature of Person Authorized to Sign**

_____

Signature                                    Date

Name: Ann M. Stillman

Title: Director of Public Works

**FEDERAL HIGHWAY ADMINISTRATION**

**16.  Signature of Agreement Officer**

_____

Signature                                    Date

Name:

Title: Agreement Officer

2 of 22

Revised March 2025

### U.S. DEPARTMENT OF TRANSPORTATION

### GRANT AGREEMENT UNDER THE
### FISCAL YEAR 2024 SAFE STREETS AND ROADS FOR ALL GRANT PROGRAM

This agreement is between the United States Department of Transportation's (the ("**USDOT**") Federal Highway Administration (the "**FHWA**") and the County of San Mateo (the "**Recipient**").

This agreement reflects the selection of the Recipient to receive a Safe Streets and Roads for All ("**SS4A**") Grant for the Pescadero Creek Road Rural Safety Planning and Demonstration Project.

The parties therefore agree to the following:

### ARTICLE 1
### GENERAL TERMS AND CONDITIONS

**1.1    General Terms and Conditions.**

(a) In this agreement, "**General Terms and Conditions**" means the content of the document titled "General Terms and Conditions Under the Fiscal Year 2024 Safe Streets and Roads for All ("SS4A") Grant Program," dated March 17, 2025, which is available at https://www.transportation.gov/grants/ss4a/grant-agreements under "Fiscal Year 2024." Articles 7–30 are in the General Terms and Conditions. The General Terms and Conditions are part of this agreement.

(b) The Recipient acknowledges that it has knowledge of the General Terms and Conditions. Recipient also states that it is required to comply with all applicable Federal laws and regulations including, but not limited to, the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (2 CFR part 200); National Environmental Policy Act (NEPA) (42 U.S.C. § 4321 et seq.); and Build America, Buy America Act (IIJA, div. G §§ 70901-27).

(c) The Recipient acknowledges that the General Terms and Conditions impose obligations on the Recipient and that the Recipient's non-compliance with the General Terms and Conditions may result in remedial action, termination of the SS4A Grant, disallowing costs incurred for the Project, requiring the Recipient to refund to the FHWA the SS4A Grant, and reporting the non-compliance in the Federal-government-wide integrity and performance system.

**ARTICLE 2**
**APPLICATION, PROJECT, AND AWARD**

**2.1    Application.**

Application Title:

Pescadero Creek Road Rural Safety Planning and Demonstration Project

Application Date:      May 16, 2024

**2.2    Award Amount.**

SS4A Grant Amount: $480,000.00

**2.3    Federal Obligation Information.**

Federal Obligation Type:      Multiple

| Obligation Condition Table | | |
|---|---|---|
| **Phase the Project** | **Allocation of the SS4A Grant** | **Obligation Condition** |
| Base Phase: Pre-NEPA | $320,000.00 | |

Revised March 2025

| Obligation Condition Table | | |
|---|---|---|
| **Phase the Project** | **Allocation of the SS4A Grant** | **Obligation Condition** |
| Option Phase 1: Final Design | $50,000.00 | The Recipient shall not expend any funds (Federal or non-Federal) for, seek reimbursement of eligible costs, or otherwise begin any part of the final design and construction of an Implementation Project unless and until: |
| | | (1) The requirements of the National Environmental Policy Act (42 U.S.C. § 4321 et seq.) ("NEPA"), Section 106 of the National Historic Preservation Act (16 U.S.C. § 470f) ("NHPA"), and any other applicable environmental laws and regulations have been met; and |
| | | (2) FHWA, or a State with applicable NEPA Assignment authority, has approved the NEPA document for the Project and provided the Recipient with a written notice that the environmental review process is complete; and |
| | | (3) FHWA has obligated additional funds for this phase and notified the Recipient in writing that the Recipient may proceed to the next activity after NEPA approval, and the Recipient has acknowledged receipt in writing of FHWA's notification. Recipient shall not proceed with any such activities until (2) and (3) as described in this section are met. Costs that are incurred before (2) and (3) as described in this section are met are not allowable costs under this agreement. |
| | | Extent of activities that are permissible before NEPA is complete are those activities constituting "preliminary design" as specified in FHWA Order 6640.1A. |

Revised March 2025

| Obligation Condition Table | | |
|---|---|---|
| **Phase the Project** | **Allocation of the SS4A Grant** | **Obligation Condition** |
| Option Phase 2: Construction | $110,000.00 | The Recipient shall not expend any funds (Federal or non-Federal) for, seek reimbursement of eligible costs, or otherwise begin any part of the construction or final design and construction of an Implementation Project unless and until: <br><br> (1)  The requirements of the National Environmental Policy Act (42 U.S.C. § 4321 et seq.) ("NEPA"), Section 106 of the National Historic Preservation Act (16 U.S.C. § 470f) ("NHPA"), and any other applicable environmental laws and regulations have been met; and <br><br> (2) FHWA, or a State with applicable NEPA Assignment authority, has approved the NEPA document for the Project and provided the Recipient with a written notice that the environmental review process is complete; and <br><br> (3)  FHWA has obligated additional funds for this phase and notified the Recipient in writing that the Recipient may proceed to the next activity after NEPA approval, and the Recipient has acknowledged receipt in writing of FHWA's notification. Recipient shall not proceed with any such activities until (2) and (3) as described in this section are met. Costs that are incurred before (2) and (3) as described in this section are met are not allowable costs under this agreement. <br><br> Extent of activities that are permissible before NEPA is complete are those activities constituting "preliminary design" as specified in FHWA Order 6640.1A. |

