The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARTIN LUTHER KING, JR. COUNTY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT TURNER, *et al.,* <br><br> Defendants. | Case No. 2:25-cv-00814-BJR <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' THIRD MOTION FOR PRELIMINARY INJUNCTION** |

Defendants continue to oppose an ever-increasing number of Plaintiffs' efforts to enjoin lawful federal grant terms. At bottom, Plaintiffs want to receive federal grant money without having to sign contracts with terms they object to. But Plaintiffs' objections do not make the terms unlawful. Federal grant recipients have long certified they will comply with federal antidiscrimination laws. And restrictions on the use of federal dollars—like the Hyde Amendment and the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA)—have been in place for decades. The government is entitled to condition its provision of federal funds on compliance with established federal laws. This Court should decline to allow this case to proceed any further and should deny Plaintiffs' third preliminary injunction motion.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'  
THIRD MOTION FOR PRELIMINARY INJUNCTION  
[Case No. 2:25-cv-00814-BJR] - 1

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

# PROCEDURAL BACKGROUND

This case started with eight plaintiffs. King County, Pierce County, Snohomish County, City and County of San Francisco, County of Santa Clara, City of Boston, City of Columbus, and City of New York (the Original Plaintiffs) sued the U.S. Department of Housing and Urban Development (HUD), the U.S. Department of Transportation (DOT), and the Federal Transit Administration (FTA), as well as the agencies' heads in their official capacities, on May 2, 2025, alleging that some new terms the agencies added to new contracts for federal grants were unlawful. Dkt. 1. Seven of those Original Plaintiffs (excluding the City of Columbus) moved for a TRO on May 5, and the Court held a hearing and granted their motion two days later. Dkts. 5, 51–52. After granting the TRO motion, the Court converted it to a preliminary injunction motion to be heard 14 days later, when the TRO was set to expire. Dkt. 53. On May 21, the Court held a hearing on the Original Plaintiffs' preliminary injunction motion. Dkt. 73. At the hearing, after the Court issued its oral ruling granting the Original Plaintiffs' motion, the Original Plaintiffs announced they planned to amend their complaint to add 23 new plaintiffs with claims against HUD, DOT, and newly added components of DOT: the Federal Highway Administration (FHWA), the Federal Aviation Administration (FAA), and the Federal Railroad Administration (FRA), as well as the component heads in their official capacities.

The newly added 23 units of local government (the Second Round Plaintiffs) brought the same claims and challenged materially the same contract terms as the Original Plaintiffs. Dkt. 71. They (along with the City of Columbus) also sought a TRO and preliminary injunction, which the Court granted. Dkts. 72, 152. Defendants appealed the preliminary injunction order to the U.S. Court of Appeals for the Ninth Circuit, where the appeal remains pending.

Now, Plaintiffs have doubled in size, adding approximately 30 new units of local governments (the Third Round Plaintiffs). Dkt. 186. Plaintiffs continue to challenge the same DOT

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and HUD grant terms as before, but now have added HUD grants outside of the Continuum of Care (CoC) program, and have brought new claims against the U.S. Department of Health and Human Services (HHS), including the Administration for Children and Families (ACF), Health Resources and Services Administration (HRSA), National Institutes of Health (NIH), Substance Abuse and Mental Health Services Administration (SAMHSA), and the Centers for Disease Control and Prevention (CDC). As before, Plaintiffs seek a preliminary injunction enjoining the enforcement of certain terms in their federal grant agreements.

**FACTS**

As to DOT, Plaintiffs continue to challenge the same grant terms that were at issue in the previous injunction. As to HUD, while continuing to challenge the CoC terms, they add the following terms (the Non-CoC HUD Grant Conditions) associated with Community Development Block Grants (CDBG), Emergency Solutions Grants (ESG), the Home Investment Partnerships (HOME) program, and the Housing Opportunities for Persons with AIDS (HOPWA) program:

1. *The Antidiscrimination Terms:*

    i. The recipient or applicant certifies that it does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964;

    ii. The recipient or applicant will not use Federal funding to promote diversity, equity, and inclusion (DEI) mandates, policies, programs, or activities that violate any applicable Federal antidiscrimination laws;

    iii. The recipient or applicant agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code.

