1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN LUTHER KING, JR.
COUNTY, et al.,

                              Plaintiffs,

vs.

SCOTT TURNER in his official capacity
as Secretary of the U.S. Department of
Housing and Urban Development, et al.,

                              Defendants.

No. 2:25-cv-00814-BJR

ORDER GRANTING PLAINTIFFS'
THIRD MOTION FOR
PRELIMINARY INJUNCTION

[PROPOSED]

        This matter came before the Court on Plaintiffs' Third Motion for Preliminary Injunction

(the "Motion"). Having considered the briefs and declarations submitted in support of and in

opposition to the Motion and the other pleadings and papers filed in this action, the Court makes

the following Findings of Fact and Conclusions of Law.

**I.      FINDINGS OF FACT**

**A.      The HUD Grant Conditions**

        1.        The "HUD Plaintiffs"[1] have received, currently receive, or are otherwise eligible

---

[1] The "HUD Plaintiffs" are Martin Luther King, Jr. County ("King County"), Pierce County, Snohomish County, City and County of San Francisco ("San Francisco"), County of Santa Clara ("Santa Clara"), City of Boston ("Boston"), City of Bend ("Bend"), City of Columbus ("Columbus"), City of New York ("NYC"), City of Cambridge ("Cambridge"), City of Chicago ("Chicago"), City of Culver City ("Culver City"), King County Regional Homelessness Authority ("KCRHA"), City of Minneapolis ("Minneapolis"), Metropolitan Government of

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 1
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

to receive federal grants administered by Defendant U.S. Department of Housing and Urban Development (HUD), including but not limited to grants administered by HUD through its program offices. Collectively, HUD Plaintiffs rely on over $2.5 billion in appropriated federal funds from HUD grant programs, which fund homelessness assistance, affordable housing, community development programs, and other services that benefit their communities.

2. A number of HUD Plaintiffs rely on federal funding from the Continuum of Care (CoC) program established by Congress to provide critical services to individuals and families experiencing homelessness, including but not limited to rapid rehousing, permanent supportive housing, and other services. Of these, several Plaintiffs obtained relief from the challenged grant conditions as to the CoC program in this Court's order granting Plaintiffs' prior preliminary injunction (PI) motions (the "Initial CoC Plaintiffs"),[2] Dkt. # 169, while others are not covered by that order (the "New CoC Plaintiffs," and, together with the Initial CoC Plaintiffs, the "CoC

---

Nashville & Davidson County ("Nashville"), City of Pasadena ("Pasadena"), Pima County, City of Pittsburgh ("Pittsburgh"), City of Portland ("Portland"), City of San José ("San José"), City of Santa Monica ("Santa Monica"), Santa Monica Housing Authority ("Santa Monica HA"), City of Tucson ("Tucson"), County of Alameda ("Alameda County"), City of Albuquerque ("Albuquerque"), Mayor and City Council of Baltimore ("Baltimore"), City of Bellevue ("Bellevue"), City of Bellingham ("Bellingham"), City of Bremerton ("Bremerton"), County of Dane ("Dane County"), City of Eugene ("Eugene"), County of Hennepin ("Hennepin County"), Kitsap County, City of Los Angeles ("Los Angeles"), City of Milwaukee ("Milwaukee"), Multnomah County, City of Oakland ("Oakland"), City of Petaluma ("Petaluma"), Ramsey County, City of Rochester ("Rochester"), County of San Mateo ("San Mateo County"), City of San Diego ("San Diego"), County of San Mateo ("San Mateo County"), City of Santa Rosa ("Santa Rosa"), County of Sonoma ("Sonoma County"), City of Watsonville ("Watsonville"), Culver City Housing Authority ("CCHA"), and Sonoma County Community Development Corporation ("SCCDC").

[2] The "Initial CoC Plaintiffs" are King County, Pierce County, Snohomish County, San Francisco, Santa Clara, Boston, NYC, Cambridge, KCRHA, Nashville, Pasadena, Pima County, San José, Santa Monica HA, and Tucson.

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 2
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Plaintiffs").[3]

3.      All HUD Plaintiffs also rely on a range of other competitive and formula grant programs administered by HUD, including but not limited to the Community Development Block Grant (CDBG) program, which provides flexible funding for development projects tailored to local needs; the Emergency Solutions Grant (ESG) program, which funds emergency shelters and homelessness services; the Home Investment Partnerships (HOME) program, which supports development of affordable housing; and the Housing Opportunities for Persons with AIDS (HOPWA) program, which funds housing for individuals with HIV/AIDS.

### a.) The CoC Grant Conditions

4.      In July 2024, HUD posted a biennial Notice of Funding Opportunity (NOFO), inviting applications from local coalitions, known as "Continuums," for CoC funding. None of the conditions challenged here were included in the NOFO. Rather, the NOFO specified that "HUD is emphasizing system and program changes to address racial equity within CoCs and projects" and instructed applicants that "[r]esponses to preventing and ending homelessness should address racial inequities." The NOFO further specified that each "CoC should address the needs of LGBTQ+, transgender, gender non-conforming, and non-binary individuals and families in their planning processes," and "when considering which projects to select in their local competition to be included in their application to HUD, CoCs should ensure that all projects provide privacy, respect, safety, and access regardless of gender identity or sexual orientation."

5.      After reviewing applications, HUD conditionally awarded the New CoC Plaintiffs and their Continuums nearly two hundred million dollars in CoC grants in Fiscal Year 2024. New

---

[3] The "New CoC Plaintiffs" are Alameda County, Albuquerque, Baltimore, Columbus, Dane County, Hennepin County, Milwaukee, Multnomah County, Oakland, Petaluma, Ramsey County, San Mateo County, and Sonoma County.

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 3
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

CoC Plaintiffs rely on CoC funding, which is typically awarded annually in relatively stable amounts, to provide essential services to their most vulnerable residents, including but not limited to rapid rehousing for those who become suddenly homeless, temporary and permanent supportive housing, rental assistance, mental health services, case management, and more.

6.    HUD regulations permit HUD to require CoC recipients to comply with additional "terms and conditions," but such terms and conditions must be "establish[ed] by NOFA," which is a term interchangeable with NOFO.

7.    Beginning in March 2025, HUD began presenting New CoC Plaintiffs with CoC grant agreements ("CoC Agreements") containing grant conditions ("CoC Grant Conditions") that were not included in the NOFO or authorized by any statute or regulation and that are identical to the conditions this Court enjoined as to the Initial CoC Plaintiffs, specifically:

a.    The CoC Agreements state that "[t]his Agreement, the Recipient's use of funds provided under this Agreement . . . , and the Recipient's operation of projects assisted with Grant Funds" are "governed by" not only certain specified statutes, rules, and grant-related documents, but also by "all current Executive Orders . . . ."

b.    The CoC Agreements require the recipient to certify "it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964." The CoC Agreements also require the recipient to agree that "its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions" for purposes of the False Claims Act (FCA), 31 U.S.C. §§ 3729 et seq.

President Donald J. Trump, HUD, and other agencies have confirmed their agenda is to prohibit policies or programs promoting inclusion for people of all races,

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 4
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ethnicities, national origins, sexes, gender identities, or sexual orientations through the guise of enforcing federal nondiscrimination law. For instance, Deputy U.S. Attorney General Todd Blanche recently announced a new initiative to use the FCA against federal-funding recipients that engage in purportedly "unlawful discrimination" via DEI policies, which he asserts, without citation to supporting authority, includes permitting transgender individuals to use bathrooms or participate in athletics consistent with their gender identities. Dkt. # 65 at 5. U.S. Attorney General Pam Bondi's recent memorandum—which states, among other claims, that facially neutral practices selected to increase racial diversity are unlawful if "they correlate with, replicate, or are used as substitutes for protected characteristics"—further demonstrates the Trump administration's reinterpretation of nondiscrimination law, which Defendants intend to enforce against recipients of federal funds. Dkt. # 331. HUD Secretary Scott Turner has announced that his agency "is carrying out President Trump's executive orders, mission, and agenda," by "[a]lign[ing] all . . . grant agreements with the President's Executive Orders, removing diversity, equity, inclusion (DEI)." Press Release, HUD, *HUD Delivers Mission-Minded Results in Trump Administration's First 100 Days* (Mar. 11, 2025), https://www.hud.gov/news/hud-no-25-059. He also posted on X (formerly Twitter), alongside a screenshot of a version of the CoC Discrimination Condition, stating that "CoC funds . . . will not promote DEI." Scott Turner (@SecretaryTurner), X (Mar. 13, 2025, 11:47 AM), https://x.com/SecretaryTurner/status/1900257331184570703. Finally, as discussed further below, HUD recently amended its Applicant and Recipient Assurances and Certifications (the "HUD Certifications"), which applicants must

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 5
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

submit to apply for HUD funding, adding a new requirement that applicants must certify they do not operate DEI programs that purportedly "violate any applicable Federal antidiscrimination laws." These announcements and updated certification requirements reflect the administration's agenda to pressure recipients to eliminate lawful DEI policies using the threat of FCA enforcement based on a legally unsupported reinterpretation of nondiscrimination law. *See also* Dkt. # 6 at 346 (letter from DOT Secretary Sean Duffy warning that DOT considers "discriminatory policies or practices designed to achieve so-called 'diversity, equity, and inclusion' . . . goals" to "presumptively violate[] Federal law," even when "described in neutral terms").

c.       Next, the CoC Agreements provide that "[n]o state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation."

d.       The CoC Agreements further require the recipient to comply with "applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services [sic] may establish from time to time to comply with PRWORA, Executive Order 14218, other Executive Orders or immigration laws."

e.       The CoC Agreements also provide:

> Subject to the exceptions provided by PRWORA, the recipient must use [the Systematic Alien Verification for Entitlements (SAVE) system], or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

f.       The CoC Agreements require the recipient to agree it "shall not use grant funds to promote 'gender ideology,' as defined in [Executive Order] 14168."

