# EXHIBIT A

THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARTIN LUTHER KING, JR. COUNTY; PIERCE COUNTY; SNOHOMISH COUNTY; CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; CITY OF BOSTON; CITY OF COLUMBUS; CITY OF NEW YORK; CITY & COUNTY OF DENVER; METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY; PIMA COUNTY; COUNTY OF SONOMA; CITY OF BEND; CITY OF CAMBRIDGE; CITY OF CHICAGO; CITY OF CULVER CITY; CITY OF MINNEAPOLIS; CITY OF PASADENA; CITY OF PITTSBURGH; CITY OF PORTLAND; CITY OF SAN JOSÉ; CITY OF SANTA MONICA; CITY OF TUCSON; CITY OF WILSONVILLE; CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY; INTERCITY TRANSIT; SAN FRANCISCO COUNTY TRANSPORTATION AUTHORITY; TREASURE ISLAND MOBILITY MANAGEMENT AGENCY; PORT OF SEATTLE; KING COUNTY REGIONAL HOMELESSNESS AUTHORITY; SANTA MONICA HOUSING AUTHORITY; COUNTY OF ALAMEDA; CITY OF ALBUQUERQUE; MAYOR AND CITY COUNCIL OF BALTIMORE; CITY OF BELLEVUE; CITY OF BELLINGHAM; CITY OF BREMERTON; COUNTY OF | No. 2:25-cv-00814-BJR<br><br>SUPPLEMENT TO THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

DANE; CITY OF EUGENE; CITY OF HEALDSBURG; COUNTY OF HENNEPIN; KITSAP COUNTY; CITY OF LOS ANGELES; CITY OF MILWAUKEE; MILWAUKEE COUNTY; MULTNOMAH COUNTY; CITY OF OAKLAND; CITY OF PACIFICA; CITY OF PETALUMA; RAMSEY COUNTY; CITY OF ROCHESTER; CITY OF ROHNERT PARK; CITY OF SAN DIEGO; SAN MATEO COUNTY; CITY OF SANTA ROSA; CITY OF WATSONVILLE; CULVER CITY HOUSING AUTHORITY; PUGET SOUND REGIONAL COUNCIL; SONOMA COUNTY TRANSPORTATION AUTHORITY; SONOMA COUNTY COMMUNITY DEVELOPMENT COMMISSION; CITY OF ALBANY; ALLEGHENY COUNTY; CITY OF BERKELEY; CITY OF BOTHELL; CITY OF CINCINNATI; DELAWARE COUNTY; LOS ANGELES HOMELESS SERVICES AUTHORITY; CITY OF NEW HAVEN; CITY OF OLYMPIA; CITY OF PALO ALTO; CITY OF PORT ANGELES; CITY OF SANTA FE; CITY OF SPOKANE; CITY OF TACOMA; and THURSTON COUNTY,

Plaintiffs,

vs.

SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; the U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SEAN DUFFY in his official capacity as Secretary of the U.S. Department of Transportation; the U.S. DEPARTMENT OF TRANSPORTATION; TARIQ BOKHARI in his official capacity as acting Administrator of the Federal Transit Administration; the FEDERAL



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

TRANSIT ADMINISTRATION; GLORIA M. SHEPHERD in her official capacity as acting Director of the Federal Highway Administration; the FEDERAL HIGHWAY ADMINISTRATION; CHRIS ROCHELEAU in his official capacity as acting Administrator of the Federal Aviation Administration; the FEDERAL AVIATION ADMINISTRATION; DREW FEELEY in his official capacity as acting Administrator of the Federal Railroad Administration; the FEDERAL RAILROAD ADMINISTRATION; ROBERT F. KENNEDY, JR. in his official capacity as Secretary of the U.S. Department of Health and Human Services; and the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Defendants.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I. INTRODUCTION

1. Plaintiffs hereby file this supplemental complaint that sets forth facts and claims that have arisen subsequent to the filing of the Third Amended Complaint ("TAC") (Dkt. No. 369).

2. In authorizing federal grant dispersals, Congress exercises its spending power to establish permissible conditions that Executive Branch agencies may impose on a grant award. An agency lacks authority to impose grant conditions beyond what Congress has authorized, and such "conditions are ultra vires." *City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019). In short, an agency's power to condition grants is wholly dependent on the existence of statutory authority. *City & Cnty. of San Francisco v. Barr*, 965 F.3d 753, 766 (9th Cir. 2020).

3. Moreover, Congress's power to attach conditions to federal grants is constrained by the U.S. Constitution. *South Dakota v. Dole*, 483 U.S. 203, 207–08, 211 (1987). The Executive's power to attach conditions to federal grants thus is further restricted by these limits on congressional power.

4. Here, the U.S. Department of Housing and Urban Development, often acting through its program offices (collectively, "HUD"), the U.S. Department of Transportation, often acting through its operating administrations, including the Federal Transit Administration ("FTA"), the Federal Highway Administration ("FHWA"), the Federal Aviation Administration ("FAA"), and the Federal Railroad Administration ("FRA") (collectively, "DOT"), and the U.S. Department of Health and Human Services, often acting through its operating divisions and agencies, including but not limited to the Administration for Community Living ("ACL") (collectively, "HHS"), seek to impose or enforce new conditions on congressionally authorized grant funding to coerce recipients that rely on federal funds into implementing President Trump's policy agenda. These conditions (collectively, the "New Grant Conditions") differ in subject



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

matter from those enjoined in the Court's prior preliminary injunction orders, but they suffer from the same defects: Congress has not authorized them, and Congress itself could not constitutionally enact them. By imposing them unilaterally, HUD, DOT, and HHS have exceeded their lawful authority and encroached upon Congress's power of the purse. The New Grant Conditions bear no meaningful relationship to the purposes of the grant programs Congress established and violate bedrock separation of powers principles, the Spending Clause, the Fifth Amendment's void-for-vagueness doctrine, the Administrative Procedure Act ("APA"), and the Tenth Amendment's anti-commandeering principle. DOT and HHS have also asserted sweeping authority to terminate grants purportedly in the "public interest," but considering only their own interests, without meaningful standards or advance notice.

5. These unlawful attempts to repurpose grant programs established by Congress harm the Plaintiffs that receive, have received, or are eligible to receive HUD, DOT, and HHS grants by threatening substantial already-awarded and expected funds these Plaintiffs need to support critical programs and resident services, including homelessness services, services for low-income households, permanent and transitional housing, health centers in low-income communities, community development and public infrastructure, transit, airports, and more.

6. Plaintiffs County of Alameda ("Alameda County"); City of Albuquerque ("Albuquerque"); Allegheny County; Mayor and City Council of Baltimore ("Baltimore"); City of Bellevue ("Bellevue"); City of Bellingham ("Bellingham"); City of Bend ("Bend"); City of Berkeley ("Berkeley"); City of Boston ("Boston"); City of Bothell ("Bothell")[1]; City of Bremerton ("Bremerton"); City of Cambridge ("Cambridge"); City of Chicago ("Chicago"); City of

---

[1] Bothell was not previously a HUD Plaintiff in the Third Amended Complaint. However, it has recently become eligible as a direct recipient of certain HUD grants and therefore joins the claims challenging all HUD Conditions. *See* Section II.D, *infra*.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Cincinnati ("Cincinnati"); City of Columbus ("Columbus"); City of Culver City ("Culver City"); Culver City Housing Authority ("CCHA"); County of Dane ("Dane County"); Delaware County, Pennsylvania ("Delaware County"); City & County of Denver ("Denver"); City of Eugene ("Eugene"); County of Hennepin ("Hennepin County"); King County Regional Homelessness Authority ("King County RHA"); Martin Luther King, Jr. County ("King County"); Kitsap County; City of Los Angeles ("Los Angeles"); City of Milwaukee ("Milwaukee"); City of Minneapolis ("Minneapolis"); Multnomah County; Metropolitan Government of Nashville & Davidson County ("Nashville"); City of New Haven ("New Haven"); City of New York ("NYC"); City of Oakland ("Oakland"); City of Olympia ("Olympia"); City of Palo Alto ("Palo Alto"); City of Pasadena ("Pasadena"); City of Petaluma ("Petaluma"); Pierce County; Pima County; City of Pittsburgh ("Pittsburgh"); City of Portland ("Portland"); Ramsey County; City of Rochester ("Rochester"); City of San Diego ("San Diego"); City and County of San Francisco ("San Francisco"); City of San José ("San José"); County of San Mateo ("San Mateo County"); County of Santa Clara ("Santa Clara"); City of Santa Fe, New Mexico ("Santa Fe"); City of Santa Monica ("Santa Monica"); Santa Monica Housing Authority ("Santa Monica HA"); City of Santa Rosa ("Santa Rosa"); Snohomish County; County of Sonoma ("Sonoma County"); Sonoma County Community Development Commission ("SCCDC"); City of Spokane ("Spokane"); City of Tacoma ("Tacoma"); Thurston County; City of Tucson ("Tucson"); and City of Watsonville ("Watsonville") have previously received, currently receive, or are otherwise eligible to receive HUD grants and join this Supplemental Complaint as to the New Grant Conditions imposed by HUD ("Supplemental HUD Plaintiffs").

7. Plaintiffs Alameda County; Albuquerque; Allegheny County; Baltimore; Bellevue; Bellingham; Bend; Berkeley; Boston; Bothell; Cambridge; Chicago; Cincinnati; Columbus;



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Culver City; Dane County; Delaware County; Denver; City of Healdsburg ("Healdsburg"); Hennepin County; Intercity Transit; King County; Kitsap County; Los Angeles; Milwaukee; Milwaukee County; Minneapolis; New Haven; NYC; Oakland; City of Pacifica ("Pacifica"); Palo Alto; Pasadena; Petaluma; Pierce County; Pima County; Pittsburgh; Port of Seattle; Portland; Puget Sound Regional Council ("PSRC"); Ramsey County; Rochester; City of Rohnert Park ("Rohnert Park"); San Diego; San Francisco; San José; San Mateo County; Santa Clara; Santa Fe; Santa Monica; Santa Rosa; Sonoma County Transportation Authority ("SCTA"); San Francisco County Transportation Authority ("SFCTA"); Snohomish County; Sonoma County; Central Puget Sound Regional Transit Authority ("Sound Transit"); Tacoma; Thurston County; Treasure Island Mobility Management Agency ("TIMMA"); Tucson; Watsonville; and City of Wilsonville ("Wilsonville") have previously received, currently receive, or are otherwise eligible to receive DOT grants and join this Supplemental Complaint as to the New Grant Conditions imposed by DOT ("Supplemental DOT Plaintiffs").

8. Plaintiffs Alameda County; Allegheny County; Baltimore; Berkeley; Boston; Cambridge; Chicago; Cincinnati; Columbus; Dane County; Delaware County; Denver; Hennepin County; King County; Milwaukee; Minneapolis; Nashville; New Haven; NYC; Oakland; Pacifica; Pierce County; Pima County; Ramsey County; Rochester; San Francisco; San Mateo County; Santa Clara; Snohomish County; Thurston County; Tucson; and Wilsonville have previously received, currently receive, or are otherwise eligible to receive HHS grants and join this Supplemental Complaint as to the New Grant Conditions imposed by HHS ("Supplemental HHS Plaintiffs").

9. If the conditions stand, the Supplemental HUD Plaintiffs, Supplemental DOT Plaintiffs, and Supplemental HHS Plaintiffs will face disrupted budgets, workforce reductions,



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

interrupted programs and services, and the loss of their ability to decide for themselves how to meet their communities' needs.

10. As such, the Supplemental HUD Plaintiffs, Supplemental DOT Plaintiffs, and Supplemental HHS Plaintiffs file this Supplemental Complaint under Federal Rule of Civil Procedure 15(d) and seek an order declaring the New Grant Conditions unlawful, void, and unenforceable, and enjoining their imposition and enforcement.

## II. SUPPLEMENTAL FACTUAL ALLEGATIONS

### A. HUD, DOT, and HHS Impose Additional Unlawful Conditions on Grants.

11. Since Plaintiffs filed the TAC, HUD, DOT, and HHS have issued or attached grant conditions that add to the conditions enjoined in this Court's prior preliminary injunction orders:

#### 1. HUD Attaches New, Unlawful Conditions to HUD Grants

12. As set forth in the TAC, HUD administers grant programs directly and through its program offices, including the Office of Community Planning & Development ("CPD") and regional field offices. *See* Dkt. #369 ¶ 336.

13. As more fully described in the TAC, HUD's grant programs include the Community Development Block Grant ("CDBG") program, the Emergency Solutions Grant ("ESG") program, the HOME Investment Partnerships ("HOME") program, the Housing Opportunities for Persons with AIDS ("HOPWA") program, and the Continuum of Care ("CoC") program, among many others. *See* Dkt. #369 ¶¶ 336–426.

14. The Supplemental HUD Plaintiffs use and rely on CDBG, ESG, HOME, HOPWA, CoC, and other HUD funds to serve their communities. *See* Dkt. #369 ¶¶ 9, 14, 19, 24, 29, 34, 39, 44, 49, 54, 59, 64, 68, 72, 78, 81, 85, 90, 94, 99, 103, 106, 111, 128, 131, 140, 145, 149–150, 155, 159, 163, 167, 173, 180, 183, 187, 191, 199, 204, 214, 218, 222, 230, 234, 239, 243, 246, 255,



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

258, 262, 267, 275, 279, 280, 285, 287–288, 293, 296–297, 301, 305, 310–311, 314, 318, 357–369, 423–426, 693–694.

