THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARTIN LUTHER KING, JR. COUNTY, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SCOTT TURNER in his official capacity as Secretary of the U.S. Department of Housing and Urban Development, et al.,<br><br>Defendants. | Case No. 2:25-cv-00814-BJR<br><br>**DECLARATION OF DANIEL ADAMS IN SUPPORT OF PLAINTIFFS' FIFTH MOTION FOR PRELIMINARY INJUNCTION** |

I, Daniel Adams, declare as follows:

1. I am over the age of 18 years, am competent to testify as to the matters in this declaration, and make it based on personal knowledge and my review of relevant records.

2. I am the Director of the San Francisco Mayor's Office of Housing and Community Development (MOHCD). MOHCD works to support San Francisco residents with affordable housing opportunities and essential services to build strong communities. As the Director, I lead and oversee the operations of MOHCD, ensuring that it effectively serves San Francisco and aligns with the City's goals for housing and community development.

3. MOHCD is the lead agency for the application and recipient of four U.S. Department of Housing and Urban Development (HUD) entitlement grant programs: the Community Development Block Grant (CDBG) program; the HOME Investment Partnerships program (HOME); the Housing

Opportunities for Persons With AIDS (HOPWA) program; and the Emergency Solutions Grant (ESG) program.

4. MOHCD coordinates with the City's Office of Economic and Workforce Development (OEWD) and Department of Homelessness and Supportive Housing (HSH) in allocating CDBG and ESG funds, respectively, for critical social services; in addition, MOHCD serves as the lead agency for the HOPWA program for the San Francisco Eligible Metropolitan Statistical Area, which consists of San Francisco County and San Mateo County.

5. Each year, the City's entitlement funding amounts are determined by HUD's allocation formulas specific to the goals for each program: (a) the CDBG formula uses factors such as population growth lag, people living below poverty level, and age of housing units; (b) the HOME program uses rental housing needs; (c) the HOPWA program uses HIV/AIDS data in the county jurisdictions; and (d) the ESG program uses homelessness data.

6. MOHCD depends heavily on these four programs to expand affordable housing opportunities, provide services to maintain housing stability and reduce displacement, and promote community safety and vitality through improved service coordination and accessibility. In 2025-2026, more than 4,800 low- and moderate-income individuals received CDBG-funded services; more than 1,500 individuals received ESG-funded services, and nearly 1,300 individuals received HOPWA-funded housing assistance in San Francisco and San Mateo.

7. Specifically, MOHCD and OEWD uses CDBG funds to acquire and rehabilitate affordable housing, provide essential services, and assist small businesses and microenterprises. MOHCD uses HOME funds for new construction of affordable housing. MOHCD uses HOPWA funds to provide housing assistance and support services to low-income individuals living with HIV/AIDS in San Francisco and San Mateo Counties. Finally, HSH uses ESG funds to provide shelter and essential services to homeless individuals and families, and homelessness prevention services to persons and families at risk of homelessness. Currently, MOHCD has $150 million in active funding allocations from HUD under these four programs, with more than $32 million not yet received from HUD.

8. In addition to coordinating and deploying these entitlement funds, MOHCD also leverages federal funding to provide financing for affordable housing projects in San Francisco. For example, MOHCD was awarded a Community Project Funding grant under HUD's Economic Development Initiative program (EDI-CPF grant) to provide funding to the developer of a 175-unit, 100% affordable senior housing development in the Chinatown neighborhood.

9. MOHCD will also deploy another EDI-CPF grant in partnership with HSH to provide funding for the rehabilitation of transitional housing in the Hayes Valley neighborhood.

10. MOHCD must execute HUD grant agreements in order to receive CDBG, HOME, HOPWA and ESG entitlement funds and the EDI-CPF grants.

