THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARTIN LUTHER KING, JR. COUNTY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT TURNER, in his official capacity as Secretary of the U.S. Department of Housing and Urban Development, et al.,<br><br>Defendants. | No. 2:25-cv-00814-BJR<br><br>THIRD SUPPLEMENTAL DECLARATION OF COUNTY OF SANTA CLARA DIRECTOR FOR SUPPORTIVE HOUSING KATHRYN J. KAMINSKI |

I, KATHRYN J. KAMINSKI, declare as follows:

1. I am a resident of the State of California. I have personal knowledge of all facts stated in this declaration, and if called to do so, I could and would testify to them competently under oath.

2. I make this declaration to supplement my Second Supplemental Declaration, filed July 14, 2025 (Docket No. 270). I incorporate by reference the facts and statements made in that declaration.

3. For federal fiscal year 2026-2027, the County of Santa Clara (“Santa Clara” or the “County”) was awarded approximately $1.4 million in Community Development Block Grant (CDBG) entitlement grant funds, and approximately $829,000 in HOME Investment Partnership Program (HOME) entitlement grant funds. CDBG funds support community development activities including public facility improvements, community and economic development

projects that benefit low- and moderate-income residents, housing rehabilitation, and public services and fair housing services that benefit low-income residents, seniors, people with disabilities, and other vulnerable populations. HOME funds support affordable housing initiatives for low-income households.

4. As a qualifying "Urban County" under the CDBG regulations, Santa Clara is an "Entitlement Community," meaning it qualifies to directly receive CDBG funding because it meets a population threshold. The County has received CDBG and HOME funding on behalf of the "Santa Clara Urban County" since 1975.

5. HUD regulations allow Santa Clara to partner with "units of local government," which are cities and towns that do not meet the population threshold to themselves qualify as Entitlement Communities. Santa Clara administers CDBG in the unincorporated areas of Santa Clara County (within Santa Clara's own jurisdiction) and on behalf of small, non-Entitlement cities within the county: Campbell, Los Altos, Los Altos Hills, Los Gatos, Monte Sereno, Morgan Hill, and Saratoga (known as the "Urban County Program"). In other words, Santa Clara submits all required components of CDBG funding on behalf of itself and each of the non-Entitlement city partners, and then uses the CDBG funding to support projects and services within those cities. If the County were not able to receive CDBG funding for any reason, then these non-entitlement jurisdictions would lose the benefit of the funding for programs and projects within their communities as well.

6. The HOME Program supports a variety of affordable housing initiatives for low-income households; it is flexible funding that local governments can use to acquire, construct, and/or rehabilitate affordable housing for rent or homeownership or provide direct rental assistance to low-income people. Similar to the CDBG Urban County Program, Santa Clara

leads the County of Santa Clara's HOME Consortium, through which certain cities that otherwise would not be eligible for HOME funds if they did not opt into the Santa Clara County HOME Consortium. The cities of Gilroy, Cupertino, and Palo Alto have opted into the HOME Consortium. The HOME funds that Santa Clara receives can only be spent within the unincorporated county and within these cities.

7. HUD requires grantees of CDBG funding to produce a Consolidated Plan – a guiding document for the use of CDBG and HOME funds – every five years, as well as annual action plans to implement Consolidated Plan Goals each program year. Santa Clara, with contributions from its city partners, has already invested nearly $500,000 to hire a consulting firm to prepare the Consolidated Plan required for the CDBG and HOME grants. This figure does not include Santa Clara staff time and resources that have been invested in the preparation of the Consolidated Plan and Annual Action Plans, in reliance on the promise of these formula grants.

8. Santa Clara's Office of Supportive Housing has completed all steps for its CDBG and HOME post-award submissions: it completed its Consolidated Plan and Annual Action Plan and has held the required public hearings on the Consolidated Plan and the fiscal year 2026-27 Annual Action Plan, which was adopted by the Santa Clara County Board of Supervisors in May of 2026 (**Exhibit A**). The Annual Action Plan, once adopted by the Board of Supervisors and approved by HUD, binds Santa Clara to spend its allocated CDBG and HOME funds for the fiscal year to fund the projects selected through the Plan.

9. In reliance on the expectation of these entitlement grants, Santa Clara has ongoing contractual relationships with subrecipients of CDBG funds—service providers, community organizations, and local jurisdictions—and Santa Clara has included its annual HOME funds in

the County's housing and community development budget and plans. And, because the dates of HUD's CDBG award do not line up with Santa Clara's fiscal calendar, each year Santa Clara enters into a number of subrecipient agreements that begin on July 1, with the expectation that the appropriated CDBG funds will be forthcoming to the County as an Entitlement Community. In reliance on the CDBG award announcement, Santa Clara has executed nearly all of its CDBG subrecipient agreements for the 2026-2027 fiscal year.