Revised March 2025

**2.4    Budget Period.**

Base Phase Budget Period:   Effective Date of Award – 60 months

Option Phase 1 Budget Period:  Reserved

Option Phase 2 Budget Period:  Reserved

**2.5    Grant Designation.**

Designation:   Planning and Demonstration

## ARTICLE 3
## SUMMARY PROJECT INFORMATION

**3.1    Summary of Project's Statement of Work.**

Planning and Demonstration Narrative: The Pescadero Creek Road Rural Safety Planning and Demonstration Project will take the next step and build on an FHWA Road Safety Audit, conducted for Pescadero Creek Road (PCR) in 2022. The project will consist of a planning study and demonstration activity for roadway safety improvements.  The piloting of low-cost demonstration activities will occur across four key intersections of Pescadero Creek Road: Stage Road, North Street, Cloverdale Road, and Butano Cutoff. Demonstration activities include evidence-based safety improvements via impermanent roadway design and removable barriers, such as: high-visibility crosswalk pavement markings, curb extensions with pavement markings and delineators, centerline hardening with delineators, and paint/plastic pedestrian refuge islands to test the effectiveness of proposed improvements recommended as part of the planning study process.  Robust community engagement will take place to ensure that recommended designs for demonstration improvements are informed by and consider community input. These rural main street intersections are associated with fatalities and serious injuries and provide access between residences, local schools, grocery stores, restaurants, churches and other services. Proposed demonstration activities will be provided at these key intersections to help better protect pedestrians and bicyclists and better assist motorists navigating through conflict points to avoid potential collisions, providing a comfortable and accessible facility for all roadway users.

The project will be completed in three phases.

Base Phase: Pre-NEPA:  This phase will include planning efforts with robust community outreach and input.

Option Phase 1: Final Design, Right-of-Way, and Utility Relocation: Building on work completed in the preceding phase, this phase will include final design of the demonstration projects.

Option Phase 2: Construction: Pilot will be implemented through demonstration activities at key intersections on Pescadero Creek Road.

**3.2    Project's Estimated Schedule.**

Revised March 2025

**Demonstration Activity Schedule**

| Milestone | Schedule Date |
|---|---|
| Planned NEPA Completion Date: | 06/30/2028 |
| Planned Construction Substantial Completion and Open to Public Use Date: | 06/30/2029 |
| Planned SS4A Final Report Date: | 06/30/2030 |

**Supplemental Planning Schedule**

| Milestone | Schedule Date |
|---|---|
| Planned Final Plan Publicly Available Date: | 06/30/2030 |
| Planned SS4A Final Report Date: | 06/30/2030 |

### 3.3    Project's Estimated Costs.

(a) Eligible Project Costs

| Eligible Project Costs | |
|---|---:|
| SS4A Grant Amount: | $480,000.00 |
| Other Federal Funds: | $0 |
| State Funds: | $0 |
| Local Funds: | $120,000.00 |
| In-Kind Match: | $0 |
| Other Funds: | $0 |
| Total Eligible Project Cost: | $600,000.00 |

(b) Cost Classification Table – For Planning and Demonstration Grants with demonstration activities and Implementation Grants Only

Revised March 2025

| Cost Classification | Total Costs | Non-SS4A Previously Incurred Costs | Eligible Costs |
|---|---|---|---|
| Administrative and legal expenses | $180,000.00 | | $180,000.00 |
| Architectural and engineering fees | $180,000.00 | | $180,000.00 |
| Construction | $200,000.00 | | $200,000.00 |
| Miscellaneous | $40,000.00 | | $40,000.00 |
| **Project Total** | **$600,000.00** | | **$600,000.00** |

**Commented [WN1]:** $180,000

**Commented [WN2]:** $180,000

**Commented [PD3]:** Check number numbers. They don't add up to 600K.

(c) Indirect Costs

Indirect costs are allowable under this Agreement in accordance with 2 CFR part 200 and the Recipient's approved Budget Application.  In the event the Recipient's indirect cost rate changes, the Recipient will notify FHWA of the planned adjustment and provide supporting documentation for such adjustment. This Indirect Cost provision does not operate to waive the limitations on Federal funding provided in this document. The Recipient's indirect costs are allowable only insofar as they do not cause the Recipient to exceed the total obligated funding.