2. *The PRWORA Terms:*

    i. The recipient or applicant must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

      Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws;

  ii.  If applicable, no state or unit of general local government that receives or applies for funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation;

  iii.  Unless excepted by PRWORA, the recipient or applicant must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

3. *The Hyde Amendment Term:* The recipient or applicant shall not use any grant funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment.

4. *The Gender Ideology Term:* The recipient or applicant shall not use grant funds to promote "gender ideology," as defined in Executive Order (E.O.) 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government.

5. *The Executive Order Term:* The recipient or applicant must comply with applicable existing and future Executive Orders, as advised by the Department, including but not limited to Executive Order 14182, Enforcing the Hyde Amendment; Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity; Executive Order 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government; and Executive Order 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing.

Dkt. 186-1 at 36–37.

Finally, Plaintiffs add HHS as a defendant and challenge the following terms (the HHS Grant Conditions) associated with grants from ACF, HRSA, NIH, SAMHSA, or CDC:

1. *The Antidiscrimination Terms:*

    i. The recipient or applicant must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4).

    ii. By accepting the grant award, recipients are certifying that they do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws;

    (1) Definitions. As used in this clause –

    (a) DEI means "diversity, equity, and inclusion."

    (b) DEIA means "diversity, equity, inclusion, and accessibility."

    (c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025.

    . . . .

    (e) Federal anti-discrimination laws means Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin.

2. *The Immigration Term:* Funds cannot be used to support or provide services, either directly or indirectly, to removable or illegal aliens.

3. *The Title IX Terms:*

    i. By accepting this award, including the obligation, expenditure, or drawdown of award funds, recipients or applicants, whose programs, are covered by Title IX certify as follows:

    (a) The recipient or applicant is compliant with Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§ 1681 et seq., including the requirements set forth in Presidential Executive Order 14168 titled Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., and Recipient will remain compliant for the duration of the Agreement.

    (b) The above requirements are conditions of payment that go the essence of the Agreement and are therefore material terms of the Agreement.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'  
THIRD MOTION FOR PRELIMINARY INJUNCTION  
[Case No. 2:25-cv-00814-BJR] - 5

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

       (c) Payments under the Agreement are predicated on compliance with the above requirements, and therefore the recipient or applicant is not eligible for funding under the Agreement or to retain any funding under the Agreement absent compliance with the above requirements.

       (d) The recipient or applicant acknowledges that this certification reflects a change in the government's position regarding the materiality of the foregoing requirements and therefore any prior payment of similar claims does not reflect the materiality of the foregoing requirements to this Agreement.

       (e) The recipient or applicant acknowledges that a knowing false statement relating to recipient's or applicant's compliance with the above requirements and/or eligibility for the Agreement may subject the recipient or applicant to liability under the False Claims Act, 31 U.S.C. § 3729, and/or criminal liability, including under 18 U.S.C. §§ 287 and 1001.

4. *The Executive Order Term:* All activities proposed in your application and budget narrative must be in alignment with the current Executive Orders.

Dkt. 186-1 at 38–40.

Since Plaintiffs filed their motion, the Antidiscrimination Term relating to DEI programs (item 1(ii) above) has been removed from HHS general grant terms and conditions. *See* HHS Grants Policy Statement, https://www.hhs.gov/sites/default/files/hhs-grants-policy-statement-july-2025.pdf, updated July 24, 2025, at 18–19; ACF Standard Terms and Conditions, https://acf.gov/sites/default/files/documents/main/FFY2025-ACF-STANDARD-TERMS-and-CONDITIONS--updated-2025-07-29-.pdf, updated July 29, 2025, at 8; SAMHSA FY2025 Standard Terms and Conditions, https://www.samhsa.gov/sites/default/files/fy25-award-standard-terms-conditions.pdf, updated on or after July 24, 2025, at 2, 7–8.[1]