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 6
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

g.      The CoC Agreements prohibit the recipient from using grant funds "to fund or promote elective abortions, as required by [Executive Order] 14182, Enforcing the Hyde Amendment."

8.      The CoC Grant Conditions are in tension with, if not violative of, HUD's own regulations. For example, HUD regulations mandate "equal access" to CoC "programs, shelters, other buildings and facilities, benefits, services, and accommodations . . . in accordance with [each] individual's gender identity, and in a manner that affords equal access to the individual's family," including facilities with "shared sleeping quarters or shared bathing facilities." 24 C.F.R. § 5.106(b)–(c). HUD regulations also prohibit subjecting an individual "to intrusive questioning or" asking individuals "to provide anatomical information or documentary, physical, or medical evidence of the individual's gender identity." *Id.* § 5.106(b)(3). HUD's Secretary, Defendant Scott Turner, has said HUD will no longer enforce these regulations, but they remaining in effect and applicable to the CoC program.

9.      On May 7, 2025, this Court entered a TRO enjoining Defendants HUD and Scott Turner from, among other things, imposing or enforcing the CoC Grant Conditions, rescinding or canceling the CoC Agreements or withholding funds based on such conditions, or requiring any "certification" or representation related to the those conditions with respect to the original group of CoC Plaintiffs.[4] Dkt. ## 51, 52. On May 21, 2025, this Court extended the TRO for 14 days. Dkt. # 73. On May 21, 2025, Plaintiffs filed their First Amended Complaint, naming additional Plaintiffs affected by the CoC conditions. The Court entered a second TRO on May 23, 2025, extending the relief granted in the first TRO to Plaintiffs Cambridge and Pasadena and their

---

[4] Plaintiffs King County, Pierce County, Snohomish County, San Francisco, Santa Clara, Boston, and NYC joined the First Motion for TRO as to the CoC Conditions. Dkt. # 5.

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 7
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Continuums as to the CoC Grant Conditions. Dkt. # 152.

10.    On June 3, 2025, this Court entered a PI enjoining HUD and its officers and agents from taking any of the actions barred by the earlier TROs or taking certain other actions implementing the CoC conditions with respect to the Initial CoC Plaintiffs. Dkt. # 169.

11.    Plaintiffs filed their Second Amended Complaint on July 10, 2025, which, among other things, added New CoC Plaintiffs. Plaintiffs then filed this Motion seeking, among other things, to extent the preliminary relief granted in the first PI Order as to the CoC Grant Conditions to the New CoC Plaintiffs. The Initial CoC Plaintiffs and New CoC Plaintiffs assert the same claims and allege materially similar harms with respect to the CoC Grant Conditions.

12.    For similar reasons to those stated in the first PI order, the New CoC Plaintiffs face immediate and irreparable harms during the pendency of this litigation absent a PI. The New HUD Plaintiffs have an immediate need to receive CoC funds to sustain ongoing programs and services and are faced with the choice of losing these funds or accepting conditions that are likely unlawful. The HUD Plaintiffs have begun budgeting and planning for upcoming expenditures; households reliant on private rentals are at risk of eviction if there is even a short-term interruption of rent payments covered by CoC funds; and the interruption of funds could threaten the operation of supportive housing. Ultimately, any delay or loss of funding would result in disruption of services and cause irreparable damage to individuals' lives. For example:

    a.    The loss of CoC funding would likely lead to the eviction and homelessness of hundreds of individuals living in permanent supportive housing or reenrolled in rapid rehousing programs in Sonoma County while eliminating services that allow them to live safely in the community.

    b.    Similarly, withholding CoC funds from Ramsey County would risk the loss

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 8
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

of access to housing and supportive services to individuals experiencing homelessness, increasing their potential exposure to Minnesota's dangerously cold winter weather.

c.      Losing CoC funding would not only result in the loss of critical services for Multnomah County's homeless residents, including mental health services, case management, food, and child care services, it would also put at risk 100 full time positions at nonprofit services providers that are exclusively funded with CoC grants.

d.      Without CoC funds, Dane County has no source of funding to support 123 households enrolled in rental assistance programs. Without this assistance, these households would be unlikely to afford housing, leading to likely eviction and return to homelessness.

### b.) The Non-CoC HUD Grant Conditions

13.    Since the Court entered the PI order, it has become clear that HUD intends to impose conditions materially identical to the CoC Grant Conditions on all grant programs HUD administers, and at multiple stages of the grant-making process. HUD Plaintiffs rely on these grants to fund essential services, including homeless shelters, affordable housing, community development projects, and more. Some HUD Plaintiffs coordinate their administration of certain HUD grants as members of a "consortium," i.e., "[a]n organization of geographically contiguous units of general local government that are acting as a single unit of general local government for purposes" of certain HUD programs. 24 C.F.R. § 91.5.

14.    In May 2025, HUD amended the HUD Certifications to add a new certification that requires applicants to certify that they:

> Will not use Federal funding to promote diversity, equity, and inclusion (DEI) mandates, policies, programs, or activities that violate any applicable Federal antidiscrimination laws.

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 9
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(the "HUD DEI Certification"). Jurisdictions must submit the HUD Certifications to apply for HUD funding, including when they submit certain consolidated plans and/or action plans annually as a condition to receiving CDBG, ESG, HOME, and HOPWA formula funding.

15.    On June 5, 2025, HUD announced additional conditions applicable to all formula grants administered by HUD's Office of Community Planning and Development (CPD), including but not limited to the CDBG, ESG, HOME, and HOPWA programs. In particular, a letter by Claudette Fernandez, HUD's General Deputy Assistant Secretary for CPD, lists the following conditions that will apply "[u]nder the FY 2025 grant agreement[s]" (collectively, and together with the HUD DEI Certification, the "Non-CoC HUD Grant Conditions"):

a.    First, recipients must agreement that they "shall not use grant funds to promote 'gender ideology,' as defined in Executive Order (E.O.) 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" (the "CPD Gender Ideology Condition").

b.    Second, each recipient must "agree[] that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of [the FCA]" and "certif[y] that it does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964" (together, the "CPD Discrimination Condition"). President Trump, HUD, and other agencies have confirmed their agenda is to prohibit policies or programs promoting inclusion for people of all races, ethnicities, national origins, sexes, gender identities, or sexual orientations through the guise of enforcing federal nondiscrimination law. Under that agenda the operation of any DEI program would run afoul of the certification.

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 10
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

c.    Third, each recipient must agree that it "shall not use any grant funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment" (the "CPD Abortion Condition").

d.    Fourth, recipients must agree that:

The Grantee must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under [PRWORA] and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws.

. . . .

Unless excepted by PRWORA, the Grantee must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

(together, the "CPD Verification Condition").

e.    Fifth, the recipient must agree that:

If applicable, no state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation.

(the "CPD Enforcement Condition").

16.    Further demonstrating the agency's intent to apply the Non-CoC HUD Conditions to all HUD grant programs, in April 2025, HUD updated its General Administrative, National, and Departmental Policy Requirements and Terms for HUD's Financial Assistance Programs (the "HUD Policy Terms") to list President Trump's executive orders among the "laws and policies that may apply" to HUD grants and to list requirements materially similar or identical to certain

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 11
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Non-CoC HUD Grant Conditions.

17.    The Non-CoC HUD Grant Conditions are in tension with, if not violative of, congressional guidance and directives governing HUD grant programs. For instance, the HOME Investment Partnerships Act, Pub. L. No. 101-625, tit. II, 104 Stat. 4079, 4094, which established the HOME program requires participating jurisdictions "to establish and oversee a minority outreach program . . . to ensure the inclusion, to the maximum extent possible, of minorities and women, and entities owned by minorities and women . . . in all contracts[] entered into by the participating jurisdiction . . . to provide affordable housing authorized under this Act." 42 U.S.C. § 12831(a). In addition, the Housing and Community Development Act of 1974, Pub. L. 93-383, 88 Stat. 633, which established the CDBG program, requires the HUD Secretary to set aside some of the funds appropriated for the CDBG program for "special purpose grants," which may include, among other things, grants to "historically Black colleges." 42 U.S.C. § 5307(b)(2). Of the amounts set aside for special purpose grants, the Secretary "shall" make grants to institutions of higher education "for the purpose of providing assistance to economically disadvantaged and minority students who participate in community development work study programs and are enrolled in" qualifying degree programs. *Id*. § 5307(c). Finally, of the Cranston-Gonzalez National Affordable Housing Act, Pub. L. No. 101–625, 104 Stat. 4079, which established the HOME and HOPWA programs, indicates congressional intent to benefit historically disadvantaged groups, including the aim to "improve housing opportunities for . . . members of disadvantaged minorities." 42 U.S.C. § 12702(3).

18.    HUD Plaintiffs face immediate and irreparable harms from imposition of the Non-CoC HUD Grant Conditions during the pendency of this litigation absent a PI. Many HUD Plaintiffs face a deadline of Saturday, August 16, 2025, to submit consolidated and action plans to

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

HUD, which would subject them to the Non-CoC HUD Grant Conditions, or else forfeit formula grant funding needed to support essential services. And HUD has recently informed King County that its consolidated/action plan was being disapproved based on its use of words like "equity" and "migrant" that HUD deemed to violate requirements set forth in executive orders. HUD directed King County to remove these words from its plans and include "assurance statements" that mirror the Non-CoC HUD Grant Conditions. Other Plaintiffs, including Petaluma and Bellevue have received similar notifications.