15. The House Appropriations Committee allows congressmembers to submit Community Project Funding ("CPF") requests (sometimes referred to as congressionally directed spending or "earmarks") to designate funding for local projects.[2] CPF requests are one-time funding requests that can be spent over a one-year project period; states, local governments, and other eligible entities apply through their representatives or senators by providing detailed budgets and proof of community support.[3] Requesting congressmembers are required to submit a statement describing the "federal nexus" for each CPF request, showing that the purpose of the project is tied to a federal authorization law.[4]

16. Through HUD's Economic Development Initiative, HUD's Office of Community Planning and Development, Office of Economic Development–Congressional Grants Division administers CPF grants. Projects selected for CPF grants are identified by congressional members, included in HUD annual appropriations, and listed in the Joint Explanatory Statement and/or Congressional Record that accompanies a specific fiscal year's appropriations act.[5] HUD CPF

---

[2] *See* House Appropriations Committee, *FY27 Member Requests Guidance*, https://appropriations.house.gov/fy27-information/fy27-member-requests-guidance (last visited Nov. 4, 2026).

[3] *See* House Subcommittee on Transportation, Housing and Urban Development, and Related Agencies, Community Development Fund – Economic Development Initiative (EDI), Department of Housing and Urban Development (HUD), *Guidelines and Requirements for Appropriations Submissions Database*, https://appropriations.house.gov/sites/evo-subsites/republicans-appropriations.house.gov/files/evo-media-document/fy27-thud-edi-guidance.pdf (last visited Nov. 4, 2026).

[4] House Appropriations Committee, *Guidance for Community Project Funding*, https://appropriations.house.gov/sites/evo-subsites/republicans-appropriations.house.gov/files/evo-media-document/fy-2027-community-project-funding-request-general-guidance.pdf (last visited Nov. 4, 2026).

[5] *See* HUD, *Economic Development Initiative–Community Project Funding Grants*, https://www.hud.gov/stat/cpd/edi-grants (last visited Nov. 4, 2026).



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

grants provide investment in a wide variety of projects such as housing, homelessness prevention, workforce training, public facilities, parks, resilience planning, and other critical infrastructure and services.[6]

17. In September 2026, HUD presented several Supplemental HUD Plaintiffs with grant agreements for FY 2026 awards under several HUD grant programs, including the CDBG, HOME, ESG, and CPF programs. These agreements (collectively, the "FY 2026 HUD Grant Agreements") contain new grant conditions (collectively, the "FY 2026 HUD Grant Conditions") that, to the best of Supplemental HUD Plaintiffs' knowledge, had not previously been imposed on HUD grants.

18. First, the FY 2026 HUD Grant Agreements contain the following condition titled "Fiduciary Relationship" ("HUD Fiduciary Condition"):

> Recipient acknowledges and agrees that it stands in a fiduciary relationship to HUD and the American people with respect to the Federal Award. Recipient shall act solely for the benefit of HUD and the American people with respect to the Federal Award, and undertakes a duty of absolute loyalty, trust, and confidence. In performing its obligations under this Agreement, Recipient shall act in good faith, avoid all conflicts of interest, exercise the due care required of a fiduciary, and make full and complete disclosure of all material facts and business opportunities and other matters required to be disclosed by this Agreement and applicable law relating to this Agreement, the Federal Award and all funds derived therefrom.

19. Second, the FY 2026 HUD Grant Agreements contain the following condition ("HUD Anti-Harm Reduction Condition"):

> Awards made under, relating to, or arising out of the Federal Award will not be used to fund any project, service provider, or organization that operates illegal drug injection sites or "safe consumption sites" in violation of 21 U.S.C. § 856, knowingly permits the use or distribution of illicit drugs on property under their control in violation of 21 U.S.C. 856(a)(2), or knowingly distributes drug paraphernalia in violation of 21 USC 863. This

---

6 *See* HUD Exchange, *Community Project Financing*, https://www.hudexchange.info/programs/cpf/ (last visited Nov. 4, 2026).



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

> is not a requirement that program participants must be sober in order to receive assistance, participate in treatment in order to receive assistance, or be evicted or exited from assistance for a first-time violation of a drug-related program policy or lease requirement.

20. Third, the FY 2026 HUD Grant Agreements contain the following condition titled "Waste, Fraud, and Abuse" ("HUD Fraud Condition"):

> Recipient acknowledges and agrees that the prevention, discovery, exposure, and prosecution of waste, fraud, and abuse in Federal grant programs and procurement and the activities which Federal funding supports, and recoveries therefrom, are in the best interests of Recipient and the American people. Accordingly, Recipient agrees to cooperate fully with HUD and the Task Force to Eliminate Fraud established in Executive Order 14395 of March 16, 2026, *Establishing the Task Force To Eliminate Fraud*, in all manners and respects as required by HUD.

21. The executive order referenced in the HUD Fraud Condition ("Fraud EO") establishes "within the Executive Office of the President" the "Task Force to Eliminate Fraud." Exec. Order No. 14395 § 2(a), 91 Fed. Reg. 13485 (Mar. 16, 2026). It further provides that the Task Force to Eliminate Fraud ("Fraud Task Force") "shall . . . coordinate and accelerate a comprehensive national strategy to stop fraud, waste, and abuse within Federal benefit programs." *Id*. § 3(a). HUD is designated as a member agency of the Fraud Task Force, *id.* § 2(c)(vi), and the Fraud EO requires any such agencies administering federal grant programs to identify "benefit transactions and processes that are most susceptible to fraud schemes" and to work with the Task Force to adopt "minimum anti-fraud requirements" for such transactions and processes. *Id*. § 4(a)–(b). If those transactions or processes are administered by state or local jurisdictions, then the Task Force and its member agencies "shall address how such jurisdictions can demonstrate implementation of the anti-fraud requirements" and "also shall examine and recommend . . . any ways that Federal funds may be withheld from jurisdictions that do not have adequate anti-fraud requirements." *Id*. § 4(b). According to the Fraud EO, "such anti-fraud requirements may include"



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

elements such as, among other things, "screening, proof of identity, and eligibility verification" and "information- and data-sharing processes, updated criteria, minimum integrity checks, cross-program risk indicators, and coordinated recovery and enforcement pathways to prevent immigration sponsor and beneficiary and household-related fraud, abuse, or improper usage." *Id.*

22. Finally, the FY 2026 HUD Grant Agreements contain a condition titled "Recordkeeping and Access to Records" (the "HUD Recordkeeping Condition"), which provides in relevant part:

> *Generally:* The Recipient hereby agrees to maintain complete and accurate documentation for this Federal Award and related activities to include, without limitation, financial records, supporting documentation, statistical records, books of account, ledgers, financial and project reports, records, statements, data, the originals of all agreements between the Recipient and any and all individuals or entities which receive funding pursuant to or arising out of this Agreement, whether directly from Recipient or from individuals or entities to whom Recipient has provided funding, any and all data on any individual or entity that receives money, in-kind assistance or services, or any benefit of any kind from or as a direct or indirect result of the Federal Award, including, without limitation, a Subrecipient or other entity that receives a subaward from a pass-through entity to carry out part of the Federal Award; contractor, vendor, consultant, any other entity performing activities funded in whole or in part under this Federal award; and any beneficiaries, participants, and other end-users of the funds, to the fullest extent permitted by law, and all such other documentation in such a manner as to permit the Recipient to prepare statements and reports in compliance with applicable HUD requirements and [the Office of Management and Budget's ("OMB")] requirements in 2 CFR part 200 for recordkeeping and reporting, which may be amended from time to time, (Grant Documentation). Recipient further agrees that the term "Grant Documentation" includes all Subrecipient data consistent with the above and 2 CFR 200.332 and to ensure that it obtains and maintains access to such Subrecipient data. Recipient agrees that the creation, maintenance, preservation, and disclosure by Recipient of Grant Documentation is fundamental to the prevention of fraud, waste, and abuse and to the satisfaction of its obligations to prevent fraud, waste, and abuse and the performance of its obligations under this Agreement and applicable HUD rules and regulations.
>
> *Access to Records and Personnel*: In addition to the foregoing, and in no way a limitation of anything contained in the foregoing or in this



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

> Agreement, or of HUD's rights and remedies available to it under the terms of this Agreement, applicable statutes, laws and regulations, and otherwise at law or equity, HUD, Inspectors General, the Comptroller General of the United States, or any of their authorized representatives shall have the right of prompt, full, and complete access to any and all records of the Recipient and any other entities doing business with Recipient or otherwise receiving funds or benefits from Recipient, as specified in subsection a, and that are pertinent to the Federal Award to the fullest extent permitted by law, including records relevant to the administration, receipt, and use of this award and award activities, in order to perform audits, reviews and investigations, execute site visits, make or obtain copies thereof, or for any other official use. Such records include those that identify the source and application of funds, including relevant Grant Documentation data to the extent disclosure is not prohibited by law, in such a manner as to allow HUD to determine that all funds are and have been expended in accordance with program requirements and in a manner consistent with applicable law. The right of access includes prompt, full, and complete access as HUD may require to the Recipient and other entities and persons identified in subsection and their personnel, for the purpose of interview and discussion at such dates, times, and locations as HUD may require related to such documents or the Federal Award in general, to the fullest extent permitted by law. In lieu of or in addition to an on-site inspection, Recipient also agrees to furnish HUD such financial and project reports, records, statements, data, and documents in such form, from Recipient or other entity or person identified above, and accompanied by such reporting data as required by HUD. Recipient shall supply to HUD any and all Grant Documentation in legible and usable form as HUD may specify and within the time specified by HUD and at Recipient's expense. Recipient shall also make certifications, as HUD may request at such times and in such manner and format as required by HUD, that all Documentation which Recipient supplies to HUD is true, accurate, and complete in all aspects and regards.

23. On information and belief, HUD is rolling out the FY 2026 HUD Grant Conditions across all HUD grants.

24. To the best of the Supplemental HUD Plaintiffs' knowledge, nothing in the authorizing statutes, appropriations legislation, or applicable agency regulations for any HUD grant program imposes or authorizes conditions related to making recipients fiduciaries owing HUD and "the American people" a "duty of absolute loyalty"; barring funds to any provider or organization that engages in harm reduction activities, even where those activities are not federally



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

funded and/or are authorized by state or local law; requiring recipients to "cooperate fully" with a fraud task force "in all manners and respects as required by HUD"; or extending recordkeeping and access obligations to include "any and all data" on program participants and other third parties.

**2. DOT Attaches Unlawful Conditions Across DOT Grant Programs**

25. As set forth in the TAC, DOT administers a broad array of grant programs directly and through its operating administrations, including FTA, FHWA, FAA, and FRA. *See* Dkt. #369 ¶ 427.

26. DOT's grant programs, including those administered by FTA, FHWA, FAA, and FRA, are described more fully in the TAC. *See* Dkt. #369 ¶¶ 428–459.

27. The Supplemental DOT Plaintiffs use and rely on DOT funds to serve their communities. *See* Dkt. #369 ¶¶ 10, 15, 20, 25, 31, 35, 40, 45, 50, 55, 60, 65, 69, 73, 77, 82, 86, 91, 94–95, 98, 102, 107, 110, 115, 119, 122, 125, 134, 137, 141, 146, 149, 151, 156, 160, 164, 169, 172, 177, 180, 184, 188, 193, 196, 200, 205, 209, 213, 219, 223, 227, 231, 234–235, 239, 242, 249, 252, 259, 263, 268, 272, 276, 281, 287, 289, 298, 302, 306, 315, 319, 459, 695.

28. In September 2026, DOT presented certain Supplemental DOT Plaintiffs with grant agreements for awards under a number of DOT grant programs, including, for example, the DOT Strengthening Mobility and Revolutionizing Transportation ("SMART") program. These grant agreements contain a termination condition (the "DOT Termination Condition") that allows DOT to terminate the agreement if DOT "determines that termination of this agreement is in the public interest" and, in supposedly considering the public interest, DOT "may elect to consider only the interests of [DOT]."

29. Materially similar Termination Conditions are also set forth in the currently applicable FHWA General Terms and Conditions §§ 10.1(a)(6) and 10.1(b) and FRA General



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Terms and Conditions § 10.2(a)(5), among others.

30. While the TAC challenges the DOT Termination Condition as applied to FAA grants, Dkt. #369 ¶ 646, this Supplement to the TAC goes further and asserts claims against the DOT Termination Condition as to all DOT grants.

31. Supplemental DOT Plaintiffs are increasingly and justifiably concerned that the DOT Termination Condition will be used by DOT and its operating administrations to terminate grants at the whim of DOT based on post hoc changes in agency political priorities or as political retribution. *See* Section II.B.5, *infra*.

32. On information and belief, DOT will seek to impose the DOT Termination Condition across all DOT grants.

33. To the best of the Supplemental DOT Plaintiffs' knowledge, nothing in the authorizing statutes, appropriations legislation, or applicable agency regulations for any DOT grant program imposes or authorizes directives for or conditions on DOT grants permitting termination of grant agreements whenever DOT unilaterally determines that termination is in the "public interest" and allowing DOT to consider only its own interests in doing so.

**3. HHS Attaches an Unlawful Termination Condition to Certain HHS Grant Programs**

34. As set forth in the TAC, HHS administers grant programs directly and through its operating divisions and agencies, including but not limited to ACL. *See* Dkt. #369 ¶¶ 46, 460.

35. Programs administered by HHS and its operating divisions and agencies are described more fully in the TAC. *See* Dkt. #369 ¶¶ 461–542.