11. These grant agreements, an example of which is attached as Exhibit A, contain conditions I have not seen in HUD grant agreements before, including:

- Awards made under, relating to, or arising out of the Federal Award will not be used to fund any project, service provider, or organization that operates illegal drug injection sites or "safe consumption sites" in violation of 21 U.S.C. § 856, knowingly permits the use or distribution of illicit drugs on property under their control in violation of 21 U.S.C. [§] 856(a)(2), or knowingly distributes drug paraphernalia in violation of 21 [U.S.C. §] 863.
- Recipient acknowledges and agrees that it stands in a fiduciary relationship to HUD and the American people with respect to the Federal Award. Recipient shall act solely for the benefit of HUD and the American people with respect to the Federal Award, and undertakes a duty of absolute loyalty, trust, and confidence.
- Recipient agrees to cooperate fully with HUD and the Task Force to Eliminate Fraud established in Executive Order 14395 of March 16, 2026, *Establishing the Task Force To Eliminate Fraud*, in all manners and respects as required by HUD; and
- HUD shall have the right of prompt, full, and complete access to any and all records of the Recipient and any other entities doing business with Recipient or otherwise receiving funds or benefits from Recipient, [including any individual or entity that receives any benefit of any kind from or as a direct or indirect result of the Federal

Award], and that are pertinent to the Federal Award to the fullest extent permitted by law.

12. These conditions are vague and sweeping. For example, I have no understanding what is expected of MOHCD as a "fiduciary to HUD and the American people" or what acting "solely for the benefit of HUD" entails. These conditions not only impose uncertain legal obligations on MOHCD, but they appear to impose conditions on MOHCD's use of non-federal funds and require MOHCD to waive its legal defenses in response to any investigation by the Federal government relating in any way to the HUD award.

13. I anticipate that HUD will impose these same problematic conditions on all HUD grants as a matter of policy, based on HUD's rollout of funding conditions that affected the HUD grants the City has received since January 2025.

14. San Francisco has a pressing need to fund the acquisition, construction, and the upkeep of critically needed affordable housing units. Based on the City's Regional Housing Needs Allocation, San Francisco has a need of 82,069 new units of new housing, and 32,881 of those new units are needed for low-income households.

15. The City relies on the stability of HUD entitlement funds from year to year. For the current 2026-2027 program year, 38 projects are relying on CDBG funds, seven projects are relying on ESG funds, and seven projects are relying on HOPWA funds to provide continuing direct services to low-income residents. In addition, one project is relying on HOME funds for the development of new affordable housing units.

16. Due to the City's budget outlook, MOHCD is under tremendous budgetary pressure and very limited ability to make up for the loss of federal funding from other City sources. Over the last four years, MOHCD has cut its budget for community grants, which funds a range of non-profit service providers that support low-income community members, by over $20 million, and anticipates the need to make additional cuts next year. MOHCD is therefore reliant on every dollar of anticipated revenue.

17. The loss of HUD entitlement funding would severely impair MOHCD's ability to deliver timely and effective services and to create and preserve affordable housing and ameliorate the risk of San Franciscans falling into homelessness, a major concern in the Bay Area.

18. Delays receiving EDI-CPF grants undermine the City's ability to ensure affordable housing projects are completed.

19. For example, with respect to the Hayes Valley transitional housing project, financing must be completed by December 23, 2026 to meet a refinancing deadline by the existing lender and avoid increased costs. Past this date, MOHCD will incur additional financing costs for failing to pay off existing debt, and previously agreed-upon construction costs will expire and reset to higher levels. Due to MOHCD's extreme budget constraints, the EDI-CPF grant is needed to complete the Hayes Valley transitional housing project.

20. While MOHCD can find other sources of funding in the near term to navigate brief delays in federal funds, it is temporarily diverting resources from other priorities and cannot make up for any loss of federal funds awarded to the City and budgeted for community services and affordable housing projects.

21. Continued delay in the receipt of HUD funds will compound fiscal uncertainty for MOHCD and impact the City's budget more broadly.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of November, 2026.

DANIEL ADAMS