10. The programs supported by this funding include: 13 public service projects estimated to provide approximately 1,600 unduplicated individuals with critical services including legal aid, temporary housing and shelter for families and survivors of domestic violence, case management, senior support services, and mentorship for at-risk-youth; one economic development program to support in-home family childcare microenterprises; fair housing services; development of affordable and supportive housing; improvements to public services facilities; and home repairs for low-income, senior homeowners.

11. To provide a few more detailed examples, programs supported by CDBG funding administered by Santa Clara include:

a. after-school enrichment, assistance, and mentorship to at-risk youth provided through a local Boys and Girls Club;

b. free legal services for seniors from low-income communities in the consortium cities;

c. 24/7 crisis intervention, legal advocacy, assistance, and long-term safe housing and support services for survivors who are escaping or have been displaced by domestic violence;

d. essential services for homeless individuals provided through a drop-in center,

including access to showers, laundry facilities, nutrition, and case management services as a pathway towards stable housing and wellness; and

e. home safety repairs and mobility accessibility improvements for low-income residents in Santa Clara County, with the primary consideration being the rectification of safety hazards.

12. For the HOME grant, the County has planned for housing acquisition and rehabilitation projects for these funds. HOME has a local matching requirement of 25 percent for every dollar of HOME funds. To that end, the County has already invested its local match funds in the acquisition of a veterans' housing and temporary shelter site that had fallen into disrepair by the previous owner and operator. It is anticipated that federal fiscal year 2026-2027 HOME funds will be used, together with prior years' HOME funds, towards necessary rehabilitation to the property to provide safe, dignified housing and shelter for homeless veterans.

13. Both grants are disbursed on a reimbursement basis, which means that subrecipients and Santa Clara must expend funds first, and then submit for reimbursement after.

14. Santa Clara received its federal fiscal year 2026-2027 grant agreements on September 15, 2026. True and correct copies of these fiscal year 2026-2027 CDBG and HOME grant agreements are attached hereto as **Exhibits B** and **C.**

15. These agreements included some conditions that were either new or significantly altered from prior versions. Specifically, the 2026-2027 agreements included substantially different "recordkeeping and access to records" and "waste, fraud, and abuse" conditions than what I am familiar with from prior HUD grant agreements, and new conditions referring to "Fiduciary Relationship," and "illegal drug injection sites," "use or distribution of illicit drugs,"

and "drug paraphernalia." Attached as **Exhibits D and E** are true and correct copies of the federal fiscal year 2025-2026 CDBG and HOME grant agreement received by the County from HUD on September 17, 2025, which show the prior years' terms and conditions.

16. It is not clear what is meant by the "Fiduciary Relationship" and "Waste, Fraud, and Abuse" conditions. These grant funds are already subject to a number of statutory and regulatory eligibility requirements. For example, a CDBG-funded project must be an "eligible activity" and also meet one of three "national objectives" (as defined by HUD regulation). Eligible activities include, for example, improvement of public facilities, construction of housing, and public services. Then, the project must meet one of the following national objectives: (1) serve low- and moderate-income persons; (2) address slums or blight; or (3) address urgent community development needs to respond to specific health or welfare threats. As the Entitlement Jurisdiction receiving the CDBG funds, Santa Clara has a responsibility to ensure that all projects receiving CDBG funding meet these and other applicable regulatory requirements. Santa Clara carries out these requirements through monitoring of subrecipients, including reviewing financial and client eligibility records, technical assistance, and implementing corrective actions when necessary.

17. The grant agreements also included a provision that awards "will not be used to fund any project, service provider, or organization that operates illegal drug injection sites or 'safe consumption sites' in violation of 21 U.S.C. § 856, knowingly permits the use or distribution of illicit drugs on property under their control in violation of 21 U.S.C. 856(a)(2), or knowingly distributes drug paraphernalia in violation of 21 USC 863." (Punctuation and formatting in original). I am not personally aware of any CDBG or HOME funded programs that engage in any of these activities, but I am concerned that HUD could attempt to enforce the

restrictions broadly to prohibit funding any provider or organizations that may have needle exchanges or other lawful harm reduction programs even if those programs are entirely separate from HUD-funded housing activities. I have also seen versions of this condition in other HUD grant funding contexts, where HUD purported to prohibit these activities but did not include the "in violation of …" language or the statutory citations. Thus, I am concerned that HUD intends to enforce this condition very broadly to cover even lawful public health activities totally separate from award funds.