## ARTICLE 4

## CONTACT INFORMATION

**4.1    Recipient Contact(s).**

Krzysztof Lisaj
Deputy Director, Engineering and Resource Protection
County of San Mateo Department of Public Works
555 County Center, 5th Floor. Redwood City, CA 94063-1665
650-363-4100
klisaj@smcgov.org

**4.2    Recipient Key Personnel.**

| Name | Title or Position |
|---|---|
| Carter Choi | Principal Civil Engineer |
| Wency Ng | Senior Civil Engineer |

**4.3    USDOT Project Contact(s).**

Safe Streets and Roads for All Program Manager
Federal Highway Administration
Office of Safety

9 of 22

HSSA-1, Mail Stop:  E71-117
1200 New Jersey Avenue, S.E.
Washington, DC 20590
202-366-2822
SS4A.FHWA@dot.gov

and


Agreement Officer (AO)
Federal Highway Administration
Office of Acquisition and Grants Management
HCFA-42, Mail Stop E62-310
1200 New Jersey Avenue, S.E.
Washington, DC 20590
202-493-2402
HCFASS4A@dot.gov

and


Division Administrator – California
Agreement Officer's Representative (AOR)
650 Capitol Mall, Ste. 4-100
Sacramento, CA 95814
916-498-5015
Hdaca@dot.gov

and


Mike Shami
California Division Office Lead Point of Contact
Discretionary Grant Manager
650 Capitol Mall, Suite 4-100, Sacramento, CA 95814
(916) 498-5853
Mike.shami@dot.gov

Revised March 2025

# ARTICLE 5
## USDOT ADMINISTRATIVE INFORMATION

**5.1    Office for Subaward and Contract Authorization.**

USDOT Office for Subaward and Contract Authorization:   FHWA Office of Acquisition and Grants Management

SUBAWARDS AND CONTRACTS APPROVAL

Note: See 2 CFR § 200.331, Subrecipient and contractor determinations, for definitions of subrecipient (who is awarded a subaward) versus contractor (who is awarded a contract).

Note: Recipients with a procurement system deemed approved and accepted by the Government or by the Agreement Officer (the "AO") are exempt from the requirements of this clause. See 2 CFR 200.317 through 200.327. Note:  This clause is only applicable to grants that do not include construction.

In accordance with 2 CFR 200.308(f)(6), the recipient or subrecipient shall obtain prior written approval from the USDOT agreement officer for the subaward, if the subaward activities were not proposed in the application or approved in the Federal award. This provision is in accordance with 2 CFR 200.308 (f) (6) and does not apply to procurement transactions for goods and services. Approval will be issued through written notification from the AO or a formal amendment to the Agreement.

The following subawards and contracts are currently approved under the Agreement by the AO. This list does not include supplies, material, equipment, or general support services which are exempt from the pre-approval requirements of this clause.

**5.2    Reimbursement Requests**

(a) The Recipient may request reimbursement of costs incurred within the budget period of this agreement if those costs do not exceed the amount of funds obligated and are allowable under the applicable cost provisions of 2 C.F.R. Part 200, Subpart E. The Recipient shall not request reimbursement more frequently than monthly.

(b) The Recipient shall use the DELPHI iSupplier System to submit requests for reimbursement to the payment office. When requesting reimbursement of costs incurred or credit for cost share incurred, the Recipient shall electronically submit supporting cost detail with the SF-270 (Request for Advance or Reimbursement) or SF-271 (Outlay Report and Request for Reimbursement for Construction Programs) to clearly document all costs incurred.

(c) The Recipient's supporting cost detail shall include a detailed breakout of all costs incurred, including direct labor, indirect costs, other direct costs, travel, etc., and the Recipient shall identify the Federal share and the Recipient's share of costs. If the Recipient does not provide sufficient detail in a request for reimbursement, the Agreement Officer's Representative (the "**AOR**") may withhold processing that request until the Recipient provides sufficient detail.

(d) The USDOT shall not reimburse costs unless the AOR reviews and approves the costs to ensure that progress on this agreement is sufficient to substantiate payment.

(e) In the rare instance the Recipient is unable to receive electronic funds transfers (EFT), payment by EFT would impose a hardship on the Recipient because of their inability to manage an account at a financial institution, and/or the Recipient is unable to use the DELPHI iSupplier System to submit their requests for disbursement, the FHWA may waive the requirement that the Recipient use the

Revised March 2025

DELPHI iSupplier System. The Recipient shall contact the Division Office Lead Point of Contact for instructions on and requirements related to pursuing a waiver.

(f) The requirements set forth in these terms and conditions supersede previous financial invoicing requirements for Recipients.

## ARTICLE 6
## SPECIAL GRANT TERMS

**6.1**   SS4A funds must be expended within five years after the grant agreement is executed and DOT obligates the funds, which is the budget period end date in section 10.3 of the Terms and Conditions and section 2.4 in this agreement.

**6.2**   The Recipient demonstrates compliance with civil rights obligations and nondiscrimination laws, including Titles VI of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act, and accompanying regulations. Recipients of Federal transportation funding will also be required to comply fully with regulations and guidance for the ADA, Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, and all other civil rights requirements.

**6.3**   SS4A Funds will be allocated to the Recipient and made available to the Recipient in accordance with FHWA procedures.

**6.4**   The Recipient of a Planning and Demonstration Grant acknowledges that the Supplemental Action Plan will be made publicly available and agrees that it will publish the final Supplemental Action Plan on a publicly available website.

**6.5**   The Recipient of a Planning and Demonstration Grant that involves a demonstration activity agrees to provide an assessment of each demonstration activity and update the existing Action Plan, which will incorporate the information gathered in the Action Plan's list of projects or strategies and/or inform another part of the existing Action Plan.  The Recipient also agrees that demonstration activities are temporary in nature and must be removed and/or ended following the conclusion of the project if the assessment of the demonstration activities does not affirm that the activities provide safety benefits.