---

[1] Also since filing their motion, on July 31, 2025, Plaintiffs asked the Court to take judicial notice of a recent memorandum by the Attorney General. Dkt. 331. By its terms, the memorandum provides "recommended best practices" that are "non-binding suggestions" for recipients of federal funding. *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination*, https://www.justice.gov/ag/media/1409486/dl?inline=&utm_medium=email&utm_source=govdelivery*,* July 29, 2025, at 9.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'  
THIRD MOTION FOR PRELIMINARY INJUNCTION  
[Case No. 2:25-cv-00814-BJR] - 6

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A stay "is not a matter of right, even if irreparable injury might otherwise result" but rather an exercise of judicial discretion that depends on the particular circumstances of the case. *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). To justify an injunction, a petitioner must establish that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Preliminary relief is meant to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). When preliminary relief would change the status quo and "order a responsible party to take action," it is "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). In such cases, the moving party "must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis original).

## ARGUMENT

This Court should deny Plaintiffs' third preliminary injunction motion because they have not satisfied the *Winter* factors. Plaintiffs cannot show they are likely to succeed on the merits of any of the claims argued in their motion. Nor can they show imminent likelihood of irreparable harm. And the public interest and balance of equities support enforcement of Congressional mandates and do not support granting the likely largely irreversible remedy Plaintiffs seek here. But if the Court does choose to grant any injunction in this case, it should be narrowly tailored, secured by a bond, and stayed pending a decision whether to appeal again.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### I. Plaintiffs have not shown they are likely to succeed on the merits

Plaintiffs cannot satisfy the first *Winter* factor because they fail to show the terms requiring compliance with existing federal laws are unlawful. On this basis alone, their motion fails.

### A. Plaintiffs are unlikely to succeed on their separation-of-powers claim

Plaintiffs' separation-of-powers arguments fail because the challenged conditions are: (1) imposed pursuant to Defendants' authority; (2) germane to the grants at issue; and (3) dependent on and subject to existing law.

First, the Executive Branch has a constitutional duty to enforce Congressional mandates and does so through its officers and agents. *See Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 492 (2010). Here, as Executive Branch agencies, HUD and HHS have authority to impose the terms at issue. In fact, in recognition of such a duty, Office of Management and Budget regulations require that federal agencies incorporate "statutory, executive order, other Presidential directive, or regulatory requirements" into terms and conditions for federal awards. 2 C.F.R. § 200.211(c)(1)(ii); *see also* 45 C.F.R. § 75.210(b)(1) ("HHS awarding agencies must incorporate the following general terms and conditions either in the Federal award or by reference, as applicable: . . . (ii) National policy requirements. These include statutory, executive order, other Presidential directive, or regulatory requirements that apply by specific reference."). These are precisely the items HUD and HHS have added to the grants Plaintiffs contest.

As to HUD, most of the Non-CoC HUD Grant Conditions merely require grant recipients to agree to comply with existing federal laws, like federal antidiscrimination laws, the Hyde Amendment, and PRWORA. And Congress has expressly authorized HUD to require that grantees comply with federal laws. *See, e.g.*, 42 U.S.C. § 5304(b)(6) ("Any [CDBG] grant . . . shall be made only if the grantee certifies to the satisfaction of the Secretary that . . . the grantee will comply with the other provisions of this chapter and with other applicable laws."). Beyond existing federal laws,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'  
THIRD MOTION FOR PRELIMINARY INJUNCTION  
[Case No. 2:25-cv-00814-BJR] - 8

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

the only additional requirement in the Non-CoC HUD Grant Conditions is that recipients comply with executive orders. This also is not novel. Executive orders have long formed part of the requirements grant recipients must comply with to receive federal dollars. *See, e.g.*, 24 C.F.R. § 1.4(c)(1) (requiring that grantees comply with executive orders in construction hiring practices); 24 C.F.R. § 570.487 (noting that CDBG grant recipients may be subject to laws and executive orders that are enforced by other agencies). HUD's requirements that grantees follow federal laws and executive orders are within the agency's authority.