19.     HUD Plaintiffs are already grappling with the uncertainty over federal funding by, for example, pausing affordable housing development and preservation. Loss of these funds would disrupt the lives of HUD Plaintiffs' most vulnerable residents, likely leading to evictions and increased homelessness and further straining local resources. Even a temporary loss of funding would set back efforts to create and preserve affordable housing, ameliorate homelessness, and house low-income individuals living with HIV/AIDS. For example:

    a.      Loss of CDBG, HOME, and ESG funding would eliminate housing opportunities for between 200 and 500 low income and homeless residents in San Mateo County who rely on housing and shelter programs funding by these grants.

    b.      Withholding HUD funding would place approximately 1,500 households in Santa Monica that are currently housed through HOME and other HUD-funded programs at immediate risk of homelessness.

    c.      Pierce County has had to pause a project to develop and preserve affordable housing due to uncertainty over the Non-CoC HUD Grant Conditions.

    d.      Loss of funding would eliminate Bellingham's Home Rehabilitation Program, which allows elderly and disabled residents the dignity of living safely in

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

their own homes, and would severely undermine the viability of Bellingham's food bank, on which nearly 20% of the surrounding county's residents rely.

**B.    The DOT Grant Conditions**

20.    Many Plaintiffs rely, collectively, on billions of dollars in appropriated funds through grant programs administered by the U.S. Department of Transportation (DOT) and its operating administrations, which include but are not limited to the Federal Highway Administration (FHWA), Federal Aviation Administration (FAA), Federal Railroad Administration (FRA), and Federal Transit Administration (FTA) (collectively, the "DOT OAs," and together with Defendants DOT, Sean Duffy, Tariq Bokhari, Gloria M. Shepherd, Chris Rocheleau, and Drew Feeley, the "DOT Defendants").

21.    The "Initial DOT Plaintiffs"[5] obtained relief from the challenged grant conditions in this Court's order granting Plaintiffs' prior preliminary injunction (PI) motions, Dkt. # 169. Others joined this lawsuit subsequently and are not covered by that order (the "New DOT Plaintiffs," and, together with the Initial DOT Plaintiffs, the "DOT Plaintiffs").[6]

22.    On April 24, 2025, DOT Secretary Sean Duffy issued a letter to "all recipients" of

---

[5] The "Initial DOT Plaintiffs" are King County, Bend, Boston, Chicago, Columbus, Culver City, City of Denver ("Denver"), Intercity Transit, Minneapolis, Nashville, NYC, Pierce County, Pima County, Pittsburgh, Port of Seattle ("Seattle"), Portland, San Francisco, San José, Santa Clara, Santa Monica, Snohomish County, Sonoma County, Central Puget Sound Regional Transit Authority ("Sound Transit"), San Francisco County Transportation Authority ("SFCTA"), Treasure Island Mobility Management Agency ("TIMMA"), Tucson, and City of Wilsonville ("Wilsonville").

[6] The "New DOT Plaintiffs" are Alameda County, Albuquerque, Baltimore, Bellevue, Bellingham, Bremerton, Cambridge, Dane County, Eugene, City of Healdsburg ("Healdsburg"), Hennepin County, Kitsap County, Los Angeles, Milwaukee, Milwaukee County, Multnomah County, Oakland, City of Pacifica ("Pacifica"), Pasadena, Petaluma, Puget Sound Regional Council ("PSRC"), Ramsey County, Rochester, City of Rohnert Park ("Rohnert Park"), San Diego, San Mateo County, Santa Rosa, Sonoma County Transportation Authority ("SCTA"), and Watsonville.

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 14
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

DOT grant funding announcing, among other things, a DOT "policy" to impose certain conditions on all DOT funding, including but not limited to grants administered by DOT and the DOT OAs. In particular, Secretary Duffy's letter states that grant recipients' "legal obligations require cooperation generally with Federal authorities in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law." It also states that DOT interprets federal anti-discrimination law to presumptively prohibit "any policy, program, or activity that is premised on a prohibited classification, including discriminatory policies or practices designed to achieve so-called 'diversity, equity, and inclusion' . . . goals." Finally, the letter states that "DOT recipients are prohibited from engaging in discriminatory actions in their own policies, programs, and activities."

23.    Pursuant to the policy set forth in Secretary Duffy's letter, the DOT Defendants began attaching new conditions related to immigration enforcement, executive orders, and diversity, equity, and inclusion (DEI) to DOT-funded grants.

24.    For instance, several DOT Plaintiffs were previously awarded FTA funds pursuant to programs codified in title 49, chapter 53 of the U.S. Code. These funds were awarded without any of the conditions challenged here.

25.    On April 25, 2025, FTA issued a revised Master Agreement, which applies to FTA grants awarded to the DOT Plaintiffs. The new Master Agreement contains the following new conditions ("FTA Grant Conditions"):

a.    The FTA Master Agreement requires the recipient to "agree[] to comply with all applicable federal requirements and follow applicable federal guidance." The Master Agreement defines "Federal Requirement" to include "[a]n applicable federal

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR PRELIMINARY INJUNCTION - 15
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    law, regulation, or executive order."

2    b.    The FTA Master Agreement provides:

3    (1) Pursuant to section (3)(b)(iv)(A) [of Executive Order 14173],
4        the Recipient agrees that its compliance in all respects with all
         applicable Federal antidiscrimination laws is material to the
5        government's payment decisions for purposes of [the FCA].

6    (2) Pursuant to section (3)(b)(iv)(B) [of Executive Order 14173], by
7        entering into this Agreement, the Recipient certifies that it does
         not operate any programs promoting [DEI] initiatives that
8        violate any applicable Federal anti-discrimination laws.

9    While FTA grants have long required compliance with nondiscrimination laws,

10   DOT has confirmed its intent to enforce a sweeping interpretation of these

11   conditions inconsistent with statutory text and current court interpretations of the

12   Federal antidiscrimination laws.

13   c.    The FTA Master Agreement also provides:

14
15   The Recipient . . . will cooperate with Federal officials in the
     enforcement of Federal law, including cooperating with and not
16   impeding U.S. Immigration and Customs Enforcement (ICE) and
     other Federal offices and components of the Department of
17   Homeland Security in the enforcement of Federal immigration law.

18       26.    This Court's May 7 TRO enjoined Defendants DOT, FTA, Sean Duffy, and

19   Mathew Welbes from, among other things, imposing or enforcing the FTA Grant Conditions,

20   rescinding or canceling FTA funds or withholding funds based on such conditions, or requiring

21   any "certification" or representation related to those conditions as to King County—the sole

22   Plaintiff to initially seek preliminary relief from the FTA Grant Conditions. This aspect of the TRO

23   served, in part, to prevent immediate and irreparable harms that King County faced from having

24   to choose between accepting likely unlawful conditions or losing hundreds of millions in FTA

25   funding.

26

27

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 16
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

27.     Since then, DOT and the remaining DOT OAs began attaching substantially similar conditions to numerous other DOT grants. These include, but are not limited to, programs administered by FHWA, such as the Safe Streets and Roads for All (SS4A) program, the Federal Highway-Aid Program, the Bridge Investment Program, the Culvert Aquatic Organism Passage Program, and the Advanced Transportation Technology and Innovation (ATTAIN) program; programs administered by FAA, such as the Airport Infrastructure Grants (AIG) program; programs administered by FRA, such as the Railroad Crossing Elimination (RCE) Grant Program; and programs administered directly by DOT, such as the Strengthening Mobility and Revolutionizing Transportation (SMART) discretionary grant program. Moreover, Defendants Duffy, DOT, and the DOT OAs have made clear that these conditions will now appear in all DOT grants going forward.

28.     DOT and the remaining DOT OAs have provided grant agreements governing grant programs that contain substantially the same three conditions as in the FTA Master Agreement (collectively and together with the FTA Grant Conditions, the "DOT Grant Conditions"):

a.     First, the DOT Defendants have imposed a discrimination condition ("DOT Discrimination Condition") that requires grant recipients, "[p]ursuant to Section (3)(b)(iv), Executive Order 14173" to agree that "its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of [the False Claims Act]," and that "it does not operate any programs promoting [DEI] initiatives that violate any applicable Federal anti-discrimination laws."

b.     Second, the DOT Defendants have imposed an immigration enforcement condition ("DOT Immigration Enforcement Condition") that requires recipients to

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 17
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

"cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law," and a condition requiring recipients to "follow applicable federal laws pertaining to Subchapter 12 and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter." The Duffy Letter articulates DOT's intent to enforce an expansive and novel interpretation of these statutes, thereby forcing local governments to participate in the Trump administration's aggressive immigration enforcement policies. It asserts that "[d]eclining to cooperate with the enforcement of Federal immigration law or otherwise taking action intended to shield illegal aliens from ICE detection contravenes Federal law and may give rise to civil and criminal liability" under "8 U.S.C. § 1324 and 8 U.S.C. § 1373."

        c.     Third, the DOT Defendants have imposed a condition ("DOT EO Condition") that requires recipients to "comply with all applicable Federal laws, regulations, executive orders, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds for this [grant]" and lists, among other things, Executive Orders 14168 ("Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government") and 14173 ("Ending Illegal Discrimination and Restoring Merit-Based Opportunity"), as well as two criminal immigration statutes (8 U.S.C. § 1324 and 8 U.S.C. § 1327) as "provisions" that are "applicable" to grant agreements.

        29.    The DOT Grant Conditions are in tension with, if not violative of, congressional

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 18
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

guidance and directives and HUD's own regulations. They also contradict guidance contained in NOFOs issued by DOT announcing competitions for DOT funds.

30.    For instance, the Infrastructure Investment and Jobs Act, Pub. L. 117-58, 135 Stat. 429, which established the Safe Streets and Roads for All ("SS4A") grant program, requires the DOT Secretary, in awarding grants, to consider, among other things, the extent to which applicants and their proposed projects will ensure "equitable investment in the safety needs of underserved communities in preventing transportation-related fatalities and injuries." Pub. L. 117-58, § 24112(c)(3), 135 Stat. 816.