36. The Supplemental HHS Plaintiffs use and rely on HHS funds to serve their communities. *See* Dkt. #369 ¶¶ 11, 16, 21, 26, 30, 36, 41, 46, 51, 56, 61, 74, 78, 87, 112, 116, 142, 149, 152, 168, 174, 180, 192, 201, 206, 210, 217, 224, 234, 236, 264, 269, 277, 282, 287, 290,



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

307, 320, 543, 696.

37. In or around February 2026, ACL, an operating division of HHS, released updated Standard Terms and Conditions, effective as of March 18, 2026, applicable to federal financial assistance awards administered by ACL ("ACL Standard Terms"). The new ACL Standard Terms purport to adopt and incorporate the regulations at 2 C.F.R. Part 200, but they deviate significantly from the letter of those regulations.

38. In particular, the new ACL Standard Terms include a termination provision, which refers to 2 C.F.R. § 200.340(a), but goes well beyond the terms of that regulation. Section 200.340(a) states, in pertinent part, that a "Federal award may be terminated in part or in its entirety . . . [b]y the Federal agency or pass-through entity pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." The ACL Standard Terms, by contrast, state that "the Department may terminate this award in part or in its entirety" where "for whatever reason continued funding would not be in the best interests of the Federal government (including when an award no longer effectuates the program goals or agency priorities)" ("HHS Termination Condition"). The HHS Termination Condition is very similar to the proposed—but not yet properly promulgated—amendments to 2 C.F.R. § 200.340 that were proposed by the Office of Management and Budget ("OMB") in conjunction with HHS and other federal agencies. *See* OMB *et al.*, Proposed Rule: Regulation for Federal Financial Assistance, 91 Fed. Reg. 32198, 32258 (May 29, 2026).

39. ACL grants generally have multi-year terms, and the new HHS Termination Condition was not present in prior grant agreements. Certain Supplemental HHS Plaintiffs were suddenly presented with the new ACL Standard Terms, and were required to decide whether or



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

not to accept the new grant terms within a short time period.

40. Based on the foregoing, the Supplemental HHS Plaintiffs are reasonably concerned that more HHS operating divisions and agencies may adopt language similar to the ACL Standard Terms. Additionally, Supplemental HHS Plaintiffs are increasingly and justifiably concerned that the HHS Termination Condition or a substantially similar condition will be used by HHS and its operating divisions and agencies to terminate grants at the whim of HHS based on post hoc changes in agency political priorities and personnel.

41. To the best of the Supplemental HHS Plaintiffs' knowledge, nothing in the authorizing statutes, appropriations legislation, or applicable agency regulations for any HHS grant program imposes or authorizes directives for or conditions on HHS grants permitting termination of grant agreements whenever HHS unilaterally determines that "for whatever reason continued funding would not be in the best interests of the Federal government."

**B. The New Grant Conditions Are Unlawful**

42. The New Grant Conditions described above usurp Congress's power to legislate and its power of the purse. Unwilling or unable to secure legislation enacting his policy agenda, the President has directed agencies to impose it by executive fiat, forcing state and local governments seeking grant funding to adopt the Administration's policy priorities or forgo funds appropriated by Congress altogether. That conduct violates both the Constitution and the APA.

**1. The HUD Fiduciary Condition Is Unlawful.**

43. Congress has not delegated to HUD authority to condition funding on a grant recipient's agreement to "stand[] in a fiduciary relationship to HUD and the American people with respect to the Federal Award," "act solely for the benefit of HUD and the American people with respect to the Federal Award," or "undertake[] a duty of absolute loyalty, trust, and confidence."



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

44. A fiduciary relationship is a relationship in which one person is under a duty to act for the benefit of another on matters within the scope of the relationship. *See Fiduciary Relationship*, Black's Law Dictionary (12th ed. 2024).

45. HUD grants do not create a relationship in which the recipient has a duty to act for the benefit of the federal government or HUD in particular. Rather, the grants exist for the benefit of the individuals and communities Congress identified when it established the objectives for federally funded housing and development programs. For example, the applicable statutory and regulatory provisions provide that the purpose of grant agreements for several HUD programs under which the Supplemental HUD Plaintiffs receive funding is to carry out projects that serve homeless individuals and families, *see* 42 U.S.C. § 11383(a) & 24 C.F.R. §§ 578.1, 578.37 (CoC Program); to carry out community and economic development and rehabilitation activities and provide public services that serve low- and moderate-income persons, *see* 42 U.S.C. § 5305 & 24 C.F.R. §§ 570.1, 570.200–.205 (CDBG program); to provide emergency shelters, supportive services, and short- or medium-term rental assistance and housing relocation and stabilization services, *see* 42 U.S.C. § 11374(a) & 24 C.F.R. §§ 576.1, 576.100–.106 (ESG program); to provide tenant-based rental assistance as well as incentives to develop and support affordable rental housing and homeownership affordability through the acquisition, new construction, reconstruction, or moderate or substantial rehabilitation of affordable housing, *see* 42 U.S.C. § 12742(a)(1) & 24 C.F.R. §§ 92.1, 92.205–.213 (HOME program); and to provide housing assistance and related supportive services to meet the housing needs of low-income persons living with HIV or AIDS and their families, *see* 42 U.S.C. §§ 12901, 12904 & 24 C.F.R. §§ 574.300–.350 (HOPWA program). Thus, grant agreements entered into under each of these HUD programs are for the direct benefit of individuals, families, and communities within recipients' local



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

jurisdictions, not HUD or the federal government. *See* 31 U.S.C. § 6304 (grant agreements are used to support recipients in carrying out public purposes where substantial involvement between the awarding agency and the recipient is not expected in carrying out the activity contemplated, not to procure services for the direct benefit or use of the federal government). That the agreements indirectly benefit HUD by furthering its mission of supporting access to housing does not impose upon grant recipients a separate duty to act "solely for the benefit of HUD" such that a fiduciary relationship would arise. The above statutes and regulations applicable to the grant programs at issue are thus in conflict with the HUD Fiduciary Condition, and HUD cannot point to any legislation that separately creates such a duty.

46. The HUD Fiduciary Condition is also impermissibly vague. It is unclear what type of conduct the Condition might require, leaving recipients of federal funds without fair notice of what activities would satisfy or violate the Condition and giving HUD free rein to arbitrarily enforce it. For instance, it is unclear what "stand[ing] in a fiduciary relationship to" or "act[ing] solely for the benefit of" "the American people" would require in administering HUD funds meant for local homelessness services. Nor is it clear what "absolute loyalty, trust, and confidence" means in this context. Those terms are undefined, potentially allowing HUD to decide, case by case, what this newly imposed relationship requires.

47. In adopting the HUD Fiduciary Condition, HUD also failed to engage in reasoned decision making, failed to consider the limits of its statutory authority, and failed to provide any explanation of how the HUD Fiduciary Condition is consistent with governing statutes, agency regulations, or the purposes of the underlying grant programs or adequately consider the impact on grant recipients who rely on the funds at issue.

48. Further, in requiring grant recipients to "act solely for the benefit of HUD and the



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

American people" and "undertake[] a duty of absolute loyalty, trust, and confidence," the HUD Fiduciary Condition violates the Tenth Amendment because it imposes a coercive condition intended to commandeer local officials into carrying out federal laws, policies, and priorities rather than serving local communities and interests.

49. For these reasons and as further set forth in Section III, *infra*, the HUD Fiduciary Condition violates the separation of powers, the Spending Clause, the Fifth Amendment's void-for-vagueness doctrine, the APA, and the Tenth Amendment's anti-commandeering principle.

**2. The HUD Fraud Condition Is Unlawful.**

50. Federal law already provides a comprehensive framework for preventing and detecting fraud in federal grants, and that framework is built around safeguards for the recipients, subrecipients, and other impacted individuals and entities.

51. Under OMB's Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (the "Uniform Guidance"), which HUD has adopted, *see* 2 C.F.R. § 2400.101, federal agency oversight is governed by defined, objective standards. Agencies assess an applicant's risk before making an award based on specified factors, such as financial stability and audit history. 2 C.F.R. § 200.206. Recipients must maintain internal controls that provide "reasonable assurance" of compliance, not a guarantee. *Id.* § 200.303(a). Financial reports are certified "to the best of [the signer's] knowledge and belief." *Id.* § 200.415(a). Audits are conducted by independent auditors under Generally Accepted Government Auditing Standards, and auditees have the opportunity to respond to findings and take corrective action. *Id.* §§ 200.508, 200.511, 200.514, 200.516. Access to records is limited to "records of the recipient or subrecipient pertinent to the Federal award," agencies "must not impose any other access requirements," and the names of crime victims are protected absent "extraordinary and rare circumstances." *Id.* §



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

200.337. Mandatory disclosure by a recipient or subrecipient is triggered only by "credible evidence" of specified federal crimes or False Claims Act violations. *Id.* § 200.113. And before an agency imposes remedies for noncompliance, the recipient receives notice and an opportunity to object and challenge the action. *Id.* §§ 200.339, 200.341, 200.342.

52. Congress has likewise paired its fraud-enforcement tools with procedural protections for those accused. HUD's Office of Inspector General, established as an independent office, oversees, audits, and investigates HUD programs to "prevent and detect fraud and abuse," and refers matters to the Attorney General only where it has "reasonable grounds to believe" a federal crime has occurred. 5 U.S.C. §§ 401(1), 402, 404(a), (d). Under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, the government must prove every element of its claim, including damages, by a preponderance of the evidence, in federal district court, subject to the Federal Rules of Civil Procedure. *Id.* §§ 3731(d), 3732(a). Under the Administrative False Claims Act ("AFCA"), 31 U.S.C. § 3801 *et seq.*, a person accused of a false claim is entitled to written notice, a hearing before an impartial hearing officer, the opportunity to be accompanied by counsel, the opportunity to present evidence and cross-examine witnesses, and a determination based on a preponderance of the evidence. *Id.* § 3803(d), (f), (g)(2); *see also* 24 C.F.R. §§ 28.25–28.40 & pt. 26, subpt. B (HUD procedures); 49 C.F.R. §§ 31.4–31.42 (DOT procedures); 45 C.F.R. pt. 79 (HHS procedures).

53. The HUD Fraud Condition purports to displace this scheme, which it cannot lawfully do. In place of defined standards, knowledge qualifiers, notice-and-hearing rights, and independent fact finders and decision makers, the Condition attempts to impose an open-ended obligation to "cooperate fully" with HUD and the Fraud Task Force "in all manners and respects as required by HUD"—with no limit on what HUD may require, no standard for what counts as



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

cooperation, and no procedure for a recipient to contest a demand or finding. That obligation rests not on any statute or regulation but on an executive order. Executive orders direct federal agencies and officials; they do not bind grant recipients and are not law enacted by Congress. No statute authorizes HUD to convert the Fraud EO into a condition on federal funding, or to substitute an obligation of its own making for the safeguards Congress and OMB have established.

54. The HUD Fraud Condition also fails to define its key terms. It does not define "cooperate fully" or "all manners and respects as required by HUD"—terms expansive enough to reach not only the federal grant program at issue but potentially all of a recipient's programs and operations, federally funded or not. If HUD can decide, case by case, what "cooperation" requires, recipients cannot know at signing what conduct will be ultimately required or deemed a violation. That discretion also invites selective enforcement against disfavored recipients and makes the Condition ripe for use as a tool of retaliation against entities that express viewpoints or pursue policies the Administration disfavors.

55. Nor can the HUD Fraud Condition be defended as a mere restatement of recipients' existing obligations. Recipients are already required to comply with the Uniform Guidance's monitoring, disclosure, certification, and audit requirements, and they are already subject to investigation and enforcement under the Inspector General Act, the FCA, and the AFCA. *See supra* ¶¶ 51–52. If the Condition requires only that, it should be unnecessary. Its sweeping, undefined language—"cooperate fully" with HUD and the Fraud Task Force "in all manners and respects as required by HUD"—instead purports to add a new obligation that exists nowhere in statute or regulation, and whose content HUD alone will define.

56. That new obligation also threatens recipients' ability to defend themselves. When the government investigates or pursues a fraud claim, the accused party is entitled to put the



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

government to its proof and to invoke the hearing rights and other procedural protections described above. *See supra* ¶¶ 51–52. A recipient that has agreed to cooperate "in all manners and respects as required by HUD," however, could be accused of breach for asserting those rights. For example, by declining to produce information beyond what the law requires, contesting HUD's allegations, or insisting on a hearing, a recipient might risk its funding. The Condition thus pressures recipients to give up protections Congress established and to which recipients are entitled by law.

57. In adopting the HUD Fraud Condition, HUD also failed to engage in reasoned decision making, failed to consider the limits of its statutory and regulatory authority, and failed to adequately explain how the HUD Fraud Condition is consistent with governing statutes, the Uniform Guidance, agency regulations, or the purposes of the underlying grant programs or adequately consider the impact on grant recipients who rely on the funds at issue.

58. For these reasons and as further set forth in Section III, *infra*, the HUD Fraud Condition violates the separation of powers, the Spending Clause, the Fifth Amendment's void-for-vagueness doctrine, and the APA.

**3. The HUD Recordkeeping Condition Is Unlawful**

59. As with the prevention and detection of fraud in federal grants, federal law already establishes a detailed scheme governing recordkeeping and access. This scheme limits retention duties to recipients and subrecipients, limits the scope to records pertinent to the federal award, and expressly bars agencies from adding requirements of their own.