18. This condition is also concerning from a monitoring perspective, because of its apparent breadth and because it is not clear what HUD believes to be covered by the cited statutes. Some CDBG grant funds are used to support shelter programs carried out by organizations that are very large and operate many projects and programs besides the one receiving CDBG grant funds, including potentially programs that operate entirely outside of Santa Clara County. I am concerned that HUD could enforce this condition to require the County to monitor all activities of all funded organizations for compliance, which would create untenable new burdens. For CDBG alone, the County has subrecipient agreements with 15 separate agencies, and the monitoring burden alone from this provision would be unsustainable. The cost to Santa Clara would greatly exceed the limited portion of the CDBG and HOME grant funds that are eligible to be used for administrative costs, and there are not other funds budgeted for the potential additional monitoring burden.

19. Because of concerns related to these conditions, Santa Clara has not yet been able to execute its CDBG and HOME grant agreements, although it has committed to projects in its funding recommendations and is already incurring costs pursuant to subrecipient agreements entered into as of July 1, 2026. Santa Clara is being forced to choose whether to accept these

new conditions, which are vague, confusing, and will create significant burdens, or to forego the funding altogether.

20. Further delay or loss of this funding will create irreparable harm to Santa Clara. First, it is already causing harm because Santa Clara is already incurring administrative costs for fiscal year 2026-2027, which includes staff who administer the CDBG and HOME programs as well as fair housing activities. CDBG and HOME grant funds are allotted for these administrative costs but Santa Clara cannot access these funds unless it executes the HUD grant agreements.

21. Second, the delay and potential loss of this funding creates an immediate funding challenge for programs that Santa Clara has already committed to. Santa Clara has some CDBG program income and prior year grant funds available, but these funds are not sufficient to sustain all programs and some programs are not eligible for the categories of funding that remain.

22. Moreover, the remaining prior year grant funds had already been planned to be used towards the acquisition of a year-round emergency shelter site that is currently located on property leased by Santa Clara from the State of California but that the State intends to sell. But, if Santa Clara is forced to use this funding to instead sustain other programs due to further delay or loss of federal fiscal year 2026-2027 CDBG funding, it is unlikely to be able to purchase the site from the State. As a consequence, the State may sell the property to another buyer, who may refuse to allow the shelter to remain there. If that shelter closes, there will be no other year-round shelters available to serve individuals and families in the community where the site is located.

23. However, even if the County diverts the funding planned for the shelter acquisition towards the other CDBG programs, it will not be enough to cover all programs, and

Santa Clara would need to begin diverting non-CDBG funds (most likely, County general funds) away from other programs or services in order to sustain CDBG programs after that time, or else pause or cancel its subrecipient agreements. If Santa Clara is forced to cancel or implement a long-term pause in its CDBG subrecipient grants, that will likely cause funded programs like those listed above to shut down or substantially reduce their capacity. Many of these funded programs are operating in under-served areas where few other services or assistance is available. If Santa Clara is forced to pause or cancel its subrecipient agreements, it will damage its relationship with its partners and its trust with the community served by these programs.

24. Additionally, as mentioned above, Santa Clara administers CDBG and HOME funds on behalf of cities that would not otherwise qualify for these entitlement grants themselves. If Santa Clara did not administer the CDBG and HOME grants on behalf of these cities, they would not be able to access these funds for community development projects, homeless shelters, social services, and affordable housing for low-income families in their respective jurisdictions. Without these funds, such programs would have significantly less capacity or may not even exist within those cities, creating even greater pressures and burdens on those cities' and Santa Clara's other front-line, safety-net services and programs.

25. Lastly, as also noted above, Santa Clara has planned to use federal fiscal year 2026-2027 HOME funds towards necessary rehabilitation work on a housing and shelter site for homeless veterans that the County acquired from the prior owner and operator, in order to make those repairs and provide those veterans a more dignified and safe place to live. If Santa Clara suffers further delay or loss of the current fiscal year's HOME funds, it will need to divert other funding to make up for the loss, or else it may be forced to delay certain necessary repairs and reconstruction plans for the site.

26. At the time I am submitting this declaration, I do not know whether HUD will impose the same new conditions pertaining to records access, "fiduciary relationship," "waste, fraud, and abuse," and/or "illegal drug injection sites," in other HUD grants that Santa Clara receives. However, since January 2025, HUD has added new conditions to certain grants and then rolled them out across other grants, which leaves me concerned that HUD will attempt to impose these same new conditions on all other HUD grants that Santa Clara receives.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED at San José, California this 5th day of November, 2026.

Signed by:
Kathryn J Kaminski
E468DBC028EC409...

Kathryn J. Kaminski