**6.6**   The Recipient acknowledges that it is required to conduct certain environmental analyses and to prepare and submit to FHWA, or State with applicable NEPA Assignment authority, documents required under NEPA, and other applicable environmental statutes and regulations before the Government will obligate funds for Option Phase 1 under this agreement and provide the Recipient with a written notice to proceed with Option Phase 1.

**6.7**   The Government's execution of this agreement does not in any way constitute pre-approval or waiver of any of the regulations imposed upon Recipient under the applicable Federal rules, regulations and laws regarding SS4A projects undertaken in accordance with the terms and conditions of this agreement. The Recipient shall comply with all applicable Federal requirements before incurring any costs under this agreement.

**6.8**   The Recipient must coordinate its supplemental planning and/or demonstration activities with the jurisdiction that has an existing Action Plan in place that was used to apply for the supplemental planning and/or demonstration activities.

Revised March 2025

**6.9**    There are no other special grant requirements.

Revised March 2025

**ATTACHMENT A**
**PERFORMANCE MEASUREMENT INFORMATION**

**Study Area:** Pescadero Creek Road from Stage Road to State Route 84
**Baseline Measurement Date:** 06/30/2029
**Baseline Report Date:** 08/30/2029

**Table 1: Performance Measure Table**

| Measure | Category and Description | Measurement Frequency and Reporting Deadline |
|---|---|---|
| Safety Performance<br><br>[for Implementation Grants and Planning and Demonstration Grants with demonstration activities] | Fatalities:  Total annual fatalities in the project location(s) | Annually and within 120 days after the end of the period of performance |
| Safety Performance<br><br>[for Implementation Grants and Planning and Demonstration Grants with demonstration activities] | Serious Injuries:  Total annual serious injuries in the project location(s) [if available] | Annually and within 120 days after the end of the period of performance |
| Safety Performance<br><br>[for Implementation Grants and Planning and Demonstration Grants with demonstration activities] | Crashes by Road User Category:  Total annual crashes in the project location(s) broken out by types of roadway users involved (e.g., pedestrians, bicyclists, motorcyclist, passenger vehicle occupant, commercial vehicle occupant) | Annually and within 120 days after the end of the period of performance |
| Costs<br><br>[for all Grants] | Project Costs:  Quantification of the cost of each eligible project carried out using the grant | Within 120 days after the end of the period of performance |
| Outcomes and Benefits<br><br>[for Implementation Grants and Planning and | Quantitative Project Benefits:  Quantification of evidence-based projects or strategies implemented (e.g., miles of | Within 120 days after the end of the |

Revised March 2025

| Measure | Category and Description | Measurement Frequency and Reporting Deadline |
|---|---|---|
| Demonstration Grants with demonstration activities] | sidewalks installed, number of pedestrian crossings upgraded, etc.) | period of performance |
| Outcomes and Benefits<br><br>[for Implementation Grants and Planning and Demonstration Grants with demonstration activities] | Qualitative Project Benefits:  Qualitative description of evidence-based projects or strategies implemented (e.g., narrative descriptions, testimonials, high-quality before and after photos, etc.) | Within 120 days after the end of the period of performance |
| Outcomes and Benefits<br><br>[for Implementation Grants and Planning and Demonstration Grants with demonstration activities] | Project Location(s):  GIS/geo coordinate information identifying specific project location(s) | Within 120 days after the end of the period of performance |
| Lessons Learned and Recommendations<br><br>[for all Grants] | Lessons Learned and Recommendations: Description of lessons learned and any recommendations relating to future projects or strategies to prevent death and serious injury on roads and streets. | Within 120 days after the end of the period of performance |

Revised March 2025

**ATTACHMENT B**
**CHANGES FROM APPLICATION**

Describe all material differences between the scope, schedule, and budget described in the application and the scope, schedule, and budget described in Article 3. The purpose of Attachment B is to clearly and accurately document any differences in scope, schedule, and budget to establish the parties' knowledge and acceptance of those differences. See Article 11 for the Statement of Work, Schedule, and Budget Changes. If there are no changes, please insert "N/A" after "Scope," "Schedule," or "Budget." If there are changes to the budget, please complete the table below. Otherwise, leave the table below blank.

**Scope**: The project scope was modified from Implementation to Planning and Demonstration by the U.S. DOT.

**Schedule**: Change in schedule is included to allow for additional time to account for unforeseen circumstances, as permitted by the funding program.