The HHS terms are also plainly within HHS's authority to impose. By statute, applications for HHS grants "shall contain such information as the Secretary shall prescribe." *See, e.g.*, 42 U.S.C. § 254b (k)(1) (HRSA Health Center Program grants); 42 U.S.C. §§ 300ff-15(a) & (b) (HRSA Ryan White grants); 42 U.S.C. § 290ee-1(b)(1)(B) (SAMHSA First Responder grants); *see also* 42 C.F.R. § 52.9 ("The Secretary may with respect to any [Public Health Service research] grant award or class of awards impose additional conditions prior to or at the time of any award when in the Secretary's judgment such conditions are necessary to assure or protect advancement of the approved project, the interests of the public health, or the conservation of grant funds."). The HHS Grant Conditions include: (1) a longstanding requirement that recipients comply with federal antidiscrimination laws;[2] (2) a requirement they comply with Title IX; (3) a limitation on federal dollars reaching persons who are in the country unlawfully, in accordance with PRWORA;

---

[2] In their motion, Plaintiffs challenged HHS's general grant terms and conditions documents that contained language relating to DEI programs. Dkt. 186 at 6. But that language has been removed. All that remains are standard commitments to abide by federal antidiscrimination laws. *See* HHS Grants Policy Statement, https://www.hhs.gov/sites/default/files/hhs-grants-policy-statement-july-2025.pdf, updated July 24, 2025, at 18–19; ACF Standard Terms and Conditions, https://acf.gov/sites/default/files/documents/main/FFY2025-ACF-STANDARD-TERMS-and-CONDITIONS--updated-2025-07-29-.pdf, updated July 29, 2025, at 8; SAMHSA FY2025 Standard Terms and Conditions, https://www.samhsa.gov/sites/default/files/fy25-award-standard-terms-conditions.pdf, updated on or after July 24, 2025, at 2, 7–8.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'  
THIRD MOTION FOR PRELIMINARY INJUNCTION  
[Case No. 2:25-cv-00814-BJR] - 9

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

and (4) a requirement to comply with executive orders. Again, the first three simply enforce existing federal laws enacted by Congress, while the fourth is mandated by regulation: "HHS awarding agencies must incorporate . . . in the Federal award . . . National policy requirements [including] executive order, [or] other Presidential directive . . . that apply by specific reference and are not program-specific." 45 C.F.R. § 75.210(b)(1). Again, HHS's requirements that grantees follow applicable federal law and executive orders are within its authority.

Second, Plaintiffs' argument that the contested conditions are not germane to the funded projects is simply incorrect. As to the Antidiscrimination Terms, Plaintiffs do not contest that their longstanding certifications of compliance with antidiscrimination laws were germane to their prior grants; they therefore cannot straight-facedly argue that these conditions, which reference the same federal antidiscrimination laws, are somehow not germane. The remaining terms also seek to enforce longstanding federal laws, like PRWORA, the Hyde Amendment, and Title IX.

Third, in arguing the challenged conditions exceed Defendants' statutory authority, Plaintiffs once more rely on characterizations of the challenged conditions that are inconsistent with their plain terms. The terms and all the referenced executive orders are on their face limited by existing applicable laws. *Trump v. Am. Fed'n of Gov't Emps.*, 2025 WL 1873449, at *1 (U.S. July 8, 2025) (Sotomayor, J., concurring) ("[T]he relevant Executive Order directs agencies to plan . . . 'consistent with applicable law,' . . . and we thus have no occasion to consider whether they can and will be carried out consistent with the constraints of law."). As a matter of law, conditioning grant funds in accordance with existing federal laws cannot be interpreted as exceeding the law. *See Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012) ("[A]s an agency under the direction of the executive branch, it must implement the President's policy directives to the extent permitted by law."); *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

As set out in prior briefing, the Ninth Circuit's decision in *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018), is not to the contrary. There, the court considered more stringent language in an executive order that "unambiguously command[ed] action" to ensure that certain jurisdictions would be ineligible for funding. *Id.* at 1240. The case does not, however, stand for the broad proposition that limitation clauses should be ignored. To the contrary, the Ninth Circuit emphasized that "[s]avings clauses are read in their context." *Id.* at 1239. Examining the context in that case, the court held that because there were no circumstances in which the executive order's directive could be constitutional, the "savings clause does not and cannot override its meaning." *Id.* at 1240. In other words, because the provision commanded wholly illegal action, a savings clause purporting to limit the provision to existing law was meaningless. Here, by contrast, the challenged provisions are not unconstitutional on their face, and thus, the savings clauses materially limit Defendants' actions under them.