31.    The DOT Discrimination Condition is in apparent tension with a statutorily required grant assurance sponsors must make to receive airport development grants from the FAA. In particular, sponsors must assure that they will take necessary action to ensure, to the maximum extent possible, that at least 10 percent of all businesses at the airport selling consumer products or providing consumer services to the public are small business concerns owned and controlled by "a socially and economically disadvantaged individual" or other small business concerns in historically underutilized business zones. 49 U.S.C. § 47107(e)(1). "Socially and economically disadvantaged individual" is defined to include "Black Americans, Hispanic Americans, Native Americans, Asian Pacific Americans, and other minorities," as well as women. *Id.* § 47113(a)(2); 15 U.S.C. § 637(d).

32.    Many of the general terms and conditions adopted by DOT and its OAs, including but not limited to FTA, also require compliance with 2 C.F.R. § 200.321, which states, "[w]hen possible, the recipient or subrecipient should ensure that small businesses, minority businesses, women's business enterprises, veteran-owned businesses, and labor surplus area firms" are, *inter alia*, "included on solicitation lists" and "solicited" when "deemed eligible." In addition, 49 C.F.R.

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

§ 21.5, which prohibits discrimination, states, "[w]here prior discriminatory practice or usage tends, on the grounds of race, color, or national origin to exclude individuals from participation in, to deny them the benefits of, or to subject them to discrimination under any program or activity . . . the applicant or recipient must take affirmative action to remove or overcome the effects of the prior discriminatory practice or usage." 49 C.F.R. § 21.5(b)(7).

33.    In February 2024, DOT posted a NOFO, updated in April 2024, announcing a competition for SS4A grant funding for Fiscal Year 2024 (the "FY 2024 SS4A NOFO"). The FY 2024 SS4A NOFO directed applicants to consider policy priorities in their applications, including "Equity and Barriers to Opportunity" and "Climate Change and Environmental Justice." The FY 2024 SS4A NOFO defined "equity," which it strongly emphasized throughout, as "[t]he consistent and systematic fair, just, and impartial treatment of all individuals, including individuals who belong to underserved communities that have been denied such treatment, such as Black, Latino, Indigenous and Native Americans, Asian Americans and Pacific Islanders, and other persons of color; members of religious minorities; lesbian, gay, bisexual, transgender, and queer (LGBTQ+) persons; persons with disabilities; persons who live in rural areas; and persons otherwise adversely affected by persistent poverty or inequality."

34.    This Court's May 23 TRO enjoined DOT, the DOT OAs, and their officers and agents from taking various actions to impose, enforce, or withhold DOT funds as to Plaintiffs Columbus, Intercity Transit, King County, Minneapolis, NYC, Port of Seattle, and Tucson or their subrecipients based on the DOT Grant Conditions or materially similar terms or conditions. The May 23 TRO also ordered DOT and the DOT OAs to immediately treat any actions taken to implement the DOT Grant Conditions against those Plaintiffs, including any delays or withholding of funds based on the conditions, as void, and enjoined DOT and the DOT OAs from retroactively

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

applying the conditions to grant agreements during the effective period of the TRO.

35.    This Court's June 3, 2025 PI enjoined the DOT Defendants from taking any of the actions enjoined in the TROs, as well as certain other actions to implement the DOT Grant Conditions, with respect to the Initial DOT Defendants. However, the DOT Defendants have continued to impose the DOT Grant Conditions on jurisdictions and local agencies that were not subject to the PI order, including the New DOT Plaintiffs.

36.    Plaintiffs Second Amended Complaint added the New DOT Plaintiffs to this lawsuit. Plaintiffs then filed this Motion seeking, among other things, to extend the preliminary relief granted in the first PI Order as to the DOT Grant Conditions to the New DOT Plaintiffs. The Initial DOT Plaintiffs and New DOT Plaintiffs assert the same claims and allege materially similar harms with respect to the DOT Grant Conditions.

37.    For similar reasons to those stated in the first PI order, the New DOT Plaintiffs face immediate and irreparable harms during the pendency of this litigation absent a preliminary injunction. Any delay or loss of DOT funding would force the DOT Plaintiffs to substantially curtail existing and planned transportation safety and other improvement operations, including but not limited to enhancing pedestrian and cyclist safety, conducting airport renovations and bridge improvements, and maintaining and replacing a range of transit vehicles. In some cases, the DOT Plaintiffs need to draw down grant awards immediately or else divert resources from other projects or services and face significant project delays. The loss of DOT funding would require the DOT Plaintiffs to fundamentally rework their longstanding financial plans and procedures, capital project delivery processes, and service delivery models in ways that could have significant impacts on their missions, employees, and constituents. Given the significance of the impacts, the uncertainty surrounding continued DOT funding is already causing the DOT Plaintiffs harm. To

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

give just a few examples:

a.    Loss of FHWA funding would require Bremerton to immediately cease work on projects to design improvements to a key corridor to address safety concerns and provide critical infrastructure upgrades to the region.

b.    Similarly, Rohnert Park would be forced to indefinitely delay an underway Highway 101 bicycle and pedestrian overcrossing project if FHWA withholds funds, leaving the City's residents, particularly those in vulnerable and underserved communities, exposed to hazardous road conditions.

c.    Withholding FAA funding from Milwaukee County would force it to cancel, delay, or modify—at significantly increased cost—projects to strengthen and rehabilitate major runways and other key airport infrastructure, impairing the County's ability to fund capital projects over the long-term.

d.    Even a delay in Pacifica's receipt of DOT funding from grant awards passed through the State of California would cause disruptions in projects related to public safety and traffic control that rely on National Highway Traffic Safety Administration funds.

e.    Loss of FTA funding would place Santa Rosa at risk of falling out of compliance with FTA regulations and California's zero-emission requirements and would lead to staffing reductions, service curtailments, reduced maintenance capabilities in its transit system, and delayed or cancelled infrastructure improvements intended to serve the disabled and improve safety.

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## C.    The HHS Grant Conditions

38.    The "HHS Plaintiffs"[7] have received, currently receive, or are otherwise eligible to receive federal grants administered by Defendant U.S. Department of Health and Human Services (HHS). Collectively, HHS Plaintiffs rely on over $2 billion in appropriated federal funds from HHS grant programs, which fund essential health programs and services, such as child welfare assistance, adoption and foster care services, and healthcare for low income individuals and those living with HIV/AIDS. These programs are administered by HHS and its operating divisions and agencies, including but not limited to the Administration for Children and Families (ACF), the Health Resources and Services Administration (HRSA), the Substance Abuse and Mental Health Services Administration (SAMHSA), the National Institutes of Health (NIH), and the Centers for Disease Control and Prevention (CDC), among others.

39.    Like HUD and DOT, HHS has begun attaching new and similar conditions to grants administered by HHS and its operating divisions and agencies, as described below (collectively, the "HHS Grant Conditions").

40.    In April 2025, HHS updated its Grants Policy Statement, which applies to discretionary grants and is incorporated into awards and certain award modifications after April 16, 2025. The updated Grants Policy Statement provided:

> [R]ecipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4).
>
> (1) Definitions. As used in this clause –
> (a) DEI means "diversity, equity, and inclusion."

---

[7] The "HHS Plaintiffs" are King County, Pierce County, Snohomish County, Boston, Columbus, NYC, San Francisco, Santa Clara, Cambridge, Chicago, Denver, Minneapolis, Wilsonville, Alameda County, Baltimore, Cambridge, Dane County, Eugene, Hennepin County, Milwaukee, Multnomah County, Oakland, Pacifica, Pima County, Ramsey County, Rochester, San Mateo County, and Wilsonville.

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 23
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

2

3

4

5

6

7

8

(b) DEIA means "diversity, equity, inclusion, and accessibility."
(c) Discriminatory equity ideology has the meaning set forth in
Section 2(b) of Executive Order 14190 of January 29, 2025.

. . . .

By accepting the grant award, recipients are certifying that . . .
[t]hey do not, and will not during the term of this financial
assistance award, operate any programs that advance or promote
DEI, DEIA, or discriminatory equity ideology in violation of
Federal anti-discrimination laws

(together, the "HHS Discrimination Condition").

41.     On July 24, 2025, after Plaintiffs filed the Motion, HHS updated the Grants Policy

Statement again (2025 HHS GPS), removing express references to DEI but maintaining that by

not only "accepting," but even "*applying for* . . . federal funds from HHS, recipients certify

compliance with all federal antidiscrimination laws and these requirements that complying with

those laws is a material condition of receiving federal funding streams." The 2025 HHS GPS also

states that "[r]ecipients  are responsible for ensuring subrecipients, contractors, and partners also

comply." The statements referenced above, including by Attorney General Bondi, Deputy

Attorney General Blanche, and other federal officials, strongly suggest that HHS intends to enforce

the 2025 HHS GPS consistent with the anti-DEI reinterpretation of nondiscrimination law

expressed in these statements, notwithstanding the revised language.

42.     In addition to these agency-wide conditions, several HHS operating divisions and

agencies have issued their own general terms and conditions incorporating the 2025 HHS GPS.

43.     ACF has updated its Standard Terms and Conditions, which apply to both

discretionary and non-discretionary awards, to add a certification materially identical to the HHS

Discrimination Condition, which states:

For *new awards made on or after May 8, 2025*, the following
is effective immediately:

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 24
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

> Recipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of [the FCA].
>
> (1) Definitions. As used in this clause –
>
>> (a) DEI means "diversity, equity, and inclusion."
>>
>> (b) DEIA means "diversity, equity, inclusion, and accessibility."
>>
>> (c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025.
>>
>> (e) Federal anti-discrimination laws means Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin.
>
> (2) Grant award certification.
>
>> (a) By accepting the grant award, recipients are certifying that:
>>
>> (i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote the following in violation of Federal anti-discrimination laws: DEI, DEIA, or discriminatory equity ideology.