60. The Uniform Guidance, which HUD has adopted, *see* 2 C.F.R. § 2400.101, requires recipients to retain "Federal award records," including "financial records, supporting documentation, and statistical records," for three years after submission of the final financial report. 2 C.F.R. § 200.334. Beyond that requirement and a short, closed list of exceptions—such



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

as extending retention while litigation, claims, or audits are pending, or when the agency gives written notice—"[f]ederal agencies . . . may not impose any other record retention requirements." *Id.*

61. The Uniform Guidance likewise defines and limits access. Federal agencies, Inspectors General, and the Comptroller General have a right of access to records "of the recipient or subrecipient pertinent to the Federal award," along with "timely and reasonable access" to the recipient's or subrecipient's personnel "for the purpose of interview and discussion related to such documents or the Federal award . . . ." 2 C.F.R. § 200.337(a). The Guidance also protects privacy: the names of crime victims must be protected, and may be reviewed only "under extraordinary and rare circumstances" with approval from the agency head. *Id.* § 200.337(b). And it expressly provides that "[f]ederal agencies . . . must not impose any other access requirements upon recipients and subrecipients." *Id.* § 200.337(c).

62. HUD's own program regulations follow the same model. They specify the records that recipients and subrecipients must keep, the information those records must contain, and which federal entities may access them. None extends recordkeeping or access obligations to contractors, vendors, beneficiaries, or other third parties. *See, e.g.*, 24 C.F.R. § 570.490 (CDBG); 24 C.F.R. § 576.500 (ESG); 24 C.F.R. § 92.508 (HOME); 24 C.F.R. § 574.530 (HOPWA); 24 C.F.R. § 578.103 (CoC).

63. The HUD Recordkeeping Condition conflicts with this framework and exceeds HUD's statutory authority. It purports to require recipients to retain "any and all data on any individual or entity that receives money, in-kind assistance or services, or any benefit of any kind from or as a direct or indirect result of the Federal Award," including any "contractor, vendor, consultant," and "any beneficiaries, participants, and other end-users of the funds"; to retain



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

agreements between "the Recipient and any and all individuals or entities which receive funding pursuant to or arising out of this Agreement, whether directly from Recipient or from individuals or entities to whom Recipient has provided funding"; to provide access to "any and all records of . . . any other entities doing business with Recipient or otherwise receiving funds or benefits from Recipient"; to provide "prompt, full, and complete access as HUD may require to . . . other entities and persons [identified above] and their personnel"; and to furnish reports and records "from Recipient or other entity or person identified above." Where the Uniform Guidance and HUD's program regulations confine these obligations to recipients and subrecipients and bar additional requirements, *see supra* ¶¶ 59–62, the Condition extends them to a potentially limitless set of third parties that benefit, even indirectly and potentially without a recipient's knowledge, from a federal award. The Condition does not explain how recipients could bind those third parties, much less enforce such requirements against them. The Condition also raises significant privacy concerns, sweeping in personal data on program participants and other beneficiaries that the existing scheme carefully protects. And it could give HUD free rein to punish recipients for third-party recordkeeping and access failures that recipients have no ability or legal right to control.

64. By requiring recipients to "agree[] that the creation, maintenance, preservation, and disclosure by Recipient of Grant Documentation is fundamental to the prevention of fraud, waste, and abuse and to the satisfaction of its obligations to prevent fraud, waste, and abuse," the HUD Recordkeeping Condition raises the same problem as the HUD Fraud Condition. A recipient that declines to produce records beyond what the law requires, or invokes applicable burdens of proof and procedural protections, could be accused of breaching an obligation it has agreed is "fundamental" to fraud prevention, and risk funding as a result. *See supra* ¶¶ 51–56.

65. Nor did HUD engage in any reasoned decision making in attaching the HUD



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Recordkeeping Condition. HUD did not identify any statute authorizing the Condition, explain how the Condition is consistent with the purposes of the underlying grant programs, or consider the impact on grant recipients who rely on those funds.

66. For these reasons and as further set forth in Section III, *infra*, the HUD Recordkeeping Condition violates the separation of powers, the Spending Clause, the Fifth Amendment's void-for-vagueness doctrine, and the APA.

**4. The HUD Anti-Harm Reduction Condition Is Unlawful.**

67. Harm reduction is an approach to reducing the negative consequences associated with drug use through a variety of public health interventions, such as needle exchanges, access to drug-testing kits, and methadone treatment. In the context of homelessness services, harm reduction can also refer to a philosophy of low-barrier approaches, such as not conditioning access to housing or services on sobriety. Harm reduction has been shown to reduce the risk of infectious disease spread and the risk of overdose and to improve housing stability and health outcomes, particularly when compared to abstinence-contingent services. Federal law already defines which drug-related conduct is unlawful, and it leaves room for lawful harm reduction programs that state and local governments authorize. The HUD Anti-Harm Reduction Condition disregards those limits. It exceeds HUD's statutory authority by restricting the adoption of lawful harm reduction policies and prohibiting recipients from working with providers that operate disfavored programs. It improperly makes HUD—not the courts—the arbiter of a federal criminal statute.

68. The Condition invokes, but is not consistent with, several carefully limited Controlled Substances Act ("CSA") provisions. Section 863 prohibits selling or transporting "drug paraphernalia," but it expressly exempts "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items." 21 U.S.C. § 863(a), (f)(1). Section 856(a)(2)



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

makes it unlawful to "manage or control any place . . . and knowingly and intentionally . . . make available for use . . . the place *for the purpose* of . . . manufacturing, storing, distributing, or using" illicit drugs. 21 U.S.C. § 856(a)(2) (emphasis added). It thus reaches only places made available to a third party whose *purpose* is to conduct drug activity on the premises. *See United States v. Safehouse*, 985 F.3d 225, 235 (3d Cir. 2021); *United States v. Tamez*, 941 F.2d 770, 774 (9th Cir. 1991).

69. Based on the CSA's carve-out provision—exempting "any person authorized by local, State, or Federal law" from the CSA's prohibition on selling, transporting, or importing/exporting drug paraphernalia, 21 U.S.C. § 863(a), (f)—many states and local governments permit community-based nonprofits, public health programs, and other service providers to distribute clean syringes, equipment providing alternatives to intravenous use, and/or drug testing and treatment supplies to reduce overdoses and prevent the spread of infectious disease. *See, e.g.*, Wash. Rev. Code § 69.50.4121(3); N.Y. Comp. Codes R. & Regs. tit. 10, § 80.135; Allegheny Cnty., Pa., Health Dep't R. & Regs. art. II (2023); Minn. Stat. § 152.01, subdiv. 18. These providers may offer wrap-around services as well, connecting individuals with treatment, health care, housing, and transportation, and providing naloxone, a life-saving medication that reverses opioid overdoses. For many people, these programs are a first step toward treatment and recovery. Congress has recognized their value.

70. The HUD Anti-Harm Reduction Condition exceeds HUD's statutory authority and conflicts with this framework in at least three ways. First, it appears to reach beyond federally funded activity. It bars recipients from funding "any . . . service provider . . . or organization" that engages in certain harm reduction activities, even if no federal funds support those activities and the federal funds support housing and other congressionally-directed funding. By its terms, the



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Condition could restrict recipients' own lawful public health programs wholly separate from HUD funds, and could force recipients to cut ties with subrecipients that provide harm reduction services in other, non-HUD-funded programs, including programs in other jurisdictions. The Ninth Circuit has already rejected this kind of overreach. In largely affirming this Court's first preliminary injunction, the Ninth Circuit held that similarly broad discrimination conditions covering any program a local government administers "exceed the limits imposed by Congress because they apply not just to the programs receiving [federal] grant funding . . . , but to 'any programs' operated by" the local government. *County of King v. Turner*, 189 F.4th 819, 830 (9th Cir. 2026).

71. Second, the Condition appears to extend § 856(a)(2) beyond its terms. It prohibits funding providers that "knowingly permit[] the use . . . of illicit drugs on property under their control," without regard to whether the property is knowingly made available *for the purpose* of drug use. The Condition could require shelters and housing providers to exclude individuals known to use drugs, even where those individuals seek only a place to live, which is conduct § 856(a)(2) does not prohibit. That overreach is deliberate. The Condition tracks Executive Order 14321, which directs the HUD Secretary to "end[] support for 'housing first' policies" "to the extent permitted by law," and to "freeze" housing and homelessness assistance to recipients who "permit the use . . . of illicit drugs on property under their control." Exec. Order No. 14321 § 5(a), (c)(ii), 90 Fed. Reg. 35817 (July 24, 2025) (the "Anti-Harm Reduction Order"). The Condition is designed to force providers to abandon "housing first" policies, which prioritize moving individuals into housing, and to impose sobriety or abstinence requirements instead, substituting HUD's preferred approach to homelessness and substance use disorders for that of local governments.

72. The Condition's disclaimer only reinforces this reading. The Condition states that it "is not a requirement that program participants must be sober in order to receive assistance,



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

participate in treatment in order to receive assistance, or be evicted or exited from assistance for a first-time violation of a drug-related program policy or lease requirement." This disclaimer raises more questions than it answers by limiting the assurance to a "first-time violation." Taken together, the Condition contorts the CSA to constrain the Supplemental HUD Plaintiffs' lawful approach to housing their vulnerable residents.

73. Third, the Condition prohibits distributing "drug paraphernalia" in violation of § 863 but omits the statute's exemption for persons authorized by local, state, or federal law. The Supplemental HUD Plaintiffs reasonably anticipate that HUD may attempt to apply the prohibition more broadly than § 863 itself. The Condition parrots the Anti-Harm Reduction Order, which directs the HUD Secretary to "freeze" assistance to recipients that "knowingly distribute drug paraphernalia," likewise without reference to § 863's exemption, and which derides "'harm reduction' or 'safe consumption' efforts" as "facilitat[ing] illegal drug use and its attendant harm." Anti-Harm Reduction Order §§ 4(i), 5. By leaving out the exemption, the Condition is potentially broader than § 863. *See supra* ¶¶ 68–69. It also imposes an ambiguous requirement that chills lawful, state-authorized programs described above, programs that save lives and connect people to treatment.

74. Congress's own actions indicate that HUD lacks this authority. Some members have introduced the Make Our Streets Safe Again Act, H.R. 4878, 119th Cong. (2025) ("MOSSA"), which mirrors the Anti-Harm Reduction Order and the Condition by directing the HUD Secretary to "freeze" homelessness and housing assistance to recipients that "operate drug injection sites or 'safe consumption sites', knowingly distribute drug paraphernalia, or permit the use or distribution of illicit drugs on property under their control." MOSSA § 2(d)(3)(B). MOSSA has not advanced out of committee in either chamber. And the Supplemental HUD Plaintiffs are



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

aware of no existing law authorizing HUD to condition homelessness or housing assistance on recipients' abandoning lawful harm reduction policies that the current Administration disfavors. In fact, the Consolidated Appropriations Act, 2026, Pub. L. 119-75, 140 Stat. 173 (the "2026 Appropriations Act"), which restricts the use of HHS funds to buy syringes, imposes no similar restriction on HUD. *Id.* § 525, 140 Stat. 321; *see also id.* § 3, 140 Stat. 174 (providing that references to "this Act" in any division of the Act refer "only to the provisions of that division"). And even the HHS restriction set forth in that Act is narrower than the HUD Anti-Harm Reduction Condition: It expressly permits funding "elements of a program other than" syringes where the state or local health department, in consultation with the Centers for Disease Control and Prevention, "determines that the State or local jurisdiction . . . is experiencing, or is at risk for, a significant increase in hepatitis infections or an HIV outbreak due to injection drug use, and such program is operating in accordance with State and local law." *Id.* § 525, 140 Stat. 321. By prohibiting recipients from funding projects, providers, or organizations that engage in harm reduction, the HUD Anti-Harm Reduction Condition asserts authority Congress has not given it and goes beyond even the narrow restriction Congress has imposed on HHS funds.

75. Nor did HUD engage in any reasoned decision making in attaching the HUD Anti-Harm Reduction Condition. HUD did not identify any statute authorizing the Condition, explain how the Condition is consistent with the purposes of the underlying grant programs, or consider the impact on grant recipients who rely on those funds.

76. For these reasons and as further set forth in Section III, *infra*, the HUD Anti-Harm Reduction Condition violates the separation of powers, the Spending Clause, the Fifth Amendment's void-for-vagueness doctrine, and the APA.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**5. The DOT Termination Condition Is Unlawful**

77. The DOT Termination Condition exceeds DOT's lawful authority. It requires recipients to agree that DOT may terminate a grant award if it determines "termination of this agreement is in the public interest" and that, in doing so, DOT "may elect to consider only the interests of [DOT]." The Condition thus permits termination at DOT's discretion, for new and unspecified reasons, after a recipient has accepted funding and begun implementing projects in reliance on it.

78. DOT lacks any legal basis to impose the DOT Termination Condition. Federal grants differ significantly from federal contracts, where termination-for-convenience provisions are common and authorized by regulation. *See, e.g.*, 48 C.F.R. §§ 52.249-1–.249-12. For grants, DOT has adopted and given regulatory effect to the Uniform Guidance, including its termination provision, 2 C.F.R. § 200.340. *See* 2 C.F.R. §§ 1201.1, 1201.106.

79. Nowhere does the current Uniform Guidance, or the version of the Uniform Guidance in place at the time of DOT's adoption of the DOT Termination Condition, permit termination when the federal agency determines doing so is in the "public interest," much less the agency's own interest. *See generally* 2 C.F.R. pt. 200.