**Budget**: $600,000.00

The table below provides a summary comparison of the project budget.

| Fund Source | Application $ | Application % | Section 3.3 $ | Section 3.3 % |
|---|---|---|---|---|
| **Previously Incurred Costs (Non-Eligible Project Costs)** | | | | |
| Federal Funds | | | | |
| Non-Federal Funds | | | | |
| Total Previously Incurred Costs | | | | |
| **Future Eligible Project Costs** | | | | |
| SS4AFunds | $4,402,880.00 | 80% | $480,000.00 | 80% |
| Other Federal Funds | | | | |
| Non-Federal Funds | $1,100,720.00 | 20% | $120,000.00 | 20% |
| Total Future Eligible Project Costs | $5,503,600.00 | 100% | $600,000.00 | 100% |
| Total Project Costs | $5,503,600.00 | 100% | $5,503,600.00 | 100% |

**Commented [PD4]:** Check the numbers. These don't make sense.

**Commented [WN5]:** Revise to $0 this entire line

Revised March 2025

**ATTACHMENT C**

[RESERVED]

Revised March 2025

**ATTACHMENT D**

[RESERVED]

Revised March 2025

**ATTACHMENT E**
**LABOR AND WORKFORCE**

1.    **Efforts to Support Good-Paying Jobs and Strong Labor Standards**

The Recipient states that rows marked with "X" in the following table align with the application:

| | |
|---|---|
| X | The Recipient or a project partner promotes robust job creation by supporting good-paying jobs directly related to the project with free and fair choice to join a union. *(Describe robust job creation and identify the good-paying jobs in the supporting narrative below.)* |
| | The Recipient or a project partner will invest in high-quality workforce training programs such as registered apprenticeship programs to recruit, train, and retain skilled workers, and implement policies such as targeted hiring preferences. *(Describe the training programs in the supporting narrative below.)* |
| X | The Recipient or a project partner will partner with high-quality workforce development programs with supportive services to help train, place, and retain workers in good-paying jobs or registered apprenticeships including through the use of local and economic hiring preferences, linkage agreements with workforce programs, and proactive plans to prevent harassment. *(Describe the supportive services provided to trainees and employees, preferences, and policies in the supporting narrative below.)* |
| X | The Recipient or a project partner will partner and engage with local unions or other worker-based organizations in the development and lifecycle of the project, including through evidence of project labor agreements and/or community benefit agreements. *(Describe the partnership or engagement with unions and/or other worker-based organizations and agreements in the supporting narrative below.)* |
| | The Recipient or a project partner will partner with communities or community groups to develop workforce strategies. *(Describe the partnership and workforce strategies in the supporting narrative below.)* |
| | The Recipient or a project partner has taken other actions related to the Project to create good-paying jobs with the free and fair choice to join a union and incorporate strong labor standards. *(Describe those actions in the supporting narrative below.)* |
| | The Recipient or a project partner has not yet taken actions related to the Project to create good-paying jobs with the free and fair choice to join a union and incorporate strong labor standards but, before beginning construction of the Project, will take relevant actions described in schedule B. *(Identify the relevant actions from schedule B in the supporting narrative below.)* |
| | The Recipient or a project partner has not taken actions related to the Project to improve good-paying jobs and strong labor standards and will not take those actions under this award. |

2.    **Supporting Narrative.**

*First checked box:  Describe robust job creation and identify the good-paying jobs.*

The County requires the use of prevailing wage per Section 1770 of the California Labor Code. The County tracks labor for all construction projects and reports out information to the California

Revised March 2025

Department of Industrial Relations (DIR) on an as-needed basis. Additionally, the Project will require the use of Federal Wage Rates to be used and require the Contractor to pay the higher between State and Federal rates for job classifications.

*Second checked box: Describe the supportive services provided to trainees and employees, preferences, and policies.*

The County's hiring policy for consultants and contractors emphasizes local hiring and encourages firms to employ workers according to skill needs. The County encourages that Contractors assist in admitting workers who are over the traditional apprenticeship entry age to the various craft training program.

*Third checked box: Describe the partnership or engagement with unions and/or other worker-based organizations and agreements.*

The County supports the employment and use of union labor and has entered into memorandums of understanding (MOUs) with various staff unions, including the San Mateo Labor Council, San Mateo County Building Trades and Laborers' International Union of North America Local 26. Additionally, the County will collaborate with local community-based organizations on this project.

Revised March 2025

**ATTACHMENT F**
**CRITICAL SECURITY INFRASTRUCTURE AND RESILIENCE**

1.    **Efforts to strengthen the Security and Resilience of Critical Infrastructure against both Physical and Cyber Threats.**

The Recipient states that rows marked with "X" in the following table are accurate:

| | |
|---|---|
| | The Recipient demonstrates, prior to the signing of this agreement, effort to consider and address physical and cyber security risks relevant to the transportation mode and type and scale of the activities. |
| | The Recipient appropriately considered and addressed physical and cyber security and resilience in the planning, design and oversight of the project, as determined by the Department and the Department of Homeland Security. |
| | The Recipient complies with 2 CFR 200.216 and the prohibition on certain telecommunications and video surveillance services or equipment. |
| | |

2.    **Supporting Narrative.**

N/A. This grant will not fund the purchase of Information Technology and/or Operational Technology.