### B.     Plaintiffs are unlikely to succeed on their APA claims

Plaintiffs are not likely to prevail on any of their APA claims because they seek to challenge decisions quintessentially "committed to agency discretion by law," for which the APA does not provide an avenue for review. 5 U.S.C. § 701(a)(2). As set out in Defendants' prior briefing, an agency's determination of how best to condition appropriated funds to fulfill its legal mandates is classic discretionary agency action. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).

In *Lincoln*, the Supreme Court held that the Indian Health Service's decision to discontinue a program it had previously funded and to instead reallocate those funds to other programs was not reviewable under the APA. 508 U.S. at 185–88, 193. The Court explained that the "allocation of funds from a lump-sum appropriation" is an "administrative decision traditionally regarded as committed to agency discretion," because its purpose is to allow the agency "to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

desirable way." *Id.* at 192. The decision "requires a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including "whether its resources are best spent on one program or another," and "whether a particular program best fits the agency's overall policies." *Id.* at 193 (citation omitted). Of course, "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* But as long as the agency abides by the relevant statutes (and whatever self-imposed obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude" via arbitrary-and-capricious review. *Id.*

Here, though Plaintiffs cite several statutes that set forth the grant-making process, they do not identify any statutory restriction that prohibits any of the terms they challenge. *See* Dkt. 186. For example, they do not argue any statute prohibits the agreements' requirement that grant recipients comply with all federal antidiscrimination laws. Thus, the agencies' decisions regarding the terms under which local entities may receive federal grants remains within the agencies' discretion under *Lincoln*, and APA review is foreclosed.

Even if their APA claims were not foreclosed, Plaintiffs' arguments would fail. Plaintiffs argue HUD was required to follow notice-and-comment procedures before adding grant terms, and that HUD and HHS did not adequately explain their reasoning for adding grant terms. Dkt. 186 at 16. In fact, grants are specifically excluded from rule-making requirements. Under 5 U.S.C. § 553(a)(2), rule-making procedures do not apply to "a matter relating to . . . grants, benefits, or contracts." Because grants are not subject to rule-making requirements, Plaintiffs have not shown where the agencies would have explained the grant terms. Plaintiffs set out no reason to believe that is a typical practice in the grant agreement process, and as a logical matter it would be absurd to require such a process for the millions of grants the Defendant agencies issue each year.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### C.  Defendants incorporate by reference their earlier arguments

In one paragraph, Plaintiffs reargue their various other claims with only references to prior submissions. Dkt. 186 at 15. Defendants similarly incorporate by reference their previous counterarguments. Dkts. 36, 55, 151.

## II.  Plaintiffs do not face imminent, irreparable harm warranting emergency relief

Plaintiffs have not carried their burden of showing that imminent, irreparable harm "is likely, not just possible." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011). An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial. *Public Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987). And speculation is not sufficient: "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Here, as set out in Defendants' prior briefing, the potential harms Plaintiffs describe all stem from lack of access to grant funds, in the form of harms to their operations and efforts to fulfill their missions. *See* Dkt. 186 at 14–15. Such monetary injuries generally are not considered irreparable. *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980). Moreover, Plaintiffs' alleged harm is purely speculative, for a multitude of reasons. First, they have failed to explain when or how their alleged threat of loss of funding would start. Dkt. 186 at 14–15. Plaintiffs' inability to identify when any objective harm would befall them is fatal to their motion. *See Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) (An injunction "will not be granted against something merely feared as liable to occur at some indefinite time in the future.").