44.    While HHS grants have long required compliance with nondiscrimination laws, President Trump, HHS, and other agencies have confirmed their agenda is to prohibit policies or programs promoting inclusion for people of all races, ethnicities, national origins, sexes, gender identities, or sexual orientations through the guise of enforcing federal nondiscrimination law.

45.    Like HHS, ACF updated its Standard Terms and Conditions on July 29, 2025, to remove express references to DEI. But the statements discussed indicated that this revision does not change the intended meaning of the condition or how ACF will enforce it:

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 25
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

2

3

4

By applying for or accepting federal funds from HHS, recipients certify compliance with all federal antidiscrimination laws and these requirements and that complying with those laws is a material condition of receiving federal funding streams. Recipients are responsible for ensuring subrecipients, contractors, and partners also comply.

5

6

46.    On May 14, 2025, HRSA issued updated general terms and conditions applicable

7

to "all active awards." The revised HRSA terms and conditions incorporate the 2025 HHS GPS

8

and also contain the following new provision:

9

10

By accepting this award, including the obligation, expenditure, or drawdown of award funds, recipients, whose programs, are covered by Title IX certify as follows:

11

12

13

14

15

Recipient is compliant with Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§ 1681 et seq., including the requirements set forth in Presidential Executive Order 14168 titled Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., and Recipient will remain compliant for the duration of the Agreement.

16

17

The above requirements are conditions of payment that go the essence of the Agreement and are therefore material terms of the Agreement.

18

19

20

Payments under the Agreement are predicated on compliance with the above requirements, and therefore Recipient is not eligible for funding under the Agreement or to retain any funding under the Agreement absent compliance with the above requirements.

21

22

23

Recipient acknowledges that this certification reflects a change in the government's position regarding the materiality of the foregoing requirements and therefore any prior payment of similar claims does not reflect the materiality of the foregoing requirements to this Agreement.

24

25

26

Recipient acknowledges that a knowing false statement relating to Recipient's compliance with the above requirements and/or eligibility for the Agreement may subject Recipient to liability under the False Claims Act, 31 U.S.C. § 3729, and/or criminal liability, including under 18 U.S.C. §§ 287 and 1001.

27

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 26
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(the "HRSA Gender Ideology Condition").

47.     SAMHSA has also updated its NOFO Application Guide to state that "[a]ll activities proposed in your application and budget narrative must be in alignment with the current Executive Orders" (the "SAMHSA EO Condition").

48.     On July 29, 2025, SAMHSA also updated its Fiscal Year 2025 Standard Terms and Conditions (2025 SAMHSA T&Cs). The 2025 SAMHSA T&Cs incorporate the 2025 HHS GPS and also contain a Title IX condition materially identical to the HRSA Gender Ideology Condition ("SAMHSA Gender Ideology Condition"). Moreover, the 2025 SAMHSA T&Cs state "[r]ecipients are required to comply with all applicable Executive Orders" (mirroring the SAMHSA EO Condition).

49.     Finally, NIH has issued Notices of Award that contain a condition relating to Title IX that is substantially identical to the HRSA Gender Ideology Condition (the "NIH Gender Ideology Condition").

50.     The HHS Grant Conditions contradict guidance contained in NOFOs issued by HHS announcing competitions for HHS funds. For instance, in 2024, CDC issued a NOFO announcing a competition for grants under the High-Impact HIV Prevention and Surveillance Programs for Health Departments. The NOFO required applicants to include an element in their applications "[a]ddressing [s]ocial and [s]tructural [f]actors." The NOFO further stated that "[t]he impact of racism, homophobia, transphobia, and stigma significantly exacerbates the health disparities experienced among communities disproportionately affected by HIV." Accordingly, the NOFO explained, "[h]ealth equity is a desirable goal that entails special efforts to improve the health of those who have experienced social or economic disadvantage." With respect to "[p]opulation(s) of [f]ocus," the NOFO explained that "[a]pplicants must provide HIV services to

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

populations within the jurisdiction that are disproportionately impacted by HIV," and provided "[e]xamples to consider," including "transgender women, cisgender Black or African American women, gay and bisexual men, American Indian or Alaska Native gay and bisexual men, people who inject drugs (PWID), youth, pregnant and postpartum persons and their infants, and other populations with disproportionately higher rates of HIV diagnosis including individuals involved in the justice system and people experiencing housing insecurity."

51.    HHS Plaintiffs face immediate and irreparable harms from imposition of the HHS Grant Conditions during the pendency of this litigation absent a PI. Loss of HHS funding would force jurisdictions to curtail or terminate essential services, leading many of their most vulnerable residents to lose access to food, medical care, child care, and housing, among other critical services. The curtailment of services would have wide-reaching public health consequences, including but not limited to diminished pandemic preparedness and communicable disease control. For example:

     a.    Loss of HRSA funding would cause at least 75 low income individuals living in King County with HIV to immediately lose housing, up to 500 others to be at high risk of losing housing, and approximately 3,300 such individuals to lose access to critical medical and support services that help them navigate the challenges of living with HIV.

     b.    A loss of Social Service Block Grants administered by ACF would lead to thousands of Dane County's most vulnerable residents losing access to meals, medical care, housing, and other essential social services.

     c.    San Francisco would be unable to replace tens of millions of dollars in Title IV-E foster care and adoption assistance funds administered by ACF, forcing it to end

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 28
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

payments to foster families and agencies that provide housing, care, and services to approximately 500 children who cannot remain safely in their homes.

d.    Losing CDC funding would force Minneapolis to curtail emergency preparedness work, including losing three of five staff members who work on the program and severely impacting the City's capacity to prepare and respond to public health emergencies like the COVID-19 pandemic.

e.    Similarly, reductions in CDC funding for HIV and sexually-transmitted infection (STI) prevention and surveillance would lead to lay-offs and elimination of programs, setting-back San Francisco's progress in addressing those public health challenges. The resulting reduction in services would likely lead to increases in HIV and syphilis infections as well as HIV and STI deaths.

f.    Loss of TANF block grants would significantly impact services available to vulnerable populations in NYC, including vocational training for the unemployed and underemployed; counseling, legal assistance, case management for survivors of domestic violence, and rental and legal assistance for those facing eviction.

## II.    CONCLUSIONS OF LAW

1.    The Court has jurisdiction over Defendants and the subject matter of this action. Plaintiffs' claims are not subject to the Tucker Act because the sources of their asserted rights are the U.S. Constitution and statutes, including the Separation of Powers doctrine, the Spending Clause, the Fifth Amendment's vagueness doctrine, the Tenth Amendment, and the Administrative Procedure Act (APA). Moreover, the type of relief Plaintiffs seek is declaratory and injunctive, precisely the kind of relief that is generally not available in the Court of Federal Claims. *See Doe v. Tenet*, 329 F.3d 1135, 1141 (9th Cir. 2003).

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

2.      Plaintiffs have standing to bring this suit. "A loss of funds promised under federal law satisfies Article III's standing requirement." *City & Cnty. of S.F. v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019). Here, Plaintiffs have been awarded, conditionally awarded, reasonably expect to be awarded, or otherwise rely on federal grant funds that they could lose unless they accept unlawful conditions that would dictate how they govern on matters of public concern. This imminent loss of funds or infringement of rights is traceable to the conditions at issue and redressable by an order barring their enforcement. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

3.      To obtain a preliminary injunction, the Plaintiffs must establish (1) they are likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65(b)(1).

4.      There is a strong likelihood that the New CoC Plaintiffs will succeed on the merits of their claims that the CoC Grant Conditions violate (1) the Constitution's separation of powers doctrine, *San Francisco*, 897 F.3d at 1234; (2) the Spending Clause, *S. Dakota v. Dole*, 483 U.S. 203, 207–08 (1987); (3) the Fifth Amendment's vagueness doctrine; and (4) the APA, 5 U.S.C. § 706(2).

5.      There is a strong likelihood that the HUD Plaintiffs will succeed on the merits of their claims that the Non-CoC HUD Grant Conditions violate (1) the Constitution's separation of powers doctrine, *San Francisco*, 897 F.3d at 1234; (2) the Spending Clause, *Dole*, 483 U.S. at 207–08 (1987); (3) the Fifth Amendment's vagueness doctrine; and (4) the APA, 5 U.S.C. § 706(2).

6.      There is a strong likelihood that the DOT Plaintiffs will succeed on the merits of

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR PRELIMINARY INJUNCTION - 30
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

their claims that the DOT Grant Conditions violate (1) the Constitution's separation of powers doctrine, *San Francisco*, 897 F.3d at 1234; (2) the Spending Clause, *Dole*, 483 U.S. at 207–08; (3) the Fifth Amendment's vagueness doctrine; (4) the Tenth Amendment, *Nat'l Fed'n of Indep. Bus. v. Sebelius* ("*NFIB*"), 567 U.S. 519, 577–78 (2012); and (5) the APA, 5 U.S.C. § 706(2).

7.     There is a strong likelihood that the HHS Plaintiffs will succeed on the merits of their claims that the HHS Grant Conditions violate (1) the Constitution's separation of powers doctrine, *San Francisco*, 897 F.3d at 1234; (2) the Spending Clause, *Dole*, 483 U.S. at 207–08; (3) the Fifth Amendment's vagueness doctrine; and (4) the APA, 5 U.S.C. § 706(2).

8.     Plaintiffs have also shown that they are likely to suffer irreparable harm during the pendency of litigation in the absence of a preliminary injunction.

9.     The balance of equities tips toward Plaintiffs and the public interest strongly weighs in favor of entering a preliminary injunction. Defendants have not posited any non-monetary harm they will experience if an injunction were to issue, and they have no legitimate interest in ensuring that funds are spent pursuant to conditions that were likely imposed in violation of the APA and the Constitution. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (there is no legitimate government interest in violating federal law).