80. Nevertheless, since the second Trump Administration began, federal agencies have cited the Uniform Guidance in terminating thousands of grant awards simply because the agency changed its mind. This new and unsupported interpretation is the subject of litigation in *New Jersey v. U.S. Office of Mgmt. & Budget*, 837 F. Supp. 3d 258 (D. Mass. 2026), where the court ruled that the Uniform Guidance "do[es] not allow terminations of awards based on new program goals or agency priorities that an agency identifies after granting the award." *Id.* at 283. Numerous other plaintiffs have challenged specific terminations by this Administration purportedly based on



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

changed agency priorities.

81. DOT has no power to terminate grants based on its assessment of the "public interest," including for post hoc changes in agency priorities, or to substitute its own interests for the program objectives Congress identified when it directed funds to particular grant programs.

82. The Constitution "exclusively grants the power of the purse to Congress, not the President," and the Executive Branch may not "claim[] for itself Congress's exclusive spending power." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1231, 1234 (9th Cir. 2018); *see also City of Chicago v. Barr*, 961 F.3d 882, 887, 892 (7th Cir. 2020). None of the authorizing statutes at issue allows DOT to unilaterally terminate grants based on the "public interest" or its own interests, and doing so violates the separation of powers. *See Metro. Transp. Auth. v. Duffy*, No. 25-CV-1413, 2026 WL 588117, at *56 (S.D.N.Y. Mar. 3, 2026), *appeal filed*, No. 26-1213 (2d Cir. Mar. 4, 2026) (finding that an agency did not have authority to terminate a grant for a pilot program at will where the authorizing statute did not provide such authority).

83. The DOT Termination Condition violates the separation of powers by effectively creating a backdoor to unlawful impoundment. Where Congress has appropriated funds and directed that they be spent on particular grant programs, terminating those grants for agency convenience without re-obligating those funds has the effect of unlawfully impounding and refusing to spend congressionally appropriated funds. *See In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (explaining that the Executive Branch "does not have unilateral authority to refuse to spend [congressionally appropriated] funds").

84. The DOT Termination Condition also violates Spending Clause principles. The Spending Clause requires Congress to provide grant recipients fair notice of the conditions that apply to the disbursement of funds they receive. *See Pennhurst State Sch. & Hosp. v. Halderman*,



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

451 U.S. 1, 17–18 (1981); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 583–84 (2012). The funding conditions must be set out "unambiguously" in the relevant statute. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Pennhurst*, 451 U.S. at 17). The DOT Termination Condition violates these mandates because it does not provide notice of, or on its face set any limits on, the reasons for which DOT may terminate any of Supplemental DOT Plaintiffs' grants.

85. Supplemental DOT Plaintiffs have a strong interest in obtaining clarity regarding their rights and obligations for grants to be awarded imminently and future grants that they anticipate applying for. They should not have to guess at whether DOT can cut off their federal funding on a whim and for reasons not known to them at the time of the grant, thus suddenly and unlawfully upending carefully planned budgets and programs that account for these grants, often involving projects implemented over multiple years.

86. The threat of unlawful, retaliatory, and/or arbitrary termination is real, concrete, credible, and not speculative. The Administration has reallocated, reduced, or terminated billions of dollars of grants to state and local governments for reasons deemed unlawful or likely unlawful by courts. For instance, in June 2026, a district court permanently enjoined DOT's suspension of federal funding to a bi-state entity of New York and New Jersey for the Hudson Tunnel Project. *New Jersey v. U.S. Dep't of Transp.*, 835 F. Supp. 3d 477, 513 (S.D.N.Y. 2026). While the "ostensible reason for the suspension of funds was to allow DOT to conduct a review of [Gateway Development Commission]'s compliance with federal nondiscrimination laws," the court noted that President Trump "made contemporaneous statements indicating that he had personally made the decision to 'terminate' funding for the Project 'because the Democrats are so foolish – what they've done to the country.'" *Id.* at 486. DOT never determined that the bi-state entity had violated



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

federal law, nor did DOT "dispute that the suspension of federal grants flagrantly violates federal law." *Id.*

87. In another lawsuit, DOT stipulated in court filings that it had chosen to rescind numerous grants because the grants "expressed, or were presumed to express, viewpoints disfavored by the Administration," as set forth in executive orders and DOT executive directives—"not . . . based on alleged noncompliance with the terms of the grant." *Thakur v. Trump*, No. 25-cv-04737-RFL, ECF No. 211-2 at 6–7 (N.D. Cal. July 15, 2026). In that same case, the Department of Education stipulated that it canceled grants "based solely on the political identity of the grant recipient's state, i.e., whether the recipient's location and/or place of performance was in a Blue State or a non-Blue State." *Id.*, ECF No. 211-6 at 7. These and numerous other grant cancelations and suspensions show that politically motivated grant termination is not mere speculation but rather another sword the current Administration is wielding against jurisdictions it views as noncompliant with its policy agenda. *See also Illinois v. Noem*, 813 F. Supp. 3d 282, 304–05 (D.R.I. 2025) (finding reallocation of hundreds of millions of dollars of Homeland Security Grant Program funds away from states with sanctuary policies violated the APA), *appeal filed*, No. 26-1182 (1st Cir. Feb. 24, 2026); *Illinois v. Vought*, 825 F. Supp. 3d 721, 728–29 (N.D. Ill. 2026) (preliminarily enjoining decision to target four states for HHS grant terminations or suspensions for reasons unrelated to the congressional authorization for public-health grants as likely arbitrary and capricious and contrary to law under the APA); *Washington v. Commerce*, 812 F. Supp. 3d 1169, 1184 (W.D. Wash. 2025) (terminating NOAA cooperative agreements for changed agency priorities was likely arbitrary and capricious and a violation of the Spending Clause).

88. Based on this recent history and practice, if subject to the DOT Termination Condition, Supplemental DOT Plaintiffs cannot be certain that they will be able to rely on grant



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

awards for their duration.

89. For these reasons and as further set forth in Section III, *infra*, the DOT Termination Condition violates the separation of powers, the Spending Clause, the Fifth Amendment's void-for-vagueness doctrine, and the APA.

**6. The HHS Termination Condition Is Unlawful**

90. The HHS Termination Condition exceeds HHS's lawful authority. It requires recipients to agree that HHS, through its operating division, may terminate a grant award if it determines "for whatever reason" that termination is "in the best interests of the Federal government[.]" The Condition thus permits termination at HHS's discretion, for new and unspecified reasons, after a recipient has accepted funding and begun implementing projects in reliance on it.

91. HHS lacks any legal basis to impose the HHS Termination Condition. Federal grants differ significantly from federal contracts, where termination-for-convenience provisions are common and authorized by regulation. *See, e.g.*, 48 C.F.R. §§ 52.249-1–.249-12. For grants, HHS and its operating divisions and agencies have recently adopted and given regulatory effect to the Uniform Guidance, including its termination provision, 2 C.F.R. § 200.340. *See* 2 C.F.R. § 300.106.

92. Nowhere does the current Uniform Guidance, or the version of the Uniform Guidance in place at the time of HHS's adoption, permit termination when the federal agency determines doing so is "in the best interests of the Federal government[.]" *See generally* 2 C.F.R. pt. 200.

93. HHS has no power to terminate grants based on its own subjective view of "the best interests of the Federal government," including for post hoc changes in agency priorities, to



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

substitute its own interests for the program objectives Congress identified when it directed funds to particular grant programs, or to terminate a grant arbitrarily "for whatever reason[.]"

94. For the same reasons as stated above with respect to the DOT Termination Condition (*see supra* ¶¶ 82–84), the HHS Termination Condition violates separation of powers principles by intruding upon Congress's spending powers, effectively creating a backdoor to unlawful impoundment of appropriated funds, and also violates Spending Clause principles by failing to provide fair notice of, or on its face set any limits on, the reasons for which HHS may terminate any of Supplemental HHS Plaintiffs' grants. Indeed, by allowing termination "for whatever reason," the HHS Termination Condition affirmatively sets no limits on the basis for termination.

95. Supplemental HHS Plaintiffs have a strong interest in obtaining clarity regarding their rights and obligations for grants to be awarded imminently and future grants that they anticipate applying for. They should not have to guess at whether HHS can cut off their federal funding on a whim and for reasons not known to them at the time of the grant, thus suddenly and unlawfully upending carefully planned budgets and programs that account for these grants.

96. As noted above (*see supra* ¶¶ 86–87), since the beginning of the current Administration, federal agencies, including HHS, have arbitrarily terminated grants, purporting to rely on the Uniform Guidance. Based on this recent history and practice, if subject to the HHS Termination Condition, Supplemental HHS Plaintiffs cannot be certain that they will be able to rely on grant awards for their duration.

97. For these reasons and as further set forth in Section III, *infra*, the HHS Termination Condition violates the separation of powers, the Spending Clause, and the APA.

**C. The Supplemental HUD Plaintiffs, Supplemental DOT Plaintiffs, and Supplemental HHS Plaintiffs Face an Impossible Choice of Accepting Illegal**



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**Conditions, or Forgoing Federal Grant Funding for Critical Programs and Services**

98. The grant conditions that HUD, DOT, and HHS seek to impose leave the Supplemental HUD Plaintiffs, Supplemental DOT Plaintiffs, and Supplemental HHS Plaintiffs with the Hobson's choice of accepting illegal conditions that are without authority and contrary to the Constitution, or forgoing the benefit of grant funds—paid for (at least partially) through local federal taxes—that are necessary for crucial local services. The uncertainty caused by these illegal conditions has impeded the Supplemental HUD, DOT, and HHS Plaintiffs' ability to budget and plan for services and projects covered by the grants.

99. The prospective loss of these federal funds, taken together, would have significant and lasting impacts on the Supplemental HUD, DOT, and HHS Plaintiffs' finances and the essential services they provide and projects they build. The Supplemental HUD, DOT, and HHS Plaintiffs cannot replace these funds with local revenue without substantially cutting other critical services and projects.

100. Withholding HUD grants on the basis of Supplemental HUD Plaintiffs' inability to accede to the FY 2026 HUD Grant Conditions could create budget shortages that could cut off housing and other essential services for millions of residents. It would jeopardize Supplemental HUD Plaintiffs' affordable housing development and preservation efforts and threaten access to food assistance, mental health services, transitional housing, housing repair, housing access, early education, and senior wellness programs. It would destabilize budgets and strategic plans, including multi-year plans, built around federal funding, and the losses would ripple through local economies, affecting jobs, contractor revenues, and long-term community development programs such as food access, homeownership assistance, and housing stability. Subrecipients such as food banks, mental health providers, senior centers, and affordable housing agencies would face



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

operational and personnel disruptions, degrading their ability to meet the needs of low-income families. Loss, or substantial further delay, of HUD grants, such as CDBG grants, will force Supplemental HUD Plaintiffs to divert funds away from other programs, or else suspend or cancel subrecipient agreements that have been entered into in reliance on the CDBG funding, which in turn will harm relationships with partners including local jurisdictions and service providers.

101. Withholding DOT grants from Supplemental DOT Plaintiffs would result in loss of billions of dollars in funding for critical services and projects for their residents. For example, withholding DOT SMART grants from Supplemental DOT Plaintiffs who rely on those funds would eliminate funding for advanced smart community technologies and systems projects, including projects using advanced technology and data methods to improve transportation efficiency and safety. Those projects would be delayed or abandoned, perpetuating inefficiencies and safety risks and worsening air quality.

102. Withholding HHS grants from Supplemental HHS Plaintiffs would result in loss of substantial funding for critical services and projects for their residents. For example, withholding ACL grants from Supplemental HHS Plaintiffs who rely on those funds would eliminate funding for medical research projects and for services for senior citizens. Those projects would be delayed or abandoned, with harmful downstream impacts on those served by and benefitting from these programs.

### D. Plaintiff City of Bothell Joins Claims Challenging All HUD Conditions

103. Plaintiff City of Bothell ("Bothell") is a municipal corporation organized under the laws of the State of Washington. Bothell incorporates by reference its allegations concerning Bothell's receipt of DOT grants contained within the TAC. Dkt. #369 ¶ 272.

104. Bothell has previously received CDBG funding through membership in consortia



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

with Plaintiffs King and Snohomish Counties. With the U.S. Census Bureau estimating Bothell's 2025 population to be 52,199, Bothell has recently exceeded the population threshold of 50,000 residents for becoming a metropolitan community entitled to receive direct grants such as CDBG funding. HUD has formally communicated to Bothell that it will qualify as a metropolitan community with direct access to CDBG funding for federal fiscal year 2027 and beyond. Receiving direct access to CDBG funding required Bothell to terminate its membership in the consortia, which Bothell gave formal notice of in July 2026. Bothell also formally notified HUD that it has accepted CDBG status as an independent Metropolitan City for Federal Fiscal Year 2027 and is opting to receive funding directly from HUD.

105. HUD's notice to Bothell informing it of its eligibility for direct CDBG funding estimated that Bothell will be entitled to receive and administer approximately $240,679 for fiscal year 2027 in HUD CDBG funds. Bothell intends to use these funds to assist with eligible activities to be prioritized through an action plan such as home repair and housing rehabilitation; accessibility improvements; public facility improvements; community and human services; neighborhood revitalization efforts; and economic development activities.

106. Bothell thus joins the claims challenging the unlawful HUD Conditions.

## III. CAUSES OF ACTION

### Count 1: Separation of Powers

### *(All New Grant Conditions)*

107. The Supplemental HUD, DOT, and HHS Plaintiffs re-allege and incorporate the above as if set forth fully herein.

108. The Constitution "exclusively grants the power of the purse to Congress, not the President." *City & Cnty. of San Francisco*, 897 F.3d at 1231. This power is "directly linked to



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

[Congress's] power to legislate," and "'[t]here is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes.'" *Id.* at 1231–32 (second alteration in original) (quoting *Clinton v. City of New York*, 524 U.S. 417, 438 (1998)).