Revised March 2025

**ATTACHMENT G**

[RESERVED]

EXHIBIT C

OMB Number: 4040-0004
Expiration Date: 11/30/2025

## Application for Federal Assistance SF-424

* 1. Type of Submission:
- [ ] Preapplication
- [x] Application
- [ ] Changed/Corrected Application

* 2. Type of Application:
- [x] New
- [ ] Continuation
- [ ] Revision

* If Revision, select appropriate letter(s):

* Other (Specify):

* 3. Date Received:

4. Applicant Identifier:

5a. Federal Entity Identifier:

5b. Federal Award Identifier:

**State Use Only:**

6. Date Received by State:

7. State Application Identifier:

**8. APPLICANT INFORMATION:**

* a. Legal Name: County of San Mateo

* b. Employer/Taxpayer Identification Number (EIN/TIN): 94-6000532

* c. UEI: PGEMA4HEP1L5

**d. Address:**

* Street1: 555 County Center Drive, 5th Floor

Street2:

* City: Redwood City

County/Parish:

* State: CA: California

Province:

* Country: USA: UNITED STATES

* Zip / Postal Code: 94063-1665

**e. Organizational Unit:**

Department Name: Department of Public Works

Division Name: Engineering & Resource Protect

**f. Name and contact information of person to be contacted on matters involving this application:**

Prefix:

* First Name: Krzysztof

Middle Name:

* Last Name: Lisaj

Suffix:

Title: Deputy Director

Organizational Affiliation:

* Telephone Number: (650) 363-4100

Fax Number:

* Email: klisaj@smcgov.org

**Application for Federal Assistance SF-424**

**\* 9. Type of Applicant 1: Select Applicant Type:**

B: County Government

Type of Applicant 2: Select Applicant Type:

Type of Applicant 3: Select Applicant Type:

**\* Other (specify):**

**\* 10. Name of Federal Agency:**

Department of Transportation

**11. Catalog of Federal Domestic Assistance Number:**

CFDA Title:

**\* 12. Funding Opportunity Number:**

DOT-OST-2025-0050

**\* Title:**

USDOT FY25 Safe Streets and Roads for All Funding

**13. Competition Identification Number:**

Title:

**14. Areas Affected by Project (Cities, Counties, States, etc.):**

[ Add Attachment ]  [ Delete Attachment ]  [ View Attachment ]

**\* 15. Descriptive Title of Applicant's Project:**

Pescadero Creek Road Rural Safety Implementation Project

Attach supporting documents as specified in agency instructions.

[ Add Attachments ]  [ Delete Attachments ]  [ View Attachments ]

**Application for Federal Assistance SF-424**

**16. Congressional Districts Of:**

* a. Applicant `CA-016`    * b. Program/Project `CA-016`

Attach an additional list of Program/Project Congressional Districts if needed.

[                    ]  Add Attachment    Delete Attachment    View Attachment

**17. Proposed Project:**

* a. Start Date: `04/01/2026`    * b. End Date: `12/31/2030`

**18. Estimated Funding ($):**

| | |
|---|---|
| * a. Federal | `4,119,025.00` |
| * b. Applicant | |
| * c. State | |
| * d. Local | `1,029,756.00` |
| * e. Other | |
| * f. Program Income | |
| * g. TOTAL | `5,148,781.00` |

**\* 19. Is Application Subject To Review By State Under Executive Order 12372 Process?**

☐ a. This application was made available to the State under the Executive Order 12372 Process for review on [            ].

☐ b. Program is subject to E.O. 12372 but has not been selected by the State for review.

☒ c. Program is not covered by E.O. 12372.

**\* 20. Is the Applicant Delinquent On Any Federal Debt?  (If "Yes," provide explanation in attachment.)**

☐ Yes    ☒ No

If "Yes", provide explanation and attach

[                    ]  Add Attachment    Delete Attachment    View Attachment

**21. \*By signing this application, I certify (1) to the statements contained in the list of certifications\*\* and (2) that the statements herein are true, complete and accurate to the best of my knowledge. I also provide the required assurances\*\* and agree to comply with any resulting terms if I accept an award. I am aware that any false, fictitious, or fraudulent statements or claims  may subject me to criminal, civil, or administrative penalties. (U.S. Code, Title 18, Section 1001)**

☒ ** I AGREE

\*\* The list of certifications and assurances, or an internet site where you may obtain this list, is contained in the announcement or agency specific instructions.

**Authorized Representative:**

Prefix: [            ]    * First Name: `Ann`

Middle Name: [            ]

* Last Name: `Stillman`

Suffix: [            ]

* Title: `Director of Public Works`

* Telephone Number: `(650) 363-4100`    Fax Number: [            ]

* Email: `astillman@smcgov.org`

* Signature of Authorized Representative: [            ]    * Date Signed: [            ]

## ASSURANCES - CONSTRUCTION PROGRAMS

OMB Number: 4040-0009
Expiration Date: 02/28/2025

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Management and Budget, Paperwork Reduction Project (0348-0042), Washington, DC 20503.

### PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE OFFICE OF MANAGEMENT AND BUDGET. SEND IT TO THE ADDRESS PROVIDED BY THE SPONSORING AGENCY.

NOTE: Certain of these assurances may not be applicable to your project or program. If you have questions, please contact the Awarding Agency. Further, certain Federal assistance awarding agencies may require applicants to certify to additional assurances. If such is the case, you will be notified.

As the duly authorized representative of the applicant:, I certify that the applicant:

1. Has the legal authority to apply for Federal assistance, and the institutional, managerial and financial capability (including funds sufficient to pay the non-Federal share of project costs) to ensure proper planning, management and completion of project described in this application.