Second, while Plaintiffs continue to assert that they face a "Hobson's choice" in either agreeing to "illegal" terms or forgoing federal funding, they still have not even tried to explain how most of these conditions are "illegal" on their face. Plaintiffs do not explain how they face imminent harm by agreeing to comply with and not violate federal antidiscrimination laws (as they

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

have regularly agreed to do in the past), or by agreeing to comply with PRWORA and the Hyde Amendment (as they must do in any event).

### III. The public interest and balance of equities do not favor an injunction

As set out in Defendants' prior briefing, a preliminary injunction also is not appropriate here because the balance of the equities and the public interest tip in Defendants' favor. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (holding "[t]hese factors merge when the Government is the opposing party"). Ensuring compliance with federal laws is assuredly in the public interest, and for that reason alone, the balance of equities tips in Defendants' favor.

Further, while Plaintiffs could be compensated for any lost money after a ruling on the merits, the same may not be true of the federal government if an injunction is imposed. Plaintiffs' motion hinges on the importance of their federal grant money, suggesting many of them may not be able to reimburse the government if it later prevails. *See Middle E. Broad. Networks, Inc. v. United States*, No. 25-5150, 2025 WL 1378735, at *5 (D.C. Cir. May 7, 2025) (en banc) (Rao, J., dissenting) (per curiam) ("[O]nce the government disburses the grant money, there is no possibility of later recovery because, as the plaintiffs attest, they operate almost entirely on federal funds and therefore will be unable to reimburse the government."), *vacated sub nom. Widakuswara v. Lake*, 2025 WL 1521355 (D.C. Cir. May 28, 2025) (en banc). Additionally, even if Plaintiffs were able to return the money, the government maintains an interest in ensuring its funds are spent pursuant to the conditions Congress and the agencies have lawfully attached to those federal dollars.

### IV. The existing injunctions should not be extended to additional plaintiffs

The Court should deny Plaintiffs' attempt to extend to the Third Round Plaintiffs the injunctions against the DOT and HUD CoC conditions. They are not entitled to an injunction for the reasons set forth above and in Defendants' previous briefing. In addition, the Third Round Plaintiffs' claims of irreparable harm are undermined by the fact that they waited until mid-July to

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

seek injunctive relief that other Plaintiffs sought more than two months earlier. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (holding that two-month delay in seeking injunction "undercut [plaintiff's] claim of irreparable harm"). Rather than acting with any urgency, the Third Round Plaintiffs—most of which are not located within this District—try to piggyback on the Court's existing injunctions. The Court need not countenance this apparent forum shopping.

## V. Any injunctive relief should be narrowly tailored and permit lawful agency action

It is a bedrock principle of equity that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Thus, if the Court grants Plaintiffs' motion, any injunction should be narrowly tailored to apply only with respect to any grants or contracts involving Plaintiffs specifically, and to leave intact the Executive's discretion to engage in further consideration of the topic at hand and implement new policies consistent with law. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

## VI. Any injunction should be stayed pending any appeal and secured by a bond

If the Court issues an injunction, Defendants request it be stayed pending a determination by the Solicitor General whether to appeal and, if appeal is authorized, pending any appeal.

Moreover, under Federal Rule of Civil Procedure 65(c), courts "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." If the Court grants an injunction here, it should require Plaintiffs to post a bond for the value of the specific grants subject to the injunction.

## CONCLUSION

The Court should deny Plaintiffs' Third Motion for a Preliminary Injunction.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Dated August 1, 2025.

        Respectfully submitted,

        TEAL LUTHY MILLER
        Acting United States Attorney

        *s/ Brian C. Kipnis*
        BRIAN C. KIPNIS

        *s/ Annalisa L. Cravens*
        ANNALISA L. CRAVENS

        *s/ Sarah L. Bishop*
        SARAH L. BISHOP
        Assistant United States Attorneys
        United States Attorney's Office
        Western District of Washington
        700 Stewart Street, Suite 5220
        Seattle, Washington 98101
        Phone: 206-553-7970
        Email: brian.kipnis@usdoj.gov
                annalisa.cravens@usdoj.gov
                sarah.bishop@usdoj.gov

        *Counsel for Defendants*

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR PRELIMINARY INJUNCTION
[Case No. 2:25-cv-00814-BJR] - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970