10.     The Court deems no security bond is required under Rule 65(c).

### III.     ORDER

It is now, therefore, ORDERED as follows:

1.     Plaintiffs' Third Motion for Preliminary Injunction is GRANTED;

2.     HUD and its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined HUD CoC Parties"), are enjoined from (1) imposing or enforcing the CoC Grant Conditions, as defined in the

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 31
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Appendix to this Order, or any materially similar terms or conditions at any stage of the grant-making process, including but not limited to in new grant applications, notices of funding availability or opportunity, certifications, grant agreements, or post-award submissions, with respect to any CoC funds awarded to the New CoC Plaintiffs or members of their Continuums; (2) as to the New CoC Plaintiffs or members of their Continuums, rescinding, withholding, cancelling, or otherwise not processing any CoC Agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning CoC funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by this preliminary injunction; (3) requiring the New CoC Plaintiffs or members of their Continuums to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign CoC Agreements based on New CoC Plaintiffs' participation in this lawsuit;

3.    The Enjoined HUD CoC Parties shall immediately treat any actions taken to implement or enforce the CoC Grant Conditions or any materially similar terms or conditions as to the New-CoC Plaintiffs or their Continuums, including but not limited to any delays or withholding of funds based on such conditions, as null, void, and rescinded; while this PI is in effect, shall treat as null and void any such conditions included in any grant agreement executed by any New CoC Plaintiff or member of a New CoC Plaintiff's Continuum; and may not retroactively apply such conditions to grant agreements during the effective period of this PI. The Enjoined HUD CoC Parties shall immediately take every step necessary to effectuate this order, including without limitation clearing any administrative, operational, or technical hurdles to implementation;

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 32
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

4.      HUD, all of the HUD program offices, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined HUD Parties"), are enjoined from (1) imposing or enforcing the Non-CoC HUD Grant Conditions, as defined in the Appendix to this Order, or any materially similar terms or conditions at any stage of the grant-making process, including but not limited to in new grant applications, notices of funding availability or opportunity, certifications, grant agreements, or post-award submissions, with respect to any non-CoC HUD funds awarded to the HUD Plaintiffs, their consortia, or their subrecipients; (2) as to the HUD Plaintiffs, their consortia, or their subrecipients, rescinding, withholding, cancelling, or otherwise not processing any non-CoC HUD awards, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning non-CoC HUD funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by this preliminary injunction; (3) requiring the HUD Plaintiffs, their consortia, or their subrecipients to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign grant agreements based on HUD Plaintiffs' participation in this lawsuit;

5.      The Enjoined HUD Parties shall immediately treat any actions taken to implement or enforce the Non-CoC HUD Grant Conditions or any materially similar terms or conditions as to the HUD Plaintiffs, their consortia, or their subrecipients, including but not limited to any delays or withholding of funds based on such conditions, as null, void, and rescinded; while this PI is in effect, shall treat as null and void any such conditions included in any grant agreement executed by any HUD Plaintiff, a member of its consortium, or its subrecipient; and may not retroactively apply such conditions to grant agreements during the effective period of this PI.

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The Enjoined HUD Parties shall immediately take every step necessary to effectuate this order, including without limitation clearing any administrative, operational, or technical hurdles to implementation;

6.      DOT, all of the DOT OAs, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined DOT Parties"), are enjoined from (1) imposing or enforcing the DOT Grant Conditions, as defined in the Appendix to this Order, or any materially similar terms or conditions at any stage of the grant-making process, including but not limited to in new grant applications, notices of funding availability or opportunity, certifications, grant agreements, or post-award submissions, as to any DOT funds awarded, directly or indirectly, to the New DOT Plaintiffs or their subrecipients; (2) as to the New DOT Plaintiffs or their subrecipients, rescinding, withholding, cancelling, or otherwise not processing the DOT grant awards, or pausing, freezing, impeding, blocking, canceling, terminating, delaying, withholding, or conditioning DOT funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by this preliminary injunction; (3) requiring the New DOT Plaintiffs or their subrecipients to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign grant agreements based on New DOT Plaintiffs' participation in this lawsuit;

7.      The Enjoined DOT Parties shall immediately treat any actions taken to implement or enforce the DOT Grant Conditions or any materially similar terms or conditions as to DOT funds awarded, directly or indirectly, to the New DOT Plaintiffs or their subrecipients, including but not limited to any delays or withholding of funds based on such conditions, as null, void, and

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

rescinded; while this PI is in effect, shall treat as null and void any such conditions included in any grant agreement executed by any New DOT Plaintiff or its subrecipient; and may not retroactively apply such conditions to grant agreements during the effective period of this PI. The Enjoined DOT Parties shall immediately take every step necessary to effectuate this order, including without limitation clearing any administrative, operational, or technical hurdles to implementation;

8.    HHS, all of the HHS operating divisions and agencies, and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined HHS Parties"), are enjoined from (1) imposing or enforcing the HHS Grant Conditions, as defined in the Appendix to this Order, or any materially similar terms or conditions at any stage of the grant-making process, including but not limited to in new grant applications, notices of funding availability or opportunity, certifications, grant agreements, or post-award submissions, as to any HHS funds awarded, directly or indirectly, to the HHS Plaintiffs or their subrecipients; (2) as to the HHS Plaintiffs or their subrecipients, rescinding, withholding, cancelling, or otherwise not processing HHS grant awards, or pausing, freezing, impeding, blocking, canceling, terminating, delaying, withholding, or conditioning HHS funds, based on such terms or conditions, including without limitation failing or refusing to process and otherwise implement grants signed with changes or other objections to conditions enjoined by this preliminary injunction; (3) requiring the HHS Plaintiffs or their subrecipients to make any "certification" or other representation related to compliance with such terms or conditions; or (4) refusing to issue, process, or sign grant agreements based on HHS Plaintiffs' participation in this lawsuit;

9.    The Enjoined HHS Parties shall immediately treat any actions taken to implement or enforce the HHS Grant Conditions or any materially similar terms or conditions as to HHS

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 35
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

funds awarded, directly or indirectly, to the HHS Plaintiffs or their subrecipients, including but not limited to any delays or withholding of funds based on such conditions, as null, void, and rescinded; while this PI is in effect, shall treat as null and void any such conditions included in any grant agreement executed by any HHS Plaintiff or its subrecipient; and may not retroactively apply such conditions to grant agreements during the effective period of this PI. The Enjoined HHS Parties shall immediately take every step necessary to effectuate this order, including without limitation clearing any administrative, operational, or technical hurdles to implementation;

10.     Defendants' counsel shall provide written notice of this Order to all Defendants and their employees by the end of the second day after issuance of this Order;

11.     By the end of the second day after issuance of this Order, the Defendants SHALL FILE on the Court's electronic docket and serve upon Plaintiffs a Status Report documenting the actions that they have taken to comply with this Order, including a copy of the notice and an explanation as to whom the notice was sent;

12.     This order remains in effect pending further orders from this Court.

Dated this ___ day of _____, 2025.

_____
HONORABLE BARBARA J. ROTHSTEIN

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**APPENDIX**

The **"CoC Grant Conditions"** enjoined by this Order are the following terms and conditions:

– The recipient or applicant shall not use grant funds to promote "gender ideology," as defined in E.O. 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

– The recipient or applicant agrees that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

– The recipient or applicant certifies that it does not operate any programs that violate any applicable Federal anti-discrimination laws, including Title VI of the Civil Rights Act of 1964;

– The recipient or applicant shall not use any Grant Funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment;

– The recipient or applicant must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Center for Immigration Services [sic] may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws;

– No state or unit of general local government that receives funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation;

– Subject to the exceptions provided by PRWORA, the recipient or applicant must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States;

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 37
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

– The recipient or applicant agrees that use of Grant Funds and its operation of projects assisted with Grant Funds are governed by all Executive Orders.

The **"Non-CoC HUD Grant Conditions"** enjoined by this Order are the following terms and conditions:

– The recipient or applicant will not use Federal funding to promote diversity, equity, and inclusion (DEI) mandates, policies, programs, or activities that violate any applicable Federal antidiscrimination laws;

– The recipient or applicant shall not use grant funds to promote "gender ideology," as defined in Executive Order (E.O.) 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government;

– The recipient or applicant agrees that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the U.S. Government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

– The recipient or applicant certifies that it does not operate any programs that violate any applicable Federal antidiscrimination laws, including Title VI of the Civil Rights Act of 1964;

– The recipient or applicant shall not use any grant funds to fund or promote elective abortions, as required by E.O. 14182, Enforcing the Hyde Amendment;

– The recipient or applicant must administer its grant in accordance with all applicable immigration restrictions and requirements, including the eligibility and verification requirements that apply under title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, as amended (8 U.S.C. 1601-1646) (PRWORA) and any applicable requirements that HUD, the Attorney General, or the U.S. Citizenship and Immigration Services may establish from time to time to comply with PRWORA, Executive Order 14218, or other Executive Orders or immigration laws;

– If applicable, no state or unit of general local government that receives or applies for funding under this grant may use that funding in a manner that by design or effect facilitates the subsidization or promotion of illegal immigration or abets policies that seek to shield illegal aliens from deportation;

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

– Unless excepted by PRWORA, the recipient or applicant must use SAVE, or an equivalent verification system approved by the Federal government, to prevent any Federal public benefit from being provided to an ineligible alien who entered the United States illegally or is otherwise unlawfully present in the United States.

– The recipient or applicant must comply with applicable existing and future Executive Orders, as advised by the Department, including but not limited to Executive Order 14182, Enforcing the Hyde Amendment; Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity; Executive Order 14168, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government; and Executive Order 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing.