109. The Constitution vests Congress—not the Executive—with legislative powers, *see* U.S. Const. art. I, § 1, the spending power, *see* U.S. Const. art. I, § 8, cl. 1, and the appropriations power, *see* U.S. Const. art. I, § 9, cl. 7. Absent an express delegation, only Congress is entitled to attach conditions to federal funds.

110. "The Framers viewed the legislative power as a special threat to individual liberty, so they divided that power to ensure that 'differences of opinion' and the 'jarrings of parties' would 'promote deliberation and circumspection' and 'check excesses in the majority.'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 223 (2020) (quoting The Federalist No. 70, at 475 (A. Hamilton) and citing *id.*, No. 51, at 350).

111. "As Chief Justice Marshall put it, this means that 'important subjects . . . must be entirely regulated by the legislature itself,' even if Congress may leave the Executive 'to act under such general provisions to fill up the details.'" *West Virginia v. EPA*, 597 U.S. 697, 737 (2022) (Gorsuch, J., concurring) (alteration in original) (quoting *Wayman v. Southard*, 10 Wheat. 1, 42–43, 6 L. Ed. 253 (1825)).

112. The separation of powers doctrine thus represents perhaps the central tenet of our Constitution. *See, e.g.*, *Trump v. United States*, 603 U.S. 593, 637–38 (2024); *West Virginia*, 597 U.S. at 723–24; *Seila Law LLC*, 591 U.S. at 227. Consistent with these principles, the Executive acts at the lowest ebb of its constitutional authority and power when it acts contrary to the express or implied will of Congress. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring).



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

113. Pursuant to the separation of powers doctrine, the Executive Branch may not "claim[] for itself Congress's exclusive spending power, . . . [or] coopt Congress's power to legislate." *City & Cnty. of San Francisco*, 897 F.3d at 1234. Indeed, the Impoundment Control Act of 1974 requires the President to notify and request authority from Congress to rescind or defer the expenditure of funds *before* acting to withhold or pause federal payments. 2 U.S.C. § 681 *et seq*. The President has not done so.

114. Congress has not conditioned the provision of HUD grants on requiring recipients to agree to be fiduciaries owing HUD and "the American people" a "duty of absolute loyalty"; barring funds to any provider or organization that operates safe consumption sites or distributes drug paraphernalia, even where those activities are not federally funded and/or are authorized by state or local law; requiring recipients to "cooperate fully" with a fraud task force "in all manners and respects as required by HUD"; or extending recordkeeping and access obligations to include "any and all data" on program participants and other third parties. Nor has Congress delegated to HUD the authority to attach such conditions unilaterally.

115. Congress has not conditioned the provision of DOT grants on allowing termination of grant agreements whenever DOT unilaterally determines that termination is in the "public interest" and allowing DOT to consider only its own interests in doing so. Nor has Congress delegated to DOT the authority to attach such conditions unilaterally.

116. Congress has not conditioned the provision of HHS grants on allowing termination of grant agreements whenever HHS unilaterally determines that termination is "in the best interests of the Federal government" or decides to terminate "for whatever reason[.]" Nor has Congress delegated to HHS the authority to attach such conditions unilaterally.

117. By imposing the New Grant Conditions on grant recipients, HUD, DOT, and HHS



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

are unilaterally attaching new conditions to federal funding without authorization from Congress.

118. For these reasons, HUD's, DOT's, and HHS's conditioning of their grants on compliance with the New Grant Conditions violates the separation of powers doctrine.

**Count 2: Spending Clause**

***(All New Grant Conditions)***

119. The Supplemental HUD, DOT, and HHS Plaintiffs re-allege and incorporate the above as if set forth fully herein.

120. The Spending Clause of the U.S. Constitution provides that "Congress"—not the Executive—"shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States . . . ." U.S. Const. art. I, § 8, cl. 1.

121. As described above, HUD, DOT, and HHS violate the separation of powers because the New Grant Conditions are neither expressly nor impliedly authorized by Congress. For the same reasons, HUD, DOT, and HHS violate the Spending Clause as well.

122. The Spending Clause also requires states to have fair notice of conditions that apply to federal funds disbursed to them. *Pennhurst*, 451 U.S. at 17, 25. The grant conditions must be set forth "unambiguously." *Arlington Cent. Sch. Dist. Bd. of Educ.*, 548 U.S. at 296 (internal quotation omitted).

123. Moreover, funding restrictions may only impose conditions that are reasonably related to the federal interest in the project and the project's objectives. *Dole*, 483 U.S. at 207–08.

124. Finally, federal funds "may not be used to induce the States to engage in activities that would themselves be unconstitutional." *Id.* at 210.

125. Even if Congress had delegated authority to the Executive or HUD to impose the



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

FY 2026 HUD Grant Conditions, those Conditions would violate the Spending Clause because they are ambiguous, *see Pennhurst*, 451 U.S. at 17, and are not germane to the purposes of the statutes that authorize the grant programs, *see Dole*, 483 U.S. at 207 ("[C]onditions on federal grants might be illegitimate if they are unrelated to the federal interest in particular national projects or programs.") (internal quotation omitted).

126. For the same reasons, even if Congress had delegated authority to the Executive or DOT to impose the DOT Termination Condition, that Condition would violate the Spending Clause.

127. For the same reasons, even if Congress had delegated authority to the Executive or HHS to impose the HHS Termination Condition, that Condition would violate the Spending Clause.

**Count 3: Ultra Vires Agency Action**

***(All New Grant Conditions)***

128. The Supplemental HUD, DOT, and HHS Plaintiffs re-allege and incorporate the above as if set forth fully herein.

129. An executive agency "has no power to act . . . unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

130. As the head officials of HUD, DOT, and HHS, each agency's respective Secretary's "power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly . . . what they do is ultra vires." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).

131. HUD's, DOT's, and HHS's head officials lack the statutory authority to impose the New Grant Conditions. No provision of the relevant authorizing statutes gives them the power to impose these terms, and the statutes authorizing them to administer certain specific grants also



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

preclude the New Grant Conditions' imposition.

132. In imposing all or some of the New Grant Conditions, HUD's, DOT's, and HHS's head officials exceed the statutory authority granted to them by Congress. These agency actions are therefore ultra vires.

133. The actual and threatened imposition of the New Grant Conditions has caused harm and will continue to cause harm to the Supplemental HUD, DOT, and HHS Plaintiffs by forcing them to choose between accepting the New Grant Conditions or forgoing critical federal funding.

134. Federal courts possess the power in equity to grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). The U.S. Supreme Court allows equitable relief against federal officials who act "beyond those limitations" imposed by federal statute. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949).

**Count 4: Fifth Amendment Due Process (Vagueness)**

***(All New Grant Conditions)***

135. The Supplemental HUD, DOT, and HHS Plaintiffs re-allege and incorporate the above as if set forth fully herein.

136. Under the Due Process Clause of the Fifth Amendment, a governmental enactment, like an executive order, is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

137. The New Grant Conditions are unconstitutionally vague. The Conditions fail to make clear what conduct is prohibited and fail to specify clear standards for enforcement.

**Count 5: Administrative Procedure Act, 5 U.S.C. § 706(2)**



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**Arbitrary and Capricious**

***(All New Grant Conditions)***

138. The Supplemental HUD, DOT, and HHS Plaintiffs re-allege and incorporate the above as if set forth fully herein.

139. Defendants HUD, DOT, and HHS are "agenc[ies]" as defined in the APA, 5 U.S.C. § 551(1); 5 U.S.C. § 701(b)(1).

140. Additionally, HUD's, DOT's, and HHS's issuance of standard and general terms and conditions, NOFOs, grant agreements, and other documents (collectively, "Agency Actions") adopting and imposing one or more of the New Grant Conditions on federal grant funding—including but not limited to those set forth in Sections II.A.1–3, *supra*—are all agency actions subject to review under the APA.

141. Final agency actions (1) "mark the consummation of the agency's decisionmaking process" and (2) are ones "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotations omitted).

142. The Agency Actions, as further described in this Supplemental Complaint, are final agency actions because they reflect final decisions, in accord with presidential directives, to require grant recipients to comply with various Trump Administration policy priorities as a condition to receiving grant funding. *See State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031–32 (N.D. Cal. 2018) (holding that agency decision to impose new conditions on federal grants satisfies both tests for final agency action because it "articulate[s] that certain funds" will "require adherence to the" new conditions and "opens up the [recipient] to potential legal consequences," including withholding of funds if the recipient declines to accept the conditions); *Planned*



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Parenthood of N.Y.C., Inc. v. HHS*, 337 F. Supp. 3d 308, 328–29 (S.D.N.Y. 2018) (same).

143. These actions determine rights and obligations and produce legal consequences because they exercise purported authority to create new conditions on already awarded funds that would obligate recipients to comply with the Executive's policy priorities.

144. Under the APA, a "court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

145. "An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'" *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). A court must therefore "ensure, among other things, that the agency has offered 'a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *Id*. (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)). "[A]n agency cannot simply ignore 'an important aspect of the problem'" addressed by its action. *Id.* at 293.

146. HUD has provided no reasoned explanation for its decision to impose the FY 2026 HUD Grant Conditions.

147. DOT has provided no reasoned explanation for its decision to impose the DOT Termination Condition.

148. HHS has provided no reasoned explanation for its decision to impose the HHS Termination Condition.

149. HUD, DOT, and HHS also ignore essential aspects of the problems they purport to address via the various grant programs, including the Supplemental HUD, DOT, and HHS Plaintiffs' reasonable and inevitable reliance on now at-risk funds, the expectation of



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

reimbursement from already appropriated funds, and the threat to or elimination of a wide array of the Supplemental HUD, DOT, and HHS Plaintiffs' services and projects for their residents, which will have severe negative impacts on homeless individuals and families, public health and safety, and transportation safety.

150. Further, in many instances, the New Grant Conditions contravene federal laws and regulations that govern areas ranging from fraud prevention and prosecution to recordkeeping and access requirements.

151. The Supplemental HUD, DOT, and HHS Plaintiffs therefore ask the Court to declare under 5 U.S.C. § 706 and 28 U.S.C. § 2201 that imposing the New Grant Conditions violates the APA because it is arbitrary and capricious; provide preliminary relief under 5 U.S.C. § 705; and preliminarily and permanently enjoin HUD, DOT, and HHS from imposing those Conditions without complying with the APA.

**Count 6: Administrative Procedure Act, 5 U.S.C. § 706(2)**

**Contrary to Constitution**

***(All New Grant Conditions)***

152. The Supplemental HUD, DOT, and HHS Plaintiffs re-allege and incorporate the above as if set forth fully herein.

153. Under the APA, a "court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

154. As described above, the imposition by HUD, DOT, and HHS of some or all of the New Grant Conditions violates bedrock constitutional provisions and principles including the separation of powers between the Executive and Congress, the Spending Clause, and the Fifth



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Amendment's Due Process Clause.

155. The Supplemental HUD, DOT, and HHS Plaintiffs therefore ask the Court to declare under 5 U.S.C. § 706 and 28 U.S.C. § 2201 that imposing the New Grant Conditions violates the APA because it is contrary to constitutional rights, powers, privileges, or immunities; provide preliminary relief under 5 U.S.C. § 705; and preliminarily and permanently enjoin HUD, DOT, and HHS from imposing those New Grant Conditions without complying with the APA.

**Count 7: Administrative Procedure Act, 5 U.S.C. § 706(2)**

**In Excess of Statutory Authority**

***(All New Grant Conditions)***

156. The Supplemental HUD, DOT, and HHS Plaintiffs re-allege and incorporate the above as if set forth fully herein.

157. Under the APA, a "court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

158. HUD, DOT, and HHS may exercise only authority granted to them by statute or the Constitution.

159. No law or provision of the Constitution authorizes HUD, DOT, or HHS to impose extra-statutory conditions not authorized by Congress on congressionally-appropriated funds.

160. Neither the enabling statutes for HUD grant programs nor any other legislation authorizes HUD to impose the FY 2026 HUD Grant Conditions.

161. Neither the enabling statutes for DOT grant programs nor any other legislation authorizes DOT to impose the DOT Termination Condition.

162. Neither the enabling statutes for HHS grant programs nor any other legislation



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

authorizes HHS to impose the HHS Termination Condition.

163. Indeed, by threatening to unilaterally withhold funds on the basis of unauthorized grant conditions, HUD, DOT, and HHS attempt to circumvent the process established in the Impoundment Control Act of 1974, which requires the President to notify and request authority from Congress to rescind or defer the expenditure of funds before acting to withhold or pause federal payments. 2 U.S.C. § 681 *et seq*.

164. The Supplemental HUD, DOT, and HHS Plaintiffs therefore ask the Court to declare under 5 U.S.C. § 706 and 28 U.S.C. § 2201 that imposing the New Grant Conditions violates the APA because it is in excess of HUD's, DOT's, and HHS's statutory jurisdiction, authority, or limitations, or short of statutory right; provide preliminary relief under 5 U.S.C. § 705; and preliminarily and permanently enjoin HUD, DOT, and HHS from imposing those Conditions without complying with the APA.

**Count 8: Tenth Amendment**

***(HUD Fiduciary Condition)***

165. The Supplemental HUD Plaintiffs re-allege and incorporate the above as if set forth fully herein.

166. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

167. A corollary to this confirmation of "dual sovereignty," *Printz v. United States*, 521 U.S. 898, 918–19 (1997), is the anti-commandeering doctrine—the principle that the federal government cannot commandeer state and local officials to help enforce federal law or otherwise require them to govern according to its instructions. *Id.* at 919–20; *see also New York v. United*



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*States*, 505 U.S. 144, 162 (1992).