2. Will give the awarding agency, the Comptroller General of the United States and, if appropriate, the State, the right to examine all records, books, papers, or documents related to the assistance; and will establish a proper accounting system in accordance with generally accepted accounting standards or agency directives.

3. Will not dispose of, modify the use of, or change the terms of the real property title or other interest in the site and facilities without permission and instructions from the awarding agency. Will record the Federal awarding agency directives and will include a covenant in the title of real property acquired in whole or in part with Federal assistance funds to assure non-discrimination during the useful life of the project.

4. Will comply with the requirements of the assistance awarding agency with regard to the drafting, review and approval of construction plans and specifications.

5. Will provide and maintain competent and adequate engineering supervision at the construction site to ensure that the complete work conforms with the approved plans and specifications and will furnish progressive reports and such other information as may be required by the assistance awarding agency or State.

6. Will initiate and complete the work within the applicable time frame after receipt of approval of the awarding agency.

7. Will establish safeguards to prohibit employees from using their positions for a purpose that constitutes or presents the appearance of personal or organizational conflict of interest, or personal gain.

8. Will comply with the Intergovernmental Personnel Act of 1970 (42 U.S.C. §§4728-4763) relating to prescribed standards of merit systems for programs funded under one of the 19 statutes or regulations specified in Appendix A of OPM's Standards for a Merit System of Personnel Administration (5 C.F.R. 900, Subpart F).

9. Will comply with the Lead-Based Paint Poisoning Prevention Act (42 U.S.C. §§4801 et seq.) which prohibits the use of lead-based paint in construction or rehabilitation of residence structures.

10. Will comply with all Federal statutes relating to non-discrimination. These include but are not limited to: (a) Title VI of the Civil Rights Act of 1964 (P.L. 88-352) which prohibits discrimination on the basis of race, color or national origin; (b) Title IX of the Education Amendments of 1972, as amended (20 U.S.C. §§1681 1683, and 1685-1686), which prohibits discrimination on the basis of sex; (c) Section 504 of the Rehabilitation Act of 1973, as amended (29) U.S.C. §794), which prohibits discrimination on the basis of handicaps; (d) the Age Discrimination Act of 1975, as amended (42 U.S.C. §§6101-6107), which prohibits discrimination on the basis of age; (e) the Drug Abuse Office and Treatment Act of 1972 (P.L. 92-255), as amended relating to nondiscrimination on the basis of drug abuse; (f) the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970 (P.L. 91-616), as amended, relating to nondiscrimination on the basis of alcohol abuse or alcoholism; (g) §§523 and 527 of the Public Health Service Act of 1912 (42 U.S.C. §§290 dd-3 and 290 ee 3), as amended, relating to confidentiality of alcohol and drug abuse patient records; (h) Title VIII of the Civil Rights Act of 1968 (42 U.S.C. §§3601 et seq.), as amended, relating to nondiscrimination in the sale, rental or financing of housing; (i) any other nondiscrimination provisions in the specific statue(s) under which application for Federal assistance is being made; and (j) the requirements of any other nondiscrimination statue(s) which may apply to the application.

Authorized for Local Reproduction

Standard Form 424D (Rev. 7-97)
Prescribed by OMB Circular A-102

11. Will comply, or has already complied, with the requirements of Titles II and III of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (P.L. 91-646) which provide for fair and equitable treatment of persons displaced or whose property is acquired as a result of Federal and federally-assisted programs. These requirements apply to all interests in real property acquired for project purposes regardless of Federal participation in purchases.

12. Will comply with the provisions of the Hatch Act (5 U.S.C. §§1501-1508 and 7324-7328) which limit the political activities of employees whose principal employment activities are funded in whole or in part with Federal funds.

13. Will comply, as applicable, with the provisions of the Davis-Bacon Act (40 U.S.C. §§276a to 276a-7), the Copeland Act (40 U.S.C. §276c and 18 U.S.C. §874), and the Contract Work Hours and Safety Standards Act (40 U.S.C. §§327-333) regarding labor standards for federally-assisted construction subagreements.

14. Will comply with flood insurance purchase requirements of Section 102(a) of the Flood Disaster Protection Act of 1973 (P.L. 93-234) which requires recipients in a special flood hazard area to participate in the program and to purchase flood insurance if the total cost of insurable construction and acquisition is $10,000 or more.

15. Will comply with environmental standards which may be prescribed pursuant to the following: (a) institution of environmental quality control measures under the National Environmental Policy Act of 1969 (P.L. 91-190) and Executive Order (EO) 11514; (b) notification of violating facilities pursuant to EO 11738; (c) protection of wetlands pursuant to EO 11990; (d) evaluation of flood hazards in floodplains in accordance with EO 11988; (e) assurance of project consistency with the approved State management program developed under the Coastal Zone Management Act of 1972 (16 U.S.C. §§1451 et seq.); (f) conformity of

Federal actions to State (Clean Air) implementation Plans under Section 176(c) of the Clean Air Act of 1955, as amended (42 U.S.C. §§7401 et seq.); (g) protection of underground sources of drinking water under the Safe Drinking Water Act of 1974, as amended (P.L. 93-523); and, (h) protection of endangered species under the Endangered Species Act of 1973, as amended (P.L. 93-205).