The **"DOT Grant Conditions"** enjoined by this Order are the following terms and conditions:

– Pursuant to section (3)(b)(iv)(A), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, the recipient or applicant agrees that its compliance in all respects with all applicable Federal antidiscrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code;

– Pursuant to section (3)(b)(iv)(B), Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, by entering into this Agreement, the recipient or applicant certifies that it does not operate any programs promoting diversity, equity, and inclusion (DEI) initiatives that violate any applicable Federal anti-discrimination laws;

– The recipient or applicant agrees to comply with executive orders, including but not limited to Executive Order 14168 titled Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, as they relate to the application, acceptance, and use of Federal funds for this project or grant;

– The recipient or applicant will cooperate with Federal officials in the enforcement of Federal law, including cooperating with and not impeding U.S. Immigration and Customs Enforcement (ICE) and other Federal offices and components of the Department of Homeland Security in the enforcement of Federal immigration law;

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 39
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

– The recipient or applicant will follow applicable federal laws pertaining to Subchapter 12, and be subject to the penalties set forth in 8 U.S.C. § 1324, Bringing in and harboring certain aliens, and 8 U.S.C. § 1327, Aiding or assisting certain aliens to enter.

– The recipient or applicant must comply with other applicable federal nondiscrimination laws, regulations, and requirements, and follow federal guidance prohibiting discrimination;

– The recipient or applicant must comply with all applicable executive orders as they relate to the application, acceptance, and use of Federal funds for this Project;

– Performance under this agreement or application shall be governed by and in compliance with the following requirements, as applicable, to the type of organization of the recipient or applicant and any applicable sub-recipients. The applicable provisions to this agreement or application include, but are not limited to, the following: Bringing in and harboring certain aliens – 8 U.S.C. 1324; Aiding or assisting certain aliens to enter – 8 U.S.C. 1327; Executive Order 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing; Executive Order 14168 Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government; and Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity.

The **"HHS Grant Conditions"** enjoined by this Order are the following terms and conditions:

– The recipient or applicant must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4).

(1) Definitions. As used in this clause –

(a) DEI means "diversity, equity, and inclusion."

(b) DEIA means "diversity, equity, inclusion, and accessibility."

(c) Discriminatory equity ideology has the meaning set forth in Section 2(b) of Executive Order 14190 of January 29, 2025.

. . . .

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 40
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(e) Federal anti-discrimination laws means Federal civil rights law that protect individual Americans from discrimination on the basis of race, color, sex, religion, and national origin.

(2) Grant award certification.

(a) By accepting the grant award, recipients are certifying that:

(i) They do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws;

– By applying for or accepting federal funds from HHS, recipients certify compliance with all federal antidiscrimination laws and these requirements and that complying with those laws is a material condition of receiving federal funding streams. Recipients are responsible for ensuring subrecipients, contractors, and partners also comply.

– All activities proposed in your application and budget narrative must be in alignment with the current Executive Orders;

– Recipients are required to comply with all applicable Executive Orders;

– Funds cannot be used to support or provide services, either directly or indirectly, to removable or illegal aliens;

– By accepting this award, including the obligation, expenditure, or drawdown of award funds, recipients or applicants, whose programs, are covered by Title IX certify as follows:

The recipient or applicant is compliant with Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§ 1681 et seq., including the requirements set forth in Presidential Executive Order 14168 titled Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., and Recipient will remain compliant for the duration of the Agreement.

The above requirements are conditions of payment that go the essence of the Agreement and are therefore material terms of the Agreement.

Payments under the Agreement are predicated on compliance with the above requirements, and therefore the recipient or

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 41
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

applicant is not eligible for funding under the Agreement or to retain any funding under the Agreement absent compliance with the above requirements.

The recipient or applicant acknowledges that this certification reflects a change in the government's position regarding the materiality of the foregoing requirements and therefore any prior payment of similar claims does not reflect the materiality of the foregoing requirements to this Agreement.

The recipient or applicant acknowledges that a knowing false statement relating to recipient's or applicant's compliance with the above requirements and/or eligibility for the Agreement may subject the recipient or applicant to liability under the False Claims Act, 31 U.S.C. § 3729, and/or criminal liability, including under 18 U.S.C. §§ 287 and 1001.

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 42
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Presented by:

2    PACIFICA LAW GROUP LLP

3    /s/ Paul J. Lawrence
     Paul J. Lawrence, WSBA #13557
4    Jamie Lisagor, WSBA #39946
     Sarah S. Washburn, WSBA #44418
5    Meha Goyal, WSBA #56058
6    Galen Knowles, WSBA #59644
     Luther Reed-Caulkins, WSBA #62513
7    Attorneys for All Plaintiffs

8
     LEESA MANION
9    King County Prosecuting Attorney

10   /s/ David J. Hackett
11   David J. Hackett, WSBA #21234
     Alison Holcomb, WSBA #23303
12   Erin Overbey, WSBA #21907
     Cristy Craig, WSBA #27451
13   Donna Bond, WSBA #36177
14   Attorneys for Plaintiff Martin Luther
     King, Jr. County
15

16   JASON J. CUMMINGS
     Snohomish County Prosecuting Attorney
17
     /s/ Bridget E. Casey
18   Bridget E. Casey, WSBA #30459
     Rebecca J. Guadamud, WSBA #39718
19   Rebecca E. Wendling, WSBA #35887
20   Attorneys for Plaintiff Snohomish County

21   DAVID CHIU
     San Francisco City Attorney
22
23   /s/ David Chiu
     David Chiu (CA Bar No. 189542)
24   Yvonne R. Meré (CA Bar No. 175394)
     Mollie M. Lee (CA Bar No. 251404)
25   Sara J. Eisenberg (CA Bar No. 269303)
     Ronald H. Lee (CA Bar No. 238720)
26   Alexander J. Holtzman (CA Bar No. 311813)
27   Attorneys for Plaintiffs City and County of

     ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
     PRELIMINARY INJUNCTION - 43
     No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    *San Francisco, San Francisco County*
2    *Transportation Authority, and Treasure*
     *Island Mobility Management Agency*
3
     OFFICE OF THE COUNTY COUNSEL,
4    COUNTY OF SANTA CLARA
5
      */s/ Tony LoPresti*
6    Tony LoPresti (CA Bar No. 289269)
7    Kavita Narayan (CA Bar No. 264191)
     Meredith A. Johnson (CA Bar No. 291018)
8    Stefanie L. Wilson (CA Bar No. 314899)
     Cara H. Sandberg (CA Bar No. 291058)
9    *Attorneys for Plaintiff County of Santa Clara*
10
     ADAM CEDERBAUM
11   Corporation Counsel, City of Boston
12
     */s/ Samantha H. Fuchs*
13   Samantha H. Fuchs (MA BBO No. 708216)
     Samuel B. Dinning (MA BBO No. 704304)
14   *Attorneys for Plaintiff City of Boston*
15
     CITY OF COLUMBUS, DEPARTMENT OF LAW
16   ZACH KLEIN, CITY ATTORNEY
17
     */s/ Richard N. Coglianese*
18   Richard N. Coglianese (OH Bar No. 0066830)
     *Attorney for Plaintiff City of Columbus*
19
20   PUBLIC RIGHTS PROJECT
21   */s/ Sharanya Mohan*
     Sharanya (Sai) Mohan (CA Bar No. 350675)
22   Naomi Tsu (OR Bar No. 242511)
     Toby Merrill (MA Bar No. 601071)
23   *Counsel for Plaintiffs City of Columbus, City*
24   *& County of Denver, Metro Government of*
     *Nashville & Davidson County, Pima County,*
25   *County of Sonoma, City of Bend, City of*
     *Cambridge, City of Chicago, City of Culver*
26   *City, City of Minneapolis, City of Pasadena,*
     *City of Pittsburgh, City of Portland, City of*
27

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 44
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1  *San José, City of Santa Monica, City of*
2  *Tucson, City of Wilsonville, Santa Monica*
   *Housing Authority, County of Alameda, City*
3  *of Albuquerque, Mayor and City Council of*
   *Baltimore, City of Bellevue, City of*
4  *Bellingham, City of Bremerton, County of*
   *Dane, City of Eugene, City of Healdsburg,*
5  *County of Hennepin, Kitsap County, City of*
   *Los Angeles, City of Milwaukee, Milwaukee*
6  *County, Multnomah County, City of Oakland,*
   *City of Pacifica, City of Petaluma, Ramsey*
7  *County, City of Rochester, City of Rohnert*
   *Park, San Mateo County, City of Santa Rosa,*
8  *City of Watsonville, Culver City Housing*
   *Authority, Puget Sound Regional Council,*
9  *Sonoma County Transportation Authority,*
   *and Sonoma County Community*
10 *Development Commission*

11

12 MURIEL GOODE-TRUFANT
13 Corporation Counsel of the City of New York

14 */s/ Doris Bernhardt*
   Doris Bernhardt (NY Bar No. 4449385)
15 Joshua P. Rubin (NY Bar No. 2734051)
   Aatif Iqbal (NY Bar No. 5068515)
16 *Attorneys for Plaintiff City of New York*

17

18 ASHLEY M. KELLIHER
   DAVID P. STEINBERGER
19 Assistant City Attorneys

20 */s/ Ashley M. Kelliher*
   Ashley M. Kelliher (CO Bar No. 40220)
21 David P. Steinberger (CO Bar No. 48530)
   *Attorneys for Plaintiff City and County of Denver*
22

23 LAURA CONOVER
   Pima County Attorney
24

25 */s/ Bobby Yu*
   Samuel E. Brown (AZ Bar No. 027474)
26 Bobby Yu (AZ Bar No. 031237)
   Kyle Johnson (AZ Bar No. 032908)
27 *Attorneys for Plaintiff Pima County*
   ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
   PRELIMINARY INJUNCTION - 45
   No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ROBERT H. PITTMAN, County Counsel

*/s/ Joshua A. Myers*
Joshua A. Myers (CA Bar No. 250988)
*Attorneys for Plaintiffs County of
Sonoma, Sonoma County Transportation
Authority, and Sonoma County
Community Development Commission*