168. Under the anti-commandeering doctrine, the federal government may not compel state or local governments to enact or administer a federal regulatory program. *New York*, 505 U.S. at 188. This is true regardless of whether the federal government "directly commands" a state or local government to regulate or "indirectly coerces" it to adopt a federal regulatory system as its own. *Nat'l Fed'n of Indep. Bus.*, 567 U.S. at 578. Where it comes to conditions on grant funding, state and local governments must have a "legitimate choice whether to accept the federal conditions in exchange for federal funds." *Id.*

169. The offices and duties of local officials are defined by state and local law. Federal commandeering of local governments strips local governments of choice and control over local policies, denies local officials the ability to be responsive to the constituents who elected them, and diminishes accountability. *See New York*, 505 U.S. at 168–69.

170. Even if Congress had delegated authority to the Executive or HUD to condition critical homelessness, housing, and development funding on a requirement that the recipient "stand[] in a fiduciary relationship to" and "act solely for the benefit" of "HUD and the American people," and to "undertake[] a duty of absolute loyalty, trust, and confidence," the HUD Fiduciary Condition would violate the Tenth Amendment by imposing conditions so severe as to coerce Supplemental HUD Plaintiffs—who collectively receive billions of dollars in such funds—to carry out federal laws, policies, and priorities rather than serve local communities and interests. *See Nat'l Fed'n of Indep. Bus.*, 567 U.S. at 579 (Congress may not impose conditions so severe that they "'cross[] the line distinguishing encouragement from coercion'") (quoting *New York*, 505 U.S. at 175).



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## IV. PRAYER FOR RELIEF

WHEREFORE, the Supplemental HUD Plaintiffs, Supplemental DOT Plaintiffs, and Supplemental HHS Plaintiffs request the following relief:

A. A declaration that the New Grant Conditions are unconstitutional, are not authorized by statute, violate the APA, are ultra vires, and are otherwise unlawful;

B. A preliminary and permanent injunction enjoining HUD and its program offices from imposing or enforcing the FY 2026 HUD Grant Conditions, or any materially similar terms or conditions, with respect to any grant applications or action plans (including both annual action plans and grant-specific action plans) submitted by, or grant funds received by or awarded to, whether directly or indirectly, the Supplemental HUD Plaintiffs or members of Supplemental HUD Plaintiffs' Continuums and/or Consortiums;

C. A preliminary and permanent injunction enjoining HUD and its program offices from retaliating or taking any adverse action based on participation as a plaintiff in this lawsuit, including but not limited to reducing the amount of a grant award; refusing to issue, process, sign, or approve grant applications, grant agreements, or subgrant agreements; and refusing to issue, process, sign, or approve any invoice or request for payment, or reducing the amount of such approval or payment;

D. A preliminary and permanent injunction enjoining DOT and its operating administrations from imposing or enforcing the DOT Termination Condition, or any materially similar terms or conditions, with respect to any grant applications submitted by, or grant funds received by or awarded to, whether directly or indirectly, the Supplemental DOT Plaintiffs;



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

E. A preliminary and permanent injunction enjoining DOT and its operating administrations from retaliating or taking any adverse action based on participation as a plaintiff in this lawsuit, including but not limited to reducing the amount of a grant award; refusing to issue, process, or sign, or approve grant applications, grant agreements, or subgrant agreements; and refusing to issue, process, sign, or approve any invoice or request for payment, or reducing the amount of such approval or payment;

F. A preliminary and permanent injunction enjoining HHS and its operating divisions and agencies from imposing or enforcing the HHS Termination Condition, or any materially similar terms or conditions, with respect to any grant applications submitted by, or grant funds received by or awarded to, whether directly or indirectly, the Supplemental HHS Plaintiffs;

G. A preliminary and permanent injunction enjoining HHS and its operating divisions and agencies from retaliating or taking any adverse action based on participation as a plaintiff in this lawsuit, including but not limited to reducing the amount of a grant award; refusing to issue, process, sign, or approve grant applications, grant agreements, or subgrant agreements; and refusing to issue, process, sign, or approve any invoice or request for payment, or reducing the amount of such approval or payment;

H. An award to the Supplemental HUD Plaintiffs, Supplemental DOT Plaintiffs, and Supplemental HHS Plaintiffs of their reasonable attorneys' fees and costs; and

I. Any other further relief that the Court deems fit and proper.



PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

DATED this 10th day of November, 2026.

PACIFICA LAW GROUP LLP

________________
Paul J. Lawrence, WSBA #13557
Jamie Lisagor, WSBA #39946
Sarah S. Washburn, WSBA #44418
Meha Goyal, WSBA #56058
Luther Reed-Caulkins, WSBA #62513
*Special Deputy Prosecutors*

PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101
Tel: (206) 245-1700
Fax: (206) 245-1750
Paul.Lawrence@PacificaLawGroup.com
Jamie.Lisagor@PacificaLawGroup.com
Sarah.Washburn@PacificaLawGroup.com
Meha.Goyal@PacificaLawGroup.com
Luther.Reed-Caulkins@PacificaLawGroup.com

*Attorneys for All Plaintiffs*

LEESA MANION
King County Prosecuting Attorney

____________________________
Cristy Craig, WSBA #27451
*Senior Deputy Prosecuting Attorney*
Christopher M. Sanders WSBA#47518
*General Counsel to the King County Executive*
Mika Rothman, WSBA #55870
*Deputy General Counsel to the King County Executive*
701 6th Ave, Suite 600
Seattle, WA 98104
(206) 477-1163
cristy.craig@kingcounty.gov
mika.rothman@kingcounty.gov
chsanders@kingcounty.gov

*Attorneys for Plaintiffs Martin Luther King Jr. County*

JASON J. CUMMINGS
Snohomish County Prosecuting Attorney

______________________________
Bridget E. Casey, WSBA #30459
Rebecca J. Guadamud, WSBA #39718
Rebecca E. Wendling, WSBA #35887

Snohomish County Prosecuting Attorney's Office
3000 Rockefeller Avenue, M/S 504
Everett, WA 98201-4046
(425) 388-6392
Bridget.Casey@co.snohomish.wa.us
Rebecca.Guadamud@co.snohomish.wa.us
Rebecca.Wendling@co.snohomish.wa.us

*Attorneys for Plaintiff Snohomish County*

DAVID CHIU
San Francisco City Attorney

______________________________
David Chiu (CA Bar No. 189542)
*San Francisco City Attorney*
Yvonne R. Meré (CA Bar No. 175394)
*Chief Deputy City Attorney*
Mollie M. Lee (CA Bar No. 251404)
*Chief of Strategic Advocacy*
Sara J. Eisenberg (CA Bar No. 269303)
*Chief of Complex & Affirmative Litigation*
Ronald H. Lee (CA Bar No. 238720)
*Assistant Chief, Complex & Affirmative Litigation*
Alexander J. Holtzman (CA Bar No. 311813)
*Deputy City Attorney*

1390 Market Street, 7th Floor
San Francisco, CA 94102
(415) 554-4700
Cityattorney@sfcityatty.org
Yvonne.Mere@sfcityatty.org
Mollie.Lee@sfcityatty.org
Sara.Eisenberg@sfcityatty.org
Ronald.Lee@sfcityatty.org
Alexander.Holtzman@sfcityatty.org

*Attorneys for Plaintiffs City and County of San Francisco, San Francisco County Transportation Authority, and Treasure Island Mobility Management Agency*

OFFICE OF THE COUNTY COUNSEL,
COUNTY OF SANTA CLARA

________________________
Tony LoPresti (CA Bar No. 289269)
*County Counsel*
Kavita Narayan (CA Bar No. 264191)
*Chief Assistant County Counsel*
Meredith A. Johnson (CA Bar No. 291018)
*Lead Deputy County Counsel*
Stefanie L. Wilson (CA Bar No. 314899)
*Deputy County Counsels*
70 West Hedding Street
East Wing, 9th Floor
San José, CA 95110
(408) 299-9021
tony.lopresti@cco.sccgov.org
kavita.narayan@cco.sccgov.org
meredith.johnson@cco.sccgov.org
stefanie.wilson@cco.sccgov.org

*Attorneys for Plaintiff County of Santa Clara*

ADAM CEDERBAUM
Corporation Counsel, City of Boston

________________________
Samantha H. Fuchs (MA BBO No. 708216)
*Senior Assistant Corporation Counsel*
Samuel B. Dinning (MA BBO No. 704304)
*Senior Assistant Corporation Counsel*
One City Hall Square, Room 615
Boston, MA 02201
(617) 635-4034
samantha.fuchs@boston.gov
samuel.dinning@boston.gov

*Attorneys for Plaintiff City of Boston*

CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY

________________________

Richard N. Coglianese (OH Bar No. 0066830)
Assistant City Attorney
77 N. Front Street, 4th Floor
Columbus, Ohio 43215
Tel: (614) 645-0818
Fax: (614) 645-6949
rncoglianese@columbus.gov

*Attorney for Plaintiff City of Columbus*

PUBLIC RIGHTS PROJECT

______________________________

Naomi Tsu (OR Bar No. 242511)
Sharanya (Sai) Mohan (CA Bar No. 350675)
Toby Merrill (MA Bar No. 601071)*
Graham Provost (D.C. Bar No. 1780222)**
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
(510) 738-6788
sai.mohan@publicrightsproject.org
naomi.tsu@publicrightsproject.org
toby.merrill@publicrightsproject.org
graham.provost@publicrightsproject.org

* Licensed in Illinois, Massachusetts, New York, and Washington, D.C. Not licensed to practice law in California.
** Licensed in Washington, D.C. Not licensed to practice law in California.

*Counsel for Plaintiffs City of Columbus, City & County of Denver, Metro Government of Nashville & Davidson County, Pima County, County of Sonoma, City of Bend, City of Cambridge, City of Chicago, City of Culver City, City of Minneapolis, City of Pasadena, City of Pittsburgh, City of Portland, City of San José, City of Santa Monica, City of*

*Tucson, Santa Monica Housing Authority, County of Alameda, City of Albuquerque, Mayor and City Council of Baltimore, City of Bellevue, City of Bellingham, City of Bremerton, County of Dane, City of Eugene, County of Hennepin, Kitsap County, City of Milwaukee, Multnomah County, City of Oakland, City of Petaluma, Ramsey County, City of Rochester, San Mateo County, City of Santa Rosa, City of Watsonville, Culver City Housing Authority, Sonoma County Community Development Commission, Allegheny County, City of Cincinnati, Delaware County, City of New Haven, City of Palo Alto, and City of Santa Fe*

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York

________________________
Doris Bernhardt (NY Bar No. 4449385)
Joshua P. Rubin (NY Bar No. 2734051)
Aatif Iqbal (NY Bar No. 5068515)
*Assistant Corporation Counsels*
100 Church Street
New York, NY 10007
(212) 356-1000
dbernhar@law.nyc.gov
jrubin@law.nyc.gov
aiqbal@law.nyc.gov

*Attorneys for Plaintiff City of New York*

ASHLEY M. KELLIHER
Assistant City Attorney

________________________
Ashley M. Kelliher (CO Bar No. 40220)
*Assistant City Attorney*
Denver City Attorney's Office
201 West Colfax Avenue
Denver, Colorado 80202
Tel: (720) 913-3137
Fax: (720) 913-3190
ashley.kelliher@denvergov.org

DAVID P. STEINBERGER
Assistant City Attorney

________________________

David P. Steinberger (CO Bar No. 48530)
*Assistant City Attorney*
Denver City Attorney's Office
Denver International Airport
8500 Pena Boulevard
Airport Office Building, 9th Floor
Denver, Colorado 80249-6340
Tel: (303) 342-2562
david.steinberger@flydenver.com

*Attorneys for Plaintiff City and County of Denver*

LAURA CONOVER
Pima County Attorney

________________________

Samuel E. Brown (AZ Bar No. 027474)
Bobby Yu (AZ Bar No. 031237)
Kyle Johnson (AZ Bar No. 032908)
Pima County Attorney's Office, Civil Division
32 N. Stone, Suite 2100
Tucson, Arizona 85701
(520) 724-5700
sam.brown@pcao.pima.gov
bobby.yu@pcao.pima.gov
kyle.johnson@pcao.pima.gov

*Attorneys for Plaintiff Pima County*

ROBERT H. PITTMAN, County Counsel

________________________

Joshua A. Myers (CA Bar No. 250988)
*Chief Deputy County Counsel*
Sonoma County Counsel's Office
575 Administration Drive, Rm. 105A
Santa Rosa, CA 95403
Tel: (707) 565-2421
Fax: (707) 565-2624
Joshua.Myers@sonoma-county.org

*Attorneys for Plaintiffs County of Sonoma,*

*Sonoma County Transportation Authority, and Sonoma County Community Development Commission*

OFFICE OF THE CITY ATTORNEY FOR THE CITY OF BEND

______________________________

Ian M. Leitheiser (OSB #993106)
*City Attorney*
Elizabeth Oshel (OSB #104705)
*Senior Assistant City Attorney*
City of Bend
PO Box 431
Bend, OR 97709
(541) 693-2128
ileitheiser@bendoregon.gov
eoshel@bendoregon.gov