16. Will comply with the Wild and Scenic Rivers Act of 1968 (16 U.S.C. §§1271 et seq.) related to protecting components or potential components of the national wild and scenic rivers system.

17. Will assist the awarding agency in assuring compliance with Section 106 of the National Historic Preservation Act of 1966, as amended (16 U.S.C. §470), EO 11593 (identification and protection of historic properties), and the Archaeological and Historic Preservation Act of 1974 (16 U.S.C. §§469a-1 et seq).

18. Will cause to be performed the required financial and compliance audits in accordance with the Single Audit Act Amendments of 1996 and OMB Circular No. A-133, "Audits of States, Local Governments, and Non-Profit Organizations."

19. Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this program.

20. Will comply with the requirements of Section 106(g) of the Trafficking Victims Protection Act (TVPA) of 2000, as amended (22 U.S.C. 7104) which prohibits grant award recipients or a sub-recipient from (1) Engaging in severe forms of trafficking in persons during the period of time that the award is in effect (2) Procuring a commercial sex act during the period of time that the award is in effect or (3) Using forced labor in the performance of the award or subawards under the award.

| SIGNATURE OF AUTHORIZED CERTIFYING OFFICIAL | TITLE |
|---|---|
| | Director of Public Works |
| APPLICANT ORGANIZATION | DATE SUBMITTED |
| County of San Mateo | 06/26/2025 |

SF-424D (Rev. 7-97) Back

# DISCLOSURE OF LOBBYING ACTIVITIES

**Complete this form to disclose lobbying activities pursuant to 31 U.S.C.1352**

OMB Number: 4040-0013
Expiration Date: 02/28/2025

**1. * Type of Federal Action:**
- [ ] a. contract
- [x] b. grant
- [ ] c. cooperative agreement
- [ ] d. loan
- [ ] e. loan guarantee
- [ ] f. loan insurance

**2. * Status of Federal Action:**
- [ ] a. bid/offer/application
- [x] b. initial award
- [ ] c. post-award

**3. * Report Type:**
- [x] a. initial filing
- [ ] b. material change

**4.  Name and Address of Reporting Entity:**

[x] Prime   [ ] SubAwardee

* Name: County Executive's Office, County of San Mateo
* Street 1: 400 County Center Drive      Street 2:
* City: Redwood City    State: CA: California    Zip: 94063

Congressional District, if known:

**5. If Reporting Entity in No.4 is Subawardee, Enter  Name and Address of Prime:**

**6. * Federal Department/Agency:**
None contacted

**7. * Federal Program Name/Description:**
Safe Streets and Roads for All (SS4A)

CFDA Number, *if applicable:*

**8. Federal Action Number, *if known:***

**9. Award Amount, *if known:***
$

**10. a. Name and Address of Lobbying Registrant:**

Prefix:      * First Name: [blank]      Middle Name:
* Last Name: Carpi & Clay      Suffix:
* Street 1: 601 New Jersey Avenue, NW      Street 2: Suite 300
* City: Washington    State: DC: District of Columbia    Zip: 20001

**b. Individual Performing Services** (including address if different from No. 10a)

Prefix:      * First Name: [blank]      Middle Name:
* Last Name: [blank]      Suffix:
* Street 1: [blank]      Street 2:
* City: [blank]    State: DC: District of Columbia    Zip:

**11.** Information requested through this form is authorized by title 31 U.S.C. section  1352.  This disclosure of lobbying activities is a material representation of fact  upon which reliance was placed by the tier above when the transaction was made or entered into.  This disclosure is required pursuant to 31 U.S.C. 1352. This information will be reported to the Congress semi-annually and will be available for public inspection.  Any person who fails to file the required disclosure shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

**\* Signature:**

\*Name:    Prefix:      * First Name: Connie      Middle Name:
        * Last Name: Juarez-Diroll      Suffix:

Title: Chief Legislative Officer    Telephone No.: 650-599-1341    Date: [blank]

**Federal Use Only:**

Authorized for Local Reproduction
Standard Form - LLL (Rev. 7-97)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I served a true and correct copy of the foregoing

document on the following parties by the method(s) indicated below:

| | |
|---|---|
| Brian C. Kipnis<br>Annalisa L. Cravens<br>Sarah L. Bishop<br>Rebecca S. Cohen<br>*Assistant United States Attorneys*<br><br>Office of the United States Attorney<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101-1271<br>brian.kipnis@usdoj.gov<br>annalisa.cravens@usdoj.gov<br>sarah.bishop@usdoj.gov<br>rebecca.cohen@usdoj.gov<br><br>*Attorneys for Defendants* | ☒ CM/ECF E-service<br>☐ Email<br>☐ U.S. Mail<br>☐ Certified Mail / Return Receipt Requested<br>☐ Hand delivery / Personal service |

I declare under penalty of perjury under the laws of the United States and the State of

Washington that the foregoing is true and correct.

DATED this 14th day of July, 2025.

*/s/ Gabriela DeGregorio*
Gabriela DeGregorio
Litigation Assistant
Pacifica Law Group LLP

CERTIFICATE OF SERVICE - 1

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750