OFFICE OF THE CITY ATTORNEY
FOR THE CITY OF BEND

*/s/ Ian M. Leitheiser*
Ian M. Leitheiser (OSB #993106)
Elizabeth Oshel (OSB #104705)
Michael J. Gaffney (OSB #251680)
*Attorneys for Plaintiff City of Bend*

CITY OF CAMBRIDGE, LAW DEPARTMENT
MEGAN B. BAYER, CITY SOLICITOR

*/s/ Megan B. Bayer*
Megan B. Bayer (MA BBO No. 669494)
Elliott J. Veloso (MA BBO No. 677292)
Diane Pires (MA BBO No. 681713)
*Attorneys for Plaintiff City of Cambridge*

MARY B. RICHARDSON-LOWRY
Corporation Counsel of the City of Chicago

*/s/ Rebecca Hirsch*
Rebecca Hirsch (IL Bar No. 6279592)
Chelsey Metcalf (IL Bar No. 6337233)
*Attorneys for Plaintiff City of Chicago*

KRISTYN ANDERSON
City Attorney

*/s/ Kristyn Anderson*
Kristyn Anderson (MN Lic. 0267752)
Sara J. Lathrop (MN Lic. 0310232)
Munazza Humayun (MN Lic. 0390788)
*Attorneys for Plaintiff City of Minneapolis*

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 46
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    KRYSIA KUBIAK, Esq.
     City Solicitor
2

3    */s/ Julie E. Koren*
     Julie E. Koren (PA Bar No. 309642)
4    *Counsel for Plaintiff City of Pittsburgh*

5    ROBERT TAYLOR
     Portland City Attorney
6

7    */s/ Caroline Turco*
     Caroline Turco (OR Bar No. 083813)
8    *Attorney for Plaintiff City of Portland*

9    NORA FRIMANN
     City Attorney
10

11    */s/ Nora Frimann*
     Nora Frimann (CA Bar No. 93249)
12    Elisa Tolentino (CA Bar No. 245962)
     *Attorneys for Plaintiff City of San José*
13

14    CITY OF WILSONVILLE

15    */s/ Amanda R. Guile-Hinman*
     Amanda R. Guile-Hinman, WSBA #46282
16    *Attorneys for the City of Wilsonville*

17

18    CENTRAL PUGET SOUND REGIONAL
     TRANSIT AUTHORITY
19

20    */s/ Andrés Muñoz*
     Andrés Muñoz, WSBA #50224
21    Desmond Brown, WSBA #16232
     *Attorneys for the Central Puget Sound*
22    *Regional Transit Authority*

23    LAW, LYMAN, DANIEL, KAMERRER
     & BOGDANOVICH, P.S.
24

25    */s/ Jeffrey S. Myers*
     Jeffrey S. Myers, WSBA #16390
26    Erin L. Hillier, WSBA #42883
     Jakub Kocztorz, WSBA #61393
27    *Attorneys for Plaintiff Intercity Transit*

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 47
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1  PORT OF SEATTLE
   Anderson & Kreiger LLP
2

3  */s/ Melissa C. Allison*
   Melissa C. Allison (MA Bar No. 657470)
4  David S. Mackey (MA Bar No. 542277)
   Christina S. Marshall (MA Bar No. 688348)
5  *Attorneys for Plaintiff Port of Seattle and*
   *Milwaukee County*
6

7  KING COUNTY REGIONAL
   HOMELESSNESS AUTHORITY
8

9  */s/ Edmund Witter*
   Edmund Witter, WSBA #52339
10 *Attorneys for Plaintiff King County Regional*
   *Homelessness Authority*
11

12 OFFICE OF THE COUNTY COUNSEL,
   COUNTY OF ALAMEDA
13

14 */s/ Donna R. Ziegler*
   Donna R. Ziegler (CA Bar No. 142415)
15 K. Scott Dickey (CA Bar No. 184251)
   Jason M. Allen (CA Bar No. 284432)
16 *Attorneys for Plaintiff County of Alameda*

17 CITY OF ALBUQUERQUE

18 */s/ Lauren Keefe*
19 Lauren Keefe, City Attorney (NM Lic. 14664)
   Devon P. King, Deputy City Attorney (NM Lic. 148108)
20 *Attorneys for Plaintiff City of Albuquerque*

21
   CITY OF BELLEVUE
22 OFFICE OF THE CITY ATTORNEY
   Trisna Tanus, City Attorney
23

24 */s/ Trisna Tanus*
   Trisna Tanus, WSBA #46568
25 Chad R. Barnes, WSBA #30480
   Katherine B. White, WSBA #46649
26 *Attorneys for Plaintiff City of Bellevue*

27

   ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
   PRELIMINARY INJUNCTION - 48
   No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

CITY OF BELLINGHAM

*/s/ Sarah W. Chaplin*
Sarah W. Chaplin, WSBA #51642
*Attorneys for Plaintiff City of Bellingham*

BREMERTON CITY ATTORNEY

*/s/ Kylie J. Finnell*
Kylie J. Finnell, WSBA #34997
Brett Jette, WSBA #47903
*Attorneys for Plaintiff City of Bremerton*

OFFICE OF THE CORPORATION
COUNSEL FOR DANE COUNTY

*/s/ Carlos A. Pabellon*
Carlos A. Pabellon (WI State Bar No. 1046945)
David R. Gault (WI State Bar No. 1016374)
*Attorneys for Plaintiff County of Dane*

CITY OF EUGENE

*/s/ Mark Kannen*
Mark Kannen (OSB 120999)
Kathryn P. Brotherton (OSB 981530)
*Attorneys for Plaintiff City of Eugene*

BURKE, WILLIAMS & SORENSEN, LLP

*/s/ Samantha W. Zutler*
Samantha W. Zutler (CA Bar No. 238514)
Eileen L. Ollivier (CA Bar No. 345880)
*Attorney for Plaintiffs City of Healdsburg
and City of Watsonville*

BURKE, WILLIAMS & SORENSEN, LLP

*/s/ Michelle Marchetta Kenyon*
Michelle Marchetta Kenyon (CA Bar No. 127969)
Eileen L. Ollivier (CA Bar No. 345880)
*Attorneys for Plaintiffs City of Pacifica
and City of Rohnert Park*

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 49
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

MARY F. MORIARTY
Hennepin County Attorney

*/s/ Rebecca Holschuh*
Rebecca L.S. Holschuh (MN Bar No. 0392251)
Brittany K. McCormick (MN Bar No. 0395175)
*Attorneys for Plaintiff County of Hennepin*

KITSAP COUNTY

*/s/ Kyla S. Bond*
Kyla S. Bond, WSBA #48309
*Attorney for Plaintiff Kitsap County*

HYDEE FELDSTEIN SOTO
City Attorney of the City of Los Angeles

*/s/ Michael J. Dundas*
Michael J. Dundas (CA Bar No. 226930)
Adrienne S. Khorasanee (CA Bar No. 227704)
Joshua M. Templet  (CA Bar No. 267098)
*Attorneys for Plaintiff City of Los Angeles*

MULTNOMAH COUNTY

*/s/ B. Andrew Jones*
B. Andrew Jones (OSB No. 091786)
*Attorneys for Plaintiff Multnomah County*

CITY OF OAKLAND

*/s/ Ryan Richardson*
Ryan Richardson (CA Bar No. 223548)
Maria Bee (CA Bar No. 167716)
Jaime Huling Delaye (CA Bar No. 270784)
H. Luke Edwards (CA Bar No. 313756)
*Attorneys for Plaintiff City of Oakland*

CITY OF PETALUMA

*/s/ Eric Danly*
Eric Danly (CA Bar No. 201621)
*Attorney for Plaintiff City of Petaluma*

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 50
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1  | JOHN J. CHOI
2  | RAMSEY COUNTY ATTORNEY

3  | */s/ Bradley Cousins*
   | Bradley Cousins (MN Bar No. 0400463)
4  | Stacey D'Andrea (MN Bar No. 0388320)
   | Jada Lewis (MN Bar No. 0391287)
5  | *Attorneys for Plaintiff Ramsey County*

6  |
   | CITY OF ROCHESTER
7  |
8  | */s/ Patrick Beath*
   | Patrick Beath, Corporation Counsel (NY Lic. 4999751)
9  | *Attorney for Plaintiff City of Rochester*

10 |
   | HEATHER FERBERT
11 | City Attorney

12 | */s/ Mark Ankcorn*
13 | Mark Ankcorn (CA Bar No. 166871)
   | Julie Rau (CA Bar No. 317658)
14 | *Attorneys for Plaintiff City of San Diego*

15 |
   | SAN MATEO COUNTY
16 |
17 | */s/ John D. Nibbelin*
   | John D. Nibbelin (CA Bar No. 184603)
18 | Rebecca M. Archer (CA Bar No. 202743)
   | Lauren F. Carroll (CA Bar No. 333446)
19 | *Attorneys for Plaintiff San Mateo County*

20 |
   | CITY OF SANTA ROSA
21 |
22 | */s/ Teresa L. Stricker*
   | Teresa L. Stricker (CA Bar No. 160601)
   | Autumn Luna (CA Bar No. 288506)
23 | Adam S. Abel (CA Bar No. 148210)
24 | Hannah E. Ford-Stille (CA Bar No. 335113)
   | *Attorneys for Plaintiff City of Santa Rosa*
25 |
26 | CASCADIA LAW GROUP PLLC
27 |
   | */s/ Stephen R. Parkinson*

ORDER GRANTING PLAINTIFFS' THIRD MOTION FOR
PRELIMINARY INJUNCTION - 51
No. 2:25-cv-00814-BJR

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Stephen R. Parkinson, WSBA #21111
*Attorneys for Plaintiff Puget Sound Regional Council*

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750