*Attorneys for Plaintiff City of Bend*

CITY OF CAMBRIDGE, LAW DEPARTMENT
MEGAN B. BAYER, CITY SOLICITOR

______________________________

Megan B. Bayer (MA BBO No. 669494)
*City Solicitor*
Elliott J. Veloso (MA BBO No. 677292)
*Deputy City Solicitor*
Diane Pires (MA BBO No. 681713)
*Assistant City Solicitor*
Cambridge City Hall, 3rd Floor
795 Massachusetts Avenue
Cambridge, MA 02139
(617) 349-4121
mbayer@cambridgema.gov
eveloso@cambridgema.gov
dpires@cambridgema.gov

*Attorneys for Plaintiff City of Cambridge*

RENEE CAMILLE HATCHER
Acting Corporation Counsel of the City of Chicago

______________________________
Rebecca Hirsch (IL Bar No. 6279592)
Chelsey Metcalf (IL Bar No. 6337233)
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
(312) 744-9484
rebecca.hirsch2@cityofchicago.org
chelsey.metcalf@cityofchicago.org

*Attorneys for Plaintiff City of Chicago*

KRISTYN ANDERSON
City Attorney

______________________________
Kristyn Anderson (MN Lic. 0267752)
*City Attorney*
Sara J. Lathrop (MN Lic. 0310232)
Munazza Humayun (MN Lic. 0390788)
*Assistant City Attorneys*
350 South Fifth Street
Minneapolis, MN 55415
(612) 673-3000
kristyn.anderson@minneapolismn.gov
sara.lathrop@minneapolismn.gov
munazza.humayun@minneapolismn.gov

*Attorneys for Plaintiff City of Minneapolis*

KRYSIA KUBIAK, Esq.
City Solicitor

______________________________
Julie E. Koren (PA Bar No. 309642)
*Associate City Solicitor*
City of Pittsburgh, Dept. of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219
(412) 255-2025

Julie.Koren@pittsburghpa.gov
Krysia.Kubiak@Pittsburghpa.gov

*Counsel for Plaintiff City of Pittsburgh*

ROBERT TAYLOR
Portland City Attorney

______________________________
Caroline Turco (OR Bar No. 083813)
*Senior Deputy City Attorney*
1221 SW Fourth Avenue, Room 430
Portland, OR 97204
Tel: (503) 823-4047
Fax: (503) 823-3089
Caroline.Turco@portlandoregon.gov

*Attorney for Plaintiff City of Portland*

NORA FRIMANN
City Attorney

______________________________
Nora Frimann (CA Bar No. 93249)
*City Attorney*
Elisa Tolentino (CA Bar No. 245962)
*Chief Deputy City Attorney*
200 E Santa Clara St
San José, CA 95113-1905
Tel: (408) 535-1900
Fax: (408) 998-3131
cao.main@sanjoseca.gov

*Attorneys for Plaintiff City of San José*

CITY OF WILSONVILLE

______________________________
Amanda R. Guile-Hinman, WSBA #46282
29799 SW Town Center Loop E
Wilsonville, OR 97070
(503) 570-1509
guile@wilsonvilleoregon.gov

*Attorneys for the City of Wilsonville*

CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY

________________________________

Andrés Muñoz, WSBA #50224
Desmond Brown, WSBA #16232

Central Puget Sound Regional Transit Authority
401 S. Jackson St.
Seattle, WA 98104
(206) 665-8989
andres.munoz@soundtransit.org
desmond.brown@soundtransit.org

*Attorneys for the Central Puget Sound Regional Transit Authority*

LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.

________________________________

Jeffrey S. Myers, WSBA #16390
Erin L. Hillier, WSBA #42883
Jakub Kocztorz, WSBA #61393

P.O. Box 11880
Olympia, WA 98508
Tel: (360) 754-3480
Fax: (360) 357-3511
jmyers@lldkb.com
ehillier@lldkb.com
jkocztorz@lldkb.com

*Attorneys for Plaintiff Intercity Transit*

ANDERSON & KREIGER LLP

________________________________

Melissa C. Allison (MA Bar No. 657470)
David S. Mackey (MA Bar No. 542277)
Christina S. Marshall (MA Bar No. 688348)
Anderson & Kreiger LLP
50 Milk Street, Floor 21
Boston, MA 02109

(617) 621-6500
mallison@andersonkreiger.com
dmackey@andersonkreiger.com
cmarshall@andersonkreiger.com

*Attorneys for Plaintiffs Port of Seattle and Milwaukee County*

OFFICE OF THE COUNTY COUNSEL, COUNTY OF ALAMEDA

________________________________
K. Scott Dickey (CA Bar No. 184251)
Assistant County Counsel
Jason M. Allen (CA Bar No. 284432)
Assistant County Counsel

Office of the County Counsel, County of Alameda
1221 Oak Street, Suite 450
Oakland, California 94612
(510) 272-6700
scott.dickey@acgov.org
jason.allen@acgov.org

*Attorneys for Plaintiff County of Alameda*

CITY OF ALBUQUERQUE

________________________________
Lauren Keefe (NM Lic. 14664)
*City Attorney*
Devon P. King (NM Lic. 148108)
*Deputy City Attorney*
One Civic Plaza NW
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
lkeefe@cabq.gov
dking@cabq.gov

*Attorneys for Plaintiff City of Albuquerque*

CITY OF BELLEVUE
OFFICE OF THE CITY ATTORNEY
Trisna Tanus, City Attorney

______________________________
Trisna Tanus, WSBA #46568
Chad R. Barnes, WSBA #30480
Katherine B. White, WSBA #46649

City of Bellevue
450 110th Avenue N.E.
P.O. Box 90012
Bellevue, WA 98009
Tel: (425) 452-2061
Fax: (425) 452-7256
ttanus@bellevuewa.gov
cbarnes@bellevuewa.gov
kbwhite@bellevuewa.gov

*Attorneys for Plaintiff City of Bellevue*

CITY OF BELLINGHAM

______________________________
Sarah W. Chaplin, WSBA #51642
Senior Assistant City Attorney
City of Bellingham
210 Lottie Street
Bellingham, WA 98225
Tel: (360) 778-8270
Fax: (360) 778-8271
swchaplin@cob.org

*Attorneys for Plaintiff City of Bellingham*

BREMERTON CITY ATTORNEY

______________________________
Kylie J. Finnell, WSBA #34997
*Bremerton City Attorney*
Brett Jette, WSBA #47903
*Bremerton Assistant City Attorney*

345 6th Street, Suite 100
Bremerton, WA 98337

Tel: (360) 473-2345
Fax: (360) 473-5161
legal@ci.bremerton.wa.us

*Attorneys for Plaintiff City of Bremerton*

OFFICE OF THE CORPORATION COUNSEL
FOR DANE COUNTY

________________________________
Carlos A. Pabellon (WI State Bar No. 1046945)
*Corporation Counsel*
David R. Gault (WI State Bar No. 1016374)
*Deputy Corporation Counsel*
County of Dane
City-County Building, Room 419
210 Martin Luther King, Jr. Blvd.
Madison, WI 53703
(608) 266-4355
pabellon.carlos@danecounty.gov
gault@danecounty.gov

*Attorneys for Plaintiff County of Dane*

CITY OF EUGENE

________________________________
Mark Kannen (OSB No. 120999)
*Assistant City Attorney*
Kathryn P. Brotherton (OSB No. 981530)
*City Attorney*
City of Eugene
Eugene City Attorney's Office
500 E 4th Ave., Ste 301
Eugene, OR 97401
(541) 682-8447
mark.r.kannen@ci.eugene.or.us
kathryn.brotherton@ci.eugene.or.us

*Attorneys for Plaintiff City of Eugene*

BURKE, WILLIAMS & SORENSEN, LLP

______________________________

Samantha W. Zutler (CA Bar No. 238514)
Eileen L. Ollivier (CA Bar No. 345880)
BURKE, WILLIAMS & SORENSEN, LLP
1 California Street, Suite 3050
San Francisco, CA 94111-5432
Tel: (415) 655-8100
Fax: (415) 655-8099
szutler@bwslaw.com
eollivier@bwslaw.com

*Attorneys for Plaintiffs City of Healdsburg and City of Watsonville*

______________________________

Michelle Marchetta Kenyon (CA Bar No. 127969)
City Attorney
Eileen L. Ollivier (CA Bar No. 345880)
BURKE, WILLIAMS & SORENSEN, LLP
1999 Harrison Street, Suite 1650
Oakland, California 94612-3520
Tel: (510) 273-8780
Fax: (510) 839-9104
mkenyon@bwslaw.com
eollivier@bwslaw.com

*Attorneys for Plaintiffs City of Pacifica and City of Rohnert Park*

MARY F. MORIARTY
Hennepin County Attorney

______________________________

Rebecca L.S. Holschuh (MN Bar No. 0392251)
Brittany K. McCormick (MN Bar No. 0395175)
Assistant County Attorneys
300 South Sixth Street
Minneapolis, MN 55487
(612) 348-4797
Rebecca.Holschuh@hennepin.us
Brittany.McCormick@hennepin.us

*Attorneys for Plaintiff County of Hennepin*

KITSAP COUNTY

_________________________

Kyla S. Bond, WSBA #48309
Senior Deputy Prosecuting Attorney, Civil Division
Kitsap County Prosecuting Attorney's Office
614 Division Street, MS-35A
Port Orchard, WA 98366
(360) 337-4512
kbond@kitsap.gov

*Attorney for Plaintiff Kitsap County*

HYDEE FELDSTEIN SOTO
City Attorney of the City of Los Angeles

________________________________

Michael J. Dundas (CA Bar No. 226930) Adrienne S. Khorasanee (CA Bar No. 227704)
Joshua M. Templet (CA Bar No. 267098)
Office of the Los Angeles City Attorney
200 North Main Street, Room 800
Los Angeles, California 90012
(213) 978-8100
mike.dundas@lacity.org
adrienne.khorasanee@lacity.org
joshua.templet@lacity.org

*Attorneys for Plaintiff City of Los Angeles*

MULTNOMAH COUNTY

________________________________

B. Andrew Jones (OSB No. 091786)
Deputy County Attorney
Multnomah County Attorney's Office
501 SE Hawthorne Blvd, Suite 500
Portland, OR, 97214
Tel: (503) 988-3138
Fax: (503) 988-3377

andy.jones@multco.us

*Attorneys for Plaintiff Multnomah County*

CITY OF OAKLAND

______________________________

Ryan Richardson (CA Bar No. 223548)
City Attorney
Maria Bee (CA Bar No. 167716)
Chief Assistant City Attorney
Jaime Huling Delaye (CA Bar No. 270784)
Supervising City Attorney
H. Luke Edwards (CA Bar No. 313756)
Deputy City Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Tel: (510) 238-3836
Fax: (510) 238-6500
ledwards@oaklandcityattorney.org

*Attorneys for Plaintiff City of Oakland*

CITY OF PETALUMA

______________________________

Eric Danly (CA Bar No. 201621)
City Attorney
City of Petaluma
Petaluma City Hall
11 English Street
Petaluma, CA 94952
(707) 778-4402
EDanly@cityofpetaluma.org

*Attorney for Plaintiff City of Petaluma*

JOHN J. CHOI
RAMSEY COUNTY ATTORNEY

______________________________

Bradley Cousins (MN Bar No. 0400463)
Stacey D'Andrea (MN Bar No. 0388320)
Jada Lewis (MN Bar No. 0391287)

Assistant Ramsey County Attorneys
360 Wabasha St. N., Suite 100
Saint Paul, MN 55102
(651) 266-3081 (Cousins)
(651) 266-3051 (D'Andrea)
(651) 266-3149 (Lewis)
Bradley.cousins@co.ramsey.mn.us
Stacey.dandrea@co.ramsey.mn.us
Jada.lewis@co.ramsey.mn.us

*Attorneys for Plaintiff Ramsey County*

CITY OF ROCHESTER

______________________________

Patrick Beath (NY Lic. 4999751)
*Corporation Counsel*
30 Church Street, Room 400A
Rochester, NY 14614
(585) 428-6812
patrick.beath@cityofrochester.gov

*Attorney for Plaintiff City of Rochester*

HEATHER FERBERT
City Attorney for City of San Diego

______________________________

Julie Rau (CA Bar No. 317658)
Lead Deputy City Attorney
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
(619) 533-5800
JRau@sandiego.gov

*Attorneys for Plaintiff City of San Diego*

SAN MATEO COUNTY

______________________________

John D. Nibbelin (CA Bar No. 184603)
County Counsel
Rebecca M. Archer (CA Bar No. 202743)
Chief Deputy Counsel

Savannah R. Eldridge (CA Bar No. 357723)
Deputy County Counsel
500 County Center, 4th Floor
Redwood City, CA 94063
(650) 363-4757
jnibbelin@smcgov.org
rmarcher@smcgov.org
seldridge@smcgov.org

*Attorneys for Plaintiff San Mateo County*

ASHLE T. CROCKER
City of Santa Rosa City Attorney

______________________________

Autumn Luna (CA Bar No. 288506)
Chief Assistant City Attorney
Adam S. Abel (CA Bar No. 148210)
Assistant City Attorney
Hannah E. Ford-Stille (CA Bar No. 335113)
Deputy City Attorney
100 Santa Rosa Ave, Room 8
Santa Rosa, CA 95404
(707) 543-3040
aluna@srcity.org
aabel@srcity.org
hfordstille@srcity.org

*Attorneys for Plaintiff City of Santa Rosa*

CASCADIA LAW GROUP PLLC

______________________________

Stephen R. Parkinson, WSBA #21111
Cascadia Law Group PLLC
1201 Third Avenue, Suite 320
Seattle, WA 98101
(206) 292-6300
sparkinson@cascadialaw.com

*Attorneys for Plaintiff Puget Sound Regional Council*